TINA WOLFSON, SBN 174806
twolfson@ahdootwolfson.com
ROBERT AHDOOT, SBN 172098
rahdoot@ahdootwolfson.com
THEODORE W. MAYA, SBN 223242
tmaya@ahdootwolfson.com
BRADLEY K. KING, SBN 274399
bking@ahdootwolfson.com
**AHDOOT & WOLFSON, P.C.**
1016 Palm Ave.
West Hollywood, California 90069
Tel: 310-474-9111; Fax: 310-474-8585

Counsel for Plaintiff
ABDUL KADIR MOHAMED

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

### San Francisco Division

| | |
|---|---|
| ABDUL KADIR MOHAMED, individually and on behalf of all others similarly situated, | Case No. 14-5200 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| UBER TECHNOLOGIES, INC.; RASIER, LLC; HIREASE, LLC; and DOES 1-50, | |
| Defendants | |

Plaintiff ABDUL KADIR MOHAMED, by and through his counsel, brings this Class Action Complaint against UBER TECHNOLOGIES, INC. ("Uber"); RASIER, LLC ("Rasier"); HIREASE, LLC ("Hirease"); and DOES 1-50 (collectively, "Defendants"), on behalf of himself and all others similarly situated, and alleges, upon personal knowledge as to his own actions and his counsel's investigations, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1. This class action challenges Defendants' widespread violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-81x ("FCRA"), in employment background screening. This case further challenges Defendants' widespread violations of related California and Massachusetts laws, including the Massachusetts Consumer Credit Reporting Act ("MCRA") M.G.L. c. 93 §§ 50 *et seq.*, and the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code §§ 1785.1 *et seq*.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the FCRA, 15 U.S.C. § 1681 *et seq.*, which is a federal statute.

3. The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the proposed class has more than 100 members, the class contains at least one member of diverse citizenship from Defendants, and the amount in controversy exceeds $5 million.

4. The Court has personal jurisdiction over Defendants because Defendant UBER TECHNOLOGIES, INC. has its principal place of business in this District at 800 Market Street, 7th Floor, San Francisco, CA 94102, and Defendant RASIER, LLC has its principal place of business in this District at 1455 Market Street 4th floor, San Francisco, CA, 94103.  Defendants are authorized to, and do, conduct substantial business in California.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1), because a substantial part of the events and omissions giving rise to this action occurred in this District in Defendants Uber and Rasier's offices here.

6. Intradistrict Assignment: Pursuant to Civil Local Rules 3-2(c) a substantial part of the events or omissions which give rise to the claims occurred in San Francisco County, and it is therefore appropriate to assign this action to the San Francisco Division.

**PARTIES**

7. Plaintiff ABDUL KADIR MOHAMED is an individual and a resident of Boston, Massachusetts.

8. Defendant UBER TECHNOLOGIES, INC. is a company that conducts business throughout the United States. Uber is a corporation organized under the laws of the state of Delaware with its principal place of business at 800 Market Street, 7th Floor, San Francisco, CA 94102.

9. Defendant RASIER, LLC is, on information and belief, a wholly owned subsidiary of Uber. Rasier is a limited liability company organized under the laws of the state of Delaware with its principal place of business at 1455 Market Street 4th floor, San Francisco, CA, 94103.

10. Defendant HIREASE, LLC is a limited liability company organized under the laws of the state of Florida with its principal place of business at 695 S. Bennett St, Southern Pines, NC 28387.

11. At all times relevant hereto, Uber and Rasier were users of consumer reports and therefore subject to regulation under 15 U.S.C. § 1681b, Cal. Civ. Code § 1785.20.5, and M.G.L. c 93 § 50. Hirease is a producer of such reports subject to regulation under the same laws.

12. Plaintiff is unaware of the true names and capacities of the defendants sued as DOES 1-50, and therefore sues these defendants by fictitious names. Plaintiff will seek leave to amend this Complaint when and if the true identities of these DOE defendants are discovered. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated as a DOE is responsible in some manner for the acts and occurrences alleged herein, whether such acts or occurrences were committed intentionally, negligently, recklessly or otherwise, and that each said DOE defendant thereby proximately caused injuries and damages to Plaintiff as herein alleged, and is thus liable for the damages suffered by Plaintiff.

13. On information and belief, at all times mentioned herein, each named Defendant and DOES 1-50 were the employees, agents, or representatives of each other and were acting with the

knowledge and consent of each other Defendant and within the purpose and scope of such employment, agency or representation in doing or failing to do the acts alleged in this Complaint. Each Defendant has ratified and approved the acts of its agents.

## SUBSTANTIVE ALLEGATIONS

14.  To protect employees, FCRA, CCRAA, and MCRA impose certain strictures on employers' use of consumer background reports as a factor in their decisions to hire, promote, reassign, or terminate employees.  Specifically, the statutes require that an employer first disclose its intent to use a background report in its hiring decision and must obtain the prospective employee's written authorization to do so, and the employer's disclosure must be "in a document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A); *see also* Cal. Civ. Code § 1785.20.5(a).

15.  Hirease contracts with Uber and Rasier to provide background screening services, and Uber and Rasier make use of such information in hiring decisions.

16.  Misreported information can and does often lead to grave consequences for the job seeker.  Thus, Congress enacted the FCRA to insure consumer information is furnished and used in a manner that is "fair and equitable to the consumer . . ." 15 U.S.C. § 1681(b).

17.  Accordingly, under the FCRA, 15 U.S.C. § 1681b(b)(3)(A), **before** taking any adverse employment action based in whole or in part on a consumer report, the employer must provide to the job applicant:

>      a.   A copy of the consumer report;
>      b.   A description in writing of the rights of the consumer under the FCRA; and
>      c.   A reasonable opportunity to dispute the information before rendering the adverse employment decision.

18.  The MCRA contains similar strictures, but adds certain language protecting and advising consumers of their rights that employers must include in their notices at the varying stages. *See* MCRA, M.G.L. c. 93 § 62.

19.  The MCRA also requires that companies such as Hirease provide a copy of any consumer report procured by Uber or Raiser to Plaintiff and to other similarly situated applicants or employee at the time it provides any such report to Uber or Rasier.  M.G.L. c. 93 § 60.

20. Similarly, the CCRAA requires that: "Prior to requesting a consumer credit report for employment purposes, the user of the report shall provide written notice to the person involved. The notice shall inform the person that a report will be used, and shall identify the specific basis under subdivision (a) of Section 1024.5 of the Labor Code for use of the report. The notice shall also inform the person of the source of the report, and shall contain a box that the person may check off to receive a copy of the credit report. If the consumer indicates that he or she wishes to receive a copy of the report, the user shall request that a copy be provided to the person when the user requests its copy from the credit reporting agency. The report to the user and to the subject person shall be provided contemporaneously and at no charge to the subject person." Cal. Civ. Code § 1785.20(a)

21. The FCRA also requires that, after any adverse action occurs, the employee or job applicant must receive a second notice, mandated by 15 U.S.C. § 1681m(a). (Hereinafter, the "pre-adverse action notice" and the "adverse action notice.")

22. The pre-adverse action notice requirement is unqualified. "Employers must comply with the pre-adverse action disclosure requirement even where the information contained in the consumer report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action." FTC, *40 years of Experience with the Fair Credit Reporting Act* (July 2011) p. 53.

23. The FCRA further requires that before any consumer reporting agency may provide consumer reports on an applicant, the reporting agency must obtain a certification from the employer that the employer has given the required pre-adverse action disclosure and will give the required adverse action notice, if required (*i.e.*, the employer ultimately takes an adverse employment action). 15 U.S.C. § 1681b(b)(1)(A).

24. The Federal Trade Commission has issued guidance that when an employer enters into a *bona fide* independent contractor relationship with an individual, it must comply with the applicable provisions of the FCRA pertaining to consumer reports obtained for employment practices. FTC, *Advisory Opinion to Allison (02-23-98)* available at *www.http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-allison-02-23-98* (last viewed Oct. 25, 2014).

25. Uber and Rasier are employers and are "users" of consumer reports for the purposes of the FCRA and therefore are regulated entities under the FCRA.

26. Plaintiff is informed and believes and thereon alleges that Uber and Rasier knowingly, voluntarily, and with the assistance of its counsel, executed a certification providing that it would comply with various provisions of the FCRA, including by providing the required pre-adverse and adverse action notices.

27. Despite its certification, Defendants knowingly violated 15 U.S.C. § 1681b(b)(3) and 15 U.S.C. § 1681m(a) and similar California and Massachusetts law by failing to provide job applicants and employees with compliant pre-adverse action notices and adverse action notices in accordance with state and Federal law.

**Plaintiff's Experience**

28. After previously working for Uber as an "Uber Black" driver, Plaintiff applied to Uber for employment as an "Uber X" driver using his own car.

29. Plaintiff was told he needed to get a new car for the position.

30. Plaintiff therefore purchased a new car at a cost of approximately $25,000, in late September of 2014.

31. In early October 2014, Plaintiff in fact began working as an Uber X driver using his own car.

32. Thereafter, on or about October 28, 2014, Plaintiff received an email from "uberreports@hirease.com" stating, *inter alia*:

> In reference to your proposal to enter an independent contractor relationship, Rasier Boston, MA regrets to inform you that they are unable to further consider your proposal at this time. The decision, in part, is the result of information obtained through the Consumer Reporting Agency identified below.

33. At approximately the same time, Plaintiff's access to the Uber app on his phone, which previously enabled him to work as an Uber driver, was turned off.

34. While the above-referenced October 28 email also stated indicates that, "[i]n accordance with the Fair Credit Reporting Act," Plaintiff had "previously received a copy of this information and a copy of [his] rights under the Act," Plaintiff did not receive such materials.

35. Plaintiff was deprived of any meaningful opportunity to review the information in the consumer report and discuss it with Defendants before they made the decision not to hire him, including because the above-referenced email came at 1:26 a.m., and because Plaintiff never received any pre-adverse action notice. Defendants did not give meaningful consideration to Plaintiff's position on any such matter.

36. Plaintiff never received a compliant pre-adverse action notice either from Uber, Rasier, Hirease or any other party contracted by Ubern or Rasier to provide such notice.

37. On information and belief, Defendants terminated Plaintiff because Hirease's consumer report concerning Plaintiff indicated he had a minor criminal record that, in fact, stems from his seven children receiving much-needed Medicaid benefits.

38. Defendants' termination of Plaintiff deprived him of his livelihood and left him without an alternative means of providing for his family, including his seven children.

39. Defendants did not provide Plaintiff with a copy of any Criminal Offender Record Information ("CORI"), nor with any CORI or other background check policy. *See* M.G.L. c. 6 § 171A.

40. Defendants did not provide Plaintiff with information regarding the process for correcting a criminal record.

**Defendants Acted Willfully**

41. Defendants knew or should have known their duties under M.G.L. c. 93 § 50 *et seq*. to maintain a CORI policy and to provide a copy of such policy to Plaintiff upon an adverse employment decision.

42. Defendants knew or should have known their duties under the FCRA to provide pre-adverse and adverse action notices compliant with 15 U.S.C. § 1681b(b)(3) and 15 U.S.C. § 1681m(a). Nevertheless, Defendants intentionally, recklessly, or grossly negligently failed to provide the same to Plaintiff.

43. Defendants knew or should have known their duties to include in the adverse action notice the statutorily-prescribed language under M.G.L. c. 93 § 62 requiring the Defendants to inform the consumer of his rights in substantially the manner mandated by the statute.

44. Defendants knew or should have known their duties to provide pre-adverse action notices in compliance with Cal. Civ. Code § 1785.20.5(a), but intentionally, recklessly, or grossly negligently failed to provide the same to Plaintiff.

45. During the relevant period, Hirease provided and continues to provide consumer reports to Uber and Rasier under a service agreement. On information and belief, under the service agreement, Uber and Rasier certified to Hirease that they would comply with the FCRA, including provisions specifically and directly relating to their duties to provide pre-adverse action and adverse action notices to its job applicants and employees.

46. On information and belief, Defendants Uber and Rasier knowingly, voluntarily, and with the assistance of counsel signed the service agreement including the above-mentioned certification.

47. In direct violation of the FCRA, CCRAA, and MCRA, whenever adverse action is taken against an applicant on the basis of information disclosed on a consumer report, Defendants fail to afford the applicants the procedural safeguards mandated by law as described above, including by failing to provide pre-adverse action notices and a reasonable opportunity to dispute information in such reports *before* taking adverse action.

48. On information and belief, among its service offerings, Hirease provides a package of services which purport to assist the employer in complying with the FCRA by automatically generating and emailing pre-adverse action and adverse action notices to the consumer along with a copy of the consumer report under the employer's letterhead whenever there has been an adverse action adjudication by Hirease based on pre-determined criteria supplied by Uber and Rasier.

49. Consumer reporting agencies routinely provide a similar service and many employers purchase it. Uber and Rasier could have easily and cost-effectively complied with the mandates of the FCRA, CCRAA, and MCRA by purchasing such services, but failed to do so.

50. Uber knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute as applicable to independent contractors. *Advisory Opinion to Allison* (02-23-98) available at <http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-allison-02-23-98> (last viewed November 19, 2014).

**Defendants' Application Process**

51. Defendants accept applications for employment as drivers via their website at <partners.uber.com/drive>.

52. In the course of its application, Uber presents drivers with the provision "By signing up, I agree to the Privacy Policy and understand that Uber is a request tool, not a transportation carrier." <https://partners.uber.com/signup/boston/p2p/>.

53. Uber's application process comprises three steps. Step One requires that the applicant "Complete the FREE online background check: http://t.uber.com/bosxbc."

54. The document contains language purporting to grant Defendants authorization on an ongoing and continual basis to access and reaccess consumer reports at any time without further authorization of the applicant.

55. Step Two of the application process requires that the applicant upload certain personal information such as a driver's license, car registration, personal insurance documentation, and information about the applicant's vehicle.

56. Step Three requires that the applicant complete a 20-minute online quiz.

**CLASS ACTION ALLEGATIONS**

57. Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and Classes initially defined as follows:

   a. <u>Nationwide FCRA Disclosure Class</u>: All persons in the United States who applied for employment with, or were employed by, Defendants Uber and/or Rasier on or after November 24, 2009, and concerning whom Defendants procured a consumer report and who: (1) received no disclosure regarding the possibility of consumer report procurement; or (2) received a disclosure regarding the possibility of consumer report procurement that was not contained in a document consisting solely of such disclosure.

b.  **Nationwide FCRA Adverse Action Class**: All persons in the United States who (1) were subject to adverse employment action on or after November 24, 2009 based in whole or in part on any consumer report procured by Defendants Uber and/or Rasier; and (2) to whom Defendants did not provide the written materials required under 15 U.S.C. § 1681b(b)(3) prior to Defendants taking such adverse employment action.

c.  **Nationwide CCRAA Class**: All persons in the United States who (1) applied for employment with, or were employed by, Defendants Uber and/or Rasier on or after November 24, 2012; (2) who were the subject of a consumer report procured by Defendant; and (3) who were not provided with prior notice meeting the requirements of Cal. Civ. Code § 1785.20.5(a).

d.  **Massachusetts MCRA Class**: All persons in Massachusetts who applied for employment with, or were employed by, Defendants Uber and/or Rasier on or after November 24, 2012, and (1) received an adverse action notice failing to inform them of their rights as required under M.G.L. c. 93 § 62; and/or (2) did not receive a copy of the consumer report(s) on which Defendants relied to take adverse action, as required by M.G.L. c. 93 § 60

e.  **Massachusetts CORI Class**: All persons in Massachusetts against whom Defendants Uber and/or Rasier took adverse employment action on or after _____, 2012, and about whom Defendants procured Criminal Offender Record Information ("CORI") and (1) to whom such CORI was not provided; (2) to whom no CORI policy was provided; and/or (3) to whom no information was provided concerning the process for correcting a criminal record.

58. Excluded from each of the above Classes are Defendants, including any entity in which Defendants have a controlling interest, is a parent or subsidiary, or which is controlled by Defendants,

as well as the officers, directors, affiliates, legal representatives, predecessors, successors, and assigns of Defendants. Also excluded are the judges and court personnel in this case and any members of their immediate families.

59. Plaintiff reserves the right to amend or modify the Class definitions with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

60. <u>Numerosity</u>. Fed. R. Civ. P. 23(a)(1). Each Class is so numerous that joinder of all members is unfeasible. The precise number of members of each Class cannot be determined without discovery, but clearly each has numerous members.

61. <u>Commonality and Predominance</u>. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to each Class, which predominate over any questions affecting only individual members of each respective Class. These common questions of law and fact include, without limitation:

    d. Whether Defendants' conduct described herein violated the FCRA;

    e. Whether Defendants procured or caused to be procured consumer reports to investigate prospective and/or current employees;

    f. Whether Defendants Uber and Rasier violated the FCRA by failing to provide notice to members of the FCRA Classes with a clear and conspicuous disclosure that Defendants would procure a consumer report for employment purposes,

    g. Whether Defendants provide such disclosure in a document that consists solely of that disclosure;

    h. Whether Defendants procured the written authorization of Plaintiff and other Class members prior to obtaining consumer reports concerning them;

    i. Whether Defendants have taken adverse employment action based upon information contained within an applicant's or employee's consumer report without providing a copy of such report to the applicant or employee;

    j. Whether Defendants violated the FCRA by failing to provide Plaintiff and other putative Class members, prior to taking adverse action, with notice that adverse action would be taken in whole or in part based on a consumer report;

k. Whether Defendants have taken adverse employment action based upon information contained within an applicant's or employee's consumer report without providing the applicant or employee with a written description of their rights under 15 U.S.C. § 1681;

l. Whether Defendants violated the CCRAA;

m. Whether Defendants violated the MCRA;

n. Whether Defendants acted in deliberate or reckless disregard of their obligations and the rights of Plaintiff and other Class members under the FCRA, the CCRAA, and/or the MCRA; and

o. The nature of the relief, including equitable relief, to which Plaintiff and other Class members are entitled.

62. <u>Typicality</u>.  Fed. R. Civ. P. 23(a)(3).  Plaintiff's claims are typical of the claims of the Classes he seeks to represent.  Plaintiff and all Class members were exposed to uniform practices and sustained injuries arising out of and caused by Defendants' unlawful conduct.

63. <u>Adequacy of Representation</u>.  Fed. R. Civ. P. 23(a)(4).  Plaintiff will fairly and adequately represent and protect the interests of the members of the Classes.  Further, Plaintiff's counsel is competent and experienced in litigating class actions.

64. <u>Superiority of Class Action</u>.  Fed. R. Civ. P. 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of this action since joinder of all Class members is impracticable and will waste judicial resources.  Moreover, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting outcomes.  Finally, there will be no difficulty in managing this action as a class action.

65. <u>Injunctive and Declaratory Relief</u>.  Fed. R. Civ. P. 23(b)(2).  Defendants' actions have been uniform as to all members of each Class.  Defendants have acted or refused to act on grounds that apply generally to each Class, so that final injunctive relief or declaratory relief is appropriate with respect to each Class as a whole.

## FIRST CAUSE OF ACTION

## Violation of the FCRA, 15 U.S.C. § 1681b(b)

## (Against Uber and Rasier on behalf of Plaintiff and the FCRA Classes)

66. Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

67. Defendants used a "consumer report," as defined by the FCRA, to take adverse employment action against Plaintiff and other members of the putative FCRA Classes.

68. Defendants violated the FCRA by failing to acquire from Plaintiff and Class members proper authorization prior to conducting the background check and/or did not utilize an authorization with the requisite statutory requirements.

69. Defendants violated the FCRA by failing to provide notice to Plaintiff and other Class members with a conspicuous disclosure that Defendants would procure a consumer report for employment purposes, in a document that consists solely of the disclosure, as required by 15 U.S.C. § 1681b(b)(2)(A).

70. Defendants further violated the FCRA by failing to provide Plaintiff and other putative Class members, prior to taking adverse action, with notice that adverse action would be taken in whole or in part based on a consumer report.

71. Defendants violated the FCRA by taking adverse employment action based upon information contained within applicants' and/or employees' consumer reports without providing copies of such report to the applicants or employees.

72. The foregoing violations were willful. Defendants acted in deliberate or reckless disregard of their obligations and the rights of Plaintiff and other Class members under 15 U.S.C. § 1681b(b)(3)(A). The willfulness of Defendants' conduct is reflected by, among other things, the following facts:

    a. Based on the plain language of the statute, legal advice provided by its own general counsel, or outside employment counsel, and published FTC guidance, Defendants knew or should have known that its failure to provide compliant pre-adverse actions notice was unlawful;

    b.    Based on published FTC guidance, Defendants knew or should have known that its choice to consider itself exempt from the provisions of the FCRA because they believe themselves to utilize independent contractors and not employees was unlawful;

    c.    Defendants could have complied with the statutory duty to provide a pre-adverse action notice either by sending the notice directly to the affected consumer job applicant, or by contracting with Hirease to do so on its behalf;

    d.    Despite the clear notice of the law, full ability to comply, and ample opportunity to do so, Defendants failed to adopt any measure or mechanism which would have provided the required notice to Plaintiff and the Class.

73.    Plaintiff and other members of the FCRA Classes are entitled to actual damages or statutory damages of not less than $100.00 and not more than $1,000.00 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

74.    Plaintiff and other members of the FCRA Classes are entitled to recover their costs and attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## SECOND CAUSE OF ACTION

**Violation of the CCRAA, Cal. Civ. Code § 1785.1 *et seq.***

**(Against Uber and Rasier by Plaintiff and the CCRAA Class)**

75.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

76.    Defendants used a "consumer credit report" as defined in Cal. Civ. Code § 1785.3 to take adverse employment action against Plaintiff and other members of the CCRAA Class.

77.    Defendants violated the CCRAA by failing to provide written notice to Plaintiff and other members of the CCRAA Class, prior to requesting such consumer credit reports, that complied with Cal. Civ. Code § 1785.20.5 by informing Plaintiff and other members of the CCRAA Class of the specific basis under subdivision (a) of Section 1024.5 of the Labor Code for use of the reports, informing them of the source of the reports, and including a box that such persons could check off to receive copies of such reports.

78. The foregoing violations were willful. Defendants acted in deliberate or reckless disregard of their obligations and the rights of Plaintiff and other Class members under the CCRAA.

79. Plaintiff and other members of the CCRAA Class are entitled to:

    a. Any actual damages sustained by Plaintiff and other Class members as a result of the failure;

    b. Punitive damages of not less than one hundred dollars ($100) nor more than five thousand dollars ($5,000) for each violation as the Court deems proper;

    c. Injunctive relief requiring Defendants to comply with the FCRA and CCRAA; and

    d. Costs and reasonable attorney's fees.

## THIRD CAUSE OF ACTION

### Violation of the MCRA M.G.L c. 93 §§ 50 *et seq.*

### (Against all Defendants by Plaintiff and the Massachusetts MCRA Class)

80. Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

81. Defendants used a "consumer report" as defined by the MCRA to take adverse employment action against Plaintiff and other members of the Putative Class.

82. Defendants violated the MCRA by failing to advise Plaintiff and the Members of the MCRA Class of the statutorily required rights in M.G.L. c. 93 § 62 in their adverse action notice, including the right to assistance interpreting consumer reports.

83. Hirease failed to deliver a copy of the Report to Plaintiff and other members of the MCRA Class as required by M.G.L. c. 93 § 60.

84. The foregoing violations were willful. Defendants acted in deliberate or reckless disregard of their obligations and the rights of Plaintiff and other Class members under M.G.L. c. 93 § 50 *et seq*.

85. Plaintiff and the MCRA Class Members are entitled to:

    a. Any actual damages sustained by Plaintiff and other Class members as a result of the failure;

    b. Such amount of punitive damages as the court may allow;

  c.  The costs of this action together with reasonable attorney's fees as determined by the court; and

  d.  Treble damages and attorney fees pursuant to M.G.L. c.93 § 68, which incorporates M.G.L. c.93A §§ 2 and 11.

## FOURTH CAUSE OF ACTION

### Violation of Massachusetts CORI Requirements, M.G.L. c. 6 §§ 171A *et seq.*

### (Against Uber and Rasier by Plaintiff and the Massachusetts CORI Class)

86. Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

87. On information and belief, Defendants Uber and Raiser annually conduct 5 or more criminal background investigations, and therefore are required to "maintain a written criminal offender record information policy providing that . . . [they] will: (i) notify the applicant of the potential adverse decision based on the criminal offender record information; (ii) provide a copy of the criminal offender record information and the policy to the applicant; and (iii) provide information concerning the process for correcting a criminal record." M.G.L. c.6 § 171A.

88. Defendants Uber and Rasier violated Massachusetts law by failing to maintain and to provide a CORI policy.

89. Defendants Uber and Rasier violated Massachusetts law by failing to provide to applicants information concerning the process for correcting a criminal record.

90. Defendants Uber and Rasier violated Massachusetts law by failing to provide Plaintiff and other members of the CORI Class with CORI in Defendants' possession on which they relied to take adverse employment actions against Plaintiff and other members of the CORI Class.

91. Plaintiff and the CORI Class Members are entitled to:

  a.  Any actual damages sustained by Plaintiff and other Class members as a result of Defendants' failures;

  b.  exemplary damages of not less than one hundred and not more than one thousand dollars for each violation; and

  c.  costs and reasonable attorneys' fees.

**WHEREFORE**, Plaintiff, on behalf of himself and Class members, prays for relief as follows:

A. For an order that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that each of the above-described classes be certified, that Plaintiff be appointed Class representative, and that Plaintiff's counsel be appointed as counsel for the Class;

B. For an order requiring Defendants to pay actual damages in an amount to be determined at trial;

C. For an award of statutory damages on the First Cause of Action in an amount not less than $100 and not more than $1,000 per violation;

D. For an award of punitive damages of not less than $100 nor more than $5,000 per violation on the Second Cause of Action, and in an amount to be determined at trial on the Third Cause of Action;

E. For an award of exemplary damages in an amount of not less than $100 and not more than $1,000 per violation on the Fourth Cause of Action;

F. For an order prohibiting Defendant from engaging in the misconduct described herein and requiring Defendants to provide proper disclosures and information as required under 15 U.S.C. §§ 1681b(b)(2) and 1681b(b)(3) and under the CCRAA and MCRA;

G. For an award of attorneys' fees;

H. For an award of the costs of suit incurred herein, including expert witness fees;

I. For an award of interest, including prejudgment interest, at the legal rate; and

J. For such other and further relief as this Court deems just and proper.

///

///

///

///

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury of all claims so triable.

Dated: November 24, 2014

Respectfully submitted,

**AHDOOT & WOLFSON, PC**

_/s/ T. Wolfson_

Tina Wolfson
Robert Ahdoot
Theodore W. Maya
Bradley K. King
16 Palm Ave.,
West Hollywood, California 90069
Tel: 310-474-9111
Facsimile: 310-474-8585

Counsel for Plaintiff
ABDUL KADIR MOHAMED