1   Laura L. Ho (SBN 173179)
    lho@gbdhlegal.com
2   Andrew P. Lee (SBN 245903)
    alee@gbdhlegal.com
3   GOLDSTEIN, BORGEN, DARDARIAN & HO
    300 Lakeside Drive, Suite 1000
4   Oakland, CA  94612
    Tel:    (510) 763-9800
5   Fax:    (510) 835-1417

6   Oren Sellstrom (SBN 161074)
    osellstrom@lccr.com
7   Meredith Desautels (SBN 259725)
    mdesautels@lccr.com
8   LAWYERS' COMMITTEE FOR CIVIL
      RIGHTS OF THE SAN FRANCISCO
9     BAY AREA
    131 Steuart Street, Suite 400
10  San Francisco, CA  94105
    Tel:    (415) 543-9444
11  Fax:    (415) 543-0296

12  Attorneys for Plaintiff Gillette and the Putative
    Class

        Tina Wolfson (SBN 174806)
        twolfson@ahdootwolfson.com
        Robert Ahdoot (SBN 172098)
        rahdoot@ahdootwolfson.com
        Theodore W. Maya (SBN 223242)
        tmaya@ahdootwolfson.com
        Bradley K. King (SBN 274399)
        bking@ahdootwolfson.com
        AHDOOT & WOLFSON, P.C.
        1016 Palm Avenue
        West Hollywood, CA  90069
        Tel:    (310) 474-9111
        Fax:    (310) 474-8585

        Counsel for Plaintiff Abdul Kadir Mohamed
        and the Putative Class

13

14                  **UNITED STATES DISTRICT COURT**

15              **NORTHERN DISTRICT OF CALIFORNIA**

16

17   ABDUL KADIR MOHAMED, individually,          Case No.:  3:14-cv-05200-EMC
     and on behalf of all others similarly-situated,   Case No.:  3:14-cv-05241-EMC

18          Plaintiff,

     vs.

19                                                **CONSOLIDATED OPPOSITION TO MOTION
                                                  TO COMPEL ARBITRATION**
20   UBER TECHNOLOGIES, INC.; RASIER,
     LLC; HIREASE, LLC; and DOES 1-50,

21          Defendants.

22   RONALD GILLETTE, individually, and on       Hon. Edward M. Chen
     behalf of all others similarly-situated,
23                                               Date: April 14, 2015
            Plaintiffs,                          Time: 10:30 a.m.
24                                               Courtroom: 5, 17th Floor
     vs.

25   UBER TECHNOLOGIES, INC., a California
     corporation, and DOES 1-20, inclusive
26
            Defendants.
27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................1

II.   STATEMENT OF FACTS ...................................................................................2

      A.    The Mohamed Matter. ...............................................................................2

      B.    The Gillette Matter. ...................................................................................3

      C.    Defendants Rely on Arbitration Agreements Previously Considered by the
            Court in the O'Connor Case. .....................................................................5

      D.    The Lavitman Court also Has Rejected Defendants' Attempts to Rely on
            Agreements Linked to its Updates and "I Agree" Boxes. ........................6

III.  ARGUMENT .......................................................................................................6

      A.    The Express Terms of the 2013 Licensing Agreement Require Court
            Adjudication of All Claims. .......................................................................6

            1.    This Court—Not an Arbitrator—Determines the Validity of
                  The PAGA Waiver. .........................................................................6

            2.    The PAGA Waiver is Unenforceable Under *Iskanian v. CLS
                  Transportation* Los Angeles, LLC. ................................................7

            3.    The PAGA Waiver is Not Severable, Thus Invalidating the Entire
                  Arbitration Provision. .....................................................................9

      B.    No Agreement to Arbitrate Was Formed. ................................................10

            1.    Defendants Do Not Demonstrate the Existence of Binding Agreements by a
                  Preponderance of the Evidence. ...................................................10

            2.    Defendants' Updates Are Unenforceable Clickwrap Agreements. ....................11

      C.    The Delegation Clause is Unenforceable. ................................................14

            1.    The Delegation Clause is Unconscionable. ..................................14

            2.    The Delegation Clause is Conflicting and Ambiguous. ...............15

      D.    The Arbitration Provisions are Invalid Because They are Procedurally and
            Substantively Unconscionable. ................................................................17

            1.    The Arbitration Provisions are Procedurally Unconscionable. .........................18

                  a.    Defendants' Agreement Updates Are Permeated with Oppression
                        and Surprise. .....................................................................18

                  b.    Defendants' Conflicting Opt-Out Provisions Do Not Render the
                        Agreements Conscionable. ................................................22

2.    The Arbitration Provisions are Substantively Unconscionable. .......................... 23

    a.    The Confidentiality Provision is Substantively Unconscionable. .......... 23

    b.    The Arbitration Provision Lacks Mutuality. ............................................ 25

    c.    Defendants Retain the Unilateral Right to Modify the Terms of the Licensing Agreement and Driver Addendum without Notice. .............. 28

    d.    Plaintiffs Are Subject to Arbitration Costs Not Required by Court Proceedings. ......................................................................................... 29

    e.    The Arbitration Provision Waives Plaintiffs' Statutory Right to Assert Private Attorney General Act Claims. ......................................... 33

IV.    CONCLUSION ......................................................................................................... 35

565567.14

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Assaad v. Am. Nat. Ins. Co.*,
  No. C 10-03712 WHA, 2010 WL 5416841 (N.D. Cal. Dec. 23, 2010) .......................................30, 31

*AT&T Mobility v. Concepcion*,
  131 S. Ct. 1740 (2011) .................................................................................................8, 15, 31

*Carey v. 24 Hour Fitness, USA, Inc.*,
  669 F.3d 202 (5th Cir. 2012) ......................................................................................................28

*Chalk v. T-Mobile USA, Inc.*,
  560 F.3d 1087 (9th Cir. 2009) ......................................................................................................9

*Chavarria v. Ralphs Grocery Co.*,
  733 F.3d 916 (9th Cir. 2013) .............................................................................................19, 28

*Circuit City Stores, Inc. v. Ahmed*,
  283 F.3d 1198 (9th Cir. 2002) ....................................................................................................22

*Comb v. Paypal, Inc.*,
  218 F. Supp. 2d 1165 (N.D. Cal. 2002) ..........................................................................10, 17, 18

*Corin v. Cintas Corp.*,
  No. CIV. S-09-2384, 2009 WL 5206712 (E.D. Cal. Dec. 18, 2009) ........................................28

*Cunningham v. Leslie's Poolmart, Inc.*,
  No. CV 13-2122 CAS CWX, 2013 WL 3233211 (C.D. Cal. June 25, 2013) ...........................7, 8

*Davis v. O'Melveny & Myers*,
  485 F.3d 1066 (9th Cir. 2007) .............................................................................23, 24, 25, 33

*EEOC v. Waffle House, Inc.*,
  534 U.S. 279 (2002) ....................................................................................................................27

*Ferguson v. Corinthian Colls., Inc.*,
  733 F.3d 928 (9th Cir. 2013) ......................................................................................................24

*Ferguson v Countrywide Credit Indus., Inc.*,
  298 F.3d 778 (9th Cir. 2002) ................................................................................................26, 33

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995) ...............................................................................................................15, 17

*Flinn v. CEVA Logistics U.S., Inc.*,
  No. 13-CV-2375 W (BLM), 2014 WL 4215359 (S.D. Cal. Aug. 25, 2014) ..............................26

iii

565567.14

*Gilmer v. Interstate/Johnson Lane Corp.,*
    500 U.S. 20 (1991) ........................................................................................................34

*Hernandez v. DMSI Staffing, LLC.,*
    No. C-14-1531 EMC, 2015 WL 458083 (N.D. Cal. Feb. 3, 2015) ...............................1, 7, 8

*Ingle v. Circuit City Stores, Inc.,*
    328 F.3d 1165 (9th Cir. 2003); ...................................................................................28, 29

*Johnmohammadi v. Bloomingdale's, Inc.,*
    755 F. 3d 1072 (9th Cir. 2014) ...............................................................................13, 22, 23

*Lee v. Intelius Inc.,*
    737 F.3d 1254 (9th Cir. 2013) ..................................................................................12, 23

*Lou v. Ma Labs., Inc.,*
    No. 12-cv-05409 WHA, 2013 WL 2156316 (N. D. Cal. May 17, 2013) ...............................*passim*

*Lowden v. T-Mobile USA, Inc.,*
    512 F.3d 1213 (9th Cir. 2008) ...........................................................................................9

*Macias v. Excel Building Servs. LLC,*
    767 F. Supp. 2d 1002 (N.D. Cal. 2011) ........................................................26, 27, 28, 29

*Martin v. Ricoh Americas Corp.,*
    No. C-08-4853 EMC, 2009 WL 1578716 (N.D. Cal. June 4, 2009) ...............................28

*Mathias v. Rent-A-Ctr., Inc.,*
    No. CIV. S-10-1476 LKK/K, 2010 WL 3715059 (E.D. Cal. Sept. 15, 2010) ....................9

*Merkin v. Vonage Am. Inc.,*
    No. 2:13-CV-08026-CAS, 2014 WL 457942 (C.D. Cal. Feb. 3, 2014) ....................18, 20

*Mohebbi v. Khazen,*
    No. 13-cv-03044 BLF, 2014 WL 6845477 (N.D. Cal. Dec. 4, 2014) ...........................23

*Motors Ins. Corp. v. Bodie,*
    770 F. Supp. 547 (E.D. Cal. 1991) ...............................................................................10

*Nagrampa v. MailCoups, Inc.,*
    469 F.3d 1257 (9th Cir. 2006). ...................................................................26, 28, 33

*Nguyen v. Barnes & Noble Inc.,*
    763 F.3d 1171 (9th Cir. 2014) .............................................................................10, 11, 13

*O'Connor v. Uber Techs.,*
    Case No. 13-cv-03826-EMC (N.D. Cal.) ......................................................................31

*Oracle Am., Inc. v. Myriad Grp. A.G.,*
    724 F.3d 1069 (9th Cir. 2013) ...............................................................................15, 17

iv

*Pokorny v. Quixtar, Inc.*,
    601 F.3d 987 (9th Cir. 2010) ........................................................23, 24, 25, 26

*Poublon v. Robinson Co.*,
    No. 2:12-CV-06654-CAS MA, 2015 WL 588515 (C.D. Cal. Jan. 12, 2015) ....................20

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010) ..................................................................14

*Rosas v. Macy's, Inc.*,
    No. CV11-7318 PSG, 2012 WL 365274 (C.D. Cal. Aug. 24, 2012) ....................22

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    498 F.3d 976 (9th Cir. 2007) ........................................................9

*Slottow v. Am. Cas. Co. of Reading, Pa.*,
    10 F.3d 1355 (9th Cir. 1993) ........................................................10

*Specht v. Netscape Comm'ns Corp.*,
    306 F.3d 17 (2d Cir. 2002) ........................................................11, 12

*Ting v. AT&T*,
    319 F.3d 1126 (9th Cir. 2003) ........................................................23, 24, 25

*Tompkins v. 23andMe, Inc.*,
    No. 5:13-CV-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014) ....................11

*In re Toyota Motor Corp.*,
    838 F. Supp. 2d 967, 992 (C.D. Cal. 2012) ........................................16

*Zaborowski v. MHN Gov't Servs., Inc.*,
    936 F. Supp. 2d 1145 (N.D. Cal. 2013) ............................................19

**State Cases**

*Ajamian v. Cantor CO2e, L.P.*,
    203 Cal. App. 4th 771 (2012) ......................................................18

*Aral v. Earthlink, Inc.*,
    234 Cal. App. 4th 544 (2005) ......................................................33

*Armendariz v. Found. Health Psychcare Serv.*,
    24 Cal. 4th 83 (2000) ...................................................... *passim*

*Badie v. Bank of Am.*,
    67 Cal. App. 4th 779 (1998) ........................................................10

*Bolter v. Super. Ct.*,
    87 Cal. App. 4th 900 (2001) ........................................................33

v

*Fitz v. NCR Corp.*,
   118 Cal. App. 4th 702 (2004)...................................................................................26, 27, 28

*Harper v. Ultimo*,
   113 Cal. App. 4th 1402 (2003) ...........................................................................................20

*Iskanian v. CLS Transportation Los Angeles, LLC*,
   59 Cal. 4th 348 (2014).............................................................................................. *passim*

*Mercuro v. Super. Ct.*,
   96 Cal. App. 4th 167 (2002)................................................................................................27

*Patterson v. ITT Consumer Fin. Corp.*,
   14 Cal. App. 4th 1659 (1993) .............................................................................................18

*Pinedo v. Premium Tobacco Stores, Inc.*,
   85 Cal. App. 4th 774 (2000) ...............................................................................................33

*Samaniego v. Empire Today LLC*,
   205 Cal. App. 4th 1138 (2012) ...............................................................................20, 21, 33

*Sonic-Calabasas A, Inc. v. Moreno*,
   57 Cal. 4th 1109 (2013) ......................................................................................................34

*Stirlen v. Supercuts, Inc.*,
   51 Cal. App. 4th 1519 (1997) .............................................................................................28

*Tiri v. Lucky Chances, Inc.*,
   226 Cal. App. 4th 231 (2014) .............................................................................................18

*Trivedi v. Curexo Tech. Corp.*,
   189 Cal. App. 4th 387 (2010) .............................................................................................20

**Docketed Case**

*Zenelaj v. Handybook  Inc.*,
   No. 14-cv-05449-TEH (N. D. Cal. Mar. 3, 2015) ................................................................8

**Federal Statutes**

15 U.S.C. § 1681 *et seq.* ...............................................................................................................5

Fair Credit Reporting Act.........................................................................................................3, 5

FCRA............................................................................................................................................3

**California Statutes**

Cal. Civil Code
   § 1785.1 *et seq.* ................................................................................................3
   § 1786 *et seq.* ..................................................................................................5
   § 3513 ........................................................................................................7, 33

Cal. Code of Civil Procedure
   § 1281.8 ........................................................................................................28

Cal. Lab. Code
   § 232.5 ..........................................................................................................24
   § 232.5(a) ......................................................................................................24
   § 232.5(b) ......................................................................................................24
   § 2698 *et seq.* ............................................................................................1, 5
   § 5300 *et seq.* ..............................................................................................27

Cal. Unemp. Ins. Code
   § 1951 *et seq.* ..............................................................................................27

California Consumer Credit Reporting Agencies Act ...................................................3

California Investigative Consumer Reporting Agencies Act .........................................5

**Massachusetts Statutes**

Massachusetts Consumer Credit Reporting Act .........................................................3

Massachusetts Criminal Offender Record Information Requirements ..........................3

**Rules**

Federal Rule of Civil Procedure
   23 ..................................................................................................................8
   26(a) ..............................................................................................................32

**Other Authorities**

http://www.jamsadr.com/rules-streamlined-arbitration/#Rule26 ..............................14

# I.    INTRODUCTION

Plaintiffs Abdul Kadir Mohamed and Ronald Gillette allege that Defendants Uber Technologies, Inc. and Rasier LLC ("Defendants" or "Uber") violated various federal and state background check and labor laws on behalf of themselves and similarly situated Uber drivers. Defendants now seek to compel individual arbitration for each Plaintiff.  Defendants' Motions to Compel Arbitration should be denied for several reasons.[1]

First, the arbitration agreements at issue eliminate Plaintiffs' right to assert claims pursuant to the Private Attorneys General Act of 2004 ("PAGA"), California Labor Code § 2698 *et seq*.  Under applicable caselaw, PAGA waivers are unenforceable as a matter of public policy.  *See Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348, 383 (2014); *Hernandez v. DMSI Staffing, LLC.*, No. C-14-1531 EMC, 2015 WL 458083, at *9 (N.D. Cal. Feb. 3, 2015).  Given that the PAGA waiver is non-severable by the express terms of the arbitration provisions, the arbitration provisions are unenforceable in their entirety.

Second, Defendants fail to meet their burden of establishing the existence of any agreement to arbitrate.  Starkly lacking is any evidence that is particular to either Plaintiff to demonstrate that *they* consented to the arbitration provisions.  Defendants rely solely on updates to pre-existing agreements that they delivered to Plaintiffs' mobile phones via links accompanying "I agree" boxes.  Plaintiffs, who typically received a pop up on their cell phones while driving or getting ready to drive, were compelled to click "I agree" in order to have access to the next passenger and to earn the next fare.  The "I agree" boxes themselves included no notice regarding any arbitration provisions and Plaintiffs had no ability to access the agreements through the application after initial acceptance.  This scenario can hardly constitute a meeting of the minds that is necessary to any contract formation.  No agreement to arbitrate was formed.

Third, Defendants' arbitration provisions are procedurally and substantively unconscionable.  As a threshold issue, Defendants contend that any issues regarding the validity of the arbitration

---

[1] Pursuant to agreement by the Parties, Plaintiffs hereby file a consolidated opposition to Defendants' separate Motions to Compel Arbitration (*Mohamed* ECF No. 28 & *Gillette* ECF No. 16).  *See* ECF No. 20.

1   agreement must be decided by an arbitrator.  Yet the terms of the arbitration agreement, as applied to

2   the delegation clause, are unconscionable because they would require Plaintiffs to individually spend

3   thousands of dollars in arbitration costs to determine the enforceability of the arbitration agreements at

4   issue herein.  Moreover, the delegation clause is not "clear and unmistakable" due to conflicting and

5   ambiguous provisions contained within the arbitration agreements.  Accordingly, Defendants have not

6   met the heightened burden required to delegate the threshold issue of arbitratility to an arbitrator.

7          The arbitration agreements exhibit a high degree of procedural unconscionability.  The

8   agreements are oppressive because they are contracts of adhesion that provide Plaintiffs no meaningful

9   opportunity to negotiate their terms.  Furthermore, Defendants retain the right to modify the Licensing

10  Agreements at will without notice, giving Defendant unfettered control of the terms of the Parties'

11  relationship.  The agreements cause surprise because they were presented to Plaintiffs in small text on

12  mobile phones at moments in time when Plaintiffs were either driving their vehicles or preparing to

13  drive. The 2013 Licensing Agreement does not identify the applicable arbitration rules, precluding

14  Plaintiffs from understanding the full import of the arbitration agreements.

15         The arbitration agreements also exhibit a high degree of substantive unconscionablilty.  They

16  impose broad confidentiality requirements that place Defendants in a superior legal posture.  The

17  arbitration provisions lack mutuality by compelling to arbitration claims most likely brought by

18  employees while exempting from arbitration the one type of claim most valuable to Defendants:

19  intellectual property claims.  Moreover, Defendants retain the unilateral right to modify the terms of

20  these agreements without notice, as they repeatedly have done through the updates and "I agree" boxes

21  at issue.  Plaintiffs also must pay arbitration-related fees and costs not required in court.  And finally,

22  the arbitration provisions purport to waive Uber drivers' right to assert PAGA claims.  The arbitration

23  agreements are procedurally and substantively unconscionable.

24         Defendants' Motions to Compel Arbitration should be denied.

25                     **II.    STATEMENT OF FACTS**

26  **A.    The Mohamed Matter.**

27         Plaintiff Mohamed first began working as an "Uber Black" driver in or around 2012.

28  (*Mohamed* Defs.' Mot. 3.)  In or around October 2014, Plaintiff Mohamed began working as an Uber

2

1  X driver using his own car, which he purchased specifically for this task at Defendants' urging.

2  (*Mohamed* Compl. ¶¶ 29-31.)

3          Defendants do not contend that Mohamed entered into any agreement containing an arbitration

4  clause when he initially signed up to become an Uber driver.  (*Mohamed* Defs.' Mot. 3.)  Rather,

5  Defendants contend that Mohamed agreed to the terms of arbitration clauses contained in July 2013

6  License & Online Services Agreement ("2013 Licensing Agreement") and corresponding Driver

7  Addendum, June 2014 License & Online Services Agreement ("2014 Licensing Agreement) and

8  corresponding Driver Addendum, and the Rasier Software Sublicense & Online Services Agreement

9  ("Rasier Licensing Agreement")[2] by clicking "I agree" in a box presented to him through Defendants'

10  mobile application on July 22, 2013, July 31, 2014, and on October 3, 2014.  (*Id.*; *Mohamed* Colman

11  Decl. ¶ 10 & Exs. B-C.)

12          Plaintiff Mohamed's ability to speak and understand English is extremely limited, and it is

13  unlikely he would have been able to understand the meaning of any of the arbitration provisions that

14  Defendants' invoke through the present motion, had he even clicked on a link to view one of the

15  agreements on which Defendants' rely.  (Maya Decl. ¶¶ 5-6.)

16          In his complaint in this matter, Mr. Mohamed asserts claims for violation of the Fair Credit

17  Reporting Act ("FCRA"), the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal.

18  Civ. Code §§ 1785.1 *et seq.*, the Massachusetts Consumer Credit Reporting Act ("MCRA") M.G.L. c.

19  93 §§ 50 *et seq.*, and Massachusetts Criminal Offender Record Information ("CORI") Requirements,

20  M.G.L. c. 6 §§ 171A *et seq.*  (*Mohamed* Compl. ¶¶ 66-91.)

21  **B.      The Gillette Matter.**

22          In February 2013, Plaintiff began driving for Abbey Lane Limousine ("Abbey"), which

23  provides limousine and car services within the San Francisco Bay Area.  Shortly after starting with

24

25  _____

26  [2] The 2013 Licensing Agreement is attached as Exhibit D to the Declaration of Michael Colman filed
in the *Gillette* Action (ECF No. 16-2) and as Exhibit D to the Declaration of Michael Colman filed in

27  the *Mohamed* Action (ECF No. 28-2).  The 2014 Licensing Agreement is attached as Exhibit F to the
Declaration of Michael Colman filed in the *Mohamed* Action (ECF No. 28-2).  The Rasier

28  Agreement is attached as Exhibit H to the Declaration of Michael Colman filed in the *Mohamed*
Action (ECF No. 28-2).

1   Abbey, Abbey opened an Uber account on behalf of Plaintiff Gillette so that he could drive for Uber

2   using Abbey-owned vehicles.  (Gillette Decl. ¶ 3.)  Plaintiff successfully drove for Uber until April

3   2014, when Uber abruptly closed Plaintiff Gillette's account and terminated his employment without

4   notice or explanation.  (*Id.* ¶ 6).

5          Uber contends that Plaintiff Gillette is subject to the 2013 Licensing Agreement and Driver

6   Addendum.  Because Plaintiffs Gillette stopped working for Uber in April 2014 and did not name

7   Rasier LLC as a defendant, he is *not* subject to either the 2014 Licensing Agreement or the Rasier

8   Agreement.  (*Gillette* Def.'s Mot. 3.)  While Plaintiff Gillette was not aware of the 2013 Licensing

9   Agreement or the Driver Addendum, his ability to use the Uber application was contingent upon his

10  acceptance of their terms.  (Gillette Decl. ¶ 7; *Gillette* Colman Decl. Ex. B ("TO GO ONLINE, YOU

11  MUST AGREE TO ALL THE CONTRACTS BELOW") (capitalization in original).)  The 2013

12  Licensing Agreement and Driver Addendum do not include a signature line.  (2013 Licensing

13  Agreement.)  Rather, Plaintiff Gillette was required to click an acceptance button on a mobile phone

14  that stated he agreed to the terms of the Licensing Agreement and Driver Addendum.  (*Gillette* Colman

15  Decl. Ex. B.)  Although links to the Licensing Agreement and Driver Addendum were located on the

16  same screen as the acceptance button, nothing on the screen informed Plaintiff Gillette that the

17  Licensing Agreement and Driver Addendum included an arbitration provision that waived his right to a

18  jury trial.  (*Id.*)  Plaintiff Gillette never received a paper copy of the 2013 Licensing Agreement or the

19  arbitration provision.  (Gillette Decl. ¶ 8.)  The arbitration provision is located ninety-five paragraphs

20  into the Licensing Agreement on page 11 of 15 in a single-spaced document.  (2013 Licensing

21  Agreement § 14.3.)

22          During the time Plaintiff Gillette worked as an Uber driver, he did not have an email account.

23  (Gillette Decl. ¶ 5.)  An Abbey employee set up Plaintiff Gillette's Uber account on his behalf and

24  associated it with an email account to which Plaintiff Gillette did not have access.  (*Id.*)  Accordingly,

25  Plaintiff Gillette did not receive the July 23, 2013 email allegedly sent to him by Uber containing the

26  July 2013 Licensing Agreement and Online Services Agreement.  (*Id.*)

27          Plaintiff Gillette alleges that Defendant Uber failed to notify him or obtain his authorization

28  prior to procuring his consumer background report, and failed to provide him with a copy of his

consumer background report and a description of his rights under the FCRA.  (*Gillette* Am. Compl. ¶ 2.)  Based on Uber's non-compliance with applicable background check laws, Plaintiff Gillette seeks statutory penalties pursuant to the FCRA, 15 U.S.C. § 1681 *et seq*. on a class basis, and the California Investigative Consumer Reporting Agencies Act ("ICRAA"), California Civil Code § 1786 *et seq*. on an individual basis.  (*Gillette* Am. Compl. ¶ 1.)  Plaintiff Gillette also seeks civil penalties pursuant to the Private PAGA, California Labor Code § 2698 *et seq*. on a representative basis for violations of the California Labor Code.

**C.    Defendants Rely on Arbitration Agreements Previously Considered by the Court in the O'Connor Case.**

The first of the arbitration provisions invoked by Defendants here, against both Mohamed and Gillette (*Mohamed* Defs.' Mot. at 3; Gillette Def.'s Mot. at 3) is the same one this Court previously described as a "classic" example of "procedural unconscionability" in the matter entitled *O'Connor v. Uber Technologies*, Case No. 13-cv-03826-EMC (N.D. Cal.) (hereinafter, "*O'Connor*").  (Plaintiffs' Request for Judicial Notice ("RJN") Ex. C (*O'Connor* Tr. 6:18, Nov. 14, 2013.)  As this Court reasoned in *O'Connor*, "Uber drivers likely did not know the consequences of assenting to the Licensing Agreement.  Many likely were not aware they were losing the right to participate in this or any other lawsuit."  (RJN Ex. A (*O'Connor* Order 9 (Dec. 6, 2013).)  The Court re-affirmed its order to strike this arbitration clause in an order dated May 2, 2014.  (RJN Ex. B (*O'Connor* Order, May 2, 2014).)

The second arbitration provision invoked by Defendants here—against Mohamed only (*Mohamed* Defs.' Mot. at 3)—apparently was issued in response to the Court's rulings regarding the first arbitration provision in *O'Connor*.  This revised, 2014 Licensing Agreement includes changes to the arbitration opt-out provision and also, by its terms, seeks to limit membership in the *O'Connor* class, as well as the class represented in *Lavitman v. Uber Technologies, Inc.*, No. 13-cv-10172-DJC (D. Mass.).  (2014 Licensing Agreement § 14.3 ("[I]f you do agree to arbitration with Uber, you are agreeing in advance that you will not participate in . . . any such class, collective, and/or representative lawsuit.").)

**D.** **The Lavitman Court also Has Rejected Defendants' Attempts to Rely on Agreements Linked to its Updates and "I Agree" Boxes.**

This Court is not alone in rejecting Defendants' attempts to rely on the agreements invoked here to insulate themselves from suit. Judge Wilson of the Massachusetts Superior Court recently rejected Defendants' attempt to rely on the forum selection clause included in agreements linked to the "I agree" box that drivers are required to click in order to use the Uber Application. In that case the court recognized that, as is the case with the agreement updates on which Defendants rely here, drivers are "required to view a screen containing three hyperlinked contracts, including the updated Terms and Conditions, and to click two 'Yes, I agree' buttons . . . . A driver cannot access the Uber App, and therefore cannot locate potential riders, without going through this process." (RJN Ex. E (*Lavitman* Order 4, Jan. 26, 2015).) The court ultimately held that the forum selection clause contained in the agreements linked to such "I agree" buttons "is not enforceable and the Defendants are not entitled to summary judgment on that basis." (*Id.* at 8.)

## III. ARGUMENT

**A.** **The Express Terms of the 2013 Licensing Agreement Require Court Adjudication of All Claims.**

### 1. This Court—Not an Arbitrator—Determines the Validity of The PAGA Waiver.

The arbitration provision contained in the 2013 Licensing Agreement makes clear that this Court, not an arbitrator, determines the validity of the arbitration provision's class action, collective action, and private attorney general waiver:

> "Notwithstanding any other clause contained in this Agreement, any claim that all or part of the Class Action Waiver, Collective Action Waiver, and Private Attorney General Waiver is invalid, unenforceable, unconscionable, void or voidable *may be determined only by a court of competent jurisdiction and not by an arbitrator*."

(2013 Licensing Agreement § 14.3.v (emphasis added).) Indeed, Defendants do not dispute this provision. (*Gillette* Mot. 8 n4 ("The Arbitration Provision does leave to the Court the limited question of whether the class and representative action waivers are enforceable.").) Accordingly, the Court must determine the validity of the PAGA waiver.

565567.14

2.     **The PAGA Waiver is Unenforceable Under Iskanian v. CLS Transportation Los Angeles, LLC.**

The 2013 Licensing Agreement specifically prohibits private attorney general representative actions: "There will be no right or authority for any dispute to be brought, heard or arbitrated as a private attorney general representative action ('Private Attorney General Act Waiver')." (2013 Licensing Agreement § 14.3.v(c).)[3]  Contrary to Uber's contention, Plaintiffs' PAGA claims are representative in nature and may not be pursued on an individual basis.  *Cunningham v. Leslie's Poolmart, Inc.*, No. CV 13-2122 CAS CWX, 2013 WL 3233211, at *8 (C.D. Cal. June 25, 2013) ("PAGA does not recognize the existence of an individual claim.") (collecting cases).  Because the PAGA Waiver contained in the arbitration provision precludes representative actions in court and arbitration, it functions as a complete waiver of Plaintiffs' PAGA claims.

In *Iskanian*, the California Supreme Court held that such PAGA waivers are unenforceable as a matter of public policy.  59 Cal. 4th at 383 (2014) ("These statutes compel the conclusion that an employee's right to bring a PAGA action is unwaivable.").  The California Supreme Court reasoned that the waiver of PAGA representative actions "serves to disable one of the primary mechanisms for enforcing the Labor Code," and violates California Civil Code section 3513, which states that a "law established for a public reason cannot be contravened by private agreement."  *Id*. at 383.  The Supreme Court further held that the FAA does not preempt a rule against PAGA waivers because the purpose of the FAA is to "ensure an efficient forum for the resolution of *private* disputes, whereas a PAGA action is a dispute between an employer and the state Labor and Workforce Development Agency."  *Id*. at 384 (emphasis original).

This Court recently held that the FAA does not preempt the *Iskanian* anti-waiver rule.  *See Hernandez*, No. C-14-1531 EMC, 2015 WL 458083, at *6.  As this Court explained in *Hernandez*, the

---

[3] The 2014 Licensing Agreement and the Rasier Agreement include a similar provision: "You and the Company agree to resolve any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis."  (*Mohamed* Coleman Decl. Exs. F & G.)

*Iskanian* anti-waiver rule "does not threaten to undermine the fundamental attributes of arbitration."[4] *Hernandez*, 2015 WL 458083 at *6. Unlike Federal Rule of Civil Procedure 23, PAGA contains no requirements regarding numerosity, commonality, typicality, or adequacy. *Id.* Thus, PAGA representative actions lack the complexity of class certification. PAGA representative actions, moreover, do not preclude aggrieved employees from litigating their underlying wage and hour claims. *Id.* (citing *Arias v. Super. Ct.*, 46 Cal. 4th 969, 986 (2009)). Due to the non-preclusive effect of PAGA on employees' underlying Labor Code claims, there is no need for the formal procedural safeguards such as class notice, the opportunity to be heard, and the right to opt out. *Id.*; *see also Cunningham*, 2013 WL 3233211, at *11 ("As discussed in detail above, unlike class claims, PAGA claims do not bind absent employees, and hence do not require the complex proceedings that must be used when binding absent class members."). The Court further reasoned that the real party in interest in a PAGA representative action is the State of California, and that the FAA was not intended to govern disputes between government entities and private employers. *Hernandez*, 2015 WL 458083, at *7. Finally, the Court concluded that the principle of federalism disfavors restricting the authority of a state law enforcement agency acting within its police powers. *Id.* at *8.

On March 3, 2015, another court within the Northern District of California agreed with this Court's analysis in *Hernandez*, holding that the PAGA representative action waiver contained in the arbitration agreement at issue was invalid. (RJN Ex. F (*Zenelaj v. Handybook Inc.*, No. 14-cv-05449-TEH, Order 13 (N. D. Cal. Mar. 3, 2015)) ("After careful consideration, and with full awareness that this issue may soon be resolved by the Ninth Circuit Court of Appeals, this Court chooses to follow Judge Chen's well-reasoned decision in *Hernandez*.").

Here, like in *Hernandez* and *Zenelaj*, the Court should conclude that the arbitration provision's PAGA waiver is unenforceable.

---

[4] In *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 1751 (2011), the United States Supreme Court expressed concern that arbitration was ill-suited to class action cases due to the complexity and formality of aggregate proceedings.

### 3. The PAGA Waiver is Not Severable, Thus Invalidating the Entire Arbitration Provision.

Uber's arbitration provision expressly states that the PAGA waiver is not severable from the arbitration provision:

> The Private Attorney General Waiver *shall not be severable from this Arbitration Provision* in any case in which a civil court of competent jurisdiction finds the Private Attorney General Waiver is unenforceable. In such instances and where the claim is brought as a private attorney general, such private attorney general claim must be litigated in a civil court of competent jurisdiction.

(2013 Licensing Agreement § 14.3.v(c) (emphasis added).)  The non-severability of the PAGA waiver is confirmed in the last section of the arbitration provision titled "Enforcement of this Agreement," which expressly excepts the PAGA waiver from this savings clause: "*Except as stated in subsection v, above*, in the event any portion of this Arbitration Provision is unenforceable, the remainder of this arbitration provision will be enforceable." (2013 Licensing Agreement § 14.3.ix (emphasis added).)

It is well settled that Courts must invalidate the entirety of an arbitration provision where an unenforceable provision is non-severable.  For example, in *Chalk v. T-Mobile USA, Inc.*, the Ninth Circuit held that a non-severable class action waiver rendered the entire arbitration provision unenforceable:

> In the usual case, we would be required to determine whether the unenforceable class action waiver should be severed from the arbitration agreement as a whole…. However, in the present case the arbitration agreement itself includes a provision prohibiting severance of the class action waiver. Therefore, in accordance with its severability clause, the arbitration agreement as a whole is unenforceable.

560 F.3d 1087, 1098 (9th Cir. 2009); *see also Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1219 (9th Cir. 2008) ("Having determined that the (nonseverable) class action waiver is invalid under Washington law, we hold that T–Mobile's arbitration agreement is unenforceable under Washington law."); *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 986-87 (9th Cir. 2007) ("Cingular's arbitration provision has a nonseverability clause . . . Accordingly, here, the entire arbitration clause is void and arbitration cannot be compelled under the Federal Arbitration Act."); *Mathias v. Rent-A-Ctr., Inc.*, No. CIV. S-10-1476 LKK/K, 2010 WL 3715059, at *6 (E.D. Cal. Sept. 15, 2010) ("The class action waiver clearly states that the clause is not severable from the Agreement.

1   Consequently, the entire agreement is unenforceable because the class action clause is unenforceable.

2   Thus, defendant's motion to compel arbitration is denied.").[5]

3       Because the PAGA waiver is unenforceable and non-severable from the arbitration provision,

4   the entire arbitration provision is invalid.  Accordingly, all claims alleged by Plaintiff Gillette must be

5   adjudicated by this Court.

6       Although the PAGA waiver is unenforceable and thus invalidates the entirety of the arbitration

7   provision, Plaintiffs also argue that no agreement to arbitrate was formed, and that that the arbitration

8   provision contained in the 2013 Licensing Agreement, 2014 Licensing Agreement, and Rasier

9   Licensing Agreement are unconscionable.

10  **B.**     **No Agreement to Arbitrate Was Formed.**

11      "'[I]t is beyond cavil that arbitration is a matter of contract and a party cannot be required to

12  submit to arbitration any dispute which he has not agreed so to submit.'"  *Comb v. Paypal, Inc.*, 218 F.

13  Supp. 2d 1165, 1170-71 (N.D. Cal. 2002) (citation omitted).  Accordingly, it is this Court's duty in the

14  first instance to determine "whether a valid arbitration agreement exists," which requires application of

15  "'ordinary state-law principles that govern the formation of contracts.'"  *Nguyen v. Barnes & Noble*

16  *Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citation omitted).  The agreements invoked by Defendants

17  all include California choice-of-law provisions.  (2013 Licensing Agreement § 14.1; 2014 Licensing

18  Agreement § 14.1; Rasier Licensing Agreement 17.)

19          **1.**     **Defendants Do Not Demonstrate the Existence of Binding Agreements by a**
                       **Preponderance of the Evidence.**

20

21      "'Because the existence of the agreement is a statutory prerequisite to granting the petition, the

22  petitioner bears the burden of proving its existence by a preponderance of the evidence.'"  *Comb*, 218

23  F. Supp. 2d at 1171 (quoting *Rosenthal v. Great W. Fin. Securities Corp.*, 14 Cal. 4th 394, 413 (1996)).

24

25  _____

26  [5] Although the severability provision is clear, Uber may contend that this provision is ambiguous.  It is
    well settled, however, that any ambiguity is "resolved against the drafter," particularly in cases of
27  adhesion contracts.  *Slottow v. Am. Cas. Co. of Reading, Pa.*, 10 F.3d 1355, 1361 (9th Cir. 1993);
    *Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 798 (1998); *Motors Ins. Corp. v. Bodie*, 770 F. Supp. 547,
28  548-49 (E.D. Cal. 1991) (*quoting Neal v. State Farm Ins. Co.*, 188 Cal. App. 2d 690, 694-95 (1961)).

1    Defendants do not meet their burden of proving the existence of valid arbitration agreements

2    with Plaintiffs by a preponderance of the evidence.  Defendants do not submit any copies of

3    agreements actually signed by Plaintiffs, nor are the copies of the emails that Defendants claim to have

4    sent to Plaintiffs concerning the updates to Defendants' agreements that included the new arbitration

5    provisions bear any specific indicia that it actually was sent to either Plaintiff.  That email is not dated

6    nor does it contain either Plaintiff's email address or even their names.  Rather, the email is a mere

7    form that has not been filled in.  (*Gillette* Colman Decl. Ex. A; *Mohamed* Colman Decl. Ex. A.)

8         **2.    Defendants' Updates Are Unenforceable Clickwrap Agreements.**

9    The agreement updates on which Defendants rely are a form of what might be described as a

10   "clickwrap" agreement.  *E.g.*, *Nguyen*, 763 F.3d at 1175; *Specht v. Netscape Comm'ns Corp.*, 306 F.3d

11   17, 22 n.4 (2d Cir. 2002).  The Ninth Circuit has described clickwrap agreements as those "in which

12   website users are required to click on an 'I agree' box after being presented with a list of terms and

13   conditions of use." *Nguyen*, 763 F.3d at 1175-76.  While some courts have enforced such agreements,

14   the outcome "depend[s] on the nature of the parties, type of notice provided, and other factors."

15   *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *6 (N.D. Cal. June 25,

16   2014); *see also Nguyen*, 763 F.3d at 1177 ("[W]here, as here, there is no evidence that the website user

17   had actual knowledge of the agreement, the validity of the browsewrap agreement turns on whether the

18   website puts a reasonably prudent user on inquiry notice of the terms of the contract.").

19   Here, the terms and conditions Defendants sought to impose upon drivers through the

20   agreement updates at issue were not actually displayed along with the "I agree" box; rather, drivers

21   were presented with links through which they presumably could have viewed these lengthy agreements

22   on the small screens of their mobile phones (while they attempted to get the Uber app up and running

23   in order to find riders and earn money).  (*Gillette* Colman Decl. ¶ 10 & Exs. B-C; *Mohamed* Colman

24   Decl. ¶ 10 & Exs. B-C.)  In this respect, the updates are similar to "'browsewrap' agreements, where a

25   website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom

26   of the screen." *Nguyen*, 763 F.3d at 1176.

27   Whatever label one applies to Defendants' updates and perfunctory "I agree" boxes, they failed

28   to give Plaintiffs and other drivers adequate notice that they were giving up important rights including

11

their right to have a jury hear any claims they may assert against Defendants, their right to participate in the ongoing *O'Connor* and *Lavitman* actions, and their right to assert claims on a class-wide or other representative basis.  *See Lee v. Intelius Inc.*, 737 F.3d 1254, 1257-60 (9th Cir. 2013) (holding no agreement to arbitrate was formed where defendants relied on an arbitration provision contained in a "'Terms and Conditions' hyperlink" presented on a website screen on which plaintiff clicked "Yes"); *Specht*, 306 F.3d at 21-22 (affirming denial of motion to compel arbitration where "plaintiffs acknowledge that when they proceeded to initiate installation of Communicator, they were automatically shown a scrollable text of that program's license agreement and were not permitted to complete the installation until they had clicked on a 'Yes' button to indicate that they accepted all the license terms.").

The 2013 Licensing Agreement and Driver Addendum—the earliest agreements containing an arbitration provision on which Defendants rely, which are attached as Exhibits D and E to the Colman Declarations filed in both *Mohamed* and *Gillette*—include the same arbitration provision this Court previously described as a "classic" example of "procedural unconscionability."  (RJN, Ex. C (*O'Connor* Tr. 6:18, Nov. 14, 2013.))  In order to locate this arbitration provision, drivers first would have had to click on a link appearing on their mobile phone when they turned on the Uber app, above the "I agree" box that they were required to click in order to open the app and start working.  (*Gillette* Colman Decl. ¶ 10 & Ex. B; *Mohamed* Colman Decl. ¶ 10 & Ex. B.)

If drivers had clicked on the links to the updated agreements that Defendants delivered through the app (and it is doubtful many drivers did click on those links), the app presumably would have displayed the agreements on the small screens of the drivers' mobile phones.  (*Gillette* Colman Decl. ¶ 10; *Mohamed* Colman Decl. ¶ 10.)  At that point, in order to view the arbitration provision contained in the July 2013 Licensing Agreement, drivers would have had to scroll down to find the arbitration provision buried in Paragraph 14.3, which begins some 11 pages into the July 2013 Licensing Agreement as it is presented to the Court in Exhibit D to the Gillette and Mohamed Colman Declarations, and an unknown-but-presumably-larger number of screens down the agreement as it would have been displayed to drivers on their mobile phones.

Similarly, the arbitration provision contained in the 2013 Driver Addendum is buried some three pages into that addendum as it is presented to the Court in Exhibit E to the *Gillette* and *Mohamed* Colman Declarations, and again an unknown-but-presumably-larger number of screens down the agreement as it would have been displayed to drivers on their mobile phones.  (*Gillette* Colman Decl. Ex. E. (This arbitration provision does little more than reference the lengthier arbitration provision contained in the July 2013 Licensing Agreement.); *Mohamed* Colman Decl. Ex E (same).)

Defendants rely on "cautionary notices" that they then inserted into the later June 2014 Licensing Agreement and Driver Addendum, as well as the Rasier Licensing Agreement.  (*Mohamed* Defs.' Mot. 6.)  While Defendants assert that this notice is presented "on the first page" of these agreements (*id.*), Defendants have not presented the agreements as they would have been delivered to the relatively small screen of a driver's mobile phone; it is doubtful that these notices would have appeared on the first screen of the agreements as they would have appeared to drivers had they clicked on the links to view the agreements on their mobile phones.  (2014 Licensing Agreement 1; 2014 Driver Addendum 1 (*Mohamed* Colman Decl. Ex. G); Rasier Licensing Agreement 1 (*Mohamed* Coleman Decl. Ex. H).)

Ultimately, Defendants do not contend that any notice concerning arbitration or a class-action waiver was presented to drivers in close proximity to the links they would have had to click in order to view the updates containing Defendant's arbitration provisions.  (*Gillette* Colman Decl. ¶ 10 & Exs. B-C; *Mohamed* Colman Decl. ¶ 10 & Exs. B-C.)  Under these circumstances, Defendants did not give Plaintiffs adequate notice of the impact that clicking "I agree" would have, and Plaintiffs cannot be held to have agreed to the arbitration clauses Defendants seek to invoke.  *Cf. Nguyen*, 763 F.3d at 1177 ("[W]here, as here, there is no evidence that the website user had actual knowledge of the agreement, the validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract."); *id.* at 179 ("[E]ven close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice.").[6]  No agreement to arbitrate exists.

---

[6] Defendants' authority is distinguishable.  The employment agreement including the arbitration agreement at issue in *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F. 3d 1072, 1074 (9th Cir. 2014)

13

565567.14

C.     **The Delegation Clause is Unenforceable.**

     1.     **The Delegation Clause is Unconscionable.**

Delegation clauses are unenforceable where the terms of an arbitration agreement "*as applied to the delegation provision render[] that provision unconscionable.*"  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 74 (2010) (emphasis in original).  Here, the terms of Defendants' agreements are unconscionable as applied to the delegation provision.

First, as discussed fully below, the arbitration provisions herein are procedurally unconscionable because they are contained in contracts of adhesion that manifest a high degree of both oppression and surprise.  *See*, *infra*, Section D.1.a.

Second, the cost shifting provision, as applied to the delegation clause, is unconscionable.  The arbitration provision contained in the 2013 Licensing Agreement requires arbitration costs and fees to be apportioned between the parties in accordance with "applicable law."  (2013 Licensing Agreement § 14.3.vi.)  Similarly, the arbitration provision contained in the 2014 Licensing Agreement requires arbitration costs and fees to be "apportioned equally between the Parties or as otherwise required by applicable law."  (2014 Licensing Agreement § 14.3.vi.)  In order to challenge the delegation provision on which Defendants rely, Plaintiffs would be required to incur significant arbitration fees and costs.  The "applicable JAMS rules" (2013 Licensing Agreement) or "the JAMS Streamlined Arbitration Rules and Procedures," (2014 Licensing Agreement) shall apply when the parties are not able to agree upon an arbitrator, and therefore will be imposed at the discretion of either party.  (2013 Licensing Agreement § 14.3; 2014 Licensing Agreement § 14.3.iii.)  Those rules, in turn, reference an un-specified "fee schedule."  *See* JAMS Streamlined Rules *available at* http://www.jamsadr.com/rules-streamlined-arbitration/#Rule26 (last visited Mar. 2, 2015).  Plaintiffs' counsel's recent experience in an action under these same JAMS rules demonstrate that initial fees that would be due from each Plaintiff to challenge just the delegation clause and the enforceability of the arbitration provision in

_____

(continued . . .)

(cited in *Mohamed* Defs.' Mot. 11), was included in a set of documents physically received by the plaintiff in that action; the case did not concern any sort of click-through agreement like Defendant's in this case.

1  arbitration easily could amount to thousands of dollars.  (*See* Maya Decl. Ex. A (JAMS Fee Schedule

2  from *Taylor v. Sober College*) & Ex. C (JAMS Streamlined Rules).)  And, after even relatively minor

3  proceedings in which the parties submit the issue of arbitrability to a JAMS arbitrator (many of whom

4  are retired judges), the bill is likely to grow prohibitively large.  (*See id.* at ¶ 3 & Ex. B.)

5      While Defendants contend that they will pay for arbitration costs, their arbitration provision

6  creates no obligation for Defendants to pay such costs.  As discussed in Section III.D.2.d, counsel for

7  Defendants represented to this Court that Uber drivers would be required to split the costs of

8  arbitration with Defendants.  Moreover, Defendants contend that case law prohibiting cost shifting to

9  plaintiffs—such as *Armendariz*—does not apply to Uber drivers, and is purportedly overruled by

10  *Concepcion*.  (*Gillette* Def.'s. Mot. 11.)

11      Accordingly, the delegation clause is unenforceable because the terms of the arbitration

12  provision, as applied to the delegation clause, are both procedurally and substantively unconscionable.

13      **2.      The Delegation Clause is Conflicting and Ambiguous.**

14      The arbitration provision's delegation clause, requiring that issues of arbitrability be decided by

15  the arbitrator, is conflicting and ambiguous and therefore cannot be given effect. The Supreme Court

16  has held that courts must apply a heightened standard to the question of whether the parties have

17  actually agreed to arbitrate arbitrability: "[c]ourts should not assume that the parties agreed to arbitrate

18  arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."  *First Options of*

19  *Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (quoting *AT&T Techs. v. Comm'ns Workers*, 475 U.S.

20  643, 649 (1986)). Where there is ambiguity about the delegation, questions of arbitrability must be

21  decided by the courts.  *See First Options* at 945.  In this case, there is not only ambiguity, but direct

22  conflict regarding delegation.  Accordingly, the delegation clause is insufficient to overcome the

23  presumption in favor of the courts, and this court must therefore decide the gateway questions of

24  whether the parties validly agreed to arbitrate the dispute at issue.  *See Oracle Am., Inc. v. Myriad Grp.*

25  *A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) ("In other words, there is a presumption that courts will

26  decide which issues are arbitrable; the federal policy in favor of arbitration does not extend to deciding

27  questions of arbitrability").

28

The delegation clause in the arbitration provision is conflicting and ambiguous in several respects.  First, it conflicts with another provision located in the same section of the Licensing Agreement, Section 14 entitled "Governing Law and Jurisdiction."  The delegation clause is set out in Section 14.3(i), and it is preceded by subsection 14.1.  Subsection 14.1 states that that "*any disputes*, actions, claims or causes of action arising out of or in connection with this Agreement. . . *shall be subject to the exclusive jurisdiction of the state and federal courts* located in the City and County of San Francisco, California."  (2013 Licensing Agreement § 14.1 (emphasis added); 2014 Licensing Agreement § 14.1; *see also* Rasier Licensing Agreement 17.)  This term requires disputes to be resolved in court, and conflicts with the later delegation clause in the arbitration provision, which puts all disputes in the jurisdiction of the arbitrator: "Except as [the arbitration provision] otherwise provides, this arbitration provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law."  (2013 Licensing Agreement § 14.3.i; 2014 Licensing Agreement § 14.3.i; Rasier Licensing Agreement 12.)  There is direct conflict between these two sections of the Agreement, as disputes are subject to the "exclusive" jurisdiction of the courts and yet must also be arbitrated.  Where, as here, the delegation clause is incompatible with other terms of the agreement, delegation cannot be said to be clear and unmistakable.

There is also a conflict within the July 2013 arbitration provision itself, specifically pertaining to class, collective, and representative claims.  Subsection 14.3.v of the arbitration provision requires that class, collective, and representative actions "must be litigated in a civil court," if a court finds that the waiver of such aggregate claims is unenforceable.  (2013 Licensing Agreement § 14.3.v(a).)  Pursuant to the terms of this subsection, the enforceability of the Class Action Waiver is explicitly not arbitrable, but rather must be decided by the courts.  This section conflicts with the delegation clause, which states that the disputes subject to arbitration "include *without limitation* disputes arising out of or relating to . . . *enforceability*, revocability or validity of the arbitration provision or *any portion of the Arbitration Provision*."  (2013 Licensing Agreement § 14.3.i (emphasis added).)  In this way, these two provisions conflict as to whether the waiver of aggregate claims must be decided by a court or delegated to an arbitrator.

At the very least, it is unclear from the 2013, 2014, and Rasier Licensing Agreements how these conflicting provisions as to who decides arbitrability would be resolved. In *In re Toyota Motor Corp.*, the district court for the Central District of California found that where there was conflict in the procedures for dispute resolution, the parties' intent was unclear and therefore could not meet the heightened standard required for enforcing a delegation provision. 838 F. Supp. 2d 967, 992 (C.D. Cal. 2012) ("In light of the conflicting arbitration provisions, the parties' intent is not clear, and does not surmount the hurdle set by *First Options*. To the contrary, read together, the conflicting arbitration provisions are not only ambiguous, they are fundamentally incompatible."). Similar to that case, the Licensing Agreements here simultaneously directs jurisdiction to the courts and the arbitrator, creating a conflict that renders the delegation clause unenforceable.

Finally, in addition to the conflicting language, the arbitration provision is vague as to the arbitrability of specific claims, creating additional ambiguity. Subsection 14.2 explicitly leaves open the question of when an issue might be subject to arbitration, stating that any disputes arising out of the agreement "*may* be subject to arbitration" (2013 Licensing Agreement § 14.2; 2014 Licensing Agreement § 14.2 (emphasis added).) This open-ended language does not provide a clear statement of the parties' intent regarding arbitrability of any individual issue, such as the crucial and easily-overlooked issue of who decides the question of arbitrability. *See First Options*, 514 U.S. at 945) ("A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers."). The vagueness of this language creates enough ambiguity such that Uber cannot overcome the presumption that the courts should decide the initial question of arbitrability. *See Oracle Am., Inc.*, 724 F.3d at 1072.

Because the delegation of the arbitrability question to the arbitrator is not "clear and unmistakable," the heightened standard has not been met and the Court must decide this issue.

**D.     The Arbitration Provisions are Invalid Because They are Procedurally and Substantively Unconscionable.**

"Unconscionability has both procedural and substantive components. . . . The procedural component is satisfied by the existence of unequal bargaining positions and hidden terms common in the context of adhesion contracts. . . . The substantive component is satisfied by overly harsh or one-

sided results that 'shock the conscience.' . . . The two elements operate on a sliding scale such that the more significant one is, the less significant the other need be." *Comb*, 218 F. Supp. 2d at 1172 (citing *Blake v. Ecker*, 93 Cal. App. 4th 728, 742-43 (2001)).

"The procedural component focuses on the factors of oppression and surprise. . . . Oppression results where there is no real negotiation of contract terms because of unequal bargaining power. . . . '"Surprise" involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms.'" *Patterson v. ITT Consumer Fin. Corp.*, 14 Cal. App. 4th 1659, 1664 (1993) (citations omitted); *see also Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 245 & n.8 (2014) (same).

### 1. The Arbitration Provisions are Procedurally Unconscionable.

#### a. Defendants' Agreement Updates Are Permeated with Oppression and Surprise.

"A claim of unconscionability cannot be determined merely by examining the face of the contract; there must be an inquiry into the circumstances under which the contract was executed, its purpose, and effect." *Comb*, 218 F. Supp. 2d at 1172 (citing *Blake*, 93 Cal. App. 4th at 743). Here, it is important to keep in mind that the updates on which Defendants rely were delivered to Plaintiffs and similarly situated drivers on mobile phones while they were attempting to turn on the Uber app and start using it to find riders and earn fares, as they previously had done.

Defendants' updates that included the newly added arbitration provisions constitute contracts of adhesion and are procedurally unconscionable.[7] The arbitration provisions are contracts of adhesion because they are standardized clauses drafted by Defendants (who have superior bargaining strength relative to Uber drivers or those seeking to become Uber drivers) and the agreements are presented on a take-it-or-leave-it basis. *See Ajamian v. Cantor CO2e, L.P.*, 203 Cal. App. 4th 771, 796 (2012) ("The finding that the arbitration provision was part of a nonnegotiated employment agreement establishes, by itself, some degree of procedural unconscionability."); *Merkin v. Vonage Am. Inc.*, No.

---

[7] "'The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'" *Armendariz v. Found. Health Psychcare Serv.*, 24 Cal. 4th 83, 113 (2000) (citations and internal quotation omitted).

2:13-CV-08026-CAS, 2014 WL 457942, at *6 (C.D. Cal. Feb. 3, 2014) ("Such 'take-it-or-leave-it' contracts of adhesion are frequently found to be oppressive under California law."); *Lou v. Ma Labs., Inc.*, No. 12-cv-05409 WHA, 2013 WL 2156316, at *2 (N. D. Cal. May 17, 2013) (*quoting Shroyer*, 498 F.3d at 983); *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916 (9th Cir. 2013); *Zaborowski v. MHN Gov't Servs., Inc.*, 936 F. Supp. 2d 1145, 1151 (N.D. Cal. 2013) (*citing Lau v. Mercedes-Benz USA, LLC*, 11-CV-1940 MEJ, 2012 WL 370557, at *8 (N.D. Cal. Jan. 31, 2012)).

By the time the updates were delivered to Plaintiffs' mobile phones, they were already working as Uber drivers. Like other drivers, they were prompted to click "I agree" on Defendants' updates when they opened the app in order to use it to find riders and thus make a living. In many if not most instances it is quite likely that drivers presented with Defendants' updates already were in the car and driving when the "I agree" box was presented to them. Drivers turning the app on typically are just trying to get it up and running as fast as possible so as not to interfere with their driving and to start earning money; they are not well-positioned to review lengthy agreements on the small screens of their phones, read the fine print, and decide to take the time to opt out (if the particular update allows them to do so) rather than proceed with earning their livelihood for the day or night. This, combined with the fact that no arbitration provision was included in the initial agreements concerning Plaintiffs, leads to the conclusion that Defendants' arbitration provisions involve substantial surprise and oppression and are procedurally unconscionable contracts of adhesion. *Cf. Armendariz*, 24 Cal. 4th at 115 (reasoning that "in the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement").

Even if Plaintiffs had received a meaningful opportunity to review and negotiate the Licensing Agreements, which they did not, the arbitration provisions manifest other significant indicia of surprise and oppression. First, Defendants retain the ability to unilaterally modify the Licensing Agreement and arbitration provisions contained therein: "Uber reserves the right to modify the terms and conditions of this Agreement at any time, effective upon publishing an updated version of this Agreement at http://www.uber.com or on the Software." (2013 Licensing Agreement § 12.1; 2014

1   Licensing Agreement § 12.1; Rasier Licensing Agreement 16.)  Indeed, Defendants have exercised the

2   right to unilateral modification at least twice, updating or "rolling out" new Licensing Agreements in

3   both 2013 and 2014.  (*See Gillette* Colman Decl. ¶ 10, Ex. B ("Uber has updated its partner and driver

4   contracts.  TO GO ONLINE, YOU MUST AGREE TO ALL CONTRACTS BELOW."); *Mohamed*

5   Colman Decl. ¶¶ 10, 12, Ex. B (same).)  Here, the unilateral right to modify the Licensing Agreement

6   transforms "an ordinary contract of adhesion into a contract that [gives Defendants] the largely

7   unfettered power to control the terms of its relationship with its [drivers]."  *Merkin*, 2014 WL 457942,

8   at *7.  In this way, the Plaintiffs' ability to opt out of the arbitration provision is meaningless because

9   Defendants have the ability to simply "roll out" another version of the Licensing Agreement that

10  invalidates any previous opt out.  Accordingly, Defendant's unilateral right to modify the Licensing

11  Agreement demonstrates significant oppression and surprise.  *Id.* ("Here, as a result of Vonage's

12  authority to modify the TOS at will, there is in effect no 'balance of bargaining power'; all of the

13  power rests in Vonage's hands.  The Court therefore finds that the TOS involves a high degree of

14  oppression."); *Poublon v. Robinson Co.*, No. 2:12-CV-06654-CAS MA, 2015 WL 588515, at *5 (C.D.

15  Cal. Jan. 12, 2015) ("Furthermore, as discussed below, defendants have pointed to no contractual

16  limitation on defendants' ability to unilaterally modify the Arbitration Procedures on the company

17  intranet, adding an additional element of surprise.").

18          Second, the 2013 Licensing Agreement neither identifies the applicable arbitration rules, nor

19  includes them with the agreement.  Rather, the 2013 Licensing Agreement merely states that the

20  "applicable JAMS rules will apply" if the "Parties cannot agree on an Arbitrator."  (2013 Licensing

21  Agreement § 14.3.iii.)  This failure to provide the rules governing the arbitration is procedurally

22  unconscionable because Plaintiffs and others are "forced to go to another source to find out the full

23  import of what he or she is about to sign—and must go to that effort prior to signing."  *Harper v.*

24  *Ultimo*, 113 Cal. App. 4th 1402, 1406 (2003); *Lou,* 2013 WL 2156316, at *3 (collecting cases finding

25  the failure to attach governing arbitration rules procedurally unconscionable); *see also Samaniego v.*

26  *Empire Today LLC*, 205 Cal. App. 4th 1138, 1146 (2012).  Indeed, "[n]umerous cases have held that

27  the failure to provide a copy of the arbitration rules to which the employee would be bound, supported

28  a finding of procedural unconscionability."  *Trivedi v. Curexo Tech. Corp.*, 189 Cal. App. 4th 387, 393

1   (2010) (collecting cases).  Moreover, the 2013 Licensing Agreement contains no instructions on how

2   to locate the arbitration rules.  In order to locate the JAMS rules, one must go to www.jamsadr.com,

3   then find and click on the "Rules / Clauses" link.  Once at that page, Plaintiffs would have to speculate

4   as to which set of rules are the "applicable JAMS rules," which include, among others, the following:

5   (1) Comprehensive Arbitration; (2) Streamlined Arbitration; (3) Class Action Procedure; (4)

6   Employment Arbitration.  Accordingly, the failure to identify applicable rules creates significant

7   surprise.

8         Third, all of the agreements at issue were presented in English only.  In *Samaniego*, the court

9   found the arbitration agreements at issue to be procedurally unconscionable because they were

10   presented in English only, and the plaintiffs had "limited or no literacy in English."  *Samaniego*, 205

11   Cal. App. 4th at 1145-46.  Additionally, the plaintiffs were "told they could not continue employment

12   if they did not sign the agreements."  *Id.*  Here, like in *Samaniego*, Plaintiff Mohamed has limited

13   English literacy.  (Maya Decl. ¶ 6.)  Thus, it is highly unlikely that he had the capacity to understand

14   any of the Licensing Agreements and Driver Addendums, which are sophisticated legal documents.

15   (*Id.* ¶ 7.)  His ability to continue using the Uber application was similarly contingent upon his

16   acceptance of the Licensing Agreements and Driver Addendums.  (*Mohamed* Colman Decl. ¶¶ 10, 12,

17   Ex. B.)  It should also be emphasized that Defendants provide no procedure by which drivers may

18   request the Licensing Agreements and Driver Addendums in languages other than English despite the

19   fact that Uber operates worldwide, including in Kenya where Plaintiff Mohamed was born and raised.

20   The provision of English-only Licensing Agreements increases the amount of procedural

21   unconscionabilty for Plaintiff Mohamed.

22         In short, the 2013, 2014, and Rasier Licensing Agreements present a high degree of oppression

23   and surprise.  The agreements are oppressive because they are contracts of adhesion that provided

24   Plaintiffs no meaningful opportunity to negotiate their terms.  Moreover, Defendants retain the right to

25   modify the Licensing Agreements at will without notice.  The agreements cause surprise because they

26   were presented to Plaintiffs in small text on mobile phones at moments in time when Plaintiffs were

27   either driving their vehicles or preparing to drive and focused on trying to earn a living.  Furthermore,

28

the 2013 Licensing Agreement does not identify the applicable arbitration rules.  Accordingly, the

2013, 2014, and Rasier Licensing Agreements are procedurally unconscionable.

### b. Defendants' Conflicting Opt-Out Provisions Do Not Render the Agreements Conscionable.

The 2013 Licensing Agreement includes an opt-out provision that would require Plaintiffs to

deliver any opt-out notice via "a nationally recognized overnight delivery service or by hand delivery."

(2013 Licensing Agreement § 14.3.viii.)  The Court previously found this provision unconscionable.

(RJN Ex. C (*O'Connor* Tr. 6:18, Nov. 14, 2013.)  Moreover, the July 2013 Driver Addendum, which is

the only document that clearly applies to "drivers" rather than "transportation companies," lacks any

opt-out provision whatsoever.  (*Gillette* Colman Decl. Ex. E; *Mohamed* Colman Decl. Ex. E.)

Defendant's reliance on *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F. 3d 1072, 1074 (9th

Cir. 2014) is misplaced.  The employment agreement and arbitration agreement at issue in that case

were included in a set of documents physically received by the plaintiff.  *Id.* at 1077.  There was no

evidence in the record suggesting that the plaintiff did not understand the terms of the agreement.  *Id.*

at 1074 ("She does not contest the district court's findings that she made a fully informed and voluntary

decision, and that no threats of termination or retaliation were made to influence her decision.").[8]

Here, the arbitration provisions were contained at the end of a prolix agreement presented in

small text on a mobile phone application.  Plaintiff Gillette did not have an advance opportunity to

review the 2013 Licensing Agreement because he did not have an email address while working for

Defendant, and thus did not receive the email allegedly sent on July 23, 2013 providing links to the

agreement.  (Gillette Decl. ¶ 5.)  Similarly, Plaintiff Mohamed is not a native English speaker, and thus

his ability to comprehend such a complex agreement, including the opt-out provision, is limited.

(Maya Decl. ¶ 6.)  Once the Plaintiffs clicked through the agreements, moreover, they had no

---

[8] *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198 (9th Cir. 2002) and *Rosas v. Macy's, Inc.*, No. CV11-7318 PSG (PLAx), 2012 WL 365274 (C.D. Cal. Aug. 24, 2012), are similarly distinguishable. In *Ahmed*, the plaintiff was provided with paper documents that included the arbitration agreement and opt out form. 283 F.3d at 1199 ("The package contained (1) an Associate Issue Resolution Handbook, (2) the Circuit City Dispute Resolution Rules and Procedures, and (3) a Circuit City "Opt Out" Form.").  In *Rosas*, the plaintiffs were presented with a paper copy of the opt out form.  2012 WL 3656274, at *2 ("Employees may elect to opt out of Step 4–Arbitration by submitting a one-page Opt–Out Form within thirty days of hire.")

565567.14

opportunity to access the agreements through the Uber application itself. (Maya Decl. ¶ 6, Ex. E.) Unlike the plaintiff in *Johnmohammadi*, Plaintiffs herein were not provided with a meaningful opportunity to opt out of the arbitration provision.

In response to this Court's ruling in the *O'Connor* case, Defendants then sent a second update to Plaintiff Mohamed's mobile phone—the 2014 Licensing Agreement and Driver Addendum and the Rasier Agreement—this time including arbitration provisions with opt-out procedures that allow drivers to opt-out via email. (2014 Licensing Agreement § 14.3.viii; Rasier Licensing Agreement 15). Such nuances simply cannot be foisted upon Plaintiff Mohamed and similarly situated drivers simply by sending an update with an "I agree" box that such drivers must accept in order to perform their job and earn their pay. *See Lee*, 737 F.3d at 1259-60 ("We are skeptical that Lee 'objectively manifested assent' to the contract merely by providing and confirming his email address and by clicking on the prominent 'YES' button.").

### 2.   The Arbitration Provisions are Substantively Unconscionable.

Substantive unconscionability "is concerned with whether the contract is overly harsh or generates one-sided results." *Mohebbi v. Khazen*, No. 13-cv-03044 BLF, 2014 WL 6845477, at *6 (N.D. Cal. Dec. 4, 2014) (citation and internal quotations omitted). Here, Defendants' arbitration provisions are substantively unconscionable for numerous reasons: (1) it imposes a broad confidentiality requirement that provides Defendants with unfair advantages in the arbitral forum; (2) it lacks mutuality by forcing claims most likely brought by employees to arbitration while exempting from arbitration the one type of claim that Uber would likely raise; (3) Defendants retains the unilateral right to modify the terms of the agreement without notice; (4) Plaintiff faces the risk of paying arbitration related fees and costs not required in court, including the costs of arbitrating in a distant forum; and (5) it seeks to waive Plaintiff's statutory right to bring a PAGA claim.

### a.   The Confidentiality Provision is Substantively Unconscionable.

It is well established in the Ninth Circuit that broad confidentiality clauses in arbitration provisions are substantively unconscionable because they unfairly favor companies/employers while disadvantaging individuals/employees. *See Ting v. AT&T*, 319 F.3d 1126, 1152 (9th Cir. 2003); *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1002 (9th Cir. 2010); *Davis v. O'Melveny & Myers*, 485 F.3d

1066, 1079 and n.5 (9th Cir. 2007), overruled on other grounds recognized by *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 933-34 (9th Cir. 2013).

In *Ting*, the Ninth Circuit held that a broad confidentiality clause[9] was substantively unconscionable under California law. 319 F.3d at 1152. The court succinctly explained:

> We conclude, however, that if the company succeeds in imposing a gag order, plaintiffs are unable to mitigate the advantages inherent in being a repeat player. This is particularly harmful here, because the contract at issue affects seven million Californians. Thus, AT&T has placed itself in a far superior legal posture by ensuring that none of its potential opponents have access to precedent while, at the same time, AT&T accumulates a wealth of knowledge on how to negotiate the terms of its own unilaterally crafted contract. Further, the unavailability of arbitral decisions may prevent potential plaintiffs from obtaining the information needed to build a case of intentional misconduct or unlawful discrimination against AT&T. For these reasons, we hold that the district court did not err in finding the secrecy provision unconscionable.

*Id.*

Similarly, in *Davis*, the Ninth Circuit invalidated a confidentiality clause, which stated "no one shall divulge to any third party or person not directly involved in the mediation or arbitration the content of the pleadings, papers, orders, hearings, trials, or awards in the arbitration, except as may be necessary to enter judgment upon the Arbitrator's award as required by applicable law," because it stifled an employee's ability to investigate and conduct discovery to support his claims, favored the employer by preventing plaintiffs from accessing precedent only the employer knew, and could prevent other similarly situated plaintiffs from building their cases. 485 F.3d at 1071, 1078-79; *see also Pokorny*, 601 F.3d at 1002 ("The confidentiality provision in this case, like the confidentiality provisions at issue in *Davis* and *Ting*, unfairly favors Quixtar because it prevents Plaintiffs from discussing their claims with other potential plaintiffs and from discovering relevant precedent to support their claims.").[10]

---

[9] The confidentiality clause stated: "Any arbitration shall remain confidential. Neither you nor AT&T may disclose the existence, content or results of any arbitration or award, except as may be required by law or to confirm and enforce an award." *Ting*, 319 F.3d at 1152.

[10] Moreover, such broad confidentiality clauses also likely contravene Labor Code Section 232.5's statutory bar against employers requiring employees to waive their right to disclose information about working conditions. Cal. Lab. Code §§ 232.5(a) and (b) ("No employer may do any of the following: (a) Require, as a condition of employment, that an employee refrain from disclosing information about the employer's working conditions. (b) Require an employee to sign a waiver or

24

1    Defendants impose an identical confidentiality clause, which is likewise substantively

2    unconscionable.  The clause reads:  "Except as may be permitted or required by law, as determined by

3    the Arbitrator, neither a party nor an Arbitrator may disclose the existence, *content*, or results of any

4    arbitration hereunder without the prior written consent of all Parties."  (2013 Licensing Agreement

5    § 14.3.vii (emphasis added); 2014 Licensing Agreement § 14.3.vii; Rasier Licensing Agreement 15.)

6    Like *Ting*, *Davis*, and *Pokorny*, Plaintiff and others are strictly prohibited from sharing not only the

7    results or existence of arbitration, but also the content, such as facts, witnesses, or documents presented

8    during arbitration.  This broad sweeping confidentiality language places Uber in a superior legal

9    posture by (1) ensuring that none of its potential opponents have access to precedent; (2) ensuring that

10   it accumulates a wealth of knowledge on how to defend against similar claims as the only repeat

11   player; (3) preventing Plaintiff and others from fully investigating and conducting discovery to support

12   their claims; and (4) preventing other plaintiffs from building their cases, including claims for

13   intentional or willful misconduct.  This result is substantively unconscionable.[11]

14                          **b.      The Arbitration Provision Lacks Mutuality.**

15            Substantive unconscionability exists where there is a "lack of mutuality," meaning that the

16   arbitration provision "except[s] from arbitration those claims that employers would most likely bring

17   against employees."  *Lou*, 2013 WL 2156316, at *4 (*citing Mercuro v. Super. Ct.*, 96 Cal. App. 4th

18   167, 176, 179 (2002)); *Armendariz*, 24 Cal. 4th at 119 (finding substantive unconscionability where

19   arbitration provisions require "arbitration only for the claims of the weaker party but a choice of

20   forums for the claims of the stronger party").  In employment cases, there is substantive

21   unconscionability where the arbitration agreement excludes claims such as ones for intellectual

22   property violations, unauthorized disclosure of trade secrets or confidential information, injunctive

23

24   _____

     (continued . . .)

25   other document that purports to deny the employee the right to disclose information about the
     employer's working conditions.); *see Davis*, 485 F.3d at 1079 and n.5.

26
     [11] The incorporation of the as "permitted or required by law" clause does not mitigate the substantive

27   unconscionability of the confidentiality clause because (1) *Ting* and *Davis* both involved similar
     clauses, but were nevertheless found substantively unconscionable because they were too broad as

28   drafted; and (2) *Davis*, 485 F.3d at 1079, explicitly rejected this after-the-fact defense as an improper
     attempt to modify an otherwise illegal contract term.

                                                        25

relief, or unfair competition.  *Id.*; *see also Ferguson v Countrywide Credit Indus., Inc.*, 298 F.3d 778, 784-85 (9th Cir. 2002); *Flinn v. CEVA Logistics U.S., Inc.*, No. 13-CV-2375 W (BLM), 2014 WL 4215359, at *9 (S.D. Cal. Aug. 25, 2014).  Critically, the lack of mutuality "may be premised on the actual effect of the terms, rather than a superficial reading, where it is clear that the terms would in practice benefit one party."  *Macias v. Excel Building Servs. LLC,* 767 F. Supp. 2d 1002, 1009 (N.D. Cal. 2011) (*citing Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1540-41 (1997)).

In *Fitz v. NCR Corp.*, the California Court of Appeals found a one-sided arbitration clause substantively unconscionable because it exempted claims for intellectual property rights and noncompete agreements from arbitration, which were claims most likely to be brought by the employer.  118 Cal. App. 4th 702, 724 (2004).  The court explained that excluding intellectual property rights claims from arbitration unfairly favored the employer because "it is far more often the case that employers, not employees, will file such claims. Furthermore, the [arbitration clause], while not an exclusive list, only includes the types of complaints that are predominately, if not solely, of concern to employees."  *Id.* at 725.  "For example, in a wrongful termination dispute where the employee claims age discrimination and NCR argues the employee was fired for divulging trade secrets to a competitor, the employee is required to arbitrate her claim while NCR is permitted to seek judicial review."  *Id.* Given this asymmetry, it concluded that the arbitration provision was "unfairly one-sided because it compels arbitration of the claims more likely to be brought by Fitz, the weaker party, but exempts from arbitration the types of claims that are more likely to be brought by NCR, the stronger party."  *Id.*

The Ninth Circuit and courts within it have followed California precedent on this issue by also invalidating similarly one-sided arbitration clauses that exempted claims related to intellectual property rights from arbitration.  In *Nagrampa v. MailCoups, Inc.*, the court found a lack of mutuality where the arbitration agreement required the franchisee to adjudicate all disputes in arbitration, but exempted disputes related to the franchiser's intellectual property or proprietary information.  469 F.3d 1257, 1286-87 (9th Cir. 2006).  Because it was far more likely that the weaker party's claims would be compelled to arbitration, the court found substantive unconscionability because "this provision is clearly one-sided, effectively giving MailCoups the right to choose a judicial forum and eliminating such a forum for Nagrampa."  *Id.* at 1287; *Pokorny*, 601 F.3d at 1001 ("Requiring one party to arbitrate

26

its claims but not the other is a paradigmatic form of substantive unconscionability under California law."); *see also Macias*, 767 F. Supp. 2d at 1009 (finding evidence of substantive unconscionability due to arbitration provision's exemption of unfair competition, trade secrets, and confidentiality claims because the exempted claims only benefited the employer).

Here, the arbitration provision requires Plaintiff to arbitrate all of his statutory claims (the claims he is most likely to raise and did raise), but exempts the category of claims Uber is most likely to raise - those involving intellectual property rights.  (2013 Licensing Agreement § 14.2 ("Other than disputes regarding the Intellectual Property Rights of the parties, any disputes, actions, claims or causes of action arising out of or in connection with this Agreement or the Uber Service or Software may be subject to arbitration pursuant to Section 14.3."); 2014 Licensing Agreement § 14.2 (same); Rasier Licensing Agreement 13; 2013 Licensing Agreement § 1.14 (defining "Intellectual Property Right" to include any patent, copyright, invention, database right, design right, trademark, trade name, logo, slogan, as well as business or domain names); 2014 Licensing Agreement § 1.14 (same).)[12]

It defies credulity that Plaintiff and the putative class, as car service drivers, will ever invoke the intellectual property rights exception.  On the other hand, Uber, as the developer of a mobile application and associated software, is sole beneficiary of this exemption and is permitted to adjudicate those claims in court.  (RJN Ex. D (*O'Connor* Tr.  15:16 ("Our product is intellectual property."), 25:24-25 ("It means that we have an intellectual property.  It is the application."), 43:17-20 ("The providing of the phone was not a function of providing equipment. It was a function of that's how the intellectual property was transmitted. That was the best way, at the time, to protect the property.") Jan. 30, 2015.); *see also Fitz*, 118 Cal. App. 4th at 725 ("it is far more often the case that employers, not

_____

[12] That the arbitration clause also exempts claims for workers compensation, state disability insurance, unemployment insurance benefits, or federal administrative proceedings does not cure the clause's one-sidedness because these claims "are governed by their own adjudicatory systems; [none] is a proper subject matter for arbitration."  *Mercuro*, 96 Cal. App. 4th at 176 and n.12; *see also* Cal. Lab. Code § 5300 *et seq.*; Cal. Unemp. Ins. Code § 1951 *et seq.*; *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 287-88 (2002).

565567.14

employees, will file [intellectual property] claims.).  This type of one-sided arbitration provision is

substantively unconscionable for unfairly favoring Uber.[13]

The lack of mutuality is further underscored by the fact that Uber alone cannot waive any of its

rights or the provisions of the Licensing Agreements unless it does so in writing while Plaintiff and the

putative class do not enjoy the same protection.  (2013 Licensing Agreement § 14.1 ("The failure of

Uber to enforce any right or provision in this Agreement shall not constitute a waiver of such right or

provision unless acknowledged and agreed to by Uber in writing."); 2014 Licensing Agreement § 14.1

(same); Rasier Licensing Agreement 17.)

### c.  Defendants Retain the Unilateral Right to Modify the Terms of the Licensing Agreement and Driver Addendum without Notice.

Substantive unconscionability also arises when one party to an arbitration agreement can

unilaterally alter that arbitration agreement.  *Chavarria*, 733 F.3d at 926 (citation omitted).  In *Macias*,

the arbitration agreement reserved for the employer the "right to modify, change or delete the terms . . .

at any time without prior notice . . . provided such changes are in writing."  767 F. Supp. 2d at 1010-11

(internal quotations omitted).  The Court held that this unilateral modification clause contributed to

substantive unconscionability because it reserved "[a]bsolute [c]ontrol" of the agreement's terms to the

employer.  *Id.*  Similarly, in *Ingle v. Circuit City Stores, Inc.*, the Ninth Circuit found the following

substantively unconscionable: "[employer] may alter or terminate the Agreement and these Dispute

Resolution Rules and Procedures on December 31st of any year upon giving 30 calendar days written

notice to [employees]."  328 F.3d 1165, 1179 (9th Cir. 2003); *cf. Carey v. 24 Hour Fitness, USA, Inc.*,

---

[13] Uber has not and cannot raise any reasonable business justifications for this one-sided exemption since emergency judicial relief is also available in arbitration under Code of Civil Procedure Section 1281.8.  *See Nagrampa*, 469 F.3d at 1287 ("California courts routinely have rejected this justification as a legitimate basis for allowing only one party to an agreement access to the courts for provisional relief"); *Macias*, 767 F. Supp. 2d at 1010 (rejecting proffered business justification for need for immediate relief due to availability of § 1281.8); *Stirlen*, 51 Cal. App. 4th at 1536-37 (same); *Martin v. Ricoh Americas Corp.*, No. C-08-4853 EMC, 2009 WL 1578716, at *4 (N.D. Cal. June 4, 2009) (same).  Because any potential justification Uber may raise "for excepting intellectual property and trade disputes from the [arbitration provision] is not 'grounded in something other than the employer's desire to maximize its advantage based on the perceived superiority of the judicial forum,'" it is "therefore unconscionable."  *Fitz*, 118 Cal. App. 4th at 726 (*citing Armendariz*, 24 Cal. 4th at 120); *see also Corin v. Cintas Corp.*, No. CIV. S-09-2384 FCD/KJM, 2009 WL 5206712, at *7 (E.D. Cal. Dec. 18, 2009) (any business justification defenses must be proven and cannot rely upon bald assertions).

565567.14

669 F.3d 202, 209 (5th Cir. 2012) (arbitration agreement illusory because of "the unfairness of a situation where two parties enter into an agreement that ostensibly binds them both, but where one party can escape its obligations under the agreement by modifying it.").

Here, as in *Ingle* and *Macias*, the arbitration provision includes an unconscionable unilateral modification provision: "Uber reserves the right to modify the terms and conditions of this Agreement at any time, effective upon publishing an updated version of this Agreement at http://www.uber.com or on the Software." (2013 Licensing Agreement § 12.1; 2014 Licensing Agreement § 12.1; Rasier Licensing Agreement 16.) Thus, Uber can unilaterally and without notice change the terms of the arbitration provision, which are binding on Plaintiff and the putative class upon publishing. (2013 Licensing Agreement § 12.2; 2014 Licensing Agreement § 12.2; Rasier Licensing Agreement 16.) As discussed, Uber exercised this right to unilateral modification at least twice in 2013 and 2014. This clause continues Uber's absolute and sole control over the arbitration agreement, which is substantively unconscionable.

### d.   Plaintiffs Are Subject to Arbitration Costs Not Required by Court Proceedings.

The arbitration clause is also substantively unconscionable because its failure to clearly articulate when the shifting of arbitration costs and fees will occur places Plaintiff at risk of paying the costs of arbitration, which is strictly prohibited under California law.

Under *Armendariz*, the California Supreme Court made clear that "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear *any type of expense that the employee would not be required to bear if he or she were free to bring the action in court.* This rule will ensure that employees bringing [statutory] claims will not be deterred by costs greater than the usual costs incurred during litigation, costs that are essentially imposed on an employee by the employer." 24 Cal. 4th at 110-11 (emphasis added).[14]

_____

[14] Defendants attempt to distinguish *Armendariz* on the basis that the court's reasoning in that case is limited to "employee arbitration agreements," which according to Defendants are not at issue here. (*Mohamed* Defs.' Mot. at 13.) However, as the Court recognized at the summary judgment hearing in *O'Connor*, "the idea that Uber is simply a software platform service provider and nothing else" is not "a very persuasive argument." (RJN Ex. D (*O'Connor* Tr. 3:9-12, Jan. 30, 2015).)

29

Accordingly, arbitration agreements that impose costs or the risk of costs beyond those required in court are unenforceable because such an arrangement "poses a significant risk that employees will have to bear large costs to vindicate their statutory right . . . and therefore chills the exercise of that right." *Id.* at 110. "[I]t would undermine [the legislature's] intent to prevent employees who are seeking to vindicate statutory rights from gaining access to a judicial forum and then require them to pay for the services of an arbitrator when they would never be required to pay for a judge in court." *Id.* at 108 (*citing Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1484 (D.C. Cir. 1997).

Furthermore, "without clearly articulated guidelines" on when fee-shifting is permitted, vague fee-shifting language "create[s] a sense of risk and uncertainty among employees that could discourage the arbitration of meritorious claims." *Armendariz*, 24 Cal. 4th at 111; *Lou*, 2013 WL 2156316, at *5, *appeal dismissed* (Apr. 11, 2014). Following *Armendariz*, several courts in this District have found substantive unconscionability where fee-shifting language failed to clearly articulate when fees will be shifted and thereby discouraged plaintiffs from vindicating their statutory rights. *See, e.g. Lou*, 2013 WL 2156316, at *5; *Assaad v. Am. Nat. Ins. Co.*, No. C 10-03712 WHA, 2010 WL 5416841, at *6 (N.D. Cal. Dec. 23, 2010).

In *Lou*, the court held that the fee-shifting language of an arbitration clause was substantively unconscionable because it "did not articulate when fee-shifting was appropriate and could apply whenever the employer prevails." 2013 WL 2156316, at *5. There, the fee-shifting provision stated: "Employer shall advance and shall pay for all fees and costs of mandatory arbitration . . . . The arbitrator may . . . allocate all or part of the fees, costs and expenses of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party otherwise awardable, if any . . . to the extent permitted by law and public policy." *Id.* Not only did this language fail to provide clear guidelines for when fee-shifting could occur, but it also, when read in conjunction with the referenced JAMS Comprehensive Rules, permitted the arbitrator to order the plaintiff-employee to pay for arbitration costs not required in court, which violated *Armendariz*. *Id.* The court further found that the presence of the clause "to the extent permitted by law and public policy" exacerbated the uncertainty surrounding cost shifting rather than saving the agreement because the language did not clarify when an employee was responsible for paying arbitration costs. *Id.*; *see also Assaad*, 2010 WL

30

565567.14

5416841, at *6 (ruling that cost-shifting language, even with a purported savings clause of "as otherwise permitted" by law, constituted substantive unconscionability because "leaving it to the employee to ferret out the state of the law does not equate with 'clearly articulated guidelines'" as required by *Armendariz*).

Here, like in *Lou* and *Assaad*, the arbitration provision fails to provide clear guidelines on when Plaintiff is responsible for paying the costs of arbitration and thus, is substantively unconscionable. Under Section 14.3(vi), the arbitration provision states that "in all cases where required by law, Uber will pay the Arbitrator's and arbitration fees." This language is unclear because, as the *Assaad* court noted, "leaving it to the employee to ferret out the state of the law does not equate with 'clearly articulated guidelines.'" 2010 WL 5416841, at *6.[15]

Indeed, Defendants have taken inconsistent positions on this issue. At a hearing in the *O'Connor* matter in November 2013, counsel for Defendants represented to this Court that Uber drivers would be required to split the costs of arbitration with Defendants:

> **THE COURT:** Okay. In California who pays? **MR. HENDRICKS:** Well, it would depend -- in this context, given we're dealing with independent contractors, I believe absent a showing of employee status, each party would probably bear their own expenses.

RJN, Ex. Ex. C (*O'Connor* Tr. 10:5-9, Nov. 14, 2013.) Yet in the present Motions to Compel, Defendants take the position that Uber would pay for arbitration costs. (*See Gillette* Mot. 18; *Mohamed* Mot. 15). This inconsistency underscores the lack of clarity, and thus substantive unconscionability, of the cost provision.

In fact, the arbitration provision could be read as imposing arbitration fees and expenses on Plaintiffs through the incorporation of the JAMS rules. The 2013 Licensing Agreement states that the

---

[15] While Plaintiff maintains that *Armendariz* and its progeny apply, Uber's own opening brief highlights its differing opinion surrounding what is "required by law" as it first argues that *Armendariz* and its prohibition against cost-shifting does not apply until Plaintiff is adjudicated to be an employee and then argues that even if it did apply, the United State Supreme Court's decision in *Concepcion* purportedly overruled *Armendariz*. Defendant's Motion to Compel Arbitration, p. 11. Because Uber's own motion demonstrates that it does not believe cost-shifting to Plaintiff is prohibited by California law, it cannot credibly argue that the clause "required by law" as written provides Plaintiff and others with clear guidelines on the apportionment of arbitration costs or that it does not pose the risk that Plaintiff will have to pay some of the arbitration costs.

"applicable JAMS rules will apply" if a JAMS arbitrator is selected.  (2013 Licensing Agreement § 14.3.iii.)  This language makes it possible that the JAMS Comprehensive Arbitration Rules will apply, particularly since Uber maintains that Plaintiff was an independent contractor rather than an employee.  The 2014 Licensing Agreement provided a hyperlink to the JAMS Streamlined Arbitration Rules & Procedures.  (2014 Licensing Agreement section 14.3.iii.)  Both sets of JAMS rules contain the same fee shifting language:  "Each Party shall pay its pro rata share of JAMS fees and expenses." (Maya Decl. Ex. C (JAMS Streamlined Rules at Rule 26(a)) & Ex. D (JAMS Comprehensive Rules at Rule at 31(a)-(c)); 2013 Licensing Agreement § Section 14.3.iii; 2014 Licensing Agreement § Section 14.3.iii; Rasier Licensing Agreement 13.)  Accordingly, each party (1) is required to pay its *pro rata* share of JAMS fees and expenses, (2) is required to deposit those fees and expenses periodically throughout the arbitration or face the penalty of being precluded from offering evidence on any affirmative claim at the hearing; and (3) could be ordered by the arbitrator to pay the fees and expenses incurred by the other party in excess of its share.  As Plaintiffs' counsel's recent experience under these same rules demonstrates, these fees and expenses can quickly grow prohibitively high for an individual litigant.  (Maya Decl. ¶¶ 2, 3 & Ex. B.)

As the *Lou* court noted, "the [incorporated by reference JAMS Comprehensive Rules] presumed that the employee will pay a portion of the fees and provided a method, which [defendant's] agreement did not contradict, to shift those fees onto the employee."  2013 WL 2156316, at *5. Because such fee-shifting or the possibility of it functions to chill the vindication of statutory rights, the arbitration clause is substantively unconscionable.

Finally, Uber cannot cure its failure to provide clearly articulated guidelines as to arbitration cost-shifting with an after-the-fact concession or offer to pay because the enforceability of the arbitration provision must be determined at the time it was entered into.  An employer's later concession "does not change the fact that the arbitration agreement as written is unconscionable and contrary to public policy . . . . No existing rule of contract law permits a party to resuscitate a legally defective contract merely by offering to change it."  *Armendariz*, 24 Cal. 4th at 125, *citing Stirlen*, 51 Cal. App. 4th at 1535-36).  Because "[w]e must deal with the terms as written," a belated offer to pay

arbitration costs cannot cure a substantively unconscionable term.  *Davis*, 485 F.3d at 1079.[16]  In addition, under Uber's own Agreement, the modification of terms is not effective until they are published as an updated version of the Agreement on the website or application, which Uber has not done.  (*See* 2013 Licensing Agreement § 12.1; 2014 Licensing Agreement § 12.1; Rasier Licensing Agreement 16); *see also Ferguson*, 298 F.3d at 786 (also rejecting belated attempt to cure because it was not an effective modification of the arbitration agreement).

In addition to facing the risk of prohibitive arbitration costs and fees, class members face the risk of having to arbitrate in a distant forum.  The 2014 Agreement states:  "The location of the arbitration proceeding shall be no more than 45 miles from the place where You last provided transportation services under this Agreement, unless each party to the arbitration agrees in writing otherwise."  (2014 Licensing Agreement § 14.3.iii.)  Thus, class members who worked as Uber drivers in, say, New York, and then moved to Los Angeles, may be forced to arbitrate their claims in New York, incurring additional travel expenses.  Such potentially prohibitive costs make the arbitration agreement even more unconscionable.  *Nagrampa v. MailCoups, Inc.,* 469 F.3d 1257, 1287 (9th Cir. 2006); *Aral v. Earthlink, Inc.,* 234 Cal. App. 4th 544, 558-562 (2005); *Bolter v. Super. Ct*., 87 Cal. App. 4th 900, 909 (2001); *Pinedo v. Premium Tobacco Stores, Inc*., 85 Cal. App. 4th 774, 781 (2000).

### e.      The Arbitration Provision Waives Plaintiffs' Statutory Right to Assert Private Attorney General Act Claims.

The arbitration clause is substantively unconscionable because it purports to waive Plaintiffs' statutory right to pursue PAGA representative claims.  The public policy in favor of ensuring that the statutory rights of workers remain unwaivable is enshrined in both statute and long standing case law. *See* Civil Code §§ 3513 ("a law established for a public reason cannot be contravened by a private agreement"), 1668 (prohibits contracts that seek to exempt parties from their own illegal activities); and *Armendariz*, 24 Cal. 4th at 100.  Thus, "[a]greements whose object, directly or indirectly, is to exempt [their] parties from violation of the law are against public policy and may not be enforced."

---

[16] As the court in *Samaniego* cogently explained: "In other words, according to [the employer], it isn't unconscionable because it's illegal and hence, unenforceable.  To state the premise is to refute [the employer's] logic.  The argument is unpersuasive."  205 Cal. App. 4th at 1147 (rejecting argument that unconscionable fee provision could be saved by application of California law).

1    *Armendariz*, 24 Cal. 4th at 100, citing *In re Marriage of Fell*, 55 Cal. App. 4th 1058, 1065 (1997).

2        Due to the unwaivable nature of statutory rights, the California Supreme Court, in *Armendariz*,

3  confirmed that mandatory arbitration clauses cannot waive, either in their entirety or partially, those

4  publicly afforded rights.  24 Cal. 4th at 103; *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 26

5  (1991) (in "agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded

6  by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.").

7  Accordingly, it is well-settled that an arbitration agreement "may not limit statutorily imposed

8  remedies such as punitive damages and attorney fees."  *Armendariz*, 24 Cal. 4th at 103.  Likewise,

9  wholesale attempts to deprive workers of their statutory rights under California law through the

10  application of an arbitration agreement are also prohibited.  *See, e.g*., *Sonic-Calabasas A, Inc. v.*

11  *Moreno*, 57 Cal. 4th 1109, 1150-52 (2013) (explaining that the loss of legislatively afforded

12  protections of *Berman* hearings, to the extent that they do not interfere with the fundamental attributes

13  of arbitration, constitutes evidence of unconscionability).

14        The California Supreme Court continued this well-established line of authority with *Iskanian*

15  by holding that the attempted waiver of PAGA representative actions by an arbitration provision was

16  barred under California law.  59 Cal. 4th at 384.  Recognizing that PAGA was enacted to bolster the

17  enforcement capacity of labor code claims on behalf of the state, the court noted that waiver of PAGA

18  representative claims would "disable one of the primary mechanisms for enforcing the Labor Code."

19  *Id*. at 383.[17]  Thus, the court concluded "that where, as here, an employment agreement compels the

20  waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a

21  matter of state law."  *Id*. at 384.

22        Here, the arbitration provision explicitly waives Plaintiff and others from bringing a PAGA

23  representative action.  (2013 Licensing Agreement § 14.3.v(c) ("There will be no right or authority for

24  any dispute to be brought, heard or arbitrated as a private attorney general representative action

25

26

---

27  [17] "[W]hether or not an individual claim is permissible under the PAGA, a prohibition of
representative claims frustrates the PAGA's objectives" because it eliminates the ability to "to punish

28  and deter employer practices that violate the rights of numerous employees under the Labor Code"
by way of civil penalties for all of those violations.  *Iskanian*, 59 Cal. 4th at 384 (citation omitted).

1 ('Private Attorney General Waiver').");) 2014 Licensing Agreement § 14.3.v(c) ("You and the

2 Company agree to resolve any dispute in arbitration on an individual basis only, and not on a class,

3 collective, or private attorney general representative action basis."); Rasier Licensing Agreement 14

4 (same).) This waiver of PAGA claims runs directly afoul of *Iskanian* and Plaintiffs' unwaivable

5 statutory rights and thus, is substantively unconscionable.

**IV.**    <u>**CONCLUSION**</u>

7      For the foregoing reasons, Plaintiffs Mohamed and Gillette respectfully request that the Court

8 deny Defendants' Motions to Compel Arbitration in their entirety.

9

10 Dated: March 5, 2015            Respectfully submitted,

11                          GOLDSTEIN, BORGEN, DARDARIAN & HO

12

13                          */s/* Andrew P. Lee
                         Laura L. Ho
                         Andrew P. Lee

14

15                          Attorneys for Plaintiff Gillette

16

17 Dated: March 5, 2015            AHDOOT & WOLFSON, P.C.

18

19                          */s/* Theodore W. Maya
                         Tina Wolfson

20                          Robert Ahdoot
                         Theodore W. Maya

21                          Bradley K. King

22                          Attorneys for Abdul Kadir Mohamed

23

<u>**SIGNATURE ATTESTATION**</u>

24      In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this

25 document has been obtained from the signatories on this e-filed document.

26

27 Dated: March 5, 2015                 */s/* Theodore W. Maya

28

35

565567.14