1  JOHN C. FISH, Jr., Bar No. 160620
   jfish@littler.com
2  ROD M. FLIEGEL, Bar No. 168289
   rfliegel@littler.com
3  ANDREW M. SPURCHISE, Bar No. 245998
   aspurchise@littler.com
4  LITTLER MENDELSON, P.C.
   650 California Street
5  20th Floor
   San Francisco, California  94108.2693
6  Telephone:   415.433.1940
   Facsimile:   415.399.8490
7
   Attorneys for Defendants
8  UBER TECHNOLOGIES, INC. AND RASIER,
   LLC
9
                          UNITED STATES DISTRICT COURT
10
                        NORTHERN DISTRICT OF CALIFORNIA
11

12  ABDUL KADIR MOHAMED,              Case No. 3:14-cv-05200-EMC
    individually and on behalf of all others
13  similarly-situated,               **REPLY IN SUPPORT OF DEFENDANTS'**
                                      **MOTION TO COMPEL ARBITRATION**
                       Plaintiff,
14                                    Date: April 14, 2015
         v.                          Time: 10:30 a.m.
15                                    Ctrm.: 5, 17th Floor
    UBER TECHNOLOGIES, INC., RASIER,
16  LLC, HIREASE, LLC and DOES 1-50,  Complaint Filed:  November 24, 2014

17                     Defendants.    Trial Date:  None set.

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

REPLY ISO DEFENDANTS' MOTION TO
COMPEL ARBITRATION                          CASE NO. 3:14-CV-05200 EMC

## **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ......................................................................................................... 1

II.   DEFENDANTS' MOTIONS TO COMPEL ARBITRATION SHOULD BE
      GRANTED .................................................................................................................. 1

      A.    As To Mohamed, The Representative Action Waiver's Enforceability Is
            Irrelevant .......................................................................................................... 1

      B.    The Representative Action Waiver Is Enforceable As To Gillette's PAGA
            Claims ............................................................................................................... 2

            1.    The Representative Action Waiver Is Voluntary ................................... 2

            2.    PAGA Cases Are As Time Consuming, Costly And Procedurally
                  Complex As Class Actions ................................................................... 4

            3.    Gillette Can Pursue His PAGA Claims On An Individual Basis ........... 5

      C.    If The Representative Action Waiver Is Deemed Unenforceable, The
            Agreement Requires That Those Claims Proceed In Court, And The
            Remainder Of The Arbitration Provision Be Enforced ...................................... 6

            1.    The 2013 Licensing Agreement Provides For Bifurcation Of Claims In
                  Hybrid Class/Representative Actions Such As Gillette .......................... 6

            2.    The Court Has Discretion To Restrict Application Of The
                  Representative Waiver If Necessary To Enforce The Arbitration
                  Provisions ............................................................................................ 8

      D.    The Arbitration Provisions Clearly And Unmistakably Delegate All Other
            Issues To The Arbitrator .................................................................................. 10

      E.    Plaintiffs Are Parties To Binding Arbitration Agreements ............................. 12

      F.    The Arbitration Provisions Are Not Unconscionable ...................................... 14

            1.    The Arbitration Provisions Are Not Procedurally Unconscionable .............. 15

            2.    No Substantive Unconscionability Exists ........................................... 18

                  a.    The confidentiality clause is not unconscionable ............................. 18

                  b.    The mutual intellectual property carve-out is not unduly harsh ........ 19

                  c.    The arbitration provisions do not impose prohibitive costs .............. 19

III.  CONCLUSION ........................................................................................................... 20

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

## TABLE OF AUTHORITIES

<b>Page</b>

CASES

*24 Hour Fitness, Inc. v. Superior Court*,
66 Cal. App. 4th 1199 (1998) ............................................................................16

*Appelbaum v. AutoNation Inc.*,
2014 U.S. Dist. LEXIS 50588 (S.D. Cal. 2014) ................................................20

*Armendariz v. Foundation Health Psychcare Services, Inc.*,
24 Cal. 4th 83 (2000) ...........................................................................8, 14, 15, 20

*AT&T Mobility LLC v. Concepcion*
131 S. Ct. 1740 (2011) .........................................................................................5

*AT&T Mobility LLC v. Smith*,
2011 U.S. Dist. LEXIS 125367 (E.D. Pa. 2011) .................................................2

*Be In, Inc. v. Google Inc.*,
2013 U.S. Dist. LEXIS 147047 (N.D. Cal., 2013) .............................................13

*Chalk v. T-Mobile USA, Inc.*,
560 F. 3d 1087 (9th Cir. 2009) .............................................................................6

*Circuit City Stores, Inc. v. Ahmed*,
283 F. 3d 1198 (9th Cir. 2002) ("*Ahmed*") ........................................................15

*Cunningham v. Leslie's Poolmart, Inc.*,
2013 U.S. Dist. LEXIS 90256 (C.D. Cal. 2013).................................................5

*Davis v. O'Melveny & Myers*,
485 F. 3d 1066 (9th Cir. 2007) ...........................................................................19

*Ekin v. Amazon Servs., LLC*,
2014 U.S. Dist. LEXIS 181912 (W.D. Wash. 2014)..........................................16

*Estrada v. CleanNet United States*,
2015 U.S. Dist. LEXIS 22403 (N.D. Cal. 2015) ............................................5, 20

*Fantastic Sams Franchise Corp. v. FSRO Ass'n*,
824 F. Supp. 2d 221 (D. Mass. 2011) ..................................................................2

*Fardig v. Hobby Lobby Stores Inc.*,
2014 U.S. Dist. LEXIS 139359 (C.D. Cal. 2014)............................................5, 6

*Ferguson v. Countrywide Credit Indus. Inc.*,
298 F. 3d 778 (9th Cir. 2002) .............................................................................20

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108-2693
415.433.1940

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Franco v. Arakelian Enterprises,*
   2015 Cal. App. LEXIS 186 (Feb. 26, 2015) ........................................................9

*Fteja v. Facebook, Inc.,*
   841 F. Supp. 2d. 829 (S.D.N.Y. 2012)..............................................................13

*Green Tree Fin. Corp.-Alabama v. Randolph,*
   531 U.S. 79 (2000)............................................................................................20

*Guadagno v. E\*Trade Bank,*
   592 F. Supp. 2d 1263 (C.D. Cal. 2008) ............................................................14

*Hernandez v. DMSI Staffing, LLC,*
   2015 U.S. Dist. LEXIS 12824 (N.D. Cal. 2015) ..........................................3, 4, 6, 7

*Hibbs-Rines v. Seagate Techs., LLC,*
   2009 U.S. Dist. LEXIS 19283 (N.D. Cal. 2009) .................................................4

*Htay Htay Chin v. Advanced Fresh Concepts Franchise Corp.,*
   194 Cal. App. 4th 704 (2011) ...........................................................................19

*Iskanian v. CLS Transportation Los Angeles, LLC,*
   59 Cal. 4th 348 (2014) ..............................................................................passim

*Johnmohammadi v. Bloomingdale's, Inc.,*
   755 F. 3d 1072 (9th Cir. 2014) .........................................................................15

*Kilgore v. KeyBank National Ass'n,*
   718 F. 3d 1052 (9th Cir. 2013) .........................................................................17

*KPMG LLP v. Cocchi,*
   132 S. Ct. 23 (2011)............................................................................................9

*Lee v. Intelius, Inc.,*
   737 F. 3d 1254 (9th Cir. 2013) .........................................................................13

*Lowden v. T-Mobile USA, Inc.,*
   512 F. 3d 1213 (9th Cir. 2008) ...........................................................................6

*Luchini v. Carmax, Inc.,*
   2012 U.S. Dist. LEXIS 102198 (E.D. Cal. 2012) .........................................16, 17

*Mathias v. Rent-A-Ctr., Inc.,*
   2010 WL 3715059 (E.D. Cal. 2010)....................................................................6

*McGill v. Citibank, N.A.,*
   232 Cal. App. 4th 753 (2014) .............................................................................3

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Merkin v. Vonage Am. Inc.*,
　　2014 U.S. Dist. LEXIS 14055 (C.D. Cal. 2014)...............................12, 14

*Meyer v. T-Mobile USA Inc.*,
　　836 F. Supp. 2d 994 (N.D. Cal. 2011) ................................................17

*Mill v. Kmart Corp.*,
　　2014 U.S. Dist. LEXIS 165666 (N.D. Cal. 2014) ................................15

*Molina v. Scandinavian Designs, Inc.*,
　　2014 U.S. Dist. LEXIS 55863 (N.D. Cal. 2014) ................................18

*Morris v. Redwood Empire Bancorp*,
　　128 Cal. App. 4th 1305 (2005) ........................................................15

*Mortensen v. Bresnan Comm'n, LLC*
　　722 F. 3d 1151 (9th. Cir. 2013) ........................................................1

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
　　460 U.S. 1 (1983).........................................................................1, 9

*Nagrampa v. MailCoups, Inc.*,
　　469 F. 3d 1257 (9th Cir. 2006) ........................................................15

*Nguyen v. Barnes & Noble Inc.*,
　　763 F. 3d 1171 (9th Cir. 2014) ........................................................13

*O'Connor v. Uber Technologies, Inc.*,
　　Case No. 13-cv-03826-EMC (N.D. Cal.) ..........................................19

*Ortiz v. Hobby Lobby Stores, Inc.*,
　　2014 U.S. Dist. LEXIS 140552 (N.D. Cal. 2014) ................................14

*Parvataneni v. E*Trade Financial Corp.*,
　　967 F. Supp. 2d 1298 (N.D. Cal. 2013) ..............................................5

*Pearson Dental Supplies, Inc. v. Superior Court*
　　48 Cal. 4th 665 (2010) ....................................................................9

*Pinnacle Museum Tower Ass'n v. Pinnacle Market Development (US)*,
　　55 Cal. 4th 223 (2012).................................................................9, 14

*Poponin v. Virtual Pro, Inc.*,
　　2006 WL 2691418 (N.D. Cal. 2006) ..................................................17

*Prouty v. Gores Technology Group*,
　　121 Cal. App. 4th 1225 (2005) ..........................................................11

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*Quevedo v. Macy's, Inc.,*
798 F. Supp. 2d 1122 (C.D. Cal. 2011) ....................................................................5, 6

4

5

*Ramirez v. Cintas Corp.,*
2005 U.S. Dist. LEXIS 43531 (N.D. Cal. 2005) ........................................................8

6

*Randas v. YMCA of Metro. L.A.,*
17 Cal. App. 4th 158 (1993) ....................................................................................17

7

8

*Rent-A-Center., West., Inc. v. Jackson,*
561 U.S. 63 (2010) (*"Rent-A-Center"*) ...............................................................3, 10

9

*Rodriguez v. Sim,*
2009 WL 975457 (N.D. Cal. 2009) ...........................................................................18

10

11

*Rosas v. Macy's Inc.,*
2012 WL 3656274 (C.D. Cal. 2012)..........................................................................15

12

13

*Ruhe v. Masimo Corp.,*
2011 U.S. Dist. LEXIS 104811 (C.D. Cal. 2011)......................................................15

14

*Samaniego v. Empire Today LLC,*
205 Cal. App. 4th 1138 (2012) .................................................................................18

15

16

*Sanchez v. Western Pizza Enterprises, Inc.,*
172 Cal. App. 4th 154 (2009) .....................................................................................8

17

18

*Sarkisov v. Stonemor Partners, L.P.,*
2014 U.S. Dist. LEXIS 47021 (N.D. Cal. 2014) ........................................................5

19

*Shroyer v. New Cingular Wireless Servs.,*
498 F. 3d 976 (9th Cir. 2007) .....................................................................................6

20

21

*Slaughter v. Stewart Enters., Inc.,*
2007 U.S. Dist. LEXIS 56732 (N.D. Cal. 2007) ......................................................16

22

23

*Specht v. Netscape Comms. Corp.,*
306 F. 3d 17 (2d Cir. 2002).......................................................................................13

24

*Stirlen v. Supercuts, Inc.,*
51 Cal. App. 4th 1519 (1997) ....................................................................................20

25

26

*Swift v. Zynga Game Network, Inc.,*
805 F. Supp. 2d 904 (N.D. Cal. 2011) ................................................................13, 14

27

*Tompkins v. 23andMe, Inc.,*
2014 U.S. Dist. LEXIS 88068 (N.D. Cal. 2014) ..........................................12, 13, 19

28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

REPLY ISO DEFENDANTS' MOTION TO
COMPEL ARBITRATION

v.

CASE NO. 3:14-CV-05200 EMC

# TABLE OF AUTHORITIES
### (continued)

**Page**

*United Bhd. Of Carpenters & Joiners of Am., Local No. 1780 v. Desert Palace, Inc.,*
94 F. 3d 1308 (9th Cir. 1996) .................................................................................10

*Valle v. Lowe's HIW, Inc.,*
2012 U.S. Dist. LEXIS 123846 (N.D. Cal. 2012) .......................................................6

*Velazquez v. Sears*
2013 U.S. Dist. LEXIS 121400 *13-15 (S.D. Cal. 2013)..........................................19

*West v. Henderson,*
227 Cal. App. 3d 1578 (1991) .................................................................................1

*Zenelaj v. Handybook, Inc.,*
2015 U.S. Dist. LEXIS 26068 (N.D. Cal. 2015) .......................................................3

**STATUTES**

Cal. Civ. Code § 1670.5..........................................................................................8

Cal. Civ. Code § 3534..............................................................................................11

Cal. Civ. Code § 3541..............................................................................................11

Cal. Lab. Code § 2699(c)..........................................................................................4

Federal Arbitration Act ............................................................................................1

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

# I. INTRODUCTION

There is no dispute that the class action waivers applicable to Gillette and Mohamed are valid and enforceable. As it concerns Mohamed, that is the only issue before the Court. His claims must be compelled to arbitration on an individual basis, and all other issues regarding the enforceability of his agreement to arbitrate should be deferred to the arbitrator.

The lone remaining issue before the Court is whether the representative action waiver applicable to Gillette is enforceable as to his PAGA claims. Because Gillette's waiver of his right to bring a representative action was voluntary, a different result is warranted here than in *Iskanian*. Moreover, allowing Gillette to proceed with his representative PAGA claims will result in proceedings as complex, costly and time consuming as any class action. The FAA therefore requires preemption of his right to pursue a representative PAGA claim. If the Court nevertheless decides the representative action waiver in the 2013 Licensing Agreement is unenforceable, it must restrict application of that waiver to non-PAGA claims only, allow the PAGA claims to proceed in court, enforce the class action waiver, and compel Gillette's remaining claims to arbitration on an individual basis consistent with the arbitration provision's express delegation clause.

The Federal Arbitration Act mandates that the arbitration provisions at issue here be given preference, and that all doubts regarding arbitrability of this dispute be resolved in favor of arbitration. *Mortensen v. Bresnan Comm'n, LLC*, 722 F. 3d 1151, 1160 (9th. Cir. 2013); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Defendants' motion must therefore be granted.

# II. DEFENDANTS' MOTIONS TO COMPEL ARBITRATION SHOULD BE GRANTED

## A. As To Mohamed, The Representative Action Waiver's Enforceability Is Irrelevant.

As an initial matter, the enforceability of the representative action waiver ("representative waiver") is wholly irrelevant to the question of whether Mohamed should be compelled to arbitrate his claims on an individual basis. He does not assert any representative claim, and in fact ***cannot*** bring a claim under PAGA as he is not a California resident and not subject to the California Labor Code. *West v. Henderson*, 227 Cal. App. 3d 1578, 1589 (1991) (portion of arbitration provision not

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

1    being enforced against a party in a particular dispute is irrelevant to claim of unconscionability).

2          Second, regardless of the Court's decision with respect to the enforceability of the

3    representative waiver as it relates to Gillette's PAGA claims, representative waivers are not per se

4    unenforceable. *See Fantastic Sams Franchise Corp. v. FSRO Ass'n*, 824 F. Supp. 2d 221, 225-226

5    (D. Mass. 2011) (individual arbitration of franchisees' claims brought by representative ordered);

6    *AT&T Mobility LLC v. Smith*, 2011 U.S. Dist. LEXIS 125367 *9, *19-*20 (E.D. Pa. 2011) (Court

7    granted preliminary injunction to enforce representative action waiver).

8          Indeed, in *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348, 387-388

9    (2014), the California Supreme Court expressly acknowledged that certain types of representative

10   claims could likely be waived.  59 Cal. 4th at 387 ("Our opinion today would not permit a state to

11   circumvent the FAA by, for example, deputizing employee A to bring a suit for the individual

12   damages claims of employees B, C, and D.")  Accordingly, the mere existence of a representative

13   waiver in the 2014 Licensing Agreement and Rasier Agreement does not make the arbitration

14   provision unenforceable.[1]

15         Even if the representative waiver is deemed unenforceable, the arbitration provision in the

16   2014 Licensing Agreement applicable to Mohamed explicitly allows for the representative waiver to

17   be severed in cases where, as here, "it is determined that the Arbitration may still proceed on an

18   individual basis only." (2014 Licensing Agreement, Section 14.3.v) (Emphasis added).

19         Because, the class action waiver is valid and enforceable,[2] and Mohamed does not assert

20   PAGA claims on a representative basis, the entirety of Mohamed's case is arbitrable on an individual

21   basis and must be ordered to arbitration.

22   **B.    The Representative Action Waiver Is Enforceable As To Gillette's PAGA
       Claims.**

23

24         **1.    The Representative Action Waiver Is Voluntary.**

       Plaintiffs contend that the representative waiver in the 2013 Licensing Agreement is

25

26   ――――――――――――

27   [1] The 2013 Licensing Agreement, the 2014 Licensing Agreement and the Rasier Agreement are
     attached as Exhibits D, F and H, respectively, to the Declaration of Michael Colman filed in support
     of Defendant's Motion to Compel Arbitration in the *Mohamed* action.

28   [2] Plaintiffs do not challenge the enforceability of the class action waivers.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108-2693
415.433.1940

REPLY ISO DEFENDANTS' MOTION TO
COMPEL ARBITRATION                         2.                    CASE NO. 3:14-CV-05200 EMC

1   unenforceable under *Iskanian* because it seeks waiver of Plaintiff Gillette's right to pursue an action

2   under PAGA. However, Plaintiffs entirely fail to address the key distinguishing factor between

3   Defendants' arbitration provision and the agreement at issue in *Iskanian*. Here, Plaintiff Gillette's

4   waiver of that right was ***voluntary***. In contrast, *Iskanian* addressed ***imposing*** upon "employees" a

5   mandatory waiver of the right to pursue PAGA claims: "we conclude that an arbitration agreement

6   ***requiring an employee as a condition of employment*** to give up the right to bring representative

7   PAGA actions in any forum is contrary to public policy." 59 Cal. 4th at 360 (emphasis added). As

8   described in detail in Uber's moving papers in *Gillette*, this limiting language is expressed multiple

9   times throughout the opinion (*see Gillette* MTC, Section III.D.2). Plaintiffs have not advanced any

10   argument as to why this Court should disregard the language in *Iskanian* which plainly limits the

11   unenforceability of PAGA waivers to only those which ***require*** employees to waive the right to

12   bring a PAGA action as a ***mandatory condition of "employment."***

13        Plaintiffs rely on two recent decisions, *Hernandez v. DMSI Staffing, LLC*, 2015 U.S. Dist.

14   LEXIS 12824 (N.D. Cal. 2015) and *Zenelaj v. Handybook, Inc.*, 2015 U.S. Dist. LEXIS 26068 (N.D.

15   Cal. 2015), to support their argument that this Court should follow *Iskanian*. *Hernandez* and *Zenelaj*

16   are distinguishable from the case at hand for the same reasons *Iskanian* itself is distinguishable:

17   neither plaintiff was provided the opportunity to opt-out of their respective arbitration agreements.

18   Critically, the arbitration provision at issue here explained that arbitration was not a mandatory

19   condition of Plaintiff Gillette's contractual relationship with Uber and there would be no retaliation

20   if he elected to opt out.

21        Because he was not required to waive the right to bring a PAGA action, but did so

22   voluntarily by not opting out, *Iskanian*'s "narrow holding" is not implicated and the waiver should

23   be enforced in its entirety. *McGill v. Citibank, N.A.*, 232 Cal. App. 4th 753, 758 (2014) (*Iskanian*'s

24   holding is a "narrow exclusion" to the otherwise "expansive scope of the FAA's preemption.").[3]

---

[3] Indeed, the FAA forbids expansion of *Iskanian* to bar ***voluntary agreements***, as doing so in effect nullifies the choice to arbitrate or opt out. Here, Plaintiffs ask the Court to go beyond *Iskanian* and both invalidate the PAGA waiver and nullify the opt-out clause. However, under United States Supreme Court precedent, it is the Court's duty to *enforce* the terms of the agreement, not nullify them. *Rent-A-Center., West., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (*"Rent-A-Center"*).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

## 2. PAGA Cases Are As Time Consuming, Costly And Procedurally Complex As Class Actions.

Plaintiffs also assert that PAGA actions are less complex than class actions and that, therefore, not enforcing the representative action waiver here would not undermine the fundamental attributes of arbitration in contravention of the FAA and *Concepcion*. With due respect to the Court's similar conclusion in *Hernandez*, Defendants ask the Court to reconsider.

In *Hernandez*, this Court noted that it lacked record evidence suggesting the adjudication of PAGA representative claims would take as long to adjudicate or be as complex as a class action. While time consuming formalities such as class notice and opt-out procedures may be unique to the class certification process, the absence of these streamlining procedures make PAGA lawsuits an even more time consuming proposition in certain circumstances. Those circumstances are present here.

The language of PAGA provides that civil penalties may be assessed each pay period in which each violation occurred as to each "aggrieved employee," defined as "employees" against whom one or more of the alleged violations "was committed." Cal. Lab. Code § 2699(c); (*see also Gillette* FAC at ¶¶ 77-83). Accordingly, to recover penalties, a PAGA plaintiff must "prove Labor Code violations with respect to each and every individual on whose behalf Plaintiff seeks to recover civil penalties." *Hibbs-Rines v. Seagate Techs., LLC*, 2009 U.S. Dist. LEXIS 19283 *4 (N.D. Cal. 2009). It is not sufficient that Gillette prove just any Labor Code violation as to each "aggrieved employee." Rather, Gillette must establish each statutory violation as to *each* "aggrieved employee" on whose behalf he seeks to recover. Here, Gillette is seeking recovery of penalties for violations of *all* of the following statutes: Labor Code sections 201-204, 210, 207, 226(a), 226.7, 226.8, 351, 510, 512, 558, 1174, 1174.5, 1182.12, 1194, 1197, 1198 and 2802.

In order to recover these penalties, Gillette must show, for example, not only that a driver was misclassified as an independent contractor, but that a particular driver, in a particular "pay period," worked sufficient hours to be eligible for overtime, failed to receive minimum wage based on total fares collected, was not paid timely or in full, was deprived of gratuities, worked sufficient hours to be eligible for a meal or rest period but did not take one, incurred business expenses, etc.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

REPLY ISO DEFENDANTS' MOTION TO COMPEL ARBITRATION            4.            CASE NO. 3:14-CV-05200 EMC

Because class certification procedures are inapplicable to PAGA claims, **_individual proof is required_** of each Labor Code violation for which Gillette is seeking penalties. There are thousands of independent transportation providers who use Defendants' various platforms in California. (Supplemental Colman Decl., ¶ 5.) It is not difficult to foresee that this will be an extraordinarily time consuming process. In fact, Plaintiff Gillette clearly contemplates that class procedures may be necessary here: "class certification of the PAGA claims is not required, but **_Plaintiff may choose to seek certification of the PAGA claims_**." (_Gillette_ FAC, ¶ 78) (emphasis added).

This is **_exactly_** the concern expressed by the U.S. Supreme Court in _AT&T Mobility LLC v. Concepcion_ as justifying FAA preemption: "the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." 131 S. Ct. 1740, 1751 (2011); _see also Quevedo v. Macy's, Inc._, 798 F. Supp. 2d 1122, 1142 (C.D. Cal. 2011); _Estrada v. CleanNet United States_, 2015 U.S. Dist. LEXIS 22403 *13 (N.D. Cal. 2015); _Fardig v. Hobby Lobby Stores Inc._, 2014 U.S. Dist. LEXIS 139359 *7-*8 (C.D. Cal. 2014).

While quantifying the additional time, effort and cost that will be incurred if a full-blown PAGA action is permitted is of course not subject to precise measurement, suffice to say that allowing that action to proceed will result in a substantially more complicated process.

### 3. Gillette Can Pursue His PAGA Claims On An Individual Basis.

Plaintiffs erroneously contend that a prohibition on representative actions in court and arbitration necessarily results in a complete waiver of PAGA claims. While Plaintiffs rely on _Cunningham v. Leslie's Poolmart, Inc._, 2013 U.S. Dist. LEXIS 90256 (C.D. Cal. 2013) for the proposition that PAGA claims cannot proceed individually, the weight of authority has reached the conclusion that plaintiffs may pursue PAGA claims on their own behalf. _Sarkisov v. Stonemor Partners, L.P._, 2014 U.S. Dist. LEXIS 47021 *18-19 (N.D. Cal. 2014) ("[a] single plaintiff certainly ought to be able to sue for PAGA penalties applicable to his own individual action – without having to prove all PAGA penalties for everyone else in the same workplace. The caselaw to the contrary is not convincing in light of the remedial purpose of the PAGA statute."); _Estrada_, 2015 U.S. Dist. LEXIS 22403 at *13-*14; _Parvataneni v. E*Trade Financial Corp._, 967 F. Supp. 2d 1298, 1305

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

REPLY ISO DEFENDANTS' MOTION TO
COMPEL ARBITRATION

5.

CASE NO. 3:14-CV-05200 EMC

(N.D. Cal. 2013); *Quevedo*, 798 F. Supp. 2d at 1141; *Valle v. Lowe's HIW, Inc.*, 2012 U.S. Dist. LEXIS 123846 *5, 9 (N.D. Cal. 2012); *Fardig*, 2014 U.S. Dist. LEXIS 139359 at *7-*8.

Because Gillette may pursue PAGA claims on an individual basis, and because he chose to waive his right to bring a representative PAGA claim, the representative waiver at issue here does not function as a total bar to PAGA claims and should be enforced.[4]

### C. If The Representative Action Waiver Is Deemed Unenforceable, The Agreement Requires That Those Claims Proceed In Court, And The Remainder Of The Arbitration Provision Be Enforced.

#### 1. The 2013 Licensing Agreement Provides For Bifurcation Of Claims In Hybrid Class/Representative Actions Such As *Gillette*.

Plaintiffs argue that because the PAGA waiver is unenforceable and not severable from the arbitration provision in the 2013 Licensing Agreement, the entire arbitration provision is unenforceable. In support of their argument, Plaintiffs rely on cases where courts determined arbitration agreements were unenforceable as a whole because the agreements *explicitly* provided for non-enforcement of the entire agreement if the class waiver was deemed unenforceable. *See, e.g., Shroyer v. New Cingular Wireless Servs.*, 498 F. 3d 976, 986-987 (9th Cir. 2007) (if the class/representative waiver "is found to be unenforceable, then the *entirety of this arbitration clause* shall be null and void") (emphasis added); *see also Chalk v. T-Mobile USA, Inc.*, 560 F. 3d 1087, 1098 (9th Cir. 2009); *Lowden v. T-Mobile USA, Inc.*, 512 F. 3d 1213, 1219 (9th Cir. 2008); *Mathias v. Rent-A-Ctr., Inc.*, 2010 WL 3715059 *6 (E.D. Cal. 2010). In each of these cases, the courts merely enforced the arbitration agreements as written and the result, no class arbitration, was plainly the result *contemplated by the parties*.

Here, the Court should enforce the arbitration provision consistent with the parties' intent as well; but far from mandating that the entire arbitration provision be found unenforceable,

---

[4] If the Court is nevertheless inclined to follow its reasoning in *Hernandez* and find the representative waiver unenforceable as to Gillette's PAGA claims, *Hernandez* requires that the Court find that the PAGA claims are *not covered* by the arbitration provision at all because (as stated in *Iskanian*) the State, rather than the "aggrieved employee" is the real party in interest. *Hernandez*, 2015 U.S. Dist. LEXIS 12824, at *22, *24 ("A PAGA claim is therefore not a dispute between an employer and an employee arising out of their contractual relationship; it is a dispute between an employer and the *state*.") (internal quotations omitted) (citing *Iskanian*).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

1  Defendants' arbitration provision *expressly provides* what is to occur if the representative action

2  waiver is found unenforceable: "such *private attorney general claim* must be litigated in a civil

3  court of competent jurisdiction." (2013 Licensing Agreement, Section 14.3.v(c).) This result, as

4  expressly stated, is limited to the private attorney general claims, and by its terms does not implicate

5  Gillette's waiver of his right to bring the class claims alleged here.

6      The form in which the waivers are set forth in the 2013 Licensing Agreement clearly

7  contemplates the possibility of separate results for separate claims. There are three separate waivers:

8  for a class, collective, and representative action. Each sets forth the result *with respect to those*

9  *claims* in the event one or more waivers are found unenforceable. The benefit of setting forth three

10  different waivers, and separately providing that they are not severable, is clear, particularly here: the

11  unenforceable waiver does not fall out of the agreement entirely, but instead requires that the

12  impacted claims proceed in court as the parties intended, *not the arbitral forum*. At the same time,

13  the claims not impacted by the unenforceable waiver can be separately enforced in arbitration as

14  individual claims.

15      There is no logical basis for dividing the waivers into three distinct subsections other than

16  that the parties specifically contemplated the potential for different results as to the waivers, and

17  intended to keep those claims that must be litigated on a class, collective or representative basis in

18  court, and not arbitration. This is precisely the direction the Court found missing in *Hernandez*[5] and

19  the California Supreme Court found absent in *Iskanian*.[6] Subsection (c) seeks to guarantee that

20  representative PAGA claims will not proceed *in arbitration* as representative claims.

21      Plaintiffs also misconstrue the language of Section 14.3.ix, which states "Except as stated in

22  subsection v, above, in the event any portion of this Arbitration Provision is unenforceable, the

23  remainder of this arbitration provision will be enforceable." The "except as stated in subsection v"

24

25  [5] "The fact that the waiver provisions of the arbitration clauses at issue cannot be enforced to bar

26  PAGA representative claims does not necessarily dictate which forum is proper for their
   adjudication." *Hernandez*, 2015 U.S. Dist. LEXIS 12824 at *28-*29.

27  [6] "Although the arbitration agreement can be read as requiring arbitration of individual claims but

28  not of representative PAGA claims, *neither party contemplated such a bifurcation*." *Iskanian*, 59
   Cal. 4th at 391.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108-2693
415.433.1940

language merely recognizes that subsection v (*i.e.* the subsection containing the class, collective and representative waivers) sets forth additional detailed and specific terms providing for litigation of impacted claims *in court*, rather than arbitration, if a waiver is deemed unenforceable. The language does not preclude enforcement of waivers that are enforceable. In fact, this "catch all" provision supports Defendants' position that, apart from ordering the representative claims to proceed in this Court as provided in subsection v, the enforceable waivers (here, the class waiver) should be enforced as written.

2.    **The Court Has Discretion To Restrict Application Of The Representative Waiver If Necessary To Enforce The Arbitration Provisions.**

Plaintiffs appear to take the position that this Court has only the option of either severing an unconscionable provision or enforcing the whole agreement. But, California law provides a third option: to *restrict* enforcement of any unenforceable provision while enforcing the remainder of the provision. California Civil Code Section 1670.5 provides as follows:

> "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, *or it may so limit the application of any unconscionable clause as to avoid any unconscionable result*." (Emphasis added.)

As stated in *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 122 (2000): "[Civil Code 1670.5] appears to give a trial court some discretion as to whether to sever *or restrict* the unconscionable provision or whether to refuse to enforce the entire agreement. But it also appears to contemplate the latter course *only when an agreement is "permeated" by unconscionability*." (Emphasis added); *Ramirez v. Cintas Corp.*, 2005 U.S. Dist. LEXIS 43531, at *29-*30 (N.D. Cal. 2005) (in ordering restriction of unconscionable fees provision, holding "Under California law, if the Court can enforce the Arbitration Clause without an unconscionable clause *or restrict the application of an unconscionable clause* to avoid an unconscionable result, it may do so); *see also Sanchez v. Western Pizza Enterprises, Inc.*, 172 Cal. App. 4th 154 (2009) ("A trial court may either sever an unconscionable or otherwise unlawful provision . . . , *restrict the application of the provision so as to avoid unconscionable results*, or refuse to enforce the entire agreement[.] Although a court has some discretion in this regard, *a court may refuse to enforce the entire*

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

REPLY ISO DEFENDANTS' MOTION TO
COMPEL ARBITRATION                    8.                    CASE NO. 3:14-CV-05200 EMC

1    *agreement only if the central purpose of the agreement is tainted by illegality*.") (Internal citations

2    omitted) (Emphasis added).

3         A court therefore has ***three*** options at its disposal if a portion of the arbitration provision is

4    found unconscionable or unenforceable.  Here, severance of the representative waiver is not allowed

5    by the provision.  But, the Court also ***cannot*** strike down the rest of the arbitration provision.  First,

6    the representative waiver does not, as a matter of law, taint the entirety of the arbitration agreement. [7]

7    Second, the FAA and federal and state public policy strongly favor the enforcement of arbitration

8    clauses and class action waivers.  *Moses H. Cone Mem'l Hosp*, 460 U.S. at 24 ("questions of

9    arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration").

10        Indeed, the California Supreme Court held in *Pearson Dental Supplies, Inc. v. Superior

11   Court*, that an arbitration provision ***must*** be construed in a way to make it enforceable.  48 Cal. 4th

12   665, 682 (2010):

13           "When an arbitration provision is ambiguous, we will interpret that
             provision, if reasonable, in a manner that renders it lawful, both
14           because of our public policy in favor of arbitration as a speedy and
             relatively inexpensive means of dispute resolution, and because of the
15           general principle that we interpret a contractual provision in a manner
             that renders it enforceable rather than void."
16

17   This leaves the Court with only one option: restrict application of any unenforceable portion

     of the representative waiver and enforce what may be enforced of the arbitration agreement.  *See
18
     KPMG LLP v. Cocchi*, 132 S. Ct. 23, 26 (2011) ("when a complaint contains both arbitrable and
19
     nonarbitrable claims, the [FAA] requires courts to compel arbitration of pendant arbitrable claims
20
     when one of the parties files a motion to compel[.]"); *Pinnacle Museum Tower Ass'n v. Pinnacle
21
     Market Development (US)*, 55 Cal. 4th 223, 245 (2012) ("the FAA precludes judicial invalidation of
22

23   _____

24   [7] The presence of the representative waiver does not taint with illegality the arbitration provision
     given that the 2013 Licensing Agreement was issued well prior to the *Iskanian* decision, and given
25   the continued uncertainty surrounding the state of the law in federal courts in California.  *Franco v.
     Arakelian Enterprises*, 2015 Cal. App. LEXIS 186, at *31-*32 (Feb. 26, 2015) ("By rendering
26   unenforceable the [arbitration agreement's] bar to Franco's enforcement of the protections afforded
     by the PAGA, Franco is prevented from gaining undeserved relief from his agreement to arbitrate his
27   individual claims, while Arakelian is prevented from the undeserved detriment of having its entire
     agreement voided due to its inclusion of a provision respecting only certain claims; the parties'
28   contractual relationship is preserved, without condoning or accepting an illegal scheme.")

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108 2693
415.433.1940

REPLY ISO DEFENDANTS' MOTION TO          9.          CASE NO. 3:14-CV-05200 EMC
COMPEL ARBITRATION

an arbitration clause based on state law requirements that are not generally applicable to other contractual clauses").

Accordingly, if this Court finds the representative action waiver in the 2013 Licensing Agreement is unenforceable, in whole or in part, the application of that waiver should be restricted to permit Gillette's representative PAGA claims to proceed in court as described in the arbitration provision. The remainder of the parties' agreement, including the class waiver, should be enforced, consistent with the FAA and United States Supreme Court precedent.

**D.    The Arbitration Provisions Clearly And Unmistakably Delegate All Other Issues To The Arbitrator.**

In this case, except for the enforceability of the class and representative waivers, ***all other questions*** regarding whether a valid agreement to arbitrate exists between the parties are clearly and unmistakably delegated to the arbitrator. Indeed, because all that is carved out from arbitral review is the issue ***whether*** the class and representative waivers are enforceable, how the agreement must then be interpreted and applied once the Court decides those issues is for the arbitrator to decide, not the Court.

In a subsection titled "How This Arbitration Provision Applies," each agreement mandates that "without limitation," the following matters must be decided by the arbitrator: "disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision." (2013 & 2014 Licensing Agreements at Section 14.3.i; Rasier Agreement at 12.)

Under *Rent-A-Center*, 561 U.S. at 70, the foregoing language is unambiguous in its mandate that the arbitrator, not the Court, should address Plaintiffs' arguments regarding contract "enforceability, revocability or validity." Where the question of arbitrability is delegated to the arbitrator, "the courts will be divested of their authority and an arbitrator will decide in the first instance whether a dispute is arbitrable." *United Bhd. Of Carpenters & Joiners of Am., Local No. 1780 v. Desert Palace, Inc.*, 94 F. 3d 1308, 1310 (9th Cir. 1996) (internal quotation marks and citations omitted).

Plaintiffs contend that the delegation clause is ambiguous and unenforceable because the

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108-2693
415.433.1940

REPLY ISO DEFENDANTS' MOTION TO COMPEL ARBITRATION                    10.                    CASE NO. 3:14-CV-05200 EMC

agreements refer to the exclusive jurisdiction of the state and federal courts in the City and County of San Francisco.  (2013 & 2014 Licensing Agreements at Section 14.1; Rasier Agreement at 17.) Plaintiffs ignore the fact that the reference to these courts is contained within a separate section titled "Governing Law and Jurisdiction."  The more specific section, the arbitration provision that actually addresses what disputes must be decided by an arbitrator, is logically contained within the arbitration provision, under an unambiguous title.

Even if this Court was to determine that a direct conflict regarding delegation exists, which it does not, it is a well-settled canon of contract interpretation that when a general and particular provision are inconsistent, "the particular and specific provision is paramount to the general provision."  *Prouty v. Gores Technology Group*, 121 Cal. App. 4th 1225, 1235 (2005); Cal. Civ. Code § 3534.  The two sections can, and should be, read together, and with respect to the scope of arbitrable issues, the specific delegation clause must govern.  *See* Cal. Civ. Code § 3541 ("An interpretation which gives effect is preferred to one which makes void.")

Section 14.2 in the 2013 and 2014 Licensing Agreements lends support to this logical interpretation as it states, "other than disputes regarding the Intellectual Property Rights of the parties, any disputes, actions, claims or causes of action arising out of or in connection with this Agreement or the Uber Service or Software *may be subject to arbitration pursuant to [the arbitration provision].*"  (Emphasis added.)  Contrary to Plaintiffs' contention, the use of "may be subject to arbitration" is not ambiguous: it explicitly refers the reader to the arbitration provision (*i.e.* Section 14.3 in the 2013 & 2014 Licensing Agreement).  There, the reader finds the specific circumstances under which various types of disputes will be subject to arbitration.  As Plaintiffs point out in their Opposition, not every claim or cause of action is necessarily subject to arbitration. Thus, the language "may be subject to arbitration" is used in recognition of that fact.

While Plaintiffs argue that the class, collective and representative action waivers create ambiguity as to delegation, that argument is similarly strained and actually tends to support Defendants' position.  Here, the question of arbitrability is unambiguously delegated to the arbitrator.  However, that delegation is *subject to certain limited exceptions*.  (Licensing Agreements at Section 14.3.v; Rasier Agreement at 14, Section v.)  The parties are in agreement that

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108-2693
415.433.1940

REPLY ISO DEFENDANTS' MOTION TO
COMPEL ARBITRATION

11.

CASE NO. 3:14-CV-05200 EMC

a court, not the arbitrator, is to determine the validity of the class, collective and representative action waivers, and pursuant to the provision in "Governing Law and Jurisdiction," all such disputes must be heard in the courts for the City and County of San Francisco.  The fact that the agreement expressly carves out issues to be decided by the courts does not render what *is* delegated to the arbitrator any less clear.

### E.    Plaintiffs Are Parties To Binding Arbitration Agreements.

Even if the Court determines that Defendants' delegation clause did not clearly delegate the issue of formation to the arbitrator, Defendants have submitted sufficient evidence to prove the existence of valid arbitration agreements with Plaintiffs.

Plaintiffs appear to allege that Defendants were required to submit copies of agreements signed by Plaintiffs in order to prove the existence of an agreement to arbitrate.  That is not the case, particularly in light of the fact that Plaintiffs do not, and indeed cannot, dispute Defendants' evidence that the Uber application did not permit Plaintiffs to use the platform to book passengers ***unless they accepted the agreements*** by clicking "Yes, I agree" (twice).  (*Gillette*, Colman Decl., ¶¶ 6, 10-11.)

*Merkin v. Vonage Am. Inc.*, 2014 U.S. Dist. LEXIS 14055 *8 (C.D. Cal. 2014) is instructive. There, plaintiffs' alleged failure of recollection regarding whether they agreed to Vonage's terms of service online was irrelevant because customers could not complete the subscription process or use Vonage's service without accepting the terms of service.  *Tompkins v. 23andMe, Inc.*, 2014 U.S. Dist. LEXIS 88068 *26-*27 (N.D. Cal. 2014), cited by Plaintiffs, is also instructive.   There, plaintiffs did not dispute that a website required each person who created an account to indicate acceptance of the terms of service before receiving any test results.  The court concluded that plaintiffs could not credibly claim ignorance as to whether they clicked the appropriate checkboxes thereby indicating their acceptance of the terms; that there was proof the plaintiff clicked "I Accept" was sufficient.

Next, Plaintiffs contend that an agreement to arbitrate was not formed because assent was only communicated electronically and in order to review the specific contract terms, Plaintiffs were

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

REPLY ISO DEFENDANTS' MOTION TO
COMPEL ARBITRATION
12.
CASE NO. 3:14-CV-05200 EMC

1  required to click on a hyperlink.[8] The fact that contract terms are hyperlinked and not presented on

2  the same screen does not negate assent. *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904,

3  911-912 (N.D. Cal. 2011) (enforcing arbitration clause where "Plaintiff was provided with an

4  opportunity to review the terms of service in the form of a hyperlink immediately under the 'I

5  accept' button"); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d. 829, 838-839 (S.D.N.Y. 2012) (where

6  website provided a link to the relevant terms and conditions and required the user to click 'Sign Up,'

7  the website provided adequate notice); *Tompkins*, 2014 U.S. Dist. LEXIS 88068 at *29.

8       Plaintiffs' cited authority is easily distinguishable. *Lee v. Intelius, Inc.*, 737 F. 3d 1254 (9th

9  Cir. 2013); *Specht v. Netscape Comms. Corp.*, 306 F. 3d 17, 23 (2d Cir. 2002); *Nguyen v. Barnes &*

10 *Noble Inc.*, 763 F. 3d 1171 (9th Cir. 2014). All of these cases involved "browsewrap" agreements.

11 "The defining feature of browsewrap agreements is that the user can continue to use the website or

12 its services without visiting the page hosting the browsewrap agreement *or even knowing that such*

13 *a webpage exists*." *Be In, Inc. v. Google Inc.*, 2013 U.S. Dist. LEXIS 147047 *23 (N.D. Cal., 2013)

14 (emphasis added). The question of whether a reasonably prudent user was put on notice of the

15 existence of an agreement is relevant only when analyzing the validity of browsewrap agreements.

16 In contrast, with respect to clickwrap agreements (like those here), the user must *affirmatively click*

17 *a box acknowledging receipt of and assent to the contract terms* before he is allowed to proceed

18 using the website, product, service, etc., and therefore notice and assent are not in dispute.

19       Here, in an email sent well in advance of when the actual update prompt was received by the

20 drivers via the Uber application, Plaintiffs were *explicitly directed* to the hyperlinks that contained

21 both the existing and new contract terms.[9] Within the Uber application, the links to each relevant

22 contract were visible within the same screen that contained the banner notifying Plaintiffs that by

23 clicking "Yes, I agree" they were agreeing to the contracts. After clicking "Yes, I agree," Plaintiffs

24

25  [8] The *Lavitman* Order referenced by Plaintiffs is of no significance to this case, as it presents facts
    manifestly dissimilar to those at issue here. No further discussion is warranted in this Reply.

26  [9] Although Gillette asserts that he never reviewed the email notification (*see* Opp. 4), it does not

27  change that Defendants provided notice to him of the contents of the agreements, and it is irrelevant
    anyway. It is not required that a party receive any advance notification before receiving an

28  agreement to arbitrate, particularly where the person has 30 days to opt out after accepting.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

1    were asked again to click either "Yes, I agree" again or "No" below a notification presented in all

2    caps that stated "PLEASE CONFIRM THAT YOU HAVE REVIEWED ALL THE DOCUMENTS

3    AND AGREE TO ALL THE NEW CONTRACTS."   Even after clicking "Yes, I agree" twice,

4    Plaintiffs had access to the agreements to review them at their leisure and, within 30 days, provide

5    notice of intent to opt out.   (Supplemental Colman Decl., ¶¶ 3-4.)

6         Courts regularly enforce agreements accepted under similar circumstances to those at issue

7    here.  *See Swift, supra*, 805 F. Supp. 2d at 911-912; *Merkin*, 2014 U.S. Dist. LEXIS 14055 at *8

8    (noting that courts routinely enforce clickwrap contracts where the terms are made available to the

9    party assenting to the contract); *Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263, 1271 (C.D. Cal.

10   2008) (party may be bound by a clickwrap agreement if the terms are clear and acceptance is

11   unambiguous, regardless of whether he actually reads them).

12        Gillette's contention that he does not recall accepting the agreement is also irrelevant.  The

13   California Supreme Court in *Pinnacle Museum Tower Ass'n*, 55 Cal. 4th at 236, reiterated the

14   longstanding rule that "[a]n arbitration clause within a contract may be binding on a party even if the

15   party never actually read the clause."  *See also Ortiz v. Hobby Lobby Stores, Inc.*, 2014 U.S. Dist.

16   LEXIS 140552 *12-13 (N.D. Cal. 2014) (court concluded that plaintiff's assertion that she did not

17   recall receiving the arbitration agreement was "inconsequential").

18        Having indisputably accepted the agreements, Plaintiffs cannot now avoid their arbitration

19   obligation based on the contention that they failed to read the provisions.

20   **F.     The Arbitration Provisions Are Not Unconscionable.**

21        As noted above, except for the enforceability of the class/PAGA waivers, any question as to

22   the "enforceability, revocability or validity" of the arbitration provisions must be decided by the

23   arbitrator.  Regardless, Plaintiffs fail to meet their burden that the arbitration provisions are ***both***

24   procedurally and substantively unconscionable. *See Armendariz*, 24 Cal. 4th at 89 ("No matter how

25   heavily one side of the scale tips, both procedural and substantive unconscionabilty are required for a

26   court to hold an arbitration agreement unenforceable.").[10]

27   _____

28   [10] Although Plaintiffs assume that the *Armendariz* factors apply here, Defendants maintain that they
     do not, particularly given that the arbitration provisions at issue are ***not mandatory arbitration***

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

REPLY ISO DEFENDANTS' MOTION TO          14.          CASE NO. 3:14-CV-05200 EMC
COMPEL ARBITRATION

1.   **The Arbitration Provisions Are Not Procedurally Unconscionable.**

Plaintiffs contend that Defendants' contracts are oppressive because they are contracts of adhesion presented on a take-it-or-leave-it basis.  This Court should reject Plaintiffs' characterization of the arbitration provisions as take-it-or-leave it contracts of adhesion because the provisions clearly provided Plaintiffs with the opportunity to opt out.  The cases relied upon by Plaintiffs in support of a finding of procedural unconscionability are easily distinguishable because not one case addressed a contract that provided the right to opt out.

Plaintiffs attempt to distinguish *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F. 3d 1072 (9th Cir. 2014), *Circuit City Stores, Inc. v. Ahmed*, 283 F. 3d 1198 (9th Cir. 2002) ("*Ahmed*") and *Rosas v. Macy's Inc.*, 2012 WL 3656274 (C.D. Cal. 2012) by pointing to the fact that in those cases, the plaintiffs were provided paper opt-out forms.  That distinction is irrelevant where, as here, the contracting party is provided a meaningful opportunity to opt out.  There is no indication that the decisions in *Johnmohammadi*, *Ahmed* or *Rosas* were reliant on the fact that the opt-out forms were provided on paper.  Rather, the courts placed importance on the ***opportunity*** to opt out at all.

Putting the opt-out issue aside, the fact that a dispute resolution provision is a standard, non-negotiable term does not necessarily warrant a finding of procedural unconscionability.  *Morris v. Redwood Empire Bancorp,* 128 Cal. App. 4th 1305, 1319 (2005) (adhesion contract does not automatically translate to procedural unconscionability); *Nagrampa v. MailCoups, Inc.*, 469 F. 3d 1257, 1284 (9th Cir. 2006) (evidence that defendant had "overwhelming bargaining power, drafted the contract, and presented it to [plaintiff] on a take-it-or-leave-it basis" amounted to only minimal evidence of procedural unconscionability).

Even Plaintiffs' contention that the Court should view the parties' relationship as akin to an employment relationship does not help them, as it is well-settled that an employer may require an arbitration agreement as a condition of employment.  *See e.g. Armendariz*, 24 Cal. 4th at 96; *Iskanian*, 59 Cal. 4th at 391 (enforcing mandatory pre-dispute arbitration agreement that forbade

---

*agreements*. *See Mill v. Kmart Corp.*, 2014 U.S. Dist. LEXIS 165666 *11 (N.D. Cal. 2014) (recognizing that post-*Concepcion* applicability of *Armendariz* unclear in cases where agreement not mandatory, opportunity to opt out); *Ruhe v. Masimo Corp.*, 2011 U.S. Dist. LEXIS 104811 *4-*5 (C.D. Cal. 2011) (same).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

1    class arbitrations).

2           Defendants' right to modify the terms of the licensing agreements also does not render the

3    agreement unconscionable because the opportunity to opt out was presented anew in conjunction

4    with the roll out of each modified agreement.  The fact that neither Plaintiff availed himself of the

5    opportunity to opt out does not render the opt-out choice any less significant.

6           In any event, "Ninth Circuit courts have a history of enforcing contracts containing change-

7    in-terms provisions." *Ekin v. Amazon Servs., LLC*, 2014 U.S. Dist. LEXIS 181912 *10 (W.D. Wash.

8    2014) (court granted motion to compel arbitration and enforced arbitration agreement that contained

9    a unilateral reservation of the right to change contract terms and no opt-out clause); *see also*

10   *Slaughter v. Stewart Enters., Inc.*, 2007 U.S. Dist. LEXIS 56732, *30-31 (N.D. Cal. 2007)

11   ("modification provisions…[that] grant an employer the unilateral right to modify the terms of the

12   [arbitration agreement] without providing advance notice [] are not substantively unconscionable.");

13   *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199, 1214 (1998) (employer's right to

14   unilaterally modify not fatal because it is prescribed by the duty to exercise it "in good faith and in

15   accordance with fair dealings.").  Even if this Court were inclined to find the mere existence of a

16   unilateral modification clause to be unconscionable, that does not in turn render the entire arbitration

17   agreement unconscionable.  *See Luchini v. Carmax, Inc.*, 2012 U.S. Dist. LEXIS 102198 *32 (E.D.

18   Cal. 2012).

19          While Plaintiffs contend that the arbitration provisions were "buried" in a lengthy contract,

20   they ignore the fact that the arbitration provisions in the agreements are clearly labeled, set forth in

21   standard font, and with a bold and underlined section heading.  Within the arbitration provision, the

22   opt-out clause was set forth in a separate section with an underlined heading titled "Your Right To

23   Opt Out Of Arbitration."  Similarly, the three-page Driver Addendum refers to dispute resolution in

24   a stand-alone section with bold and all caps letters.

25          The 2014 Licensing Agreement and the Rasier Agreement applicable to Mohamed both

26   contain extensive cautionary, Court-approved notices on ***both*** the first page of the agreements ***and***

27   the start of the arbitration provision advising him of the consequences of continuing his prior

28   agreement to arbitrate and choice not to opt-out.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

REPLY ISO DEFENDANTS' MOTION TO
COMPEL ARBITRATION                          16.                    CASE NO. 3:14-CV-05200 EMC

In circumstances similar to those at issue here, courts have routinely disregarded plaintiffs' assertions of unfair surprise. *See e.g. Kilgore v. KeyBank National Ass'n*, 718 F. 3d 1052, 1059 (9th Cir. 2013) (no procedural unconscionability when plaintiffs had time to reject the arbitration clause and the arbitration clause was not "buried in fine print in the Note, but was instead in its own section, clearly labeled, in boldface"); *Luchini*, 2012 U.S. Dist. LEXIS at *23 (employment arbitration agreement on the last two pages of an employment application was not procedurally unconscionable where the agreement was clearly designated "Dispute Resolution Agreement"); *Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994, 1002-1003 (N.D. Cal. 2011) (arbitration agreement and opt-out provision written in capitalized and bold letters, the court concluded the agreement was presented in a "clear format" and was not procedurally unconscionable).

Plaintiffs also argue that the presentation of contract terms on a mobile phone while "Plaintiffs were either driving their vehicles or preparing to drive" demonstrates procedural unconscionability. (Opp., 21.) Even if Plaintiffs did receive the update prompt when they were preparing to drive, ***nothing prevented them from accepting the contracts and later reviewing the specific terms***. Plaintiffs could access the contracts through their Uber accounts or through the links to the agreements contained in the email notification they received. (Supplemental Colman Decl., ¶¶ 3-4.) The fact that neither plaintiff chose to review the agreements or otherwise discuss the terms of the agreements with a family member, friend or attorney does not result in a finding of procedural unconscionability. *See Randas v. YMCA of Metro. L.A.*, 17 Cal. App. 4th 158, 163 (1993) ("Ordinarily, one who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms, and cannot escape liability on the ground that he has not read it. If he cannot read, he should have it read or explained to him").

Similarly, the allegation that Mohamed has limited English literacy does not demonstrate procedural unconscionability.[11] In *Poponin v. Virtual Pro, Inc.*, 2006 WL 2691418 *10 (N.D. Cal. 2006), the court found no procedural unconscionability despite plaintiff's "limited facility with

---

[11] Plaintiffs' contention that it is "highly unlikely" Mohamed had the capacity to understand the agreements is not based on admissible evidence. (Opp. 21.) Defendants object that Paragraphs 6-8 of the Declaration of Theodore Maya are inadmissible hearsay and/or improper opinion testimony. FRE 701(a), 802.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

REPLY ISO DEFENDANTS' MOTION TO COMPEL ARBITRATION          17.          CASE NO. 3:14-CV-05200 EMC

English" because "[h]e could have asked a third party to assist him with his English." *See also Molina v. Scandinavian Designs, Inc.*, 2014 U.S. Dist. LEXIS 55863 *24 n.1 (N.D. Cal. 2014) (plaintiff's "difficulty with reading English would not alter the Court's unconscionability analysis."); *see also, Rodriguez v. Sim*, 2009 WL 975457 *9 (N.D. Cal. 2009) (same).[12]

Lastly, Plaintiffs contend that Defendants' alleged failure to identify the applicable arbitration rules renders the agreement procedurally unconscionable. Plaintiffs' assertion is easily disposed of because the arbitration provisions plainly reference JAMS rules ***only as those rules relate to arbitrator selection*** (*e.g.* http://www.jamsadr.com/rules-comprehensive-arbitration/#Rule 15). Plaintiffs take the phrase "applicable JAMS rules will apply" out of context. First, the reference to JAMS rules is contained within a section clearly titled "Selecting the Arbitrator and Location of the Arbitration." (*See, e.g.,* 2013 Licensing Agreement, Section 14.3.iii.) Second, the complete sentence states: "If a JAMS arbitrator is used, then the applicable JAMS rules will apply" and it follows a number of sentences which address various steps the parties are to take when selecting an arbitrator. The JAMS rules are not referenced in any other subsection of the arbitration provision because all the procedures governing arbitration are detailed ***in the agreement itself*** (*see, e.g.,* 2013 Licensing Agreement, Sections 14.3.iii – vii). Plaintiffs' reliance on cases concluding the failure to attach rules governing the appropriate arbitration procedure is misplaced.

### 2. No Substantive Unconscionability Exists.

#### a. The confidentiality clause is not unconscionable.

Plaintiffs contend that the arbitration provisions are substantively unconscionable because they contain a confidentiality provision. The relevant clause states: "Except as may be permitted or required by law, as determined by the Arbitrator, neither a party or an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all

---

[12] Plaintiffs' reliance on the *Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138 (2012) decision is misplaced. In *Samaniego*, the plaintiffs were directed to sign the agreements with either no time to review or only 24 hours to review and the employer denied the plaintiffs' specific requests for Spanish translations of the agreements. 205 Cal. App. 4th at 1145-1146. Mohamed was not similarly restricted with respect to his opportunity to review the agreements or seek help in understanding the agreements.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

REPLY ISO DEFENDANTS' MOTION TO
COMPEL ARBITRATION                    18.                    CASE NO. 3:14-CV-05200 EMC

1 Parties."

2          The existence of a confidentiality clause does not alone render an arbitration agreement

3 substantively unconscionable. *See Davis v. O'Melveny & Myers*, 485 F. 3d 1066, 1079 (9th Cir.

4 2007). Indeed, courts have enforced identical confidentiality clauses. In *Velazquez v. Sears* the

5 court considered an arbitration clause which was ***word-for-word*** identical to the one at issue here

6 and found that it did not render the agreement substantively unconscionable. 2013 U.S. Dist. LEXIS

7 121400 *13-15 (S.D. Cal. 2013).[13] Defendants' confidentiality clause is not unconscionable: it

8 prescribes precisely to applicable law governing what may be confidential.

9                    **b.      The mutual intellectual property carve-out is not unduly harsh.**

10          Plaintiffs also allege that the arbitration provisions lack mutuality because claims involving

11 intellectual property rights are exempt from arbitration and it "defies credulity" that "car service

12 drivers will ever invoke the intellectual property rights exception." (Opp. 27.) To the contrary, any

13 number of the established transportation businesses that contract with Defendants could have an

14 interest in protecting their intellectual property rights and may very well benefit from the

15 exemption.[14] Moreover, ***mutual*** carve-outs for intellectual property claims, like those at issue here,

16 as opposed to unilateral carve-outs, are ***not*** substantively unconscionable, as a matter of law. *See*

17 *e.g., Tompkins*, 2014 U.S. Dist. LEXIS 88068 at *59, 62-63 (both parties could avail themselves of

18 the carve-out for intellectual property disputes; provision was not unduly harsh or one-sided).

19                    **c.      The arbitration provisions do not impose prohibitive costs.**

20          Plaintiffs argue that the arbitration provisions are unconscionable because they fail to provide

21 clear guidelines on when Plaintiffs could be responsible for paying the costs of arbitration. This

22 argument does not withstand scrutiny. Here, the arbitration provisions state unambiguously that

23 ***Defendants will pay all fees as required by law*** and that ***any fee disputes between the parties will be***

24

25 [13] *See also Htay Htay Chin v. Advanced Fresh Concepts Franchise Corp.*, 194 Cal. App. 4th 704,

26 714 (2011) ("except as may be required by law, no party or arbitrator may disclose the existence, content or results of any arbitration hereunder without the prior written consent of both parties" not

27 unconscionable).

[14] *See e.g.*, Declarations of Boris Akopov, Daniel Bisneto, Mark Forester at Dckt. No. 214 in

28 *O'Connor v. Uber Technologies, Inc.*, Case No. 13-cv-03826-EMC (N.D. Cal.).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

REPLY ISO DEFENDANTS' MOTION TO               19.               CASE NO. 3:14-CV-05200 EMC
COMPEL ARBITRATION

1   *resolved by the arbitrator*.  Plaintiffs have asserted employment-based claims and they contend that

2   *Armendariz* applies to this case.  Defendants have offered to pay the arbitration fees accordingly.  If

3   a dispute existed, under the terms of the arbitration provision, it would be resolved by the arbitrator.

4   But, the parties have an agreement with respect to the allocation of fees.[15]  No unconscionability can

5   possibly exist as a result of this provision under these circumstances, *even if* Defendants disputed

6   that they should bear the arbitration costs.  *Appelbaum v. AutoNation Inc.*, 2014 U.S. Dist. LEXIS

7   50588 *25-*26 (S.D. Cal. 2014) ("*if California law would require Defendants to assume the costs*

8   *of the arbitration to avoid unconscionability, that law would apply*.  *Concepcion*'s powerful

9   language in favor of arbitration agreements' enforceability requires this Court not to read the

10  Arbitration Agreement unreasonably so as to render it unenforceable.")

11          Moreover, the mere risk that Plaintiffs might face prohibitive costs is too speculative to

12  justify invalidating an arbitration agreement.  Here, Plaintiffs offer nothing more than speculation

13  about *possible* costs they *might* incur.  *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79,

14  90-91 (2000) (risk that a plaintiff will face prohibitive costs is too speculative to justify invalidating

15  an arbitration agreement); *Estrada*, 2015 U.S. Dist. LEXIS 22403 at *10 (absent evidence

16  supporting plaintiffs' contention that arbitration would present an undue financial burden on them,

17  agreement's fee-splitting requirement not unconscionable).[16]

18          Because Plaintiffs have utterly failed to establish either procedural or substantive

19  unconscionability, much less both, the arbitration provisions must be enforced.

20  **III.    CONCLUSION**

21          For the foregoing reasons, Defendants' motion to compel should be granted.

22  [15] Defendants' offer to pay arbitration fees is not a belated attempt to cure a substantively
23  unconscionable term as described in *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519 (1997) and
    *Ferguson v. Countrywide Credit Indus. Inc.*, 298 F. 3d 778 (9th Cir. 2002).  These cases each
24  involved an attempt to *change or remove* a term in an arbitration agreement.  Defendants' offer is
    permitted by the contract as written.
25  [16] The Court should also reject Plaintiffs' wholly speculative assertion that a driver *might* be forced
    to arbitrate claims in a distant forum and incur expense *if* that transportation provider relocated more
26  than 45 miles away from the last place transportation services were provided.  Plaintiffs do not
27  contend that they themselves stand to incur such travel expenses, making this argument irrelevant.
    Regardless, the arbitration provisions provide that the parties could agree to hold the arbitration in a
28  different, mutually agreeable location.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

1    Dated: March 20, 2015

2

3                                    */s/Andrew M. Spurchise*

                                     JOHN C. FISH, Jr.

4                                    ROD M. FLIEGEL

                                   ANDREW M. SPURCHISE

5                                    LITTLER MENDELSON, P.C.

                                   Attorneys for Defendants

6                                    UBER TECHNOLOGIES, INC. AND

                                   RASIER, LLC

7    Firmwide:132196139.8 073208.1047

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

REPLY ISO DEFENDANTS' MOTION TO COMPEL ARBITRATION        21.        CASE NO. 3:14-CV-05200 EMC