

Littler Mendelson, PC
650 California Street
20th Floor
San Francisco, CA 94108.2693

Andrew M. Spurchise
415.399.8438 direct
415.433.1940 main
415.743.6639 fax
aspurchise@littler.com

May 21, 2015

Honorable Edward M. Chen, United States District Court Judge
United States District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

Re:  *Mohamed v. Uber Technologies, Inc., et al.* (Case No. 3:14-cv-05200) and *Gillette v. Uber Technologies, Inc.* (Case No. 3:14-cv-05241)

To the Honorable Edward M. Chen:

During the May 14, 2015 hearing on Defendants Uber Technologies, Inc. and Rasier, LLC's ("Defendants") motions to compel arbitration in the above-cited cases, the Court requested that the parties submit case law addressing whether the relative sophistication of the parties should be taken into account in assessing whether an arbitration agreement's delegation clause is sufficiently clear and unmistakable. In sum, the great weight of authority demonstrates that the sophistication of the parties is irrelevant to a determination of whether the parties "clearly and unmistakably" agreed to delegate issues of enforceability and arbitrability to the arbitrator. To the contrary, whether the "heightened standard" is met is determined based on general principles of contract interpretation. Under these principles, the delegation clause in Defendants' Arbitration Provisions must be enforced.

1. Numerous courts, both state and federal, have held that even an "unsophisticated" party's "clear and unmistakable" intent to delegate threshold issues to an arbitrator may be derived solely from the contractual language to which he has agreed.[1] In *Zenelaj v. Handybook, Inc.*, 2015 WL 971320, *3-5 (N.D. Cal. Mar. 3, 2015), Judge Henderson expressly rejected the argument that only "sophisticated" parties can manifest "clear and unmistakable" intent to delegate arbitrability questions by executing agreements that incorporate AAA Rules, calling any contrary view "uniquely restrictive." *See also id.* at *4 ("[T]he great weight of prevailing case law" holds that "unsophisticated parties can clearly and unmistakably delegate arbitrability to an arbitrator ...."). Judge Henderson's analysis is consistent with the state of the law in California and federal courts. *See id.* (collecting cases and distinguishing contrary authority).

This approach is not limited to circumstances in which arbitration agreements incorporate AAA rules. Courts routinely: (1) hold that parties manifest "clear and unmistakable" assent by agreeing to delegation clauses in arbitration agreements; and (2) apply traditional principles of

---

[1] Both federal and state law are relevant to how this Court should evaluate delegation provisions in arbitration agreements because California courts "have long held that the rules governing [delegation] clauses are the same under both state and federal law ...." *Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 240 (2014).

contract law to the interpretation of those arbitration agreements, without regard to the parties' relative level of sophistication. *Universal Prot. Serv., L.P. v. Super. Ct.*, 234 Cal. App. 4th 1128, 1132 (2015) (arbitration agreement incorporating AAA Rules evinced "clear and unmistakable" intent of security guard-employees because this was "consistent with general contract principles"); *Tiri*, 226 Cal. App. 4th at 242 (reversing order denying casino's petition to compel arbitration in action with employee cook where agreement explicitly delegated arbitrability issues to the arbitrator); *see also Bernal v. S.W. & Pac. Specialty Fin., Inc.*, 2014 WL 1868787, *4 (N.D. Cal. May 6, 2014) (enforcing delegation provision in lawsuit brought by "pay day loan" customer against bank where arbitration provision incorporated AAA Consumer Rules, which incorporated AAA Commercial Rules, which contained delegation language); *Chung v. Nemer PC*, 2012 WL 5289414, *1-2 (N.D. Cal. Oct. 25, 2012) (granting employer's motion to compel arbitration with pro se employee pursuant to delegation clause and rejecting employee's argument that she "did not fully understand the arbitration agreement"); *Anderson v. Pitney Bowes, Inc.*, 2005 WL 1048700, *3 (N.D. Cal. May 4, 2005) (giving effect to delegation clause and compelling arbitration of gateway issues in case between employer and employee because "[n]either a court nor an arbitrator is free to ignore [a] provision in [an] Agreement").

Accordingly, whether the "heightened standard" is met is based not on whether a particular individual was sufficiently sophisticated, but whether the contract reflects a manifestation of intent to delegate threshold issues to the arbitrator under general contract principles. *Universal Prot. Serv., L.P. v. Super. Ct.*, 234 Cal. App. 4th at 1137 (question of who decides arbitrability "is fundamentally one of the parties' contractual intent, requiring both an analysis of common understanding or ambiguity of the contractual language and, critically, reasonableness as well as the context in which the key terms appear"); *id.* at 1142 n.5 ("The weight of federal authority supports our holding.").

2. Where the parties to a contract have agreed to an arbitration provision that delegates gateway issues to an arbitrator, language contained in *other* provisions of the contract cannot defeat the parties' clear and unmistakable intent to delegate these gateway issues, regardless of the sophistication of the parties. *Fallo v. High-Tech Inst.*, 559 F. 3d 874, 876, 878-79 (8th Cir. 2009) (rejecting students' argument that a reference to "court costs" in a "separate provision [of the agreement] concerning governing law" defeated an intent to delegate threshold issues to an arbitrator); *Hill v. Anheuser-Busch InBev Worldwide, Inc.*, 2014 U.S. Dist. LEXIS 168947, *10-11, *12-13 (C.D. Cal. Nov. 26, 2014) (finding that delivery driver and employer manifested clear and unmistakable intent to delegate gateway issues where arbitration provision stated that arbitrator would have "exclusive authority to resolve any dispute relating to the applicability, enforceability or formation of the [agreement]," yet a provision in a separate part of the agreement stated that "a *court* [may] determine[] that any provision of the agreement is invalid or unenforceable" (emphasis added)).

Here the Arbitration Provisions are contained in separate, stand-alone sections of the Agreements, plainly reserve for the arbitrator issues of enforceability for all disputes covered by that arbitration provision, and contain a clause integrating the arbitration provisions as the "full

and complete agreement" relating to the formal resolution of disputes. *In re Ins. Installment Fee Cases*, 211 Cal. App. 4th 1395, 1413 (2012) ("When the parties to an agreement incorporate the complete and final terms of the agreement in a writing, such an integration in fact becomes the complete and final contract between the parties. Such a contract **may not be** contradicted by evidence of purportedly collateral agreements." (emphasis added)). The general venue provision that the Court referenced during the May 14 hearing as potentially causing ambiguity for unsophisticated parties appears *outside* the Arbitration Provisions and thus has no bearing on the question of delegation.

In contrast, in all three cases referenced by the Court in its Order Regarding Oral Argument (Dkt. No. 60)—*Parada v. Superior Court*, 176 Cal. App. 4th 1554 (2009); *Baker v. Osborne Development Corp.*, 159 Cal. App. 4th 884 (2008); and *Hartley v. Superior Court*, 196 Cal. App. 4th 1249 (2011)— the inconsistent provisions were contained *within the arbitration agreement*: "one provision of the arbitration agreement stated that issues of enforceability or voidability were to be decided by the arbitrator, another provision indicated that the court might find a provision unenforceable." *Hartley*, 196 Cal. App. 4th at 1258 (quoting *Parada* and *Baker*).

3. The relative sophistication of the parties in terms of their ability to bear arbitration fees is likewise irrelevant to whether an arbitration agreement's delegation clause must be enforced. The United States Supreme Court's decision in *Italian Colors* forecloses any argument that the potential costs of arbitration render an agreement unconscionable. *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2311-12 (2013) ("It would be unwieldy and unsupported" for a court "to tally the costs and burdens to particular plaintiffs in light of their means, the size of their claims, and the relative burden on the carrier") (citation omitted)).

Even if it were proper for the Court to take arbitration costs into account (it is not), Plaintiffs would bear the burden of proving that the costs of arbitrating the enforceability of the arbitration agreement, *not the entire dispute*, would be unconscionable. *Kuehn v. Citibank, N.A.*, 2012 WL 6057941, *4 (S.D.N.Y. Dec. 6, 2012) (plaintiff must show "that he is likely to incur prohibitive costs by arbitrating *the question of the arbitration agreement's enforceability*") (emphasis added); *Gilbert v. Bank of Am.*, 2015 WL 1738017, *6 (N.D. Cal. Apr. 8, 2015) (rejecting plaintiffs' argument that a "delegation provision is substantively unconscionable, because of the fees required to refer that dispute to arbitration"). Plaintiffs have failed to meet that burden. *Boghos v. Certain Underwriters at Lloyd's of London*, 36 Cal. 4th 495, 508 (under California law, agreement to arbitrate a statutory claim is implicitly an agreement to pay "all types of cost that are unique to arbitration.").

For all these reasons, the parties' relative level of sophistication should not be considered in determining whether issues of arbitrability have been delegated to the arbitrator, and Defendants' motions should be granted.

Respectfully submitted,

Andrew M. Spurchise

Firmwide:133629157.4 073208.1047