1  Laura L. Ho (SBN 173179)
   lho@gbdhlegal.com
2  Andrew P. Lee (SBN 245903)
   alee@gbdhlegal.com
3  William C. Jhaveri-Weeks (SBN 289984)
   wjhaveriweeks@gbdhlegal.com
4  GOLDSTEIN, BORGEN, DARDARIAN & HO
   300 Lakeside Drive, Suite 1000
5  Oakland, CA  94612
   Tel:    (510) 763-9800
6  Fax:   (510) 835-1417

7  Meredith Desautels (SBN 259725)
   mdesautels@lccr.com
8  Dana Isaac Quinn (SBN 278848)
   disaac@lccr.com
9  LAWYERS' COMMITTEE FOR CIVIL
     RIGHTS OF THE SAN FRANCISCO
10    BAY AREA
   131 Steuart Street, Suite 400
11 San Francisco, CA  94105
   Tel:   (415) 543-9444
12 Fax:   (415) 543-0296

13 Attorneys for Plaintiff Gillette and the
   Putative Class

   Tina Wolfson (SBN 174806)
   twolfson@ahdootwolfson.com
   Robert Ahdoot (SBN 172098)
   rahdoot@ahdootwolfson.com
   Theodore W. Maya (SBN 223242)
   tmaya@ahdootwolfson.com
   Bradley K. King (SBN 274399)
   bking@ahdootwolfson.com
   AHDOOT & WOLFSON, P.C.
   1016 Palm Avenue
   West Hollywood, CA  90069
   Tel:    (310) 474-9111
   Fax:    (310) 474-8585

   Attorneys for Plaintiff Abdul Kadir Mohamed
   and the Putative Class

14

15              **UNITED STATES DISTRICT COURT**

16            **NORTHERN DISTRICT OF CALIFORNIA**

17

18 ABDUL KADIR MOHAMED, individually,        Case No.:  3:14-cv-05200-EMC
   and on behalf of all others similarly-situated,    Case No.:  3:14-cv-05241-EMC

19          Plaintiff,

   vs.
20
                                              **PLAINTIFFS' CONSOLIDATED OPPOSITION
21 UBER TECHNOLOGIES, INC.; RASIER,           TO DEFENDANTS' MOTION TO STAY**
   LLC; HIREASE, LLC; and DOES 1-50,
22
          Defendants.
23
   RONALD GILLETTE, individually, and on      Hon. Edward M. Chen
24 behalf of all others similarly-situated,
                                              Date:  July 16, 2015
          Plaintiffs,                         Time: 1:30 p.m.
25                                            Courtroom: 5, 17th Floor
   vs.
26
   UBER TECHNOLOGIES, INC., a California
27 corporation, and DOES 1-20, inclusive

          Defendants.
28

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ...................................................................................1

II.    FACTS....................................................................................................3

III.   ARGUMENT ..........................................................................................4

       A.     Legal Standard for Discretionary Stay Pending Appeal.......................4

       B.     Defendants' Appeal Raises No Serious Legal Questions.....................5

              1.     Defendants Raise No Serious Question about the Agreements' Failure to
                     "Clearly and Unmistakably" Delegate Arbitrability Issues to the
                     Arbitrator. ...........................................................................6

              2.     Well-Settled Law Supports the Court's Unconscionability Analysis. .....8

                     a.     Procedural Unconscionability ...................................9

                     b.     Substantive Unconscionability .................................10

       C.     Defendants Will Suffer No Irreparable Injury Absent a Stay. ...........................12

       D.     A Stay Will Substantially Injure Plaintiffs and the Putative Class. ..................15

       E.     The Public Interest Supports Denial of a Stay...................................15

       F.     Particularly Given Uber's Failure to Identify Serious Legal Questions as to the
              2013 Agreement, the Factors Weigh Against Issuance of a Stay......................16

IV.    CONCLUSION .....................................................................................17

582630.6

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Bates v. Jones*,
5     131 F.3d 843 (9th Cir. 1997) ................................................................................. 10

6

*Bradberry v. T-Mobile USA, Inc.*,
    No. C 06 6567 CW, 2007 WL 2221076 (N.D. Cal. Aug. 2, 2007) ...................................... 1, 14, 15

7

*Britton v. Co-op Banking Group*,
8     916 F.2d 1405 (9th Cir. 1990) ................................................................................. 4

9

*Circuit City Stores, Inc. v. Ahmed*,
10     283 F.3d 1198 (9th Cir. 2002) ................................................................................. 9

11

*Circuit City Stores, Inc. v. Najd*,
    294 F.3d 1104 (9th Cir. 2002) ................................................................................. 9

12

*Covillo v. Specialty's Cafe*,
13     No. C 11-00594 DMR, 2012 WL 4953085 (N.D. Cal. Oct. 17, 2012) ................................... 1, 5

14

*Guifu Li v. A Perfect Franchise, Inc.*,
15     No. 5:10-CV-01189-LHK, 2011 WL 2293221 (N.D. Cal. June 8, 2011) ............................... *passim*

16

*Hernandez v. DMSI Staffing, LLC*,
    C-14-1531 EMC, 2015 WL 458083 (N.D. Cal. Feb. 3, 2015) ......................................... 11

17

*Just Film, Inc. v. Merch. Servs., Inc.*,
18     No. C 10-1993 CW, 2011 WL 3844071 (N.D. Cal. Aug. 30, 2011) .................................... 1, 13

19

*Kaltwasser v. Cingular Wireless LLC*,
20     No. C 07-00411, 2008 WL 3925445 (N.D. Cal. Aug. 22, 2008) ..................................... 1

21

*Kilgore v. KeyBank Nat'l Ass'n*,
    718 F.3d 1052 (9th Cir. 2013) ................................................................................. 9

22

*Morse v. Servicemaster Global Holdings, Inc.*,
23     No. C 08-03894, 2013 WL 123610 (N.D. Cal. Jan. 8, 2013) .......................................... 1, 5, 12

24

*Newton v. Am. Debt Servs., Inc.*,
25     No. C-11-3228 EMC, 2012 WL 3155719 (N.D. Cal. Aug. 2, 2012) ..................................... *passim*

26

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................................................. 4

27

*Raymundo v. ACS State & Local Solutions, Inc.*,
28     No. 13–cv–442-WHA (N.D. Cal. Aug. 6, 2013) ..................................................... 1, 12, 14

ii

582630.6

*Rent-A-Center, W., Inc. v. Jackson,*
    561 U.S. 63 (2010) ........................................................................................ 2, 11

*Trompeter v. Ally Fin., Inc.,*
    914 F. Supp. 2d 1067 (N.D. Cal. 2012) .................................................... 1, 11, 12

**State Cases**

*Ajamian v. CantorCO2e, L.P.,*
    203 Cal. App. 4th 771 (2012) ................................................................... 1, 7

*Arias v. Super. Ct.,*
    46 Cal. 4th 969 (2009) ................................................................................. 13

*Armendariz v. Found. Health Psychcare Servs., Inc.,*
    24 Cal. 4th 83 (2000) ................................................................................... 2

*Baker v. Osborne Dev. Corp.,*
    159 Cal. App. 4th 884 (2008) ...................................................................... 6

*In re Carrier IQ, Inc. Consumer Privacy Litig.,*
    No. C-12-MD-2330 EMC, 2014 WL 2922726 (N.D. Cal. June 13, 2014) ............... 1, 13

*Gentry v. Super. Ct.,*
    42 Cal. 4th 443 (2007) ........................................................................... *passim*

*Hartley v. Super. Court,*
    196 Cal. App. 4th 1249 (2011) ................................................................. 1, 7

*Iskanian v. CLS Transp. L.A., LLC,*
    59 Cal. 4th 348 (2014) ................................................................................. 10

*Parada v. Super. Ct.,*
    176 Cal. App. 4th 1554 (2009) .................................................................... 6

*Sonic-Calabasas A, Inc. v. Moreno,*
    57 Cal. 4th 1109 (2013) ........................................................................... 2, 11

**Federal Statutes**

Fair Credit Reporting Act ................................................................................ 3, 14

**State Statutes**

California Investigative Consumer Report Agencies Act. ..................................... 3

California Private Attorneys General Act ........................................................... 2

**Rules**

Federal Rule of Civil Procedure 23 ................................................................... 10

iii

582630.6

# I.    **INTRODUCTION**

Defendants fail to meet the standard to stay these proceedings pending their appeal of this Court's denial of their prior motion to compel arbitration.  As discussed below, Defendants' appeal does not raise the type of serious legal issues that might justify a stay, and Plaintiffs intend to seek consolidation of these two actions and file a consolidated complaint that will add new plaintiffs who are not subject to the arbitration agreements invoked by Defendants in their motion to compel.  Thus, Defendants' motion should be denied in its entirety.[1]

Defendants' appeal raises no "serious legal issues."  Defendants contend that they have a "fair probability" of persuading the Ninth Circuit that the delegation clauses contained in the 2013 and 2014 Agreements are "clear and unmistakable."  Rather than dispute the well-established standard applied by the Court, Defendants claim that the Court erred by going outside the arbitration provision itself to find ambiguity.  As the Court explained in its Order, applicable case law holds that a conflict may arise from provisions found outside of the arbitration provision.[2]  Even if this argument were meritorious, which it is not, the Court found ambiguity within the arbitration provision itself.  Order Denying Defendants' Motion to Compel Arbitration ("Order") 17 (finding that the class, collective, and representative action waiver directly conflicts with the delegation

---

[1] Defendants argue that "almost every California district court to recently consider whether to stay a matter, pending appeal of an order denying a motion to stay arbitration, has issued a stay."  (Br. at 1.)  In fact, as discussed *infra*, at least ten Northern District of California district court decisions in the last several years, including two by this Court, have denied such stays.  *In re Carrier IQ, Inc. Consumer Privacy Litig.*, No. C-12-MD-2330 EMC, 2014 WL 2922726 (N.D. Cal. June 13, 2014) (Chen, J.); *Raymundo v. ACS State & Local Solutions, Inc.*, No. 13–cv–442-WHA (N.D. Cal. Aug. 6, 2013) (Order Denying Mot. to Stay); *Morse v. Servicemaster Global Holdings, Inc.*, No. C 08-03894, 2013 WL 123610 (N.D. Cal. Jan. 8, 2013); *Covillo v. Specialty's Cafe*, No. C 11-00594 DMR, 2012 WL 4953085 (N.D. Cal. Oct. 17, 2012); *Trompeter v. Ally Fin., Inc.*, 914 F. Supp. 2d 1067, 1078 (N.D. Cal. 2012); *Newton v. Am. Debt Servs., Inc.*, No. C-11-3228 EMC, 2012 WL 3155719 (N.D. Cal. Aug. 2, 2012) (Chen, J.); *Just Film, Inc. v. Merch. Servs., Inc.*, No. C 10-1993 CW, 2011 WL 3844071 (N.D. Cal. Aug. 30, 2011); *Guifu Li v. A Perfect Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2011 WL 2293221 (N.D. Cal. June 8, 2011); *Kaltwasser v. Cingular Wireless LLC*, No. C 07-00411, 2008 WL 3925445 (N.D. Cal. Aug. 22, 2008); *Bradberry v. T-Mobile USA, Inc.*, No. C 06 6567 CW, 2007 WL 2221076 (N.D. Cal. Aug. 2, 2007).

[2] *Hartley v. Super. Court*, 196 Cal. App. 4th 1249, 1256 (2011) (finding ambiguity in conflict between arbitration clause and separate clause); *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 792 (2012) ("Even broad arbitration clauses that *expressly* delegate the enforceability decision to arbitrators may not meet the clear and unmistakable test, where other language in the contract creates uncertainty in that regard.").

582630.6

clause).  Defendants also attempt to manufacture a "serious legal question" by arguing that the Court improperly considered the purported lack of sophistication of the Plaintiffs and putative class members.  Yet the Court concluded that the delegation clause failed the "clear and unmistakable" standard regardless of the parties' relative sophistication.

Moreover, the Court's unconscionability analysis is a straightforward application of binding precedent.  Defendants argue that *any* opportunity to opt out of an arbitration agreement, regardless of difficulty or burden, precludes a finding of procedural unconscionability.  This argument lacks merit, as even the cases relied upon by Defendants make clear that placing an opt-out provision inconspicuously at the end of a long, dense contract gives rise to procedural unconscionability.  Defendants further contend that the Court's finding of procedural unconscionability conflicts with its own prior orders precluding Defendants from misleading drivers regarding the existence of putative class actions, and making the opt-out provision less onerous.  The Court, however, based its finding of procedural unconscionability on a direct application of *Gentry*, which held that an arbitration agreement may still contain a degree of procedural unconscionability if it (i) neglects to inform the employee of "the many disadvantages to the employee that [the employer] had inserted into the agreement," and (ii) places pressure on the employee to accept the agreement by making clear that such agreement is the preference of the employer.  *Gentry v. Super. Ct.*, 42 Cal. 4th 443, 471-72 (2007).  Defendants do not contend that this conclusion raises a "serious legal question."

The Court's substantive unsconscionablity analysis is based on well-established law.  To the extent that the Court ruled on the "unsettled" issue regarding whether the Federal Arbitration Act ("FAA") applies to Private Attorney General Act ("PAGA"), the Court's ruling on that issue is only one alternative ground for its substantive unconscionability finding.  The Court separately found four unconscionable provisions that permeated the arbitration clause: cost splitting, confidentiality, lack of mutuality, and unilateral modification.  Defendants allege that only one of those grounds raises a serious legal question, *i.e.* whether it is substantively unconscionable to require a driver to pay thousands of dollars merely to *initiate* a challenge that he otherwise has a right to file without such a charge in court.  The Court's finding is amply supported by United States and California Supreme

1   Court precedent.[3]  Defendants have not met their burden of identifying a "serious question" as to the

2   Court's multiple, independent substantive unconscionability findings.

3          Even if Defendants had identified a "serious legal question," other factors weigh heavily

4   against a stay.  The only harm Defendants will suffer if the stay is denied is litigation costs that

5   Defendants eventually would incur even if they prevail on appeal and the case is compelled to

6   arbitration.  Indeed, many of the costs already have been incurred in discovery in the matter of

7   *O'Connor v. Uber Technologies., Inc.*, No. 13-cv-3826 (EMC), allowing for great efficiency in

8   discovery in the *Gillette* and *Mohamed* matters.  Plaintiffs, on the other hand, will be at risk of losing

9   evidence, being delayed in informing an absent and transient class of this proposed class action, and

10  having to wait for the adjudication of their statutory claims.

11         In addition, Plaintiffs intend to file a consolidated complaint adding new proposed class

12  representatives who are not subject to any arbitration agreement, and issuing a stay would unfairly

13  penalize these prospective plaintiffs and other employees who are similarly situated.  The public

14  interest weighs in favor of vindicating the drivers' statutory rights, not providing Defendants with a

15  temporary reprieve on routine litigation costs that Defendants will be required to bear even if their

16  appeal is successful.

17         Accordingly, there is no cause to delay this matter by issuing a discretionary stay.

## II.   FACTS

19         Plaintiffs Gillette and Mohamed filed this action on November 26, 2014, and November 24,

20  2014, respectively.  The *Gillette* Complaint alleges class claims under the federal Fair Credit Reporting

21  Act ("FCRA") and individual claims under the California Investigative Consumer Report Agencies

22  Act.  *Gillette* ECF No. 7.  It also alleges claims under the PAGA, which are based on the Defendants'

23  alleged misclassification of its drivers as independent contractors.  *Id.* ¶ 79.  The *Mohamed* Complaint

24  brings FCRA claims, along with similar background check claims under California and Massachusetts

25  law.  *Mohamed* ECF No. 1.

---

[3] *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 110 (2000); *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1144 (2013); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 74 (2010).

582630.6

1    Defendants filed a motion to compel arbitration in both cases, on January 23, 2015, and

2    February 6, 2015, respectively.  *Gillette* ECF No. 16; *Mohamed* ECF No. 28.  On June 9, 2015, the

3    Court denied both motions.  *Gillette* ECF No. 48; *Mohamed* ECF No. 70.  On June 11, Defendants

4    filed a notice of appeal.  *Gillette* ECF No. 49; *Mohamed* ECF No. 71.  On June 19, 2015, Defendants

5    filed the instant motion to stay pending appeal.  *Gillette* ECF No. 54; *Mohamed* ECF No. 76.

6    Plaintiffs intend to file a consolidated complaint adding new plaintiffs who are not subject to

7    the arbitration agreements invoked by Defendants in their motion to compel arbitration.  One

8    prospective plaintiff applied to work for Defendants as an office manager.  After going through three

9    rounds of interviews, Defendants conveyed the clear impression that the job was hers, but suddenly

10   went silent.  Only recently, when she reviewed her consumer background report, did she learn that

11   Defendants had obtained a consumer background report during the interview process and that the

12   decision not to hire her was based on negative information in that report, which she would have

13   explained had she known Defendants would procure it.  This prospective plaintiff is not subject to the

14   driver agreements containing arbitration clauses invoked by Defendants to date.  The other potential

15   plaintiffs to be added to the consolidated complaint similarly are not subject to those arbitration

16   agreements as they merely applied to be drivers, but were rejected based on consumer background

17   reports.  The parties are in the process of meeting and conferring regarding a stipulation to permit

18   consolidation and the filing of a consolidated complaint.

19   Separately, another case against Uber is pending before this Court, *O'Connor v. Uber*

20   *Technologies., Inc.*, No. 13-cv-3826 (EMC).  In that case, Uber filed a motion for summary judgment,

21   which the Court denied on March 11, 2015.  *O'Connor* ECF No. 251.  The summary judgment

22   decision held that fact questions existed as to whether Uber's drivers are employees or independent

23   contractors.  The facts relevant to the summary judgment issue in *O'Connor* overlap to a great degree

24   with the facts relevant to the *Gillette* Plaintiffs' PAGA claims, as both are premised on the claim that

25   Uber's drivers are employees, not independent contractors.

26   ## III.   ARGUMENT

27   ## A.   Legal Standard for Discretionary Stay Pending Appeal

28   A district court's order denying a motion to compel arbitration does not effectuate an automatic

---

4

582630.6

stay of proceedings pending appeal. *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990). A district court may evaluate the merits of the moving party's claim, and grant or deny a stay as a matter of discretion, dependent on the case's particular facts. *Id.* The party requesting the stay bears the burden of showing that the case's circumstances justify the exercise of that discretion. *Nken v. Holder*, 556 U.S. 418, 433-34 (2009); *see also Newton v. Am. Debt Servs., Inc.*, No. C-11-3228 EMC, 2012 WL 3155719, at *2 (N.D. Cal. Aug. 2, 2012) (Chen, J.) (same).

"To determine whether the moving party has met its burden, the Ninth Circuit adheres to a four-factor test: (1) whether the party has made a strong showing it is likely to succeed on the merits; (2) whether it will be irreparably injured absent a stay; (3) whether issuance of a stay will substantially injure the other parties in the proceeding; and (4) where the public's interest lies." *Morse v. Servicemaster Global Holdings, Inc.*, No. C 08-03894, 2013 WL 123610, at *2 (N.D. Cal. Jan. 8, 2013) (citing *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir.2011) *and Nken*, 556 U.S. at 434). In weighing these factors, courts apply a "sliding scale," whereby the elements of the test are balanced "so that a stronger showing of one element may offset a weaker showing of another." *Morse*, at *2 (quoting *Leiva-Perez*, 640 F.3d at 964). A moving party who under the first factor cannot satisfy a strong likelihood of success must at minimum show that its appeal presents "a substantial case on the merits." *Id.* Courts also articulate this lesser threshold as whether "serious legal issues" are raised. *Id.* (citing *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998)). If a party meets this lower threshold it must then demonstrate that the balance of hardships under the second and third factors tilts sharply in its favor. *Id.*

## B.   Defendants' Appeal Raises No Serious Legal Questions.

Defendants do not meet their burden of identifying "serious legal questions." "For a legal question to be 'serious,' it must be a question going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation." *Li*, 2011 WL 2293221, at *3 (internal quotation omitted). If the denial of a motion to compel arbitration was issued on multiple grounds, and if there is no serious legal question as to at least one of those grounds, the existence of a serious legal question as to an alternative ground does not merit a stay. *See Newton*, 2012 WL 3155719, at *8 (denying motion to stay and concluding that "even if there were a

582630.6

serious legal question, … there were other independent grounds supporting the Court's unconscionability determination").  An issue that raises a constitutional issue or a pressing and unresolved legal question may be "serious," but an issue that is merely the application of established rules to the "the four corners of the contract" is not.  *Morse*, 2013 WL 123610, at *3; *Covillo*, 2012 WL 4953085, at *3 (routine challenges to denial of motion to compel are not "serious legal questions").

### 1.  Defendants Raise No Serious Question about the Agreements' Failure to "Clearly and Unmistakably" Delegate Arbitrability Issues to the Arbitrator.

There is no serious legal question concerning the Court's holding that the delegation clause failed the "clear and unmistakable" requirement.  Order 15-23.  The Court identified several conflicts in the Licensing Agreements that created ambiguity about whether a court, rather than an arbitrator, would decide questions related to arbitrability:

- *First*, each of the Agreements provides that federal courts within the City and County of San Francisco shall have exclusive jurisdiction of "any disputes, actions, claims or causes of action arising out of or in connection with this agreement."  Order 17, 20 (citing 2013 Agreement § 14.1 and 2014 Agreement § 14.1).  This language is located a few paragraphs before the delegation clause on the same page of the Licensing Agreements.  Such a provision precludes a finding that the Agreements "clearly and unmistakably" delegate the issue of arbitrability to an arbitrator.

- *Second*, in all three Agreements, the paragraph containing the "exclusive jurisdiction" clause also states:  "If any provision of this Agreement is held to be invalid or unenforceable, such provision shall be struck and the remaining provisions shall be enforced …."  Order 17.  This indicates that the courts, which are described as having "exclusive jurisdiction," have the authority to "strike" provisions, such as the arbitration provision.  The Agreements thus do not "clearly and unmistakably" delegate arbitrability questions to an arbitrator.

- *Third*, the 2013 Agreement, which applies to Plaintiff Gillette, provides in the arbitration provision itself that "any claim that all or part of the Class Action Waiver, Collective Action Waiver or [PAGA] Waiver is invalid, unenforceable, [or] void or voidable may be determined

582630.6

only by a court of competent jurisdiction and not by an arbitrator." Order 17.  Given that such questions *must* be resolved by a court, there is no "clear and unmistakable" delegation to an arbitrator; indeed, this language creates a direct contradiction within the arbitration clause. In light of these conflicts, the law is clear: The delegation clause is not effective.  *See Parada v. Super. Ct.*, 176 Cal. App. 4th 1554, 1565-66 (2009) (ambiguity regarding whether court may have authority to rule prevents finding of "clear and unmistakable" delegation to arbitrator); *Baker v. Osborne Dev. Corp.*, 159 Cal. App. 4th 884, 888-89 (2008) (same); *Hartley v. Super. Ct.*, 196 Cal. App. 4th 1249, 1256 (2011) (same).

Defendants do not dispute that the Court applied the correct standard.  *See Li*, 2011 WL 2293221, at *4 ("Defendants do not argue that this Court applied the wrong test in denying their motion to compel arbitration.  Rather, Defendants argue that this Court misapplied the test…. Defendants cite no authority in support of their argument that this rises to the level of a 'serious legal question.'").  Defendants provide no rejoinder to the cases upon which the Court based its ruling.  Nor do Defendants offer either authority or argument in response to the Court's holding that Defendants' reliance on canons of construction is, itself, an indication that ambiguity exists.  Order 22.

Instead, Defendants rely entirely on the false premise that ambiguity simply does not count unless the ambiguity is found in the arbitration provision in isolation, without considering conflicting language in separate provisions of the contract.  Mot. at 4.  That argument fails both under the case law and as a matter of common sense.  The case law recognizes that the existence of ambiguity is what matters, regardless of whether the delegation clause conflicts with a provision found within the arbitration clause itself or other provisions contained within the contract generally.  Order 21; *Hartley*, 196 Cal. App. 4th at 1256 (finding ambiguity in conflict between arbitration clause and separate clause); *Ajamian*, 203 Cal. App. 4th at 786 ("Even broad arbitration clauses that *expressly* delegate the enforceability decision to arbitrators may not meet the clear and unmistakable test, where other language in the contract creates uncertainty in that regard.").  As a matter of common sense, ambiguity is ambiguity – there is no reason to ignore ambiguity if it arises from a conflict between the arbitration clause and another clause in the contract, particularly where the conflicting language is found in close proximity to the delegation clause.

582630.6

Defendants further rely on cases that did not apply the heightened "clear and unmistakable" standard. *See* Mot. at 4 (citing *Boghos v. Certain Underwriters at Lloyd's of London*, 36 Cal. 4th 495, 503 (2005), *Hill v. Anheuser-Busch InBev Worldwide, Inc.*, 2014 U.S. Dist. LEXIS 168947 (C.D. Cal. Nov. 26, 2014)).  Defendants also cite an Eighth Circuit case holding that incorporation of the AAA rules satisfied the "clear and unmistakable" test because the rules contain a delegation provision, but here, there was no such incorporation, so the case does not apply.  Mot. at 4 (citing *Fallo v. High-Tech Inst.*, 559 F.3d 874, 877 (8th Cir. 2009)).

Moreover, Defendants' argument – that the only ambiguity that counts is ambiguity within the arbitration clause when that clause is viewed in isolation – does not even apply to the Court's conclusion that the 2013 Agreement's arbitration clause contains conflicting provisions.  *See supra* at 6 (third instance of ambiguity).  Thus, with respect to Plaintiff Gillette and others subject to the 2013 Agreement, there are also independent grounds supporting the Court's decision as to which Defendants do not proffer any "serious legal question."

Uber also attempts to generate a question by arguing that the Court "relied" on the lack of sophistication of the drivers (Mot. at 4), but the Court expressly did not rely on this factor, concluding instead that the "delegation clauses are not sufficiently clear and unmistakable to be enforced even against a legally sophisticated entity."  *See* Order at 21 n.16.  Defendants identify no "serious legal question" for the Ninth Circuit to resolve regarding delegation.

## 2.    Well-Settled Law Supports the Court's Unconscionability Analysis.

With respect to the Court's holding that the delegation clause itself is unconscionable, that holding is in the alternative to the Court's holding on the "clear and unmistakable" standard.  Because there is no "serious question" on the latter, there is no cause to stay this case for the Ninth Circuit to address the former.  *See Newton*, 2012 WL 3155719, at *8 (no stay merited when other independent grounds support unconscionability determination).  In any event, the Court's unconscionability holdings, both with respect to delegation and with respect to the arbitration clause as a whole, are straightforward applications of binding precedent, and do not raise a "serious legal question" that justifies putting these cases on hold during the pendency of Defendants' appeal.

582630.6

### a. **Procedural Unconscionability**

Defendants argue that the presence of an opt-out clause, on its own, "precludes" a finding of procedural unconscionability, even though the California Supreme Court has specifically rejected that argument in *Gentry v. Superior Court*, 42 Cal. 4th 443 (2007). The argument fails with respect to both the 2013 and 2014 Agreements.

First, with respect to the 2013 Agreement that applies to Plaintiff Gillette, Defendants offer no reason to question the Court's holding that the arbitration provision was "oppressive" and "surprising," given that it was buried inconspicuously at the end of a long, dense adhesion contract (given the illusory nature of the opt-out provision). Even the cases upon which Defendants rely make clear that placing an opt-out provision inconspicuously at the end of a long, dense contract gives rise to procedural unconscionability. *See Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (opt out was meaningful because it was not "buried in fine print … but was instead in its own section, clearly labeled, in boldface"); *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002) (opt-out was presented in "a simple one-page form" that the employee could submit, and the agreement "lacked any other indicia of procedural unconscionability"); *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) (simply relying on *Ahmed*, which involved "materially identical" agreement). Because Defendants offer no other reason to challenge the Court's decision that the 2013 Agreement was procedurally unconscionable, there is no "serious legal question" on that point.

With respect to both the 2013 and 2014 Agreements, *Gentry* holds that even if an arbitration clause contains a meaningful opt-out provision (which the 2013 Agreement did not), the contract may still contain a degree of procedural unconscionability if it (i) neglects to inform the employee of "the many disadvantages to the employee that [the employer] had inserted into the agreement," and (ii) places pressure on the employee to accept the agreement by making clear that such agreement is the preference of the employer. *Gentry*, 42 Cal. 4th at 471-72. Defendants do not take issue with the Court's interpretation of *Gentry*, nor do Defendants cite any cases suggesting that the 2013 and 2014 Agreements (i) adequately informed Plaintiffs of the disadvantages of arbitration or (ii) did not pressure them to arbitrate. Rather, Defendants cite two (identical) Ninth Circuit decisions predating

582630.6

1     *Gentry* that were abrogated by *Gentry*.  *See Ahmed*, 283 F.3d at 1199; *Najd*, 294 F.3d at 1108.

2           Even if these decisions had not been abrogated, they do not actually stand for the broad rule

3 Defendants claim.  In *Ahmed*, the Court did not hold that the presence of an opt-out provision

4 "precluded" further consideration of procedural unconscionability; on the contrary, it went on to

5 conclude that no "other indicia of procedural unconscionability" were present.  *Ahmed*, 283 F.3d at

6 1199; *see also Najd*, 294 F.3d at 1108 (simply relying on *Ahmed*).  Defendants also cite *Kilgore*, 718

7 F.3d at 1059, but that decision did not apply *Gentry*, so it does not suggest that the Ninth Circuit

8 disagrees with the California Supreme Court, nor would the Ninth Circuit have been empowered to do

9 so on this question of state law.  *See, e.g., Bates v. Jones*, 131 F.3d 843, 858 (9th Cir. 1997) (California

10 Supreme Court is "the final arbiter of state law").  *Gentry* controls with respect to the state law

11 doctrine of unconscionability, and Defendants offer no criticism of the Court's application of *Gentry*;

12 therefore, Defendants have not identified a "serious question" for the Ninth Circuit to resolve with

13 respect to procedural unconscionability.  Moreover, with respect to the 2014 Agreements, Defendants

14 themselves describe the Court's ruling as "based on a factual finding" (Mot. at 6) – as such, there is no

15 point in staying the case for a deferential appellate review of a factual determination.

16           The only other argument Defendants make regarding procedural unconscionability is that, with

17 respect to the 2014 Agreements, the Court required Defendants to make alterations to their opt-out

18 provision for purposes of corrective notice under Federal Rule of Civil Procedure 23.  Mot. at 6.  The

19 fact that the Court had to step in to prevent misleading statements about a pending class action to

20 potential class members does not have any bearing on the Court's unconsionability findings.

21           Thus, with respect to procedural unconscionability, Defendants have raised no "serious

22 question" concerning the 2013 Agreement that applied to Gillette because Defendants do not dispute

23 the "illusory" nature of the opt-out provision.  Independently, with respect to both the 2013 and 2014

24 Agreements, Uber raises no "serious question" because it fails to contest the Court's application of

25 *Gentry*.

26          **b.**    **Substantive Unconscionability**

27           The Court found the 2013 and 2014 Agreements substantively unconscionable on multiple

28 independent grounds.  Unless there is a "serious question" as to each ground, a stay is not merited.  *See*

1    *Newton*, 2012 WL 3155719, at *5.

2        As a first independent ground, the Court has held that the PAGA waiver in each agreement is

3    invalid, and because Defendants' contracts, by their own terms, made the PAGA waivers "non-

4    severable" from the rest of the arbitration provisions, the arbitration provisions cannot be enforced.

5    Although the issue of whether the FAA preempts *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348

6    (2014) is currently pending before the Ninth Circuit in an appeal that will be fully briefed by August

7    2015, it is only one basis for the Court's holding.  *See Hernandez v. DMSI Staffing, LLC*, No. C-14-

8    1531 EMC, 2015 WL 458083 (N.D. Cal. Feb. 3, 2015), appeal docketed, No. 15-15366 (9th Cir. Mar.

9    2, 2015).

10        As a second independent ground, the Court identified four separate unconscionable terms

11    (above and beyond the PAGA waiver) that are found in both the 2013 and 2014 Agreements:  fee-

12    splitting (Order at 53), confidentiality (*id.* at 54), intellectual property carve-out (*id.* at 56), and

13    unilateral modification (*id.* at 57).  The Court held that these unconscionable terms "permeated" the

14    2013 Agreement.  The Court did not reach the question of whether the same unconscionable provisions

15    "permeate" the 2014 Agreement, but there is no reason to believe that the Court would reach a

16    different conclusion.

17        Defendants challenge the Court's holding as to only one of these terms: the fee-splitting

18    provision.  Mot. at 7.  Yet the Court's conclusion that it is substantively unconscionable to require a

19    driver to pay thousands of dollars merely to *initiate* a challenge that he otherwise has a right to file

20    without such a charge in court is amply supported.  *See* Order at 27-29 (citing *Armendariz v. Found.*

21    *Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 110 (2000), *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.

22    4th 1109, 1144 (2013), *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 74 (2010).

23        Defendants offer no challenge to the Court's findings that three other clauses were

24    unconscionable, and these instances of unconscionability, like the cost-splitting instance, are "well-

25    supported by long-standing case law."  *Trompeter v. Ally Fin., Inc.*, 914 F. Supp. 2d 1067, 1078 (N.D.

26    Cal. 2012).  Nor do Defendants challenge the Court's conclusion that the unconscionable terms

27    "permeate" the 2013 Agreement.  Thus, there is no "serious question" that the agreements are

28    permeated with substantively unconscionable terms.  Defendants have not met their burden of

582630.6

1    identifying a "serious question" as to the Court's multiple, independent substantive unconscionability

2    findings.

3    **C.      Defendants Will Suffer No Irreparable Injury Absent a Stay.**

4        Even if the Court were to find that "serious legal questions" exist with respect to Defendants'

5    appeal, the remaining factors of the analysis strongly counsel against a stay.  Defendants will not suffer

6    any irreparable injury, while Plaintiffs — including the prospective plaintiffs to be added to the

7    Consolidated Complaint who are not subject to the arbitration agreements invoked by Defendants —

8    would be irreparably harmed by a stay, as they would lose evidence.

9        The costs Defendants face from these actions proceeding now are inevitable in the long run.

10   Defendants' appeal will not absolve them of the responsibility to defend themselves before this Court

11   given that, as discussed above, Plaintiffs to be added to the Consolidated Complaint are not subject to

12   either of the agreements on which Defendants based their Motion to Compel Arbitration.

13       While Defendants purport to care about their drivers' rights to "the 'efficient, streamlined'

14   arbitration process to which they agreed" (Motion at 1 (citation omitted)), Plaintiffs submit that these

15   drivers are better served by allowing this litigation to proceed.  Plaintiffs further submit that such

16   drivers have nothing to gain from being required to submit any claims against Defendants to individual

17   arbitration in accordance with unconscionable arbitration provisions which, as the Court observed,

18   appear to require those drivers to pay potentially prohibitive arbitration fees and costs.  And, of course,

19   any drivers that do wish to arbitrate individual claims against Defendants are free to do so at any time;

20   Defendants' argument that this litigation somehow prevents drivers from initiating individual

21   arbitration, should they desire to do so, is incorrect.

22       The only injury Defendants identify to themselves is that, absent a stay, Defendants will have

23   to expend litigation costs as this case moves forward.  "However, the money and time a party must

24   expend in that process, while burdensome, does not alone constitute irreparable injury."  *Morse*, 2013

25   WL 123610, at *3; *see also Li*, 2011 WL 2293221, at *4-5 ("Many courts, however, have concluded

26   that incurring litigation expenses does not amount to an irreparable harm.") (citing cases); *cf.*

27   *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) ("Mere litigation expense, even

28   substantial and unrecoupable cost, does not constitute irreparable injury."); *F.T.C. v. Standard Oil Co.*

582630.6

*of Cal.*, 449 U.S. 232, 244 (1980) (rejecting defendant's reliance on "the expense and disruption of defending itself in protracted adjudicatory proceedings" as irreparable injury); *Los Angeles Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) ("'Mere injuries, however substantial, in terms of money, time and energy necessarily expended . . . are not enough.'") (citations omitted).

Not only do Defendants' litigation costs fail to rise to the level of "irreparable injury" justifying a stay, but such costs can be limited by allowing discovery to proceed now without prejudice to a renewed stay motion if the appeal is not resolved before certification or summary judgment motions are ripe. *See Li*, 2011 WL 2293221, at *4-5 ("If the case proceeds to the point of final pretrial preparations without a ruling from the Ninth Circuit on Defendants' appeal of the arbitration issue, Defendants may renew their motion to stay the case at that time."); *Just Film, Inc. v. Merch. Servs., Inc.*, No. C 10-1993 CW, 2011 WL 3844071, at *1 (N.D. Cal. Aug. 30, 2011) ("[Defendant] may renew its motion at a later date if it can demonstrate that discovery has become unduly burdensome. Alternatively, it may seek a stay as class certification proceedings approach."); *In re Carrier IQ, Inc. Consumer Privacy Litig.*, No. C-12-MD-2330 EMC, 2014 WL 2922726, at *1 (N.D. Cal. June 13, 2014) (Chen, J.) ("But if [the cost of proceeding in litigation] is the basis of Defendants' claim of irreparable injury, the Court is not convinced that, at this juncture, the degree of hardship suffered would be substantial….). Also, this Court has stated that it is inclined to phase proceedings so as to minimize any burden on Defendants litigating in this forum as opposed to arbitration."); *Raymundo*, 13-cv-442-WHA (Aug. 6, 2013), at 2 ("In the event that the appeal is pursued at a reasonable pace, trial will be postponed in order to have the benefit of the ruling of our court of appeals. If, however, defendant simply uses the appeal as a delaying tactic and draws out the process unreasonably, the Court will likely allow summary judgment and/or trial to go forward."); *Bradberry v. T-Mobile USA, Inc.*, No. C 06 6567 CW, 2007 WL 2221076, at *4 (N.D. Cal. Aug. 2, 2007) ("Defendant focuses on the cost of continued litigation while its appeal is pending as its major harm. However, this Court indicated that a stay would be appropriate when the trial date approaches or if discovery were burdensome.… The cost of some pretrial litigation does not constitute an irreparable harm to Defendant.").

1    Fundamentally, the expenses Defendants will incur defending themselves before this Court

2   will not be eliminated by a Ninth Circuit ruling in their favor, given that additional plaintiffs are being

3   added to the consolidated complaint that are not subject to the same arbitration agreements.

4   Accordingly, Defendants' reliance on *Zaborowski v. MHN Gov't Servs.*, No. C 12-05109 SI, 2013 WL

5   1832638 (N.D. Cal. May 1, 2013) (cited in Mot. at 8), and similar cases is misplaced; unlike this case,

6   there were no plaintiffs in such cases to whom the arbitration agreements at issue did not apply.  This

7   litigation, by contrast, will proceed in this Court, and Defendants' litigation expenses will be incurred,

8   regardless of the Ninth Circuit's ruling.

9    Additionally, Plaintiffs will conduct class certification discovery in an efficient manner,

10   limiting Defendants' litigation expenses.  Plaintiffs' discovery will focus on Defendants' background

11   check policies, procedures, and practices.  While Defendants will be required to produce some

12   documents and make certain knowledgeable employees available for deposition, such discovery will

13   not be excessively onerous or burdensome.  Indeed, many of the same documents and witnesses will

14   likely be produced regardless of whether this case proceeds in this Court or in arbitration.  *See, e.g.*, *Li*,

15   2011 WL 2293221, at *4 ("[E]ven if Defendants' appeal is successful, it appears that the discovery

16   costs arising during the appeal are inevitable," because the same discovery would be sought in

17   arbitration); *Trompeter v. Ally Fin., Inc.*, 914 F. Supp. 2d 1067, 1078 (N.D. Cal. 2012) ("[Defendant]

18   has not demonstrated that the procedures in arbitration provide for less costly discovery and motion

19   practice.  It is [Defendant's] burden to show that a stay is warranted, and it has not made a clear

20   showing of irreparable harm."); *Raymundo*, 13-cv-442-WHA (Aug. 6, 2013), at 2 ("Here, there will be

21   no substantial harm to defendant in allowing reasonable discovery to go forward, inasmuch as

22   discovery will be useful even if this action is ultimately arbitrated.").

23    With respect to Plaintiff Gillette's PAGA claims, discovery will be even less burdensome.

24   PAGA claims are representative in nature and are not subject to class certification requirements.  *See*

25   *Arias v. Super. Ct.*, 46 Cal. 4th 969, 981 (2009).  Furthermore, Defendants already engaged in

26   significant discovery in *O'Connor* regarding the employee status issue.  The Parties noted in their Joint

27   Case Management Conference Statement that they "have a shared appreciation for how, for the sake of

28   efficiency, they may be able to rely upon some discovery from the *O'Connor* case to limit unnecessary

duplication of efforts." *Gillette* ECF No. 34 at 10.  Thus, the additional burden to Defendants to produce the same documents here will be minimal, and Plaintiffs may be able to use existing deposition testimony.  Given that Defendants have already conducted significant discovery in *O'Connor*, it is unlikely that such costs and burdens will be fully duplicated here.  For this additional reason, the costs of discovery in this case do not support a stay.  *See, e.g.*, *Newton*, 2012 WL 3155719, at *8 (denying stay because case was going to move forward against other defendants).

## D.     A Stay Will Substantially Injure Plaintiffs and the Putative Class.

If a stay is granted, Plaintiffs will (i) be delayed in obtaining relief; (ii) be delayed in informing class members of this case and obtaining evidence in their possession; and (iii) be delayed in obtaining injunctive relief to put an end to Defendants' unlawful policies.  *See, e.g.*, *Bradberry*, 2007 WL 2221076, at *4 (N.D. Cal. Aug. 2, 2007) ("[R]isk of lost evidence weighs against granting a stay. This risk and the delay in litigation constitute a substantial injury to Plaintiff.").  The risk of losing evidence is heightened in an industry, like this one, where workers may be transient.

In addition, as discussed above Plaintiffs intend to file a consolidated complaint that adds new plaintiffs, each of whom was denied employment with Defendants based on information contained in a consumer report that Defendants did not disclose in the manner required under the FCRA.  Because these prospective plaintiffs applied but never actually worked for Defendants, and because one of them did not even apply to work as a driver, none of these prospective plaintiffs are subject to the 2013 or 2014 Agreements on which the motion to compel was based.  These prospective plaintiffs, and others similarly situated, would be delayed unjustly if they were required to halt the pursuit of their rights while Defendants seek an appellate ruling on an issue that does not pertain to them.

## E.     The Public Interest Supports Denial of a Stay.

This is an action to vindicate the rights not only of the named Plaintiffs but of absent proposed class members under remedial laws.  "Unlike Plaintiff, the putative class members may not be aware of the harm Defendants' actions are allegedly causing them.  A delay of proceedings will allow any harm to the putative class members to continue, and therefore may materially affect the public interest in vindicating the rights of consumers."  *Bradberry*, 2007 WL 2221076, at *5.  This outweighs Defendants' interest in to avoiding litigation costs that they will have to incur even if the case is

1  ultimately sent to arbitration, or that it has already incurred in the *O'Connor* case.  Therefore, the

2  public interest weighs in favor of denying a stay.

3  **F.**     **Particularly Given Uber's Failure to Identify Serious Legal Questions as
         to the 2013 Agreement, the Factors Weigh Against Issuance of a Stay.**

4

5          Defendants have made virtually no showing of any "serious question" pertaining to the 2013

6  Agreement that could result in reversal of this Court's decision with respect to that Agreement.  *First*,

7  there is no serious question as to the multiple independent grounds upon which that Agreement's

8  delegation clause was found unenforceable:  being unconscionable, and also failing to meet the "clear

9  and unmistakable" standard.  *Second*, there is no serious question as to the multiple independent

10  grounds upon which that Agreement was procedurally unconscionable:  featuring an arbitration

11  provision buried in small text with an illusory opt-out, and also failing multiple *Gentry* factors.  And

12  *third*, there is no serious question as to the multiple independent grounds upon which that Agreement

13  was found substantively unconscionable:  the invalid and "non-severable" PAGA waiver, as well as

14  four additional unconscionable terms (three of which Defendants do not challenge) that pervade the

15  Agreement.  Given that there are no serious questions as to Plaintiff Gillette's 2013 Agreement,

16  discovery should proceed for him and other plaintiffs similarly situated.  It would thus make little

17  sense as a matter of efficiency to issue a stay with respect to the 2014 Agreement.  *See, e.g.*, *Newton*,

18  2012 WL 3155719, at *8 (denying stay because case was going to move forward against other

19  defendants).

582630.6

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion for a discretionary stay, and allow this case to proceed through discovery.

Dated:  July 6, 2015                                  Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO


___/s/ Andrew P. Lee_____
Andrew P. Lee

Attorneys for Plaintiff Gillette and the Putative Class

Dated:  July 6, 2015                                  Respectfully submitted,

AHDOOT & WOLFSON, P.C.


___/s/ Theodore W. Maya_____
Theodore W. Maya

Attorneys for Plaintiff Mohamed and the Putative Class


### ATTESTATION OF FILER

I, Andrew P. Lee, attest that concurrence in the filing of this document has been obtained from each of the other Signatories, which shall serve in lieu of their signatures on the document.

Dated:  July 6, 2015                    ___/s/ Theodore W. Maya_____
                                        Theodore W. Maya

582630.6