**Pages 1 - 24**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

| | | |
|---|---|---|
| ABDUL KADIR MOHAMED, individually and on behalf of all others similarly-situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| VS. | ) ) | **NO. C 14-05200 EMC** |
| UBER TECHNOLOGIES, INC., RASIER, LLC, HIREASE, LLC and DOES 1-50, | ) ) ) ) | |
| Defendants. | ) ) | |
| RONALD GILLETTE, individually, and on behalf of all others similarly-situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| VS. | ) ) | **NO. C 14-05241 EMC** |
| UBER TECHNOLOGIES, INC., a California corporation, and DOES 1-20, inclusive, | ) ) ) ) | |
| Defendants. | ) ) ) | San Francisco, California Thursday, June 16, 2015 1:49 p.m. |

**TRANSCRIPT OF PROCEEDINGS**

Reported By:  Lydia Zinn, CSR #9223, Official Reporter

**APPEARANCES**:

For Plaintiff Abdul Kadir Mohamed:

                  Ahdoot & Wolfson, APC
                  1016 Palm Avenue
                  West Hollywood, CA 90069
                  (310) 474-9111
                  (310) 474-8585 (fax)
            BY:  **THEODORE WALTER MAYA**

For Plaintiff Ronald Gillette:

                  Goldstein Borgen Dardarian & Ho
                  300 Lakeside Drive, Suite 1000
                  Oakland, CA  94612
                  (510) 763-9800
                  (510) 835-1417 (fax)
            BY:  **ANDREW PAUL LEE**

For Defendant Uber Technologies, Inc.:

                  Littler Mendelson
                  650 California Street, 20th Floor
                  San Francisco, CA 94108-2693
                  (415) 433-1940
                  (415) 399-8438 (fax)
            BY:  **ANDREW MICHAEL SPURCHISE**
                  **ROD M. FLIEGEL**

For Defendant Uber Technologies, Inc.:

                  Gibson, Dunn & Crutcher, LLP
                  555 Mission Street, Suite 3000
                  San Francisco, CA  94105-2933
                  (415) 393-8200
                  (415) 393-8206 (fax)
            BY:  **JOSHUA SETH LIPSHUTZ**
                  **KEVIN JOSEPH RING-DOWELL**

For Defendant Hirease, LLC:

                  Seyfarth Shaw LLP
                  560 Mission Street, 31st Floor
                  San Francisco, CA 94105
                  (415) 397-2823
                  (415) 397-8549 (fax)
            BY:  **SARAH KEPNER HAMILTON**

1          **THE CLERK:**  Calling Case C. 14-5200, *Mohamed versus*
2  *Uber*, and also case C. 14-5241, *Gillette versus Uber*.  Counsel,
3  please come to the podium and state your name for the record.
4          **MR. MAYA:**  Good afternoon, Your Honor.
5  Theodore Maya, for plaintiff Mohamed.
6          **THE COURT:**  All right.  Thank you.
7          **MR. LEE:**  Good afternoon, Your Honor.  Andrew Lee,
8  Goldstein Borgen Dardarian and Ho, on behalf of plaintiff
9  Gillette.
10          **THE COURT:**  All right.  Thank you, Mr. Lee.
11          **MR. LIPSHUTZ:**  Good afternoon, Your Honor.
12  Joshua Lipshutz, on behalf of Uber Technologies.
13          **THE COURT:**  All right.  Good afternoon, Mr. Lipshutz.
14  There are others here.  If you want to make your appearance --
15          **MS. HAMILTON:**  Good afternoon.  Sarah Hamilton,
16  representing Hirease.
17          **THE COURT:**  All right.  Thank you.
18          **MR. RING-DOWELL:**  Good afternoon, Your Honor.
19  Kevin Ring-Dowell, on behalf of Uber Technologies, Inc.
20          **THE COURT:**  Thank you.
21          **MR. SPURCHISE:**  Good afternoon, Your Honor.
22  Andrew Spurchise, from Littler Mendelson, on behalf of the
23  defendants.
24          **THE COURT:**  Good afternoon.
25          **MR. FLIEGEL:**  Good afternoon, Your Honor.

1  Rod Fliegel, Littler Mendelson.

2  (Reporter requests clarification.)

3          **MR. FLIEGEL:**  Sure.  Rod Fliegel.  F-l-i-e-g-e-l.

4          **THE COURT:**  Thank you, Mr. Fliegel.

5      All right.  We've got both motions in -- or the motions in

6  both cases to stay, pending appeal, my denial of the motions to

7  compel arbitration.

8      And so let me tell you at the outset how I see things.  As

9  perhaps was apparent from my substantive ruling, although I

10  ended up with the same conclusion, there is a difference

11  between the 2013 and the 2014 agreement.  And I think it's

12  apparent that the 2013 [sic] agreement raised a number of

13  questions -- I mean, the 2014 agreement raised a number of

14  questions that didn't apply, or certainly didn't apply with the

15  same force with respect to the 2013 agreement.

16      And it's obviously -- I think, as I stated there, the

17  amount of procedural unconscionability was extant, but

18  marginal.  You know what I mean?

19      And, you know, at the risk of looking like I'm trying to

20  have it both ways, it's clear that I had done some things in

21  the Rule 23 context to make sure that -- at least on the

22  surface, that fairer notice was given to class members about

23  their rights to opt out of arbitration.  And as a result, the

24  notice was far superior in 2014 than 2013.

25      And under some precedent, that, alone, might be enough to

1  say there's no procedural unconscionability.  Therefore, we

2  never get to the balancing test of reaching in and looking into

3  substantive unconscionability, and kind of weighing that.

4      I did find that the *Gentry* case still held -- the *Gentry*

5  case had essentially rejected the earlier Ninth Circuit

6  analysis in *Ahmed*, and found that, well, it's not just the size

7  of the print and the conspicuousness of the notice; but the

8  degree of disclosure, in terms of the pros and cons and that

9  sort of thing.  It could add some degree of procedural

10  unconscionability that would then open the door to examining

11  substantive unconscionability.

12      And I know that *Kilgore* -- the Ninth Circuit -- seemed to

13  rule the other way, citing the *Ahmed* Decision; but didn't deal

14  with *Gentry*.

15      And we are dealing with a State issue of law.  So that's

16  why, you know, I went through the analysis that I did.  And

17  since it was a California Supreme Court Decision, I felt bound

18  by that; but given the fact that the Ninth Circuit seemed to

19  have either missed or somehow didn't deal with *Gentry*, I think

20  one could say, at the very least, there's a serious question --

21  a substantial question of law on that issue.

22      And then when we reach the question of substantive

23  unconscionability, as we all know, the *Iskanian* question of

24  whether it's preëmpted by the FAA was just argued, like, a

25  month ago.  So we're going to hear something from the

1    Ninth Circuit.  And obviously there is, I think, a substantial

2    question there.  I think we're all waiting to see what happens.

3         So that suggests to me that with respect to the 2014

4    agreement, where you have a modicum of procedural

5    unconscionability and the substantive unconscionability,

6    which -- a large part of which is now somewhat in question or

7    going to be decided -- that in the final analysis, it seems to

8    me that a stay would be appropriate with respect to that issue.

9         I think the balance is different with the 2013, for all of

10   reasons that I had stated; that there are a number of other

11   indicia of procedural unconscionability.  That changes the

12   balance.  So even if *Iskanian* is being preëmpted, you've got

13   the other provisions, and the whole pervasiveness question

14   that -- I don't think the question is as close.

15        And I could be wrong.  I know that's going to be appealed;

16   but I do think the balance -- the calculus -- is different

17   between the 2013 and the 2014, which then differentiates the

18   *Mohamed* from the *Gillette* case.  So that's my tentative view.

19        I do think the case for a stay, if you look at it, I

20   think, you know, honestly, intellectually, is much stronger for

21   the 2014 agreement, which is the *Mohamed* one, I guess, than in

22   the *Gillette*.

23        Now, I know it seems a little weird to stay one and not

24   the other, but I do think that's how the calculus turns out,

25   but I'll take comments.

1          **MR. MAYA:**  Well, Your Honor, as counsel for Mohamed,

2  it might be appropriate for me to speak up at this point.

3          **THE COURT:**  Yes, I think so.

4          **MR. MAYA:**  Your Honor's addressing the

5  serious-question issue, but in order to merit a stay, the

6  movant must also -- it is -- the showing of irreparable harm is

7  a necessary showing for a stay.  And I'm citing there

8  *Leiva-Perez.*  And I don't see how they can make a showing of

9  irreparable harm here, particularly if -- if the *Gillette* case

10 is going to proceed.  The harm that they've identified is --

11 can be boiled down to the cost of litigation.  Those costs are

12 not going to be avoided by a stay of *Mohamed*.

13         **THE COURT:**  Isn't the harm the loss of the

14 opportunity to arbitrate, if they are entitled to arbitration;

15 that this Court would not be adjudicating the claims?

16 Mr. Mohamed claims that it would belong in the arbitrable

17 setting.  So it's not just the cost of that; it's the choice of

18 forum that was allegedly or reputedly agreed to.

19         **MR. MAYA:**  Well, none of this is going to be avoided,

20 though.  I mean, whether it goes forward in arbitration or in

21 this case -- or in this court, the claims are going to proceed,

22 presumably.  And the -- the costs of litigation are not going

23 to be avoided by sending -- by staying one case, and not the

24 other.

25      And the other issue I'd like to raise is the additional

1  plaintiffs that we've mentioned would be added to a

2  consolidated Complaint.  And so what happens to consolidation

3  of these cases and the filing of a consolidated Complaint, if

4  one case is stayed, and not the other?

5      And if the issue is allowing the cases to proceed to

6  certification or trial, you know, I mean, if we're getting to

7  that point, I think that, you know, the defendant could be

8  given an opportunity to renew its motion for a stay, if

9  necessary; but I think the Ninth Circuit will have resolved the

10  appeal before it -- before this case progresses to that stage.

11      So all that's going to be happening here is basically

12  procedural issues that can't be avoided by a stay, and

13  discovery that's going to proceed, regardless of a stay on

14  *Mohamed*, versus -- you know, particularly if one -- if *Gillette*

15  is not stayed.

16          **THE COURT:**  Well, what's your response to that; that

17  the issues are going to be --

18      If I were to stay one and not the other, the issues are

19  going to be tried.  You know, it's potential consolidation, and

20  everything else going on.  What's your response to that?

21          **MR. LIPSHUTZ:**  Well, a number of responses,

22  Your Honor.  First of all, I think, if anything, it cuts the

23  other direction.  Plaintiffs in both cases on the other side

24  here are seeking to consolidate their cases:  Gillette and

25  Mohamed.  We haven't yet worked out whether we're going to

1  agree to that or not, or whether that will actually happen.

2       But certainly to the extent that Your Honor's looking at

3  staying the *Mohamed* case, the problem, of course, here would be

4  to stay both cases; not to proceed with both cases, but

5  actually to stay both cases.  Both cases raise, as Your Honor

6  noted, very similar issues, many of which are going to be

7  addressed by the Ninth Circuit, and -- and raise substantial

8  questions of law.

9       The cases are similar in some respects, and therefore, to

10  the extent that the parties on the other side are interested in

11  consolidating their cases, I actually think it cuts the other

12  way.  It should favor a stay of both cases.

13       But to the extent that Your Honor thinks that's not the

14  direction you're going to head, I would note that the -- the

15  class definitions in both cases are different.  The *Mohamed*

16  case is -- ostensibly is a broader class, not only limited to

17  drivers.  It purports to try to certify a class on behalf of

18  all persons in the United States who applied for or were

19  employed by Uber or Rasier on or after November 24th, 2009,

20  whether drivers or not, I guess.

21       **THE COURT:**  Of course, those who only applied to

22  become drivers would not be subject to the arbitration

23  agreement.

24       **MR. LIPSHUTZ:**  Well, actually, Your Honor, one of the

25  prospective plaintiffs they've mentioned they want to try to

1   bring into the case is an office worker.  And so it seems

2   apparent that they're thinking that the case is going to affect

3   people even beyond drivers; at least, the way the *Mohamed* class

4   definition is currently phrased.  We just don't know.

5       And so certainly the cases raise different claims.

6   There's a Massachusetts -- Massachusetts MCCRA claim in the

7   *Mohamed* case that doesn't exist in the *Gillette* case.

8       There's a CORI claim in the *Mohamed* case that doesn't

9   exist in the *Gillette* case.  So these cases are not identical.

10       And to the extent that they'd like to litigate them

11   together, which -- they've said that they would like to

12   litigate them together -- then it would be our position that

13   the entire matter -- both cases -- should be stayed per Your

14   Honor's ruling.

15       **THE COURT:**  Although if I rule the way they have

16   indicated, there may not be consolidation in the offing.

17       **MR. LIPSHUTZ:**  That may be another option,

18   Your Honor, is to keep the cases separate, in which case we

19   would respectfully -- I'd love to have time to argue and

20   explain why we think both cases should be stayed.

21       **THE COURT:**  You want to add something to this?

22       **MR. LEE:**  Sure.  Well, you know, the first thing I'd

23   like to point out is a stay is discretionary.

24       And if we're not staying the *Gillette* case, why are we

25   staying anything, at all?  So that's just agreeing with *Mohamed*

1   counsel right there.

2       Other than that, you know, I haven't heard anything that

3   would support a stay of *Gillette* so far.  So I'll reserve until

4   I hear anything more.

5           **THE COURT:**  Well, I mean, the one question in

6   *Gillette* that I pointed out that is a substantial question

7   that's part of the larger complex of issues is the *Iskanian*

8   question.

9           **MR. LEE:**  Right.  And the *Iskanian* --

10          **THE COURT:**  Does it make sense to stay everything

11  until we at least get --

12      I mean, now that the case has been argued, it's already

13  been briefed, obviously.  Who knows?  Maybe we're days away,

14  weeks away from a ruling.

15          **MR. LEE:**  Well, setting the *Iskanian* issue aside, my

16  understanding of the Court's Order is that it found a separate

17  independent basis for invalidating the agreement based on

18  unconscionability.  And so that basis, alone, is sufficient to

19  deny a stay.

20          **THE COURT:**  Right.  And that's why I'm

21  differentiating -- you're saying -- you're suggesting they rise

22  and fall together, but if you're going to clump them together,

23  then that factor has less bearing in the *Gillette* case than in

24  the *Mohamed* case, because a deciding equation has to do with

25  the amount of procedural unconscionability.

1           **MR. LEE:**  Right.

2           **THE COURT:**  That's a quandary.  I mean, if you just

3     simply mechanically apply the tests, you come out differently

4     on the scales.

5         Then the question is:  Practically, does it make sense?

6           **MR. LEE:**  Well, I think the Court found four separate

7     unconscionable terms.  And those, alone, can serve as a basis

8     to invalidate the agreement, aside from the *Iskanian* issue.

9     And that's my point; that the *Iskanian* issue is one thing, but

10    we have other reasons -- other bases -- to invalidate the

11    agreement.  And that's why a stay should be denied.

12          **MR. LIPSHUTZ:**  Your Honor, if I might address that.

13          **THE COURT:**  Yeah.

14          **MR. LIPSHUTZ:**  Actually, what this Court said on page

15    59 of its Order is that, putting aside the PAGA waiver

16    question, the *Iskanian* question, it moved on to the other

17    factors.  The words of the Court -- the Court said the

18    allegedly unconscionable provision in defendant's arbitration

19    agreements do not, quote, "standing alone, necessitate a

20    conclusion that the 2013 arbitration provision is permeated

21    with unconscionability."  So --

22          **THE COURT:**  But I thought I went on to say that

23    collectively, if you look at it, and the whole question of

24    whether or not the -- looking at it in the aggregate, whether

25    the arbitration clause is pervaded or pervasively sort of

1    infected -- that there is a collective effect here.

2           **MR. LIPSHUTZ:**  That's true.  You did say that,

3    Your Honor; but one of those four factors that you mentioned

4    together, in your view, in Your Honor's view, made it

5    substantively unconscionable was -- relied on *Armendariz*.

6           And we believe that there's actually another substantial

7    legal question here that Your Honor didn't mention, which is

8    whether the *Armendariz* rule regarding arbitration fees has been

9    preëmpted, in light of the FAA, in light of *Concepcion*.  There

10   are courts out there, including a District Court Decision, that

11   have found that the FAA, in light of *Concepcion*, does overrule

12   the *Armendariz* rule.  And there's certainly confusion in the

13   courts over that, as I think Your Honor even mentioned at the

14   hearing.  So even on that front, we think that, in addition to

15   *Iskanian*, the *Armendariz* question is yet another substantial

16   legal question posed by Your Honor's rulings in both the

17   *Gillette* and *Mohamed* cases.

18          And I would also add that the procedural-unconscionability

19   question that Your Honor finds to be a substantial legal

20   question in the *Mohamed* matter -- that same question exists in

21   the *Gillette* matter.  Your Honor did find that there was a

22   different degree of procedural unconscionability in the two

23   agreements, but the pure legal question as to whether a

24   meaningful right to opt out of the agreement can give rise to

25   procedural unconscionability, or whether a meaningful right to

1   opt out means that there cannot be procedural

2   unconscionability -- that legal question exists just the same

3   in the *Gillette* case as it does --

4          **THE COURT:**  In fact, I thought I found there was not

5   a meaningful opportunity to opt out.  So, I mean, we don't

6   even -- you've got to get through the -- have a factual context

7   for that.

8          **MR. LIPSHUTZ:**  That's true, Your Honor, but your

9   finding in that respect was based on Your Honor finding that

10  there was no evidence -- no evidence that any of the drivers

11  who had signed the 2013 arbitration agreement had actually

12  opted out; and actually, respectfully, that's not correct.

13         In fact, the plaintiffs conceded in a filing in the

14  Ninth Circuit just last week in the same case that they agreed

15  that the *O'Connor* plaintiffs, as well as 269 -- I believe they

16  said -- 269 other drivers actually did opt out of the 2013

17  arbitration agreements.

18         So the reason that there was no evidence -- Your Honor

19  cited the fact there was no evidence that any drivers had opted

20  out of the arbitration in agreement in the *Gillette* case.  The

21  reason it was no evidence is because it was undisputed between

22  the parties.

23         I'm sure if you ask plaintiffs' counsel here today whether

24  any drivers opted out of the 2013 agreement, they'd be happy to

25  tell you that, yes, they are aware -- that at a minimum,

1  they're aware of the *O'Connor* --

2          **THE COURT:**  I'm not aware of any case that says

3  because some people exercise a right to opt out, that that

4  cures a problem.

5      You know, I still -- the Court still has to make a

6  judgment about whether there's a reasonable opportunity to opt

7  out or not.  And maybe the numbers that actually opt out may or

8  may not have some bearing on that, but you also look at the

9  text of the agreement; and then it's context, and everything

10 else.  And that's what I focused on.

11         **MR. LIPSHUTZ:**  I understand, Your Honor.  My point is

12 simply that the question of whether *Kilgore*, which is a

13 Ninth Circuit *en banc* Decision that postdates *Gentry* -- whether

14 that case applies here.  That question is raised by both the

15 *Gillette* and *Mohamed* cases equally.

16         **THE COURT:**  Well, let me ask you your view of the --

17 if I were to proceed as I initially indicated -- to stay

18 *Mohamed* at least for now, and allow *Gillette* to go forward,

19 what would happen?  How would this play out, in your view?

20         **MR. LIPSHUTZ:**  Well, I think, Your Honor, we would we

21 would seek a stay from the Ninth Circuit in the *Gillette* case.

22         **THE COURT:**  Right.

23         **MR. LIPSHUTZ:**  And if the *Mohamed* case is stayed --

24     Right now, the cases are separate cases.  So I think what

25 would happen next would be that we would seek a stay in the

1   *Gillette* case.

2          THE COURT:  All right.  And I'm assuming --

3   obviously, if the Court issues -- if the Ninth Circuit issues a

4   stay, you know what happens.

5       If they don't, how do you see this playing out over the

6   next several months, if *Mohamed* is stayed and *Gillette* goes

7   forward?

8          MR. LIPSHUTZ:  I suppose at that point, if that's the

9   way the cases end up, then we would just have to treat them

10  like the separate cases that they are.  They're currently

11  separate cases.

12         THE COURT:  With different class definitions, some

13  different claims.

14         MR. LIPSHUTZ:  That's correct.

15         THE COURT:  But some overlapping?

16         MR. LIPSHUTZ:  Some overlap.  Sure.

17         THE COURT:  So what's your answer to, "There's no

18  irreparable harm," in the sense that if I'm correct that

19  *Gillette* should go forward in this forum and we start to

20  adjudicate some of the claims, that then begins to look like

21  the arbitration -- that may be the subject of arbitration in

22  *Mohamed*; their position is:  Well, what's the practice?  You

23  know.  Why do that?  You're not really preserving anything by

24  staying *Mohamed*.

25         MR. LIPSHUTZ:  Well, the irreparable harm, as

1 Your Honor mentioned, is the failure to -- to enforce the

2 arbitration agreement; that they're seeking to represent

3 drivers who signed different agreements.  Certainly, they're

4 seeking to represent a whole host of people who did not opt out

5 of at least the 2014 agreement, as well as the 2013 agreement.

6 And so forcing those claims to go forward while we're still

7 adjudicating these difficult issues certainly raises some

8 difficult and --

9      **THE COURT:**  So would the class -- would the class, if

10 we got that far in *Gillette*, have to exclude those who signed

11 the 2014 arbitration agreement, because they wouldn't be bound

12 by any substantive ruling here, since they're -- they at least

13 theoretically might be -- their proper forum might be

14 arbitration?  So no matter what we did here -- whatever finding

15 I made one way or the other -- the arbitrator would be free, if

16 it were to go forward under the 2014 agreement, to arbitrate

17 those issues.

18      **MR. LIPSHUTZ:**  That sounds plausible, Your Honor, but

19 I don't know.  I can give a definitive answer on that.  I'd

20 have to think more about that.

21      **THE COURT:**  Do you have any thoughts on that?  What's

22 the relationship between any ruling I might render here, and

23 any arbitration, if it ultimately would go forward under the

24 auspices of the 2014 agreement?

25      **MR. LEE:**  I'm not aware of any authority that would

1    limit the *Gillette* class in any way based on some ruling in the

2    *Mohamed* case.

3        **THE COURT:**  I'm almost asking the opposite.  Would

4    the arbitrator in *Mohamed*, if we got to that point, be bound by

5    whatever we did here; any substantive rulings?  It seemed like

6    it would not.  I mean, my first issue --

7        **MR. LEE:**  I don't think so.  No.

8        **MR. LIPSHUTZ:**  There's a further complicating issue,

9    which is that some drivers signed both agreements, and possibly

10   with different entities.

11       **THE COURT:**  Hm.  Well, it's interesting, because the

12   answer to that question may inform to a certain extent the

13   balance of hardships here, but I'm not convinced that it does.

14   It does still seem to me that there is a difference.

15       I mean, so the choices are, you know, you treat them the

16   same.  And within that choice one could, for instance, issue a

17   stay pending *Iskanian*, at least -- the resolution of *Iskanian*

18   issues.  That will take one major issue off the table, one way

19   or the another; or, as the defendants would have it, a more

20   indefinite stay until the entire issue gets appealed -- the

21   issue of arbitrability or not gets appealed.

22       The other is to not grant a stay in either case, which is

23   what you would like.  And the other is to follow what appears

24   to be the legal standards in each, which, in my view, still

25   yields two different outcomes.  I'm concerned about

procedurally what that means, because we haven't been able to

think that through thoroughly; but that -- you know, I think

that's the most honest intellectually thing to do at this

point.

MR. LIPSHUTZ:  Your Honor, if I might point out that

although a stay pending the entire Ninth Circuit proceeding --

the briefing schedule has already been set in both cases.  And

the briefs will be complete in less than four months' time.

It's actually a fairly quick briefing schedule.

The motion -- and the Ninth Circuit -- actually, just

today, we had sought to expedite the briefing, so as to

minimize the harm to plaintiffs and others if a stay were

granted here.  The Ninth Circuit today, based in part on

plaintiffs' opposition to our motion to expedite the

Ninth Circuit case, denied the our motion to expedite.  In the

Ninth Circuit, plaintiffs actually pointed to our motion to

stay in this Court as a reason to deny the motion to expedite

in the Ninth Circuit.  They said, well, there was no need to

expedite the Ninth Circuit case, because they're seeking a stay

in the District Court.

MR. MAYA:  Your Honor, might I address that?

THE COURT:  Sure.

MR. MAYA:  First of all, let's point out in favor of

their -- in support of their motion to expedite the appeals in

*Gillette* and *Mohamed*, defendant made all of the same arguments

1  that they're making here in support of the motion to stay,

2  including the idea that they'll be irreparably harmed by

3  deprivation of the right to see these actions proceed in

4  arbitration that Your Honor is focusing on, and -- as well as

5  the costs of litigation.

6      The Ninth Circuit rejected those arguments when it denied

7  their motion to expedite.

8      Now, we made a variety of arguments in opposition to the

9  motion to expedite; and primarily we argued that they had not

10  made any showing of irreparable harm.  And that's what our

11  opposition to the motion to expedite was based upon.

12        **THE COURT:**  And the denial -- was that a one-line

13  denial?

14        **MR. MAYA:**  Yeah.  It was very -- that aspect of the

15  Court's ruling today was very brief.

16        **THE COURT:**  And briefing scheduled -- has briefing

17  been completed, or briefing's been set?

18        **MR. LIPSHUTZ:**  Briefing's been set.  It will be

19  complete -- I believe the final -- the reply brief is due in

20  less than four months' time.  August, September -- so it's mid

21  November.

22        **THE COURT:**  Well.

23        **MR. LIPSHUTZ:**  November 4th, Your Honor.

24        **THE COURT:**  Well, okay.  I mean, one thing I could

25  do, and which I'm inclined to do, is to, as I originally

1  indicated -- is to deny the stay in *Gillette*; grant the stay in

2  *Mohamed*, subject to revisiting it if we get a ruling on the

3  *Iskanian* issue, to see how that might affect the balance here,

4  because it's a clear signal one way or another that may portend

5  something here.

6      The other thing that occurs to me where there would not be

7  irreparable injury is that, even if it goes to arbitration,

8  there's going to be some discovery.  Some rudimentary discovery

9  is going to happen in the *Mohamed* case, whether it's for

10 arbitration or for here.  And I could leave the door open for

11 some narrowly defined discovery.

12     So I'm not going to do nothing, but I think we're going to

13 have some discovery that's going to be useful in either event,

14 and so we're not at a total standstill.

15     And then if, several months from now, a couple months from

16 now, number one, we get a ruling on the cases looking at the

17 *Iskanian* issue; and two, see if it --

18     I don't know how quickly the Court will set argument.

19 Unfortunately, sometimes you can wait a year before they set

20 argument.

21     -- but not allow any substantive --

22     Or anything that an arbitrator might rule on, I would not

23 allow that to happen in *Mohamed*, but I would allow some limited

24 sort of preliminary discovery to the extent it's the kind of

25 thing that would have been produced, and subject to discovery

1  in arbitration anyway, because there, at least you can argue

2  that there's no irreparable injury.

3       **MR. MAYA:**  I understand that, Your Honor.

4     And with respect to the analysis that the Court is --

5  needs to conduct here on whether a stay is appropriate, another

6  factor that should be considered is the interest of other

7  parties in the proceeding.  And I'm raising again here the new

8  plaintiffs that we would like to or that have expressed,

9  themselves, an interest in pursuing their claims against Uber.

10  And, you know, mechanically I think consolidation and filing of

11  a consolidated Complaint makes the most sense.  I suppose if

12  everything was stayed, they would still have the right to file

13  separate lawsuits that would then be related here.

14       **THE COURT:**  Which they could do now.  I mean, whether

15  or not I stay part or all or whatever, they could do that.  Or

16  they can seek consolidation -- or seek to amend into the --

17  well, I don't know if that's appropriate or not in the *Gillette*

18  case, if I don't stay the *Gillette* case, but I don't want to --

19  I don't want to get into that necessarily.  But there are

20  several routes for those third parties, it seems to me.

21       **MR. MAYA:**  And it also seems to me that, you know,

22  Mohamed's interests are going to be prejudiced by allowing the

23  case to proceed, without him being able to, you know, be

24  involved in some respect.

25       **THE COURT:**  Well, that may be a consequence of his

1  signing the 2014 agreement, which is different from his signing

2  the 2013 agreement.  I mean, everybody who signed the 2014

3  agreement may be in a different boat.

4         **MR. MAYA:**  And I do understand that.  And I'm not

5  going to argue that there are -- that there aren't issues.

6      I just think that they also need to show irreparable harm.

7  They can't really show that here.

8      And we also have to consider the rights of other parties,

9  including the new would-be plaintiffs.  And I think that

10 whatever the Court does needs to allow these people to advance

11 their claims.

12        **THE COURT:**  All right.  Well, let me take a second

13 look at this.  I'll take this under submission.  It's

14 complicated enough that I'm not comfortable just ruling from

15 the bench.  I do want to look at it.  That was my initial take.

16     I understand there are some procedural complexities here

17 that may or may not be desirable.

18     And, of course, you know, I'm not -- I don't have a

19 different view as to the -- my original ruling.  I understand

20 there are some issues that are closer than others.  And I

21 resolved it as best I could.  And I did come out, obviously, in

22 both Mohamed and Gillette's favor, but I do think when it comes

23 to the stay question, one case is closer to the line than the

24 other.

25     So I'll take it under submission, and try to get something

1    out fairly quickly, so we know where we're going on this.

2        So submitted.

3            **MR. LIPSHUTZ:**   Thank you, Your Honor.

4            **MR. LEE:**   Thank you, Your Honor.

5            **THE COURT:**   Thank you.

6    (At 2:18 p.m. the proceedings were adjourned.)

7    I certify that the foregoing is a correct transcript from the

8    record of proceedings in the above-entitled matter.

9

10   *Lydia Zinn*

11   _____    July 17, 2015
     Signature of Court Reporter/Transcriber    Date
12   Lydia Zinn

13

14

15

16

17

18

19

20

21

22

23

24

25