United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDUL KADIR MOHAMED, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>UBER TECHNOLOGIES, *et al.*,<br><br>　　　　　Defendants.<br>_____/ | No. C-14-5200 EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STAY PENDING APPEAL**<br><br>**(Docket No. 76)** |

## I.　INTRODUCTION

On June 9, 2015, this Court denied a motion to compel arbitration filed by Defendants Uber Technologies and Rasier LLC (collectively, Uber). *See Mohamed v. Uber Techs., Inc.*, -- F. Supp. 3d. --, 2015 WL 3749716 (N.D. Cal. 2015).[1] Uber's co-defendant in this action, Hirease, filed a joinder in Uber's motion to compel arbitration which was also denied. *See id.* at *36. Both Uber and Hirease have appealed this Court's orders to the Ninth Circuit. *See* Ninth Circuit Case No. 15-16178. Currently pending before the Court is Uber's motion to stay these proceedings pending appeal.[2] Docket No. 76 (Motion). For the reasons explained below and further for the reasons articulated on the record at the hearing for this matter, Uber's motion for a stay is granted in part and

---

[1] The Court consolidated the briefing of Uber's motion to compel arbitration in this action with a motion to compel arbitration brought by Uber in *Gillette v. Uber Technologies*, Case No. 14-cv-5241. The Court issued an identical order in each case denying Uber's motions to compel arbitration, although as described in the main text below, the Court's reasoning in the two cases is materially different because the arbitration agreements at issue are different.

[2] Hirease filed a joinder in Uber's motion for a stay pending appeal. Docket No. 80.

denied in part. While reasonable discovery will *not* be stayed in this case, adjudication of all non-discovery issues (*i.e.*, dispositive motions) is hereby stayed pending the final resolution of Uber's appeal of this Court's order denying its motion to compel arbitration.

## II. DISCUSSION

### A. Procedural History

The Court assumes familiarity with the procedural history of this case, particularly as described it its Order Denying Defendants' Motions to Compel Arbitration. *Mohamed*, 2015 WL 3749716. For the purposes of this motion, however, it is important to keep in mind that there are essentially two separate versions of the arbitration clauses at issue; the arbitration clause contained in the 2013 Agreement between Uber and its drivers, and the arbitration clause in the 2014 Agreements between Uber and its drivers. *Id.* at *3. While the Court previously found that Plaintiff Mohamed could theoretically be bound to both the 2013 Agreement and 2014 Agreements, the Court held that "because the 2014 contracts expressly provide that they 'replace and supersede all prior agreements' between the parties regarding the same subject matter, the Court determines that only the 2014 contracts could actually apply to Mohamed's claims." *Id.* (internal modifications and citations omitted). Accordingly, Uber's appeal of this Court's order denying arbitration in *Mohamed* targets only this Court's rulings with respect to the unenforceability of the arbitration provisions in the 2014 Agreements – the 2013 Agreement is not implicated by Uber's appeal *in this case*.[3]

As the Court recognized in its earlier Order, "there are significant differences between the 2013 Agreement's arbitration provision and the ones contained in each of the 2014 contracts . . . ." *Mohamed*, 2015 WL 3749716, at *4. These differences are particularly relevant to the instant motion to stay because the Court finds that its holdings with respect to the 2014 Agreements raise two "serious" legal questions on appeal that are not material in *Gillette*: (1) whether the California

---

[3] Uber moved for a stay pending appeal in the *Gillette* action, where the 2013 Agreement applies. This Court denied Uber's motion in that case because Uber did not show a reasonable likelihood of success on the merits of its appeal, nor does its appeal in *Gillette* raise any serious legal questions. *See Gillette* Docket No. 66. That said, some of the Court's analysis denying a stay in *Gillette* would also apply to Uber's appeal in this case, for instance with respect to the unenforceability of the delegation clauses in the 2014 contracts.

2

Supreme Court's ruling in *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348 (2014), that pre-dispute PAGA waivers are unenforceable as a matter of California law, is preempted by the Federal Arbitration Act (FAA); and (2) whether an arbitration provision that contains a conspicuous and meaningful opt-out provision may nevertheless be found at least somewhat procedurally unconscionable under California law, as articulated by the California Supreme Court in *Gentry v. Superior Court*, 42 Cal. 4th 443 (2007), leaving the door open to a general finding of unconscionability.

B. <u>Legal Standard</u>

Whether to issue a stay pending appeal is "an exercise of judicial discretion . . . to be guided by sound legal principles." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009); *see also Guifu Li v. A Perfect Franchise, Inc.*, No. 10-cv-1189-LHK, 2011 WL 2293221, at *2 (N.D. Cal. Jun. 8, 2011). In determining whether a stay should issue, the Court should consider four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) whether the public interest favors a stay.

*In re Carrier IQ Consumer Privacy Litig.* (*In re Carrier IQ*), No. C-12-md-2330 EMC, 2014 WL 2922726, at *1 (N.D. Cal. Jun. 13, 2014) (citations omitted); *see also Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011).

In order to satisfy the first factor, although the moving party need not show that "success on appeal is more likely than not," *Guifu Li*, 2011 WL 2293221, at *3 (citation omitted), it must make a "strong showing" on the merits. *Morse v. Servicemaster Global Holdings, Inc.*, No. C10-628-SI, 2013 WL 123610, at *2 (N.D. Cal. Jan. 8, 2013) (citing *Leiva-Perez*, 640 F.3d at 964). Alternatively, the moving party can attempt to satisfy the first factor by showing that its appeal raises "serious legal questions," even if the moving party has only a minimal chance of prevailing on these questions. *See In re Carrier IQ*, 2014 WL 2922726, at *1 (recognizing that under Ninth Circuit law, the above factors "are considered on a continuum; thus, for example, a stay may be appropriate if the party moving for a stay demonstrates that serious legal questions are raised and the balance of hardships tips sharply in its favor") (citing *Golden Gate Rest. Ass'n v. City and Cnty. of*

3

*S.F.*, 512 F.3d 1112, 1115-16 (9th Cir. 2008)).  Where only such a lesser showing is made, the appellant must further demonstrate that the balance of the hardships absent a stay tips "sharply" in its favor.  *See Morse*, 2013 WL 123610, at *1-2 (explaining that a party seeking a stay pending appeal must either: (1) make a strong showing it is likely to succeed on the merits and show it will be irreparably harmed absent a stay, or (2) demonstrate that its appeal presents a serious question on the merits and the balance of hardships tilts *sharply* in its favor).  "The party requesting the stay . . . bears the burden of showing that the case's circumstances justify favorable exercise of [the Court's] discretion."[4]  *Morse*, 2013 WL 123610, at *1 (citing *Nken*, 556 U.S. at 433-34).

C. <u>Uber Has Not Made A Strong Showing it is Likely to Succeed on the Merits of its Appeal, But its Appeal Presents Two "Serious" Legal Issues</u>

The first factor this Court must evaluate is whether the moving party has made a sufficient showing that it is likely to succeed on the merits of its appeal.  Alternatively, the moving party may make a lesser showing that its appeal presents "serious legal issues" or "substantial questions" that warrant a stay.  *Id.*  While the Ninth Circuit has not exhaustively explained or defined what makes a question "serious," *see Morse*, 2013 WL 123610, at *3, a number of the judges on this district have shed light on the issue.  For instance, Judge Koh has suggested that "[f]or a legal question to be 'serious,' it must be a 'question going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation."  *Guifu Li*, 2011 WL 2293221, at *3 (quoting *Walmer v. United States DOD*, 52 F.3d 851, 854 (10th Cir. 1995)).  Judge Koh further suggested that in "the Ninth Circuit, serious legal questions often concern constitutionality."  *Id.* (citations omitted).  Judge Illston has further noted that a serious legal issue or "substantial case" is "one that raises genuine matters of first impression within the Ninth Circuit," or

---

[4] Uber cites *Steiner v. Apple Computer, Inc.*, No. C-07-4486 SBA, 2008 WL 1925197, at *5 (N.D. Cal. Apr. 29, 2008), for the proposition that "almost every California district court to recently consider whether to stay a matter, pending appeal of an order denying a motion to compel arbitration has issued a stay."  *Id.*  While Judge Armstrong was correct at the time her decision issued in April 2008, the Court's own research demonstrates that it is no longer accurate to say that most courts grant stays in these circumstances.  In fact, according to this Court's unofficial tally of decisions since *Steiner*, California district courts have denied stays pending appeal of an order denying a motion to compel arbitration twelve times, while California district courts have granted such motions eight times.

4

which may "otherwise address a pressing legal issue which urges that the Ninth Circuit hear the case." *Morse*, 2013 WL 123610, at *3. If the movant can only meet this lower standard, however, it must then show that the balance of hardships tilts *sharply* in its favor absent a stay. *See id.*; *see also In re Carrier IQ*, 2014 WL 2922726, at *1.

### 1. Uber's Delegation Clauses are Unenforceable

Uber's first argument is that it has a "fair probability of persuading the Ninth Circuit that the delegation provision[s] in the [2014] Agreements between Uber and Plaintiff[s] clearly and unmistakably delegate arbitrability issues to the arbitrator alone." Mot. at 3. Uber is mistaken. Uber claims that the Court erred by finding a conflict between the delegation language contained within the arbitration provisions themselves, and certain other conflicting language contained in separate sections of the Agreements. According to Uber, as long as the language of the arbitration provision itself "clearly and unmistakably" delegates arbitrability to an arbitrator, *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), it is of no moment that another provision in the contract contradicts the delegation language in the arbitration provision.[5] The Court has previously rejected this argument in its Order, *Mohamed*, 2015 WL 3749716, at *11 n. 17, and the argument is no more convincing now. Notably, Uber has failed to cite a single case that stands for the proposition that it advocates.[6] And as this Court pointed out in its Order, at least two California Court of Appeal cases have found that it *is* appropriate to consider the language of the contract as a whole when determining whether a delegation clause meets the clear and unmistakable standard – a reviewing court need not artificially confine itself to the language of the arbitration provision alone. *See Mohamed*, 2015 WL 3749716, at *11 n.17 (noting that "in two of the Court of Appeal cases cited by this Court, the putatively conflicting language was contained in other provisions of the

---

[5] For instance, Uber apparently would argue that an otherwise clear delegation clause is enforceable as long as it appears in its own separate section of a contract, even if the very first sentence of the contract read "arbitrability can *never* be decided by an arbitrator." Uber's argument is short on legal authority and even shorter on common sense.

[6] As the Court noted in its Order, *Boghos v. Certain Underwrites at Llyod's of London*, 36 Cal. 4th 495 (2005), is of no assistance to Uber. In that case, the California Supreme Court was not called upon to evaluate the validity of a delegation clause. *Id.* Indeed, rather than being required to apply the heightened "clear and unmistakable" standard that applies to delegation clauses, the *Boghos* court applied the "presumption favoring arbitration." *Id.* at 502.

contract"). The Court believes the Ninth Circuit is unlikely to hold differently, as Uber's suggested rule finds no support in precedent.

For the reasons stated above, as well as for the reasons articulated in this Court's order denying Uber's motion for a stay pending appeal in *Gillette*, the Court finds that Uber has not demonstrated that it has a reasonable probability of persuading the Ninth Circuit that this Court erred in holding that the delegation clauses of the 2014 Agreements are unenforceable because they do not meet the U.S. Supreme Court's clear and unmistakable test. *See Gillette*, Docket No. 66. Indeed, Uber has not even raised a serious question on this issue.

2. <u>The 2014 Agreements' Arbitration Provisions are Both Procedurally and Substantively Unconscionable</u>

Uber also argues that it is reasonably likely to succeed in convincing the Ninth Circuit that this Court erred in determining that its arbitration provisions are unconscionable as a matter of California law. Again, the Court finds that Uber has overestimated its likelihood of success.

Uber first argues that this Court erred by holding that the 2014 Agreements present at least some amount of procedural unconscionability under California law despite the fact that this Court concluded that the opt-out provisions in the 2014 Agreements are "visually conspicuous" and the "actual opt-out procedures . . . give[] drivers a reasonable means of opting out." *Mohamed*, 2015 WL 3749716, at *17 (internal modifications and citation omitted). According to Uber, this finding "should have resulted in a ruling that the Arbitration Agreements are not unconscionable" as a matter of California law. Mot. at 5. Specifically, Uber argues that this Court went astray by declining to follow three Ninth Circuit decisions which each hold that an arbitration provision cannot be procedurally unconscionable under California law if the signatory to the agreement had a "meaningful opportunity to opt out of the arbitration program." *See Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002); *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104 (9th Cir. 2002) (same); *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052 (9th Cir. 2013) (en banc) (same). As this Court explained in its Order, however, the California Supreme Court "expressly rejected

*Ahmed* and *Najd*," when "faced with the exact same issue [as] the Ninth Circuit."[7] *Mohamed*, 2015 WL 3749716, at *18 (citing *Gentry*, 42 Cal 4th at 472 n.10). And the *Kilgore* court merely cited to *Ahmed* in its analysis of California law, apparently without recognizing that the *Ahmed* decision had been previously abrogated by the California Supreme Court in *Gentry*. *See id.* at *18 n. 31. Thus, *Ahmed*, *Najd*, and *Kilgore* are neither binding nor persuasive authority in this context.

Tellingly, Uber does not argue that this Court was mistaken in concluding that *Ahmed*, *Najd*, and *Kilgore* fail "to apply California law as announced by the California Supreme Court," nor does Uber quibble with this Court's conclusion that "the highest state court is the final authority on state law" and that *Gentry* is therefore binding on this Court. *See Mohamed*, 2015 WL 3749716, at *17. Indeed, Uber does not even mention *Gentry* in its motion to stay, despite its obvious importance to the issues in this case. Thus, Uber has presented no reason to seriously suspect that this Court's procedural unconscionability analysis will be reversed on appeal.

That being said, the Court believes that the propriety of its application of *Gentry*'s procedural unconscionability rule at least presents a "serious issue" on appeal. For whatever reason, very few district courts in the Ninth Circuit have seemingly recognized that *Gentry* abrogated *Ahmed* and *Najd*,[8] and the Ninth Circuit itself has not expressly addressed *Gentry*'s procedural unconscionability rule. Thus, the proper application of *Gentry* appears to remain an issue of first impression in the Ninth Circuit. Moreover, the application of *Gentry* is undoubtedly important to the ultimate resolution of the validity of the 2014 Agreements' arbitration provisions. If the Ninth Circuit expressly refuses to follow *Gentry*, and instead adheres to *Ahmed*, *Najd*, and *Kilgore*, then

---

[7] This is not a case where the existence or amount of tension between Supreme Court and Ninth Circuit decisions is in any doubt. As noted in this Court's order, the California Supreme Court in *Gentry* passed on the validity of the *very same contract* that was before the Ninth Circuit in both *Ahmed* and *Najd*. *See Mohamed*, 2015 WL 3749716, at *18-19. And the Supreme Court expressly concluded that "neither case [is] persuasive." *Gentry*, 42 Cal. 4th at 472 n.10. While *Kilgore* post-dated *Gentry*, the Ninth Circuit did not discuss or distinguish *Gentry*.

[8] The Court has found only a smattering of decisions that even cite to *Gentry*'s procedural unconscionability rule. *See, e.g.*, *Jones-Mixon v. Bloomingdales's, Inc.*, No. 14-cv-1103-JCS, 2014 WL 2736020, at *7 (N.D. Cal. June 11, 2014) ("The California Supreme Court has since disagreed with the Ninth Circuit's approach in *Najd* and *Ahmed*."); *Duran v. Discover Bank*, 2009 WL 1709569, at *5 (Cal. Ct. App. 2009) (unpublished) (concluding that *Gentry* held generally that "even a contract with an opt-out provision can be a [procedurally unconscionable] contract of adhesion").

7

1  this Court's procedural unconscionability finding is unlikely to survive appellate review, and the
2  2014 arbitration provisions would likely be enforced under California law.  Even though the Court
3  finds this possibility to be somewhat remote given *Gentry*'s clear pronouncement of California law,
4  the fact that one legal issue of first impression will have such a substantial impact on the outcome of
5  Uber's appeal in this case militates in favor of staying this action.

6  Uber further argues that this "Court's ruling that the [2014] agreement is unconscionable
7  conflicts with its *own* prior orders, in which the Court *drafted*, *approved*, *and compelled Uber to*
8  *issue* the very agreement at issue."  Mot. at 6 (emphases in original).[9]  Uber is mistaken.  This Court
9  did *not* "draft" or "approve" the *substance* of the 2014 Agreements.  Rather, it aided in drafting a
10 corrective *notice* that was incorporated into those Agreements, which notice was designed to call
11 new and existing Uber drivers' attention to the contracts' arbitration provisions and, particularly,
12 their class action waivers, thereby providing drivers with a meaningful opportunity to decide
13 whether to opt out of those provisions if they wanted to participate in various class action litigations
14 that had already been filed against Uber on their behalf.  *See O'Connor v. Uber Techs., Inc.*, No. C-
15 13-3826-EMC, 2013 WL 6407583 (N.D. Cal. Dec. 6, 2013) (invoking the Court's power under
16 Federal Rule of Civil Procedure 23(d) to control misleading communications to existing and
17 potential class members).  As this Court has previously explained in both *O'Connor* and *Mohamed*,
18 in exercising its supervisory powers over communication to the class under Rule 23 this Court did
19 not purport to rule on the ultimate question of the unconscionability or enforceability of Uber's
20 arbitration provision(s); instead the focus was in ensuring the integrity of the class action process
21 was not unduly tainted by unilateral communications from Uber.  *See Mohamed*, 2015 WL 3749716,
22 at *4 (explaining that the "Court expressly declined to rule on the alleged unconscionability of the
23 arbitration provision" in the *O'Connor* matter, because the issue was "not properly before the Court
24 at [that] juncture") (bracketed alteration in original).  Consequently, the Court never reviewed

---

[9] Uber goes even farther in its motion to expedite its appeal in the Ninth Circuit, arguing that the Court placed it in a "Catch-22" by ordering Uber to issue the 2014 Agreements that the Court "drafted," and then later holding that the arbitration provisions in those Agreements are unconscionable.  Ninth Circuit No. 15-16181, Docket No. 7 at 14.  This contention is not accurate.  The Court did not address other aspects of the 2014 Agreements which raise unconscionability issues, including the broad analysis under *Gentry*.

8

1 Uber's arbitration clause to determine whether it contained a number of substantively
2 unconscionable terms, most notably including a nonseverable and illegal PAGA waiver, which
3 might still be cognizable notwithstanding the minimization of procedural unconscionability. Nor
4 was the Court required to apply *Gentry*. In short, the ultimate issue of overall conscionability was
5 not before the Court.

6 As for the Court's substantive unconscionability finding, Uber correctly argues that its
7 appeal presents at least one additional serious legal issue – whether the California Supreme Court's
8 ruling in *Iskanian*, that pre-dispute PAGA waivers are unenforceable as a matter of California law, is
9 preempted by the FAA. *See Iskanian*, 59 Cal. 4th 348 (2014); *see also* Mot. at 7-8. As this Court
10 recognized in its Order, there is currently no Ninth Circuit authority that resolves this issue, and the
11 question is undoubtedly a "pressing legal issue" on which there has been significant disagreement at
12 the district court level. *See Mohamed*, 2015 WL 3749716, at *23; *see also Hernandez v. DMSI*
13 *Staffing, LLC*, -- F. Supp. 3d --, 2015 WL 458083, at *8 (N.D. Cal. 2015) (collecting cases). Until
14 the Ninth Circuit issues a ruling one way or another,[10] the validity of both *Iskanian*, and pre-dispute
15 PAGA waivers more generally, remains an issue of first impression that is sufficiently "serious" for
16 the purposes of Uber's motion to stay.

17 In contrast to *Gillette*, the low level of procedural unconscionability with respect to the 2014
18 Agreements puts a premium on the degree of substantive unconscionability under the sliding scale
19 test. Thus, the *Iskanian* preemption question is far more material to the ultimate unconscionability
20 analysis here than in *Gillette*, where the 2013 Agreement is infected with a substantial degree of
21 procedural unconscionability. Because Uber's appeal in this case presents two substantial legal
22 questions material to the outcome of the appeal, the Court now considers the remaining three factors
23 for obtaining a stay.

24 ///
25 ///
26

---

27 [10] The Ninth Circuit currently has under submission a set of consolidated appeals that may
28 well decide this question. *See Sakkab v. Luxottica Retail N. Am.*, lead Ninth Circuit Case No. 13-55184.

9

///

### D. Uber Will Suffer Significant Irreparable Harm if This Case Proceeds on the Merits Pending Appeal

Because Uber's appeal only demonstrates "serious questions," Uber must show that the balance of the hardships absent a stay tips sharply in its favor. *See In re Carrier IQ*, 2014 WL 2922726, at *1. Uber can meet this test, but only in part.

Uber identifies two types of irreparable harm it claims it will suffer if a stay is denied: (1) the loss of time and money associated with the ongoing litigation of this case pending appeal; and (2) the irrecoverable loss of the speed and efficiency of the arbitral forum. Mot. at 8. With respect to Uber's first claimed harm (*i.e.*, ongoing litigation and discovery expense), Uber correctly acknowledges that nearly all courts "have concluded that incurring litigation expenses does not amount to an irreparable harm." *Guifu Li*, 2011 WL 2293221, at *4 (citations omitted); *see also Morse*, 2013 WL 123610, at *3 (recognizing that "the money and time a party must expend [during the litigation] process, while burdensome, does not alone constitute irreparable injury") (citations omitted); *Bradberry v. T-Mobile USA, Inc.*, No. C-06-6567 CW, 2007 WL 2221076, at *4 (N.D. Cal. Aug. 2, 2007) ("The cost of some pretrial litigation does not constitute an irreparable harm to Defendant."). And as Judge Henderson recently explained, courts are especially unlikely to find "irreparable harm where the proposed arbitration included substantial discovery and motions practice such that continuing to litigate in federal court would have resulted in little to no loss of time and money." *Ward*, 2014 WL 7273911, at *3 (citations omitted).

Here, the 2014 Agreements both provide that "the Parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses" in arbitration. *See* Docket No. 28-2, Ex. F (2014 Uber Agreement) at § 14.5; Ex. H (2014 Rasier Agreement) at 14. As Judge Koh has recognized under very similar circumstances, where the arbitration agreement "provides the parties 'adequate opportunity to conduct discovery'" then "even if Defendants' appeal is successful, it appears that the discovery costs arising during the appeal are inevitable." *Guifu Li*, 2011 WL 2293221, at *4. Indeed, Judge Koh went so far as to find no irreparable harm where the Defendants in the case before her

admittedly had "limited financial resources" to pay for litigation expenses and discovery. *Id.* By contrast here, Uber does not claim to have "limited financial resources," and Uber cannot seemingly deny that it will incur significant discovery costs "regardless of the outcome of this motion," because it will be required to respond to discovery requests *in either* arbitration or federal court litigation. *Id.*; *see also Morse*, 2013 WL 123610, at *4 (finding that defendants' litigation expenses pending appeal did not constitute irreparable harm because the "parties would have experienced lesser but still substantial burdens in the arbitration process defendants prefer"); *R&L Ltd. Invs. Inc. v. Cabot Inv. Props., LLC*, No. 09-1525, 2010 WL 3789401, at *2 (D. Ariz. Sept. 21, 2010) (finding no irreparable injury and denying motion to stay where "[c]ontrary to Defendants['] assertion, if their appeal was successful, the parties would still be able to use the discovery in arbitration"); *cf. Ward*, 2014 WL 7273911, at *4 (finding irreparable harm where "[t]he contrast, in time and expense, between the arbitration process as described by Defendants and the process of litigation in federal court is substantial" because "[u]nlike in the cases cited by Plaintiff, the arbitration procedure proposed by Defendants . . . is a streamlined process . . . [with] no formal discovery, law and motion practice, or other pre-trial hearings").

Uber argues that irreparable harm should be found under *Zaborowski v. MHN Gov't Servs., Inc.*, which held that "arbitration is unique" with respect to the irreparability of litigation costs because "[i]f a party must undergo the *expense of trial* before being able to appeal denial of a motion to compel arbitration, the anticipated advantages of arbitration – speed and economy – are lost." No. C-12-5109-SI, 2013 WL 1832638, at *2 (N.D. Cal. May 1, 2013) (emphasis added). This case is currently far from trial, however, and as noted above, the main cost Uber will likely face while this appeal is pending (*i.e.*, discovery costs) would presumably be borne by Uber in any forum. *See id.* (refusing to stay portions of the case that would proceed regardless of ultimate forum).

That said, *Zaborowski* and similar cases properly recognize that both the monetary and non-monetary harm to Uber from the actual *adjudication* of this case on the merits in federal court would likely constitute a significant irreparable injury were the arbitration forum wrongly denied. *See Zaborowski*, 2013 WL 1832638, at *2; *In re Carrier IQ*, 2014 WL 2922726, at *1-2 (denying without prejudice defendants' motion to stay pending appeal because "the Court is not convinced

that, *at this juncture*, the degree of hardship suffered would be substantial, and thus the balance of hardships does not tip decidedly in Defendants' favor") (emphasis added); *Bradberry*, 2007 WL 2221076, at *5 (denying motion to stay "without prejudice to refiling if discovery becomes burdensome or if the trial date approaches"); *Raymundo v. ACS State & Local Solutions*, No. 13-cv-442-WHA, ECF No. 51 (N.D. Cal. Aug. 6, 2013) (denying without prejudice motion to stay because there "will be no substantial harm to defendant in allowing reasonable discovery to go forward, inasmuch as discovery will be useful even if this action is ultimately arbitrated," but recognizing that defendant may "bring a further motion to stay as we approach the date for motions for summary judgment" or trial). If this case is allowed to proceed on the merits (*e.g.*, to summary judgment or class certification) without a ruling from the Ninth Circuit on the appeal herein, and the Ninth Circuit ultimately reverses this Court and compels Mohamed's claims to arbitration, this Court's substantive rulings may be for naught, and the parties will have expended significant resources to obtain what, in all likelihood, would constitute non-binding advisory opinions. Alternatively, were any ruling on the merits by the Court to have some binding effect on the arbitration, Uber would lose the benefit of arbitration. In any event, Uber risks losing the two main benefits of the arbitral forum it thought it had bargained for – speed and efficiency.

In light of the above, the Court finds that allowing anything more than reasonable discovery[11] (which would take place even in arbitration) while Uber's appeal is pending will result in significant irreparable harm to Uber; thus, the balance of hardships tips sharply in favor of staying all non-discovery-related activity in this case until the Ninth Circuit rules on the merits of Uber's appeal.

E. <u>Plaintiffs' Will Not Suffer Irreparable Harm So Long As Reasonable Discovery is Permitted</u>

Plaintiffs argue that even if Uber will suffer some irreparable harm if this case continues pending appeal, Plaintiffs themselves will suffer significant harms which outweigh Uber's interest in a stay. *See* Docket No. 84 (Opposition) at 15. The Court disagrees.

---

[11] The Court expects the parties to meet and confer in good faith regarding the appropriate limits of discovery. If the parties are unable to agree regarding the appropriate scope of discovery, they shall follow the procedures for discovery disputes outlined in this Court's standing orders.

First, Plaintiffs argue that any delay in the district court unfairly risks the loss of relevant evidence while the case remains stayed. Opp. at 15; *see also Bradberry*, 2007 WL 221076, at *4 (finding that "the risk of lost evidence . . . and the delay in litigation constitute a substantial injury to Plaintiff" and therefore "weighs against granting a stay"). Any such risk is minimized here, however, because Plaintiffs will be permitted to continue with reasonable discovery. Moreover, the parties are all aware of their obligations to preserve evidence, including electronically stored information (ESI), pursuant to the Federal Rules of Civil Procedure and this Court's guidelines regarding the discovery and preservation of ESI. *See* Docket No. 56 (joint case management statement recognizing evidence preservation obligations). Thus, the Court concludes that the risk of loss of evidence is minimal.

The Court is similarly not persuaded by Plaintiffs' alternative argument that they will suffer irreparable harm if the Court grants a stay because such a stay will prevent non-parties from joining this lawsuit and vindicating their statutory rights against Uber. Opp. at 15. Specifically, Plaintiffs have expressed an intention to file an amended complaint "that adds new plaintiffs . . . none of [whom] are subject to [either] the 2013 or 2014 Agreements on which the motion to compel was based." *Id.* To the extent that these individuals are not currently plaintiffs in this lawsuit, any irreparable harm they might suffer from the entry of a stay is largely speculative. More importantly, however, Plaintiffs have not explained why these new plaintiffs cannot file their own separate action, or even possibly join the related *Gillette* action, which lawsuit presents similar claims to those being litigated in this case, and which case is not being stayed pending appeal. *See* Hrg. Tr. at 22:3-20. The Court simply does not find that a limited stay in this case, while allowing reasonable discovery to continue, will unduly burden or harm Plaintiffs.

F.  <u>The Public Interest Factor is Neutral</u>

Finally, the Court considers the public interest. Here, Plaintiffs argue that the public interest weighs against a stay because any delay will slow Plaintiffs' attempts to vindicate their important statutory rights. Opp. at 15-16. On the other hand, Uber argues the public interest favors a stay because a stay will vindicate the federal policy favoring arbitration. Mot. at 9-10. The Court

13

concludes that both are valid interests, and that they largely are in equipoise for purposes of this motion. The public interest factor is neutral.

### III. CONCLUSION

Uber's motion for a stay of this action pending appeal is **GRANTED IN PART** and **DENIED IN PART**. While Uber has not shown a likelihood of success on the merits of its appeal, the appeal raises at least two serious legal issues. Moreover, the balance of hardships tilts sharply in Uber's favor were this Court to permit non-discovery motions practice or adjudication on the merits to occur in this forum pending appeal. By allowing reasonable discovery to continue in this forum, however, the Court reasonably protects the interests of the Plaintiffs and acknowledges that Uber would be required to engage in discovery irrespective of the outcome of its appeal. Thus, this case is hereby stayed for all purposes with the exception of reasonable discovery pending the issuance of the Ninth Circuit's mandate in Uber's appeal.

This order disposes of Docket No. 76.

IT IS SO ORDERED.

Dated: July 22, 2015

_____
EDWARD M. CHEN
United States District Judge