UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS O'CONNOR, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>Defendants. | Case No. 13-cv-03826-EMC<br>Case No. 14-cv-5200-EMC<br>Case No. 15-cv-0262-EMC |
| IN RE UBER FCRA LITIGATION | **ORDER DENYING DEFENDANT'S MOTION TO STAY**<br><br>*O'Connor* Docket No. 439<br>*In re Uber FCRA Litigation* Docket No. 140<br>*Yucesoy* Docket No. 166 |
| HAKAN YUCESOY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>Defendants | |

## I. INTRODUCTION

On December 23, 2015, the Court issued an Order on Plaintiffs' motions to enjoin Uber's communications with class and putative class members, as well as enforcement of the December 11, 2015 arbitration agreement (hereafter, December 2015 Agreement). *O'Connor*, Docket No. 435; *In re Uber FCRA Litigation*, Docket No. 137; *Yucesoy*, Docket No. 161 (Ord.). Uber has appealed the Court's Order, and has now moved to stay the order in its entirety. *O'Connor*,

1  Docket No. 439; *In re Uber FCRA Litigation*, Docket No. 140; *Yucesoy*, Docket No. 166 (Mot.).
2  Having considered the parties' filings, and for the reasons set forth below, the Court **DENIES**
3  Uber's motion to stay.

## II. DISCUSSION

A.  Motion to Stay

Whether to issue a stay pending appeal is "an exercise of judicial discretion . . . to be guided by sound legal principles." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009); *see also Guifu Li v. A Perfect Franchise, Inc.*, No. 10-cv-1189-LHK, 2011 WL 2293221, at *2 (N.D. Cal. Jun. 8, 2011). In determining whether a stay should issue, the Court considers four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) whether the public interest favors a stay.

*In re Carrier IQ Consumer Privacy Litig.*, No. C-12-md-2330 EMC, 2014 WL 2922726, at *1 (N.D. Cal. Jun. 13, 2014) (citations omitted); *see also Leiva-Perez v. Holder*, 40 F.3d 962 (9th Cir. 2011).

1.  Likelihood of Success on the Merits

The Court finds that Uber has not made a strong showing of success on the merits, either by making a "strong showing" on the merits or by raising "serious legal questions." *See Morse v. Servicemaster Global Holdings, Inc.*, No. C-10-628-SI, 2013 WL 123610, at *2 (N.D. Cal. Jan. 8, 2013) (citing *Leiva-Perez*, 640 F.3d at 964). Uber argues that the Court overstepped its authority under Rule 23(d) when it invalidated Uber's arbitration agreement and required Uber to include more detailed disclosures, subject to agreement by opposing counsel and Court approval. Mot. at 1. Uber contends that the order is not based on "a clear record and specific findings" as required by the Supreme Court in *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981), and that the order is not "carefully drawn" to limit speech as little as possible. Mot. at 2-3. Finally, Uber argues that the Order is "infused with an impermissible presumption . . . against arbitration and in favor of class action litigation, in violation of both the [Federal Arbitration Act] and Rule 23." *Id.* at 3-4 (emphasis omitted).

The Court rejects these arguments. As an initial matter, the Court did not invalidate Uber's arbitration agreement, except as to drivers who are part of the *O'Connor* certified class and with respect to the certified claims, up to the date of certification (December 9, 2015). Ord. at 4-5. In so ruling, the Court merely confirmed Uber's intent, as stated in its filings with this Court, statements to the press, and at the hearing on this matter. *See O'Connor*, Docket No. 408, Exh. C; Docket No. 410 at 4; Docket No. 428 at 38:24-39:7; Matthew Blake, *Uber Vows New Arbitration Deal Not Attempt to Reduce Class Size, While Plaintiffs Skeptical*, DAILY JOURNAL, Dec. 14, 2015. As to all other putative class members, the Court did not rule on the enforceability of the terms of the December 2015 Agreement, but only required modest changes to the notice provision within the arbitration agreement and a corrective cover letter, with a more easily accessible opt-out function. Ord. at 6-7.

These requirements were narrowly tailored to address the significant risk of confusion created by Uber's promulgation of the December 2015 Agreement. In fact, Plaintiffs provided evidence of *actual* confusion directly resulting from Uber's issuance of the December 2015 Agreement. *See O'Connor* Docket No. 415 (Liss-Riordan Dec.) at ¶ 3 (stating that her firm had received over 800 inquiries from drivers expressing concerns and confusion about the December 2015 Agreement, including whether they needed to opt-out to participate in the *O'Connor* case and how to do so). This is not merely a hypothetical harm, as Uber contends. *See* Mot. at 2. Furthermore, these requirements are well within the power of the court as established in other cases, including those where the court itself drafted the corrective notice that was sent to putative class members. *See Camp v. Alexander*, 300 F.R.D. 617, 626 (N.D. Cal. 2014) (invalidating opt-outs and ordering issuance of court-drafted corrective notice where the defendants improperly solicited opt-out declarations from putative class members); *Guifu Li v. A Perfect Day Franchise*, 270 F.R.D. 509, 518-19 (N.D. Cal. 2010) (same); *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 353 (6th Cir. 2009) (affirming court's corrective notice and extension of the opt-out period to "unwind the confusion" caused by plaintiffs' attorney's unilateral communication with putative class members to procure post-certification opt-outs). Uber cites no case law otherwise, citing only general First Amendment cases that did not involve a court's authority to regulate communications

3

with a class or putative class under Rule 23. *See* Mot. at 3. The Court thus finds that Uber has not demonstrated that it has a strong showing on the merits or likelihood of success on appeal, nor that a serious legal question has been raised.

2. <u>Irreparable Harm to Uber</u>

Uber argues that it will suffer irreparable harm to its rights under the First Amendment and the Federal Arbitration Act (FAA), absent a stay. Mot. at 4. The Court finds that Uber does not show that the balance of hardships absent a stay tips sharply in its favor. For example, Uber asks that the Court stay the Order in its entirety (see *O'Connor* Docket No. 444 at 1), which would include the Court's Order that the December 2015 Agreement is ineffective as to the certified class and claims in *O'Connor*, up to the date of certification (December 9, 2015). *See* Ord. at 4-5. Uber does not explain what harm it would suffer absent a stay of this section of the Order, particularly when this section merely confirms Uber's stated intent.[1]

As to the prospective relief ordered by the Court -- *i.e.*, the revised notice provision and new cover letter -- these changes are very modest. *Contrast with Gulf Oil Co. v. Bernard*, 452 U.S. 89, 104 (finding order issued pursuant to Rule 23(d) "involved serious restraints on expression" where the order imposed a complete ban on all communications concerning the class action between parties or their counsel and any actual or potential class member who was not a formal party, without the prior approval of the court"). The Court simply requires a more complete notice provision that clarifies the existing state of litigation and where the cases currently stand, as well as a succinct cover letter that provides an easily accessible opt-out function, to ease the opt-out process for individuals who do not wish to be bound by the arbitration agreement. As to judicial oversight, in the event that the parties cannot agree as to the content of the cover letter and revised arbitration agreement (which again, should require only minor changes), the parties

---

[1] Uber also now contends that if it is required to issue the revised notice provision and corrective cover letter, it should be able to enforce any new arbitration agreement against the certified *O'Connor* class. *See In re Uber FCRA Litigation*, Docket No. 148 at 2. The Court has already prohibited Uber from promulgating any further arbitration agreement to certified class members purporting to affect claims asserted in *O'Connor*, except with approval of class counsel or the Court. Ord. at 5. To the extent that Uber argues it may enforce any new arbitration agreement against the *O'Connor* class as to claims that have been certified, the Court rejects this claim.

4

may come to the Court to resolve any disagreements. The Court did not, as requested by Plaintiffs, enjoin the promulgation of future arbitration agreements or require an affirmative opt-in to the arbitration agreement. Uber is still free to issue arbitration agreements, in conformity with the modest enhancements ordered by the Court.

### 3. Harm to the Plaintiffs

The Court finds that the harm to the putative class is significant, should the order be stayed. Again, there is evidence of actual confusion that has resulted from the December 2015 Agreement. Moreover, as a practical matter, the December 2015 Agreement and any future arbitration agreements directly affect a putative class member's rights because if a driver does not opt out of the arbitration agreement, they may be precluded from participating in ongoing class action litigation before this Court. It was precisely because of this potential interference with the rights of Plaintiffs and putative class members in this case that the Court found it necessary to exercise its Rule 23(d) powers. *See* Ord. at 4; *compare with Piekarski v. Amedisys Ill., LLC*, 4 F. Supp. 3d 952, 956 (N.D. Ill. 2013) (invalidating arbitration agreement with burdensome opt-out sent to potential class members because it "appears obvious . . . that Defendants intended its employees would not follow all these steps and would instead be bound to arbitrate their grievances").

### 4. Public Interest

Finally, the Court considers the public interest. As neither party has asserted any public interest at issue, the Court finds that this factor is neutral.

### 5. Balance of Interests

The Court finds that Uber has not shown a likelihood of success on the merits, nor irreparable harm in light of the limited modifications required by the Court. In contrast, there would be significant harm to the plaintiffs and putative class, should Uber's motion to stay be granted. For those reasons, the Court will deny Uber's motion to stay the Order in its entirety.

B.  *O'Connor* Plaintiffs' Request to Stay

In *O'Connor*, Plaintiffs have requested that the Court delay issuance of the corrective cover letter and revised arbitration agreement until after class notice has been issued in the

5

*O'Connor* case. *See O'Connor*, Docket No. 446 at 10. Plaintiffs in *In re Uber FCRA Litigation* do not oppose the request.[2] Uber opposes the request in the event that the Court does not stay its order in the entirety, on the ground that it should be permitted to send out a revised arbitration agreement and corrective notice as soon as possible, and no later than the dissemination of class notice. *In re Uber FCRA Litigation*, Docket No. 148 at 1. The Court sees no good reason to delay sending out the revised arbitration agreement and corrective notices given its denial of the stay. Delaying those notices will prejudice Uber, who is entitled to implement a new arbitration notice and agreement provided it complies with this Court's order. However, the corrective notice may be delayed for those certified class members who are receiving class notice in order to minimize confusion for certified class members; the corrective notice can be sent after the notice process for the certified class is completed. This will be of minimal prejudice to Uber since the Court has determined, consistent with Uber's stated intent, that the new arbitration agreement will not, in any event, be effective as to the members of the certified class as to certified claims.

Uber states that Plaintiffs' counsel has refused to meet and confer with Uber regarding its proposed revised arbitration agreement and corrective cover letter, in violation of the Court's Order that the parties meet and confer within ten days of its order. Docket No. 451 at 1. The Court does not have full information regarding what has occurred, but would not approve of Plaintiffs' actions if that was the case. The Court has also reviewed Uber's proposed revised arbitration agreement and corrective cover letter (Docket No. 451), and has serious concerns about the adequacy of the proposed opt-out function (which is less an opt-out function than a link to the opt-out provision which still requires the recipient to compose an email in order to opt out) and whether it satisfies the Court's Order. Further, to the extent that Uber suggests that it is not required to issue the corrective cover letter to future drivers or with future arbitration agreements, this will also be in violation of the Court's Order. *See* Ord. at 8.

The parties are **ORDERED** to meet and confer on the proposed revised arbitration agreement and corrective cover letter, including the opt-out function. The parties must meet and

---

[2] The *Del Rio* plaintiffs have not stated any position on the matter.

confer by telephone, not just by e-mail or letter.[3]  If the parties cannot agree on a proposed revised arbitration agreement and corrective cover letter, the parties shall notify the Court by submitting their respective proposed notices and procedures by **Wednesday**, **January 13, 2016**.  At that time, the parties must file a declaration stating that they have satisfied their obligation to meet and confer in good faith.

### III.  CONCLUSION

The Court finds that Uber has failed to make a strong showing on the merits, and that the harm to the plaintiffs and putative class in light of a stay is significant compared to Uber's alleged harm in the absence of a stay.  For these reasons, the Court **DENIES** Uber's motion to stay.  Also, the *O'Connor* Plaintiffs' request to stay is **DENIED IN PART AND GRANTED IN PART** as provided herein.

The parties are again **ORDERED** to meet and confer as to the revised cover letter and arbitration agreement, to conform with the Court's December 23, 2015 Order.

This order disposes of *O'Connor*, Docket No. 439; *In re Uber FCRA Litigation*, Docket No. 140; and *Yucesoy*, Docket No. 166.

**IT IS SO ORDERED**.

Dated: January 8, 2016

_____
EDWARD M. CHEN
United States District Judge

---

[3] Any future violation of the Court's meet and confer orders may be subject to sanction, as well as a requirement that all meet and confers occur in person.