Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Andrew P. Lee (SBN 245903)
alee@gbdhlegal.com
William C. Jhaveri-Weeks (SBN 289984)
wjhaveriweeks@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA  94612
(510) 763-9800; (510) 835-1417 (Fax)

Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Robert Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
tmaya@ahdootwolfson.com
Bradley K. King (SBN 274399)
bking@ahdootwolfson.com
AHDOOT & WOLFSON, P.C.
1016 Palm Avenue
West Hollywood, CA  90069
(310) 474-9111; (310) 474-8585 (Fax)

[Additional Counsel Listed on Following Page]

*Attorneys for Plaintiffs and the Putative Classes*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re Uber FCRA Litigation | Case No.: 3:14-cv-05200-EMC |
| | Consolidated with: 14-cv-05241-EMC<br>15-cv-03009-EMC |
| | CLASS AND REPRESENTATIVE ACTION |
| | **AMENDED MASTER CONSOLIDATED COMPLAINT** |
| | **<u>Demand for Jury Trial</u>** |

1

Additional Counsel:

Meredith Desautels (SBN 259725)
mdesautels@lccr.com
Dana Isaac Quinn (SBN 278848)
disaac@lccr.com
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
    OF THE SAN FRANCISCO BAY AREA
131 Steuart Street, Suite 400
San Francisco, CA 94105
(415) 543-9444; (415) 543-0296 (Fax)

Monique Olivier (SBN 190385)
monique@dplolaw.com
DUCKWORTH, PETERS,
LEBOWITZ OLIVIER LLP
100 Bush St. Suite 1800
San Francisco, CA 94104
Tel:     (415) 433-0333
Fax:     (415) 449-6556

*Attorneys for Plaintiffs and the
Putative Classes*

2

Plaintiffs RONALD GILLETTE, ABDUL KADIR MOHAMED, SHANNON WISE, BRANDON FARMER, and MEGHAN CHRISTENSON (collectively, "Plaintiffs"), on behalf of themselves and other similarly-situated individuals, bring this Class Action Complaint against UBER TECHNOLOGIES, INC. ("Uber"), RASIER, LLC ("Rasier"), and HIREASE, LLC. ("Hirease") (collectively, "Defendants"), and allege as follows:

## INTRODUCTION

1.      Plaintiffs bring this action individually and on a class and representative basis in accordance with federal and state background check laws, including the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*; the California Investigative Consumer Reporting Agencies Act ("ICRAA"), California Civil Code § 1786 *et seq.*; California Consumer Credit Reporting Agencies Act ("CCRAA"), California Civil Code § 1785.1 *et seq.*; the Private Attorneys General Act of 2004 ("PAGA"); the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; the Massachusetts Credit Reporting Act ("MCRA") M.G.L c. 93 §§ 50 *et seq.*; and the Criminal Offender Record Information ("CORI") requirements, M.G.L. c. 6 §§ 171A *et seq.*

2.      The FCRA, ICRAA, CCRAA, and MCRA impose on entities that use consumer background reports important safeguards designed to protect consumers like Plaintiffs, including but not limited to the following: 1) providing "clear and conspicuous" notice in a written document that consists solely of the disclosure that consumer background reports may be procured; 2) obtaining written authorization from consumers prior to obtaining consumer background reports; 3) providing a summary of rights under applicable law prior to taking adverse actions against consumers; and 4) providing copies of the consumer background reports prior to taking adverse actions against consumers. Compliance with these requirements is necessary to prevent the misuse of sensitive personal information and to ensure the accuracy and integrity of consumer background reports.

3.      Plaintiff Gillette began working for Uber as a driver in approximately February 2013. In April 2014, Uber abruptly deactivated Plaintiff Gillette's account and terminated his employment as a result of a consumer background report.  Uber, however, failed to notify Plaintiff Gillette or obtain his authorization prior to procuring his consumer background report.  Moreover, Uber failed to

1   provide Plaintiff Gillette with a copy of his consumer background report and a description of his

2   rights under the FCRA.  These actions amount to willful violations of the FCRA and ICRAA.

3        4.     After previously working as an Uber Black driver, Plaintiff Mohamed began working

4   as an Uber X driver in approximately October 2014.  Then, in late October 2014, Uber deactivated

5   Plaintiff Mohamed's account and terminated his employment as a result of a consumer background

6   report.  Plaintiff Mohamed never received a compliant pre-adverse action notice from Uber, Rasier,

7   Hirease or any other.  These actions amount to willful violations of the FCRA, MCRA, and "CORI"

8   requirements.

9        5.     Plaintiffs Wise and Farmer applied to work for Uber as drivers in September 2013 and

10  April 2014, respectively.  Defendants denied their applications due to consumer background reports.

11  Defendants, however, failed to notify Plaintiffs Wise and Farmer or obtain their written

12  authorizations prior to procuring their consumer background reports.  Defendants also failed to

13  provide Plaintiffs Wise and Farmer with copies of their consumer background reports and a

14  description of their rights under the FCRA prior to taking adverse action against them.  These actions

15  amount to willful violations of the FCRA and ICRAA.

16       6.     Plaintiff Christenson applied to work for Uber as an entry level, administrative Office

17  Manager in or around early 2013.  Ms. Christenson is informed and believes that Defendants denied

18  her application due to a consumer credit background report.  However, Defendants failed to notify

19  Plaintiff Christenson or obtain her written authorization prior to procuring her consumer credit

20  background report.  Plaintiff Christenson did not learn that Defendants had procured her background

21  report until February 2015.  Moreover, Defendants failed to provide Plaintiff Christenson with a copy

22  of her consumer background report and a description of her rights under the FCRA prior to taking

23  adverse action against her.  These actions amount to willful violations of the FCRA, ICRAA, and

24  CCRAA.

25       7.     Plaintiff Gillette and Plaintiff Christenson also bring claims pursuant to PAGA,

26  California Labor Code § 2698 *et seq*., on a representative basis.  Plaintiff Gillette alleges violations of

27  the Labor Code arising from Defendants' misclassification of drivers as independent contractors,

28  rather than employees.  The California Labor Code requires employers to provide to its employees,

among others things, itemized wage statements, meal and rest periods, minimum and overtime wages, reimbursement of necessary expenses, full and complete gratuities, and prompt payment of wages upon termination.  Uber failed to comply with California Labor Code requirements due to the erroneous classification of its drivers as independent contractors.  Plaintiff Gillette seeks civil penalties on behalf of himself and other aggrieved employees pursuant to PAGA on a representative basis.

8.      Plaintiff Christenson alleges violations of Labor Code § 1024.5, which restricts the use of consumer credit reports to certain job types.  Plaintiff Christenson applied for a position that did not fall within any category set forth in Labor Code § 1024.5, and therefore Uber's procurement of her credit report was a Labor Code violation, giving rise to a cause of action under PAGA.  Plaintiff Christenson seeks civil penalties on behalf of herself and other aggrieved employees pursuant to PAGA on a representative basis.

**PROCEDURAL HISTORY**

9.      On November 24, 2014, Plaintiff Mohamed filed *Mohamed v. Uber Technologies, Inc. et al.*, Case No. 14-cv-05200-EMC.  On November 26, 2014, Plaintiff Gillette filed *Gillette v. Uber Technologies, Inc.*, Case No. 14-cv-05241.  Defendants filed motions to compel arbitration in both *Mohamed* and *Gillette*.  On June 9, 2015, the Court denied both motions.  Thereafter, Defendants appealed the Court's order denying their motions to compel arbitration, and filed motions to stay in both *Gillette* and *Mohamed* pending the resolution of Defendants' appeal to the Ninth Circuit.  The Court denied Defendants' motion for a stay in *Gillette*.  With respect to *Mohamed*, the Court granted in part and denied in part Defendants' motion for a stay, permitting only "reasonable" discovery during the pendency of Defendants' appeal.[1]

10.     On June 29, 2015, Plaintiff Nokchan filed *Nokchan v. Uber Technologies, Inc. et al.*, Case No. 15-cv-03009.  Plaintiff Nokchan asserts claims pursuant to the FCRA, CCRAA, and

---

[1] Although Plaintiff Mohamed is pled as a named Plaintiff and proposed class representative here, he will of course abide by the Court's order partially staying his case pending Defendants' appeal of the denial of their motion to compel arbitration.

ICRAA.  He does not allege that he was terminated, but alleges that Defendants failed to provide him with the disclosure and summary of rights required under the FCRA — claims that already are encompassed in the *Gillette* and *Mohamed* actions.

11.     On July 22, 2015, Plaintiff Gillette filed a motion for leave to file a second amended complaint to, among other things, add Plaintiffs and class representatives Shannon Wise, Brandon Farmer, and Meghan Christenson, and to add Rasier LLC as a defendant.  The Court granted Plaintiff Gillette's motion for leave to amend on August 18, 2015.

12.     On August 19, 2015, Plaintiff Gillette filed a motion to consolidate *Gillette*, *Mohamed*, and *Nokchan*, and to appoint interim lead counsel.  On October 1, 2015, the court granted Plaintiff Gillette's motion and ordered the filing of the present consolidated complaint.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over Plaintiffs' and putative class members' FCRA claims pursuant to 28 U.S.C. § 1331.

14.     This Court has supplemental jurisdiction over Plaintiffs' California state law claims pursuant to 28 U.S.C. § 1367.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) & (2) because Defendants reside in this judicial district, and a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district.

## PARTIES

16.     Plaintiff Ronald Gillette is a resident of the City and County of San Francisco, California and a "consumer" within the meaning of 15 U.S.C. § 1681a(c) and California Civil Code § 1786.2(b).  Plaintiff Gillette is a former employee of Uber who worked as a driver from approximately February 2013 to April 2014.

17.     Plaintiff Mohamed an individual and a "consumer" within the meaning of 15 U.S.C. § 1681a(c) and M.G.L. c. 93 § 50.  Plaintiff Mohamed worked as an Uber driver in 2013 and 2014 while he was a resident of Boston, Massachusetts.  At the time of this filing, Plaintiff Mohamed is located in Kenya, but plans to return to Boston.

18.     Plaintiffs Shannon Wise and Brandon Farmer are residents of the City of Oakland, County of Alameda, California, and are "consumers" within the meaning of 15 U.S.C. § 1681a(c) and California Civil Code § 1786.2(b).  Plaintiffs Wise and Farmer applied to become Uber drivers in September 2013 and April 2014, respectively, but were rejected by Defendants based on information contained in consumer background reports.

19.     Plaintiff Meghan Christenson is a resident of the City of Oakland, County of Alameda, California, and a "consumer" within the meaning of 15 U.S.C. § 1681a(c) and California Civil Code § 1786.2(b).  Plaintiff Christenson applied to become an office manager with Uber in 2012, but was rejected by Defendants based on information contained in a consumer credit report.  In February 2015, Plaintiff Christenson learned for the first time that Defendants had obtained her credit report during the 2012 application process.

20.     Defendant Uber Technologies, Inc. is a California corporation headquartered in San Francisco, California.  Uber is a "person" within the meaning of 15 U.S.C. § 1681a(b) and California Civil Code § 1786.2(a).  Upon information and belief, Uber obtained consumer background reports of Plaintiff Gillette, Plaintiff Mohamed, Plaintiff Christenson, and putative class members in violation of the FCRA, ICRAA, and CCRAA.

21.     Defendant Rasier, LLC is a limited liability company organized under the laws of the state of Delaware.  Rasier is a "person" within the meaning of 15 U.S.C. § 1681a(b) and California Civil Code § 1786.2(a).  Rasier is, on information and belief, a wholly owned subsidiary of Uber. Upon information and belief, Rasier obtained consumer background reports of Plaintiff Mohamed, Plaintiff Wise, and Plaintiff Farmer and putative class members in violation of the FCRA, ICRAA, and CCRAA.

22.     Defendant Hirease, LLC is a limited liability company organized under the laws of the state of Florida with its principal place of business at 370 Commerce Ave., Southern Pines, North Carolina 28387. Hirease provided consumer background reports to Uber and Rasier, and is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f).

1

## FACTUAL ALLEGATIONS

2     23.     Founded in 2009, Uber provides on demand automobile transportation in over 300

3  cities across 60 different countries.  It allows its customers to request and pay for car services via a

4  mobile phone application.  Uber has advertised itself as "your private driver in more than 40

5  countries.  Request a ride using the app and get picked up within minutes.  On-demand means no

6  reservations."

7     24.     During the time period at issue, Defendants performed background checks on current

8  and prospective drivers and other employees and/or workers.

9     25.     In February 2013, Uber engaged Hirease to furnish such background checks, and

10  certified to Hirease that Uber would comply with the FCRA for purposes of those background

11  checks.  Uber further certified to Hirease, on a prospective basis, that it would not request a

12  background check without first providing an FCRA-compliant disclosure to, and obtaining an FCRA-

13  compliant authorization from, the the individuals who were the subjects of those reports.

14     26.     On behalf of Uber, Hirease satisfied, or attempted to satisfy, some of Uber's

15  obligations under the FCRA with respect to the background checks, including by issuing written

16  communications to the subjects of those background checks from an "uberreports@hirease.com"

17  email address.

18     27.     After increasing pressure from regulators, on April 25, 2014, Uber announced a new

19  "three-step" background check policy that includes "county, federal, and multi-state checks."  Uber

20  further announced that "[w]e apply this comprehensive and new industry standard consistently across

21  all Uber products, including uberX."

22     28.     At the same time, Uber announced that it would apply "Criteria for drivers to pass

23  through Uber's screening, going back seven years," including, *inter alia*, "No DUI or other drug

24  related driving violation or severe infractions," "No violent crimes," "No sexual offenses," and "No

25  driving without insurance or suspended license charges in the past 3 years."

26     29.     On October 29, 2014, Uber announced that it was then "on track to complete more

27  than 2 million background checks of potential drivers in 2014, which Uber has noted is among the

28  highest totals of any major corporation in the world."

1

**Plaintiff Gillette**

2      30.      In February 2013, Plaintiff Gillette was hired by Abbey Lane Limousine ("Abbey"),

3 which provides limousine and car services within the San Francisco Bay Area.  Shortly after starting

4 with Abbey, Plaintiff Gillette applied to become a driver for Uber.  Following the submission of an

5 application through Uber's website, Plaintiff Gillette met with an Uber representative at one of

6 Uber's San Francisco office locations.  There he passed a short test given on a tablet device, and had

7 his picture taken.  Plaintiff Gillette began driving for Uber immediately thereafter.  At no time during

8 the application process did Uber request Plaintiff Gillette's authorization to obtain a consumer

9 background report, nor did it notify Plaintiff Gillette that it would obtain a consumer background

10 report.

11      31.      From approximately March 2013 to April 2014, Plaintiff Gillette successfully drove

12 for Uber.  Using an SUV provided by Abbey, Plaintiff Gillette provided "SUV" car services in the

13 San Francisco metropolitan area.  Plaintiff Gillette worked 36-48 hours per week.  On average he

14 picked up and dropped off 4 to 7 customers per day.  Although Plaintiff Gillette continued to work for

15 Abbey, he spent approximately 90% of his time working for Uber.  Throughout his employment with

16 Uber, Plaintiff Gillette maintained a rating of between 4.7 and 4.8 out of 5 stars.

17      32.      Uber paid Abbey once per week for Plaintiff Gillette's services.  The gross money

18 generated by Plaintiff Gillette was split as follows: 20% to Uber, 40% to Abbey, and 40% to Plaintiff.

19      33.      Uber classified Plaintiff Gillette as an independent contractor rather than as an

20 employee.  As a result, Uber failed to provide Plaintiff Gillette with itemized wage statements,

21 minimum and overtime wages, lawful meal or rest periods, and reimbursement for necessary

22 expenses.  Uber also failed to keep accurate payroll records showing Plaintiff Gillette's hours worked

23 and wages paid.  Moreover, Uber retained all gratuities despite representing to its customers and to

24 Plaintiff Gillette that gratuity is included in the total cost of the car service.  Gratuities of 15-20% are

25 customary in the car service industry.

26      34.      In April 2014, Plaintiff Gillette's Uber account was abruptly deactivated.  Both

27 Plaintiff Gillette and Abbey immediately contacted Uber to determine the reason for the deactivation.

28 In response, Uber requested that Plaintiff Gillette meet with a representative at Uber's Mission Street

9

office location.  The meeting between Plaintiff Gillette and Uber lasted only a few minutes.  Upon

Plaintiff's arrival, a male representative who failed to identify himself greeted Plaintiff Gillette in the

building lobby.  The representative informed Plaintiff Gillette that "something had come up" on his

consumer background report and that he could no longer work for Uber.  Prior to his termination,

Uber failed to provide Plaintiff Gillette with a copy of his consumer background report or a summary

of his rights under the FCRA or other applicable laws.

35.     Subsequently, Plaintiff Gillette, through Abbey, requested further information

regarding Plaintiff Gillette's consumer background report.  Following several requests for

information, Uber informed Plaintiff Gillette that his consumer background report was produced by

Hirease.  Pursuant to Plaintiff Gillette's request, Hirease provided Plaintiff Gillette with a copy of his

consumer background report on May 2, 2014.

**Plaintiff Mohamed**

36.     After previously working for Uber as an "Uber Black" driver, Plaintiff Mohamed

applied to Uber for employment as an "Uber X" driver using his own car.

37.     Plaintiff Mohamed was told he needed to get a new car for the position.

38.     Plaintiff Mohamed therefore purchased a new car at a cost of approximately $25,000,

in late September of 2014.

39.     In early October 2014, Plaintiff Mohamed in fact began working as an Uber X driver

using his own car.

40.     Thereafter, on or about October 28, 2014, Plaintiff Mohamed received an email from

"uberreports@hirease.com" stating, *inter alia*:

> In reference to your proposal to enter an independent contractor relationship, Rasier
> Boston, MA regrets to inform you that they are unable to further consider your proposal at
> this time.  The decision, in part, is the result of information obtained through the Consumer
> Reporting Agency identified below.

41.     At approximately the same time, Plaintiff Mohamed's access to the Uber app on his

phone, which previously enabled him to work as an Uber driver, was turned off.

42.     While the above-referenced October 28 email also stated that, "[i]n accordance with

10

the Fair Credit Reporting Act," Plaintiff Mohamed had "previously received a copy of this information and a copy of [his] rights under the Act," Plaintiff Mohamed had not received such materials.

43.     Plaintiff Mohamed never received a compliant pre-adverse action notice either from Uber, Rasier, Hirease or any other party contracted by any of them to provide such notice.

44.     On information and belief, Defendants terminated Plaintiff Mohamed because Hirease's consumer report concerning Plaintiff Mohamed indicated he had a minor criminal record that, in fact, stems from the receipt of much-needed Medicaid benefits for his seven children.

45.     Defendants' termination of Plaintiff Mohamed deprived him of his livelihood and left him without an alternative means of providing for his family, including his seven children.

46.     Defendants did not provide Plaintiff Mohamed with a copy of any CORI, nor with any CORI or other background check policy.  *See* M.G.L. c. 6 § 171A.

47.     Defendants did not provide Plaintiff Mohamed with information regarding the process for correcting a criminal record.

**Plaintiff Wise**

48.     Plaintiff Wise applied to become a driver for Uber in September 2013 through Uber's website.  Several weeks thereafter, she logged into her account and learned that Defendants had rejected her driver application.  Upon information and belief, Defendants denied Plaintiff Wise's application due to information they obtained through a consumer background report.

49.     At no time during the application process did Defendants obtain Plaintiff Wise's written authorization to procure a consumer background report, nor did Defendants notify Plaintiff Wise in a clear and conspicuous, written disclosure that they would obtain her consumer background report.  Moreover, Defendants failed to provide Plaintiff Wise with a copy of her consumer background report and a description of her rights under the FCRA prior to taking an adverse action against her.

**Plaintiff Farmer**

50.     Plaintiff Farmer applied to become a driver for Uber in April 2014 through Uber's website.  During the application process, Plaintiff Farmer met with an Uber representative in Uber's

11

San Francisco office.  While there, the representative told Plaintiff Farmer that "something had come up" on his background report, and that as a consequence he would not be hired to work for Uber.  The representative also stated that he could not tell Plaintiff Farmer what specifically had "come up" on his background report.  Upon information and belief, Defendants denied Plaintiff Farmer's application due to information they obtained from a consumer background report.

51.     At no time during the application process did Defendants notify Plaintiff Farmer in a clear and conspicuous, written disclosure that they would obtain his consumer background report.  Moreover, Defendants failed to provide Plaintiff Farmer with a copy of his consumer background report and a description of his rights under the FCRA prior to taking an adverse action against him.

**Plaintiff Christenson**

52.     Plaintiff Christenson applied to work for Uber as an entry level, administrative Office Manager in late 2012 and/or early 2013.  She went through three stages of interviews and appeared to have the position.  However, Uber declined Plaintiff Christenson's application.

53.     In February 2015, Plaintiff Christenson retrieved her credit report and learned for the first time that, upon information and belief, Defendant Uber had retrieved her credit report during the application process in late 2012 or early 2013.  Plaintiff Christenson is informed and believes that Uber's decision not to hire her was based on negative information contained in her credit report, which she would have been able to explain if given the opportunity to do so.

54.     At no time during the application process did Defendants obtain Plaintiff Christenson's written authorization to procure a consumer background report, nor did Defendants notify Plaintiff Christenson in a clear and conspicuous, written disclosure that they would obtain her consumer background report.  Moreover, Defendants failed to provide Plaintiff Christenson with a copy of her consumer background report and a description of her rights under the FCRA prior to taking an adverse action against her.

55.     The position for which Plaintiff Christenson applied did not fall within any of the exceptions set forth in Labor Code § 1024.5, and thus Uber's obtaining of her credit report was unlawful under that section.  Ms. Christenson was not applying for a position covered by the executive exemption of the Labor Code; she was not applying for a position that involved regular

12

access to all of the following:  bank or credit card information, social security number, and date of birth; and she was not applying for a position covered by any of the other exceptions in Section 1024.5.  Therefore, Defendants' procurement of her consumer credit report was a violation of the Labor Code, giving rise to a cause of action under PAGA.

## CLASS ACTION ALLEGATIONS

56.     Plaintiffs bring this action in their individual capacities and as a class action under Federal Rule of Civil Procedure 23 on behalf of the following "FCRA Disclosure Class" and "FCRA Consent Class:"

> All individuals residing in the United States (including all territories and other political subdivisions of the United States) who worked for, or applied to work for, Uber and/or Rasier on or after November 26, 2009, and received inadequate disclosure prior to consumer report procurement as required by 15 U.S.C. § 1681b(b)(2)(A)(i).  (The "FCRA Disclosure Class.")

> All individuals residing in the United States (including all territories and other political subdivisions of the United States) who worked for, or applied to work for, Uber and/or Rasier on or after November 26, 2009, and did not provide written consent prior to consumer report procurement as required by 15 U.S.C. § 1681b(b)(2)(A)(ii).  (The "FCRA Consent Class.")

57.     Plaintiffs also bring this action in their individual capacities and as a class action under Federal Rule of Civil Procedure 23 on behalf of the following "FCRA Adverse Action Class:"

> All individuals residing in the United States (including all territories and other political subdivisions of the United States) who worked for, or applied to work for, Uber and/or Rasier on or after November 26, 2009, and were subject to an adverse action based in whole or in part on information contained in a consumer report without receiving a copy of the consumer report and/or a written description of their rights under the FCRA at least five business days prior to the adverse action as required by 15 U.S.C. § 1681b(b)(3)(A)(ii).

58.     Plaintiffs also bring this action in their individual capacities and as a class action under Federal Rule of Civil Procedure 23 on behalf of the following "FCRA Certification Class:"

> All individuals residing in the United States (including all territories and other political subdivisions of the United States) about whom Hirease furnished consumer reports to Uber and/or Rasier on or after November 26, 2009, without Hirease first receiving certifications that Uber or Rasier had previously complied with the FCRA's disclosure requirements with respect to such individuals, as required by 15 U.S.C. § 1681b(b)(1)(A)(i).

59.     Plaintiff Christenson also brings this action in her individual capacity and as a class

13

1   action under Federal Rule of Civil Procedure 23 on behalf of the following "CCRAA Disclosure

2   Class" and "CCRAA Notice of Adverse Determination Class":

> All individuals residing in California who worked for, or applied to work for, Uber and/or Rasier on or after November 26, 2007, and received inadequate notice prior to consumer credit report procurement as required by Cal. Civ. Code § 1785.20.5(a).  (The "CCRAA Disclosure Class.")

> All individuals residing in California who worked for, or applied to work for, Uber and/or Rasier on or after November 26, 2007, were denied employment or terminated either wholly or partly because of information contained in a consumer credit report, and were not so advised and supplied with the name and address of the consumer credit reporting agency by Defendants, as required by Cal. Civ. Code § 1785.20.5(b).  (The "CCRAA Notice of Adverse Determination Class.")

60.   Plaintiff Mohamed also brings this action in his individual capacity and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following "Massachusetts MCRA Class" and "Massachusetts CORI Class":

> All persons residing in Massachusetts who worked for, or applied to work for, Uber and/or Rasier on or after November 24, 2012, and (1) received an adverse action notice failing to inform them of their rights as required under M.G.L. c. 93 § 62; and/or (2) did not receive a copy of the consumer report(s) on which Defendants relied to take adverse action, as required by M.G.L. c. 93 § 60.  (The "Massachusetts MCRA Class.")

> All persons residing in Massachusetts against whom Defendants Uber and/or Rasier took adverse employment action on or after November 24, 2012, and about whom Defendants procured Criminal Offender Record Information ("CORI") and (1) to whom such CORI was not provided; (2) to whom no CORI policy was provided; and/or (3) to whom no information was provided concerning the process for correcting a criminal record.  (The "Massachusetts CORI Class.")

61.   **Numerosity** – Plaintiffs are informed and believe and thereon allege that each putative class contains at least forty persons.  Information concerning the exact size of each putative class is within the possession of Defendants.  The putative classes are so numerous that joinder of all members is impractical.

62.   **Commonality** – Common questions of fact and law exist as to all class members and predominate over any questions that affect only individual class members, including by example only and without limitation, the following:

> a.   Whether Defendants had a policy and/or practice of procuring or causing to be procured consumer reports for their workers and applicants;

14

b.    Whether Defendants had a policy and/or practice of providing clear and conspicuous notice in a written document that consists solely of the disclosure that it may procure consumer reports for their workers and applicants;

c.    Whether Defendants had a policy and/or practice of obtaining written authorization from their workers and applicants prior to procuring consumer reports;

d.    Whether Defendants had a policy and/or practice of providing copies of consumer reports to their existing workers and applicants at least five business days prior to taking any adverse action based in whole or in part on the consumer reports;

e.    Whether Defendants had a policy and/or practice of providing a written description of FCRA rights to their workers and applicants at least five business days prior to taking any adverse action based in whole or in part on a consumer report;

f.    Whether any written description of FCRA rights provided to Defendants' workers and applicants is legally sufficient;

g.    Whether Defendants violated the CCRAA;

h.    Whether Defendants maintained reasonable procedures to assure compliance with the CCRAA;

i.    Whether Defendants violated MCRA and CORI.

j.    Whether Defendants willfully failed to comply with the FCRA;

k.    Whether Defendants willfully failed to comply with the CCRAA;

l.    The proper measure of statutory and punitive damages and the availability and appropriateness of declaratory and injunctive relief;

63.    **Typicality –** Plaintiffs' claims are typical of the claims of the putative class they seek to represent in that: (1) Plaintiffs are members of those classes; (2) Plaintiffs' claims arise from the same practice or course of conduct that forms the basis of the class claims; (3) Plaintiffs' claims are based upon the same legal and remedial theories as those of the classes and involve similar factual

1    circumstances; (4) there is no antagonism between the interests of Plaintiffs and absent class

2    members; (5) the injuries that Plaintiffs suffered are similar to the injuries that class members have

3    suffered.

4         64.    **Adequacy** – Plaintiffs will fairly and adequately represent the classes in that: (1) there

5    is no conflict between Plaintiffs' claims and those of other class and subclass members; (2) Plaintiffs

6    have retained counsel who are skilled and experienced in class actions and who will vigorously

7    prosecute this litigation; (3) Plaintiffs' claims are typical of the claims of class members.

8                    **PAGA REPRESENTATIVE ACTION ALLEGATIONS**

9                              **Plaintiff Gillette**

10        65.    On September 4, 2014, Plaintiff Gillette gave written notice by certified mail of Uber's

11   violations of various provisions of the California Labor Code as alleged in this complaint to the Labor

12   and Workforce Development Agency ("LWDA") and Uber.  *See* Letter from Andrew P. Lee to

13   Secretary Marty Morgenstern (Sept. 4, 2014) attached hereto as Exhibit A.

14        66.    The LWDA did not provide notice of its intention to investigate Uber's alleged

15   violations within thirty-three (33) calendar days of the September 4, 2014 postmark date of the notice

16   sent by Plaintiff Gillette.  *See* Cal. Lab. Code § 2699.3(a)(2)(A).

17        67.    Plaintiff Gillette is informed and believes and thereon alleges that Uber uniformly

18   misclassifies all of its drivers as independent contractors when they are, in fact, employees.

19        68.    Uber exerts significant control over its drivers.  For example, Uber drivers must adhere

20   to rules regarding the cleanliness of their car, their clothing, and the timeframe within which they

21   pick up a customer following a request, and must provide transportation for at least one customer per

22   month.

23        69.    As a result of the misclassification, Uber failed to provide Plaintiff Gillette and other

24   aggrieved employees with itemized wage statements, minimum and overtime wages, lawful meal or

25   rest periods, and reimbursement for necessary expenses.  Uber also failed to keep accurate payroll

26   records showing aggrieved employees' hours worked and wages paid.  Moreover, Uber retained all

27   gratuities owed to aggrieved employees despite representing to its customers that gratuity is included

28   in the total cost of the car service.  Gratuities of 15-20% are customary in the car service industry.

16

70.     Plaintiff Gillette further alleges that Uber violated PAGA in the following ways:  (1) Uber has failed to provide prompt payment of wages to driver employees upon termination and resignation in violation of Labor Code §§ 201, 202, 203; (2) Uber has failed to provide itemized wage statements to driver employees in violation of Labor Code §§ 226(a), 1174, and 1174.5; (3) Uber has failed to provide meal and rest periods in violation of Wage Order No. 9 and Labor Code §§ 226.7, 512, and 558; (4) Uber has willfully misclassified its driver employees in violation of Labor Code § 226.8; (5) Uber has retained portions of gratuities intended for driver employees in violation of Labor Code § 351; (6) Uber has failed to keep required payroll records in violation of Wage Order No. 9 and Labor Code §§ 1174 and 1174.5; (7) Uber has failed to pay overtime wages in violation of Wage Order No. 9 and Labor Code §§ 510, 558, 1194 and 1198; (8) Uber has failed to pay minimum wages in violation of Wage Order No. 9 and Labor Code §§ 1182.12, 1194, and 1197; (9) Uber has failed to reimburse driver employees for all reasonably necessary expenditures and losses incurred by driver employees in direct consequence of the discharge of their duties, including but not limited to fuel, insurance, maintenance, and toll costs, in violation of Labor Code § 2802.

**Plaintiff Christenson**

71.     On July 22, 2015, Plaintiff Christenson gave written notice by certified mail of Defendants' violation of California Labor Code Section 1024.5, as alleged in this complaint, to the LWDA and Defendants.  *See* Letter from Theodore Maya to Secretary David M. Lanier (July 22, 2015) attached hereto as Exhibit B.

72.     The LWDA did not provide notice of its intention to investigate Uber's alleged violations within thirty-three (33) calendar days of the July 22, 2015 postmark date of the notice sent by Plaintiff Christenson.  *See* Cal. Lab. Code § 2699.3(a)(2)(A).

73.     Plaintiff Christenson is informed and believes and thereon alleges that Defendants obtain consumer credit reports for applicants and/or employees, contrary to California Labor Code Section 1024.5, even though no exception listed in that section applies.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT — FAILURE TO PROVIDE**
**NOTICE OF OBTAINING CONSUMER REPORT**
**(15 U.S.C. § 1681b(b)(2)(A)(i))**
**(Against Defendants Uber and Rasier by all Plaintiffs on Behalf of the FCRA Disclosure Class)**

74.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

75.     15 U.S.C. § 1681b(b)(2)(A) governs the conduct of any person who obtains consumer background reports used for employment purposes:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
>
> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes . . . .

76.     Defendants willfully violated 15 U.S.C. § 1681b(b)(2)(A)(i) by failing to provide Plaintiffs and the putative class "clear and conspicuous" notice in a written document that consists solely of the disclosure that they may procure consumer background reports for employment purposes.

77.     Defendants acted willfully, and knew or should have known about their obligations under the FCRA.  These obligations are well-established by the plain language of the FCRA and in the promulgations and opinion letters of the Federal Trade Commission.

78.     Despite Defendants' awareness of their legal obligations, Defendants acted consciously in breaching their known duties and depriving Plaintiffs and other class members of their rights under the FCRA.  At minimum, Defendants' conduct was reckless in failing to make an appropriate inquiry to ascertain their obligations under the FCRA.

79.     As a result of these FCRA violations, Defendants are liable to Plaintiffs and the putative class for statutory damages of $100.00 to $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1)(A), punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and reasonable attorneys' fees and costs

1  pursuant to 15 U.S.C. § 1681n(a)(3).  Plaintiffs and the putative class are also entitled to equitable

2  relief against Defendants enjoining further violations of the FCRA.

3        80.      Plaintiffs seek statutory damages for themselves and all others similarly situated for

4  these violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

5        81.      Plaintiffs seek punitive damages for themselves and all others similarly situated for

6  these violations pursuant to 15 U.S.C. § 1681n(a)(2).

7        82.      In the alternative to the Plaintiffs' allegations that these violations were willful,

8  Plaintiffs allege that the violations were negligent and seek issue-certification of that issue and

9  appropriate remedies, if any, under 15 U.S.C. § 1681o.

10       83.      Plaintiffs seek the costs of this action together with reasonable attorney's fees as

11  determined by the Court.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT — FAILURE TO OBTAIN**
**AUTHORIZATION FOR CONSUMER REPORT**
**(15 U.S.C. § 1681b(b)(2)(A)(ii))**
**(Against Defendants Uber and Rasier on Behalf of the FCRA Consent Class)**

15       84.      Plaintiffs re-allege and incorporate by reference the allegations contained in the

16  paragraphs above as if fully set forth herein.

17       85.      Under 15 U.S.C. § 1681b(b)(2)(A) "a person may not procure a consumer report, or

18  cause a consumer report to be procured, for employment purposes with respect to any consumer,

19  unless":

20              (ii) the consumer has authorized in writing (which authorization may be made on the
                document referred to in clause (i)) the procurement of the report by that person.
21

22       86.      Defendants willfully violated 15 U.S.C. § 1681b(b)(2)(A)(ii) because they failed to

23  obtain written authorization from Plaintiffs and the putative class prior to obtaining consumer

24  background reports for employment purposes.

25       87.      Plaintiffs seek statutory damages for themselves and all others similarly situated for

26  these violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

27       88.      Plaintiffs seek punitive damages for themselves and all others similarly situated for

28  these violations pursuant to 15 U.S.C. § 1681n(a)(2).

19

89.     In the alternative to the Plaintiffs' allegations that these violations were willful,

Plaintiffs allege that the violations were negligent and seek appropriate remedies, if any, under 15

U.S.C. § 1681o.

90.     Plaintiffs seek the costs of this action together with reasonable attorney's fees as

determined by the Court.

**THIRD CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT — FAILURE TO PROVIDE**
**SUMMARY OF RIGHTS PRIOR TO TAKING ADVERSE ACTION**
**(15 U.S.C. § 1681b(b)(3)(A)(ii))**
**(Against Defendants Uber and Rasier on Behalf of the FCRA Adverse Action Class)**

91.     Plaintiffs re-allege and incorporate by reference the allegations contained in the

paragraphs above as if fully set forth herein.

92.     15 U.S.C. § 1681b(3)(A) governs the conduct of any person who uses a consumer

background report to take adverse action against consumers with respect to their employment:

> Except as provided in subparagraph (B), in using a consumer report for employment
> purposes, before taking any adverse action based in whole or in part on the report, the
> person intending to take such adverse action shall provide to the consumer to whom the
> report relates—
>
> > (i) a copy of the report; and
> > (ii) a description in writing of the rights of the consumer under this subchapter, as
> > prescribed by the Bureau under section 1681g(c)(3) of this title.

93.     The purpose of 15 U.S.C. § 1681b(3)(A) is to inform consumers of their rights under

the FCRA and provide them an opportunity to review the consumer report and correct any

inaccuracies before any adverse actions are taken.

94.     Uber applied its driver criteria rigidly and prospectively, making the decision, and

initiating a single automated process, to terminate drivers, or to reject would-be drivers,

contemporaneously with procurement and review of the background reports on which such decisions

were based, and before any summaries of rights, were provided to the affected individuals.

95.     Defendants willfully violated 15 U.S.C. § 1681b(3)(A)(ii) because they failed to

provide Plaintiffs and the putative class with a summary of their rights under the FCRA prior to

taking adverse actions against them, including termination of their employment and suspension

and/or deactivation of their user accounts.

20

96.     Plaintiffs seek statutory damages for themselves and all others similarly situated for these violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

97.     Plaintiffs seek punitive damages for themselves and all others similarly situated for these violations pursuant to 15 U.S.C. § 1681n(a)(2).

98.     In the alternative to the Plaintiffs' allegations that these violations were willful, Plaintiffs allege that the violations were negligent and seek appropriate remedies, if any, under 15 U.S.C. § 1681o.

99.     Plaintiffs seek the costs of this action together with reasonable attorney's fees as determined by the Court.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT — FAILURE TO PROVIDE**
**CONSUMER REPORT PRIOR TO TAKING ADVERSE ACTION**
**(15 U.S.C. § 1681b(b)(3)(A)(i))**
**(Against Defendants Uber and Rasier on Behalf of the FCRA Adverse Action Class)**

100.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

101.     Uber applied its driver criteria rigidly and prospectively, making the decision, and initiating a single automated process, to terminate drivers, or to reject would-be drivers, contemporaneously with procurement and review of the background reports on which such decisions were based, and before any copies of those reports, were provided to the affected individuals.

102.     Defendants willfully violated 15 U.S.C. § 1681b(b)(3)(A)(i) because they failed to provide Plaintiffs and the putative class a copy of their consumer background reports prior to taking adverse actions against them, including termination of their employment and suspension and/or deactivation of their user accounts.

103.     Plaintiffs seek statutory damages for themselves and all others similarly situated for these violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

104.     Plaintiffs seek punitive damages for themselves and all others similarly situated for these violations pursuant to 15 U.S.C. § 1681n(a)(2).

21

105.    In the alternative to the Plaintiffs' allegations that these violations were willful, Plaintiffs allege that the violations were negligent and seek appropriate remedies, if any, under 15 U.S.C. § 1681o.

106.    Plaintiffs seek the costs of this action together with reasonable attorney's fees as determined by the Court.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT — FAILURE TO OBTAIN**
**CERTIFICATION PRIOR TO PROVISION OF CONSUMER REPORT**
**(15 U.S.C. § 1681b(b)(1)(A)(i))**
**(Against Hirease on Behalf of the FCRA Certification Class)**

107.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

108.    In violation of 15 U.S.C. § 1681b(b)(1)(A)(i), Hirease furnished consumer reports to Uber and/or Rasier without first receiving any certification from Uber or Rasier that either entity had previously complied with the FCRA's disclosure requirements with respect to the subjects of those reports.

109.    Plaintiffs seek statutory damages for themselves and all others similarly situated for these violations under 15 U.S.C. § 1681n(a)(1)(A).

110.    Plaintiffs seek punitive damages for themselves and all others similarly situated for these violations under 15 U.S.C. § 1681n(a)(2).

111.    In the alternative to the Plaintiffs' allegations that these violations were willful, Plaintiffs allege that the violations were negligent and seek appropriate remedies, if any, under 15 U.S.C. § 1681o.

112.    Plaintiffs seek the costs of this action together with reasonable attorney's fees as determined by the Court.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA CREDIT REPORTING AGENCIES ACT**
**(Cal. Civ. Code § 1785.1 *et seq.*)**
**(Against Defendant Uber by Plaintiff Christenson on Behalf of the CCRAA Disclosure Class**
**and the CCRAA Notice of Adverse Determination Class)**

113.    Plaintiff Christenson re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

114.    California Civil Code § 1785.1 *et seq.* governs the conduct of persons who use a consumer credit report to take adverse action against "consumers."  Pertaining to the use of such reports for employment purposes, California Civil Code § 1785.20.5 states:

> (a) Prior to requesting a consumer credit report for employment purposes, the user of the report shall provide written notice to the person involved. The notice shall inform the person that a report will be used, and shall identify the specific basis under subdivision (a) of Section 1024.5 of the Labor Code for use of the report. The notice shall also inform the person of the source of the report, and shall contain a box that the person may check off to receive a copy of the credit report. If the consumer indicates that he or she wishes to receive a copy of the report, the user shall request that a copy be provided to the person when the user requests its copy from the credit reporting agency. The report to the user and to the subject person shall be provided contemporaneously and at no charge to the subject person.

> (b) Whenever employment involving a consumer is denied either wholly or partly because of information contained in a consumer credit report from a consumer credit reporting agency, the user of the consumer credit report shall so advise the consumer against whom the adverse action has been taken and supply the name and address or addresses of the consumer credit reporting agency making the report.  No person shall be held liable for any violation of this section if he or she shows by a preponderance of the evidence that, at the time of the alleged violation, he or she maintained reasonable procedures to assure compliance with this section.

115.    Upon information and belief, Defendants had no reasonable procedures in place to assure compliance with Section 1785.20.5.

116.    Defendants used a "consumer credit report" as defined in Cal. Civ. Code § 1785.3 to take adverse employment action against Plaintiff Christenson and other members of the CCRAA Class.

117.    Defendants violated the CCRAA by failing to provide written notice to Plaintiff Christenson and the putative class prior to requesting such consumer credit reports that complied with

23

Cal. Civ. Code § 1785.20.5 by informing them of the specific basis under subdivision (a) of Section 1024.5 of the Labor Code for use of the reports, informing them of the source of the reports, and including a box that they could check off to receive copies of such reports.

118.    Defendants violated the CCRAA by denying employment to Plaintiff and members of the CCRAA Class in whole or in part because of information contained in a consumer credit report without so advising them, and without supplying the name and address of the consumer credit reporting agency making the report, in violation of Cal. Civ. Code § 1785.20.5(b).

119.    Defendants willfully violated the CCRAA by acting in deliberate or reckless disregard of their obligations and the rights of Plaintiff Christenson and the putative class.

120.    Plaintiff Christenson seeks statutory damages for herself and all others similarly situated for these violations pursuant to California Civil Code § 1785.31(a)(2)(A).

121.    Plaintiff Christenson and other members of the CCRAA Class are entitled to:

    a.    Any actual damages sustained by Plaintiffs and other class members as a result of the failure.

    b.    Punitive damages of not less than one hundred dollars ($100) nor more than five thousand dollars ($5,000) for each violation as the Court deems proper;

    c.    Injunctive relief requiring Defendants to comply with the CCRAA; and

    d.    Costs and reasonable attorney's fees.

## SEVENTH CAUSE OF ACTION
**VIOLATION OF THE CALIFORNIA INVESTIGATIVE CONSUMER REPORTING AGENCIES ACT — FAILURE TO PROVIDE NOTICE**
**(Cal. Civ. Code § 1786.16(2)(B))**
**(Against Defendants Uber and Rasier)**

122.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

123.    Plaintiffs allege this cause of action on an individual basis only.

124.    Defendants willfully violated California Civil Code § 1786.16(2)(B) because they failed to provide Plaintiffs "clear and conspicuous" notice of the following in a written document that consists solely of the disclosure:  (1) that they may procure a consumer background report for

24

employment purposes; (2) the permissible purpose of the report; (3) that the disclosure may include information on the consumer's character, general reputation, personal characteristics, and mode of living; (4) identification of the name, address, and telephone number of the investigative consumer reporting agency conducting the investigation; (5) notification of the nature and scope of the investigation requested, including a summary of the provisions of California Civil Code § 1786.22.

125.    Plaintiffs seek statutory damages for themselves for these violations pursuant to California Civil Code § 1786.16(2)(B).

126.    Plaintiffs seek punitive damages for these violations pursuant to California Civil Code § 1786.50(b).

## EIGHTH CAUSE OF ACTION
### VIOLATION OF THE CALIFORNIA INVESTIGATIVE CONSUMER REPORTING AGENCIES ACT — FAILURE TO OBTAIN AUTHORIZATION
### (Cal. Civ. Code § 1786.16(a)(2)(C))
### (Against Defendants Uber and Rasier)

127.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

128.    Plaintiffs allege this cause of action on an individual basis only.

129.    Defendants willfully violated California Civil Code § 1786.16(a)(2)(C) because they failed to obtain written authorization from Plaintiffs prior to obtaining a consumer background report for employment purposes.

130.    Plaintiffs seek statutory damages for these violations pursuant to California Civil Code § 1786.16(a)(2)(B).

131.    Plaintiffs seek punitive damages for these violations pursuant to California Civil Code § 1786.50(b).

## NINTH CAUSE OF ACTION
### VIOLATION OF THE CALIFORNIA INVESTIGATIVE CONSUMER REPORTING AGENCIES ACT — FAILURE TO PROVIDE OPPORTUNITY TO REQUEST AND RECEIVE COPY OF CONSUMER REPORT
### (Cal. Civ. Code § 1786.16(b))
### (Against Defendants Uber and Rasier)

132.    Plaintiffs re-allege and incorporate by reference the allegations contained in the

25

paragraphs above as if fully set forth herein.

133.   Plaintiffs allege this cause of action on an individual basis only.

134.   Defendants willfully violated California Civil Code § 1786.16(b)(1) because they failed to provide, by means of a box to check on a written form, the opportunity to request and receive a copy of the consumer background report obtained for Plaintiff.  Defendants also willfully violated California Civil Code § 1786.16(b)(1) because they failed to provide Plaintiffs with a copy of their consumer background report within three days of request.

135.   Plaintiffs seek statutory damages for these violations pursuant to California Civil Code § 1786.16(a)(2)(B).

136.   Plaintiffs seek punitive damages for these violations pursuant to California Civil Code § 1786.50(b).

**TENTH CAUSE OF ACTION**
**VIOLATION OF THE PRIVATE ATTORNEYS GENERAL ACT**
**LABOR CODE VIOLATIONS ARISING FROM MISCLASSIFICATION**
**(California Labor Code § 2698 *et seq.*)**
**(Against Defendant Uber by Plaintiff Gillette)**

137.   Plaintiff Gillette re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

138.   Plaintiff Gillette is an "aggrieved employee" under PAGA, as he was employed by Uber during the applicable statutory period and suffered one or more of the Labor Code violations set forth herein.  Accordingly, he seeks to recover on behalf of himself and all other current and former aggrieved employees of Uber, the civil penalties provided by PAGA, plus reasonable attorney's fees and costs.

139.   Plaintiff Gillette seeks to recover the PAGA civil penalties through a representative action permitted by PAGA and the California Supreme Court in *Arias v. Superior Court* (2009) 46 Cal. 4th 969.  Therefore, class certification of the PAGA claims is not required, but Plaintiff Gillette may choose to seek certification of the PAGA claims.

140.   Plaintiff Gillette and all other current and former aggrieved employees of Uber seek civil penalties pursuant to PAGA for violations of the following Labor Code provisions:

a.   failure to provide prompt payment of wages to driver employees upon

26

termination and resignation in violation of Labor Code §§ 201, 202, 203;

b. failure to provide itemized wage statements to driver employees in violation of Labor Code §§ 226(a), 1174, and 1174.5;

c. failure to provide meal and rest periods in violation of Wage Order No. 9 and Labor Code §§ 226.7, 512, and 558;

d. willfully misclassifying its driver employees in violation of Labor Code § 226.8;

e. failure to provide gratuities intended for driver employees in violation of Labor Code § 351;

f. failure to keep required payroll records in violation of Wage Order No. 9 and Labor Code §§ 1174 and 1174.5;

g. failure to pay overtime wages in violation of Wage Order No. 9 and Labor Code §§ 510, 558, 1194 and 1198;

h. failure to pay minimum wages in violation of Wage Order No. 9 and Labor Code §§ 1182.12, 1194, and 1197;

i. failure to reimburse driver employees for all reasonably necessary expenditures and losses incurred by driver employees in direct consequence of the discharge of their duties, including but not limited to fuel, insurance, maintenance, and toll costs, in violation of Labor Code § 2802.

141. With respect to violations of Labor Code § 226(a), Labor Code § 226.3 imposes a civil penalty in addition to any other penalty provided by law of two hundred fifty dollars ($250) per aggrieved employee for the first violation, and one thousand dollars ($1,000) per aggrieved employee for each subsequent violation of Labor Code § 226(a).

142. With respect to violations of Labor Code §§ 510, 512, Labor Code § 558 imposes a civil penalty in addition to any other penalty provided by law of fifty dollars ($50) for initial violations for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages, and one hundred dollars ($100) for subsequent violations for each underpaid employee for each pay period for which the employee was

underpaid in addition to an amount sufficient to recover underpaid wages.  Moreover, Plaintiff Gillette seeks civil penalties in the amount of unpaid wages owed to aggrieved employees pursuant to Labor Code § 558(a)(3).

143.    With respect to violations of Labor Code § 1174, Labor Code § 1174.5 imposes a civil penalty of $500.

144.    Labor Code § 2699 *et seq*. imposes a civil penalty of one hundred dollars ($100) per pay period, per aggrieved employee for initial violations, and two hundred dollars ($200) pay period, per aggrieved employee for subsequent violations for all Labor Code provisions for which a civil penalty is not specifically provided, including Labor Code §§ 226.7, 226.8, 1174, 1182.12, 1194, 1197, 1198, and 2802.

**ELEVENTH CAUSE OF ACTION**
**VIOLATION OF THE PRIVATE ATTORNEYS GENERAL ACT**
**VIOLATION OF LABOR CODE § 1024.5**
**(California Labor Code § 2698 *et seq*.)**
**(Against Defendant Uber by Plaintiff Christenson)**

145.    Plaintiff Christenson re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

146.    Defendant Uber is an "employer or prospective employer" under Labor Code Section 1024.5(a).  During the applicable statutory period, Plaintiff discovered that Uber had violated Labor Code Section 1024.5 with respect to her application for employment.  Plaintiff could not reasonably have discovered the violation earlier, as Uber did not disclose its violation to her.  Accordingly, she seeks to recover on behalf of herself and all other current and former aggrieved employees or applicants of Uber the civil penalties provided by PAGA, plus reasonable attorney's fees and costs.

147.    Plaintiff Christenson seeks to recover the PAGA civil penalties through a representative action permitted by PAGA and the California Supreme Court in *Arias v. Superior Court* (2009) 46 Cal. 4th 969.  Therefore, class certification of the PAGA claims is not required, but Plaintiff Christenson may choose to seek certification of the PAGA claims.

148.    Plaintiff Christenson and all other current and former aggrieved employees and applicants of Uber seek civil penalties pursuant to PAGA for violations of the following Labor Code provision:  Impermissible use of consumer credit reports for employment purposes, in violation of

28

Labor Code § 1024.5, with respect to individuals not included in the exceptions enumerated in that section.

149.    Labor Code § 2699 imposes a civil penalty of one hundred dollars ($100) per pay period, per aggrieved employee for initial violations, and two hundred dollars ($200) pay period, per aggrieved employee for subsequent violations for all Labor Code provisions for which a civil penalty is not specifically provided, including Labor Code § 1024.5.

### TWELFTH CAUSE OF ACTION
### VIOLATION OF THE MASSACHUSETTS CREDIT REPORTING ACT
### (M.G.L.c. 93 §§ 50 *et seq.*)
### (Against all Defendants by Plaintiff Mohamed on Behalf of the Massachusetts MCRA Class)

150.    Plaintiff Mohamed re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

151.    Defendants used a "consumer report" as defined by the MCRA to take adverse employment action against Plaintiff Mohamed and other members of the Massachusetts MCRA Class.

152.    Defendant Hirease is a "consumer reporting agency" as defined by M.G.L. c. 93 § 50.

153.    Defendants violated the MCRA by failing to advise Plaintiff Mohamed and other members of the MCRA Class of the statutorily required rights in M.G.L. c. 93 § 62 in their adverse action notice, including the right to assistance interpreting consumer reports.

154.    Hirease failed to notify Plaintiff Mohamed and other members of the Massachusetts MCRA Class of the fact that public record information was being reported by Hirease to Defendants Uber and Rasier, as required by M.G.L. c. 93 § 60.

155.    The foregoing violations were willful. Defendants acted in deliberate or reckless disregard of their obligations and the rights of Plaintiff Mohamed and other class members under M.G.L. c. 93 § 50 *et seq*.

156.    Plaintiff Mohamed and the class members are entitled to:

      a.   Any actual damages sustained by Plaintiff and other class members as a result of the failure;

      b.   Such amount of punitive damages as the Court may allow;

c.  The costs of this action together with reasonable attorney's fees as determined by the Court; and

d.  Treble damages and attorney fees pursuant to M.G.L. c. 93 § 68, which incorporates M.G.L. c. 93A §§ 2 and 11.

### THIRTEENTH CAUSE OF ACTION
### VIOLATION OF MASSACHUSETTS CRIMINAL OFFENDER RECORD INFORMATION REQUIREMENTS
### (M.G.L. c. 6 §§ 171A *et seq.*)
### (Against Defendants Uber and Rasier by Plaintiff Mohamed on Behalf of the Massachusetts CORI Class)

157.  Plaintiff Mohamed re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

158.  On information and belief, Defendants Uber and Rasier annually conduct five or more criminal background investigations, and therefore are required to "maintain a written criminal offender record information policy providing that . . . [they] will: (i) notify the applicant of the potential adverse decision based on the criminal offender record information; (ii) provide a copy of the criminal offender record information and the policy to the applicant; and (iii) provide information concerning the process for correcting a criminal record."  M.G.L. c. 6 § 171A.

159.  Defendants Uber and Rasier violated Massachusetts law by failing to maintain and to provide a CORI policy.

160.  Defendants Uber and Rasier violated Massachusetts law by failing to provide to applicants information concerning the process for correcting a criminal record.

161.  Defendants Uber and Rasier violated Massachusetts law by failing to provide Plaintiff and other members of the CORI Class with CORI in Defendants' possession on which they relied to take adverse employment actions against Plaintiff Mohamed and other members of the CORI Class.

162.  Plaintiff and the class members are entitled to:

a.  Any actual damages sustained by Plaintiff and other class members as a result of Defendants' failures;

b.  exemplary damages of not less than one hundred and not more than one thousand dollars for each violation; and

c.   costs and reasonable attorneys' fees.

**FOURTEENTH CAUSE OF ACTION**
**UNLAWFUL, UNFAIR, OR FRAUDULENT BUSINESS ACTS AND PRACTICES**
**(Cal. Bus. & Prof. Code § 17200, *et seq.*)**
**(Against Defendants Uber and Rasier on Behalf of all FCRA and CCRAA Classes)**

163.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

164.    California Business and Professions Code §17200, *et seq.*, prohibits "any unlawful, unfair or fraudulent business act or practice."

165.    Defendants engaged in unlawful business acts and/or practices by violating state and federal consumer background report statutes as alleged in this Complaint.  Defendants also engaged in unlawful business acts and/or practices by violating California Labor Code section 1024.5 as alleged in this Complaint.  Disregarding such laws provides Defendants with an unfair advantage over competitors who comply with the law.

166.    As a direct result of Defendants' unlawful and unfair business acts and/or practices, Plaintiffs and class members suffered injury in fact and lost money or property.  Among other things, Plaintiffs were required to expend time and resources to discover information that Defendants had been required to provide to them, but had failed to provide to them, and Plaintiffs were deprived of the timely benefit of information that they had been entitled by law to receive.

167.    Accordingly, Plaintiffs, on behalf of themselves and all others similarly situated, seek restitution and injunctive relief against Defendants in the form of an order prohibiting Defendants from engaging in the alleged misconduct described herein, and other relief specifically prayed for herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Classes, pray for judgment against Defendants as follows:

A.    Certification of Plaintiffs' FCRA, CCRAA, MCRA, and CORI claims as class actions pursuant to Federal Rule of Civil Procedure 23;

B.    Appointment of all of the named Plaintiffs as class representatives with respect to the

31

FCRA claims, appointment of Plaintiff Christenson as class representative with respect to the

CCRAA claims, appointment of Plaintiff Mohamed as class representative with respect to the MCRA

and CORI claims, and appointment of Plaintiffs' Counsel as Class Counsel;

C.     Issuance of class notice to all individuals who worked for or applied to work for

Defendants Uber and/or Rasier during the relevant class periods;

D.     Declaratory and injunctive relief, including an order preliminarily and permanently

enjoining Defendants from engaging in the practices challenged herein;

E.     An award of actual or statutory damages to Plaintiffs and the Class pursuant to 15

U.S.C. § 1681n(a)(1)(A) in an amount subject to proof at trial;

F.     An award of punitive damages to Plaintiffs and the Class pursuant to 15 U.S.C.

§ 1681n(a)(2) and California Civil Code §§ 1785.31(a)(2)(B) and 1786.50(b);

G.     An award of actual or statutory damages to Plaintiffs pursuant to California Civil Code

§§ 1786.50(a)(2) and 1785.31 in an amount subject to proof at trial;

H.     An order requiring Defendants to make full restitution to Plaintiffs and all FCRA and

CCRAA Class members;

I.     An award of actual, exemplary, and/or punitive damages under M.G.L. c. 93 §§ 63-64,

and/or M.G.L. c. 6 § 177;

J.     An award of civil penalties pursuant to PAGA;

K.     An award of reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3),

California Code of Civil Procedure § 1021.5, California Civil Code § 1786.50(a)(2), California Labor

Code § 2699(g), M.G.L. c. 93 §§ 63-64, M.G.L. c. 6 § 177 and/or other applicable law;

L.     Pre-judgment and post-judgment interest as provided by law; and

M.     Such other and further relief that the Court may deem just and proper.

Dated:  April 12, 2016                    Respectfully submitted,

                                          GOLDSTEIN, BORGEN, DARDARIAN & HO

                                          /s/ Andrew P. Lee
                                          Andrew P. Lee

                                          Attorneys for Plaintiffs and the putative class

Dated:  April 12, 2016                    AHDOOT & WOLFSON, P.C.

                                          /s/ Theodore W. Maya
                                          Tina Wolfson
                                          Robert Ahdoot
                                          Theodore W. Maya
                                          Bradley K. King

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and the putative classes, hereby demand trial by jury.

Dated:  April 12, 2016                    Respectfully submitted,

                                          GOLDSTEIN, BORGEN, DARDARIAN & HO

                                          /s/ Andrew P. Lee
                                          Andrew P. Lee

                                          Attorneys for Plaintiffs and the putative class

Dated:  April 12, 2016                    AHDOOT & WOLFSON, P.C.

                                          /s/ Theodore W. Maya
                                          Tina Wolfson
                                          Robert Ahdoot
                                          Theodore W. Maya
                                          Bradley K. King