Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Robert Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
tmaya@ahdootwolfson.com
AHDOOT & WOLFSON, PC
1016 Palm Avenue
West Hollywood, CA 90069
Tel: (310) 474-9111; Fax:  (310) 474-8585

Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Andrew P. Lee (SBN 245903)
alee@gbdhlegal.com
William C. Jhaveri-Weeks (SBN 289984)
wjhaveriweeks@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 100
Oakland, CA 94612
Tel: (510) 763-9800; Fax: (510) 835-1417

*Attorneys for Plaintiffs and the Putative Class*

[Additional counsel on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE UBER FCRA LITIGATION | Case No.  14-cv-05200-EMC<br><br>**NOTICE OF SETTLEMENT**<br><br>Before: Hon. Edward M. Chen |

TO THE HONORABLE COURT:

PLEASE TAKE NOTICE THAT the parties in the above-captioned action previously reported that they had reached an agreement in principle on certain key settlement terms and had made significant progress towards resolving the remaining open issues. Plaintiffs are pleased to report that they have reached an agreement and have this week executed a Memorandum of Understanding ("MOU"), and are in the process of preparing the final settlement agreement and related documentation. A redacted copy of the MOU is attached hereto as Exhibit A. Plaintiffs anticipate finalizing the settlement papers and filing a motion for preliminary settlement approval within approximately 30 days.

Dated: June 15, 2016                    Respectfully submitted,

                                        AHDOOT & WOLFSON, PC

                                        By: /s/ *Tina Wolfson*
                                            Tina Wolfson
                                            Robert Ahdoot
                                            Theodore W. Maya

                                        *Attorneys for Plaintiffs and the Putative Class*

Dated:  June 15, 2016                   Respectfully submitted,

                                        GOLDSTEIN, BORGEN, DARDARIAN & HO

                                        By: /s/ *Laura L. Ho*
                                            Laura L. Ho
                                            Andrew P. Lee
                                            William Jhaveri-Weeks

                                        *Attorneys for Plaintiffs and the Putative Class*

Dated: June 15, 2016

                                        LAWYERS' COMMITTEE FOR CIVIL RIGHTS
                                        OF THE SAN FRANCISCO BAY AREA

                                         /s/ *Meredith Desautels*
                                            Meredith Desautels
                                            Dana Isaac Quinn

## SIGNATURE ATTESTATION

I am the ECF User whose identification and password are being used to file the foregoing document. In compliance with General Order 45, I hereby attest that the signatories indicated above via a conformed signature have concurred in this filing.

Dated: June 15, 2016                    By:    */s/ Tina Wolfson*
                                                       Tina Wolfson

# EXHIBIT A

MEMORANDUM OF UNDERSTANDING
*In re Uber FCRA Litigation*, 3:14-cv-05200 (N.D. Cal.)

*Strictly Confidential*[1]
*Evidence Code §§ 1115-1128; Fed. R. Evid. 408, Mediation Privileged*

This Memorandum of Understanding ("MOU") is entered into by and between Plaintiffs[2] and Uber[3] (collectively "the Parties") in this case (the "Action"). The Parties recognize that the terms of this MOU will be formalized in a separate, final settlement agreement. The Parties agree as follows:

1. **Monetary Terms** – The Parties agree to monetary terms as follows:
   - An all-inclusive settlement in the amount of **Seven Million Five Hundred Thousand Dollars ($7,500,000)** (includes all payments, fees and costs except those expressly specified below, including, but not limited to, attorneys' fees and costs, and named plaintiff service payments) ("the Settlement Fund").
   - Except as expressly noted below, separate from and in addition to the Settlement Fund, Uber will pay reasonable costs of notice and administration, but uncashed checks and any other unsuccessful disbursements will be used to pay for the costs of notice and administration by a mutually agreed-upon claims administrator.
   - Uber agrees to pay the attorneys' fees and costs, if any, awarded by the Court, the amount of which will, as stated above, be taken from the Settlement Fund and shall not in any way increase amount of the Settlement Fund. This is not, and shall not be construed as, a "clear sailing" provision.

---

[1]  *See, e.g.*, *Cassell v. Superior Court*, 51 Cal. 4th 113 (2011); *Simmons v. Ghaderi*, 44 Cal. 4th 570 (2008).

[2]  Throughout this document, "Plaintiffs" shall refer to all named plaintiffs and all putative class members in the *In Re Uber FCRA* litigation.

[3]  Uber shall mean (i) Uber Technologies, Inc. and its past, present, and future parents, subsidiaries, affiliates, divisions, joint ventures, licensees, franchisees, and any other legal entities, whether foreign or domestic, that are owned or controlled by Uber (but not including drivers who use the Uber software), and (ii) the past, present, and future shareholders, officers, directors, members, agents, employees, independent contractors, vendors, agents, consultants, representatives, fiduciaries, insurers, attorneys, legal representatives, predecessors, successors, and assigns of the entities in Part (i) of this Footnote. "Uber" does not include the company known as Hirease, Inc., nor any of its past, present, and future parents, subsidiaries, affiliated, division, joint ventures, licensees, franchisees, and any other legal entities, whether foreign or domestic, that are owned and controlled by Hirease, Inc.(collectively, "Hirease Related Parties"), and the past, present, and future shareholders, officers, directors, members, agents, employees, independent contractors, vendors, agents, consultants, representatives, fiduciaries, insurers, attorneys, legal representatives, predecessors, successors, and assigns of Hirease, Inc. and the Hirease Related Parties.

- Two Settlement Classes (collectively the "Settlement Class Members"):
    - <u>Settlement Class A</u> defined as "All individuals who (1) were subject to a background check and/or consumer report requested by Uber before January 3, 2015; and (2) either (i) did not activate as drivers, or (ii) activated as drivers and are not subject to any of the arbitration agreements at issue in the Enforceability Appeal (defined below) because they submitted timely and valid arbitration agreement opt outs."
    - <u>Settlement Class B</u> defined as "All individuals who (1) were subject to a background check and/or consumer report requested by Uber before January 3, 2015, (2) activated as drivers, and (3) did not opt out of the arbitration agreements at issue in the Enforceability Appeal (defined below)."
- Payments to Settlement Class Members shall be on a non-reversionary *per capita* and *pro rata* basis.
    - The *per capita* payments to Settlement Class A members shall be in an amount that is significantly more than the *per capita* payments to Settlement Class B members, unless the Settlement Fund is increased as a result of the pending appeals, as provided below.
    - If Uber is required to increase the Settlement Fund as a result of the pending appeals, as provided below, the additional payment will be distributed on a *per capita* basis to Settlement Class B members only. The outcome of the Appeals will not affect the payments made to Settlement Class A members, and even if Uber is required to increase the Settlement Fund as a result of the pending appeals, as provided below, the amount of the *per capita* payments to Settlement Class B members will not exceed the amount of the *per capita* payments to Settlement Class A members.
- The Parties shall have the right to continue to pursue the appeals consolidated in Ninth Circuit Case No. 15-16178 (the "Enforceability Appeal") and Ninth Circuit Case No. 15-17533 (the "Rule 23(d) Appeal") (collectively, the "Appeals"), to include but not limited to any *en banc* review or Supreme Court review of either or both cases, subject to the terms set forth in the "Joint Stipulation" attached hereto as Exhibit A and filed in the district court on June 1, 2016.
- The Parties will not make or directly or indirectly support any argument that the Appeals are moot based on a settlement in this matter or otherwise, except that the Parties agree that the Rule 23(d) Appeal is moot if (1) the district court's December 23, 2015 and January 19, 2016 orders are vacated and (2) this settlement agreement is approved and results in a final judgment.
    - In the event the Enforceability Appeal results in a reversal or vacatur of the district court's order or orders being appealed, the Settlement Fund will remain at a total of **Seven Million Five Hundred Thousand Dollars ($7,500,000)**.
    - In the event the Enforceability Appeal does not result in a reversal or vacatur of the district court's order or orders being appealed, the Settlement Fund will be increased by Uber to a total of **Nine Million Dollars ($9,000,000)** (*i.e.,* an increase of **One Million Five Hundred Thousand Dollars ($1,500,000)**). In such circumstances, this

2

      additional amount will be paid to Settlement Class B members on a *per capita* basis. Up to a maximum amount of **Five Hundred Thousand Dollars ($500,000)** of this **One Million Five Hundred Thousand Dollars ($1,500,000)** shall be used to pay costs of notice and administration in the event the Parties agree to conduct more than one round of disbursements. Such costs shall also be paid from uncashed checks and any other unsuccessful disbursements.

- Uber shall have the option to terminate/withdraw either or both of its Appeals at any time. Should Uber terminate/withdraw the Enforceability Appeal, and no reversal or vacatur has occurred as of the time that Uber terminates/withdraws the Enforceability Appeal, the Settlement Fund will be increased and distributed to Settlement Class B members as provided in the immediately preceding paragraph. If the Ninth Circuit determines that the Enforceability Appeal is moot, and that ruling becomes final (*i.e.*, any appeals are exhausted), the Settlement Fund will be increased and distributed to Settlement Class B members as provided in the immediately preceding paragraph, but the increase will be only **Seven Hundred Fifty Thousand Dollars ($750,000)**. Up to a maximum amount of **Two Hundred Fifty Thousand Dollars ($250,000)** of this **Seven Hundred Fifty Thousand Dollars ($750,000)** shall be used to pay costs of notice and administration in the event the parties agree to conduct more than one round of disbursements. Such costs shall also be paid from uncashed checks and any other unsuccessful disbursements.
- Uber shall not be required in any circumstance for any reason whatsoever to fund a Settlement Fund in excess of **Nine Million Dollars ($9,000,000)**.

2. **Scope of Settlement and Release** – The Parties agree as follows:
   - If the Parties obtain a non-appealable order granting final approval of the settlement in this Action, it is understood that, except as noted at the end of this paragraph, the Parties' settlement will cover and all of the class members shall release, through January 2, 2015, all claims of any kind relating in any way to, or arising out of, (1) the claims asserted in the currently-operative complaint in the *In re Uber FCRA* litigation, as well as (2) all claims of any kind relating in any way to, or arising out of, background checks and/or consumer reports of any kind presented in litigation now pending against Uber based on the facts alleged in the operative complaint, including but not limited to claims under the Fair Credit Reporting Act ("FCRA"), California Consumer Reporting Agencies Act, California Investigative Consumer Reporting Agencies Act, California Private Attorney General Act ("PAGA"), California Business and Professions Code section 17200, and Massachusetts CORI related claims. The class members also shall waive any right, with regard to such claims, to pursue any claim for actual, statutory, liquidated, punitive or any other form of damages, and also their right to pursue any such claim on a class or collective action basis against Uber, including any mass action. This release does not include the PAGA claims that are alleged

in the operative complaint that are not based on background checks and/or consumer reports, but Plaintiffs will no longer pursue those claims in this Action.

- Plaintiffs agree to include a release of all such released claims (including a waiver of any and all rights and benefits conferred by Cal. Civ. Code § 1542 and any provision under any other law that is similar to § 1542), on behalf of the Settlement Class Members in *In re Uber FCRA* in any formal settlement agreement between the Parties, and agree to seek approval of the release as part of the approval process. Plaintiffs further agree that the named plaintiffs in *In re Uber FCRA* will execute a General Release of All Claims (including a waiver of any and all rights and benefits conferred by Cal. Civ. Code § 1542 and any provision under any other law that is similar to § 1542).
- The Parties agree to use their best efforts to resolve any objections to the release of all claims.
- This MOU and any anticipated final settlement agreement, the fact of the anticipated settlement, any of the terms in this MOU and any anticipated final settlement agreement, and any documents filed in support of the anticipated settlement shall not constitute, or be offered, received, claimed, construed, or deemed as, an admission, finding, or evidence of: (i) any wrongdoing, (ii) any violation of any statute, law or regulation, (iii) any liability on the claims or allegations in *In re Uber FCRA*, or any other proceeding, or (iv) the propriety of certifying a litigation class in *In re Uber FCRA*, or any other proceeding, and shall not be used for any purpose whatsoever in any legal proceeding, including but not limited to arbitrations, other than a proceeding to enforce the terms of the anticipated final settlement agreement.

3. **Non-Monetary Relief** – Uber agrees not to deliberately return to the form of background check disclosure that had been provided to the Named Plaintiffs in or before 2014. The Parties shall discuss other reasonable modifications to Uber's background check policies. Notice and opportunity to cure is a pre-condition to any party seeking any remedy under the Parties' agreement. In recognition of the fact that the business and regulatory landscape may significantly change over time, the Parties agree that this term shall expire upon the earliest of the following two dates: (a) one year after entry of a non-appealable order granting final approval of the settlement in this Action ; or (b) the date upon which there are changes to any applicable statute, regulation, or other law that Uber reasonably believes would require a modification to this term to comply with the applicable statute, regulation, or law.

4. **Arbitration** – Plaintiffs agree to stipulate that the Court's orders of December 23, 2015 and January 19, 2016, should be vacated as set forth in the "Joint Stipulation" attached hereto as Exhibit A, which the Parties filed in the district court on June 1, 2016. Plaintiffs further agree and understand that all other provisions of this MOU, including any and all of Uber's obligations under this MOU – including without limitation to pay the Settlement Fund – are voidable at Uber's option unless and until the Court vacates the orders of December 23, 2015 and January 19, 2016, and allows Uber to distribute and enforce the December 10, 2015 Arbitration Agreement as to all drivers nationwide. Uber agrees that all other provisions of this MOU, including any and all of Plaintiffs' obligations under this MOU, are voidable at Plaintiffs' option if Plaintiffs prevail in the cross-appeal portion of the Rule 23(d) Appeal (Ninth Circuit Case No. 16-15035) and obtain reversal of the district court's December 23, 2015 and January

4

19, 2016 orders.  These provisions shall not be severable from the remainder of this MOU or the final settlement agreement.  Should any of these provisions be held unenforceable or contrary to law, the Parties' agreement, including this MOU, can be voided at Uber's election.  All other pertinent terms of the stipulation are set forth in Exhibit A.

5. **IC Classification** – Nothing in this settlement effects the classification of drivers as independent contractors.

6. **Good Faith Understanding** – The Parties agree to make reasonable, good faith efforts to implement these terms in a final settlement agreement, obtain final approval of such agreement, and abide by all terms of the agreement.

7. **Opt Outs** – Uber has the option to void the settlement if ███████████ settlement class members exercise their right to opt out of the agreement.

8. **Class Size** – The agreement will be contingent upon the Settlement Class number totaling approximately ██████ unique individuals.  Either party can void the settlement if there is a variance in the class member numbers by 10% up or down.

9. **Enforceability of MOU; Effective Date** – Subject to Court approval, the essential terms of this MOU shall be enforceable as a binding contract in the event that the Parties reach impasse as to the terms of a long-form settlement agreement.  Disagreements between the Parties as to the written terms of a settlement agreement shall be presented to the mediator to provide guidance to the Parties before any Party seeks recourse otherwise.  The MOU shall be effective and binding on the Parties on the date that an authorized representative of each Party has signed where indicated below.

10. **Safe Harbor Order** – Plaintiffs agree to entry of a Consent Order by the Court in a form substantially similar to the Joint Stipulation and Proposed Consent Order attached hereto as Exhibit B.  Uber will cooperate with reasonable requests by Plaintiffs for confirmatory discovery regarding Uber's Background Check Disclosures and Procedures (as defined in Exhibit B) since January 3, 2015, solely for the purpose of confirming Plaintiffs' agreement with the Joint Stipulation and Proposed Consent Order.  Plaintiffs must submit all such confirmatory discovery requests within 10 days of executing this MOU, and Uber reserves the right to object to requests that, in its sole and unreviewable discretion, are not reasonably necessary to confirm Plaintiffs' agreement with the Joint Stipulation and Proposed Consent Order.

11. **General Terms**

   A. **Entire MOU; Integration.** Each Party warrants that no promise or inducement has been offered or made to that Party except as herein set forth. It is understood and agreed by each Party that this MOU specifically supersedes any and all prior agreements and understandings, written or oral, express or implied, between Plaintiffs and Uber.

   B. **Governing Law and Forum.** This MOU is made under the laws of the State of California without regard to otherwise applicable principles of conflicts of laws, whether of the State of California or any other jurisdiction.

   C. **Execution.** Delivery of executed signature pages in one or more counterparts shall be sufficient to render this MOU effective in accordance with its terms. Each counterpart shall be deemed an original, but all counterparts collectively shall constitute only one instrument. The Parties agree that a copy of this MOU is binding and valid just as the signed original would be binding and valid.

   D. **Authority to Execute.** Each of the Parties represents and warrants that it is competent to enter into this MOU and has the full right, power and authority to enter into and perform the obligations under this MOU.

   E. **Claimed Ambiguities.** The Parties agree that any rule of law or any legal decision that would require interpretation of any claimed ambiguities in this MOU against Uber as the party that drafted it has no application and is expressly waived by and for each of the Parties.

| For Plaintiffs | For Defendants |
|---|---|
| TINA WOLFSON<br>Print Name | Angela Padilla<br>Print Name |
| /s/ T. Wolfson<br>Signature | /s/ Angela Padilla B/ PK<br>Signature |
| June 13, 2016 | June 14, 2016 |

Laura Ho
Print Name

[signature]
Signature

June 13, 2016

Firmwide:140975139.1 073208.1047