Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Robert Ahdoot (SBN 172098)
*rahdoot@ahdootwolfson.com*
Theodore W. Maya (SBN 223242)
*tmaya@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
1016 Palm Avenue
West Hollywood, California 90069
(310) 474-9111; (310) 474-8585 (Fax)

Laura L. Ho (SBN 173179)
*lho@gbdhlegal.com*
Andrew P. Lee (SBN 245903)
*alee@gbdhlegal.com*
William C. Jhaveri-Weeks (SBN 289984)
*wjhaveriweeks@gbdhlegal.com*
**GOLDSTEIN, BORGEN, DARDARIAN & HO**
300 Lakeside Drive, Suite 1000
Oakland, California  94612
Tel: (510) 763-9800; Fax: (510) 835-1417

*Attorneys for Plaintiffs and Interim Co-Lead Counsel*

REDACTED VERSION OF
DOCUMENT(S) SOUGHT TO BE
SEALED

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE UBER FCRA LITIGATION | Case No.: 14-cv-05200-EMC |
| | **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| | Before:    The Honorable Edward M. Chen |
| | Date:       June 1, 2017 |
| | Time:       1:30 PM |
| | Location: Courtroom 5, 17th Floor |
| |                 450 Golden Gate Avenue |
| |                 San Francisco, California 94102 |
| | [Stipulation of Settlement and Declarations of Tina Wolfson, Laura Ho, and Dorsey Nunn filed concurrently herewith] |

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 1, 2017, at 1:30 p.m., in the Courtroom of the Honorable Edward M. Chen, United States District Judge for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, plaintiffs in the above-captioned cases, Ronald Gillette, Abdul Kadir Mohamed, Shannon Wise, Brandon Farmer, and Meghan Christenson (collectively, "Plaintiffs"), will and hereby do move the Court, in accordance with Federal Rule of Civil Procedure 23, for an Order:

a. Granting preliminary approval of a proposed Stipulation of Settlement and Class Action Settlement Agreement and Release and the exhibits attached thereto (collectively, "Settlement Agreement" and filed concurrently herewith) entered into between the parties;

b. Certifying, for settlement purposes, the proposed Settlement Class, as defined in the Settlement Agreement;

c. Appointing Tina Wolfson, Robert Ahdoot, and Theodore Maya, of Ahdoot & Wolfson, PC and Laura Ho, Andrew P. Lee, and William Jhaveri-Weeks of Goldstein, Borgen, Dardarian & Ho as Class Counsel representing the Settlement Class;

d. Appointing Plaintiffs Ronald Gillette, Abdul Kadir Mohammed, Shannon Wise, Brandon Farmer, and Meghan Christenson as class representatives representing the Settlement Class;

e. Approving the parties' proposed notice program, including the proposed forms of notice, as set forth in the Settlement Agreement, and directing that notice be disseminated pursuant to such program;

f. Appointing the Angeion Group, LLC ("Angeion") as Settlement Administrator, and directing Angeion to carry out the duties and responsibilities of the Settlement Administrator specified in the Settlement Agreement;

g. Approving the parties' proposed Claim Form, and approving the procedures set forth in the Settlement Agreement for (i) the submission of Claim Forms and allocation of the Settlement Fund established by the Settlement Agreement, (ii) Class Members to exclude themselves from the Settlement, and (iii) Class Members to object to the Settlement;

1        h.      Staying all non-Settlement related proceedings in the above-captioned case pending

2   final approval of the Settlement Agreement;

3        i.      Entering the Joint Stipulation and Consent Order (attached as Exhibit "J" to the

4   Settlement Agreement); and

5        j.      Setting a Final Fairness Hearing and certain other dates in connection with the final

6   approval of the Settlement Agreement.

7        This motion is based on this notice of motion and motion, the accompanying memorandum of

8   points and authorities, the Settlement Agreement, including all exhibits thereto, the accompanying

9   declarations of Tina Wolfson, Laura Ho, Dorsey Nunn (an official from the *cy pres* recipient), and

10  Steve Weibrot, the argument of counsel, all papers and records on file in these cases, and such other

11  matters as the Court may consider.

12

13                                          **AHDOOT & WOLFSON, PC**

14

    Dated:  April 25, 2017              By:  */s/ Tina Wolfson*
15                                         Tina Wolfson (State Bar No. 174806)
                                           Robert Ahdoot (State Bar No. 172098)
16                                         Theodore W. Maya (State Bar No. 223242)
                                           1016 Palm Avenue
17                                         West Hollywood, California 90069
                                           Tel:  (310) 474-9111
18

19                                          **GOLDSTEIN, BORGEN, DARDARIAN & HO**

20  Dated:  April 25, 2017              By:  */s/ Laura L. Ho*
                                           Laura L. Ho (SBN 173179)
21                                         Andrew P. Lee (SBN 245903)
                                           William C. Jhaveri-Weeks (SBN 289984)
22                                         300 Lakeside Drive, Suite 1000
                                           Oakland, CA  94612
23                                         Tel:  (510) 763-9800

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................... 1

II.  BACKGROUND ............................................................................................ 2

    A.   Procedural Background ......................................................................... 2

    B.   Discovery .............................................................................................. 5

    C.   Mediation .............................................................................................. 5

    D.   Summary of Plaintiffs' Claims ............................................................ 6

    E.   Overview of the Settlement Agreement ............................................... 6

        1.   Consideration ............................................................................ 6

        2.   Notice Program and Settlement Administration ....................... 8

        3.   The Settlement Class Contrasted with the Classes Described in the Complaint ................................................................................. 8

        4.   Scope of the Released Claims .................................................. 9

        5.   Attorneys' Fees and Expenses ................................................. 10

        6.   Named Plaintiff Service Awards .............................................. 11

        7.   Opt-Out and Objection Procedures ......................................... 12

        8.   Separate Payment of Administrative Expenses & Residual ............... 13

        9.   Consent Order ........................................................................... 13

III. LEGAL ANALYSIS ..................................................................................... 14

    A.   The Settlement Class Merits Certification. ....................................... 14

        1.   Rule 23(a) Is Satisfied. ............................................................ 15

            a.   The Classes Are Too Numerous to Permit Joinder. ............... 15

            b.   Common Questions Are Presented. ......................................... 15

            c.   The Named Plaintiffs' Claims Are Typical. ........................... 15

            d.   The Named Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class Members. ......... 16

        2.   Rule 23(b)(3) Is Satisfied. ....................................................... 16

B.   The Settlement Merits Preliminary Approval ................................................. 17

    1.   The Settlement Falls Within the Range of Reasonableness for
       Preliminary Approval. ........................................................................ 18

        a.   The Strength of Plaintiffs' Case Balanced Against the
           Substantial Risks of Prevailing on the Merits and Maintaining
           Class Certification Favor Preliminary Approval. .................... 19

           i.   Absent Settlement, Many Settlement Class Members
              Would Likely Be Required to Arbitrate Their Claims
              on an Individual Basis. ................................................. 19

           ii.   Plaintiffs Face Risks on the Merits of Their FCRA
              Claims. .......................................................................... 19

           iii.   Plaintiffs Face Risks on the Merits of Their State Law
              Claims. .......................................................................... 23

           iv.   Uber Intends to Challenge Plaintiffs' Standing. ........... 24

        b.   The Amount Offered in Settlement Weighs in Favor of
            Preliminary Approval. ........................................................... 25

        c.   The Extent of Discovery Weighs in Favor of Preliminary
            Approval. ............................................................................... 27

        d.   The Recommendation of Experienced Counsel Weighs in
            Favor of Preliminary Approval. ........................................... 28

        e.   Factors Related to the Presence of a Government Participant
            and the Reaction of the Class Are Neutral at this Juncture. .... 29

    2.   The Settlement Is Entitled to a Presumption of Fairness. ................. 29

    3.   No "Subtle Signs" of Collusion Are Present. .................................... 30

    4.   The Method of Allocation is Reasonable. .......................................... 31

    5.   The Proposed Forms of Notice and the Notice Program Are
       Reasonable. ........................................................................................ 32

C.   The Court Should Set a Final Fairness Hearing and Related Deadlines. ........ 33

IV.   CONCLUSION ................................................................................................................ 34

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*Advanced Conservation Sys., Inc. v. Long Island Lighting Co.*, 113 F.3d 1229 (2d Cir. 1997) ............ 19

4

*Aichele v. City of Los Angeles*, No. 12-cv-10863-DMG-FFM, 2015 WL 5286028
5    (C.D. Cal. Sept. 9, 2015) ..................................................................................... 30

6

*Alatraqchi v. Uber Tech., Inc., Labor Commissioner, State of California*, Case No.
    11-42020 CT (2012) ........................................................................................... 20

7

*Amchem Prods. V. Windsor*, 521 U.S. 591 (1997) ................................................. 16

8

*Andrade v. Chase Home Fin., LLC*, No. 04-cv-8229, 2005 WL 3436400 (N.D. Ill. Dec. 12, 2005) .... 24

9

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ................................................ 15

10

*Barcia v. Contain-A-Way, Inc.*, No. 07-cv-938-IEG-JMA, 2009 WL 587844 (S.D. Cal. Mar. 6,
11    2009) ................................................................................................................ 29

12

*Britts v. Steven Van Lines, Inc.*, Case No. 15-cv-1267, 2017 WL 385738 (N.D. Ohio Jan. 27, 2017).. 25

13

*Brown v. Lowe's Cos., Inc.*, No. 13-cv-079-RLV-DSC, 2016 WL 6496447 & Dkt. 125-1
    (W.D.N.C. Nov. 1, 2016) ..................................................................................... 26

14

*Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ...................... 17, 18, 32

15

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ........................... 18, 25

16

*Coleman v. Kohl's Dep't Stores, Inc.*, No. 15-cv-2588-JCS, 2015 WL 5782352 (N.D. Cal. Oct. 5,
17    2015) ................................................................................................................ 22

18

*Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930 (N.D. Cal. 2016) ................................. 17

19

*Cunha v. Hansen Nat. Corp.*, No. 08-cv-1249-GW, 2015 WL 12697627 (C.D. Cal. Jan. 29, 2015).... 29

20

*Democratic Cent. Comm. of D.C. v. Wash. Metro. Area Transit Comm'n*, 3 F.3d 1568 (D.C. Cir.
    1993) ................................................................................................................ 30

21

*Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466 (W.D. Va. 2011) ............. 28

22

*Ernst v. Dish Network, LLC*, 49 F. Supp. 3d 377 (S.D.N.Y. 2014) ..................... 19

23

*Fernandez v. Home Depot USA, Inc.*, No. 13-cv-648-DOC-RNB, Dkt. 59 (C.D. Cal. Jan. 22, 2016).. 26

24

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW-EMC, 2010 WL 1687832
25    (N.D. Cal. Apr. 22. 2010) .................................................................................... 28

26

*Gauci v. Citi Mortgage*, No. 11-cv-1387-ODW-JEM, 2011 WL 3652589
    (C.D. Cal. Aug. 19, 2011) .................................................................................... 27

27

*Goldberg v. Uber Techs., Inc.*, No. 14-cv-14264, 2015 WL 1530875 (D. Mass. Apr. 6, 2015)...... 21, 23

28

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ....................................... 18, 25

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................... passim

*Harris v. Vector Marketing Corp.*, Case No. 08-cv-5198-EMC, 2011 WL 1627973
  (N.D. Cal. Apr. 29, 2011) ........................................................................................ 18, 32

*Hoke v. Retail Credit Corp.*, 521 F.2d 1079 (4th Cir. 1975) ................................................. 19

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ........................... 30

*In re Juniper Networks Sec. Litig.*, 264 F.R.D. 584 (N.D. Cal. 2009) ................................. 15

*In re Michaels Stores, Inc., FCRA Litig.*, Case Nos. 14-7563, 15-2547, 15-5504,
  2017 U.S. Dist. LEXIS 9310 (D.N.J. Jan. 24, 2017) ................................................. 24

*In re Target Corp. Customer Data Security Breach Litig.*, 847 F.3d 608 (8th Cir. 2017)................... 16

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,
  No. 8:10-ml-02151 JVS (FMOx), 2013 WL 3224585 (C.D. Cal. June 17, 2013) ............................. 18

*In re: Google Inc. Gmail Litig.*, No. 13-md-2430-LHK, 2014 U.S. Dist. LEXIS 36957
  (N.D. Cal. Mar. 18, 2014) ........................................................................................ 22

*In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*,
  Case No. 3:15- md-2672 CRB (JSC), 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ....................... 11

*Javid v. SOS Int'l, Ltd.*, No. 12-cv-1218-JCC-TCB, 2013 WL 2286046 (E.D. Va. May 23, 2013)...... 23

*Johnson v. Sherwin-Williams Co.*, 152 F. Supp. 3d 1021 (N.D. Ohio 2015)................................. 19, 21

*Jordan v. Cty. of Los Angeles*, 669 F.2d 1311 (9th Cir. 1982) ............................................. 15

*Just v. Target Corp.*, 187 F. Supp. 3d 1064 (D. Minn. 2016) ............................................. 21

*Knight v. Red Door Salons, Inc.*, No. 08-cv-1520-SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ..... 28

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003)................................. 24

*Lamson v. EMS Energy Mktg. Serv.*, 868 F. Supp. 2d 804 (E.D. Wis. 2012) ................................. 19, 21

*Landrum v. Harris Cnty. Emergency Corps.*, 122 F. Supp. 3d 617 (S.D. Tex. 2015) ........................ 21

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) ....................................................... 17

*Lee v. Hertz Corp.*, No. 15-cv-4562-BLF, 2016 U.S. Dist. LEXIS 166911 (N.D. Cal. Dec. 2, 2016).. 25

*LeGrand v. Intellicorp Records, Inc.*, Case No. 15-cv-2091, 2017 U.S. Dist. LEXIS 26156
  (N.D. Ohio Feb. 24, 2017) ........................................................................................ 24

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998)........................................ 25

*Linney v. Cellular Alaska P'ship*, No. 96-cv-3008-DLJ, 1997 WL 450064
  (N.D. Cal. July 18, 1997) ........................................................................................ 28

*Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152
  (9th Cir. 2001) ................................................................................................................ 16

*Manuel v. Wells Fargo Bank, NA*, No. 14-cv-238-REP-DJN, 2016 WL 1070819 (E.D. Va.
  Mar. 15, 2016) ................................................................................................................ 26

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ................................................ 25

*Molina v. Roskam Baking Co.*, No. 09-cv-475, 2011 WL 5979087 (W.D. Mich. Nov. 29, 2011) ........ 23

*Moore v. Rite Aid Hdqtrs Corp.*, 33 F. Supp. 3d 569 (E.D. Pa. 2014) ................................................ 23

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ........................... 29

*Nielson v. The Sports Authority*, No. 11-cv-4724-SBA, 2013 WL 3957764
  (N.D. Cal. July 29, 2013) ................................................................................................ 29

*O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110 (N.D. Cal. 2016) ................................... 18, 20

*Officers for Justice v. Civil Serv. Com'n of City & Cty. of San Francisco*, 688 F.2d 615 (9th Cir. 1982) ... 18

*Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439 (N.D. Cal. 2008) ................................................ 16

*Ramirez v. Trans Union, LLC*, 301 F.R.D. 408 (N.D. Cal. 2014) ................................................ 24

*Reardon v. ClosetMaid Corp.*, No. 08-cv-1730, 2013 WL 6231606 (W.D. Pa. Dec. 2, 2013) ............. 22

*Rodriguez v. Equifax Info. Servs., LLC*, No. 14-cv-1142-AJT-MSN, 2015 WL 4417285
  (E.D. Va. July 17, 2015) ................................................................................................ 23

*Rodriguez v. W. Publ'g. Corp.*, 563 F.3d 948 (9th Cir. 2009) ................................................ 28, 32

*Ryals v. Hireright Solutions, Inc.*, No. 09-cv-625, 2011 WL 13121387 (E.D. Va. July 7, 2011) ......... 27

*Safeco Ins. Co. v. Super. Ct.*, 216 Cal. App. 3d 1491 (1990) ................................................ 27

*Schoebel v. Am. Integrity Ins. Co.*, No. 15-cv-380, 2015 WL 3407895 (M.D. Fl. May 27, 2015) ........ 21

*Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665 (D. Md. 2013) ................................................ 27

*Spann v. J.C. Penney Corp.*, 314 F.R.D. 312 (C.D. Cal. 2016) ................................................ 28

*Speer v. Whole Foods Mkt. Grp., Inc.*, No. 14-cv-3035, 2016 WL 7187183 & Dkts. 66-2, 66-3
  (M.D. Fla. Jan. 15, 2016) ................................................................................................ 26

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ................................................................ 25

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ................................................ 16, 32

*Stillmock v. Weis Mkts., Inc.*, 385 Fed. App'x 267 (4th Cir. 2010) ................................................ 24

*Syed v. M-I, LLC*, Case No. 14-17186, 2017 U.S. App. LEXIS 4954 (9th Cir. Mar. 20, 2017) ........... 25

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012) ................................................ 17

v

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ............................................... 32

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ................................. 11

*Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150 (9th Cir. 2016) ........................... 15

*Vega v. Weatherford U.S., Ltd. P'ship*, No. 1:14-CV-01790-JLT, 2016 WL 7116731
    (E.D. Cal. Dec. 7, 2016) ....................................................................................................... 9

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ................................................. 11

*Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ................... 17

*Yanting Zhang v. Super. Ct.,* 57 Cal. 4th 364 (2013) ............................................................... 24

*Zolkos v. Scriptfleet, Inc.*, No. 12-cv-8230-GF, 2014 WL 7011819 (N.D. Ill. Dec. 12, 2014) ............. 29

**Statutes**

15 U.S.C. § 1681 ................................................................................................................................... 2

15 U.S.C. § 1681b ................................................................................................................... 19, 20, 21

15 U.S.C. § 1681n ............................................................................................................................... 21

15 U.S.C. § 1681o ............................................................................................................................... 22

15 U.S.C. § 1681t ............................................................................................................................... 23

Cal. Bus. & Prof. Code § 17200 ..................................................................................................... 24

Cal. Civ. Code § 1785.1 ...................................................................................................................... 2

Cal. Civ. Code § 1785.20.5 ............................................................................................................... 19

Cal. Civ. Code § 1786 ......................................................................................................................... 2

Cal. Labor Code § 2698 ...................................................................................................................... 2

Cal. Labor Code § 2699 ............................................................................................................... 10, 24

Cal. Labor Code §1024.5 ................................................................................................................... 10

M.G.L. c. 6 § 171A ......................................................................................................................... 2, 23

M.G.L. c. 93 § 50 ................................................................................................................................. 2

**Other Authorities**

55 FR 18804-01 ................................................................................................................................... 20

Manual for Complex Litigation (Fourth) (2004) ....................................................................... 14

**Rules**

Fed. R. Civ. P. 23(a) ......................................................................................................... 15

Fed. R. Civ. P. 23(b) ......................................................................................................... 16

Fed. R. Civ. P. 23(c) ......................................................................................................... 32

Fed. R. Civ. P. 23(e) ...................................................................................................... 2, 17

**Treatises**

Newberg on Class Actions (4th ed. 2002) ......................................................................... 14

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs respectfully submit for the Court's preliminary approval the concurrently filed Stipulation of Settlement, including attached exhibits (collectively, "Settlement Agreement" or "Settlement"), resolving Plaintiffs' claims in this action against Defendants Uber Technologies, Inc. and Rasier, LLC (collectively, "Uber"), based on alleged violations of the Fair Credit Reporting Act ("FCRA") and analogous state law (including California's Private Attorneys General Act ("PAGA")). Under the proposed Settlement, Uber will pay $7.5 million into a Settlement Fund[1] that will be distributed to Settlement Class Members ("Class Members") after deduction of 75% of the PAGA Payment, and any Court-approved Service Awards and Attorneys' Fees and Expenses.  This represents a fair and reasonable result under any circumstances, but particularly so in light of the Ninth Circuit's rulings under which many Class Members must arbitrate their claims against Uber.[2]

This litigation involved, *inter alia*, extensive motion practice concerning enforceability of arbitration provisions, including class action waivers, which Uber inserted into its written agreements with drivers.  This Court held that the arbitration provisions were unconscionable and unenforceable, which resulted in a number of appeals and a ruling from the Ninth Circuit reversing this Court's arbitration ruling and holding those arbitration provisions enforceable.  The primary terms of the Settlement were negotiated after this Court's arbitration ruling, but before the Ninth Circuit's reversal, and involve differing payments to Class Members depending on whether they are subject to the arbitration agreements, including the class action waiver.

The proposed Settlement is the product of hard-fought litigation, followed by extensive arms-length negotiations by experienced and informed counsel, and two separate, in-person mediation sessions with a respected mediator, Mark S. Rudy, Esq. of Rudy, Exelrod, Zieff & Lowe, LLP. Plaintiffs believe that the claims have merit, but recognize the expense and length of continued

---

[1]     Unless otherwise defined, capitalized terms herein shall have the same meaning as defined in the Settlement Agreement, Section II, "Definitions."

[2]     This Settlement does not resolve Plaintiffs claims against Defendant, Hirease, LLC.

proceedings necessary to prosecute the claims through trial, appeal, and ancillary actions.  The terms of the Settlement are reasonable given the complex issues of law and fact in this case — including the enforceability of arbitration agreements, the applicability of FCRA's "general" employment provision, questions of standing, determination of employee status, and questions of willfulness — the determination of which have been and will continue to be lengthy, complicated, and costly.  The terms of the Settlement easily meet the "fair, reasonable, and adequate" requirements for preliminary approval.  Fed. R. Civ. P. 23(e)(2).

## II.   **BACKGROUND**

### A.   **Procedural Background**

Plaintiff Mohamed filed a putative class action complaint against Uber and Hirease, LLC ("Hirease") on November 24, 2014, asserting claims based on alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.1 *et seq.*, the Massachusetts Consumer Credit Reporting Act ("MCRA") M.G.L. c. 93 § 50 *et seq.*, and Massachusetts Criminal Offender Record Information ("CORI") Requirements, M.G.L. c. 6 § 171A *et seq.*  (*Mohamed v. Uber Techs., Inc.*, No. 3:14-cv-05200-EMC (N.D. Cal) ("*Mohamed*"), Dkt. 1, Compl. ¶¶ 66-91.)

Two days later, Plaintiff Gillette filed another putative class action complaint against Uber Technologies, Inc., and an amended complaint on December 15, 2014, asserting class claims based on alleged violations of FCRA and individual claims based on alleged violations of the California Investigative Consumer Reporting Agencies Act ("ICRAA"), Cal. Civ. Code § 1786 *et seq.*  (*Gillette v. Uber Techs., Inc.*, No. 3:14-cv-05241-EMC (N.D. Cal.) ("*Gillette*"), Dkt. 1, 7, Am. Compl. ¶ 1.)  In his complaint, Plaintiff Gillette also sought civil penalties pursuant to PAGA, Cal. Labor Code § 2698 *et seq.*, based on alleged violations of the California Labor Code.

In January and February 2015, Uber filed motions to compel arbitration, asserting that Gillette was bound by the arbitration provisions contained within the 2013 Software License & Online Services Agreement and that Mohamed was bound by the arbitration provisions contained within the 2014 Software License & Online Services Agreement.  (*Mohamed*, Dkt. 28; *Gillette*, Dkt. 16.)  Hirease joined in the motion to compel arbitration filed in *Mohamed*, Plaintiffs Gillette and Mohamed filed a

2

1    consolidated opposition brief, and Uber Technologies, Inc. and Rasier filed a consolidated reply.

2    (*Mohamed*, Dkt. 37, 40; *Gillette*, Dkt. 22, 23.)

3          On June 9, 2015, the Court entered an order denying the motions to compel arbitration, along

4    with Hirease's joinder.  (*Mohamed*, Dkt. 70; *Gillette*, Dkt. 48.)  Uber appealed the District Court's

5    decision denying the motions to compel arbitration.  (The "Enforceability Appeals," 9th Cir. Case Nos.

6    15-16178, 15-16181; *Mohamed*, Dkt. 77; *Gillette*, Dkt. 49.)  Hirease also appealed the District Court's

7    decision denying its joinder in the motion to compel arbitration in *Mohamed*.  (9th Cir. Case No. 15-

8    16250.)

9          On June 19, 2015, Uber filed motions in this Court to stay the *Mohamed* and *Gillette* matters

10   pending resolution of the Enforceability Appeals.  (*Mohamed*, Dkt. 76; *Gillette*, Dkt. 54.)  The Court

11   denied the motion to stay *Gillette*, and granted in part and denied in part the motion to stay *Mohamed*.

12   (*Mohamed*, Dkt. 93; *Gillette*, Dkt. 66.)

13         On June 29, 2015, a plaintiff named Michael Nokchan filed a third putative class action against

14   Uber, captioned *Nokchan v. Uber Techs., Inc.*, Case No. 15-cv-03009-EMC (N.D. Cal.) ("*Nokchan*"),

15   asserting claims under FCRA, CCRAA, and ICRAA.  On October 1, 2015, the Court issued a minute

16   order consolidating *Mohamed*, *Gillette*, and *Nokchan* into a single district court action entitled *In re*

17   *Uber FCRA Litigation*, Case No. 3:14-cv-05200-EMC ("*In re Uber FCRA Litig.*").  And on September

18   17 and October 14, 2015, the Ninth Circuit consolidated the Enforceability Appeals.  (9th Cir. Case

19   No. 15-16178, Dkts. 21, 26.)

20         Plaintiffs filed their first Master Consolidated Complaint on October 15, 2015.  (*In re Uber*

21   *FCRA Litig.*, Dkt. 109.)  And on October 22, 2015, the Court appointed the law firms of Ahdoot &

22   Wolfson, P.C. and Goldstein, Borgen, Dardarian & Ho as Interim Co-Lead Class Counsel.  (*In re Uber*

23   *FCRA Litig.*, Dkt. 111.)

24         On December 10, 2015, Uber promulgated revised versions of its Licensing Agreement and

25   Rasier Agreement (the "December 2015 Arbitration Agreement") to drivers who use the Uber software

26   application.  In response, Plaintiffs filed a Motion To Enjoin Uber's Communications with Putative

27   Class Members and Enforcement of Uber's December 2015 Arbitration Agreement (the "Rule 23(d)

28   Motion"), on December 15, 2015.  (*In re Uber FCRA Litig.*, Dkts. 127-28.)  On December 23, 2015

3

1  and January 19, 2016, the Court entered orders granting in part and denying in part Plaintiffs' Rule

2  23(d) Motion.  (*In re FCRA Litig.*, Dkts. 137, 156 (collectively, the "Rule 23(d) Rulings").)  Uber and

3  Plaintiffs filed notices of cross-appeal regarding the Rule 23(d) Rulings on December 28, 2015,

4  January 8, 2016, and January 20, 2016.  (*In re Uber FCRA Litig.*, Dkts. 139, 151, 157; Ninth Circuit

5  Case Nos. 15-17533, 16-15035.)  On January 27, 2016, the Ninth Circuit consolidated the parties'

6  cross-appeals arising out of the Rule 23(d) Rulings (the "Rule 23(d) Appeal").  (9th Cir. Case No. 15-

7  16178, Dkt. 59; No. 15-17533, Dkt. 15.)

8       Plaintiffs filed the operative, Amended Master Consolidated Complaint on April 13, 2016.  (*In*

9  *re Uber FCRA Litig.*, Dkt. 171.)  The parties completed their briefing in the Rule 23(d) Appeal on

10  April 14, 2016.  (9th Cir. Case No. 15-17533, Dkt. 16, 21, 41, 47.)

11       On June 1, 2016, the parties filed a Rule 23(d) Stipulation and Proposed Order, which notified

12  this Court of this Settlement and, if granted, would have vacated the Rule 23(d) Rulings.  (*In re Uber*

13  *FCRA Litig.*, Dkt. 175.)  However, on June 10, 2016, the Court entered an order denying the Rule

14  23(d) Stipulation, stating that the Court was not then "inclined to vacate the Rule 23(d) orders until

15  final approval of the settlement in the instant case or the [related] *O'Connor/Yucesoy* cases[3] have been

16  issued."  (*In re Uber FCRA Litig.*, Dkt. 177.)

17       The parties completed briefing in the Enforceability Appeals on April 1, 2016 and, on June 16,

18  2016, the Ninth Circuit heard oral argument.  (9th Cir. No. 15-16178, Dkt. 27, 45, 61, 76, 82, 110.)  On

19  September 7, the Ninth Circuit issued its opinion and reversed, in relevant part, this Court's orders

20  denying the motions to compel arbitration.  (9th Cir. No. 15-16178, Dkt. 127-1.)

21       Plaintiffs filed a Petition for Rehearing *En Banc* with the Ninth Circuit with respect to the

22  Enforceability Appeals, which Uber opposed.  (9th Cir. No. 15-16178, Dkt. 128, 134.)  On December

23  21, 2016, the Ninth Circuit denied Plaintiffs' Petition for Rehearing En Banc and, on December 29,

24  issued its mandate with respect to the Enforceability Appeals.  (9th Cir. No. 15-16178, Dkt. 138; *In re*

25  *Uber FCRA Litig.* Dkt. 203.)

26

27  [3]     *O'Connor v. Uber Techs., Inc.*, No. 13-cv-3826-EMC (N.D. Cal.) (hereinafter "*O'Connor*"),
    and *Yucesoy v. Uber Techs., Inc.*, No. 15-cv-262-EMC (N.D. Cal.) (hereinafter "*Yucesoy*").

28

**B.     Discovery**

The parties engaged in discovery that enabled them to evaluate the strengths and weaknesses of their respective positions.  Both parties produced initial and supplemental disclosures.  Additionally, the Parties conducted significant written discovery.  Plaintiffs combined to propound fifty-two (52) requests for production of documents and thirteen (13) interrogatories germane to arbitration issues and Uber's background check policies and practices.  In response, Uber produced verified responses and 3,986 pages of documents.  Uber propounded one hundred fifty-eight (158) requests for production of documents and sixty-one (61) interrogatories on Plaintiffs.  In response, Plaintiffs produced verified responses and hundreds of pages of documents.  Uber also served subpoenas to produce documents on credit reporting agencies Hirease and Checkr, as well as a number of third-party limousine and taxi companies that previously employed Plaintiffs Gillette and Mohamed.  Information was also exchanged informally throughout the parties' protracted settlement negotiations.  Neither party conducted any depositions.  (Declaration of Tina Wolfson, filed concurrently herewith ("Wolfson Decl.") ¶¶ 3-8.)

In addition to the formal and informal discovery discussed above, Plaintiffs conducted a thorough examination, investigation, and evaluation of the relevant law and facts to assess the merits of Plaintiffs' claims and potential claims to determine their strength and potential defenses.  This included an extensive investigation into the facts and law relating to the matters alleged in Plaintiffs' complaints, including (i) the size and composition of the putative class; (ii) Uber's record-keeping systems; and (iii) how and where Uber used its background check disclosure forms that, Plaintiffs allege, violated FCRA and state law.  This investigation included numerous interviews of witnesses, drivers, and putative class members, the evaluation of documents and information related to other litigation against Uber, as well as extensive factual and legal research as to arbitration issues relating to this Action, and the sufficiency of the claims and appropriateness of class certification.  (Wolfson Decl. ¶¶ 9-11.)

**C.     Mediation**

The Settlement Agreement was reached as a result of extensive arms' length negotiations between the parties, occurring over the course of a number of months and two separate, in-person

mediation sessions with a respected mediator, Mark S. Rudy, Esq. of Rudy, Exelrod, Zieff & Lowe, LLP.  (*Id.* at ¶ 12.)  Following each of these mediation sessions, the parties continued to engage in months-long extensive settlement discussions through the mediator, and amongst themselves, until a settlement-in-principle was reached.  (*Id.* at ¶ 13.)  That settlement-in-principle was reached shortly before the parties filed their Rule 23(d) Stipulation and Proposed Order on June 1, 2016.  (Dkt. 175.)  Since that time, finalization of the Settlement has required much more negotiation between the parties. (Wolfson Decl. at ¶ 14.)

## D.   Summary of Plaintiffs' Claims

All Plaintiffs either worked, or applied to work, for Uber, and allege that they were denied employment or were terminated on the basis of information contained in background checks that Uber procured in violation of FCRA and related state laws.  (Dkt. 171 ¶¶ 30-55.)  Specifically, Plaintiffs allege that Uber failed to: (i) provide proper notice that complied with these laws regarding its intention to procure background check reports; (ii) obtain proper authorization from Plaintiffs and other Class Members allowing Uber to procure the background check reports; and (iii) provide required information and copies of the reports to Plaintiffs and other class members before taking adverse employment actions against them.  (*Id.* ¶¶ 74-106, 113-36.)  In sum, these allegations revolve around the forms, including emails and web pages, that Uber used to communicate with Plaintiffs and other Class Members concerning background checks and the employment decisions it made following or in reliance on those background checks.  Plaintiffs also advanced two claims under California's Private Attorneys General Act ("PAGA"), premised on violations of the California Labor Code that were not advanced in the related *O'Connor* action.  (*Id.* ¶¶ 137-49.)

## E.   Overview of the Settlement Agreement

### 1.   Consideration

In exchange for Plaintiffs' release of claims, Uber agrees to pay $7.5 million into a Settlement Fund ("Fund").  (Settlement ¶ 52.)  The Settlement Fund will be used to pay Class Members who submit timely Claim Forms, 75% of the PAGA Payment to the California Labor and Workforce Development Agency ("LWDA"), and Court-awarded Service Awards and Attorneys' Fees and Expenses.  (*Id.* ¶ 57.)  Payments to Class Members will be allotted according to a formula that pays

1   those who are not subject to arbitration agreements (the "Court Group") approximately twice the

2   amount paid to those who are subject to arbitration agreements (the "ADR Group").  (*Id.* ¶¶ 62-63,

3   App. A.)[4]

4        All Class Members will be eligible for relief from the Fund.  In order to receive payment from

5   the Fund, Class Members will have to submit a Claim Form that is easy to understand and to complete.

6   It will be included with the Class Notice and made available on the Settlement Website, where it can

7   be completed and submitted (or, alternatively, Class Members can download or request a Claim Form

8   by phone and submit the Claim Form by mail, email or fax). (*Id.* ¶¶ 5, 62, 89, 91-94, 96 and Ex. C,

9   Claim Form.)  Under the terms of the agreement, Claimants may elect to be paid by mailed check,

10  PayPal, or by digital check (direct deposit).  (*Id.* Ex. C).  Class Members may also opt out through a

11  simple process of either sending a signed letter to the Settlement Administrator or by completing and

12  electronically submitting the opt-out form available on the Settlement Website.  (*Id.* ¶¶ 106-109).

13  Members of the Settlement Class who opt out of the Settlement will not release their claims pursuant

14  to this Stipulation of Settlement, with the exception that the settlement of any PAGA claim(s)

15  encompassed within Class Members' Released Claims will have *res judicata* effect on all Class

16  Members, irrespective of whether they opt out of the Settlement.  (*Id.*)  Court-awarded Attorneys' Fees

17  and Expenses and Service Awards and 75% of the PAGA payment to the LWDA will be deducted

18  from the Fund prior to distribution to Class Members who submit Claims.  (*Id.* ¶ 57.)  In addition to

19  and separate from the Fund, Uber will pay all Settlement Administration Expenses (but will be

20  reimbursed from the Fund in the event there is a Residual (*i.e.*, the Residual will exist only if Class

21

22  [4]      At the time the settlement-in-principle was reached, this Court had issued its ruling holding

23  Uber's arbitration provisions unenforceable, but the Ninth Circuit had not yet issued its rulings in the
    Enforceability Appeals on that issue.  (Wolfson Decl. ¶ 15.)  Accordingly, the Settlement Agreement

24  was crafted such that, in the event Plaintiffs prevailed in the Enforceability Appeals, the Settlement
    Fund would have been larger, and all Class Members would have been paid equal Settlement Shares.

25  (Dkt. 178, Ex. A, Memorandum of Understanding).  In light of the Ninth Circuit's ruling in the
    Enforceability Appeals, Settlement Shares paid to Class Members who are subject to the (now

26  enforceable) arbitration provisions, including the class waiver, will be less than such shares paid to
    Class members who are not subject to those arbitration provisions, who will receive the same amount

27  they would have received regardless of the outcome of the Enforceability Appeals.

28

Members who submit valid Claims do not cash their checks)).  (*Id.* ¶¶ 53(a), 64.)  Finally, Uber agrees not to return to using the background check forms that Plaintiffs allege violated FCRA.  (*Id.* ¶¶ 54-55.)

### 2.    Notice Program and Settlement Administration

The Settlement Agreement includes a direct notice program that will provide Class Members the best notice practicable of the Settlement Agreement, the Claim Form process and deadline, Class Members' opt-out and objection rights, Class Representative Service Award application, and Class Counsel's fee and cost application.  The notice program will be administered with the help of an independent Settlement Administrator, the Angeion Group, LLC ("Angeion"), and will consist of, *inter alia*, direct notice to all Class Members.  (*Id.* ¶ 68-73; Ex. H, Declaration of the Settlement Administrator (Steven Weisbrot) ("Weisbrot Decl.") ¶ 7.)

Within 18 days of the Court's entry of the Preliminary Approval Order, and to be completed not later than 45 days after entry of the Preliminary Approval Order, the Settlement Administrator will provide direct summary notice to Class Members *via* e-mail (*Id.* Ex. G, Summary Notice), as described in the Declaration of the Settlement Administrator (Steven Weisbrot of Angeion) attached to the Settlement Agreement as Exhibit "H." (*Id.* ¶ 70(d).)  Prior to the dissemination of the Summary Notice, the Settlement Administrator will establish a website at www.UberFCRASettlement.com.  The website will make available for review or download a long form detailed notice (*Id.* ¶ 70(b)) and other relevant documents, allow Class Members to submit claims or opt-out online, and provide other relevant information.  The Notice program meets with the Northern District's Procedural Guideline for Class Action Settlements ("N.D. Guideline").  Angeion estimates that the Settlement Administration Expenses will be $312,590.  (*Id.* Ex. H, Weisbrot Decl. ¶ 28.)

The Settlement Administrator will provide the notice required by Class Action Fairness Act ("CAFA") within the deadline provided in the statute.  (Settlement ¶ 66.)  Plaintiffs will provide notice of the Settlement to the LWDA.  (*Id.* ¶ 67.)

### 3.    The Settlement Class Contrasted with the Classes Described in the Complaint

The "Settlement Class" covered by the Settlement Agreement is defined as "all persons who

were subject to a background check and/or consumer report requested by Uber before January 3,

2015."[5]  (*Id.* ¶ 37.)  This simple definition covers everyone in the eight separate classes described in

the operative Complaint (Dkt. 171 ¶¶ 56-60), with the addition of a cut-off date that coincides with the

time when Uber changed its practices with respect to the background check procedures at issue.

(Wolfson Decl. ¶ 17.)

### 4.  Scope of the Released Claims

"Settlement Class Members' Released Claims" include, in sum, all claims:

> arising out of or relating to any allegations made in the Action, any legal theories that
> could have been raised based on the allegations in the Action, and all claims of any kind
> relating in any way to, or arising out of, background checks and/or consumer reports of
> any kind presented in the Action based on the facts alleged in the Complaint, including
> but not limited to claims under the Fair Credit Reporting Act ("FCRA"), California
> Consumer Reporting Agencies Act, California Investigative Consumer Reporting
> Agencies Act, California Private Attorney General Act ("PAGA") claims pursuant to
> Cal. Labor Code § 2699, based on alleged violations of California Labor Code §1024.5,
> California Business and Professions Code section 17200, and Massachusetts CORI
> related claims.  "Settlement Class Members' Released Claims" includes claims for
> actual, statutory, liquidated, punitive or any other form of damages, as well as for
> attorneys' fees and costs.  "Settlement Class Members' Released Claims" shall be
> construed as broadly as possible to affect complete finality over this Action.  Settlement
> Class Members' Released Claims do not include, and Settlement Class Members are not
> releasing, any PAGA claims that are not based on background checks and/or consumer
> reports.

(Settlement ¶ 41.)

Whereas the Amended Master Consolidated Complaint asserts claims under FCRA and

California and Massachusetts law, the proposed settlement releases all background check claims that

could have been asserted based on the allegations included in the Amended Master Consolidated

Complaint.  Releases of this nature are regularly approved by Courts.  *See, e.g.*, *Vega v. Weatherford*

*U.S., Ltd. P'ship*, No. 1:14-CV-01790-JLT, 2016 WL 7116731, at *3 (E.D. Cal. Dec. 7, 2016)

---

[5]      "Excluded from the Settlement Class are (i) all persons who are directors, officers, and agents
of Uber or its subsidiaries and affiliated companies or are designated by Uber as employees of Uber or
its subsidiaries and affiliated companies; (ii) persons who timely and properly exclude themselves
from the Settlement Class as provided in this Settlement Agreement; and (iii) the Court and Court
staff."  (Settlement ¶ 37.)

(releasing "all claims pled in this Lawsuit or could have been pled in this Lawsuit" based on the factual allegations in the complaint).  Moreover, Class Members are releasing only claims arising out of or relating to this "Action," and claims that could have been raised based on the allegations in the Action, not claims asserted in other, different-but-related actions such as *O'Connor* and *Yucesoy*.  Specifically, other than PAGA claims pursuant to Cal. Labor Code § 2699, based on alleged violations of Cal. Labor Code §1024.5, the proposed Settlement does not release PAGA claims.  (Settlement ¶ 41.)[6]

In the event the Court awards the named Plaintiffs a Service Award of any amount, these individuals would execute a general release of all claims ("Plaintiffs' General Released Claims"), whether related or unrelated to this Action (this release is broader than the Settlement Class Members' Released Claims).  (*Id.* ¶ 23 and Ex. I, Plaintiffs' General Release.)

### 5.   Attorneys' Fees and Expenses

The Settlement Agreement provides that Class Counsel may apply to the Court for an award of their fees and expenses, but there is no "clear-sailing" provision and Uber does not agree to any particular amount that Plaintiffs may request.  (*Id.* ¶¶ 75-78.)

In advance of the Court's final approval hearing, and in plenty of time for any objector to lodge any objections to such requests, and in light of the extensive litigation in this matter, Class Counsel will move the Court for an award of attorneys' fees equaling to one-third (1/3) of the total Settlement Fund[7] (*i.e.* $2,500,000) plus expenses in the approximate amount of $47,512.18.  (Wolfson Decl.

---

[6]   On March 10, 2017, the *Price* Court held a PAGA settlement approval hearing, but declined to enter a final order regarding the *Price* parties' joint motion for PAGA settlement approval.  The *Price* Court ordered that supplemental briefing pertaining to the *Price* parties' joint motion for PAGA settlement approval be submitted on or before March 24, 2017, and set a further PAGA settlement approval hearing for May 2, 2017.

[7]   "The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases," and "courts cannot rationally apply any particular percentage … without reference to all the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) (internal quotation and citation omitted).  Among the circumstances the Ninth Circuit has considered relevant are: (1) the results achieved; (2) the riskiness of prosecuting the litigation; and (3) the financial burden carried by Class Counsel in prosecuting the case on a contingency basis. *Id*. at 1048-50.  Courts have also considered extensive litigation by litigants as a factor.  Here, each of these factors supports approval of the requested attorneys' fees. *See, e.g., Deaver v. Compass Bank*, Case No. 13-cv-222-JSC, 2015 WL 8526982, at *11 (N.D. Cal. Dec. 11, 2015) (awarding 33.33% of the common fund where class counsel had litigated "multiple motions to remand, dismiss and transfer, as well as a Ninth

¶¶ 29-30; Declaration of Laura Ho, filed concurrently herewith ("Ho Decl.") ¶ 14).)  The attorneys'

fees are supported by a total current lodestar that is approximately $2,793,768.20 (representing a

negative multiplier of .895).  (Wolfson Decl. ¶¶ 22-23; Ho Decl. ¶¶ 9-10).)  *See, e.g.*, *Vizcaino v.*

*Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (applying a lodestar multiplier of 3.65 and

noting that the majority of cases apply a multiplier between 1.0 and 3.0); *see also In Re: Volkswagen*

*"Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*, Case No. 3:15- md-2672

CRB (JSC), 2017 WL 1047834, at *5-6 (N.D. Cal. Mar. 17, 2017) (approving a multiplier of 2.63,

quoting *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the

3-4 range are common in lodestar awards for lengthy and complex class action litigation.")).  The

Class Notice will inform Class Members of the amount of attorneys' fees that Class Counsel intends to

seek.  (Settlement, Ex. E, Long Form Notice.)

### 6.   Named Plaintiff Service Awards

The named Plaintiffs will apply for Service Awards in order to compensate them for the time

and effort they expended in appearing and pursuing this action, responding to discovery, assisting

Interim Lead Counsel, and for executing a broader general release than other Class Members.[8]  (*Id.*

---

Circuit Appeal," prior to settlement); *Bennett v. SimplexGrinnell LP*, No. 11-cv-1854-JST, ECF No. 278, at 11 (N.D. Cal. Sept. 3, 2015) (awarding 38.8% of $4.9 million settlement in prevailing wage case); *Lee v. JPMorgan Chase & Co.*, Case No. 13-cv-511-JLS, 2015 WL 12711659, at *8-9 (C.D. Cal. Apr. 28, 2015) (awarding 33% of $2.4 million settlement in misclassification case); *Boyd v. Bank of Am.*, No. 13-cv-561-DOC, 2014 WL 6473804, at *10-11 (C.D. Cal. Nov. 18, 2014) (33% of $5.8 million settlement in misclassification case); *Burden v. SelectQuote Ins. Servs.*, Case No. 10-cv-5966-LB, 2013 WL 3988771, at *5 (N.D. Cal. Aug. 2, 2013) (33% of the common fund where Class Counsel obtained a settlement "after significant motions practice"); *Franco v. Ruiz Food Prods., Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801, at *25 (E.D. Cal. Nov. 27, 2012) (33% of common fund); *Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575, at *11 (E.D. Cal. Oct. 31, 2012) (33% of the common fund); *Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645, at *8 (N.D. Cal. Aug. 9, 2010) (awarding one-third of $4.5 million settlement in employee expense reimbursement case); *Fernandez v. Victoria's Secret Stores, LLC*, No. CV 06-04149 MMM, 2008 WL 8150856, at *16 (C.D. Cal. July 21, 2008) (34% of $8.5 million common fund); *Birch v. Office Depot, Inc.*, No. 06-cv-1690-DMS, ECF No. 48, ¶ 13 (S.D. Cal. Sept. 28, 2007) (40% of $16 million common fund).

[8]    Each named Plaintiff's General Release, which is broader than other Class Members' release (*see* Settlement, Ex. I), is conditioned on the Court's approval of a Service Award to that Plaintiff in an amount equal to or greater than one cent.  (*Id.* ¶ 72.)

¶ 74.)  If the Court does not grant a Service Award to a named Plaintiff, then he or she is entitled only to the amounts as other Class Members, and that Plaintiff will not be bound by the Plaintiffs' General Release Form.  (*Id.*)  Uber does not agree to the amount of the Service Awards or that they are warranted.

In this case, named Plaintiffs intend to request Service Awards in the amount of $7,500 for Class Representatives Gillette and Mohammed and $5,000 for Christenson, Farmer, and Wise, for a total of $30,000.  (*Id.* Ex. E.)  Other than the named Plaintiffs' General Release (which as explained above is broader than other Settlement Class Members' Release), no aspect of the Settlement is conditioned on the Court's award of any such Service Award.

### 7.    Opt-Out and Objection Procedures

Class Members can submit objections to any aspect of the Settlement Agreement by filing them through the Court's ECF system, mailing them to the Class Action Clerk for the Northern District, or by filing them in person at any location of the Northern District of California Court.  (*Id.* ¶ 104.)  They must be submitted by the deadline provided in the Court's Preliminary Approval Order, and only Class Members who do not Opt-Out may file objections.  (*Id.*)

Alternatively, Class Members can opt out of the Settlement, in which case they will not release any claims through this process.  Opting out can be accomplished directly through the Settlement Website, or by mail to the Settlement Administrator.  (*Id.* ¶ 106.)  Again, the Court will set the deadline for opt-outs in its Preliminary Approval Order, and Plaintiffs propose deadlines for opting out and submitting objections in the concurrently filed [Proposed] Order (45-days after the deadline for the Settlement Administrator to complete Notice).

Class Members must opt out of the Settlement Class individually.  So-called "mass" or "class" opt outs will not be allowed.  (*Id.* ¶ 108.)  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998) ("The right to participate, or to opt-out, is an individual one and should not be made by the class representative or the class counsel.")  Class Members who opt out may not file an objection to the Settlement.  (Settlement ¶ 109.)  Both the opt-out and objection procedure set forth in the Settlement Agreement comply with the N.D. Guidelines.

**8.**     **Separate Payment of Administrative Expenses & Residual**

Uber agrees to pay all Settlement Administration Expenses directly to the Settlement Administrator, and such expenses will *not* come out of the Settlement Fund.  (*Id.* ¶¶ 50-51.)  The Settlement Adminsitrator estimates that such expenses will be $312,590.  (*Id.* Ex. H, Weisbrot Decl.)

In the event that the entire Settlement Fund is not paid to Class Members (*i.e.* in the event Class Members do not negotiate their settlement checks within 90 days of issuance), any remaining amounts will "waterfall" first, to payment of Settlement Administration Expenses and, in the event it is not yet depleted after payment of Settlement Administration Expenses, then any remaining amounts would be awarded as a *cy pres* award to Legal Services for Prisoners with Children, a non-profit organization that conducts policy work and impact litigation on behalf of people who are frequently denied employment based on the now ubiquitous practice of procuring of background checks for job applicants.  (Settlement ¶ 64-65; *see generally* Declaration of Dorsey E. Nunn, filed concurrently herewith).  Among other projects, Legal Services for Prisoners with Children has been at the forefront of the "Ban the Box" movement, which seeks the removal of questions regarding arrests and criminal convictions from applications for employment, housing, public benefits, and other services that are critical to persons who are attempting to renter society after being released from prison.  (*Id.*)

**9.**     **Consent Order**

As part of the Settlement, named Plaintiffs have agreed to submit to the Court for its consideration a Stipulated Consent Order (Settlement ¶ 56, Ex. J.)   During the pendency of this litigation, Plaintiffs diligently investigated Defendants' compliance with FCRA, including but not limited to reviewing and analyzing: (i) almost four thousand pages of documents produced by Defendants in formal discovery propounded by Plaintiffs to Defendants prior to mediation; (ii) detailed pre-mediation disclosures submitted by Defendants to Plaintiffs prior to and during mediation; (iii) detailed documents and information produced to Plaintiffs by Defendants' former background report vendor, Defendant Hirease, prior to and during mediation (including documents produced by Defendants to Plaintiffs that Defendants had obtained from Defendant Hirease pursuant to Defendants' subpoena to Defendant Hirease); and (iv) post-settlement confirmatory discovery regarding Defendants' Background Check Disclosures and Procedures ((i)-(iv) collectively the "Investigation").

13

1   (Wolfson  Decl. ¶ 18.)

2        Plaintiffs have agreed to entry of the Joint Stipulation and Consent Order based on

3   confirmatory discovery that Defendants provided to Plaintiffs concerning Defendants': (i) disclosures

4   to prospective and existing driver partners regarding the fact that Defendants conduct background

5   checks on prospective and existing driver partners, and (ii) "pre-adverse action" policies and

6   procedures.  (*Id.* ¶ 19.)  In the event the Court declines to enter the Consent Order, such a refusal is not

7   a material modification, and it does not trigger a right by Uber to terminate the Settlement.  (Settlement

8   ¶ 118.)

9   ### III.   LEGAL ANALYSIS

10       Courts have developed a three-step procedure for approval of class action settlements under

11  Federal Rule of Civil Procedure 23:

12
13      (1)    Certification of a settlement class and preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval.

14
15      (2)    Dissemination of notice of the proposed settlement to the affected class members.

16
17      (3)    A formal fairness hearing, or final settlement approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement are presented.

18

19  *See* Manual for Complex Litigation (Fourth), § 21.63 *et seq*. (2004).  This procedure safeguards class

20  members' procedural due process rights and enables the Court to guard the class's interests.  *See* 4

21  Newberg on Class Actions, § 11.22 *et seq*. (4th ed. 2002) ("Newberg").

22       With this motion, Plaintiffs respectfully request that the Court take the first step in this process

23  by granting provisional certification of the Settlement Class and preliminary approval of the proposed

24  Settlement; appointing a Settlement Administrator; directing that notice be disseminated to Class

25  Members; and issuing the related relief requested herein.

26  ### A.   The Settlement Class Merits Certification.

27       The Settlement Class may be certified under Federal Rules of Civil Procedure 23(a) and (b)(3).

28

1

**1.** **Rule 23(a) Is Satisfied.**

2

**a.** **The Classes Are Too Numerous to Permit Joinder.**

3

There are a total of ~~REDACTED~~ Class Members.  (Settlement ¶ 70.)  Because "the class is so

4

numerous that joinder of all members is impracticable," Rule 23(a)(1) is satisfied.  Fed. R. Civ. P.

5

23(a)(1); *see also, e.g.*, *Jordan v. Cty. of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on*

6

*other grounds*, 459 U.S. 810 (1982) (certifying class with 39 members).

7

**b.** **Common Questions Are Presented.**

8

Common questions not only are presented in this action, but predominate.  The key common

9

questions are whether Uber's background check and disclosure forms (including the web pages and

10

emails it used when communicating with Plaintiffs and other Class Members concerning background

11

checks and its employment decisions following and based on those background checks) violated

12

FCRA and related state law.  All Class Members suffered the same alleged injuries — violation of

13

statutorily guaranteed rights concerning Uber's use of background checks in its hiring and firing

14

processes — and, thus, the commonality requirement of Rule 23(a)(2) is easily satisfied.  *Vaquero v.*

15

*Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1153-54 (9th Cir. 2016).

16

**c.** **The Named Plaintiffs' Claims Are Typical.**

17

Rule 23(a)(3) requires that "the claims and defenses of the representative parties are typical of

18

the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality does not require total identity

19

between representative plaintiffs and class members.  *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir.

20

2001).  Rather, typicality is satisfied so long as the named plaintiffs' claims stem "from the same

21

event, practice, or course of conduct that forms the basis of the class claims, and is based upon the

22

same legal theory."  *Jordan*, 669 F.2d at 1322; *In re Juniper Networks Sec. Litig.*, 264 F.R.D. 584, 589

23

(N.D. Cal. 2009) ("representative claims are 'typical' if they are reasonably co-extensive with those of

24

absent class members") (citation omitted).

25

This typicality requirement is satisfied here because all named Plaintiffs either applied to work

26

for Uber, or worked for Uber, and allege that Uber procured and relied upon background check reports

27

in violation of FCRA.  (Dkt. 171 ¶¶ 30-55.)

28

**d.**   **The Named Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class Members.**

Rule 23(a)(4) requires that the representative plaintiffs will "fairly and adequately" protect the interests of the class.  The two-prong test for determining adequacy is: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members?; and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1020.  Both prongs are satisfied here.

First, the named Plaintiffs have the same interest as all Class Members in obtaining redress for the same claims.  *See Hanlon*, 150 F.3d at 1021 (adequacy satisfied where "each…plaintiff has the same problem").  There is no "intraclass conflict" such as issues that may arise "when class members who cannot claim money from a settlement fund are represented by class members who can." *In re Target Corp. Customer Data Security Breach Litig.*, 847 F.3d 608, 613 (8th Cir. 2017).  Second, proposed Class Counsel, whom this Court previously appointed Interim Lead Class counsel, have extensive experience litigating and settling class actions, including consumer cases.  (Dkt. 111.) Throughout this litigation and their practice in general, they have demonstrated expertise and they have vigorously fought on behalf of all Class Members, before this Court and before the Ninth Circuit. (Wolfson Decl. ¶¶ 3-21; Ho Decl. ¶ 2.)

**2.**   **Rule 23(b)(3) Is Satisfied.**

In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must be satisfied.  Here, Rule 23(b)(3) is satisfied.  That rule allows certification of a class if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  As mentioned above, common issues predominate here, where all of the claims to be released concern Class Members' statutory rights regarding Uber's use of background checks in its hiring and firing processes.

Moreover, if the proposed Settlement Agreement is approved, there will be no need for a trial, and thus manageability of the classes for trial need not be considered.  *Amchem Prods. V. Windsor*,

521 U.S. 591, 620 (1997).  A class settlement is superior to other methods of litigation where, as here, class treatment will promote greater efficiency and no realistic alternative exists.  *See Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001); *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 448 (N.D. Cal. 2008).  Individual prosecution of the claims in these cases is impractical and, with respect to the ADR Group, may well require individual arbitrations.  *See, e.g.*, *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 486 (C.D. Cal. 2012) ("superiority requirement is met '[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis.'") (quoting *Wolin v. Jaguar Land Rover North Am.*, *LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)).

## B.    The Settlement Merits Preliminary Approval

"The claims . . . of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions, and proof."  *Hanlon*, 150 F.3d at 1026.

> This inquiry: requires the district court to balance a number of factors: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a government participant; and the reaction of the class members to the proposed settlement.  *Hanlon*, 150 F.3d at 1026; *see also Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  "In determining whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is plaintiffs' expected recovery balanced against the value of the settlement offer."  *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (internal quotation omitted); *see also* Procedural Guidance for Class Action Settlements, United States District Court, Northern District Of California, *available at* http://cand.uscourts.gov/ClassActionSettlementGuidance.  While it is not necessarily unusual or improper for a class action settlement agreement to release claims not originally brought by the plaintiff, the court must consider the strength and value of those claims in deciding whether to approve the settlement.  *See Cotter*, 176 F. Supp. 3d at 937.
>
> "[W]hether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012). However, "when . . . the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness.'"  *Id.*; *see also Hanlon*, 150 F.3d at 1026

("settlement approval that takes place prior to formal class certification requires a higher standard of fairness [because t]he dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court[-]designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e)"). This more "exacting review" is warranted "to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Lane*, 696 F.3d at 819 (internal quotation omitted).

*O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1121 (N.D. Cal. 2016).

## 1. The Settlement Falls Within the Range of Reasonableness for Preliminary Approval.

To determine whether the a proposed class action settlement falls within the range of reasonableness, the Court must balance a number of factors, including the following:

(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

*Harris v. Vector Marketing Corp.*, Case No. 08-cv-5198-EMC, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011) (citing *Churchill Village*, 361 F.3d at 575; *Hanlon*, 150 F.3d at 1026). In assessing the strength of Plaintiff's case, courts determine the likelihood of success on the merits and the range of possible recoveries. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.,* No. 8:10-ml-02151 JVS (FMOx), 2013 WL 3224585, at *7 (C.D. Cal. June 17, 2013). Courts, however, should not attempt to "reach any ultimate conclusions on the contested issues of fact and law," nor should the settlement be "judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice v. Civil Serv. Com'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). "Ultimately, the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Id.* (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 468 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)).

**a.    The Strength of Plaintiffs' Case Balanced Against the Substantial Risks of Prevailing on the Merits and Maintaining Class Certification Favor Preliminary Approval.**

**i.    Absent Settlement, Many Settlement Class Members Would Likely Be Required to Arbitrate Their Claims on an Individual Basis.**

The impressive nature of the proposed Settlement comes into even sharper focus when other risks of continued litigation are considered.  Plaintiffs are cognizant of the jurisdictional questions present in this case.  First, Uber has indicated that, should this case proceed without settlement, it intends to seek to dismiss the claims of the Plaintiffs Gillette and Mohamed (the ADR Group), both of whom Uber contends are bound by arbitration agreements.  In light of the Ninth Circuit's ruling on the Enforceability Appeals, absent a class settlement now, all Class Members who fall into the ADR Group would be forced to arbitrate their claims on an individual basis, at least through the gateway issue of arbitrability, if not *in toto*.  (Dkt. 203 at 7.)  Because the arbitration agreements purport to waive Class Members' rights to participate in any class action, members of the ADR Group would likely not be able to benefit from *any* class action settlement, regardless of its terms.  (Dkt. 70 at 8 (describing class waivers).)  Accordingly, a large portion of the Settlement Class faces the significant risk of recovering nothing from this case due to the requirement that they arbitrate their claims on an individual basis.

**ii.    Plaintiffs Face Risks on the Merits of Their FCRA Claims.**

On the merits, Plaintiffs also recognize the risk posed by the unsettled issue of employment status.  The provisions of FCRA and similar state law invoked by Plaintiffs here pertain to background checks performed for "employment purposes."  15 U.S.C. § 1681b(b)(2)(A) (cited in Dkt. 171 at ¶¶ 75, 85); 15 U.S.C. § 1681b(b)(3)(A) (cited in Dkt. 171 at ¶¶ 92, 102); Cal. Civ. Code § 1785.20.5 (cited in Dkt. 171 at ¶ 114).  Courts have split on whether FCRA's disclosure requirements are limited to employees or rather apply more broadly to include non-employees such as independent contractors. *Compare Johnson v. Sherwin-Williams Co.*, 152 F. Supp. 3d 1021, 1025-27 (N.D. Ohio 2015) (FCRA inapplicable to subcontractor screening) and *Lamson v. EMS Energy Mktg. Serv.*, 868 F. Supp. 2d 804, 817-18 (E.D. Wis. 2012) (same) with *Ernst v. Dish Network, LLC*, 49 F. Supp. 3d 377, 385 (S.D.N.Y. 2014) (rejecting *Lamson* and concluding that consumer report obtained by defendant for third-party

contractor was for "employment purposes"); *see also Hoke v. Retail Credit Corp.*, 521 F.2d 1079, 1082 (4th Cir. 1975) (holding that a consumer report issued by a credit reporting agency to a state medical licensing board was provided "for employment purposes."); *Advanced Conservation Sys., Inc. v. Long Island Lighting Co.*, 113 F.3d 1229 (2d Cir. 1997) (holding that consumer reports used to vet contractors listed on a utility company's service directory were obtained for "employment purposes.").[9]

Should Defendants prevail in their interpretation of FCRA, Plaintiffs would be required to prove that Class Members are employees.  It is uncertain whether employment status for purposes of FCRA can be determinied on a nationwide basis or instead must be made under applicable state laws on a state-by-state basis. Plaintiffs believe that Uber drivers will ultimately be proven to be employees, and thus subject to FCRA's disclosure and authorization requirements.  Nonetheless, Plaintiffs acknowledge that there is significant risk particularly if Plaintiffs are required to demonstrate employment status under the laws of all states in which Class Members drove for Uber.[10]

---

[9]    The FTC, which implements, enforces, and interprets FCRA, has repeatedly expressed its view that the term "employment purposes," as used in FCRA, must be interpreted broadly to include independent contractors in order to effectuate the broad remedial purpose of FCRA.  In the FTC's commentary on interpretation of FCRA, it explained that "[a] report in connection with security clearances of a government contractor's employees would be for 'employment purposes' under this section" even though the government was not the direct employer of the contractor's employees. Statement of General Policy or Interpretation; Commentary on the Fair Credit Reporting Act, 55 FR 18804-01.  Moreover, in a 1998 advisory opinion, the FTC concluded that consumer reports obtained for hiring truck drivers were for "employment purposes" even though the truck drivers were independent contractors who owned and operated their own vehicles and equipment.  Advisory Op. to Allison, Fed. Trade Comm'n (Feb. 23, 1998).   Similarly, the FTC concluded that consumer reports intended to reduce embezzlement by independent contractors who "sell insurance, examine title, and close real property transactions" were obtained for "employment purposes."  Advisory Op. to Solomon, Fed. Trade Comm'n (Oct. 27, 1998)

[10]    On November 23, 2016, the Hon. Michael D. Marcus (Ret.) found—after a three-day arbitration followed by supplemental briefing and written argument—that a California Driver was an independent contractor and not an employee, in *Yosef Eisenberg v. Uber Technologies, Inc., et al.* (ADRS Case No. 15-6878-MDM).  There are also examples of decisions from administrative bodies across the country finding that drivers who used the Uber App were independent contractors.  Several of these decisions—including decisions from Arizona, Georgia, Florida, Kansas, Massachusetts, Minnesota and Nevada—found independent contractor status on a state-wide basis.  *See also Alatraqchi v. Uber Tech.*, *Inc., Labor Commissioner, State of California*, Case No. 11-42020 CT (2012) (upholding IC classification); *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1123

On the other hand, should Plaintiffs prevail in their interpretation of the FCRA, Uber will likely take the alternative position that it is regulated by state transportation safety regulations, and therefore the standalone disclosure requirement contained FCRA's "general" employment provision (15 U.S.C. § 1681b(b)(2)(A)) is inapplicable. *See* 15 U.S.C. § 1681b(b)(2)(C). This argument does not address Plaintiffs' claim that Uber's disclosure form failed to inform drivers that consumer reports were obtained for "employment purposes," which is also requirement of 15 U.S.C. § 1681b(b)(2)(B). Nonetheless, if Uber prevails in this argument, Plaintiffs' claims based on the stand-alone disclosure requirement could fail because no such requirement exists under 15 U.S.C. § 1681b(b)(2)(B). Plaintiffs would be required to defeat viable defenses regardless of whether FCRA's employment disclosure provision applies to independent contractors.

Furthermore, Plaintiffs must demonstrate that Uber's violation of FCRA was "willful" in order to recover statutory damages. *See* 15 U.S.C. § 1681n(a). Plaintiffs understand that Uber would assert a number of non-frivolous defenses to Plaintiffs' allegations of *willful* violation of FCRA, putting aside for a moment Uber's arguments that it always complied with FCRA. First, Uber would argue that because the employment status of its drivers has not yet been decided, it cannot have *willfully* failed to treat those drivers as employees such that FCRA's requirements would apply. Second, Uber would argue that, even if Plaintiffs ultimately prevailed in persuading the Court that FCRA's disclosure requirements apply, the split of authority on this issue, as discussed above, precludes a finding of willfulness. Uber could not have *willfully* violated FCRA, it contends, because at least two district courts have held that independent contractors are not subject to FCRA's disclosure requirements. *Johnson*, 152 F. Supp. 3d at 1027 (FCRA inapplicable to subcontractor screening); *Lamson*, 868 F. Supp. 2d at 818 (same). Third, Uber would argue that any non-compliance with respect to its FCRA disclosure form—for example, the inclusion of extraneous information such that the disclosure was not provided in a document that consists solely of the disclosure—was

---

(N.D. Cal. 2016) (with respect to the underlying driver misclassification claim, court acknowledged the risks faced by plaintiffs and stated that "the fundamental question of whether Uber drivers are employees or independent contractors is not a simple one").

unintentional and does not amount to a willful violation.  *See Goldberg v. Uber Techs., Inc.*, No. 14-cv-14264, 2015 WL 1530875, at *4 (D. Mass. Apr. 6, 2015) (granting Uber's motion to dismiss without leave to amend).  District courts have noted that *Safeco* hangs the determination of willfulness on whether the law was clearly established at the time of the alleged violation, and courts have found that the law regarding FCRA's disclosure provision, was too muddled to support such a finding.  *See Just v. Target Corp.*, 187 F. Supp. 3d 1064, 1069 (D. Minn. 2016); *Landrum v. Harris Cnty. Emergency Corps.*, 122 F. Supp. 3d 617, 625 (S.D. Tex. 2015); *Schoebel v. Am. Integrity Ins. Co.*, No. 15-cv-380, 2015 WL 3407895, at *7-10 (M.D. Fl. May 27, 2015).

Liability for negligent violations of FCRA, as opposed to willful violations, is limited to actual damages. 15 U.S.C. § 1681o(a).[11]  While Plaintiffs are confident that they can demonstrate such actual damages on a class-wide basis, proof through common evidence equally applicable to all Class Members would be hotly contested by Uber.  Thus, Uber's arguments concerning willfulness take aim not only at Class Members' potential recovery, but at certification and, indeed, at their ability to recover anything at all through continued class litigation on behalf of those entitled to participate.

Uber also has taken the position that its disclosures did comply with FCRA.[12]  And, where different Class Members received different disclosures—because Uber allegedly issued both formal and informal background check disclosures—Uber will argue that there are individual issues regarding the sufficiency of FCRA disclosures.  *See, e.g.*, *Reardon v. ClosetMaid Corp.*, No. 08-cv-1730, 2013

---

[11]     The same analysis applies to Plaintiffs' claims under state law.  *See, e.g.*, Cal. Civil Code § 1785.19).

[12]     *See, e.g.*, *Peikoff v. Paramount Pictures Corp.*, No. 15-cv-068-VC, 2015 U.S. Dist. LEXIS 63642, at *4 (N.D. Cal. Mar. 25, 2015) (granting motion to dismiss; "even if inclusion of the certification [of truthfulness] in Paramount's disclosure form did not comply with a strict reading of Section 1681b(b)(2)(A)'s requirement that the document consist solely of the disclosure and the authorization, it is not plausible that Paramount acted in reckless disregard of the requirement of the FCRA by using this language"); *Noori v. Vivint, Inc.*, No. 16-cv-5491-A, 2016 U.S. Dist. LEXIS 120963, at *14 (C.D. Cal. Sept. 6, 2016) (dismissing a complaint with prejudice on Rule 12 motion, holding that disclosure which included information on an applicant's rights under state fair credit reporting laws and ability to view a copy of such a report, did not violate FCRA's disclosure requirement); *Newton v. Bank of Am.*, No. 14-cv-3714-CBM-MRW, 2015 U.S. Dist. LEXIS 62930, at *20-22 (C.D. Cal. May 12, 2015) (explanation of background check, authorization statement, identifying information and other information related to the BGC did not violate FCRA).

WL 6231606, at *9 (W.D. Pa. Dec. 2, 2013) (finding, in summary judgment context, that plaintiffs who received two disclosure forms, one of which was compliant and one of which was not, could not prosecute disclosure claim); *Coleman v. Kohl's Dep't Stores, Inc.*, No. 15-cv-2588-JCS, 2015 WL 5782352, at *7 (N.D. Cal. Oct. 5, 2015) (no willful violation where separate forms were provided, at least one of which was compliant); *cf. In re: Google Inc. Gmail Litig.*, No. 13-md-2430-LHK, 2014 U.S. Dist. LEXIS 36957, at *72-73 (N.D. Cal. Mar. 18, 2014) (denying class certification in Electronic Communications Privacy Act case in part because the disclosures relevant to the fact-finder's determination of implied consent is not limited to disclosures by the defendant, but also include "the full panoply of disclosures, from the news media, from Google, and from other sources").

Plaintiffs also contend that Uber's pre-adverse notification procedures were not compliant with FCRA; however, Uber has indicated that it will pursue defenses that its notification procedures were, in fact, compliant. *See Goldberg,* 2015 WL 1530875, at *3 (holding that plaintiff as a matter of law received adequate notice under FCRA). Again, Plaintiffs face additional Rule 23 risks associated with the pre-adverse action notice. For example, there are outstanding issues regarding why any individual did not receive the notice if there is evidence one was sent (*Molina v. Roskam Baking Co.*, No. 09-cv-475, 2011 WL 5979087, at *6 (W.D. Mich. Nov. 29, 2011) (denying class certification)), why an individual did not dispute the report with the consumer reporting agency if notice was received (*Moore v. Rite Aid Hdqtrs Corp.*, 33 F. Supp. 3d 569, 576-77 (E.D. Pa. 2014) (establishing this is an element of the plaintiff's cause of action), and whether any delay in starting the assignment amounts to adverse action (*Javid v. SOS Int'l, Ltd.*, No. 12-cv-1218-JCC-TCB, 2013 WL 2286046, at *4-5 (E.D. Va. May 23, 2013) (granting summary judgment). And Plaintiffs assume some risk in demonstrating that Uber's notification procedures were willfully non-compliant. *See Rodriguez v. Equifax Info. Servs.*, LLC, No. 14-cv-1142-AJT-MSN, 2015 WL 4417285, at *6 (E.D. Va. July 17, 2015) (error in sending notice insufficient to establish willful FCRA violation).

### iii.   Plaintiffs Face Risks on the Merits of Their State Law Claims.

Plaintiffs' state law claims carry risk as well. To prevail on Plaintiffs' Massachusetts claims under M.G.L. c. 93 § 62, Plaintiffs would have to defeat a preemption defense. *See, e.g.*, *Goldberg*, 2015 WL 1530875, at *3 ("[T]he allegations of violations of the MCRAA stumble out of the gate

23

because FCRA preempts the relevant state law."); *see also* 15 U.S.C. § 1681t(b)(1)(C) (finding preemption on "any subject matter . . .  relating to the duties of a person who takes any adverse action with respect to a consumer").  And Uber intends to challenge Plaintiffs' claims pursuant to M.G.L. c. 6 § 171A based on a defense that the statute provides no private right of action.[13]

Plaintiffs' claims under Cal. Civil Code § 1785.1 and Cal. Labor Code §§ 2699, 1024.5 will be subject to Uber's defense that it never conducted a credit check on California Plaintiff Christensen. Finally, Plaintiffs' remedies under Cal. Bus. & Prof. Code § 17200 ("UCL") are limited to injunctive relief, and Uber may argue that the standing requirements could be interpreted as stricter than those of FCRA.  *See, e.g.*, *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150 (2003). Standing under the UCL is limited to those who have "suffered injury in fact and [have] lost money or property as a result of ... unfair competition."  *Yanting Zhang v. Super. Ct.*, 57 Cal. 4th 364, 372 (2013) ("Accordingly, to bring a UCL action, a private plaintiff must be able to show economic injury caused by unfair competition.").

Finally, Uber intends to attack Plaintiffs' damages theories by arguing that Plaintiffs did not suffer any actual harm (*Andrade v. Chase Home Fin., LLC*, No. 04-cv-8229, 2005 WL 3436400, at *6 (N.D. Ill. Dec. 12, 2005) (noting as "common sense" that evidence of actual damages is "potentially quite meaningful" for calculating the appropriate amount of statutory damages under FCRA)), or that actual damages cannot be certified (*Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 421 (N.D. Cal. 2014)), or that Plaintiffs can only recover one award of statutory damages—not damages for each claim or violation (*Stillmock v. Weis Mkts., Inc.*, 385 Fed. App'x 267, 273 (4th Cir. 2010)).  Plaintiffs dispute Uber's interpretation of the applicable case law, but Plaintiffs also see some risk in pursuing their claims and proving actual damages on a class-wide basis.

### iv.    Uber Intends to Challenge Plaintiffs' Standing.

Should this case proceed, Uber indicated that it would pursue dismissal for lack of standing. Plaintiffs contend that they have standing under the applicable authorities, and would vigorously

---

[13]    The Massachusetts claims also are vulnerable to the determination of employee or independent contractor status – a risk identified *supra*.

oppose such efforts.  Courts, however, are split on the issue of whether claims regarding disclosure violations of FCRA can establish concrete injury.[14]  *See, e.g.*, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-50 (2016); *Syed v. M-I, LLC*, Case No. 14-17186, 2017 U.S. App. LEXIS 4954, at *11 (9th Cir. Mar. 20, 2017).[15]  While Plaintiffs believe that they would ultimately prevail on this issue, they acknowledge that there is some risk that their claims could be dismissed for lack of standing.

### b.   The Amount Offered in Settlement Weighs in Favor of Preliminary Approval.

Given the above, a recovery of a substantial percentage of the likely award if this case had proceeded all the way through final judgment is an excellent recovery for the Settlement Class.  *See, e.g.*, *City of Detroit*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery") *abrogated on other grounds by Goldberger*, 209 F.3d 43; *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes. . . . The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotations and citations omitted); *Hanlon*, 150 F.3d at

---

[14]      *See also, In re Michaels Stores, Inc., FCRA Litig.*, Case Nos. 14-7563, 15-2547, 15-5504, 2017 U.S. Dist. LEXIS 9310, at *18-22 (D.N.J. Jan. 24, 2017) (dismissing section 1681b(b)(2) claim for lack of concrete injury) and *LeGrand v. Intellicorp Records, Inc.*, Case No. 15-cv-2091, 2017 U.S. Dist. LEXIS 26156, at *6-8 (N.D. Ohio Feb. 24, 2017) (granting motion to dismiss a 1681b(b)(2) claim for lack of injury and noting the "majority" of post-*Spokeo* courts to address stand-alone disclosure claims have found no standing); *but see Graham v. Pyramid Healthcare Solutions, Inc.*, No. 16-cv-1324, 2016 U.S. Dist. LEXIS 147985, at *5 (M.D. Fla. Oct. 26, 2016) (denying motion to dismiss and finding alleged violation of 1681b(b)(2) sufficient to confer standing after *Spokeo*). Courts have also so ruled for pre-adverse action notice claims, but there is more disagreement between trial courts on this point.  *See, e.g.,* *Lee v. Hertz Corp.*, No. 15-cv-4562-BLF, 2016 U.S. Dist. LEXIS 166911, at *21 (N.D. Cal. Dec. 2, 2016) (granting motion).

[15]      Uber may also argue that the question of Plaintiffs' subject matter jurisdiction also has Rule 23 implications.  *See e.g. Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) ("[N]o class may be certified that contains members lacking Article III standing"); *cf. also Britts v. Steven Van Lines, Inc.*, Case No. 15-cv-1267, 2017 WL 385738 (N.D. Ohio Jan. 27, 2017) (denying certification in TILA disclosure case and stating: "because the disclosures provided to each owner-operator, as well as their understanding of and access to required information may have varied significantly from operator to operator, common issues of fact and law do not predominate over the individual inquiries necessary to determine whether each class member, in fact, suffered a cognizable injury").

1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

The precise Settlement Share that Class Members will receive cannot be determined until all claims have been submitted.  As the claims rate increases, the Settlement Share will decrease, and vice versa.  For example, and for illustrative purposes only, the following table provides Settlement Share amounts at 5%, 10%, and 15% claims rates:

| Percentage of Claimants of Given Group | No. of ADR Group Claimants | No. of Court Group Claimants | Settlement Share Per Claimant – ADR Group | Settlement Share per Claimant – Court Group |
|---|---|---|---|---|
| 5% | REDACTED | REDACTED | $55.27 | $125.01 |
| 10% | REDACTED | REDACTED | $27.14 | $62.50 |
| 15% | REDACTED | REDACTED | $18.09 | $41.67 |

(Wolfson Decl. ¶ 20.) [16]

In any event, these figures represent a significant recovery when compared to the potential recovery that could be recovered through continued litigation (or, on behalf of members of the ADR Group, in individual arbitration).

The monetary recovery promised by the proposed Settlement, along with its non-monetary relief, compares favorably to other settlements in FCRA background check cases, particularly those that settled before certification or summary judgment briefing.  *See, e.g.*, *Brown v. Lowe's Cos., Inc.*, No. 13-cv-079-RLV-DSC, 2016 WL 6496447 & Dkt. 125-1 (W.D.N.C. Nov. 1, 2016) (granting final approval to FCRA background check settlement under which class members received $60 each); *Manuel v. Wells Fargo Bank, NA*, No. 14-cv-238-REP-DJN, 2016 WL 1070819, at *2 (E.D. Va. Mar. 15, 2016) (granting final approval to FCRA background check settlement where "each member of the Impermissible Use Class will receive a check for $35.00, and each Adverse Action Class member will receive a check for $75.00");  *Speer v. Whole Foods Mkt. Grp., Inc.*, No. 14-cv-3035, 2016 WL 7187183 & Dkts. 66-2, 66-3 (M.D. Fla. Jan. 15, 2016) (granting final approval to FCRA background

---

[16]    This calculation assumes a Net Settlement Fund Balance of $4,912,500 (Total Settlement Fund of $7,500,000 less $7,500 PAGA Payment, $30,000 Service Awards for all Named Plaintiffs, and $2,550,000 for Attorneys' Fees and Expenses awarded by the Court).

check settlement on behalf of settlement class with 19,067 members, where fund totaled $802,720, one-third of which was awarded as attorneys' fees, leaving approximately $24 per class member after payment of administration costs and a service award); *Fernandez v. Home Depot USA, Inc.*, No. 13-cv-648-DOC-RNB, Dkt. 59 (C.D. Cal. Jan. 22, 2016) (granting final approval to FCRA background check settlement where claimants would receive $15 to $100 each); *Ryals v. Hireright Solutions, Inc.*, No. 09-cv-625, 2011 WL 13121387, at *4 (E.D. Va. July 7, 2011) (granting preliminary approval to FCRA background check settlement where class members were entitled to payments from $15 to $82.50 each).

Moreover, the injunctive relief promised by the Settlement, which would prohibit Uber from using the allegedly unlawful background check forms and practices that form the basis of this action, is a great benefit, particularly in light of the disagreement that exists in the law as to whether injunctive relief is available to private plaintiffs under FCRA and the UCL.  *See, e.g.*, *Gauci v. Citi Mortgage*, No. 11-cv-1387-ODW-JEM, 2011 WL 3652589, at *3 (C.D. Cal. Aug. 19, 2011) ("District courts in the Ninth Circuit agree that a private party may not obtain injunctive relief under the FCRA."); *Safeco Ins. Co. v. Super. Ct.*, 216 Cal. App. 3d 1491, 1494 (1990) (cannot use UCL claim to seek relief barred by underlying law).

Viewed in the context of the litigation risks faced, as well as the substantial delay and costs that Class Members would face before they could receive anything from continued litigation — if that even remains a possibility for them in light of the Ninth Circuit's adverse ruling — this Settlement is in the best interests of all Class Members, and should be approved.

### c.   The Extent of Discovery Weighs in Favor of Preliminary Approval.

As discussed in Section II.B, the parties engaged in discovery that enabled the parties to evaluate the strengths and weaknesses of their respective positions.  The parties combined to propound two hundred and ten (210) requests for production of documents and seventy-four (74) interrogatories. Moreover, they exchanged over four thousand pages of documents.  While the discovery conducted was not voluminous, it was more than sufficient to inform the parties' settlement negotiations.  Indeed, class certification and liability determinations in cases of this nature often focus on a narrow set of documents that consist of defendant's background check disclosure and authorization forms.

Furthermore, courts have approved FCRA settlements in which the parties have engaged in limited discovery.  *See, e.g.*, *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 679 (D. Md. 2013) (approving FCRA settlement despite the absence of any depositions and the production of only 600 pages of documents); *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 473 (W.D. Va. 2011) (approving FCRA settlement and finding extensive discovery unnecessary because "the fact pattern and issues involved in the case otherwise are straightforward, and, from the court's perspective, did not require the kind of burdensome, expensive discovery that seems to plague so many class actions.").  Accordingly, the extent of discovery conducted by the parties weighs in favor of preliminary approval.  *See Rodriguez v. W. Publ'g. Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (extensive discovery weighs in favor of approving settlement); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 324 (C.D. Cal. 2016) (preliminary approval of settlement appropriate where "matter was hard-fought and contentiously litigated"); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW-EMC, 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22. 2010) ("substantial discovery" and "hard-fought litigation" weigh in favor of approval of settlement).

### d.   The Recommendation of Experienced Counsel Weighs in Favor of Preliminary Approval.

In considering a proposed class settlement, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *Knight v. Red Door Salons, Inc.*, No. 08-cv-1520-SC, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009); *see also Linney v. Cellular Alaska P'ship*, No. 96-cv-3008-DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997).  Here, Interim Class Counsel endorse the Settlement Agreement as fair, adequate, and reasonable.  (Wolfson Decl. ¶ 34; Ho Decl. ¶ 2.)

Class Counsel have extensive experience litigating and settling consumer and employment class actions as well as other complex matters. They have conducted an extensive investigation into the factual and legal issues raised in this Litigation, which they have fought hard for approximately two-and-a-half years in this Court and in the Ninth Circuit.  The fact that qualified and well-informed counsel endorse the Settlement Agreement as fair, reasonable, and adequate weighs heavily in favor of Court approval.

1

**e.      Factors Related to the Presence of a Government Participant and the
Reaction of the Class Are Neutral at this Juncture.**

2

At this juncture, the factors related to the presence of a governmental participant and the

3

reaction of the Settlement Class are neutral.  In addition to providing notice to the Settlement Class,

4

Plaintiffs will provide notice to the LWDA.  (Settlement ¶ 66-67.)  Given the favorable terms of

5

settlement, Class Counsel do not anticipate any opposition from the LWDA or a large number of

6

objections.

7

**2.      The Settlement Is Entitled to a Presumption of Fairness.**

8

Courts afford class action settlement a presumption of fairness if: (1) the negotiations occurred

9

at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced

10

in similar litigation; and (4) only a small fraction of the class objected.  *Cunha v. Hansen Nat. Corp.*,

11

No. 08-cv-1249-GW, 2015 WL 12697627, at *2 (C.D. Cal. Jan. 29, 2015) (citing *In re Pac.*

12

*Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)); *Nat'l Rural Telecomm. Coop. v. DIRECTV,*

13

*Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine

14

arms-length negotiation is presumed fair.")

15

The Settlement Agreement only was reached through extensive arms' length negotiations that

16

took many months and two separate, in-person mediation sessions with a respected mediator, Mark S.

17

Rudy.[17]  (Wolfson Decl. at ¶ 12.)  Following those mediation sessions, the parties continued to engage

18

in months-long extensive settlement discussions through the mediator, and amongst themselves, until a

19

settlement-in-principle was reached, after which it took more months to negotiate and finalize the

20

Settlement Agreement.  (*Id.* at ¶¶ 13-14.)  The settlement negotiations were therefore adversarial and at

21

arm's length at all times.  Moreover, as discussed above, the extent of discovery enabled the parties to

22

23

[17]      *See Nielson v. The Sports Authority*, No. 11-cv-4724-SBA, 2013 WL 3957764, at *4-5 (N.D.
Cal. July 29, 2013) ("[T]he settlement resulted from non-collusive negotiations, i.e., a mediation

24

before Mark Rudy, a respected employment attorney and mediator."); *Barcia v. Contain-A-Way, Inc.*,
No. 07-cv-938-IEG-JMA, 2009 WL 587844, at *1 (S.D. Cal. Mar. 6, 2009) (granting final settlement

25

approval and finding that Mark Rudy is a "nationally recognized labor mediator"); *Zolkos v.
Scriptfleet, Inc.*, No. 12-cv-8230-GF, 2014 WL 7011819, at *2 (N.D. Ill. Dec. 12, 2014) ("Two

26

experienced class action employment mediators, [including] Mark Rudy . . . assisted the Parties with
the settlement negotiations and presided over two full-day mediations. This reinforces the non-

27

collusive nature of the settlement.").

28

engage in settlement negotiations with a full understanding of the factual and legal issues related to the case, and Class Counsel has extensive experience litigating and settling consumer and employment class actions.  Accordingly, the settlement is entitled to a presumption of fairness.[18]

### 3.    No "Subtle Signs" of Collusion Are Present.

The proposed Settlement bears none of the "subtle signs" of "collusion" described by the Ninth Circuit in *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).[19]  Class Counsel will seek one-third of the $7.5 million settlement fund as attorneys' fees.  This fee request is well supported by Class Counsel's lodestar, which exceeds the requested fee amount.  Furthermore, the Settlement Class is set to receive the remainder of any attorneys' fees not awarded by the Court.  This is a far cry from the facts of *In re Bluetooth*, where the proposed settlement provided no monetary compensation to the class while seeking $800,000 in fees.  *In re Bluetooth*, 654 F.3d at 938.

Moreover, the proposed Settlement here does not include any "clear sailing" provision under which Class Counsel would be entitled to a disproportionate award of attorneys' fees, while Class Members fail to recover cash.  Rather, as described above, the Settlement Agreement merely allows Class Counsel to apply for an award of attorneys' fees.  Furthermore, Class Counsel seeks an award of reasonable attorneys' fees taken from the total settlement fund as a percentage.  With this type of fee arrangement, Class Members and Class Counsel share the same interest in obtaining the highest possible settlement amount.  *Democratic Cent. Comm. of D.C. v. Wash. Metro. Area Transit Comm'n*, 3 F.3d 1568, 1573 (D.C. Cir. 1993) ("The percentage of the fund approach helps to align more closely the interests of the attorneys with the interests of the parties."); *Aichele v. City of Los Angeles*, No. 12-cv-10863-DMG-FFM, 2015 WL 5286028, at *5 (C.D. Cal. Sept. 9, 2015) (collecting cases).

---

[18]    As discussed above, the Settlement Class's reaction is unknown at this juncture.

[19]    The subtle signs of collusion are as follows: "(1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded…; (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class…, (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund."  *In re Bluetooth*, 654 F.3d at 947 (internal quotations omitted).

1    Finally, none of the Settlement proceeds above the total amount of the Settlement

2  Administration Expenses will revert to Defendants.  This is not a "claims made" settlement in which

3  unclaimed funds revert to the defendant.  While any residual funds will be used to reimburse

4  Defendants for the cost of settlement administration, any such reimbursement is limited by the actual

5  cost of administration, and there is no guarantee that Defendants will receive any reimbursement

6  (because residual funds will only be as a result of uncashed Settlement Share checks).

7    Accordingly, the settlement is the result of adversarial, arms' length negotiations, and bears

8  none of the subtle signs of collusion identified by the Ninth Circuit.

9    **4.    The Method of Allocation is Reasonable.**

10   Not all Class Members will receive equal Settlement Shares from the Settlement Fund, but this

11  is a direct result of the Ninth Circuit's decision holding that Uber's arbitration provisions, with the

12  class action waiver, are enforceable, and thus will impact the likelihood that they will pursue and

13  recover on the Class Members' claims.  (*Id.* App. A.)

14   Under the formula set forth in Appendix A to the Settlement Agreement, Class Members who

15  fall into the "Court Group" get the same amount that all Class Members would have gotten if Plaintiffs

16  had prevailed before the Ninth Circuit on the Enforceability Appeals (that is, if the Settlement Fund

17  totaled $9 million rather than $7.5 million).  (Dkt. 178, Ex. A (MOU), at 6 of 11).  The value of the

18  claims held by these members of the Settlement Class was not diminished by the Ninth Circuit's ruling

19  on those appeals.  Class Members who fall into the "ADR Group," however, will have their shares

20  reduced by an amount that, in total among all of them, accounts for the reduction in the Settlement

21  Fund from $9 million to $7.5 million that is attributable to the Ninth Circuit's adverse ruling. The end

22  result is that members of the Court Group (numbering REDACTED ) will receive approximately twice the

23  amount that members of the ADR Group (numbering REDACTED ).  (Settlement ¶ 70.) The difference, and

24  the amount of the Settlement Shares that will be awarded to members of the ADR Group, are justified

25  in light of the risks of, and potential recovery from, continued litigation or arbitration absent any class

26  settlement.[20]

27

28   [20]    The risk "that non-PAGA claims could be deemed subject to arbitration" are "signficiant."  *See*

Furthermore, the Settlement's understanding that Named Plaintiffs will apply to the Court for Service Awards does not amount to impermissible preferential treatment in their favor.  The Ninth Circuit has long recognized that service awards to named plaintiffs class actions are permissible and do not render a settlement unfair or unreasonable.  *See, e.g.*, *Staton*, 327 F.3d at 977; *Rodriguez*, 563 F.3d at 958-69.  The Court ultimately will approve or disapprove any such Service Award and, accordingly, Named Plaintiffs' right to seek such an award does not amount to impermissible preferential treatment.  *See also Harris*, 2011 WL 162793, at *9 (applying this reasoning when granting preliminary approval).

## 5.    The Proposed Forms of Notice and the Notice Program Are Reasonable.

The proposed forms of notice and notice program here fully comply with due process and with Rule 23.  Rule 23 requires:

> [T]he best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:

> (vii)   the nature of the action;
> (ii)    the definition of the class certified;
> (iii)   the class claims, issues, or defenses;
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
> (v)     that the court will exclude from the class any member who requests exclusion;
> (vi)    the time and manner for requesting exclusion; and
> (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  In the context of a class settlement, the notice must also include a general description of the proposed settlement.  *See Churchill Vill.*, 361 F.3d at 575; *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

The proposed forms of notice here include the required information.  (Settlement Exs. E, G.) Moreover, the robust, multi-pronged proposed notice program detailed above, which includes direct

---

*O'Connor* (Dkt. 518) and *Yucesoy* (Dkt. 206), Orders re Plaintiffs' Motion for Preliminary Approval, at 16:9-12 (June 30, 2016) ("significant risks" to plaintiffs "); *see also Churchill Village, LLC*, 361 F.3d at 575; *In Re TracFone Unlimited Service Plan Litigation*, 112 F. Supp. 3d 993, 999-1000 (N.D. Cal. 2015).

notice to Class Members, is well-designed to ensure the best notice practicable under the

circumstances.  (*Id.* Ex. H, Weisbrot Decl. ¶ 9.)

**C.    The Court Should Set a Final Fairness Hearing and Related Deadlines.**

The next steps in the settlement approval process require notifying Class Members of the

proposed Settlement Agreement, allowing them an opportunity to exclude themselves or file

objections, and holding a Final Fairness Hearing.  Accordingly, the parties propose the following

schedule:

| | |
|---|---|
| Last day for Uber to provide the Class Member Information to the Settlement Administrator | **[14 calendar days after entry of Preliminary Approval Order]** |
| Notice Date | **[18 calendar days after entry of Preliminary Approval Order]** |
| Deadline to complete Notice Plan | **[45 calendar days after entry of Preliminary Approval Order]** |
| Last day for Class Counsel to file their application for Attorneys' Fees and Expenses, and Named Plaintiff Service Awards | **[55 calendar days after entry of Preliminary Approval Order / 35 calendar days prior to Objection / Opt-Out Deadline]** |
| Opt-Out Deadline | **[90 calendar days after entry of Preliminary Approval Order]** |
| Objection Deadline | **[90 calendar days after entry of Preliminary Approval Order]** |
| Claim Deadline (deadline to submit claim forms) | **[120 calendar days after the Notice Date (138 calendar days after entry of Preliminary Approval Order)]** |
| Last day for Class Counsel to file Motion for Final Approval of Class Action Settlement and for entry of Final Judgment and Order<br><br>Last day for Settlement Administrator to file list of Class Members who Opted-Out | **[35 calendar days before Final Fairness Hearing]** |
| Last day to file a reply to any objection by any interested party | **[7 calendar days before the Fairness Hearing]** |
| Fairness Hearing<br>(to be set on a date that is at least 50 days after the Opt-Out / Objection Deadline, or 140 days after entry of Preliminary Approval Order; thus, for example, if Preliminary Approval Order is entered on June 1, 2017, the Fairness Hearing would fall on October 19, 2017 or after) | **_____ __, 2017 at _:__ _.m.** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement.

Dated:  April 25, 2017                         Respectfully submitted,

**AHDOOT & WOLFSON, PC**


*/s/ Tina Wolfson*
Tina Wolfson
Robert Ahdoot
Theodore W. Maya
Attorneys for Plaintiffs and Interim Lead Counsel


Dated:  April 25, 2017                         **GOLDSTEIN, BORGEN, DARDARIAN & HO**


*/s/ Laura L. Ho*
Laura L. Ho
Andrew P. Lee
William C. Jhaveri-Weeks
Attorneys for Plaintiffs and Interim Lead Counsel


## ATTESTATION OF FILER

The undersigned hereby attests that all signatories above have concurred in the filing of this motion.


/s/ Tina Wolfson
Tina Wolfson