Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Robert Ahdoot (SBN 172098)
*rahdoot@ahdootwolfson.com*
Theodore W. Maya (SBN 223242)
*tmaya@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
1016 Palm Avenue
West Hollywood, California  90069
(310) 474-9111; (310) 474-8585 (Fax)

Laura L. Ho (SBN 173179)
*lho@gbdhlegal.com*
Andrew P. Lee (SBN 245903)
*alee@gbdhlegal.com*
William C. Jhaveri-Weeks (SBN 289984)
*wjhaveriweeks@gbdhlegal.com*
**GOLDSTEIN, BORGEN, DARDARIAN & HO**
300 Lakeside Drive, Suite 1000
Oakland, California  94612
Tel:  (510) 763-9800
Fax:  (510) 835-1417

*Attorneys for Plaintiffs and Interim Co-Lead Counsel*

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE UBER FCRA LITIGATION | Case No.: 14-cv-05200-EMC<br><br>**DECLARATION OF TINA WOLFSON IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Before:  The Honorable Edward M. Chen<br><br>Date:       June 1, 2017<br>Time:       1:30 PM<br> Location: Courtroom 5, 17th Floor<br>                450 Golden Gate Avenue<br>                San Francisco, California 94102 |

# DECLARATION OF TINA WOLFSON

I, Tina Wolfson, declare as follows:

1. I am an attorney at Ahdoot & Wolfson, PC ("AW") and counsel of record for Plaintiffs Ronald Gillette, Abdul Kadir Mohamed, Shannon Wise, Brandon Farmer, and Meghan Christenson (collectively, "Plaintiffs") in the above-captioned matter. I respectfully submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. I have personal knowledge of the facts set forth in this declaration and could and will testify competently to them if called upon to do so.

2. Founded in 1998, AW is a California based law firm specializing in complex and class action litigation. For decades the attorneys at AW have vigorously litigated against wrong doers to vindicate the rights of millions of consumers in protracted, complex litigation, to successful results. AW has served as class counsel and in leadership position in a wide range of consumer protection class actions. My firm's *curriculum vitae*, a true a correct copy of which is attached hereto as Exhibit "A," demonstrates that AW and I are well qualified to serve as Plaintiffs' Counsel in this action.

## COUNSEL'S LITIGATION AND SETTLEMENT EFFORTS

3. Plaintiffs and Defendants Uber Technologies, Inc. and Rasier, LLC (collectively, "Defendants") engaged in discovery that enabled them to evaluate the strengths and weaknesses of their respective positions. Both parties produced initial and supplemental disclosures. Additionally, the Parties conducted significant written discovery.

4. Plaintiffs combined to propound fifty-two (52) requests for production of documents and thirteen (13) interrogatories germane to arbitration issues and Uber's background check policies and practices. In response, Uber produced verified responses and 3,986 pages of documents.

5. Uber propounded one hundred fifty-eight (158) requests for production of documents and sixty-one (61) interrogatories on Plaintiffs. In response, Plaintiffs produced verified responses and hundreds of pages of documents.

6. Uber also served subpoenas to produce documents on credit reporting agencies Hirease and Checkr, as well as a number of third-party limousine and taxi companies that previously employed Plaintiffs Gillette and Mohamed.

7. Information was also exchanged informally throughout the parties' protracted settlement negotiations.

8. Neither party conducted any depositions.

9. Plaintiffs conducted a thorough examination, investigation, and evaluation of the relevant law and facts to assess the merits of Plaintiffs' claims and potential claims to determine their strength and potential defenses.

10. This included an extensive investigation into the facts and law relating to the matters alleged in Plaintiffs' complaints, including (i) the size and composition of the putative class; (ii) Uber's record-keeping systems; and (iii) how and where Uber used its background check disclosure forms that, Plaintiffs allege, violated FCRA and state law.

11. This investigation included numerous interviews of witnesses, drivers, and putative class members, the evaluation of documents and information related to other litigation against Uber, as well as extensive factual and legal research as to arbitration issues relating to this Action, and the sufficiency of the claims and appropriateness of class certification.

12. The Settlement Agreement was reached as a result of extensive arms' length negotiations between the parties, occurring over the course of a number of months and two separate, in-person mediation sessions with a respected mediator, Mark S. Rudy, Esq. of Rudy, Exelrod, Zieff & Lowe, LLP.

13. Following each of these mediation sessions, the parties continued to engage in months-long extensive settlement discussions through the mediator, and amongst themselves, until a settlement-in-principle was reached.

14. After reaching a settlement-in-principle shortly before June 1, 2016, finalization of the Settlement has required much more negotiation between the parties.

15. At the time the settlement-in-principle was reached, this Court had issued its ruling holding Uber's arbitration provisions unenforceable, but the Ninth Circuit had not yet issued its rulings in the Enforceability Appeals on that issue.

16. Throughout this litigation and their practice in general, they have demonstrated expertise and they have vigorously fought on behalf of all Class Members, before this Court and

1  before the Ninth Circuit.

2      17.    The "Settlement Class" is defined in the Settlement Agreement covers everyone in the eight separate classes described in the operative Complaint (Dkt. 171 ¶¶ 56-60), with the addition of a cut-off date that coincides with the time when Uber changed its practices with respect to the background check procedures at issue.

    18.    During the pendency of this litigation, Plaintiffs diligently investigated Defendants' compliance with FCRA, including but not limited to reviewing and analyzing: (i) almost four thousand pages of documents produced by Defendants in formal discovery propounded by Plaintiffs to Defendants prior to mediation; (ii) detailed pre-mediation disclosures submitted by Defendants to Plaintiffs prior to and during mediation; (iii) detailed documents and information produced to Plaintiffs by Defendants' former background report vendor, Defendant Hirease, prior to and during mediation (including documents produced by Defendants to Plaintiffs that Defendants had obtained from Defendant Hirease pursuant to Defendants' subpoena to Defendant Hirease); and (iv) post-settlement confirmatory discovery regarding Defendants' Background Check Disclosures and Procedures ((i)-(iv) collectively the "Investigation").

    19.    Plaintiffs have agreed to entry of the Joint Stipulation and Consent Order based on the confirmatory discovery that Defendants provided to Plaintiffs concerning Defendants': (i) disclosures to prospective and existing driver partners regarding the fact that Defendants conduct background checks on prospective and existing driver partners, and (ii) "pre-adverse action" policies and procedures.

    20.    The precise Settlement Share that Class Members will receive cannot be determined until all claims have been submitted.  In the event the claims rate is higher, the Settlement Share of Class Members will decrease, and if the claims rate is lower, the Settlement Share will increase.  For example, and for illustrative purposes only, the following table provides Settlement Share amounts at 5%, 10%, and 15% claims rates for ADR Group and Court Group.  This calculation assumes a Net Settlement Fund Balance of $4,912,500 (Total Settlement Fund of $7,500,000 less $7,500 PAGA Payment, $30,000 Service Awards for all Named Plaintiffs, and $2,550,000 for Attorneys' Fees and Expenses awarded by the Court).

| Percentage of Claimants of Given Group | No. of ADR Group Claimants | No. of Court Group Claimants | Settlement Share Per Claimant – ADR Group | Settlement Share per Claimant – Court Group |
|---|---|---|---|---|
| 5% | REDACTED | REDACTED | $55.27 | $125.01 |
| 10% | REDACTED | REDACTED | $27.14 | $62.50 |
| 15% | REDACTED | REDACTED | $18.09 | $41.67 |

21.   This case has been fairly prosecuted by Class Counsel and vigorously defended by defense counsel.

## ATTORNEYS' FEES AND EXPENSES

22.   AW has expended approximately 1,923.7 hours in this litigation through April 15, 2017.  I expect that AW will incur approximately 200 to 300 additional hours of time to see this case through completion of the settlement, including: finalizing and filing these preliminary approval papers; appearing for the hearing on the preliminary approval motion; finalizing the Court-approved Notice forms; working with Defendants and the settlement administrator to distribute the settlement notice; supervising the notice distribution; responding to class member inquiries or challenges; responding to any requests for exclusion or objections; preparing and filing final approval papers, including a final motion for a class representative enhancement award and an award of reasonable attorneys' fees and costs; attending the final approval hearing; working with Defendants and the settlement administrator on the distribution of awards to the Class; monitoring the award distributions to the Class; ensuring that any residual is paid to the Court-approved *cy pres* beneficiaries; and reporting to the Court that the distribution of settlement funds has been completed.

23.   The hours spent (and to be spent) reflect time spent reasonably litigating this case, in which AW has sought to manage and staff efficiently.  These 1,923.7 hours of work amount to an approximate lodestar of $1,331,573.20.

24.   Throughout this litigation, AW's billing practices have been consistent with the Court's Order Granting Motion to Consolidate and Appoint Interim Lead Counsel ("Interim Lead Order").  (Dkt. No. 111.)  This Order sets forth requirements regarding appropriate billing practices for this case, including the requirement that Interim Lead Counsel maintain daily, contemporaneous

time records and appropriately staff depositions, court hearings, and document review tasks.  Prior to the filing of Interim Co-Lead Counsel's request for reasonable attorneys' fees, costs, and expenses, I will review our billing records to confirm that AW's time entries and resulting lodestar conform to this Order.

25. The rates used by AW for this matter were based on the firm's historical rates.  I believe that my firm's rates are fully commensurate with the hourly rates of other nationally prominent firms performing similar work for both plaintiffs and defendants.  After considering all of these data points, I have determined that the rates are reasonable for each of the professionals who worked on this matter.  Prior to the filing of Interim Lead Counsel's request for reasonable attorneys' fees and expenses, I will review AW's billing records to confirm that its time entries and lodestar conform to the Court's Order Granting Motion to Consolidate and Appoint Interim Lead Counsel.

26. AW sets its hourly rates according to prevailing market rates in Los Angeles, California, bills its hourly paying clients according to those rates, and has been awarded fees according to those rates.  AW primarily represents clients on a contingent fee basis, both in class and individual cases.  However, AW also represents clients on an hourly basis and is paid according to its then-current hourly rates.  AW is currently is retained at the hourly rates used to calculate its lodestar in this matter.

27. Courts have recently awarded these AW attorneys fees at rates that are comparable to the rates applicable to this matter.  *See, e.g. Williamson, et al. vs. McAfee, Inc.*, Case No. 5:14-cv-00158-EJD (N.D. Cal. Feb. 15, 2017) (Dkt. 118; $85 Million settlement in deceptive auto renewal case); *Smith v. Floor & Decor Outlets of Am., Inc.*, Case No. l:15-cv-04316-ELR, (N.D. Ga. Jan. 10, 2017) (Dkt. No. 69; $14.5 Million product liability settlement re: laminate flooring); *Chimeno-Buzzi v. Hollister Co.*, Case No. 1:14-cv-23120-MGC (S.D. Fla. April 11, 2016) (Dkt. No. 155; $10 Million TCPA Settlement); *West v. ExamSoft Worldwide Inc.*, Case No. 1:14-cv-22950-UU (S.D. Fla. October 9, 2015) (Dkt. No. 62; $2.1 Millon Settlement in Bar Exam Testing case).

28. As of March 31, 2017, I am informed and belive that AW's co-counsel, Monique Olivier, Esq., of Duckworth Peters Lebowitz & Olivier, LLP, a very experienced and well regarded litigator specializing in employment matters as well as other fields, expended 40.3 hours on this

matter for a total lodestar of $26,195.

29. As of March 31, 2017, AW also has incurred approximately $17,512.18 in un-reimbursed expenses that were necessarily incurred in connection with the prosecution and resolution of this litigation. These expenses include: filing fees ($400), attorney service & service of process fees ($184), postage and messenger services ($158.17), travel ($10,637.88), mediation fees ($5,883.19), and PACER charges ($223.40).

30. The foregoing expenses were incurred solely in connection with this litigation. All are within the guidelines set by the Court in the Interim Lead Order. These expenses are reflected in the books and records of my firm, which are kept in the ordinary course and prepared from expense vouchers, check records, and other documents. AW has not listed its expenses incurred for in-house electronic research fees (Lexis / Westlaw), copies, facsimile, telephone, *etc.* and, in an exercise of discretion, does not seek reimbursement for such expenses. Prior to the filing of Interim Lead Counsel's request for reasonable attorneys' fees and expenses, I will review AW's expense to again confirm that AW's total expense reports conform to the Court's Order Granting Motion to Consolidate and Appoint Interim Lead Counsel.

31. Throughout this action, I have sought to reach consensus with my co-counsel to manage the administration and work division in this case in a systematic and efficient manner, coordinating work assignments through conference calls, working to avoid duplication of efforts or unnecessary work undertaken by any of the counsel for the Class in this case, and ensuring that the skills and talents of counsel were put to use in an efficient and effective manner that maximized what each firm and attorney could contribute in a non-redundant way.

32. The settlement achieved in this litigation is the product of the initiative, investigation, and hard work of skilled counsel. Because of Plaintiffs' Counsel's efforts, assuming the Court approves the settlement, the Class will receive significant benefits.

33. Plaintiffs' Counsel overcame several obstacles, all while facing preeminent defense counsel in two large national law firms, to achieve this settlement. I respectfully submit that the substantial benefits provided by the settlement would not have been possible without the combined efforts, skill, and efficiency of the attorneys and professionals involved in prosecuting this case.

34. Based on my experience and my knowledge regarding the factual and legal issues in this matter, it is my opinion that the proposed Settlement in this matter is fair, reasonable, and adequate, and is in the best interests of the Class members.

I declare under penalty of perjury under the laws of California and of the United States that the foregoing is true and correct. Executed this 25th day of April, 2017 in West Hollywood, California.

_____
Tina Wolfson

**EXHIBIT A**



## AHDOOT & WOLFSON, PC
ATTORNEYS

Ahdoot & Wolfson ("AW") is a top tier law firm specializing in complex and class action litigation. The attorneys at AW vigorously litigate against large corporations to vindicate the rights of millions of consumers in protracted, complex litigation, to successful results.

AW has been appointed class counsel in numerous class actions, and, as a founding members, Robert Ahdoot and Tina Wolfson have extensive experience in prosecuting complex class action and representative lawsuits. They have served as plaintiffs' counsel/co-counsel or class counsel and litigated numerous class actions or representative actions.

Tina Wolfson attended and graduated Harvard Law School *cum laude* in 1994. Ms. Wolfson began her civil litigation career at the Los Angeles office of Morrison & Foerster, LLP, where she defended major corporations in complex actions and represented indigent individuals in immigration and deportation trials as part of the firm's *pro bono* practice. She then gained further invaluable litigation and trial experience at a boutique firm, focusing on representing plaintiffs on a contingency basis in civil rights and employee rights cases.

Robert Ahdoot graduated from Pepperdine Law School *cum laude* in 1994, where he served as Literary Editor of the Pepperdine Law Review. Mr. Ahdoot clerked for the Honorable Paul Flynn at the California Court of Appeals, and then began his career as a civil litigator at the Los Angeles office of Mendes & Mount, LLP, where he defended large corporations and syndicates such as Lloyds of London in complex environmental and construction-related litigation as well as a variety of other matters.

In March 1998, Mr. Ahdoot and Ms. Wolfson founded AW. As required, partner Theodore Maya and associates Bradley King and Vanessa Shakib will also participate in this litigation.

Theodore Maya is a partner at AW working on this matter. He graduated from UCLA Law School in 2002 after serving as Editor-in-Chief of the UCLA Law Review. From July 2003 to August 2004, Mr. Maya served as Law Clerk to the Honorable Gary

Allen Feess in the United States District Court for the Central District of California. Mr. Maya was also a litigation associate in the Los Angeles offices of Kaye Scholer LLP for approximately eight years where he worked on a large variety of complex commercial litigation from inception through trial. Mr. Maya was named "Advocate of the Year" for 2007 by the Consumer Law Project of Public Counsel for successful *pro bono* representation of a victim of a large-scale equity fraud ring.

Bradley King is an associate at AW working on this matter. Mr. King graduated from Pepperdine University School of Law, where he served as Associate Editor of the Pepperdine Law Review. He worked as a law clerk for the California Office of the Attorney General, Correctional Law Section in Los Angeles and was a certified law clerk for the Ventura County District Attorney's Office. Mr. King began his legal career at a boutique civil rights law firm, gaining litigation experience in a wide variety of practice areas, including employment law, police misconduct, municipal contract, criminal defense, and premises liability cases.

Vanessa Shakib is another associate at AW working on this matter. Ms. Shakib graduated from George Mason University Law School, where she served as Senior Notes Editor of the Journal of International Commercial Law and a member of the Moot Court Board. Ms. Shakib began her legal career at Wasserman, Comden, Casselman & Esensten, LLP, where she practiced general business litigation and public entity liability.

AW has been appointed lead counsel in numerous complex consumer class actions, sometimes in contested leadership applications. The following actions are some examples of recently resolved or pending class actions which AW has litigated or is currently litigating on behalf of its clients:

- *Kirby v. McAfee, Inc.*, Case No. 14-cv-02475-EJD (N.D. Cal.) (challenging the defendant's auto renewal and false discount practices; class counsel in $80 Million Dollar finally-approved settlement).
- *Chimeno-Buzzi v. Hollister Co, et al.*, Case No. 1:14-cv-23120-MGC (S.D. Fla.) (class counsel in $10 Million nationwide finally approved settlement arising from violations of the TCPA).
- *Smith v. Floor and Décor Outlets of America, Inc.*, Case No. 1:15-cv-04316-ELR (N.D. Ga.) (AW, with their co-lead counsel, negotiated a $14 Million class settlement finally approved by the court).
- *In re Experian Data Breach Litigation*, Case No. 8:15-cv-01592-AG-DFM (C.D. Cal.) (appointed co-lead counsel after contested application and hearing in consolidated litigation consisting of thirty-eight class actions).

2

- *Remijas, et al. v. Neiman Marcus Group, LLC*, Case No. 14-cv-1735 (N.D. Ill.) (AW, as co-lead counsel, was responsible for briefing and arguing the groundbreaking appeal from the trial court's order in, which granted the motion to dismiss on the pleadings based on lack of Article III standing. The Seventh Circuit's landmark opinion was its first to address the Supreme Court's decision in *Clapper v. Amnesty Intern. USA*, 133 S. Ct. 1138 (2013). The *Neiman Marcus* opinion was the first appellate court to reject this view of *Clapper* and, adopting the plaintiff's reasoning, established, among other things, that data breach victims have standing to pursue claims based on the increased risk of identity theft and fraud, even before that theft or fraud materializes. *Remijas v. Neiman Marcus*, Case No. 14-3122 (7th Cir. July 20, 2015) (reversed and remanded).
- *In re: Kind LLC "All Natural" Litig.*, No. 1:15-md-02645-WHP (S.D.N.Y.) (appointed lead by MDL Court after contested hearing).
- *In Re: U.S. Office of Personnel Management Data Security Breach Litigation*, No. 1:15-mc-01394-ABJ (D.D.C.) (currently serving, by court appointment, on MDL Plaintiffs' Steering Committee after contested Leadership Application and hearing).
- *In re: Premera Blue Cross Customer Data Sec. Breach Litig.*, Case No. 15-md-02633-SI (D. Or.) (currently serving, by court appointment, on the Executive Leadership Committee).
- *In re: The Home Depot, Inc., Customer Data Security Breach Litigation*, Case No. 1:14-md-02583-TWT (N.D. Ga.) (served, by court appointment, on the MDL Consumer Plaintiffs' Steering Committee; approximately $29 million settlement finally approved).
- *In re: Target Corporation Customer Data Security Breach Litigation*, Case No. 14-md-2522 (D. Minn.) (AW contributed considerable effort to vetting hundreds of potential class representatives, legal research involving the different state laws in play, the consolidated complaint, and significant discovery efforts).
- *Pappas v. Naked Juice Co. of Glendora, Inc.*, Case No. 2:11-cv-8276-JAK-PLA (C.D. Cal.) (appointed co-lead counsel after contested application; resulted in the second largest food false advertising settlement ever ($9 Million fund)).
- *In Re: Hain Celestial Seasonings Products Consumer Litigation*, Case No. 13-cv-01757-AG-AN (C.D. Cal.) (appointed co-lead counsel after contested application).
- *Lavinsky vs. City of Los Angeles*, Case No. BC542245 (LASC) (challenging allegedly illegal utilities taxation practices; appointed Class Counsel after certifying the Class).

- *Trammell v. Barbara's Bakery, Inc.*, Case No. 3:12-cv-02664-CRB (N.D. Cal.) ($4 Million nationwide settlement of food false advertising case).
- *Cassidy v. Reebok International Ltd.*, Case No. 2:10-cv-09966-AHM (C.D. Cal.) ($25 Million nationwide settlement of apparel false advertising case).
- *Carey v. New Balance Athletic Shoe, Inc.*, Case Nos. 1:11-cv-10632-LTS & 1:11-cv-10001-LTS (D. Mass.) ($3.7 Million nationwide settlement of apparel false advertising case).
- *West v. ExamSoft Worldwide Inc.*, Case No. 14-cv-22950-UU (S.D. Fla.) ($2 Million nationwide settlement preliminarily approved arising from software error on bar exam).
- *Melito v. American Eagle Outfitters, Inc.*, Case No. 1:14-cv-02440-VEC (S.D.N.Y.) (nationwide settlement arising from TCPA violations pending preliminary approval).
- *Wright v. Sirius XM Radio, Inc.*, Case No. 8:16-cv-01688-JVS-JCG (C.D. Cal.) (class action for alleged misrepresentations and breach of contract related to lifetime subscriptions to satellite radio service).
- *Rivera v. Google, Inc.*, Case No. 1:16-cv-02714 (N.D. Ill.) (class action for alleged violations of Illinois biometric privacy law).
- *Monroy v. Shutterfly, Inc.*, Case No. 1:16-cv-10984 (N.D. Ill.) (class action for alleged violations of Illinois biometric privacy law).
- *Mirto v. AIG/Granite State Insurance Co. et al.*, Case No. HG 04180408 (Cal. Super. Ct., Alameda Cty.) ($3 Million California settlement re insurance discriminatory pricing).
- *Axen v. Ginco International, et al.*, Case No. 427033 (Cal. Super. Ct., San Francisco Cty. ("SFSC") (injunctive relief settlement re pesticides in Ginseng products).
- *Citizens for Responsible Business v. Rite Aid Corporation, et al.*, Case No. 414831 (SFSC) (prosecuted claims of false and illegal labeling in the herbal supplement industry against 107 retailers and manufacturers, who were gleaning millions of dollars from this nationwide practice; AW was successful in completely eradicating the alleged illegal practice in the United States).
- *Feliciano v. General Motors LLC*, Case No. 14-cv-06374-AT (S.D.N.Y.) (product defect regarding Chevy Cruze vehicles).
- *Brown v. BMW of North America, LLC*, Case No. 3:14-cv-00950-JLS-BLM (S.D. Cal.) (product defect regarding MINI Cooper vehicles; nationwide settlement for all valid claims, uncapped).

- *Weiss v. Los Angeles*, No. BC 141354 (LASC) (challenging the defendant's review of parking violations, won *writ of mandate* trial to stop the allegedly illegal practice).
- *Eck, et al. v. City of Los Angeles*, Case No. BC577028 (LASC) (challenging the defendant's tax regulations regarding electrical power; settlement in principal reached).
- *A.Y. v. The Regents of the University of California*, Case No. BC590344 (Cal. Super. Ct., Los Angeles Cty. ("LASC")) (data breach class action).
- *Bishop v. Shorter University, Inc.*, Case No. 4:15-cv-00033-HLM (N.D. Ga.).
- *In re: Lumber Liquidators Chinese-Manufactured Flooring Durability Marketing and Sales Practices Litig.*, Case No. 1:16-md-02743-AJT-TRJ (E.D. Va.) (class action arising from alleged misrepresentations of laminate flooring durability).
- *Whalen v. Michael Stores Inc.*, No. 2:14-cv-07006-JS-ARL (E.D.N.Y.).
- *Zadeh v. Chase Manhattan Bank, et al.*, Case No. 323715 (SFSC) (Privacy class action resulting in $47 Million settlement).
- *Steinhaus v. American Express Travel Related Services Co. et al.*, Case No. 416248 (SFSC) (Privacy class action resulting in $6 Million settlement).
- *Bernard v. MBNA America Bank, et al.*, Case No. 408700 (SFSC) (Privacy class action resulting in $45.8 Million settlement).
- *Shakib v. Discover Bank, et al.*, Case No. 416194 (SFSC) (Privacy class action resulting in $20.6 Million settlement).
- *Baumsteiger v. FleetBoston, et al.*, Case No. 408698 (SFSC) (Privacy class action resulting in $10.1 Million settlement).
- *Lanchester v. Washington Mutual Bank, et al.*, Case No. 429754 (SFSC) (Privacy class action resulting in $6 Million settlement).
- *Whitaker v. Health Net*, Case No. 2:11-cv-00910-KJM (E.D. Cal.) (appointed to the Executive Committee in the consolidated action).
- *Sutter Medical Information Cases*, Case No. JCCP 4698 (Cal. Super. Ct., Sacramento Cty.) (appointed to the Executive Committee in the consolidated action).

Additionally, Ms. Wolfson frequently lectures on numerous topics related to class action litigation across the country. An incomplete list of her speaking engagements is as follows:

- American Conference Institute: "2nd Cross-Industry and Interdisciplinary Summit on Defending and Managing Complex Class Actions," April 2017, New

5

York.
- CalBar Privacy Panel: "Privacy Law Symposium: Insider Views on Emerging Trends in Privacy Law Litigation and Enforcement Actions in California," March 2017, Los Angeles, California (Moderator).
- Federal Bar Association: Northern District of California Chapter "2016 Class Action Symposium," December, 2016, San Francisco (Co-Chair).
- Federal Bar Association: The Future of Class Actions, featuring the Hon. Jon Tigar and the Hon. Laurel Beeler, "Cutting Edge Topics in Class Action Litigation," November 2015, San Francisco (Co-Chair and Faculty).
- American Association for Justice: AAJ 2015 Annual Convention - "The Mechanics of Class Action Certification," July 2015, Montreal.
- HarrisMartin: Data Breach Litigation Conference: The Coming of Age - "The First Hurdles: Standing and Other Motion to Dismiss Arguments," March 2015, San Diego.
- Bridgeport: 2015 Annual Consumer Class Action Conference, February 2015, Miami (Co-Chair).
- Venable, LLP: Invited by former opposing counsel to present mock oral argument on a motion to certify the class in a food labeling case, Hon. Marilyn Hall Patel (Ret.) presiding, October 2014, San Francisco.
- Bridgeport: 15th Annual Class Action Litigation Conference - "Food Labeling and Nutritional Claim Specific Class Actions," September 2014, San Francisco (Co-Chair and Panelist).
- Bridgeport: 2014 Consumer Class Action Conference - "Hot Topics in Food Class Action Litigation," June 2014, Chicago.
- Perrin Conferences: Challenges Facing the Food and Beverage Industries in Complex Consumer Litigations, invited to discuss cutting edge developments in settlement negotiations, notice, and other topics, April 2014, Chicago.
- Bridgeport: Class Action Litigation & Management Conference - "Getting Your Settlement Approved," April 2014, Los Angeles.
- HarrisMartin: Target Data Security Breach Litigation Conference - "Neiman Marcus and Michael's Data Breach Cases and the Future of Data Breach Cases," March 2014, San Diego.
- Bridgeport: Advertising, Marketing & Media Law: Litigation and Best Management Practices - "Class Waivers and Arbitration Provisions Post-*Concepcion / Oxford Health Care*," March 2014, Los Angeles.

Moreover, Mr. Ahdoot also frequently lectures on numerous topics related to class action litigation across the country. An incomplete list of his speaking engagements is as follows:
- HarrisMartin: Lumber Liquidators Flooring Litigation Conference, May 2015, Minneapolis: "Best Legal Claims and Defenses."
- Bridgeport: 15th Annual Class Action Litigation Conference, September 2014, San Francisco: "The Scourge of the System: Serial Objectors."
- Strafford Webinars: Crafting Class Settlement Notice Programs: Due Process, Reach, Claims Rates and More, February 2014: "Minimizing Court Scrutiny and Overcoming Objector Challenges."
- Pincus: Wage & Hour and Consumer Class Actions for Newer Attorneys: The Do's and Don'ts, January 2014, Los Angeles: "Current Uses for the 17200, the CLRA an PAGA."
- Bridgeport: 2013 Class Action Litigation & Management Conference, August 2013, San Francisco: "Settlement Mechanics and Strategy."