1  Tina Wolfson (SBN 174806)
   twolfson@ahdootwolfson.com
2  Robert Ahdoot (SBN 172098)
   rahdoot@ahdootwolfson.com
3  Theodore W. Maya (SBN 223242)
   tmaya@ahdootwolfson.com
4  Bradley K. King (SBN 274399)
   bking@ahdootwolfson.com
5  AHDOOT & WOLFSON, PC
   1016 Palm Avenue
6  West Hollywood, CA  90069
   Tel:    (310) 474-9111
7  Fax:    (310) 474-8585

8  Laura L. Ho (SBN 173179)
   lho@gbdhlegal.com
9  Andrew P. Lee (SBN 245903)
   alee@gbdhlegal.com
10 William C. Jhaveri-Weeks (SBN 289984)
   wjhaveriweeks@gbdhlegal.com
11 GOLDSTEIN, BORGEN, DARDARIAN & HO
   300 Lakeside Drive, Suite 1000
12 Oakland, CA  94612
   Tel:   (510) 763-9800
13 Fax:   (510) 835-1417

14 [Additional Counsel Listed on Following Page]

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE UBER FCRA LITIGATION | Case No.  14-cv-05200-EMC<br><br>**JOINT SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

TLER MENDELSON, P.C.
333 Bush Street
34th Floor
an Francisco, CA  94104
415.433.1940

JOINT SUPPLEMENTAL BRIEF ISO MOTION
FOR PRELIMINARY APPROVAL

CASE NO. 3:14-CV-05241 EMC

| | |
|---|---|
| Meredith Desautels (SBN 259725)<br>mdesautels@lccr.com<br>Dana Isaac Quinn (SBN 278848)<br>disaac@lccr.com<br>LAWYERS' COMMITTEE FOR CIVIL RIGHTS<br>OF THE SAN FRANCISCO BAY AREA<br>131 Steuart Street, Suite 400<br>San Francisco, CA 94105<br>Tel: (415) 543-9444<br>Fax: (415) 543-0296<br><br>Attorneys for Plaintiffs and the Putative Classes | THEODORE J. BOUTROUS, JR., SBN 132099<br>tboutrous@gibsondunn.com<br>THEANE D. EVANGELIS, SBN 243570<br>tevangelis@gibsondunn.com<br>DHANANJAY MANTHRIPRAGADA, SBN 254433<br>dmanthripragada@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071-3197<br>Telephone: 213.229.7000<br>Facsimile: 213.229.7520<br><br>JOSHUA S. LIPSHUTZ, SBN 242557<br>jlipshutz@gibsondunn.com<br>KEVIN J. RING-DOWELL, SBN 278289<br>kringdowell@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>555 Mission Street, Suite 3000<br>San Francisco, CA 94105-0921<br>Telephone: 415.393.8200<br>Facsimile: 415.393.8306<br><br>ROD M. FLIEGEL, Bar No. 168289<br>rfliegel@littler.com<br>JOHN C. FISH, Jr., Bar No. 160620<br>jfish@littler.com<br>LITTLER MENDELSON, P.C.<br>333 Bush Street, 34th Floor<br>San Francisco, California 94104<br>Telephone:  415.433.1940<br>Facsimile:  415.399.8490<br><br>ANDREW M. SPURCHISE, Bar No. 5360847<br>aspurchise@littler.com<br>LITTLER MENDELSON, P.C.<br>900 Third Avenue, 8th Floor<br>New York, New York 10022<br>Telephone:  212.583.9600<br>Facsimile:  212.832.2719<br><br>Attorneys for Defendants<br>Uber Technologies, Inc. and Rasier, LLC |

TLER MENDELSON, P.C.
650 Ca ifornia Street
20th Floor
Francisco, CA  94108.2693
415.433.1940

JOINT SUPPLEMENTAL BRIEF ISO MOTION
FOR PRELIMINARY APPROVAL

CASE NO. 3:14-CV-05241 EMC

In response to the questions posed by the Court during the June 1, 2017 preliminary approval hearing (the "Hearing") on Plaintiffs' Motion for Preliminary Approval (Dkt. 235), the parties jointly submit this Supplemental Brief to further assist the Court with its review of the parties' Stipulation of Settlement (Dkt. 222) under Rule 23(e) of the Federal Rules of Civil Procedure.

## I. THE CLAIMS PROCESS IS NECESSARY UNDER THE CIRCUMSTANCES

The parties' Stipulation of Settlement contemplates a simple and expedient claims process, whereby Potential Settlement Class Members ("PSCMs") can submit Claim Forms to the Settlement Administrator electronically through the Settlement Administrator's secure settlement website, by e-mail, or by U.S. mail. (Dkt. 222, Stipulation of Settlement, Section VI, ¶ 71.) The Claim Form requires minimal personal information. (*See* Revised Proposed Claim Form, attached hereto as Exhibit C.) And, based on their preference, PSCMs may elect whether to receive Settlement Shares – which may exceed $100[1] – by mailed check, PayPal, or digital check mailed by e-mail. (*Id.*)

At the Hearing, the Court questioned whether the claims process contemplated by the Stipulation of Settlement is necessary. (*See* Dkt. 235 at 13-14.) For the following reasons, the parties submit that, within the context of this case, the claims process is justified and necessary.

### A. Defendants Have Limited Updated Contact Information For Most PSCMs

As a practical matter, updated contact information is needed from PSCMs to ensure that settlement distributions reach them. Defendants, however, do not possess verifiably current contact information for most PSCMs. Indeed, that is why the parties' Stipulation of Settlement recites that Defendants have the "last-known" contact information for all PSCMs. (Dkt. 222, Section IV, ¶ 70(a)(iv).) That qualification is both reasonable and important.

Most of the last-known mailing addresses that Defendants have for these PSCMs are stored in two data sets. (Declaration of Michael Colman ("Colman Decl.") ¶ 6, attached hereto as Exhibit A.) Some of the mailing addresses are derived from data initially input by the PSCMs at the time they originally signed up for the Uber App. (*Id.*) However, Defendants have not developed any

---

[1] *See* Dkt. 223, Plaintiffs' Motion for Prelim. Approval, at 26.

TLER MENDELSON, P.C.
333 Bush Street
34th Floor
an Francisco, CA 94104
415.433.1940

JOINT SUPPLEMENT BRIEF ISO MOTION FOR PRELIMINARY APPROVAL   1.   CASE NO. 3:14-CV-05241 EMC

systematic way of feasibly ascertaining at this time how many, if any, of these addresses have been manually updated by these individuals. (*Id.* ¶ 7.) Another large portion of the mailing addresses are derived from Optical Character Recognition ("OCR") algorithms that scan information from drivers' licenses. (*Id.* ¶ 6.) That method does not generally entail any review or verification of accuracy by the independent transportation provider before it is input into Defendants' databases. (*Id.* ¶ 8.)

These potential complications are further exacerbated by the fact the nationwide list of PSCMs extends back several years and cuts off more than two years ago, on January 2, 2015. Therefore, the contact information Defendants have in their possession is likely to be outdated for a significant percentage of PSCMs. Approximately 60% of PSCMs never even activated on the Uber App, meaning that Defendants never had an active relationship with these PSCMs or any business reason to verify the minimal information they provided during the signup process. (*Id.* ¶ 4.) Furthermore, of the approximately 40% of PSCMs who activated, only an estimated 25% provided at least one ride using the Uber App in the past six months. (*Id.* ¶ 5.) This is only approximately 11% of the PSCMs overall. (*Id.*)

Additionally, Defendants do not generally engage in direct mailings with independent transportation providers. Therefore, Defendants generally have no reason to ascertain if the mailing addresses in its databases are up-to-date or accurate even *during* a relationship with an individual who is actively using the Uber App. (*Id.* ¶ 9.) Rather, as attested to in the Stipulation of Settlement, Defendants primarily use electronic communications with the PSCMs. (Dkt. 222, Section VI, ¶ 70(v).) And, fewer than 3% of the PSCMs for whom Defendants have address information on file culled via OCR of drivers' licenses have uploaded drivers' licenses in the past year. (Colman Decl. ¶ 10.)

The record before the Court in this case is therefore demonstrably *unlike* the routine employment cases that the Court mentioned at the Hearing. (Dkt. 235 at 34 ("You need a claims process in a lot of consumer cases, it's just impossible to identify, etc., etc., but employment cases, I have trouble many times as saying well, why do you need a claims process when you have the payroll records and everything, you know, and I've rejected claims processes in many of those cases").) Given the significant issues presented with outdated contact information, it would be

TLER MENDELSON, P.C.
333 Bush Street
34th Floor
an Francisco, CA  94104
415.433.1940

JOINT SUPPLEMENT BRIEF ISO MOTION FOR PRELIMINARY APPROVAL     2.     CASE NO. 3:14-CV-05241 EMC

inefficient, counterproductive, and potentially harmful to PSCMs to direct mail checks into the vast unknown, without a claims process to first generate current and reliable contact information. As explained by one court, the many risks of proceeding with direct payments to class members with potentially outdated contact information militate against such an approach:

> The Court-appointed disbursing agent testified that, without a claims process, the chances of fraud increased. Recovering money from individuals who fraudulently cashed settlement checks requires significant time and effort from the disbursing agent-at the expense of the settlement fund. The Special Master further testified that sending unsolicited checks to unverified addresses can end up "cost[ing] a ton of money." In such situations, administrators "get to the point where you never close the case." . . . . For these reasons, the notice administrator, the Court-appointed disbursing agent, and the Special Master agreed that the expedited claims process was a relatively simple administrative device designed to lower costs without unduly burdening the claimants. The only cost to the class members of the process is the requirement that participants complete a one-page, check-the-box form, and the benefit is greater accountability and reduced long-term administrative expenses.

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12*, MDL No. 1643, 2006 WL 3332829, at *2 (E.D. La. Nov. 15, 2006).[2] It is beyond dispute that the serious problems of fraud and identity theft have increased considerably in the decade since the court made these comments. The need for caution is indisputably *greater* now than they once were when the Multidistrict Litigation Court expressed the concerns set forth above.[3]

---

[2] This Court has previously acknowledged these same concerns. *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *11-12 (N.D. Cal. Apr. 29, 2011) (acknowledging the defendant's legitimate concerns about mailing checks to class members without a claims process, but concluding there were fewer risks because (1) the Court had certified the case as a class action, (2) three mailings already had been sent to class members, and (3) the last mailing had successfully reached 95% of class members). *Accord Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 289–90 (6th Cir. 2016) (affirming approval of claims-made settlement and rejecting objections based on claims process where address information of class member was not based on current relationships with class members and was likely to be outdated); *Braynen v. Nationstar Mortg., LLC*, No. 14-CV-20726, 2015 WL 6872519, at *14 (S.D. Fla. Nov. 9, 2015) ("A direct payment structure without the Claim Form providing current addresses risks fraud and waste in administering the Settlement."); *Hillson v. Kelly Servs. Inc.,* No. 2:15-CV-10803, 2017 WL 279814, at *13 (E.D. Mich. Jan. 23, 2017) (granting approval of FCRA settlement on a claims-made basis, noting that, as here, "the alleged wrong in this case occurred in the range of two to four years ago and so a claims requirement, as opposed to sending checks to all that do not opt-out, helps reduce the chance of funds being erroneously sent to people who are not members of the class").

[3] Federal Trade Commission, Consumer Sentinel Newtork Data Book for January – December 2016, *available at* <https://www.ftc.gov/reports/consumer-sentinel-network-data-book-january-december-2016> (last visited June 13, 2017).

TLER MENDELSON, P.C.
333 Bush Street
34th Floor
an Francisco, CA 94104
415.433.1940

JOINT SUPPLEMENT BRIEF ISO MOTION FOR PRELIMINARY APPROVAL    3.    CASE NO. 3:14-CV-05241 EMC

### B. The Claims Process Election Benefits PSCMs

The parties' Stipulation of Settlement also allows PSCMs to elect how they want to receive Settlement Shares. (Dkt. 222-3, Claim Form; Ex. C, Revised Claim Form.) This election benefits PSCMs by allowing them to decide *where* Settlement Shares are sent and whether the payment is provided in electronic or hard copy format. For this very reason, courts have regularly upheld the use of a claims process. *See, e.g., Shames v. Hertz Corp.*, No. 07-CV-2174, 2012 WL 5392159, at *12 (S.D. Cal. Nov. 5, 2012) ("The actual intent of the claims process is to allow class members the opportunity to choose between several payment options."); *Arthur v. Sallie Mae, Inc.*, No. C10-0198, 2012 WL 90101, at *4 (W.D. Wash. Jan. 10, 2012) (approving the use of a claim form, in part, because the intent of form was to allow class members to choose between settlement options).[4]

Relatedly, the parties' Stipulation of Settlement recites that Defendants "do not have the payment account information of all Settlement Class Members," and notes "this is particularly the case, though not exclusively, where the Settlement Class Members were never provided access to the Uber application." (Dkt. 222, Section IV, ¶ 70(a)(vii).) Accordingly, the parties cannot simply disburse electronic payments to the PSCMs without first initiating a claims process. On the other hand, the Claim Form affords PSCMs an easy way to provide such updated information (*i.e.*, an updated e-mail address for a digital check or PayPal disbursement). (Dkt. 222-3.)

### C. Direct Payment Would Be Costly And Will Not Benefit PSCMs

Without the claims process, the estimated cost of mailing hard copy checks to all PSCMs would be a multiplier of current estimated costs of administering the Settlement. (Supplemental Declaration of Steven Weisbrot, attached as Exhibit B, ("Weisbrot Supp. Decl.") ¶¶ 28-29.) This potential increase is significant, given the expectations of the parties when entering into the Settlement. As Plaintiffs noted during the Hearing, such a substantially increased cost of

---

[4] *See also Rossi v. Whirlpool Corp.*, No. 212-cv-00125, 2016 WL 3519306, at *2 (E.D. Cal. June 28, 2016) (claims form allowed class members to make election); *Neurocare Inst. of Cent. Fl., P.A. v. HealthTap, Inc.*, No. 613-cv-1228, 2014 WL 12616953, at *1 (M.D. Fla. Nov. 24, 2014) (same); *Moore v. Verizon*, No. 09-1823, 2013 WL 4610764, at *7 (N.D. Cal. Aug. 28, 2013) (same).

TLER MENDELSON, P.C.
333 Bush Street
34th Floor
an Francisco, CA  94104
415.433.1940

JOINT SUPPLEMENT BRIEF ISO MOTION FOR PRELIMINARY APPROVAL   4.   CASE NO. 3:14-CV-05241 EMC

1   administration imposed upon Defendants could constitute a material modification to the settlement,
2   thereby allowing Defendants to terminate the settlement.  (*See* Dkt. 222 ¶ 18; 235 at 11.)

3         Moreover, as Plaintiffs further noted at the Hearing, directly mailing checks in *pro rata*
4   portions to PSCMs would result in delays and inefficiencies because, based on the Settlement
5   Administrator's experience, many PSCMs likely would not cash checks in an amount under $5.
6   (Weisbrot Supp. Decl. ¶ 32.)  This likely would lead to either: (1) Defendants receiving a refund of
7   Settlement Administration Costs due to the waterfall provision, thereby counter-productively taking
8   the money out of the available pool for distribution to PSCMs, or, (2) a second round of expensive
9   hard copy mailing (which again, could be a material modification causing Defendants to terminate
10  the settlement).  As to the latter, the mailing would be delayed significantly because it could only
11  occur after the initial time period had lapsed for cashing checks.  Moreover, the payment would
12  again likely be comparatively small, as a *pro rata* portion of all uncashed checks.  There would be
13  no guarantee that class members would cash such a second check, ultimately again leading to
14  uncashed funds.  In the face of either of these options, the parties' proposed claims form process is
15  far superior.  It places the most money possible, at the earliest possible time, in the hands of PSCMs
16  who are willing to take the insignificant amount of time necessary to file a simple claims form to
17  provide current contact information and elect their preferred payment method.

18        **D.**    **Claims Made Settlements Are Routinely Approved**

19        The parties further note this Court has previously observed that claims made settlements are
20  "routinely" approved.  *Harris*, 2011 WL 1627973, at *13; *see also In re Online DVD-Rental*
21  *Antitrust Lit.*, 779 F.3d 934, 944-45 (9th Cir. 2015) (affirming district court order approving a class
22  settlement and rejecting the argument that it was error to allow the "claimant fund mechanism");
23  *Shames*, No. 07-cv-2174-MMA-WMC, 2012 WL 5392159, at *9 ("there is nothing inherently
24  objectionable with a claims-submission process, as class action settlements often include this
25  process, and courts routinely approve claims made settlements") (citing five Ninth Circuit claims
26  made class action settlements); *Weeks v. Kellogg Co.*, No. CV 09-08102 MMM RZX, 2013 WL
27  6531177, at *15 (C.D. Cal. Nov. 23, 2013) (approving claims made settlement); *Arthur*, No. C10-
28  0198JLR, 2012 WL 90101, at *11 (W.D. Wash. Jan 10, 2012) (rejecting objection that settlement

TLER MENDELSON, P.C.
333 Bush Street
34th Floor
an Francisco, CA  94104
415.433.1940

JOINT SUPPLEMENT BRIEF ISO MOTION FOR PRELIMINARY APPROVAL    5.    CASE NO. 3:14-CV-05241 EMC

was "illusory" because class members who did not submit a claim form would not be entitled to relief); *Lemus v. H & R Block Enters. LLC*, No. C 09-3179 SI, 2012 WL 3638550, at *2-3 (N.D. Cal. Aug. 22, 2012) (approving claims made settlement); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 593 (N.D. Ill. Jul 29, 2011) ("There is nothing inherently suspect about requiring class members to submit claim forms to receive payment."); *Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20, 28 (D.D.C. 2011) ("Class actions often require a claims process to ensure money is fairly distributed for valid claims."); *Milliron v. T-Mobile USA, Inc.*, No. 08-cv-4149 (JLL), 2009 WL 3345762, at *6 (D.N.J. Sept. 10, 2009) ("the Court finds it perfectly appropriate to require Class members to submit certain information proving that they are entitled to collect the relief awarded"); *Rubin v. Assicurazioni Generali S.P.A.*, 290 F. App'x 376, 377 (2d Cir. 2008) (rejecting argument that class members "will not be compensated under the settlement [if] they have not filed claims").

In light of this authority, the parties submit that the factual circumstances present here—where Defendants lack contact information for a significant percent of PSCMs, the cost of settlement distribution would increase substantially under a direct payment distribution method, the claims-made method permits PSCMs to choose for themselves how to receive settlement distributions, and a claims-made process will ensure that *more* of the settlement fund gets distributed to PSCMs—amply justify the bona fide claims process contemplated by the parties' Stipulation of Settlement.

### E. The Achieved Outcome Is Similar Or Superior To Other Approved FCRA Settlements

Finally, Plaintiffs contend that the claims-made settlement outcome here is similar to, or superior to, other court-approved FCRA settlements. At the Hearing, the Court suggested that comparisons of FCRA settlements Plaintiffs previously offered were potentially not appropriate because of the claims process here. However, many FCRA settlements with analogous alleged technical violation claims seeking statutory damages under 15 U.S.C. § 1681n have settled on a claims-made basis with similar or less favorable compensation to class members (even though those cases did not have the same arbitration and independent contractor issues present here). Some examples of such settlements are provided here for the Court's further reference:

TLER MENDELSON, P.C.
333 Bush Street
34th Floor
an Francisco, CA 94104
415.433.1940

JOINT SUPPLEMENT BRIEF ISO MOTION FOR PRELIMINARY APPROVAL    6.    CASE NO. 3:14-CV-05241 EMC

- *Rhom v. Thumbtack, Inc.*, Case No. 16-cv-02008, 2017 U.S. Dist. LEXIS 72979 (N.D. Cal. May 12, 2017) (granting preliminary approval of FCRA Section 1681b(b)(2) claims-made settlement where it was estimated that class members who submit claims would receive $15 each).

- *Watkins v. HireRight, Inc.*, No. 13-CV-1432-BAS-BLM, 2016 WL 5719812, at *1 (S.D. Cal. Sept. 30, 2016) (granting final approval for FCRA claims-made settlement where each class member who submitted claim would be paid approximately $25).

- *Duncan v. JPMorgan Chase Bank, N.A.*, No. SA-14-CA-00912-FB, 2016 WL 4419472, at *5 (W.D. Tex. May 24, 2016), *report and recommendation adopted*, No. SA-14-CA-912-FB, 2016 WL 4411551 (W.D. Tex. June 17, 2016) (approving FCRA claims-made settlement of $8.75 million all-in fund for approximately 2 million person class, where approximately 20% of individuals submitted claims, and those who submitted claims received approximately $10.79 each).

- *Rouse v. Hennepin Cty.*, No. CV 12-326 (DWF/SER), 2016 WL 3211814, at *1 (D. Minn. June 9, 2016) (noting that the court had previously granted settlement approval to FCRA claims-made settlement that required 283,000 person class to come to a service center location and submit a claim in-person to receive a $17.50 voucher towards certain future transactions).

- *Katz v. ABP Corp.*, No. 12-CV-04173 ENV RER, 2014 WL 4966052, at *1 (E.D.N.Y. Oct. 3, 2014) (granting preliminary approval of FCRA claims-made settlement involving over 250,000 class members who would receive either cash payment of $9.60 or a $15 voucher for services after submitting claim form).

- *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 447 (C.D. Cal. 2014) (approving FCRA claims-made settlement where individuals received payment vouchers good for six months for $5, $15, or $30 value after submitting claim form).

- *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 470 (W.D. Va. 2011) (granting final approval of $9.95 million common fund in FCRA settlement, inclusive of attorneys' fees, to compensate individuals in class of over 3M who submitted claims forms to receive payment).

As Plaintiffs contend that this settlement is at least as favorable as other FCRA claims-made settlements that have been approved across the country, they respectfully assert this settlement should be similarly approved.

## II. THE PARTIES' PROPOSED SETTLEMENT NOTICE PLAN INCORPORATES BEST PRACTICES FOR E-MAIL NOTICE

At the Hearing, the Court questioned whether e-mail "spam" filters may limit delivery of the proposed e-mail notice to the class members. (Dkt. 235 at 12-14.) The Court specifically asked if Angeion Group, LLC ("Angeion"), the Settlement Administrator, has the ability to determine, after the fact, if any particular email notice ends up in a class member's spam folder. The direct answer to

TLER MENDELSON, P.C.
333 Bush Street
34th Floor
an Francisco, CA  94104
415.433.1940

JOINT SUPPLEMENT BRIEF ISO MOTION FOR PRELIMINARY APPROVAL          7.          CASE NO. 3:14-CV-05241 EMC

this question is no; as explained in the Weisbrot Supplemental Declaration, Angeion is not aware of *any* commercial advertising agencies or firms that can accurately make this type of determination. (Weisbrot Supp. Decl. ¶ 23.) Nevertheless, Angeion will implement best practices on the front end to ensure that the chances of the email notice being designated as "spam" are minimized. The Weisbrot Supplemental Declaration describes the best practices that Angeion will take to help ensure that the e-mail notice reaches the maximum number of PSCMs. The parties respectfully submit that the proposed direct email program, in totality, is the best notice practicable under the circumstances, and comports with Due Process requirements.

As a general concept, the use of e-mail notice is now formally recognized in the proposed amendments to Federal Rule of Civil Procedure 23.[5] Chief among the changes to the new rule includes formalization of the manner and method for settlement notice for Rule (b)(3) classes. Specifically, the new rule still requires "the best notice practicable," but recognizes the twenty-first century reality that the best notice practicable may be made by "United States mail, electronic means, or other appropriate means." (Weisbrot Supp. Decl. ¶ 13.) Given that the class here largely, if not entirely, communicated with the defendant via electronic means and email (Colman Decl. ¶ 9), the parties submit that email is an apt method of communication and is likely to be read. (*See* Dkt. 222-8 at ¶13-14.) While administering notice of the settlement in the above-referenced action, Angeion will employ the following best practices to increase the deliverability rate of the email notice.

As an initial matter, Angeion designs the email notice to avoid common "red flags" that might otherwise cause a potential settlement class members' spam filter to block or identify the email notice as spam. For instance, Angeion does not include the Claim Form or Long Form Notice as an attachment to the email notice because attachments are often interpreted by various Internet

---

[5] On April 14, 2016, proposed amendments to Federal Rule of Civil Procedure 23 were unanimously approved by the Advisory Committee on Civil Rules, and have been forwarded to the Standing Committee on Rules of Practice and Procedure with the recommendation that they be adopted. It is widely expected that they will ultimately be approved and adopted later this year.

TLER MENDELSON, P.C.
333 Bush Street
34th Floor
an Francisco, CA  94104
415.433.1940

JOINT SUPPLEMENT BRIEF ISO MOTION FOR PRELIMINARY APPROVAL    8.    CASE NO. 3:14-CV-05241 EMC

1  Service Providers ("ISP") as spam. Rather, Angeion includes a link to all operative documents.
2  (Weisbrot Supp. Decl. ¶ 17.)
3       Prior to distributing email notice, Angeion will also engage in a two-step email updating
4  process to ensure that the recipient email addresses are current. REDACTED REDACTED
5  REDACTED REDACTED  REDACTED REDACTED
6  REDACTED REDACTED   REDACTED REDACTED
7  REDACTED REDACTED  REDACTED REDACTED
8  REDACTED REDACTED  REDACTED REDACTED
9  REDACTED REDACTED  REDACTED REDACTED
10 REDACTED REDACTED  REDACTED REDACTED
11 REDACTED REDACTED                           (Weisbrot Supp. Decl. ¶ 18.)
12  REDACTED REDACTED  REDACTED REDACTED
13 REDACTED REDACTED  REDACTED REDACTED
14 REDACTED REDACTED  REDACTED REDACTED
15 REDACTED REDACTED  REDACTED REDACTED
16 REDACTED REDACTED  REDACTED REDACTED
17 REDACTED REDACTED  REDACTED REDACTED
18 REDACTED REDACTED                    REDACTED REDACTED
19 REDACTED REDACTED  REDACTED REDACTED
20 REDACTED REDACTED  REDACTED REDACTED
21 REDACTED REDACTED  REDACTED REDACTED
22 REDACTED REDACTED  (Weisbrot Supp. Decl. ¶ 19.)
23      Once settlement class members' email addresses are verified and/or updated, Angeion will
24 "pace" the email delivery, as opposed to sending out all the settlement notice emails in one fell
25 swoop. The underlying strategy for pacing delivery is that that the Domain Name System ("DNS")
26 from which the email originates gains a better reputation among ISPs over time, thereby lowering
27 the risk that the settlement notice email will be flagged as spam and blocked at the ISP level.
28 (Weisbrot Supp. Decl. ¶ 20.)

TLER MENDELSON, P.C.
333 Bush Street
34th Floor
an Francisco, CA 94104
415.433.1940

JOINT SUPPLEMENT BRIEF ISO MOTION FOR
PRELIMINARY APPROVAL                9.                CASE NO. 3:14-CV-05241 EMC

1    Angeion also accounts for the real-world reality that some emails will inevitably be blocked
2 during the initial delivery attempt. Because the rate of bounced emails can impact the reputation of
3 the DNS and therefore may result in a temporary block at the ISP level, Angeion plans for this
4 eventuality in advance. Specifically, after the initial noticing campaign is complete, Angeion, after
5 an approximate 12-24-hour rest period—which allows any temporary block at the ISP level to
6 expire—causes a second round of email noticing to commence to any mail addresses that were
7 previously blocked. (Weisbrot Supp. Decl. ¶ 21.) At the completion of the email campaign Angeion
8 will report to the Court the total number of delivered emails, accounting for any that are blocked at
9 the ISP level. (Weisbrot Supp. Decl. ¶ 22.)

10   As discussed above, Angeion cannot determine whether a spam filter blocks a settlement
11 notice email as spam, as Angeion does not have access to individual email client data once an email
12 has been delivered. Whether an email is categorized as spam is not determined at an ISP level and is
13 often determined by the spam filter settings an individual chooses to utilize on their own browser
14 and/or email client. Angeion is not aware of any settlement or claims administrator capable of
15 making this type of determination. Likewise, Angeion is not aware of any commercial advertising
16 agencies or firm who can accurately make this type of determination since the email client data is
17 not shared with the ISP or other third-party services. (Weisbrot Supp. Decl. ¶ 23.)

18   However, the parties note that proof of delivery or evidence of the review of notice is not
19 available or a required condition of Due Process, even when other means of delivery are
20 implemented. When noticed is delivered by other means, for example, such as mailed post cards,
21 radio and television advertisement, and placement of notices in newspapers, claims administrators
22 cannot confirm with 100% reliability whether a class member has read or paid attention to such
23 notices. For instance, there is no way of being able to confirm whether mail addressed to a class
24 member was placed by accident in the wrong mail box, or whether the individual receiving a mailed
25 notice accidentally throws it away with what they might consider to be junk mass mail that they also
26 receive that day. (Weisbrot Supp. Decl. ¶ 24.)

TLER MENDELSON, P.C.
333 Bush Street
34th Floor
an Francisco, CA 94104
415.433.1940

JOINT SUPPLEMENT BRIEF ISO MOTION FOR PRELIMINARY APPROVAL    10.    CASE NO. 3:14-CV-05241 EMC

For all of these reasons, the email notice process contemplated by the parties' Settlement Agreement not only satisfies the best practices applicable to email notice, but also satisfies Due Process under Rule 23.

### III. THE PROPOSED AMENDMENTS TO THE CLAIM FORM AND NOTICE ADDRESS THE COURT'S COMMENTS AT THE HEARING ON THE MOTION FOR PRELIMINARY APPROVAL

At the Hearing, the Court asked the parties to revise the Claim Form and Short and Long Form Notice to emphasize that class members will receive monetary compensation as a result of participating in the claims process. (*See* Dkt. 235 at 14.) To that end, the parties propose that the following language be incorporated at the heading of the Claim Form:

**You will receive a monetary payment if you fill out and submit this claim form**

**and this settlement receives final court approval.**

We estimate that you could recover $27.00 or $62.00, depending on whether you are

in the ADR Group or the Court Group.

This amount is an estimate. Your actual recovery amount may vary, depending on

the number of valid claims submitted.

(*See* Ex. C (redline and clean format).) Similar language will be incorporated in the Short and Long Notice, as well. (*See* Amended Short Notice, attached as Exhibit D in redline and clean format, and Long Notice, attached as Exhibit E in redline and clean format.)

The estimates included in the Claim Form, Short Notice, and Long Notice state each PSCM's expected recovery, assuming the Court grants the proposed PAGA allocation and the requested attorneys' fees and service awards, and that there is a 10% claims rate. (Weisbrot Supp. Decl. ¶ 31.) They further state that the estimated settlement payment amounts are estimates only, and that actual settlement amounts can vary depending on the number of valid claims ultimately submitted.

### IV. CONCLUSION

For the foregoing reasons, as well as all reasons stated at the Hearing and the parties' previous briefing in support of Plaintiffs' Motion for Preliminary Approval, the parties respectfully request that the Court grant preliminary approval of the settlement.

TLER MENDELSON, P.C.
333 Bush Street
34th Floor
an Francisco, CA 94104
415.433.1940

JOINT SUPPLEMENT BRIEF ISO MOTION FOR PRELIMINARY APPROVAL    11.    CASE NO. 3:14-CV-05241 EMC

| | |
|---|---|
| Dated: June 13, 2017 | Respectfully submitted |
| | **AHDOOT & WOLFSON, PC** |
| | |
| | */s/ Tina Wolfson* |
| | Tina Wolfson |
| | Robert Ahdoot |
| | Theodore W. Maya |
| | Bradley K. King |
| | |
| | **GOLDSTEIN, BORGEN, DARDARIAN & HO** |
| | |
| | Laura L. Ho |
| | Andrew P. Lee |
| | William C. Jhaveri-Weeks |
| | |
| | Attorneys for Plaintiffs and the Putative Class |
| Dated: June 13, 2017 | **LITTLER MENDELSON, P.C**. |
| | |
| | */s/ Rod M. Fliegel* |
| | Rod Fliegel |
| | John C. Fish, Jr. |
| | Andrew Spurchise |
| | |
| | **GIBSON, DUNN & CRUTCHER LLP** |
| | |
| | Joshua S. Lipshutz |
| | Kevin J. Ring Dowell |
| | Theodore J. Boutrous, Jr. |
| | Theane D. Evangelis |
| | Dhananjay Manthripragada |
| | |
| | Attorneys for Defendant |
| | Uber Technologies, Inc. and Rasier, LLC |

### ATTESTATION OF FILER

The undersigned hereby attests that all signatories above have concurred in the filing of this motion.

                                                                                        /s/ Tina Wolfson
                                                                                        Tina Wolfson

TLER MENDELSON, P.C.
333 Bush Street
34th Floor
an Francisco, CA  94104
415.433.1940

JOINT SUPPLEMENT BRIEF ISO MOTION FOR PRELIMINARY APPROVAL    12.    CASE NO. 3:14-CV-05241 EMC