UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE UBER FCRA LITIGATION | CASE NO. 14-cv-05200-EMC |
| | **OBJECTION TO CLASS ACTION SETTLEMENT** |

Class member and objector, Christine Gussoin, ("hereinafter Objector") opposes the approval of the class action settlement. Objector has filed a claim in this lawsuit and the claim number is CLM00068489.

A district court may approve a class action settlement only if the settlement is "fair, reasonable, and adequate." Fed R. Civ. P. 23(e)(2). The district court fulfills both its "duty to act as a fiduciary who must serve as a guardian of the rights of absent class members and ... the requirement of a searching assessment regarding attorneys' fees that should properly be performed in each case." *In re Bank of Am. Corp. Securities, Derivative, and Employee Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 134 (2d Cir. 2014) citing *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010).

"Class-action settlements are different from other settlements. The parties to an ordinary settlement bargain away only their own rights—which is why ordinary settlements do not require court approval." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013). Unlike ordinary settlements, "class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of unnamed class members who by definition are not present during the negotiations. *Id.* "[T]hus, there is always the danger that the parties

1

and counsel will bargain away the interests of unnamed class members in order to maximize their own." *Id.*

The settlement is unfair and unreasonable for class members because funds may go to a *cy pres* recipient, Legal Services for Prisoners with Children, instead of class members. The settlement agreement calls for residual funds that is in excess of the total amount of the Settlement Administration Expenses to this non-profit organization. See Settlement Agreement ¶ 64.

Three defects make this application of *cy pres* insupportable: first, there is an impermissible geographic discontinuity between the composition of the class (nationwide) and the locus of the *cy pres* recipient (California); second, there is no connection between the *cy pres* recipients and the subject matter of the lawsuit or the composition of the class; and third, and most importantly, *cy pres* is improper when it is feasible to make further distributions to class members, at least when such distributions do not result in a legal windfall overcompensating class members beyond their claimed damages.

"Because the settlement funds are the property of the class, a *cy pres* distribution to a third party of unclaimed settlement funds is permissible '*only* when it is not feasible to make further distributions to class members' .... except where an additional distribution would provide a windfall to class members with *liquidated*-damages claims that were 100 percent satisfied by the initial distribution." *In re BankAmerica Corp. Securities Litig.*, 775 F.3d 1060, 1064 (8th Cir. 2015). In this settlement, class members' claims have not been satisified by 100 percent and it is feasible to make another distribution to class members, especially since many class members have signed up to receive funds electronically. The Court should order that all residual funds are distributed to class members until infeasible and not be awarded to a *cy pres* recipient.

Next, the proposed *cy pres* recipient, Legal Services for Prisoners with Children is not the appropriate recipients for cash or product. "The cy pres doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the "next best" class of beneficiaries. See *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307–08 (9th Cir.1990). Cy pres distributions must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011). This organization, though likely a worthy organization, has nothing to with the nature of the plaintiff's lawsuit, the objectives of the underlying statutes, and the interests of silent class members. The responsibility of the Court is to the class to ensure that the class's money is used in connection with

Plaintiff's complaint alleges that Uber's use of the background check was inappropriate, not that Uber should not have used a background check. The underlying statutes deal with notice and permissibility of using background or credit checks. Any policy work done by Legal Services for Prisoners with Children related to eliminating the need for a background check is not relevant to class members. The mission of this organization does not support the objectives of the underlying statutes.

Additionally, Legal Services for Prisoners with Children is based in California and does the majority of its work in California. It appears that much of its policy's efforts are to change California law. Ultimately, there is "no reasonable certainty" that any class member would benefit from these *cy pres* distributions. *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) as there is no connection that people currently in prison or who are out of prison and need

a job were "all persons who were subject to a background check and/or consumer report request by Uber before January 3, 2015."

Next, the Settlement Agreement's definition of "Settlement Class Members' Released Claims" is overbroad and vague. While the Notice indicates that the settlement is related to Background Check Reports and Laws, the release includes "any legal theories that could have been raised based on the allegations in the Action." See Settlement Agreement ¶ 41. The legal theories and allegations in the Complaint include:

a. failure to provide prompt payment of wages to driver employees upon termination and resignation in violation of Labor Code §§ 201, 202, 203;

b. failure to provide itemized wage statements to driver employees in violation of Labor Code §§ 226(a), 1174, and 1174.5;

c. failure to provide meal and rest periods in violation of Wage Order No. 9 and Labor Code §§ 226.7, 512, and 558;

d. willfully misclassifying its driver employees in violation of Labor Code § 226.8;

e. failure to provide gratuities intended for driver employees in violation of Labor Code § 351;

f. failure to keep required payroll records in violation of Wage Order No. 9 and Labor Code §§ 1174 and 1174.5;

g. failure to pay overtime wages in violation of Wage Order No. 9 and Labor Code §§ 510, 558, 1194 and 1198;

h. failure to pay minimum wages in violation of Wage Order No. 9 and Labor Code §§ 1182.12, 1194, and 1197;

i. failure to reimburse driver employees for all reasonably necessary expenditures and losses incurred by driver employees in direct consequence of the discharge of their duties, including but not limited to fuel, insurance, maintenance, and toll costs, in violation of Labor Code § 2802.

Complaint p. 26 and 27.

These allegations in the Complaint far exceed the stated purpose of the settlement agreement, which is that the Defendant obtained and used consumer background checks in violation of the law. For example, it is unreasonable that class members would give up the right to pursue their minimum wage claims in this class action suit about use of background checks. The Court must either order the release to be modified to be narrowly tailored to the stated purpose on the Notice or require that the notice to class members be modified to adequately notify class members of all that they are giving up by remaining in the class.

The Court should only give class counsel 25% of the amount the class receives, which is consistent with 9th Circuit standards. Money paid to the claims administrator should not be considered compensation to the class. There is no reason that the Court should award 33% of the settlement fund to class counsel. The proposed fee award is excessive. The Motion to Approve the Settlement Agreement should be denied on this basis alone.

For the foregoing reasons, the Court should deny final approval of the settlement. Neither Objector nor I intend to appear at the fairness hearing.

Dated: /s/Michael Creamer

_/s/ Michael Creamer_
Michael Creamer, Attorney for Objector
CA Bar Number 204662
PO BOX 17743
Anaheim, CA 92817
714-623-2299

I, Christine Gaussoin, personally attest that I have discussed this objection with my attorney and agree with its contents.

_[signature]_

Christine Gaussoin, Objector

## CERTIFICATE OF SERVICE

I, Michael Creamer, hereby certify that a true copy of the above document was served upon the attorneys of record for each other party through the Court's electronic filing service ECM/ECF on DATE.

                                                      /s/Michael Creamer
                                                      Michael Creamer