Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
Andrew P. Lee (SBN 245903)
alee@gbdhlegal.com
William C. Jhaveri-Weeks (SBN 289984)
wjhaveriweeks@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA  94612
Tel:    (510) 763-9800
Fax:    (510) 835-1417

Tina Wolfson (State Bar No. 174806)
twolfson@ahdootwolfson.com
Robert Ahdoot (State Bar No. 172098)
rahdoot@ahdootwolfson.com
Theodore W. Maya (State Bar No. 223242)
tmaya@ahdootwolfson.com
AHDOOT & WOLFSON, P.C.
10728 Lindbrook Dr.
Los Angeles, California 90024
Tel:    (310) 474-9111
Fax:    (310) 474-8585

Attorneys for Plaintiffs and the Class
*(Additional Counsel listed on signature page)*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE UBER FCRA LITIGATION | Case No.: 14-cv-05200-EMC<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    February 8, 2018<br>Time:    1:30 p.m.<br>Crtrm:    5<br><br>Before:  Hon. Edward M. Chen |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION ........................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .....................................................1

II.      INTRODUCTION ..................................................................................................1

III.     BACKGROUND .....................................................................................................3

IV.      THE SETTLEMENT ..............................................................................................4

        A.      The Settlement Classes ..............................................................................4

        B.      Benefits to Class Members ..........................................................................4

                1.      Monetary Benefits ..........................................................................4

                2.      Practice Changes ............................................................................5

        C.      Opt-Out Procedure ......................................................................................5

        D.      Objection Procedure ....................................................................................6

        E.      Attorneys' Fees, Costs, and Service Awards ..............................................7

                1.      Attorney Fees: ................................................................................7

                2.      Costs: ..............................................................................................7

                3.      Service Awards: ..............................................................................8

        F.      Cy Pres ........................................................................................................8

        G.      Release ..........................................................................................................9

V.       NOTICE HAS BEEN DISSEMINATED, AND THE RESPONSE FROM THE CLASS HAS BEEN VERY POSITIVE ..................................................................................9

        A.      Direct Notice to Class Members ..............................................................10

        B.      Settlement Website and Toll-Free Number ..............................................10

        C.      Claims and Responses to Notice ..............................................................11

VI.      THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT ................11

        A.      The Class Action Settlement Approval Process ........................................11

        B.      Final Approval of the Settlement Is Appropriate ......................................11

                1.      The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation ..................................................12

701652.5

a.  A Significant Percentage of Settlement Class Members Could be Forced into Individual Arbitration Absent a Settlement. ....................... 12

b.  Uber Would Challenge Plaintiffs' Standing. ........................................... 13

c.  Plaintiffs Face Risks on the Merits of Their FCRA Claims. .................. 13

d.  Plaintiffs Face Risks on the Merits of Their State Law Claims. ............ 17

i.  Massachusetts Claims Pursuant to M.G.L. c. 93 § 62 ................ 17

ii.  California Claims Pursuant to Cal. Civil Code § 1785.1 and Cal. Labor Code §§ 2699, 1024.5 ......................................... 17

e.  Plaintiffs Face Risks on Their Damages Theory. .................................... 17

2.  The Benefits of the Settlement ............................................................................... 18

3.  The Extent of Discovery and the Stage of Proceedings ..................................... 20

4.  The Experience and Views of Counsel ................................................................ 21

5.  The Presence of a Government Participant ......................................................... 22

6.  The Class Response Thus Far Favors Final Approval ....................................... 22

7.  Lack of Collusion Between the Parties ................................................................ 22

VII.  CLASS CERTIFICATION REMAINS APPROPRIATE ......................................................... 24

VIII.  CONCLUSION .......................................................................................................................... 25

701652.5

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Advanced Conservation Sys., Inc. v. Long Island Lighting Co.*,
   113 F.3d 1229 (2d Cir. 1997) ...............................................................................................14

*Aichele v. City of L.A.*,
   No. 12-cv-10863-DMG-FFM, 2015 WL 5286028 (C.D. Cal. Sept. 9, 2015).........................24

*Andrade v. Chase Home Fin., LLC*,
   No. 04-cv-8229, 2005 WL 3436400 (N.D. Ill. Dec. 12, 2005) ..........................................18

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ..........................................................................................23, 24

*Brown v. Lowe's Cos., Inc.*,
   No. 13-cv-079-RLV-DSC, 2016 WL 6496447 (W.D.N.C. Nov. 1, 2016) ..........................19

*Churchill Village, L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) .............................................................................................12

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ..............................................................................................18

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ......................................................................................12, 23

*Coleman v. Kohl's Dep't Stores, Inc.*,
   No. 15-cv-2588-JCS, 2015 WL 5782352 (N.D. Cal. Oct. 5, 2015) ...................................17

*Democratic Cent. Comm. of D.C. v. Wash. Metro. Area Transit Comm'n*,
   3 F.3d 1568 (D.C. Cir. 1993)...........................................................................................24

*Domonoske v. Bank of Am., N.A.*,
   790 F. Supp. 2d 466 (W.D. Va. 2011) ...............................................................................20

*Ernst v. Dish Network, LLC*,
   49 F. Supp. 3d 377 (S.D.N.Y. 2014) .................................................................................14

*Fernandez v. Home Depot USA, Inc.*,
   No. 13-cv-648-DOC-RNB, ECF No. 59 (C.D. Cal. Jan. 22, 2016) ...................................19

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   No. 08-cv-1365-CW-EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22. 2010)...................21, 23

*Gauci v. Citi Mortgage*,
   No. 11-cv-1387-ODW-JEM, 2011 WL 3652589 (C.D. Cal. Aug. 19, 2011) .....................20

i

*Goldberg v. Uber Techs., Inc.*,
　No. 14-cv-14264, 2015 WL 1530875 (D. Mass. Apr. 6, 2015) ................................16, 17

*In re: Google Inc. Gmail Litig.*,
　No. 13-md-2430-LHK, 2014 U.S. Dist. LEXIS 36957 (N.D. Cal. Mar. 18, 2014) .........................17

*Hanlon v. Chrysler Corp.*,
　150 F.3d 1011 (9th Cir. 1998) ............................................................6, 12, 18

*In re Heritage Bond Litig.*,
　No. 02-MC-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005)................................23

*Hoke v. Retail Credit Corp.*,
　521 F.2d 1079 (4th Cir. 1975) ...........................................................14

*Johnson v. Shaffer*,
　No. 2:12-cv-1059 KJM ACP, 2016 WL 3027744 (E.D. Cal. May 27, 2016)................................22

*Johnson v. Sherwin-Williams Co.*,
　152 F. Supp. 3d 1021 (N.D. Ohio 2015) ...............................................14, 15

*Just v. Target Corp.*,
　187 F. Supp. 3d 1064 (D. Minn. 2016) ................................................16

*Knight v. Red Door Salons, Inc.*,
　No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009)................................22

*Lamson v. EMS Energy Mktg. Serv.*,
　868 F. Supp. 2d 804 (E.D. Wis. 2012) ...............................................14, 15

*Landrum v. Harris Cnty. Emergency Corps.*,
　122 F. Supp. 3d 617 (S.D. Tex. 2015)................................................16

*LeGrand v. Intellicorp Records, Inc.*,
　No. 15-cv-2091, 2017 U.S. Dist. LEXIS 26156 (N.D. Ohio Feb. 24, 2017) ................................13

*Linney v. Cellular Alaska P'ship*,
　151 F.3d 1234 (9th Cir. 1998) ...........................................................18

*Manuel v. Wells Fargo Bank, NA*,
　No. 14-cv-238-REP-DJN, 2016 WL 1070819 (E.D. Va. Mar. 15, 2016)................................19

*Marshall v. Holiday Magic, Inc.*,
　550 F.2d 1173 (9th Cir. 1977) ...........................................................22

*In re Mego Fin. Corp. Sec. Litig.*,
　213 F.3d 454 (9th Cir. 2000) ............................................................20

*In re Michaels Stores, Inc., FCRA Litig.*,
　Nos. 14-7563, 15-2547, 15-5504, 2017 WL 354023 (D.N.J. Jan. 24, 2017) ................................13

701652.5

*In re Netflix Privacy Litig.*,
   No. 5:11-CV-00379, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ...............................12

*Newton v. Bank of Am.*,
   No. 14-cv-3714-CBM-MRW, 2015 WL 10435907 (C.D. Cal. May 12, 2015) ...............16

*Noori v. Vivint, Inc.*,
   No. 16-cv-5491-A, 2016 U.S. Dist. LEXIS 120963 (C.D. Cal. Sept. 6, 2016) ...............16

*O'Connor v. Uber Techs., Inc.*,
   201 F. Supp. 3d 1110 (N.D. Cal. 2016) ....................................................................9, 15

*Peikoff v. Paramount Pictures Corp.*,
   No. 15-cv-068-VC, 2015 U.S. Dist. LEXIS 63642 (N.D. Cal. Mar. 25, 2015) ...............16

*Perkins v. LinkedIn Corp.*,
   No. 13-CV-04303-LHK, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016) ...........................22

*Ramirez v. Trans Union, LLC*,
   301 F.R.D. 408 (N.D. Cal. 2014) .................................................................................18

*Reardon v. ClosetMaid Corp.*,
   No. 08-cv-1730, 2013 WL 6231606 (W.D. Pa. Dec. 2, 2013) ......................................17

*Rodriguez v. W. Publ'g. Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................................................21

*Ryals v. Hireright Solutions, Inc.*,
   No. 09-cv-625, 2011 WL 13121387 (E.D. Va. July 7, 2011) .......................................19

*Safeco Insurance of America v. Burr*,
   55 U.S. 47 (2007) ........................................................................................................16

*Schoebel v. Am. Integrity Ins. Co.*,
   No. 15-cv-380, 2015 WL 3407895 (M.D. Fl. May 27, 2015).......................................16

*Singleton v. Domino's Pizza, LLC*,
   976 F. Supp. 2d 665 (D. Md. 2013)...............................................................................20

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016)...................................................................................21

*Speer v. Whole Foods Mkt. Grp., Inc.*,
   No. 14-cv-3035, 2016 WL 7187183 (M.D. Fla. Jan. 15, 2016) ...................................19

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) .................................................................................................13

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ........................................................................................12

*Stillmock v. Weis Mkts., Inc.*,
    385 Fed. App'x 267 (4th Cir. 2010) ............................................................................18

*Syed v. M-I, LLC*,
    853 F.3d 492 (9th Cir. 2017) .....................................................................................13

*In re Syncor ERISA Litigation*,
    516 F.3d 1095 (9th Cir. 2008) ...................................................................................12

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .....................................................................................7

*In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liability
    Litig.*,
    No. 3:15- md-2672 CRB (JSC), 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ...............7

**State Cases**

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ............................................................................................17

*Price v. Uber Technologies., Inc.*,
    No. BC554512 (L.A. Super. Ct.) ..................................................................................9

*Safeco Ins. Co. v. Superior Court*,
    216 Cal. App. 3d 1491 (1990) ...................................................................................20

*Yanting Zhang v. Superior Court*,
    57 Cal. 4th 364 (2013) ..............................................................................................18

**Federal Statutes**

15 U.S.C.
    § 1681b(b)(2) ...........................................................................................................13
    § 1681b (b)(2)(A) ........................................................................................14, 15, 16, 21
    § 1681b(b)(2)(C) .......................................................................................................15
    § 1681b(b)(3)(A) .......................................................................................................14
    § 1681n (a) ...............................................................................................................15
    § 1681o (a) ...............................................................................................................16
    § 1681t (b)(1)(C) ......................................................................................................17

Commentary on the Fair Credit Reporting Act .................................................................14

Electronic Communications Privacy Act .........................................................................17

Fair Credit Reporting Act .................................................................................... *passim*

701652.5

**State Statutes**

Cal. Bus. & Prof. Code
  § 17200 ...............................................................................................................17

Cal. Civ. Code
  § 1785.1 ..............................................................................................................17
  § 1785.19 ............................................................................................................16
  § 1785.20.5 .........................................................................................................14

Cal. Lab. Code
  § 1024.5 ..........................................................................................................9, 17
  § 2699 .................................................................................................................17

M.G.L. c. 6
  § 171A ................................................................................................................17

M.G.L. c. 93
  § 62 ....................................................................................................................17

Private Attorneys General Act............................................................................... *passim*

**Rules**

Fed. Rules of Civil Procedure
  12 .......................................................................................................................16
  23 ............................................................................................................1, 11, 16
  23(a) ...................................................................................................................25
  23(b)(3) ...............................................................................................................25
  23(c)(3) ...............................................................................................................10

**Regulations**

55 Fed. Reg. 18804-01 (May 4, 1990) ..................................................................14

**Other Authorities**

*Alatraqchi v. Uber Techs., Inc., Labor Commissioner, State of California,*
  No. 11-42020 CT (2012) ....................................................................................15

*Eisenberg v. Uber Technologies, Inc., et al.*
  (ADRS Case No. 15-6878-MDM) .....................................................................15

United States District Court for the North District of California' Procedural Guideline
  for Class Action Settlements.
  (http://www.cand.uscourts.gov/ClassActionSettlementGuidance) ......................7

701652.5

### NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on February 8, 2018, at 1:30 P.M., in the Courtroom of the Honorable Edward M. Chen, United States District Judge for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, plaintiffs in the above-captioned cases, Ronald Gillette ("Gillette"), Abdul Kadir Mohamed ("Mohamed"), Shannon Wise ("Wise"), Brandon Farmer ("Farmer"), and Meghan Christenson ("Christenson") (collectively, "Plaintiffs"), will and hereby do move the Court, in accordance with Federal Rule of Civil Procedure 23, for an Order:

a.   Approving the proposed Stipulation of Settlement ("Settlement Agreement") (ECF Nos. 222 (redacted) & 221-6 (unredacted)) as fair, reasonable, and adequate to Plaintiffs and the class members, and directing the Settlement Agreement's consummation according to its terms;

b.   Finding that the form and manner of class notice implemented pursuant to the Settlement Agreement: (i) constitutes reasonable and the best practicable notice; (ii) constitutes notice reasonably calculated, under the circumstances, to apprise class members of the pendency of the litigation, the terms of the proposed Settlement Agreement, the right to object to the proposed Settlement Agreement or exclude themselves from the Class, and the right to appear at the Final Fairness Hearing; (iii) constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meets the requirements of state and federal due process, the Federal Rules of Civil Procedure, and any other applicable state and/or federal laws;

c.   Certifying the Settlement Class for settlement purposes;

d.   Finding that all Class Members shall be bound by the Settlement Agreement, including its release provisions except for those who have a submitted a valid opt-out request;

e.   Directing that judgment be entered dismissing with prejudice all individual and class claims asserted in the litigation and ruling that no costs or fees be assessed on either party other than as expressly provided in the Settlement Agreement and awarded by the Court in ruling upon Plaintiffs' Motion for an Award of Attorneys' Fees and Expenses, ECF No. 258;

f.   Incorporating the release and related provisions set forth in the Settlement Agreement and barring any Released Claims against the released parties;

1

1    g.      Approving payment of the benefits to the class members consistent with the

2    Settlement Agreement;

3    h.      Approving distribution of 75% of the PAGA Payment to the State of California

4    Labor and Workforce Development Agency; and

5    i.      Retaining jurisdiction of all matters relating to the interpretation, administration,

6    implementation, and enforcement of the Settlement Agreement.

7    As discussed in the accompanying memorandum, approval of the Settlement Agreement and

8    the related relief requested herein is appropriate under applicable law and well justified under the

9    circumstances of this matter.

10   This motion is based on this notice of motion and motion; the accompanying memorandum of

11   points and authorities; the Settlement Agreement, including all exhibits thereto, and all papers filed in

12   support thereof; the accompanying declarations of Charles Ferrara ("Ferrara Decl."), Tina Wolfson

13   ("Wolfson Decl."), and Andrew Lee ("Lee Decl."); the argument of counsel; all papers and records on

14   file in these cases; and such other matters as the Court may consider.

16   Dated:  January 25, 2018                     Respectfully submitted,

17                                                GOLDSTEIN, BORGEN, DARDARIAN & HO

19                                                */s/ Andrew P. Lee*
20                                                Andrew P. Lee

21   Dated:  January 25, 2018                     Respectfully submitted,

22                                                AHDOOT & WOLFSON, P.C.

24                                                */s/ Tina Wolfson*
25                                                Tina Wolfson

26                                                Attorneys for Plaintiffs and the Putative Class

2

701652.5

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

The Court preliminarily approved the proposed Settlement Agreement reached by the parties in this litigation, and approved the parties' proposed notice program.  (Prelim. Approval Order, ECF No. 242; Order Modifying Prelim. Approval Order, ECF No. 248.)  Notice has been disseminated to class members in accordance with that notice program and, through this motion, Plaintiffs respectfully request that the Court conduct a final review of the Settlement Agreement and approve it as fair, reasonable, and adequate.

The Settlement Agreement is the product of extensive arms-length negotiations between the parties and their experienced and informed counsel, and is fair, reasonable, and adequate given the claims and relief sought, the alleged harm, and the parties' respective litigation risks.

Under the terms of the Settlement Agreement, Uber agrees to pay $7.5 million into a Settlement Fund.  (Settlement Agreement ¶ 52, ECF No. 272)  The Settlement Fund will be distributed as follows: (i) to Class Members who submit timely Claim Forms; (ii) 75% of the Private Attorneys General Act ("PAGA"), California Labor Code Section 2698, *et seq.*, Payment to the California Labor and Workforce Development Agency ("LWDA"); and (iii) Court-awarded Service Awards and Attorneys' Fees and Expenses.  (*Id.* ¶ 57.)  Payments to Class Members will be allotted according to a formula that pays those who are not subject to arbitration agreements (the "Court Group") approximately twice the amount paid to those who are subject to arbitration agreements (the "ADR Group").  (*Id.* ¶¶ 62-63 & App. A.)  All Class Members will be eligible for relief from the Fund, and may elect to receive their Settlement Share payments via direct deposit, PayPal, or mailed check.  (*Id.* ¶ 62.)  Court-awarded Attorneys' Fees and Expenses and Service Awards and 75% of the PAGA payment to the LWDA will be deducted from the Fund prior to distribution to Class Members who submit Claims.  (*Id.* ¶ 57.)

Separate and apart from Uber's payment to the Settlement Fund, Uber will pay all Settlement Administration Expenses.  Should Class Members receiving their Settlement Share by mailed check

1

701652.5

fail to deposit those checks after a second remailing to corrected addresses,[1] such Residual Funds will be used to reimburse Uber for Settlement Administration Expenses.  (*Id.* ¶¶ 53(a), 64.)  Through 2017, the Settlement Administration Expenses amount to $546,260.86, and are expected to increase by some $190,000.  (Ferrara Decl. ¶ 27, filed herewith.)  In the unlikely event that Residual Funds remain after payment of Settlement Administration Expenses, such funds would be distributed as a *cy pres* award to Legal Services for Prisoners with Children, "a non-profit organization that conducts policy work and impact litigation on behalf of people who are frequently denied employment based on the now ubiquitous practice of procuring of background checks for job applicants."  (Prelim. Approval Order 4-5.)

In addition, Uber has agreed to an injunction prohibiting it from returning to use of the background check forms that Plaintiffs allege violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*  (Settlement Agreement ¶¶ 54-55.)

The Settlement provides for a robust, multi-pronged notice program and user-friendly payment-election process, which have been, and are being, implemented by the Settlement Administrator.  The Court-approved notice program provided for notice by email, followed by mailed notice to Class Members who did not open their notice emails or whose emails were returned undeliverable.  (Ferrara Decl. ¶¶ 6-10.)  Ultimately, the Settlement Administrator mailed physical notice to some 844,000 Class Members – over 80% of the Class.  (*Id.*)  In addition, the Settlement Administrator sent reminder email notices to nearly a million class members, all of which resulted in a strong claim rate.  (*Id.* ¶ 11.)

The reaction from Class Members has been overwhelmingly positive, and strongly supports final approval.  By submitting claim forms, some 99,243 Class Members have affirmatively voted "yes" to this Settlement, and requested their Settlement Share.  The deadline for class members to opt-out or object was December 14, 2017, and the deadline to submit claims was January 15, 2018.  (Order re Settlement Dates & Deadlines, ECF No. 252.)  In contrast to the 99,243 valid claims that were submitted, to date, only 216 individual Class Members have opted out, and only six submitted

---

[1] To the extent any mailed checks are returned with forwarding address information, the Settlement Administrator will re-mail a check to the new address, and if checks are returned without forwarding addresses, the Settlement Administrator will make reasonable efforts to identify an updated address and re-mail a check.  (Settlement Agreement ¶ 63.)

objections.  (Ferrara Decl. ¶¶ 16, 18, 26; ECF Nos. 259-263.)  Thus, the Class's response has been overwhelmingly favorable to the proposed Settlement.

Based on the number of Claimants, and applying the formula set forth in Appendix A to the Settlement Agreement, Class Members in the Court Group will receive a Settlement Share of $73.99, while the Class Members in the ADR Group will receive a Settlement Share of $32.15 (assuming the Court awards Class Counsel the full amount of their requested Attorneys' Fees and Expenses, and Plaintiffs the full amount of their requested Service Awards).  (Wolfson Decl. ¶ 16, filed herewith.)  In relation to the likely recovery after trial (which would not be possible at all for members of the ADR Group), and in light of the risks that continued litigation (or arbitration, for that matter) would entail, as described in more detail below, these Settlement Shares represent an excellent recovery for Class Members.

For the foregoing reasons and the others detailed below, the Settlement Agreement meets the standards for final settlement approval and should be approved.

## II.   **BACKGROUND**

In their Motion for Preliminary Approval of Class Action Settlement, ECF No. 223, Plaintiffs described the procedural history, history of negotiations, and discovery that preceded that motion, which will not be repeated here.  (*Id.* 2-4.)  Plaintiffs filed their Motion for Preliminary Approval of Class Action Settlement on April 25, 2017.  (*Id.*)  Oral argument was held on June 1, 2017.

The parties filed a Joint Supplemental Brief in Support of the Motion for Preliminary Approval, ECF No. 240, on June 13, 2017, in response to questions posed by the Court during the June 1 hearing.  On June 29, 2017, the Court issued its Order granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Prelim. Approval Order"), ECF No. 242.  That order required the parties to "devise a test trial run" for email notices and submit the design for such a test to the Court.  (*Id.* at 15.)  The parties' counsel met and conferred extensively on this issue, and discussed it with the Settlement Administrator.  Ultimately, the parties filed a Joint Further Supplemental Brief in response to the Court's June 29 Order, ECF No. 247, informing the Court that they had agreed on a modification to the notice program that would address the Court's concerns by providing for mailed notice to Class Members who did not open their notice email.  On August 15, 2017, this Court modified its June 29

1   Order by adding a postcard notice procedure in the event confirmation could not be obtained that

2   recipients had opened previously sent email notifications.  (Order Modifying Prelim. Approval Order,

3   ECF No. 252.)  Following entry of the Preliminary Approval Order, Class Counsel worked closely

4   with the Court-appointed Settlement Administrator, the Angeion Group, LLC, and with counsel for

5   Uber to implement the notice program approved by this Court.  (Wolfson Decl. ¶ 5.)

6          On November 22, 2017, Plaintiffs and their counsel filed a Motion for Service Awards, ECF

7   No. 257, and Motion for an Award of Attorneys' Fees and Expenses ("Pls.' Fee Mot."), ECF No. 258.

### III.   THE SETTLEMENT

**A.    The Settlement Classes**

10         The Settlement Class is defined as "all persons who were subject to a background check and/or

11   consumer report request by Uber before January 3, 2015."  (Settlement Agreement ¶ 37.)  The January

12   3, 2015, date coincides with the time when Uber changed its practices with respect to the background

13   check procedures at issue.

14         Uber represents and warrant that there are 1,025,954 potential class members.  (ECF No. 221-6,

15   ¶ 70(a)(i).)  The Class is divided into two subgroups: those who are subject to an arbitration provision

16   that was the subject of the Ninth Circuit enforceability ruling ("the ADR Group"), and those who are

17   not subject to such a provision ("the Court Group").  There are 424,125 members of the ADR Group,

18   and 601,829 members of the Court Group. (*Id.*, ¶ 70(a)(ii)-(iii).)

**B.    Benefits to Class Members**

**1.    Monetary Benefits**

21         Under the terms of the Settlement Agreement, Uber agrees to pay $7.5 million into a

22   Settlement Fund, which will be used to pay: (a) Class Members who submit timely claim forms, (b)

23   Service Awards to named Plaintiffs, (c) Attorneys' Fees and Expenses to Class Counsel, and (d) 75%

24   of the PAGA Payment to the LWDA.  (Settlement Agreement ¶¶ 42, 52, 57.)  A portion of that amount

25   – $7,500 – is allocated for the settlement and release of the single, background check PAGA claim in

26   this case.  (*Id.*, ¶ 20).  75% of the PAGA settlement amount, totaling $5,625.00, will be paid to the

27   California Labor and Workforce Development Agency, with the remaining 25% distributed to the

28   Class Members.  (*Id.*)

All Class Members will be eligible for relief from the Settlement Fund.  In order to receive payment from the Settlement Fund, Class Members must have completed and submitted a simple Claim Form – as many did.  The Claim Form was available on the Settlement Website, where it could be completed and submitted (or, alternatively, Class Members could download or request a Claim Form by phone and submit the Claim Form by mail, email or fax).  (*Id.* ¶¶ 5, 62, 89, 91-94, 96 & Ex. C, (Claim Form).)  Class Members could elect to be paid by mailed check, PayPal, or by digital check (direct deposit).  (*Id.*, Ex. C.)

The actual payments to Class Members depend on the number of members of each group who submit Claim Forms.  Based on the number of claims received, and assuming that the Court awards Class Counsel the full award of Attorneys' Fees and Expenses requested, and Plaintiffs the full amount of their requested Service Awards, preliminary calculations suggest that members of the Court Group will each receive a Settlement Share of $73.99, while members of the ADR Group will each receive a Settlement Share of $32.15.  (Wolfson Decl. ¶ 16.)

**2.    Practice Changes**

In addition to the monetary relief described above, the Settlement Agreement provides for stipulated injunctive relief preventing Uber, for at least one year following final approval, from "deliberately return[ing] to the form of background check disclosure that had been provided to the Plaintiffs in or before 2014."  (Settlement Agreement ¶¶ 54-55.)

**C.    Opt-Out Procedure**

Class Members had two easy options to opt out of the Settlement Agreement:  (i) sending a signed letter to the Settlement Administrator; or (ii) electronically submitting a completed opt-out form available on the Settlement Website.  (*Id.* ¶¶ 106-109).  Members of the Settlement Class who opted out of the Settlement Agreement will not release their claims, but the settlement of the single PAGA claim based on background checks encompassed within Class Members' Released Claims will have *res judicata* effect on all Class Members, irrespective of whether they opted out of the Settlement Agreement.  (*Id.*)

Any Class Member could opt out of the Settlement Agreement.  The deadline to submit opt-outs was December 14, 2017.  (ECF No. 252.)  Class Members who opted out will not release any

1    claims.  The opt out procedure was easy to understand, and could be accomplished directly through the

2    Settlement Website, or by mail to the Settlement Administrator.  (Settlement Agreement ¶ 106.)  Some

3    216 individual Class Members have opted out.  (Ferrara Decl. ¶ 18.)

4         Class Members were required to opt out of the Settlement Class individually.  So-called "mass"

5    or "class" opt outs are not allowed under the terms of the Settlement.  (*Id.* ¶ 108.)  *See Hanlon v.*

6    *Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998) ("The right to participate, or to opt-out, is an

7    individual one and should not be made by the class representative or the class counsel.")  One attorney

8    wrote a single letter to opt out several hundred Class Members, many of whom actually submitted

9    claims, but failed to provide individual signatures from his list of purported clients.  That opt-

10   out/objection is addressed in Plaintiffs' concurrently filed Response to Objections, along with the other

11   objections that have been submitted.

12        Class Members who opt out may not file an objection to the Settlement Agreement.

13   (Settlement Agreement ¶ 109.)

14        The opt-out procedures set forth in the Settlement Agreement comply with the United States

15   District Court for the North District of California's Procedural Guideline for Class Action Settlements.

16   *See* <http://www.cand.uscourts.gov/ClassActionSettlementGuidance>.

17   **D.    Objection Procedure**

18        Class Members were able to object to the Settlement Agreement by filing their objections

19   through the Court's ECF system, mailing them to the Class Action Clerk for the United States District

20   Court for the North District of California, or by filing them in person at any location of the Northern

21   District of California Court.  (*Id.* ¶ 104.)  Only Class Members who did not opt-out could file

22   objections.  (*Id.*)  The objection deadline was December 14, 2017, and six objections have been

23   submitted.  (ECF Nos. 259-263; Ferrara Decl. ¶ 26.)

24        Plaintiffs explain why those objections should be overruled in their concurrently filed Response

25   to Objections.  For present purposes, it is important to note that the number of objections pales in

26   comparison to the 99,243 valid claims submitted, each of which constitutes a vote in favor of the

27   Settlement.

28

The objection procedures set forth in the Settlement Agreement comply with the United States District Court for the North District of California's Procedural Guideline for Class Action Settlements. (http://www.cand.uscourts.gov/ClassActionSettlementGuidance).

**E.**     **Attorneys' Fees, Costs, and Service Awards**

  **1.**     **Attorney Fees:**

On November 22, 2017, Class Counsel moved the Court for an award of attorneys' fees in the amount of $2.5 million, which equals one-third of the Settlement Fund (or 30.8% of the common fund created through the Settlement, including the Settlement Administration Expenses), plus expenses in the amount of $48,249.25.  (Motion for an Award of Attorneys' Fees and Expenses.)  As explained in that motion, the requested award is supported by the results achieved, the risk of continued litigation, the Settlement's injunctive relief, the quality of Plaintiffs' representation, awards in comparable cases, the contingent nature of the representation, the response of the Class, and Plaintiffs' counsel's time spent on the matter, which resulted in a lodestar at the time of that filing totaling $3,166,410.[2]  The requested fees represent a negative multiplier on counsel's actual lodestar (at that time) of 0.7895.  *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (applying a lodestar multiplier of 3.65 and noting that the majority of cases apply a multiplier between 1.0 and 3.0); *see also In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liability Litig.*, No. 3:15- md-2672 CRB (JSC), 2017 WL 1047834, at *5-6 (N.D. Cal. Mar. 17, 2017) (approving a multiplier of 2.63, quoting *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation.")). The Class Notice informed Class Members that Class Counsel would seek an award of attorneys' fees up to one-third of the Settlement Fund ($2.5 million), plus expenses.  (Settlement Agreement, Ex. E (Settlement Notice) § 20.)

  **2.**     **Costs:**

Under the Settlement Agreement, Uber agrees to pay all Settlement Administration Expenses. (Settlement Agreement ¶ 53(a).)  These costs do not come out of the Settlement Fund, unless there are

---

[2] The current lodestar has risen to $3,354,597.  (Wolfson Decl. ¶ 3; Lee Decl. ¶¶ 5-6.)

1   Residual Funds (*i.e.*, un-deposited checks) remaining after payment of Settlement Shares to Class

2   Members.  (*Id*. ¶ 64.)  Settlement Administration Expenses currently amount to $546,260.86, and are

3   expected to rise by another $190,000.  (Ferrara Decl. ¶ 27.)

4   **3.    Service Awards:**

5   Plaintiffs' Motion for Service Awards, ECF No. 257, was filed on November 22, 2017.

6   Plaintiffs requested modest service award payments in recognition of the risk and effort entailed in

7   pursuing the class claims in this litigation.  As explained more fully in that motion, Plaintiffs Wise,

8   Farmer, and Christenson seek awards in the presumptively reasonable amount of $5,000. Plaintiffs

9   Gillette and Mohamed, who have participated in the litigation since its initiation in November 2014

10  and who have both agreed to give up valuable wage and hour claims against Uber, seek awards of

11  $7,500.

12  The arguments in favor of Plaintiffs' service awards are set forth in their Motion for Service

13  Awards, and will not be repeated here.  Without the named Plaintiffs' invaluable participation, the

14  Settlement would not have been achievable.

15  **F.    Cy Pres**

16  Only if Residual Funds remain after payment of Settlement Administration Expenses (a highly

17  unlikely scenario), would any such Residual Funds become a *cy pres* award to Legal Services for

18  Prisoners with Children.  Among other projects, Legal Services for Prisoners with Children has been at

19  the forefront of the national "Ban the Box" movement, which seeks to ensure that employers' hiring

20  practices are compliant with applicable federal and state background check laws, such as the FCRA.  It

21  also seeks the removal of questions regarding arrests and criminal convictions from applications for

22  employment, housing, public benefits, and other services that are critical to persons who are attempting

23  to renter society after being released from prison.  (Nunn Decl., ECF No. 223-3.)  In addition, Legal

24  Services for Prisoners participates in clean slate clinics, informing job applicants of their rights under

25  various background check laws and ensuring that job applicants maximize their opportunity to dispute

26  inaccurate or improper background information.  (*Id*.)  The organization has also directly advocated on

27  behalf of the Class herein by encouraging Uber to limit the use of background checks and to inform

28  drivers and driver applicants about clean slate remedies.  (*Id*.)

1   Given that Settlement Administration Expenses currently total $546,260.86, and are expected

2   to reach $736,260.86, it is highly unlikely that there will be any such *cy pres* award.  (Ferrara Decl.

3   ¶ 27.)

4   **G.     Release**

5   Paragraph 41 of the Settlement Agreement defines "Settlement Class Members' Released

6   Claims" as all claims:

7   arising out of or relating to any allegations made in the Action, any legal
theories that could have been raised based on the allegations in the
8   Action, and all claims of any kind relating in any way to, or arising out
of, background checks and/or consumer reports of any kind presented in
9   the Action based on the facts alleged in the Complaint, including but not
limited to claims under the Fair Credit Reporting Act ("FCRA"),
10  California Consumer Reporting Agencies Act, California Investigative
Consumer Reporting Agencies Act, California Private Attorney General
11  Act ("PAGA") claims pursuant to Cal. Labor Code § 2699, based on
alleged violations of California Labor Code § 1024.5, California
12  Business and Professions Code section 17200, and Massachusetts CORI
related claims. "Settlement Class Members' Released Claims" includes
13  claims for actual, statutory, liquidated, punitive or any other form of
damages, as well as for attorneys' fees and costs. "Settlement Class
14  Members' Released Claims" shall be construed as broadly as possible to
affect complete finality over this Action. Settlement Class Members'
15  Released Claims do not include, and Settlement Class Members are not
releasing, any PAGA claims that are not based on background checks
16  and/or consumer reports.

17  Thus, under the Settlement Agreement, Class Members agree to release all claims actually

18  brought in this suit, as well as all background check claims that could have been asserted based on the

19  allegations included in the Amended Master Complaint.  Class Members are not releasing other claims

20  under the California Labor Code or PAGA, such as those recently settled and approved in *Price v.*

21  *Uber Technologies, Inc.*, No. BC554512 (L.A. Cnty. Super. Ct.), for $7.75 million and sought to be

22  amended into the *O'Connor* action.

23  **IV.    NOTICE HAS BEEN DISSEMINATED, AND THE RESPONSE FROM THE CLASS
HAS BEEN VERY POSITIVE**

24

25  The robust notice program approved by this Court's Order granting Plaintiffs' Motion for

26  Preliminary Approval of Class Action Settlement, in combination with this Court's Order Modifying

27  Preliminary Approval Order, has been implemented by the parties and the Settlement Administrator.

28

9

This Court reviewed Plaintiffs' proposed notice program and found that the notices adequately inform prospective class members of (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).  (Prelim. Approval Order p. 14.)

## A.    Direct Notice to Class Members

As represented in the Settlement Agreement, Uber has names, e-mail address, and physical mailing address for Class Members (though not necessarily current).  (Settlement Agreement ¶ 70.) Based on this representation, this Court approved a process through which the Settlement Administrator would email notice of the Settlement Agreement to each potential class member, and then follow up with a postcard sent to the last known mailing address for those members whose initial notice emails either bounced back or did not provide an "open confirmation."  (*Id.* Ex. H; Order Modifying Prelim. Approval Order.)

As explained in the concurrently filed Declaration of Charles Ferrara, the Settlement Administrator sent email notices to 1,024,270 Class Members.  111,920 of these were returned as undeliverable, and the Settlement Administrator did not receive confirmation that another 793,197 were opened by their recipients.  (Ferrara Decl. ¶ 6.)  The Settlement Administrator then mailed physical copies of notice to all Class Members whose emails were returned as undeliverable, or not confirmed as opened.  In total, the Settlement Administrator mailed notice to 843,696 Class Members – over 80% of all Class Members.  (*Id.* ¶ 7.)

The Settlement Administrator conducted address verification searches on all Class Members whose mailed notices were returned without forwarding addresses, and re-mailed notices to updated addresses.  (*Id.* ¶¶ 8-10.)  Finally, the Settlement Administrator sent out nearly a million reminder emails.  (*Id.* ¶ 11.)

## B.    Settlement Website and Toll-Free Number

As required under the Settlement Agreement, the Settlement Administrator established a website at www.UberFCRASettlement.com and a toll-free phone number that class members can call

to obtain information about the Settlement Agreement and request a physical copy of the long-form notice.  Class Members were able to submit claim and opt-out forms by mail, email, or through the Settlement Website.  (Settlement Notice, ECF No. 222-5.)

**C.**     **Claims and Responses to Notice**

As of January 23, 2018, the Settlement Administrator received 99,243 valid claim forms.  (*Id.* ¶ 16.)  This represents approximately 10% of all Class Members.

Compared to the number of claims, the number of opt outs is very low, at 216 (*Id*. ¶¶ 16, 18), as is the number of objections, at six.

**V.**     **THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT**

**A.**     **The Class Action Settlement Approval Process**

Proceedings under Federal Rule of Civil Procedure 23 have led to a defined three-step procedure for approval of class action settlements:

> (1)     Certification of a settlement class and preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval.
>
> (2)     Dissemination of notice of the proposed settlement to the affected class members.
>
> (3)     A formal fairness hearing, or final settlement approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement are presented.

*See* Manual for Complex Litigation (Fourth) §§ 21.63 *et seq*. (2004).  This procedure safeguards class Members' procedural due process rights and enables the Court to fulfill its role as guardian of class interests.  *See* William Rubenstein, Alba Conte & Herbert B. Newberg, Newberg on Class Actions, § 13.10 *et seq.* (5th ed. 2013) (hereinafter "Newberg").

The Court completed the first step in the settlement approval process when it issued the Preliminary Approval Order and Order Modifying Preliminary Approval Order.  The second step – dissemination of notice to the class members – has been implemented by the Settlement Administrator.  (Ferrara Decl. ¶¶ 6-11.)  By this motion, Plaintiffs respectfully request that the Court take the third and final step and grant final approval of the Settlement Agreement.

**B.**     **Final Approval of the Settlement Is Appropriate**

Public policy "strong[ly] ... favors settlements, particularly where complex class action

701652.5

litigation is concerned." *In re Syncor ERISA Litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Netflix Privacy Litig.*, No. 5:11-CV-00379, 2013 WL 1120801, at *3 (N.D. Cal. Mar. 18, 2013).

In weighing final approval of a class settlement, the Court's role is to determine whether the settlement, taken as a whole, is fair, reasonable, and adequate. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (citing *Hanlon*, 150 F.3d at 1026). The Ninth Circuit has established a list of factors to consider when assessing whether a proposed settlement is fair, reasonable and adequate: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the benefits offered in the settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Churchill Village*, 361 F.3d at 575; *Hanlon*, 150 F.3d at 1026. Application of these factors here supports the conclusion that the Settlement Agreement is fundamentally fair, reasonable, and adequate, and should be finally approved.

### 1.   The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation.

The Settlement Agreement here appropriately balances the costs, risks, and likely delay of further litigation, on the one hand, against the benefits provided, on the other hand. *See* Newberg § 13.44 ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."). The result here is a strong one, given the significant challenges and risks that Plaintiffs and the class members continue to face in the litigation – risks that Plaintiffs and Class Counsel were well-positioned to evaluate based on their extensive investigation, discovery, and analysis of the relevant facts and legal issues.

### a.   A Significant Percentage of Settlement Class Members Could be Forced into Individual Arbitration Absent a Settlement.

First and foremost, the significant jurisdictional issues present in this case must be considered when assessing the proposed Settlement's reasonableness. Uber confirmed its intention to seek

701652.5

1    dismissals, based on the arbitration agreements, of claims by all members of the ADR Group, if the

2    parties were unable to reach a settlement.  Under the Ninth Circuit's ruling on the Enforceability

3    Appeals, all Class Members who fall into the ADR Group would be forced to arbitrate their claims on

4    an individual basis, at least through the gateway issue of arbitrability, if not *in toto*.  (Order & Am. Op.

5    7, ECF No. 203.)  And based on the class action waivers in the arbitration agreements, it is unlikely

6    anyone in the ADR Group would be able to benefit from a class action settlement through arbitration.

7    Thus, a significant percentage of the entire Settlement Class would be forced to arbitrate their claims

8    on an individual basis, with the prospect of a relatively small individual award.

9                  **b.    Uber Would Challenge Plaintiffs' Standing.**

10            As explained in Plaintiffs' Preliminary Approval motion, Uber had indicated that it would

11   pursue dismissal for lack of standing if this litigation proceeds, based on some authority indicating that

12   disclosure violations under FCRA may not establish concrete injury-in-fact for standing purposes

13   under Article III.  *See, e.g.*, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-50 (2016); *In re Michaels*

14   *Stores, Inc., FCRA Litig.*, Nos. 14-7563, 15-2547, 15-5504, 2017 WL 354023, at *6-12 (D.N.J. Jan. 24,

15   2017) (dismissing 15 U.S.C. § 1681b(b)(2) claim for lack of concrete injury) and *LeGrand v.*

16   *Intellicorp Records, Inc.*, No. 15-cv-2091, 2017 U.S. Dist. LEXIS 26156, at *6-8 (N.D. Ohio Feb. 24,

17   2017) (granting motion to dismiss Section 1681b(b)(2) claim for lack of injury and noting the

18   "majority" of post-*Spokeo* courts to address stand-alone disclosure claims have found no standing).

19   However, in light of the Ninth Circuit's opinion in *Syed v. M-I, LLC*, 853 F.3d 492, 499 (9th Cir.

20   2017), holding that a violation of the standalone disclosure requirement may provide the basis for

21   Article III standing, Plaintiffs believe they have the better argument on this point, though like any other

22   defense this one still presents some risk.

23                  **c.    Plaintiffs Face Risks on the Merits of Their FCRA Claims.**

24            The issue of employment status of the potential Class members remains unsettled and

25   represents a significant risk to Plaintiffs' litigation prospects. Plaintiffs' allegations are based on FCRA

26   provisions, and similar state law, pertaining to background checks performed for "employment

27   purposes." 15 U.S.C. § 1681b (b)(2)(A) (Am. Master consolidated Comp. ¶¶ 75, 85, ECF No. 171); 15

28   U.S.C. § 1681b(b)(3)(A) (*id.* ¶¶ 92, 102); Cal. Civ. Code § 1785.20.5 (*id.* ¶ 114).  If the relevant

701652.5

disclosure requirements were found not to apply to independent contractors, Plaintiffs' causes of action would be destroyed.

Courts have split on whether FCRA's disclosure requirements can be applied broadly to include non-employees such as independent contractors. *Compare Johnson v. Sherwin-Williams Co.*, 152 F. Supp. 3d 1021, 1025-27 (N.D. Ohio 2015) (FCRA inapplicable to subcontractor screening) and *Lamson v. EMS Energy Mktg. Serv.*, 868 F. Supp. 2d 804, 817-18 (E.D. Wis. 2012) (same) with *Ernst v. Dish Network, LLC*, 49 F. Supp. 3d 377, 385 (S.D.N.Y. 2014) (rejecting *Lamson* and concluding that consumer report obtained by defendant for third-party contractor was for "employment purposes"); *see also Hoke v. Retail Credit Corp.*, 521 F.2d 1079, 1082 (4th Cir. 1975) (holding that a consumer report issued by a credit reporting agency to a state medical licensing board was provided "for employment purposes."); *Advanced Conservation Sys., Inc. v. Long Island Lighting Co.*, 113 F.3d 1229 (2d Cir. 1997) (holding that consumer reports used to vet contractors listed on a utility company's service directory were obtained for "employment purposes.").

The Federal Trade Commission ("FTC"), which implements, enforces, and interprets FCRA, has repeatedly expressed its view that the term "employment purposes," as used in FCRA, must be interpreted broadly to include independent contractors in order to effectuate the broad remedial purpose of FCRA.[3]  However, if Uber were to prevail on this issue, Plaintiffs would be required to prove that Class Members are employees. At this time it is uncertain whether employment status for purposes of FCRA can be determined on a nationwide basis or instead must be made under applicable state laws on a state-by-state basis.  Although Plaintiffs believe that Uber drivers will ultimately be proven to be employees, and thus subject to FCRA's disclosure and authorization requirements, this is

---

[3] In the FTC's commentary on interpretation of FCRA, it explained that "[a] report in connection with security clearances of a government contractor's employees would be for 'employment purposes' under this section" even though the government was not the direct employer of the contractor's employees. Statement of General Policy or Interpretation; Commentary on the Fair Credit Reporting Act, 55 Fed. Reg. 18804-01 (May 4, 1990).  Moreover, in a 1998 advisory opinion, the FTC concluded that consumer reports obtained for hiring truck drivers were for "employment purposes" even though the truck drivers were independent contractors who owned and operated their own vehicles and equipment.  Advisory Op. to Allison, Fed. Trade Comm'n (Feb. 23, 1998).  Similarly, the FTC concluded that consumer reports intended to reduce embezzlement by independent contractors who "sell insurance, examine title, and close real property transactions" were obtained for "employment purposes."  Advisory Op. to Solomon, Fed. Trade Comm'n (Oct. 27, 1998).

by no means a settled issue and several states have found Uber drivers to be independent contractors in recent years.[4]

Even in the event that Plaintiffs prevail in their interpretation of the FCRA, Uber can argue it is regulated by state transportation safety regulations, rendering the standalone disclosure requirement contained FCRA's "general" employment provision[5] inapplicable. *See* 15 U.S.C. § 1681b(b)(2)(C).

Next, Plaintiffs would have to demonstrate that Uber's violation of FCRA was "willful" in order to recover statutory damages. *See* 15 U.S.C. § 1681n (a). Uber would first argue that the unsettled employment status of its drivers nullifies any argument by Plaintiffs that Uber *willfully* failed to treat those drivers as employees such that FCRA's requirements would apply. Uber's position will be that because at least two district courts have held that independent contractors are not subject to FCRA's disclosure requirements. *Johnson*, 152 F. Supp. 3d at 1027 (FCRA inapplicable to subcontractor screening); *Lamson*, 868 F. Supp. 2d at 818 (same). Uber could also assert that any non-compliance with respect to its FCRA disclosure form – for example, the inclusion of extraneous information such that the disclosure was not provided in a document that consists solely of the disclosure – was unintentional and does not amount to a willful violation. *See Goldberg v. Uber Techs., Inc.*, No. 14-cv-14264, 2015 WL 1530875, at *4 (D. Mass. Apr. 6, 2015) (granting Uber's motion to dismiss without leave to amend). District courts have noted that *Safeco Insurance of America v. Burr*, 55 U.S. 47 (2007), hangs the determination of willfulness on whether the law was clearly established at the time of the alleged violation, and courts have found that the law regarding FCRA's disclosure provision, was too muddled to support such a finding. *See Just v. Target Corp.*,

---

[4] On November 23, 2016, the Hon. Michael D. Marcus (Ret.) found – after a three-day arbitration followed by supplemental briefing and written argument—that a California Driver was an independent contractor and not an employee, in *Eisenberg v. Uber Technologies, Inc., et al.* (ADRS Case No. 15-6878-MDM). There are also examples of decisions from administrative bodies across the country finding that drivers who used the Uber App were independent contractors. Several of these decisions – including decisions from Arizona, Georgia, Florida, Kansas, Massachusetts, Minnesota and Nevada – found independent contractor status on a state-wide basis. *See also Alatraqchi v. Uber Techs., Inc., Labor Commissioner, State of California*, No. 11-42020 CT (2012) (upholding IC classification); *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1123 (N.D. Cal. 2016) (with respect to the underlying driver misclassification claim, court acknowledged the risks faced by plaintiffs and stated that "the fundamental question of whether Uber drivers are employees or independent contractors is not a simple one").

[5] (15 U.S.C. § 1681b (b)(2)(A)).

187 F. Supp. 3d 1064, 1069 (D. Minn. 2016); *Landrum v. Harris Cnty. Emergency Corps.*, 122 F. Supp. 3d 617, 625 (S.D. Tex. 2015); *Schoebel v. Am. Integrity Ins. Co.*, No. 15-cv-380, 2015 WL 3407895, at *7-10 (M.D. Fl. May 27, 2015).

A finding that Uber's FCRA violations were merely negligent, as opposed to willful, would have far reaching implications, including Rule 23 certification issues.  Negligent violations of FCRA are limited to actual damages.  15 U.S.C. § 1681o (a).[6]  While Plaintiffs are confident that they can demonstrate such actual damages on a class-wide basis, proof through common evidence equally applicable to all Class Members would be hotly contested by Uber.  Thus, Uber's arguments concerning willfulness take aim not only at Class Members' potential recovery, but at certification and, indeed, at their ability to recover anything at all through continued class litigation on behalf of those entitled to participate.

Uber also has already taken the position that its disclosures did comply with FCRA.[7]  Thus, where different Class Members received different disclosures – because Uber allegedly issued both formal and informal background check disclosures – Uber will argue that there are individual issues regarding the sufficiency of FCRA disclosures.  *See, e.g.*, *Reardon v. ClosetMaid Corp.*, No. 08-cv-1730, 2013 WL 6231606, at *9 (W.D. Pa. Dec. 2, 2013) (finding, in summary judgment context, that plaintiffs who received two disclosure forms, one of which was compliant and one of which was not, could not prosecute disclosure claim); *Coleman v. Kohl's Dep't Stores, Inc.*, No. 15-cv-2588-JCS, 2015 WL 5782352, at *7 (N.D. Cal. Oct. 5, 2015) (no willful violation where separate forms were provided, at least one of which was compliant); *cf. In re: Google Inc. Gmail Litig.*, No. 13-md-2430-

---

[6] The same analysis applies to Plaintiffs' claims under state law.  *See, e.g.*, Cal. Civil Code § 1785.19).

[7] *See, e.g.*, *Peikoff v. Paramount Pictures Corp.*, No. 15-cv-068-VC, 2015 U.S. Dist. LEXIS 63642, at *4 (N.D. Cal. Mar. 25, 2015) (granting motion to dismiss; "even if inclusion of the certification [of truthfulness] in Paramount's disclosure form did not comply with a strict reading of Section 1681b(b)(2)(A)'s requirement that the document consist solely of the disclosure and the authorization, it is not plausible that Paramount acted in reckless disregard of the requirement of the FCRA by using this language"); *Noori v. Vivint, Inc.*, No. 16-cv-5491-A, 2016 U.S. Dist. LEXIS 120963, at *14 (C.D. Cal. Sept. 6, 2016) (dismissing a complaint with prejudice on Rule 12 motion, holding that disclosure which included information on an applicant's rights under state fair credit reporting laws and ability to view a copy of such a report, did not violate FCRA's disclosure requirement); *Newton v. Bank of Am.*, No. 14-cv-3714-CBM-MRW, 2015 WL 10435907, at *4-8 (C.D. Cal. May 12, 2015) (explanation of background check, authorization statement, identifying information and other information related to the BGC did not violate FCRA).

LHK, 2014 U.S. Dist. LEXIS 36957, at \*72-73 (N.D. Cal. Mar. 18, 2014) (denying class certification in *Electronic Communications Privacy Act* case in part because the disclosures relevant to the fact-finder's determination of implied consent is not limited to disclosures by the defendant, but also include "the full panoply of disclosures, from the news media, from Google, and from other sources").

### d.   Plaintiffs Face Risks on the Merits of Their State Law Claims.

#### i.   Massachusetts Claims Pursuant to M.G.L. c. 93 § 62

To prevail on Plaintiffs' Massachusetts claims under M.G.L. c. 93 § 62, Plaintiffs would have to defeat a preemption defense. *See, e.g.*, *Goldberg*, 2015 WL 1530875, at \*3 ("[T]he allegations of violations of the MCRAA stumble out of the gate because FCRA preempts the relevant state law."); *see also* 15 U.S.C. § 1681t (b)(1)(C) (finding preemption on "any subject matter ... relating to the duties of a person who takes any adverse action with respect to a consumer"). And Uber intends to challenge Plaintiffs' claims pursuant to M.G.L. c. 6 § 171A based on a defense that the statute provides no private right of action.[8]

#### ii.   California Claims Pursuant to California Civil Code § 1785.1 and California Labor Code §§ 2699, 1024.5

Plaintiffs' claims under California Civil Code § 1785.1 and California Labor Code §§ 2699, 1024.5 will be subject to Uber's defense that it never conducted a credit check on California Plaintiff Christensen. In addition, Plaintiffs' remedies under California Business & Professions Code § 17200 ("UCL") are limited to injunctive relief, and Uber may argue that the standing requirements could be interpreted as stricter than those of FCRA. *See, e.g.*, *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150 (2003). Standing under the UCL is limited to those who have "suffered injury in fact and [have] lost money or property as a result of ... unfair competition." *Yanting Zhang v. Superior Court*, 57 Cal. 4th 364, 372 (2013) ("Accordingly, to bring a UCL action, a private plaintiff must be able to show economic injury caused by unfair competition.").

### e.   Plaintiffs Face Risks on Their Damages Theory.

Plaintiffs also anticipate Uber attacking their damages theories by arguing that Plaintiffs did not

---

[8] The Massachusetts claims also are vulnerable to the determination of employee or independent contractor status – a risk identified *supra*.

701652.5

1   suffer any actual harm (*Andrade v. Chase Home Fin., LLC*, No. 04-cv-8229, 2005 WL 3436400, at *6

2   (N.D. Ill. Dec. 12, 2005) (noting as "common sense" that evidence of actual damages is "potentially

3   quite meaningful" for calculating the appropriate amount of statutory damages under FCRA)), or that

4   actual damages cannot be certified (*Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 421 (N.D. Cal.

5   2014)), or that Plaintiffs can only recover one award of statutory damages – not damages for each

6   claim or violation (*Stillmock v. Weis Mkts., Inc.*, 385 Fed. App'x 267, 273 (4th Cir. 2010)).  Plaintiffs

7   dispute Uber's interpretation of the applicable case law, but Plaintiffs also see some risk in pursuing

8   their claims and proving actual damages on a class-wide basis.

9          **2.**       **The Benefits of the Settlement**

10         In the face of these significant litigation risks, the Settlement Agreement provides substantial,

11  valuable relief to all Class Members, as well as important changes that will benefit future Uber drivers.

12         In light of the significant risks and litigation challenges discussed above, a recovery of a

13  substantial percentage of the likely award if this case had proceeded all the way through final judgment

14  is an excellent recovery for the Settlement Class.[9]

15         Although, as this Court discussed in its Preliminary Approval Order, if Plaintiffs were to prove

16  willful violations with over 1 million class members, Uber's liability on the FCRA claims would be

17  significantly more than the $7.5 million figure in the Settlement Agreement.[10]   However, as this Court

18  further explained, the "value of a settlement cannot be assessed in a vacuum," but rather "must be

19  considered in light of the strength of the plaintiff's case and the risks in pursuing further litigation."

20  (Prelim. Approval Order 9, ECF No. 242 (quoting *Viceral v. Mistras Grp., Inc.*, No. 15-CV-02198-

21  EMC, 2016 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016)).)  Here, there are substantial risks in

22

23  _____

[9] *See, e.g.*, *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("[T]here is no
24  reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a
    thousandth part of a single percent of the potential recovery") *abrogated on other grounds by*
25  *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000); *Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234, 1242 (9th Cir. 1998) ("[T]he very essence of a settlement is compromise, a yielding of
26  absolutes and an abandoning of highest hopes ....  The fact that a proposed settlement may only amount to
    a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly
27  inadequate and should be disapproved.") (internal quotations and citations omitted); *Hanlon*, 150 F.3d at
    1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product
28  could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

[10] This Court estimated the total value in this hypothetical to be between $100 million and $1 billion.

18

701652.5

proceeding with litigation that weigh in favor of a significant discount, as discussed herein.  For instance, in addition to the significant obstacles to recovery identified through discovery (discussed in the following section, below), over 40% of the class members are subject to arbitration provisions that the Ninth Circuit has now held to be enforceable, which means that a large portion of the class would be excluded from this litigation and forced to arbitrate their claims individually.  There is a strong likelihood that few would pursue individual arbitration based on the small potential recovery per individual.  The Court previously found that "this fact alone accounts for a significant discount on the potential recovery."  (Prelim. Approval Order 10, ECF No. 242.)  The monetary recovery promised by the Settlement Agreement, along with its non-monetary relief, compares favorably to other settlements in FCRA background check cases, particularly those that settled before certification or summary judgment briefing.[11]

Moreover, the injunctive relief promised by the Settlement Agreement, which would prohibit Uber from using the allegedly unlawful background check forms and practices that form the basis of this action, is a great benefit, particularly in light of the disagreement that exists in the law as to whether injunctive relief is available to private plaintiffs under FCRA and the UCL.[12]

Viewed in the context of the litigation risks faced, particularly in light of the Ninth Circuit's adverse ruling on the arbitration issue, as well as the substantial delay and costs that Class Members

---

[11] *See, e.g.*, *Brown v. Lowe's Cos., Inc.*, No. 13-cv-079-RLV-DSC, 2016 WL 6496447 & ECF No. 125-1 (W.D.N.C. Nov. 1, 2016) (granting final approval to FCRA background check settlement under which class members received $60 each); *Manuel v. Wells Fargo Bank, NA*, No. 14-cv-238-REP-DJN, 2016 WL 1070819, at *2 (E.D. Va. Mar. 15, 2016) (granting final approval to FCRA background check settlement where "each member of the Impermissible Use Class will receive a check for $35.00, and each Adverse Action Class member will receive a check for $75.00"); *Speer v. Whole Foods Mkt. Grp., Inc.*, No. 14-cv-3035, 2016 WL 7187183 & ECF Nos. 66-2, 66-3 (M.D. Fla. Jan. 15, 2016) (granting final approval to FCRA background check settlement on behalf of settlement class with 19,067 members, where fund totaled $802,720, one-third of which was awarded as attorneys' fees, leaving approximately $24 per class member after payment of administration costs and a service award); *Fernandez v. Home Depot USA, Inc.*, No. 13-cv-648-DOC-RNB, ECF No. 59 (C.D. Cal. Jan. 22, 2016) (granting final approval to FCRA background check settlement where claimants would receive $15 to $100 each); *Ryals v. Hireright Solutions, Inc.*, No. 09-cv-625, 2011 WL 13121387, at *4 (E.D. Va. July 7, 2011) (granting preliminary approval to FCRA background check settlement where class members were entitled to payments from $15 to $82.50 each).

[12] *See, e.g.*, *Gauci v. Citi Mortgage*, No. 11-cv-1387-ODW-JEM, 2011 WL 3652589, at *3 (C.D. Cal. Aug. 19, 2011) ("District courts in the Ninth Circuit agree that a private party may not obtain injunctive relief under the FCRA."); *Safeco Ins. Co. v. Superior Court*, 216 Cal. App. 3d 1491, 1494 (1990) (cannot use UCL claim to seek relief barred by underlying law).

would face before they could receive anything from continued litigation, Settlement Agreement is in the best interests of all Class Members, and should be approved.

### 3. The Extent of Discovery and the Stage of Proceedings

For this factor, courts look to whether the parties have sufficient information to make an informed decision with respect to the settlement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

This factor weighs heavily in favor of approving the Settlement here. The parties engaged in discovery that enabled an informed evaluation of the strengths and weaknesses of their respective positions. Plaintiffs propounded 52 requests for production of documents and 13 interrogatories, while Uber propounded 158 requests for production and 61 interrogatories on Plaintiffs. (Wolfson Decl. in Supp. Mot. Prelim. Approval ¶¶ 4-5, ECF No. 223-1.) Uber produced verified responses and thousands of pages of documents, and additional information informally through and during the parties' protracted negotiations. (*Id.* ¶¶ 4, 7.)

Discovery was more than sufficient to inform the parties' settlement negotiations. Indeed, class certification and liability determinations in cases of this nature often focus on a narrow set of documents that consist of defendant's background check disclosure and authorization forms. And courts throughout the country have approved FCRA settlements in which the parties have engaged in limited discovery.[13]

Here, as this Court observed in its Preliminary Approval Order, the discovery process revealed Plaintiffs' case to be weaker in several respects than they had believed at the outset of the litigation.

---

[13] *See, e.g., Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 679 (D. Md. 2013) (approving FCRA settlement despite the absence of any depositions and the production of only 600 pages of documents); *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 473 (W.D. Va. 2011) (approving FCRA settlement and finding extensive discovery unnecessary because "the fact pattern and issues involved in the case otherwise are straightforward, and, from the court's perspective, did not require the kind of burdensome, expensive discovery that seems to plague so many class actions."). Accordingly, the extent of discovery conducted by the parties weighs in favor of preliminary approval. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (extensive discovery weighs in favor of approving settlement); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 324 (C.D. Cal. 2016) (preliminary approval of settlement appropriate where "matter was hard-fought and contentiously litigated"); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW-EMC, 2010 WL 1687832, at *12-13 (N.D. Cal. Apr. 22. 2010) ("substantial discovery" and "hard-fought litigation" weigh in favor of approval of settlement).

1   (Prelim. Approval Order 10, ECF No. 242.)  As Plaintiffs explained in their fee motion, that is correct

2   with respect to some, but not all, of Plaintiffs' claims.  (Pls.' Fee Mot. 12-13, ECF No. 258.)

3         Through discovery, Plaintiffs learned that Uber had in fact obtained written authorization from

4   the Plaintiffs to obtain background checks, and had provided Plaintiffs with some notice regarding the

5   possibility of adverse actions against them.  This discovery, however, did not establish that Uber was

6   fully compliant with the requirements of the FCRA.  Plaintiffs maintain that the background check

7   disclosure form provided to Plaintiffs violated 15 U.S.C. § 1681b (b)(2)(A), by including extraneous

8   information in the disclosure form that distracts from the disclosure itself (the "standalone" disclosure

9   requirement), and by failing to disclose that such background checks were being obtained for

10  employment purposes.  Moreover, although Uber provided Plaintiffs with pre-adverse action notices, it

11  had not established that it had system-wide policies and practices ensuring that Plaintiffs and the Class

12  were provided sufficient time to correct any inaccurate information prior to Uber taking adverse action.

13  (Wolfson Decl. in Supp. Pls.' Fee Mot. ¶ 36, ECF No. 258-2.)

14        With respect to the sole PAGA claim at issue, based on Uber's alleged violation of California

15  Labor Code § 1024.5, discovery suggested that Uber may not have performed a credit check on Ms.

16  Christenson – the only named plaintiff who advanced a claim under the statute.  Thus, the discovery

17  process provided the parties with sufficient information to make an informed decision with respect to

18  the Settlement Agreement.

19      **4.**     **<u>The Experience and Views of Counsel</u>**

20        In considering a class settlement, "[t]he recommendations of plaintiffs' counsel should be given

21  a presumption of reasonableness."  *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL

22  248367, at *4 (N.D. Cal. Feb. 2, 2009) (internal citation omitted); *see also Perkins v. LinkedIn Corp.*,

23  No. 13-CV-04303-LHK, 2016 WL 613255, at *3 (N.D. Cal. Feb. 16, 2016) ("[T]he views of Plaintiffs'

24  counsel, [including some of Class Counsel in this action,] who are experienced in litigating and settling

25  complex consumer class actions, weigh in favor of final approval.") (citing *Linney v. Cellular Alaska*

26  *P'ship*, Nos. C-96-3008 DLJ, C-97-0203 DLJ, C-97-0457 DLJ, 1997 WL 450064, at *5 (N.D. Cal.

27  July 18, 1997)).  Here, counsel for all parties endorse the Settlement Agreement as fair, adequate, and

28  reasonable.

701652.5

1    Class Counsel have extensive experience litigating and settling consumer and employment

2    class actions as well as other complex matters. They have conducted an extensive investigation into the

3    factual and legal issues raised in this Litigation, which they have fought hard for approximately two-

4    and-a-half years in this Court and in the Ninth Circuit.  The fact that qualified and well-informed

5    counsel endorse the Settlement Agreement as fair, reasonable, and adequate weighs heavily in favor of

6    Court approval.  (Decls. in Supp. Pls.' Fee Mot., ECF Nos. 258-1-5.)

7         **5.**     **<u>The Presence of a Government Participant</u>**

8         This factor refers to settlements in which the government participated as a prosecutor.  *See*

9    *Johnson v. Shaffer*, No. 2:12-cv-1059 KJM ACP, 2016 WL 3027744, at *5 (E.D. Cal. May 27, 2016)

10   (citing *Hanlon*, 150 F.3d at 1026); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir.

11   1977) (citing SEC approval of settlement as weighing in favor of approval, where SEC was

12   prosecuting a parallel action).  As no government participant was involved as a prosecutor in this

13   litigation, this factor is neutral.  It should be noted, however, that in addition to providing notice to the

14   Settlement Class, Plaintiffs will provide notice to the LWDA.  (Settlement Agreement ¶ 66-67.)  Given

15   the favorable terms of the Settlement Agreement, Class Counsel do not anticipate any opposition from

16   the LWDA.

17        **6.**     **<u>The Class Response Thus Far Favors Final Approval</u>**

18        As discussed above, the response from Class Members has been extremely positive.  The

19   deadlines for class members to opt-out or object has passed, and as of January 23, 2018, only 216

20   Class Members individuals have opted out (not including the improper mass opt-out) and just six

21   objections have been submitted.  (Ferrara Decl. ¶¶ 18, 26; ECF Nos. 259-263.)

22        By contrast, the Settlement Administrator reports that, as of January 23, 2018, a total of 99,243

23   valid claims have been received.  (Ferrara ¶ 16.)  The parties will provide any updates of these

24   numbers to the Court at the scheduled hearing on February 8, 2018.

25        **7.**     **<u>Lack of Collusion Between the Parties</u>**

26        "Before approving a class action settlement, the district court must reach a reasoned judgment

27   that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the

28   negotiating parties."  *City of Seattle*, 955 F.2d at 1290 (citations omitted).  "Where a settlement is the

product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable." *Garner v. State Farm Mut. Auto Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010); *see also* Newberg § 13.45; *In re Heritage Bond Litig.*, No. 02-MC-1475 DT, *et seq.*, 2005 WL 1594403, at *2-3 (C.D. Cal. June 10, 2005).

The Settlement Agreement here is the product of hard-fought, arms-length negotiations between the parties and their well-qualified counsel, and two separate, in-person mediation sessions, as well as extensive follow up correspondence, with a respected mediator, Mark S. Rudy, Esq. of Rudy, Exelrod, Zieff & Lowe, LLP.

The proposed Settlement Agreement bears none of the "subtle signs" of "collusion" described by the Ninth Circuit in *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).[14] Class Counsel seek one-third of the $7.5 million Settlement Fund as attorneys' fees. As explained in Class Counsel's motion for a fee award, the requested fee request is well supported by Class Counsel's lodestar, which exceeds the requested fee amount. Furthermore, the Settlement Class is set to receive the remainder of any attorneys' fees not awarded by the Court. This is a far cry from the facts of *In re Bluetooth*, where the proposed settlement provided no monetary compensation to the class while seeking $800,000 in fees. *In re Bluetooth*, 654 F.3d at 938.

Moreover, the proposed Settlement Agreement here does not include any "clear sailing" provision under which Class Counsel would be entitled to a disproportionate award of attorneys' fees, while Class Members fail to recover cash. Rather, as described above, the Settlement Agreement merely allows Class Counsel to apply for an award of attorneys' fees. Furthermore, Class Counsel seeks an award of reasonable attorneys' fees as a percentage of the Settlement Fund, meaning that Class Members and Class Counsel share the same interest in obtaining the highest possible settlement

---

[14] The subtle signs of collusion are as follows: "(1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded …; (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class…, (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth*, 654 F.3d at 947 (internal quotations omitted).

1   amount.  *Democratic Cent. Comm. of D.C. v. Wash. Metro. Area Transit Comm'n*, 3 F.3d 1568, 1573

2   (D.C. Cir. 1993) ("The percentage of the fund approach helps to align more closely the interests of the

3   attorneys with the interests of the parties."); *Aichele v. City of L.A.*, No. 12-cv-10863-DMG-FFM,

4   2015 WL 5286028, at *5 (C.D. Cal. Sept. 9, 2015) (collecting cases).

5        Finally, none of the Settlement Agreement proceeds above the total amount of the Settlement

6   Administration Expenses will revert to Defendants.  This is not a "claims made" Settlement Agreement

7   in which unclaimed funds revert to the defendant.  While any Residual Funds will be used to pay for

8   the cost of Settlement Administration, any such reimbursement is limited by the actual cost of

9   administration, and there is no guarantee that Defendants will receive any reimbursement (because

10  residual funds will only be as a result of uncashed Settlement Share checks).

11       Accordingly, the Settlement Agreement is the result of adversarial, arms' length negotiations,

12  and bears none of the subtle signs of collusion identified by the Ninth Circuit.

13       **VI.**    **<u>CLASS CERTIFICATION REMAINS APPROPRIATE</u>**

14       In its order granting preliminary approval, the Court provisionally certified the Class for

15  settlement purposes.  (Prelim. Approval Order 5-7.)  As the Court concluded at that time, the

16  Settlement Class meets the requirements of Rule 23(a) and (b)(3), and "no realistic alternative [to a

17  class action] exists" to vindicate Class Members' rights.  (*Id.* at 7.)  Nothing has changed since the

18  Court's ruling at that time to call the Court's conclusions regarding class certification into question,

19  and a nationwide class is plainly appropriate under FCRA, which is federal law.  Accordingly,

20  Plaintiffs ask that the Court finally certify the Settlement Class for settlement purposes in its order

21  granting final approval to the Settlement.

22

23

24

25

26

27

28

701652.5

## VII.   CONCLUSION

For all the reasons explained above, the proposed Settlement is fair, reasonable, and adequate, and merits final approval.  Accordingly, Plaintiffs respectfully request that the Court grant this motion and enter the concurrently filed [Proposed] Order.

Dated:  January 25, 2018                      Respectfully submitted,

                                             GOLDSTEIN, BORGEN, DARDARIAN & HO

                                             _/s/ Andrew P. Lee_
                                             Laura L. Ho
                                             Andrew P. Lee
                                             William C. Jhaveri-Weeks
                                             GOLDSTEIN, BORGEN, DARDARIAN & HO
                                             300 Lakeside Drive, Suite 1000
                                             Oakland, CA 94612
                                             Tel: (510) 763-9800; Fax: (510) 835-1417

                                             *Attorneys for Plaintiffs and the Settlement Class*

Dated:  January 25, 2018                      Respectfully submitted,

                                             AHDOOT & WOLFSON, PC

                                             _/s/ Tina Wolfson_
                                             Tina Wolfson
                                             Robert Ahdoot
                                             Theodore W. Maya
                                             AHDOOT & WOLFSON, PC
                                             10728 Lindbrook Drive
                                             Los Angeles, CA 90024
                                             Tel: (310) 474-9111; Fax: (310) 474-8585

                                             *Attorneys for Plaintiffs and the Settlement Class*

                                             LAWYERS' COMMITTEE FOR CIVIL RIGHTS
                                             OF THE SAN FRANCISCO BAY AREA
                                             Elisa Della-Piana (SBN 226462)
                                             edellapiana@LCCR.com
                                             131 Steuart Street, Suite 400
                                             San Francisco, CA 94105
                                             Tel: (415) 543-9444
                                             Fax: (415) 543-0296

                                             *Attorneys for Plaintiff, Ronald Gillette*

701652.5

1

## **SIGNATURE ATTESTATION**

2

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this

3

document has been obtained from the signatories on this e-filed document.

4

Dated:  January 25, 2018                              */s/ Andrew P. Lee*
                                                              Andrew P. Lee

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

701652.5