1 Laura L. Ho (SBN 173179)
lho@gbdhlegal.com
2 Andrew P. Lee (SBN 245903)
alee@gbdhlegal.com
3 William C. Jhaveri-Weeks (SBN 289984)
wjhaveriweeks@gbdhlegal.com
4 GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
5 Oakland, CA 94612
Tel: (510) 763-9800
6 Fax: (510) 835-1417

7 Tina Wolfson (State Bar No. 174806)
twolfson@ahdootwolfson.com
8 Robert Ahdoot (State Bar No. 172098)
rahdoot@ahdootwolfson.com
9 Theodore W. Maya (State Bar No. 223242)
tmaya@ahdootwolfson.com
10 AHDOOT & WOLFSON, P.C.
10728 Lindbrook Dr.
11 Los Angeles, California 90024
Tel: (310) 474-9111
12 Fax: (310) 474-8585

13 Attorneys for Plaintiffs and the Class
*(Additional Counsel listed on signature page)*

14

15     **UNITED STATES DISTRICT COURT**

16     **NORTHERN DISTRICT OF CALIFORNIA**

17

18 |                                    | Case No.: 14-cv-05200-EMC

19 IN RE UBER FCRA LITIGATION         | **PLAINTIFFS' RESPONSE IN OPPOSITION TO OBJECTIONS TO CLASS ACTION SETTLEMENT**

20

21                                      Date:   February 8, 2018
                                        Time:   1:30 p.m.
22                                      Crtrm:  5

23                                      Before: Hon. Edward M. Chen

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................... 1

II. ARGUMENT ............................................................................................................. 2

    A. The Gussoin Objection Should Be Overruled. ............................................. 2

        1. Gussoin's *Cy Pres* Objection Is Speculative And Likely Moot Given the Unlikelihood of Any *Cy Pres* Distribution. .................................. 3

        2. A Second Distribution Would Likely Be Infeasible. ................................ 4

        3. The Proposed *Cy Pres* Recipient Is Appropriate. ................................. 5

        4. Gussoin's Objection Misunderstands the Release. .................................. 7

        5. Gussoin's Objection to Plaintiffs' Requested Attorneys' Fees is Without Merit. ....................................................................................... 7

    B. The Abeyta Objection Should Be Overruled. ............................................... 9

        1. Abeyta Counsel's Attempted Mass Opt-Out and Plaintiffs' Response ...... 9

        2. The Proposed Settlement's Prohibition of Mass Opt-Outs is Consistent With Governing Law and Necessary for Class Action Management ........ 10

        3. The Settlement Notice Is Not an Unauthorized Communication With Represented Parties And Created No Prejudice. ....................................... 11

        4. Abeyta's Objection to the Amount of the Settlement Is Without Merit.... 12

        5. The Court Has Jurisdiction to Approve the Settlement Agreement. ......... 14

    C. The Mora Objection Should Be Overruled. ............................................... 15

    D. The Ortman Objection Should Be Overruled. ........................................... 16

    E. The Schmidt Objection Should Be Overruled. ........................................... 17

    F. The Kahler Objection should be Overruled. ............................................... 18

III. CONCLUSION ....................................................................................................... 18

**Federal Cases**

*In re American Express Financial Advisors Securities Litigation*,
    672 F.3d 113 (2d Cir. 2011) ..................................................................................14, 15

*Bennett v. SimplexGrinnell LP*,
    No. 11-cv-1854-JST (N.D. Cal. Sept. 3, 2015), ECF No. 278 .....................................8

*Birch v. Office Depot, Inc.*,
    No. 06-cv-1690-DMS (S.D. Cal. Sept. 28, 2007), ECF No. 48 ....................................9

*Boyd v. Bank of Am.*,
    No. 13-cv-561-DOC, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ...........................8

*Brown v. Lowe's Cos., Inc.*,
    No. 13-cv-079-RLV-DSC, 2016 WL 6496447 & ECF No. 125-1 (W.D.N.C. Nov. 1,
    2016)...........................................................................................................................13

*Burden v. SelectQuote Ins. Servs.*,
    No. 10-cv-5966-LB, 2013 WL 3988771 (N.D. Cal. Aug. 2, 2013) ..............................8

*Camacho v. Bridgeport Fin., Inc.*,
    523 F.3d 973 (9th Cir. 2008) ......................................................................................17

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
    No. 12-MD-02330-EMC, 2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ...................3, 9

*In re Citigroup Inc. Secs. Litig.*,
    Nos. 09-md-2070 (SHJ), 07-cv-9901 (SHS), 2014 WL 3610988 (S.D.N.Y. July 21,
    2014)...........................................................................................................................15

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
    109 F.3d 602 (9th Cir. 1997) ...................................................................................8, 17

*Deaver v. Compass Bank*,
    No. 13-cv-222-JSC, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) .............................8

*Del Rio v. Uber Technologies, Inc.*,
    No. 15-cv-03667-EMC (N.D. Cal.) ............................................................................16

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2012) ....................................................................................5, 7

*Edwards v. Nat'l Milk Producers Fed'n*,
    No. 11-CV-04766-JSW, 2017 WL 3616638 (N.D. Cal. June 26, 2017)........................3

701589.10

*Fernandez v. Home Depot USA, Inc.*,
  No. 13-cv-648-DOC-RNB, ECF No. 59 (C.D. Cal. Jan. 22, 2016) ..................................14

*Fernandez v. Victoria's Secret Stores, LLC*,
  No. CV 06-04149 MMM, 2008 WL 8150856 (C.D. Cal. July 21, 2008) .........................9

*Franco v. Ruiz Food Prods., Inc.*,
  No. 1:10-cv-02354-SKO, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012)..........................8

*Garcia v. Gordon Trucking, Inc.*,
  No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) ...................8

*In re Google Referrer Header Privacy Litig.*,
  No. 5:10-cv-04809-EJD (N.D. Cal. Aug. 5, 2014)............................................................2

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...........................................................................1, 11, 12

*Hendricks v. Starkist Co*,
  No. 13-CV-00729-HSG, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) ..........................3

*Lee v. JPMorgan Chase & Co.*,
  No. 13-cv-511-JLS, 2015 WL 12711659 (C.D. Cal. Apr. 28, 2015) ................................8

*Manuel v. Wells Fargo Bank, NA*,
  No. 14-cv-238-REP-DJN, 2016 WL 1070819 (E.D. Va. Mar. 15, 2016) ........................13

*Nachshin v. AOL, LLC*,
  663 F.3d 1034 (9th Cir. 2011) .......................................................................................5, 6

*Nwabueze v. AT & T Inc.*,
  No. C 09-01529 SI, 2013 WL 6199596 (N.D. Cal. Nov. 27, 2013)............................16, 18

*O'Connor v. Uber Technologies, Inc.*,
  No. 3:13-cv-03826-EMC (N.D. Cal)........................................................................12, 16

*Officers for Justice v. Civil Service Comm'n of S.F.*,
  688 F.2d (9th Cir. 1982) ...............................................................................................13

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ...........................................................................................9

*In re Oppenheimer Champion Fund Secs. Fraud Class Actions*,
  No. 09-cv-386-JLK-KMT, 2012 WL 13005663 (D. Colo. Mar. 15, 2012) ...................15

*In re Optical Disk Drive Prod. Antitrust Litig.*,
  No. 3:10-MD-2143 RS, 2016 WL 7364803 (N.D. Cal. Dec. 19, 2016) ............................3

*Riley v. Mfg. Co. v. Anchor Glass Container Corp.*,
  157 F.3d 775 (10th Cir. 1998) .......................................................................................15

*Rodriguez v. West Publishing Corp.*,
  563 F.3d 948 (9th Cir. 2009) ........................................................................................3

*Ryals v. Hireright Solutions, Inc.*,
  No. 09-cv-625, 2011 WL 13121387 (E.D. Va. July 7, 2011) ........................................14

*Speer v. Whole Foods Mkt. Grp., Inc.*,
  No. 14-cv-3035, 2016 WL 7187183 & ECF Nos. 66-2, 66-3 (M.D. Fla. Jan. 15,
  2016) ...........................................................................................................................14

*Stuart v. Radioshack Corp.*,
  No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) ...............................8

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .......................................................................................8

**State Cases**

*Roos v. Honeywell Int'l, Inc.*,
  241 Cal. App. 4th 1472 (2015) .......................................................................................2

**Federal Statutes**

FCRA .............................................................................................................5, 13, 14, 18

**State Statutes**

Cal. Civ. Code
  1785, *et seq.* ................................................................................................................13
  § 1786.50(a)(1) .............................................................................................................13

California's Investigative Consumer Reporting Agencies Act ........................................13

**Rules**

Cal. R. of Prof. Conduct R. 2-100 .................................................................................11

# I. INTRODUCTION

The six Class Member objections filed to date (collectively, "Class Member Objections")[1] should all be overruled. The Gussoin Objection, which was filed by serial objector attorney Michael Creamer, contends that any residual settlement monies should be distributed to the Class rather than the *cy pres* recipient, Legal Services for Prisoners with Children. This objection is speculative and likely moot because a *cy pres* distribution is highly unlikely: any Residual Funds will be insignificant, and will be used to pay for the costs of settlement administration before any *cy pres* distribution is made. Gussoin further objects to the release based on a misunderstanding of its scope. Gussoin erroneously claims the Settlement releases wage and hour claims when the express language of the release establishes the opposite. Gussoin further objects that Plaintiffs should receive no more than the 25% of the common fund as attorneys' fees, but fails to address any of the applicable factors supporting Plaintiffs' fee request. The Gussoin Objection lacks merit and should be overruled.

Objector Thomas Abeyta, who is represented by Audet & Partners ("Audet"), asserts several objections to the settlement. The primary issue in dispute, however, is whether Audet may conduct a "mass" opt out of its purported clients. Prior to the exclusion deadline, Audet attempted to exclude 548 individuals from the settlement without providing individually signed opt out forms. As it turns out, only 245 of these individuals are actually Class Members. The Ninth Circuit has held that the right to participate or opt out of a class action settlement is an individual decision that can only be made by Class Members themselves. Furthermore, allowing third-parties to exclude Class Members without producing signed opt out forms "would lead to chaos in the management of class actions." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998) (internal citation omitted). Indeed, 99 of the 245 Class Members ostensibly represented by Audet have submitted claims in this Settlement.

---

[1] The Class Member Objections are: (1) Objection to Class Action Settlement by Christine Gussoin ("Gussoin Obj."), ECF No. 262; (2) Thomas Abeyta, *et al*.'s Objection to Class Action Settlement filed by Audet & Partners, LLP ("Abeyta Obj."), ECF No. 263; (3) Rejection of Settlement filed by Graciela Mora ("Mora Obj."), ECF No. 261; (4) Letter dated 12/9/17 from Olga Ortmann re settlement rejection ("Ortmann Obj."), ECF No. 260; (5) Letter dated 11/13/2017 from Korie Schmidt re settlement objection ("Schmidt Obj."), ECF No. 259, and (6) the email dated 12/13/2017 from Scott Kahler re settlement objection, attached as Exhibit F to the Declaration of Charles Ferrara ("Ferrara Decl.").

701589.10

1  Without the prohibition on "mass" opt outs, the parties and the Court would be forced to engage in

2  further proceedings to determine Class Members' true intent.  Accordingly, the Settlement's opt out

3  requirements are consistent with applicable law and necessary for effective class action management.

4  The Audet Objection should be overruled.

5       The remaining four objections lack specificity, raise issues that fall outside the scope of this

6  litigation, or are based on a misunderstanding of the Settlement.  The Ortman objection, for example,

7  claims that the Settlement amount should be higher based on a vague claim of "fraud" allegedly

8  committed by Uber.  Similarly, the Kahler Objection ambiguously claims that Uber has "constantly

9  and blatantly" violated the rights of drivers and has "continuously overstepped their legal bounds."

10  Unsupported and undeveloped objections such as these should be overruled.  The Mora and Kahler

11  Objections argue that the settlement should not be approved because it fails to provide damages

12  resulting from the alleged misclassification of Uber drivers.  That issue falls outside the scope of the

13  settlement, and is the subject to several pending certified and putative class actions.  Finally, Objector

14  Schmidt mistakenly believes that the Settlement is intended to compensate Class Members for harm

15  caused by the improper disclosure of background check information to the general public.  This action

16  has never involved any claims that Uber improperly disclosed background check information.

17       The six Class Member Objections lack merit and should be overruled.

## II.  ARGUMENT

### A.  The Gussoin Objection Should Be Overruled.

20       The Gussoin Objection was filed by Michael Creamer, who is a serial objector.  *See, e.g.*, *Roos*

21  *v. Honeywell Int'l, Inc.*, 241 Cal. App. 4th 1472 (2015); Objections to Proposed Class Action

22  Settlement, *In re Google Referrer Header Privacy Litig.*, No. 5:10-cv-04809-EJD (N.D. Cal. Aug. 5,

23  2014), ECF No. 68.  Gussoin contends this Court should deny final approval of the Settlement

24  Agreement based on: (1) three *cy pres* objections; (2) an allegedly overbroad and vague definition of

25  "Settlement Class Members' Released Claims"; and (3) an allegedly excessive fee award.  (Gussoin

26  Obj., ECF No. 262.)  All of these objections should be overruled.

27

28

701589.10

**1. <u>Gussoin's *Cy Pres* Objection Is Speculative And Likely Moot Given the Unlikelihood of Any *Cy Pres* Distribution.</u>**

The Ninth Circuit has held that any determination related to a *cy pres* distribution "becomes ripe only if the entire settlement fund is not distributed to class members." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1313 (9th Cir. 1990)). *Rodriguez* explained that the reason a *cy pres* determination was not appropriate until such time is because "the fund [ ] may well be depleted before *cy pres* kicks in." *Id.*; *see also Edwards v. Nat'l Milk Producers Fed'n*, No. 11-CV-04766-JSW, 2017 WL 3616638, at *5 (N.D. Cal. June 26, 2017) (overruling objection because "the plan of allocation is designed to avoid the necessity of a *cy pres* distribution."); *In re Optical Disk Drive Prod. Antitrust Litig.*, No. 3:10-MD-2143 RS, 2016 WL 7364803, at *14 (N.D. Cal. Dec. 19, 2016) (declining to address objection until *cy pres* distribution became necessary). Where settlement funds are "fully subscribed," objections to *cy pres* distributions are moot. *Hendricks v. Starkist Co*, No. 13-CV-00729-HSG, 2016 WL 5462423, at *8 (N.D. Cal. Sept. 29, 2016); *see also In re Carrier IQ, Inc., Consumer Privacy Litig.*, No. 12-MD-02330-EMC, 2016 WL 4474366, at *4 n.3 (N.D. Cal. Aug. 25, 2016).

In the present matter, any *cy pres* distribution is highly unlikely for several reasons. First, only a portion of settlement payments have any likelihood of becoming Residual Funds available for *cy pres* distribution. Settlement Class Claimants have the option of receiving their Settlement Shares by mailed check, direct deposit, or PayPal. (*See* Stip. of Settlement ("Settlement Agreement") ¶ 62, ECF No. 222.) Because direct deposit and PayPal automatically transfer funds to Class Members accounts, unredeemed paper checks are the only likely source of Residual Funds. *Id.* Of the 99,243 valid and timely claims filed, 68,958 requested a mailed check. (Ferrara Decl. ¶ 16, filed herewith.) Therefore, only 69% of all claims, or approximately $3,414,617.53 of the anticipated Net Settlement Fund of $4,914,250.52, have the potential to become Residual Funds.

Second, Plaintiffs anticipate that the vast majority of paper checks will reach their intended recipients who will redeem those checks. Claimants who opted for paper checks were required to provide the Settlement Administrator with an updated mailing address, reducing the likelihood of

checks being mailed to incorrect addresses.  (*See* Claim Form, ECF No. 222-3.)  Any checks that are returned as undeliverable with forwarding information will be promptly re-mailed.  (Settlement Agreement ¶ 63.)  In addition, the Settlement Administrator will take reasonable steps to identify updated address information for any checks that are returned as undeliverable without forwarding information.  (*Id*.)  Accordingly, only checks that are unredeemed 90 days after mailing or 30 days after re-mailing, whichever is later, will become Residual Funds.  (*Id*. ¶¶ 63-64.)  Moreover, in Class Counsel's experience, claimants who have moved will often call Class Counsel or the settlement administrator to update their addresses.  (Lee Decl. ¶ 17, filed herewith.)

Third, to the extent any Residual Funds remain after distribution of the Net Settlement Fund, those funds will be paid first to the Settlement Administrator to cover any unpaid Settlement Administration Expenses, and then to Defendants up to the total amount of the Settlement Administration Expenses actually paid.  (Settlement Agreement ¶ 64.)  Only the Residual Funds in excess of Settlement Administration Expenses, if any, will be provided to the *cy pres* recipient.  (*Id*.)  The Settlement Administrator estimates that Settlement Administration Expenses will total $736,260.86.  (Ferrara Decl. ¶ 27.)  Thus, 21.6% of all paper checks (14,869 checks total) would have to go unredeemed for the *cy pres* recipient to receive any Residual Funds whatsoever.  The likelihood of this occurring is very low.

Accordingly, the Court should overrule the Gussoin objection, and address issues related to the *cy pres* distribution only if they become ripe.

## 2. A Second Distribution Would Likely Be Infeasible.

The Gussoin objection further argues that "it is feasible to make another distribution to class members, especially since many class members have signed up to receive funds electronically." (Gussoin Obj. 2.)  This contention fails to consider the amount of Residual Funds needed to make a second distribution economically viable.  The Settlement Administrator estimates that postage related to distribution of the Net Settlement Fund will cost approximately $40,000.  (Ferrara Decl. ¶ 16.)  That estimate does not include other expenses related to a second distribution, including costs related to data processing and review.  A second distribution will, at minimum, double that cost of postage, requiring the Residual Funds to equal $776,260.76 for a second distribution to even be possible.  22.7% of all

paper checks (15,676 checks total) must go unredeemed for the Residual Funds to reach that amount. Moreover, from a practical perspective, the Residual Funds must exceed $776,260.76 by a significant margin for supplemental payments to have any real value. It is nonsensical to spend tens of thousands of dollars in settlement administration costs to provide Class Members with individual payments of a few pennies. Accordingly, a second distribution is not economically feasible.

### 3. **The Proposed *Cy Pres* Recipient Is Appropriate.**

The Ninth Circuit consistently has supported the *cy pres* doctrine as an appropriate tool for the allocation of unclaimed portions of class action settlements. *See e.g.*, *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011) ("The *cy pres* doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the "next best" class of beneficiaries.") (citing *Six Mexican Workers*, 904 F.2d at 1307-08). The Ninth Circuit has held that federal courts frequently use the *cy pres* doctrine in the settlement of class action for the distribution of unclaimed funds to indirectly benefit the entire class. *Nachshin,* 663 F.3d at 1038. According to the Ninth Circuit, a *cy pres* award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members" and must not benefit a group "too remote from the plaintiff class," *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (citing, *Six Mexican Workers,* 904 F.2d at 1308).

Gussoin contends that the Legal Services for Prisoners with Children ("LSPC") "has nothing to with [sic] the nature of the plaintiff's lawsuit, the objectives of the underlying statutes, and the interests of silent class members." (Gussoin Obj. 3.) This contention is incorrect. As set forth in the Declaration of Dorsey Nunn submitted in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, LSPC's work focuses on ensuring that employers' hiring practices are compliant with applicable federal and state background check laws, including the FCRA. (Nunn Decl. ¶ 5, ECF No. 222-3.) Moreover, LSPC participates in clean slate clinics that provide direct legal services to job seekers, informing them of their rights under applicable background check laws and ensuring that they maximize their opportunity to dispute inaccurate or improper background check information. (*Id.*) Moreover, in 2015, LSPC met with Uber to advocate for the fair use of background checks for its drivers, and to encourage Uber to notify ineligible driver applicants about clean slate remedies. (*Id.*) LSPC has also met with Uber to explain how conviction histories contained in

background checks present real barriers to people seeking to earn living wages. (*Id.* ¶ 6.) LSPC now partners with Uber to limit the regulatory requirements related to conviction histories for Uber and other TNC drivers, benefiting not only current Uber drivers, but also future applicants seeking to drive for Uber. (*Id.*) All of this work is directly in line with the goals of this lawsuit and benefits the interests of absent Class Members. Accordingly, funding LSPC's work on background check issues represents the "next best" distribution of any Residual Funds. *Nachshin,* 663 F.3d at 1036, 1038.

The only case cited by Gussoin on this issue—*Nachshin*—does not support her position. In *Nachshin*, the plaintiffs alleged that "AOL wrongfully inserted footers containing promotional messages into e-mails sent by AOL subscribers." *Id.* at 1036. The proposed *cy pres* recipients in that matter included The Boys & Girls Club of America—an organization that has nothing to do with wrongfully inserted email footers containing promotional messages. Moreover, *Nachshin* relies on a series of cases in which lawyers and judges direct large settlements to their entirely unrelated alma maters. *Nachshin*, 663 F.3d at 1039. In contrast to the *cy pres* recipient in *Nachshin*, LSPC's work is directly related to the goals of this litigation. It advances the fair use of background checks, advises employers regarding compliance with applicable background check laws, and informs employees of their rights to dispute inaccurate information contained in background checks. Thus, Gussoin's reliance on *Nachshin* is misplaced.

Gussoin further objects that "Legal Services for Prisoner with Children is based in California and does the majority of its work in California. It appears that much of its policy's efforts are to change California Law." (Gussoin Obj. 3.) Again, Gussoin ignores the Nunn Declaration, which describes the nationwide reach of LSPC's work:

> Once LSPC had successfully passed a Ban the Box law in San Francisco, we focused our efforts on larger government entities across the country, including the state of California. Today, Ban the Box has become a national movement with 26 states, the District of Columbia, and more than 150 cities implementing Ban the Box laws…

> Our strategies, which have a national reach, include legal support, trainings, advocacy, public education, grassroots mobilization and developing community partnerships. For example, LSPC has implemented such strategies in New Mexico; North Carolina; Philadelphia, Pennsylvania; Seattle, Washington; Minneapolis, Minnesota; and Texas.

(Nunn Decl. ¶¶ 4 & 5.)

6

701589.10

1    Furthermore, as discussed above, LSPC specifically advocates on behalf of Uber drivers by
2    directly working with Uber regarding its use of background checks.  Not only is this work a perfect
3    match to the geographic scope of the Class, it establishes with certainty that Class Members will
4    benefit from the proposed *cy pres* distribution.  *See Dennis*, 697 F.3d at 865.

5    Gussoin argues that "[T]here is 'no reasonable certainty' that any class member would benefit
6    from these *cy pres* distributions.  *Dennis*, 697 F.3d at 865 as there is no connection that people
7    currently in prison or who are out of prison and need a job were 'all persons who were subject to a
8    background check and/or consumer report request by Uber before January 3, 2015.'"  This argument
9    misunderstands the nature of LSPC's work, as discussed above, which is *not* limited to advocating on
10    behalf of people who are currently in prison or who recently left prison.

11    In short, LSPC's work is directly in line with the goals of this litigation and directly serves the
12    interest of absent Class Members.  Accordingly, LSPC is an appropriate *cy pres* recipient.

13    **4.        Gussoin's Objection Misunderstands the Release.**

14    Gussoin erroneously contends that the definition of "Settlement Members' Released Claims" in
15    the Settlement Agreement is vague and overly broad because it includes wage and hour claims based
16    on the California Labor Code.  (Gussoin Decl. 4-5.)  Here, Gussoin references Plaintiff Gillette's
17    PAGA claim and the statutory predicates based thereon, which is Plaintiffs' Tenth Cause of Action in
18    the Amended Master Consolidated Complaint.  (*See* Am. Master Consolidated Compl. ¶¶ 137-144,
19    ECF No. 171.)  Gussoin overlooks the last sentence in the definition of "Settlement Members'
20    Released Claims" in the Settlement Agreement, which expressly excludes any non-background check
21    PAGA claims:

22    > Settlement Class Members' Released Claims do not include, and Settlement Class
23    > Members are not releasing, any PAGA claims that are not based on background checks
     > and/or consumer reports.

24    (Settlement Agreement ¶ 41, ECF No. 221-6.  According to its express terms, the Settlement
25    Agreement does not release any wage and hour claims.

26    **5.        Gussoin's Objection to Plaintiffs' Requested Attorneys' Fees is Without Merit.**

27    Gussoin further objects to Plaintiffs' requested attorneys' fees:

28

7

701589.10

> The Court should only give class counsel 25% of the amount the class receives, which is consistent with 9th Circuit standards. Money paid to the Settlement Administrator should not be considered compensation to the class. There is no reason that the Court should award 33% of the settlement fund to class counsel. The proposed fee award is excessive. The Motion to Approve the Settlement Agreement should be denied on this basis alone.

(Gussoin Obj. 4-5.) Gussoin contends that Plaintiffs should receive no more than the benchmark recovery of 25% of the common fund without regard to the factors set forth in *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002). Although Gussoin's objection was submitted well after the filing of Plaintiffs' Motion for an Award of Attorneys' Fees and Expenses, it fails to address Plaintiffs' rationale for the requested fee award based on applicable factors such as the results achieved, the risk of continued litigation, the Settlement's injunctive relief, the quality of Plaintiffs' representation, awards in comparable cases, the contingent nature of the representation, the response of the Class, and Class Counsel's lodestar, which amounts to a negative multiplier. All of these factors support Plaintiffs' requested fee award of 30.86% of the common fund created by the proposed Settlement. By failing to address these factors, Gussoin essentially advocates for the "mechanical or formulaic" application of the 25% benchmark—an approach to determining attorneys' fees that is disfavored by the Ninth Circuit and can lead to an unreasonable fee award. *See In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997). Moreover, Gussoin ignores the substantial body of case law establishing that courts in the Ninth Circuit and Northern District of California regularly award common fund fees above 25% in appropriate cases.[2]

---

[2] *See, e.g., Deaver v. Compass Bank*, No. 13-cv-222-JSC, 2015 WL 8526982, at *11 (N.D. Cal. Dec. 11, 2015) (awarding 33.33% of the common fund where class counsel had litigated "multiple motions to remand, dismiss and transfer, as well as a Ninth Circuit Appeal," prior to settlement); *Bennett v. SimplexGrinnell LP*, No. 11-cv-1854-JST (N.D. Cal. Sept. 3, 2015), ECF No. 278, at 11 (awarding 38.8% of $4.9 million settlement in prevailing wage case); *Lee v. JPMorgan Chase & Co.*, No. 13-cv-511-JLS, 2015 WL 12711659, at *8-9 (C.D. Cal. Apr. 28, 2015) (awarding 33% of $2.4 million settlement in misclassification case); *Boyd v. Bank of Am.*, No. 13-cv-561-DOC, 2014 WL 6473804, at *10-11 (C.D. Cal. Nov. 18, 2014) (33% of $5.8 million settlement in misclassification case); *Burden v. SelectQuote Ins. Servs.*, No. 10-cv-5966-LB, 2013 WL 3988771, at *5 (N.D. Cal. Aug. 2, 2013) (33% of the common fund where Class Counsel obtained a settlement "after significant motions practice"); *Franco v. Ruiz Food Prods., Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801, at *25 (E.D. Cal. Nov. 27, 2012) (33% of common fund); *Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575, at *11 (E.D. Cal. Oct. 31, 2012) (33% of the common fund); *Stuart v.*

701589.10

1   Gussoin also argues that "Money paid to the Settlement Administrator should not be

2   considered compensation to the class." (Gussoin Obj. 4-5.) This contention is contrary to governing

3   law. The Ninth Circuit has held that settlement administration costs may be included in the calculation

4   of the common fund for purposes of determining attorneys' fees. *See In re Online DVD-Rental*

5   *Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) ("The district court did not abuse its discretion in

6   calculating the fee award as a percentage of the total settlement fund, including notice and

7   administrative costs, and litigation expenses."); *see also In re Carrier IQ, Inc.*, 2016 WL 4474366, at

8   *6 (overruling objection asserting that percentage recovery should be based on net rather than gross

9   settlement fund).

10      In sum, Gussoin's objection to Plaintiffs' requested attorneys' fees should be overruled.

11  **B.    The Abeyta Objection Should Be Overruled.**

12      The Abeyta Objection contends that this Court should deny final approval of the Settlement

13  Agreement because: (1) the Parties complied with this Court's Preliminary Approval Order, ECF No.

14  242 by providing notice to each Potential Settlement Class Member; (2) the judicially approved

15  "settlement amount" is too low; and (3) this Court lacks jurisdiction. (Abeyta Obj., ECF No. 263.)

16  Abeyta is represented by the firm Audet & Partners LLP ("Audet"), who claims to represent 548 Class

17  Members in individual arbitrations against Uber. It is Class Counsel's understanding that although

18  Abeyta objects to the proposed Settlement, the critical issue is whether Audet may opt out its clients

19  without providing the parties and Court with individually signed opt outs.

20      **1.    Abeyta Counsel's Attempted Mass Opt-Out and Plaintiffs' Response**

21      On November 22, 2017, Mark E. Burton sent a letter to the Settlement Administrator seeking

22  to exclude 548 Class Members from the Settlement. (Ferrara Decl. ¶ 19.) On December 11, 2017, the

23  Settlement Administrator sent Mr. Burton a letter informing him that the Settlement prohibits mass opt

24  outs, and that all requests for exclusion must be personally signed by the individual Class Member

25

26  *Radioshack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645, at *8 (N.D. Cal. Aug. 9, 2010)
    (awarding one-third of $4.5 million settlement in employee expense reimbursement case); *Fernandez
27  v. Victoria's Secret Stores, LLC*, No. CV 06-04149 MMM, 2008 WL 8150856, at *16 (C.D. Cal. July
    21, 2008) (34% of $8.5 million common fund); *Birch v. Office Depot, Inc.*, No. 06-cv-1690-DMS,
28  (S.D. Cal. Sept. 28, 2007), ECF No. 48, ¶ 13 (40% of $16 million common fund).

701589.10

seeking to opt out. (*Id.* ¶ 19.) On December 14, 2017, Mr. Burton filed the present objection on behalf of Mr. Abeyta and the other Class Members ostensibly represented by Audet. (Abeyta Obj., ECF No. 263.) On December 22, 2017, Class Counsel Robert Ahdoot and Andrew Lee conferred with Mr. Burton regarding the Abeyta objection. (Lee Decl. ¶ 18.) Class Counsel stated their view that requiring Class Members to submit signed opt out forms was consistent with applicable Ninth Circuit law. (*Id.*) Class Counsel further explained that signed opt out forms were essential to determine the intent of Audet's clients because a number of the individuals he sought to exclude from the Settlement had also submitted claim forms. (*Id.*) Without written proof of an intent to opt out, the Court would have no basis to exclude these individuals other than Mr. Burton's representations. (*Id.*) Mr. Burton stated that he would attempt to obtain signed opt out forms from his clients. (*Id.*) On January 9, 2018, Class Counsel conferred again with Mr. Burton. (*Id.*) During their call, Class Counsel reiterated the importance of signed opt out forms. (*Id.*)

The Settlement Administrator has analyzed the list of 548 individuals included in the Abeyta Objection. This analysis reveals that only 245 of the 548 individuals are actually Class Members. (Ferrara Decl. ¶ 20.) Of these 245 Class Members, 99 have filed claim forms, 38 have requested exclusion, 21 have submitted claim forms and requested exclusion, and 87 have submitted neither a claim form nor requested exclusion. (*Id.* ¶¶ 20-25.) Of the 303 individuals who are not Class Members, 33 have filed claim forms, 39 have requested exclusion, and 10 have submitted claim forms and requested exclusion. (*Id.*) In sum, 341 of Audet's purported clients are completely unaffected by this settlement because they are either not Class Members, or submitted a timely request for exclusion.

### 2. The Proposed Settlement's Prohibition of Mass Opt-Outs is Consistent With Governing Law and Necessary for Class Action Management.

Abeyta argues that "the parties designed an opt out process requiring personal participation of the class members and virtually prohibiting their right to be represented by counsel, by prohibiting counsel from opting represented clients out of the settlement." (Abeyta Obj. 2.) The Settlement does no such thing. The Settlement in no way limits Class Members' right to be represented by Counsel. Indeed, the Notice of Settlement expressly informs Class Members that they have the right to be represented by counsel of their choice. (Ferrara Decl. ¶¶ 6-7, Ex. B & C.) The Settlement does

701589.10

require, however, that Class Members submit their signature in order to either receive money from or opt out of the Settlement.

The Ninth Circuit has held that "[t]he right to participate, or to opt-out, is an individual one and should not be made by the class representative or the class counsel." *Hanlon*, 150 F.3d at 1024. To allow a mass opt out without written proof of intent "would infringe on the due process rights of the individual class members, who have the right to intelligently and individually choose whether to continue in a suit as class members." *Id*. Accordingly, the proposed Settlement is consistent with governing law.

Furthermore, the requirement has practical significance. Allowing opt outs "without the permission of individual class members would lead to chaos in the management of class actions." *Id*. (internal quotation omitted). Here, 99 of the 238 Class Members identified in the Abeyta Objection have filed claims. (Ferrara Decl. ¶ 22.) These claims directly conflict with Audet's representation that these Class Members wish to exclude themselves from the Settlement. Without the prohibition on "mass" opt outs, the parties and the Court would be forced to engage in further proceedings to determine these Class Members' true intent with respect to participation in the Settlement. Accordingly, the Settlement's opt out requirements are also necessary for effective class action management.

### 3. The Settlement Notice Is Not an Unauthorized Communication With Represented Parties And Created No Prejudice.

Abeyta further contends that the Court's order directing the Settlement Notice to Class Members represents unauthorized communications with represented parties. Abeyta further objects that counsel from Audet did not receive the Class Notice. Both of these objections should be overruled.

Plaintiffs are unaware of any authority holding, and Abeyta has cited none, that a court-ordered settlement notice amounts to unethical communications with represented parties. Rule 2-100 of the California Rules of Professional Conduct states as follows:

> While representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer.

The rule makes clear that the prohibition on communications with represented parties extends to "members"—*i.e.* attorneys—not courts. There is no "clear ethical prohibition" on the distribution of class notices, as Abeyta contends. If Abeyta is correct, many class action notices, including both class certification and settlement notices, would violate ethical rules. That cannot be the case.

Similarly, Plaintiffs are unaware of any authority, and Abeyta has cited none, holding that a court-ordered notice must be sent to counsel for class members. As discussed above, the decision to participate or exclude oneself from a class action settlement is an individual one. *Hanlon*, 150 F.3d at 1024. To provide the Settlement Notice to counsel from Audet, rather than the Class Members they ostensibly represent, would violate the requirements of due process. *Id.*

Moreover, it must be emphasized that Audet was on actual notice of the Settlement Agreement at least as early as November 22, 2017—the date of Mr. Burton's letter seeking to facilitate a mass opt out, and probably earlier. Constructive notice of the Settlement Agreement was achieved in a variety of ways beginning in June 2016, including but not limited to publication of the existence of the Settlement Agreement in national legal news services such as Law360. *See e.g.*, Rachel Graf, *Uber, Background Check Company Settle Job Screening Lawsuit* (Law360 May 30, 2017), *available at* <https://www.law360.com/articles/929478/uber-background-check-co-settle-job-screening-suit> (last visited Jan. 23, 2018). In addition, the attorneys filing the Audet Objection could have added their firm to the Electronic Case Filing system for this litigation at any point in an effort to keep abreast of the class action litigation in which more than 500 of their clients had a pecuniary interest. And with hundreds of Audet clients receiving the Settlement Notice, at least one must have contacted their counsel at Audet to notify them of the settlement and ask questions about whether to participate or opt out. Regardless of when Audet received notice of the Settlement, Abeyta has failed to identify any prejudice resulting from the lack of direct Settlement Notice to his attorneys. Abeyta's objection to the Settlement Notice should be overruled.

### 4. Abeyta's Objection to the Amount of the Settlement Is Without Merit.

Next, Abeyta objects that the "settlement amount is extremely low," arguing as follows:

The obvious goal of a difficult opt out process is to force as much participation in a settlement that provide ridiculously low compensation for the class. In California, one violation entitles the employee to a $10,000 statutory penalty, plus attorney fees. In this

settlement, a class member "may" ultimately receive $2, leaving the possibility of even lower compensation. Obviously, no class member represented by counsel would be interested in participating in this settlement.

(Abeyta Obj. 3.)

It is true that under California's Investigative Consumer Reporting Agencies Act, Civil Code Section 1785, *et seq.*, a successful plaintiff may recover a statutory penalty of up to $10,000. *See* Cal. Civ. Code § 1786.50(a)(1). Abeyta, however, fails to acknowledge that this particular remedy cannot be recovered through the class action procedure. *Id.* Any Class Member who wishes to recover the $10,000 statutory penalty may opt out and pursue that claim on an individual basis (as 38 of Audet's purported clients who are Class Members have already done). Thus, it is improper to compare Class Member awards resulting from the proposed Settlement to a statutory penalty that may only be recovered pursuant to an individual claim.

Moreover, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Service Comm'n of S.F.*, 688 F.2d at 615, 628 (9th Cir. 1982). Rather, courts evaluating the amount offered in settlement for fairness must consider the settlement as a "complete package taken as a whole, rather that the individual component parts[.]" *Id.* In fact, the "very essence of a settlement is a compromise, a yielding of absolutes and an abandoning of highest hopes. *Id.* at 624.

As discussed in Plaintiffs' preliminary and final approval papers, the Settlement Agreement provides substantial, valuable relief to all Class Members, as well as important changes that will benefit future Uber drivers. In light of significant risks and litigation challenges, the monetary recovery promised by the Settlement Agreement, along with its non-monetary relief, compares favorably to other settlements in FCRA background check cases, particularly those that settled before certification or summary judgment briefing.[3] The injunctive relief promised by the Settlement

---

[3] *See, e.g.*, *Brown v. Lowe's Cos., Inc.*, No. 13-cv-079-RLV-DSC, 2016 WL 6496447 & ECF No. 125-1 (W.D.N.C. Nov. 1, 2016) (granting final approval to FCRA background check settlement under which class members received $60 each); *Manuel v. Wells Fargo Bank, NA*, No. 14-cv-238-REP-DJN, 2016 WL 1070819, at *2 (E.D. Va. Mar. 15, 2016) (granting final approval to FCRA background check settlement where "each member of the Impermissible Use Class will receive a check for $35.00, and each Adverse Action Class member will receive a check for $75.00"); *Speer v. Whole Foods Mkt.*

---

Agreement, which would prohibit Uber from using the allegedly unlawful background check forms and practices that form the basis of this action, is a great benefit, particularly in light of the disagreement that exists in the law as to whether injunctive relief is available to private plaintiffs under FCRA and the UCL.

Therefore, based on the discussion above, the Abeyta Objection fails to provide any support for reversing this Court's previous Order finding the Settlement Agreement "sufficient within the range of reasonableness." (Prelim. Approval Order 16, ECF No. 242.)

**5.** **The Court Has Jurisdiction to Approve the Settlement Agreement.**

Finally, Abeyta contends that the Court lacks jurisdiction to "impose" settlement on Class Members because he and other Class Members represented by Audet have already "agreed to an arbitration process to resolve their claims against Uber." (Abeyta Obj. 3.)

This objection is without merit because neither the Court nor the parties have "imposed" anything on Mr. Abeyta or any other Class Member. Through the notice procedure, all Class Members were provided with the opportunity participate, opt out, or object to the settlement. As discussed above, 132 of the 548 indivduals ostensibly represented by Audet chose to participate in the Settlement by taking the affirmative step of filing a claim form, with only 99 being Class Members. (Ferrara Decl. ¶ 22.) Another 77 of the 548 requested exclusion from the settlement, with only 38 being Class Members. These decisions were completely voluntary.

It is also well established that claims subject to arbitration may be released through class action settlements. In *In re American Express Financial Advisors Securities Litigation*, 672 F.3d 113 (2d Cir. 2011), the defendant successfully enjoined an arbitration filed by the plaintiffs, arguing that the

---

*Grp., Inc.*, No. 14-cv-3035, 2016 WL 7187183 & ECF Nos. 66-2, 66-3 (M.D. Fla. Jan. 15, 2016) (granting final approval to FCRA background check settlement on behalf of settlement class with 19,067 members, where fund totaled $802,720, one-third of which was awarded as attorneys' fees, leaving approximately $24 per class member after payment of administration costs and a service award); *Fernandez v. Home Depot USA, Inc.*, No. 13-cv-648-DOC-RNB, ECF No. 59 (C.D. Cal. Jan. 22, 2016) (granting final approval to FCRA background check settlement where claimants would receive $15 to $100 each); *Ryals v. Hireright Solutions, Inc.*, No. 09-cv-625, 2011 WL 13121387, at *4 (E.D. Va. July 7, 2011) (granting preliminary approval to FCRA background check settlement where class members were entitled to payments from $15 to $82.50 each).

plaintiffs' claims were barred by a prior class action settlement which the plaintiffs had participated in as class members. *Id.* at 125. On appeal, the Second Circuit held that the arbitration agreement between the parties did not entitle the plaintiffs to arbitrate their released claims, reasoning that the settlement agreement amended the terms of the arbitration agreement with respect to the claims at issue in the class settlement. As the court explained, "where a party initially consents … to arbitrate certain types of claims, but later enters into a settlement agreement that releases claims that had been subject to the initial consent to arbitrate, the claims that have been released by such a settlement are no longer subject to arbitration." *Id.* at 132–33. Several other courts have reached the same conclusion.[4]

In the present matter, the Settlement Agreement contains a clause similar to the one at issue in *American Express*, which states as follows:

> Any and all previous agreements and understandings between or among the Parties regarding the subject matter of this Stipulation of Settlement, whether written or oral, are superseded and hereby revoked by this Stipulation of Settlement. The Parties expressly agree that the terms and conditions of this Stipulation of Settlement will control over any other written or oral agreements.

(Settlement Agreement ¶ 130, ECF No. 222.) Thus, any Class Members whose claims are subject to arbitration agreements may properly choose to resolve those claims through the settlement herein.

## C.     The Mora Objection Should Be Overruled.

Class Member Graciela Mora objects to the Settlement based on two primary arguments: 1) the Settlement does not address damages resulting from the alleged misclassification of Uber drivers as independent contractors; and 2) the Settlement does not address actual damages suffered by Ms. Mora and other individual Uber drivers resulting from improper or retaliatory deactivations based on

---

[4] *See, e.g., Riley v. Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 784 (10th Cir. 1998) (finding that a merger clause in a settlement "revoked [a] prior right of the parties to demand arbitration on the[] specific topics" that the court concluded were within the bound of the settlement agreement); *In re Citigroup Inc. Secs. Litig.*, Nos. 09-md-2070 (SHJ), 07-cv-9901 (SHS), 2014 WL 3610988, at *8 (S.D.N.Y. July 21, 2014) ("It is settled law that class membership can release all claims, including arbitration claims, notwithstanding a class member's earlier arbitration agreement."); *In re Oppenheimer Champion Fund Secs. Fraud Class Actions*, No. 09-cv-386-JLK-KMT, 2012 WL 13005663, at *2 (D. Colo. Mar. 15, 2012) ("[I]t is clear that the Champion Fund Settlement Agreement 'amended the contours of the parties' agreement to arbitrate all disputes between them before FINRA arbitrators.'") (citation omitted).

---

background checks.  (Mora Obj., ECF No. 261.)  Both objections should be overruled.

As to Mora's first argument, the proposed Settlement does not release wage and hour claims, and thus cannot provide a basis for denying final approval.  Because the Settlement does not release any wage and hour claims, Ms. Mora may participate in the present settlement and still pursue those claims separately.  As the Court is aware, the employment status of Uber drivers is at issue in a number of other pending class and putative class actions, including *O'Connor v. Uber Technologies, Inc.*, No. 3:13-cv-03826-EMC (N.D. Cal) and *Del Rio v. Uber Technologies, Inc.*, No. 15-cv-03667-EMC (N.D. Cal.), among others.  Furthermore, Ms. Mora has the option to pursue her wage and hour claims on an individual basis by filing a wage claim with the California Division of Labor Standards Enforcement, commencing an action in California Superior Court, or seeking arbitration.

Mora's second argument—that the settlement does not account for individualized, actual damages from improper or retaliatory deactivations—fails for the same reason.  Plaintiffs' allegations have never included a claim that Defendants deactivated their accounts in retaliation for speaking out against Uber's conduct toward drivers.  Accordingly, those claims are not subject to the Settlement Class Members' Release Claims, which limits the release to legal claims that were alleged, or could have been alleged, based on the facts alleged in the complaint.  (Settlement Agreement ¶ 41.)

In short, Mora's objection is based on claims that fall outside the scope of the Settlement, and therefore should be overruled.

## D.      The Ortman Objection Should Be Overruled.

Class Member Olga Ortman contends that "[t]he damage resulting from of [sic] the fraud perpetrated by the company known as Uber is far greater than the proposed settlement, particularly, given the number of drivers impacted by it.  As a class member I urge you to DENY the settlement and let the lawsuit continue."  (Ortman Obj., ECF No. 260.)

As a threshold matter, Ortman fails to elaborate on her contention that Uber engaged in "fraud."  Ortman fails to explain what actions amounted to fraud, or how they relate to the Settlement.  Objections that are undeveloped and lack specificity must be overruled.  *See Nwabueze v. AT & T Inc.*, No. C 09-01529 SI, 2013 WL 6199596, at *7 (N.D. Cal. Nov. 27, 2013) (overruling numerous objections because they failed to include a "statement of the basis").

To the extent Ms. Ortman contends that the amount of the Settlement is too low, that assertion is fully addressed in Section II.B.4, *supra*.  Plaintiffs incorporate that discussion herein.

**E.**     **The Schmidt Objection Should Be Overruled.**

Class Member Korie Schmidt objects to the amount of attorneys' fees requested by Plaintiffs, arguing that Class Counsel should receive no more than $50 per hour and that "[i]f they want that much compensation, they can get it from outside of the settlement fund going to the class.  These lawyers are proposing that the remedy of MY information being leaked is worth $27-62?  (Is that how much my privacy is worth?) Yet, they are to be paid $2.5 MILLION dollars."  (Schmidt Obj., ECF No. 259.)

First, it must be emphasized that Schmidt misunderstands the nature of this case and the proposed Settlement.  The Schmidt Objection states "this lawsuit is based on Uber, and its associated companies, disclosing information that was in my background check."  *Id*.  This action has never involved any claims that Uber improperly disclosed background check information to third-parties or the public.  The Schmidt objection should be overruled on this basis alone.

Second, Plaintiffs' request for a reasonable fee award is based on well-settled law.  Indeed, Plaintiffs' requested fee award is consistent with both the common fund and lodestar methods of awarding attorneys' fees.  (*See generally*, Plaintiffs' Mot. for Award of Attorneys' Fees and Expenses, ECF No. 258.)  Under applicable law, awarding Class Counsel only $50 per hour for their work in this matter would be unreasonable given the results achieved, and because Class Counsel's hourly rates are reasonable in light of their significant experience, expertise, and skill, and are consistent with the hourly rates charged by attorneys of comparable experience, reputation, and ability for similarly complex federal litigation.  *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008); *see also In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d at 607 ("Reasonableness is the goal").

In short, the Schmidt Objection should be overruled because it is based on a misunderstanding of the nature of this case, and arguments regarding Plaintiffs' requested fees that are contrary to controlling law.

701589.10

**F.    The Kahler Objection should be Overruled.**

Scott Kahler objects to the Settlement on ten separate grounds, none of which providse a basis for denying final approval:

> 1.  Uber has constantly and blatantly violated our rights.
> 2.  Uber does not treat **deaf drivers** like myself in a fair impartial manner.
> 3.  Uber has continuously overstepped their legal bounds.
> 4.  Uber is more than a "technology company" as they claim.  If they're just a technology company, then therefore they should not be able to lower the rates, stepping on the legal grounds and laws set forth by the IRS.
> 5.  If Uber claims they're a "technology company" then they should not be making policy which misclassifies the "partner" as we are called.
> 6.  Uber constantly forces us to adhere to their ever changing policies and force us to accept rides and deactivates us when they're not satisfied when the Terms Of Service (TOS), clearly states we are allowed to accept or decline any ride.
> 7.  Their behavior and treatment towards us "partners" dictates terms for Employers which treats us as like employees.
> 8.  They do not provide adequate support to their "partners" and therefore makes our jobs more frustrating.
> 9.  They do not properly screen drivers and continue to put riders at risk and making the rest of us "partners" look bad in the public eye.
> 10.  Uber has announced to the public, criminals with "felonious" background history will now be allowed to drive, which indicates they have blatant disregard for thorough background checks.

(Ferrara Decl. ¶ 26, Ex. F.)  Complaint numbers 1 and 3 lack specificity and therefore should be overruled.  *Nwabueze*, 2013 WL 6199596, at *7.  Complaint numbers 2, 4, 5, 6, 7, 8 are unrelated to the subject matter of this case, and any legal claims based thereon would not be released through the Settlement.  While complaint numbers 9 and 10 reference background checks, they relate to the thoroughness of Uber's background checks rather than compliance with the FCRA or analogous state law.  Therefore, these complaints also fall outside the scope of the Settlement.

Accordingly, the Kahler Objection should be overruled because its contentions are either vague, or are unrelated to the subject matter of the Settlement.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court overrule all objections to the Settlement and grant final approval.

| | |
|---|---|
| 1 | Dated: January 25, 2018 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | Dated: January 25, 2018 |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

Dated: January 25, 2018

Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

*/s/ Andrew P. Lee*

Laura L. Ho
Andrew P. Lee
William C. Jhaveri-Weeks
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
Tel: (510) 763-9800; Fax: (510) 835-1417

*Attorneys for Plaintiffs and the Settlement Class*

Dated: January 25, 2018

Respectfully submitted,

AHDOOT & WOLFSON, PC

*/s/ Tina Wolfson*

Tina Wolfson
Robert Ahdoot
Theodore W. Maya
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, CA 90024
Tel: (310) 474-9111; Fax: (310) 474-8585

*Attorneys for Plaintiffs and the Settlement Class*

LAWYERS' COMMITTEE FOR CIVIL RIGHTS
OF THE SAN FRANCISCO BAY AREA
Elisa Della-Piana (SBN 226462)
edellapiana@LCCR.com
131 Steuart Street, Suite 400
San Francisco, CA 94105
Tel: (415) 543-9444
Fax: (415) 543-0296

*Attorneys for Plaintiff, Ronald Gillette*

701589.10

## **SIGNATURE ATTESTATION**

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the signatories on this e-filed document.

Dated: January 25, 2018                              */s/ Andrew P. Lee*
                                                     Andrew P. Lee

701589.10