JOHN C. FISH, JR., SBN 160620
jfish@littler.com
ROD M. FLIEGEL, SBN 168289
rfliegel@littler.com
ANDREW M. SPURCHISE, SBN 245998
aspurchise@littler.com
LITTLER MENDELSON, P.C.
333 Bush Street, 34th Floor
San Francisco, California  94104
Telephone:   415.433.1940
Facsimile:  415.399.8490

THEODORE J. BOUTROUS JR., SBN 132099
   tboutrous@gibsondunn.com
THEANE EVANGELIS, SBN 243570
   tevangelis@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA, SBN 254433
   dmanthripragada@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

JOSHUA S. LIPSHUTZ, SBN 242557
   jlipshutz@gibsondunn.com
KEVIN RING-DOWELL, SBN 278289
   kringdowell@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:   415.393.8200
Facsimile:   415.393.8306

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and RASIER, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| IN RE UBER FCRA LITIGATION | Case No. 3:14-cv-05200 EMC<br><br>**DEFENDANTS' BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT** |
|---|---|

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' BRIEF ISO MOTION FOR FINAL APPROVAL – CASE NO. 3:14-CV-05200 EMC

# T<small>ABLE OF</small> C<small>ONTENTS</small>

**P**<small>**AGE**</small>

I. INTRODUCTION ......................................................................................................... 1
II. ARGUMENT .................................................................................................................. 2
    A. Plaintiffs' Claims Are Likely To Be Dismissed For Lack Of Standing ...................... 2
    B. Plaintiffs Are Unlikely To Show That The FCRA Even Applies To Them ................ 5
    C. Plaintiffs Are Not Likely To Prove Any FCRA Violations At All .............................. 6
    D. It Is Highly Unlikely That Plaintiffs Could Prove A Willful Violation ...................... 7
    E. Plaintiffs Will Face Serious Obstacles If They Attempt To Certify Any Class .......... 9
III. CONCLUSION ............................................................................................................. 12

Defendants Uber Technologies, Inc. and Rasier, LLC ("Defendants") respectfully submit this Brief in support of Plaintiffs Ronald Gillette, Abdul Kadir Mohamed, Shannon Wise, Brandon Farmer, and Meghan Christenson's (collectively, "Plaintiffs," and together with Defendants the "Parties") Motion for Final Approval of Class Settlement.

## I. INTRODUCTION

On June 29, 2017, this Court determined that the Parties' proposed class action settlement was fair, adequate and reasonable and granted its preliminary approval. (*See* Dkt. 242, Preliminary Approval Order.) In doing so, the Court recognized the "substantial risks and obstacles" Plaintiffs would encounter should they proceed with litigation. (*See id*. at pp. 10-12.) These risks included:

- Defendants' position that they "complied with [] obligations under the FCRA" (*Id*. at p. 10:5-11);
- Defendants' contention that Plaintiffs cannot prove a "willful" violation, which is a prerequisite for statutory damages under the FCRA (*Id*. at p. 11:3-23); and
- Defendants' intention to "pursue dismissal of the FCRA claims for lack of standing, noting that Courts have 'split on the issue of whether claims regarding disclosure violations can establish concrete injury.'" (*Id*. at pp. 11:24-12:16 (citation omitted).)

These potential risks to Plaintiffs' chances of success on the merits supported the Court's preliminary determination that the Parties' settlement agreement was fair and adequate. Since the Court issued its preliminary approval decision, a number of doctrinal developments have taken place that, in Defendants' view, make it even *more* likely that these risks will materialize and foreclose any recovery for Plaintiffs. Specifically, courts across the country have continued to dismiss allegations of technical FCRA violations, such as the violations Plaintiffs allege here, for lack of concrete harm and thus lack of standing. Courts also have issued opinions finding, as a matter of law, that (1) disclosure forms similar to the ones that Defendants used do not violate the FCRA, and (2) allegations such as Plaintiffs' cannot support a willful violation of the FCRA. Moreover, a court recently denied class certification in a nearly identical action due to the predominance of individualized issues—a position Defendants would take if final approval is not granted and Plaintiffs attempt to certify any class.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' BRIEF ISO MOTION FOR FINAL APPROVAL — 1. — CASE NO. 3:14-CV-05200 EMC

In short, while Defendants were confident in their defenses and the state of the law prior to this Court's preliminary approval order, Defendants are even more confident today that Plaintiffs' class claims face material and ongoing risks, and that the likelihood of a complete dismissal of Plaintiffs' claims is high. These risks, in conjunction with the other factors identified in Plaintiffs' final approval motion, confirm that this class settlement is fundamentally fair. Accordingly, Defendants respectfully request that the Court grant final approval of the Parties' settlement agreement.

## II. ARGUMENT

### A. Plaintiffs' Claims Are Likely To Be Dismissed For Lack Of Standing

As the Court is aware, Defendants contend that Plaintiffs' claims, at best, amount to mere technical statutory violations, which are insufficient to establish the injury-in-fact required for Article III standing. Indeed, in its preliminary approval order, this Court recognized Defendants' Article III standing argument as a substantial factor weighing in favor of settlement approval. (*See* Dkt. 242 at p. 12 ("[S]ince *Spokeo* left the issue open, the question of standing in FCRA disclosure cases has not been clarified by the Supreme Court. In light of [these substantial risks and obstacles . . . it is clear that [a] substantial discount is warranted.").) Since then, district courts across the country—interpreting and applying *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)—have demonstrated that this risk of dismissal is very real, by dismissing analogous FCRA claims for lack of standing.

For example, one day after this Court's order, a court in the Central District of California dismissed a putative class action under 15 U.S.C. § 1681b(b)(2)—finding the alleged failure to receive a "clear and conspicuous disclosure in writing" constituted a technical FCRA violation divorced from any actual harm. *See Marchioli v. Pre-employ.com, Inc.*, Civ. No. 5:16-02305 (C.D. Cal. June 30, 2017).[1] The court dismissed the action notwithstanding the Ninth Circuit's opinion in *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017), which found Article III standing based on an alleged

---

[1] There is currently no Lexis or Westlaw citation for the court's opinion in *Marchioli*. A copy of this opinion is attached hereto as Exhibit A.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' BRIEF ISO MOTION FOR FINAL APPROVAL    2.    CASE NO. 3:14-CV-05200 EMC

violation of § 1681b(b)(2).[2]  However, as the *Marchioli* court explained, *Syed* was distinguishable because the plaintiff in *Syed* was allegedly confused by the inclusion of a liability waiver in the disclosure form, and therefore did not understand that he was authorizing the defendant to obtain his consumer report.  *Id*. at p. 11.  Such allegations were not present in *Marchioli*, and they are not present *in this case*.  (*See* Dkt. 171, Amended Master Consolidated Complaint.)

Similarly, in November 2017, a district court in Idaho dismissed a putative class action alleging the defendant violated the standalone disclosure requirement of § 1681b(b)(2).  *See Mitchell v. Winco Foods, LLC*, No. 1:16-cv-00076, 2017 U.S. Dist. LEXIS 188325 (D. Idaho Nov. 13, 2017).  The court previously determined that the plaintiff failed to allege any "concrete" injury, but the plaintiff moved for reconsideration in light of *Syed*, as an "intervening change in law." *Id*. at \*\*2-3.  However, as in *Marchioli*, the *Mitchell* court found *Syed* was distinguishable because it involved a disclosure form with a liability waiver and allegations that the plaintiff was "confused" by the form and would not have signed it otherwise—claims not made by the *Mitchell* plaintiff.  *Id*. at \*\*4-5; *see also Saltzberg v. Home Depot, U.S.A., Inc.*, No. CV 17-05798, 2017 U.S. Dist. LEXIS, at \*\*4-5 (C.D. Cal. Oct. 18, 2017) (dismissing putative class action under § 1681b(b)(2) for failure to allege a concrete injury from a disclosure form containing "extraneous" information and a liability waiver); *Stacy,* 2017 U.S. Dist. LEXIS 214815, at \*\*15-16 (dismissing putative class action under § 1681b(b)(2) and collecting opinions by "the vast majority of other courts" granting dismissal of § 1681b(b)(2) claims under *Spokeo*).

These cases (all issued since this Court's preliminary approval order) are on point, and support Defendants' argument that Plaintiffs lack Article III standing.  Also directly on point is the

---

[2] Defendants note that the Ninth Circuit's discussion of the plaintiff's standing in *Syed* relied on *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623 (E.D. Va. 2016).  *See Syed*, 853 F.3d at 499-500.  But *Thomas* is at odds with the majority of cases and is of "doubtful validity" after the Fourth Circuit's opinion regarding *Spokeo* in *Dreher v. Experian Info. Solutions, Inc.*, 856 F.3d 337, 346-47 (4th Cir. 2017).  *See Stacy v. Dollar Tree Stores, Inc.*, No. 16-61032, 2017 U.S. Dist. LEXIS 214815, at \*21(S.D. Fla. Aug. 14, 2017) (so remarking about *Thomas* based on *Dreher*); *see also In re Michaels Stores, Inc.*, No. 15-2547, 2017 U.S. Dist. LEXIS 9310, at \*18 (D. N.J. Jan. 24, 2017) ("the authorities *Thomas* cites as precedent for its 'informational injury' theory predate *Spokeo*, and I do not think their rationales survive").

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' BRIEF ISO MOTION FOR FINAL APPROVAL — 3. — CASE NO. 3:14-CV-05200 EMC

1 Seventh Circuit's recent opinion in *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884 (7th Cir. 2017). Issued on August 1, 2017, the Seventh Circuit held that a plaintiff who receives a background check disclosure form lacks standing to pursue a claim based on the allegation that the disclosure "contained extraneous information" in violation of § 1681b(b)(2). *Id*. at 887. In doing so, the Seventh Circuit distinguished *Syed* as involving allegations from which the Ninth Circuit could "infer harm"—i.e., that the plaintiff in *Syed* was "confused by the disclosure form" and would not have authorized the employer to obtain his consumer report had the disclosure complied with § 1681b(b)(2). *Id*. at 889. In *this* case, as in *Groshek*, *Marchioli* and *Mitchell*, Plaintiffs have not alleged any confusion or any other viable theory of harm beyond mere statutory violations of the FCRA. As *Spokeo*, *Groshek* and *Syed* make clear, this is not enough to establish standing.

While the above authorities involved claims under § 1681b(b)(2), courts have also continued to dismiss pre-adverse action claims under § 1681b(b)(3)—also for lack of injury-in-fact and thus lack of standing under *Spokeo*. *See, e.g, Moore v. Rite Aid Hdqtrs Corp*., No. 13-1515, 2017 U.S. Dist. LEXIS 209908, at **29-30 (E.D. Pa. Dec. 21, 2017) (granting motion to dismiss § 1681b(b)(3) claim because, despite an alleged statutory violation, "Plaintiff's rights guaranteed by the FCRA were not harmed by Rite Aid's conduct," as the plaintiff was still given the opportunity to contact the defendant and discuss her termination); *Stephens v. Walmart Stores*, Inc., Civ. No. 0:16-cv-62723 (S.D. Fla. October 23, 2017) (granting motion to dismiss class claim under § 1681b(b)(3) because "Plaintiff identifies only bare procedure violations of the FCRA—delayed notice and opportunity to challenge—that carry no material risk of harm because Plaintiff ultimately received both notice of the unfavorable consumer report and an opportunity to challenge that report"); *Riley v. United Parcel Service of Am., Inc*., Civ. No. 6:17-00254 (M.D. Fla. Oct. 2, 2017) (dismissing claim under § 1681b(b)(3) because the plaintiff received his consumer report and summary of rights from the consumer reporting agency, and thus could not have suffered any concrete injury based on the employer's failure to comply with the section).[3]

---

[3] There are currently no Lexis or Westlaw citations for the *Stephens* or *Riley* opinions. Copies of these opinions are attached hereto as Exhibits B and C, respectively.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' BRIEF ISO MOTION FOR FINAL APPROVAL    4.    CASE NO. 3:14-CV-05200 EMC

Collectively, these decisions—all of which were issued after this Court granted preliminary settlement approval—heighten the already-substantial risk that Plaintiffs' claims will be subject to dismissal for lack of Article III standing. And, as discussed below, recent authority favoring Defendants has emphasized how such issues relating to standing can also doom Plaintiffs' bid for class certification.

### B. Plaintiffs Are Unlikely To Show That The FCRA Even Applies To Them

As Plaintiffs acknowledge, there are authorities that stand for the proposition that the FCRA does not apply to independent contractors. *See Johnson v. Sherwin-Williams Co.*, 152 F. Supp. 3d 1021, 1025-27 (N.D. Ohio 2015) (holding the FCRA disclosure and pre-adverse action requirements do not apply to independent contractors); *see also Lamson v. EMS Energy Mktg. Serv.*, 868 F. Supp. 2d 804, 817-18 (E.D. Wis. 2012) (same). Therefore, should the litigation proceed, Defendants maintain that Plaintiffs' claims require them to demonstrate that they are employees, not independent contractors. (*See* Dkt. 223, Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, at pp. 19:18-20:13.) Defendants' evidence that Plaintiffs were in fact properly classified as independent contractors has become even stronger since this Court's preliminary approval order. Indeed, on four separate occasions (including three since June 2017) neutral arbitrators have unanimously determined that drivers using the Uber App in California *were independent contractors, not employees*. *See Adonnis Biafore and Sothyson Pa v. Uber Tech, Inc., et al.* (Judicate West 455564) (Jan. 10, 2018); *Dorr v. Uber Tech, Inc., et al.* (JAMS Ref No: 1210033721) (Dec. 15, 2017); *Gollnick v. Uber Tech, Inc., et al.* (JAMS No. 110082777) (Aug. 17, 2017); *Eisenberg v. Uber Tech, Inc., et al.* at p. 47 (ADRS Case No. 15-68780MDM) (Nov. 23, 2016).[4] Thus, the risk to Plaintiffs of proceeding with their FCRA claims has become even more pronounced since preliminary approval.

---

[4] Copies of these arbitration awards are attached hereto as Exhibit D.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' BRIEF ISO MOTION FOR FINAL APPROVAL    5.    CASE NO. 3:14-CV-05200 EMC

### C. Plaintiffs Are Not Likely To Prove Any FCRA Violations At All

Defendants have always maintained that, contrary to Plaintiffs' allegations, their background check policies and procedures (including their disclosure form) in fact complied with the FCRA—even assuming the statute applies to independent contractors. Indeed, as previously demonstrated, a district court in Massachusetts has already determined that Defendants arranged to provide the requisite notices under the FCRA. *See Goldberg v. Uber Technologies, Inc.*, No. 14-14264, 2015 U.S. Dist. LEXIS 44675, at **6-7 (D. Mass. Apr. 6, 2015).

Courts continue to hand down rulings supporting Defendants' position that they fully complied with the FCRA. Indeed, just two months ago, a district court in Florida found that a disclosure form similar to Defendants' complied with the FCRA as a matter of law and thus could not sustain a class claim under § 1681b(b)(2). *See Reed v. CRST Van Expedited, Inc.*, No. 8:17-cv-199, 2017 U.S. Dist. LEXIS 192668 (M.D. Fla. Nov. 20, 2017). The plaintiff in *Reed* alleged that the defendant failed to comply with the FCRA's standalone requirement because its disclosure contained alleged "extraneous" information, including "information about the content of the consumer report, [the plaintiff's] right to request a copy of and dispute the report, and the companies potentially generating the report." *Id.* at **7-8. Despite these allegations, the court granted a Rule 12 motion. *Id.* at **8-9. In doing so, the court explained that just because a disclosure form "provides some additional information relating to the consumer report" does not mean that it violated the FCRA. *Id.* at *8.

The holding in *Reed* is in line with other prior well-reasoned opinions rejecting the notion that the inclusion of additional information relevant to the background check violates the standalone disclosure requirement. *See, e.g., Tauriainen v. Great Lakes Wine & Spirits*, No. 15-cv-12789, 2015 U.S. Dist. LEXIS 182098, at *7 (E.D. Mich. Dec. 31, 2015) ("[Plaintiff's] case rests on the contention that *any* deviation from his strict interpretation of the standalone disclosure requirement is a violation. That position is unreasonable.") (emphasis in original); *see also Coleman v. Kohl's Dep't Stores, Inc.*, No. 15-cv-02588, 2015 U.S. Dist. LEXIS 135746, at **17-18 (N.D. Cal. Oct. 5, 2015) (holding that defendant's disclosure form did not violate the law, despite including explanatory information about background checks, state law checkbox for copy of free report, and

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' BRIEF ISO MOTION FOR FINAL APPROVAL — 6. — CASE NO. 3:14-CV-05200 EMC

applicant identifying information which the court found was "relevant information" to the background check); *Noori v. Vivint, Inc.*, No. CV 16-5491, 2016 U.S. Dist. LEXIS 120963, at *14 (C.D. Cal. Sept. 6, 2016) (granting Rule 12 motion and finding "the inclusion in the Disclosure Notice of information concerning an applicant's rights under state laws related to the procurement of a consumer report, and ability to view a copy of such a report, does not, under the Court's reading of section 1681b(b)(2)(A), violate the FCRA's requirement that the disclosure be 'clear and conspicuous' and be contained 'in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes'").

Thus, Defendants continue to maintain, as they always have, that their disclosures and notices complied with the FCRA, foreclosing any possible recovery for Plaintiffs.

### D. It Is Highly Unlikely That Plaintiffs Could Prove A Willful Violation

As just discussed, Defendants contend that, should the litigation proceed, Plaintiffs will be unable to prove any FCRA violation at all. But as Plaintiffs have acknowledged, they must do *far more* than prove a mere negligent FCRA violation to proceed with class claims for statutory damages. Instead, Plaintiffs must prove that Defendants *willfully* violated the FCRA through their disclosure form and pre-adverse action process. To do so, Plaintiffs must show that: (1) the text of the relevant FCRA sections is unambiguous; (2) Defendants' conduct violated the relevant sections; and (3) Defendants' conduct was objectively unreasonable. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007) ("a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless"). Plaintiffs cannot come close to satisfying this heightened standard.

An opinion issued just two weeks ago would reinforce Defendants' position that Plaintiffs will be unable to prove any willful FCRA violation here. *See Lewis v. Southwest Airlines Co.*, No. 3:16-CV-01538, 2018 U.S. Dist. LEXIS 5576 (N.D. Tex. Jan. 11, 2018). In *Lewis*, the plaintiff alleged that Southwest's disclosure form contained "extraneous" information in violation of § 1681b(b)(2). Like Plaintiffs here, the plaintiff in *Lewis* alleged only a willful violation of the FCRA because he sought statutory damages on behalf of a proposed nationwide class. *Id.* at **2-3.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' BRIEF ISO MOTION FOR FINAL APPROVAL    7.    CASE NO. 3:14-CV-05200 EMC

However, the court granted summary judgment, finding that the plaintiff could not prove a willful violation because the defendant's disclosure form was not based on an "objectively unreasonable" interpretation of § 1681b(b)(2).  *Id*. at **13-14.  Significantly, the *Lewis* court held that a determination of willfulness under the FCRA must consider whether the defendant had the "benefit of guidance from the courts of appeal" *at the time it issued the challenged disclosure form*:

> At the time Southwest engaged Sterling to procure an investigative consumer report for Plaintiff pursuant to the Consent Form, no court of appeals had addressed the question of statutory interpretation at issue here; nor had the [Federal Trade Commission] offered 'authoritative guidance' on the issue.  Indeed, it was not until after Plaintiff had filed this lawsuit that the Ninth Circuit issued its decision in *Syed*, holding that inclusion of a liability waiver in a FCRA disclosure constitutes a willful violation of the statute.  In 2015, the district courts that considered whether extraneous information in an FCRA disclosure constitutes a willful violation came to conflicting answers.

*Id*. at *13.[5]

Plaintiffs' claims here are predicated on a disclosure form *far* more innocuous than the one in *Lewis*.  And, as in *Lewis*, Defendants' disclosure form was not (and could not have been) based on an "objectively unreasonable" interpretation of its FCRA obligations, if any.  Indeed, at the time Defendants issued the challenged disclosure, it did not have the benefit of *any* guidance from the courts of appeal on whether the form violated the FCRA's standalone disclosure requirement.  In *Safeco*, the U.S. Supreme Court made clear that circuit court opinions are the only authorities upon which a willful FCRA violation can be based and no such opinions were available to Defendants at the relevant times.  *See Pintos v. Pac. Creditors Ass'n*, No. C 03-5471, 2011 U.S. Dist. LEXIS 41630, at *11 (N.D. Cal. Apr. 13, 2011) (the plaintiff could not prove a willful FCRA violation based on a *later* decided Ninth Circuit opinion).

---

[5] Like Plaintiffs here, the plaintiff in *Lewis* also alleged class claims under California's Investigative Consumer Reporting Agencies Act ("ICRAA").  *Id*. at *2.  However, the court, relying on *Espinosa v. Bluemercury, Inc*., No. 16-cv-07202, 2017 U.S. Dist. LEXIS 41885 at *3 (N.D. Cal. Mar. 22, 2017), found that the ICRAA's statutory of damages of $10,000 "are not recoverable on a class basis, which is the basis on which Plaintiff pursues such damages here." *Id*. at **7-8.  The *Lewis* court further found that the plaintiff's ICRAA claims failed for want of any actual damages. *Id*. at *7.  Thus, this recent opinion also supports Defendants' defenses to Plaintiffs' ICRAA claims here.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' BRIEF ISO MOTION FOR FINAL APPROVAL             8.             CASE NO. 3:14-CV-05200 EMC

And while *Lewis* is the most recent opinion supporting Defendants' position on willfulness, it is far from the only one. *See, e.g.*, *Just v. Target Corp.*, 187 F.Supp.3d 1064, 1069 (D. Minn. 2016) (dismissing willful FCRA violation because "the statute itself [§ 1681b(b)(2)] is less than clear" and, at the time of the defendant's disclosure, neither the courts of appeal nor the FTC had provided "guidance as to the parameters of the stand-alone disclosure requirement"); *see also Landrum v. Harris County Emergency Corps*, 122 F.Supp.3d 617, 625-26 (S.D. Tex. 2015) (dismissing claim of willful violation of § 1681b(b)(2) because the section is less than clear and, at the relevant time, only two district courts "had addressed the propriety of including a release provision as part of an FCRA-regulated disclosure" and "[e]ach court reached a different conclusion"); *Peikoff v. Paramount Pictures Corp.*, No. 15-cv-00068, 2015 U.S. Dist. LEXIS 63642, at *3-4 (N.D. Cal. Mar. 25, 2015) (finding a disclosure form did not willfully violate the FCRA because the alleged "extraneous" information "even if not part of the statutorily permitted authorization, was closely related to it" and therefore it was "not plausible" that the defendant acted in reckless disregard of the FCRA's disclosure requirement).

These authorities make abundantly clear that Plaintiffs are highly unlikely to prove that Defendants willfully violated the FCRA. And absent such a showing, Plaintiffs cannot pursue their class claims, which are predicated entirely on their claim to statutory damages *available only on proof of a willful FCRA violation*. 15 U.S.C. § 1681n.

### E. Plaintiffs Will Face Serious Obstacles If They Attempt To Certify Any Class

Defendants have also consistently maintained that Plaintiffs will be unable to carry their burden under Rule 23 to prove that class certification of any of their claims is warranted. With regard to the § 1681b(b)(2) claim, Defendants used various FCRA disclosure forms during the relevant time—meaning individualized issues will predominate as to which putative class members received which particular disclosure form.[6] Individualized determinations are also inherent in any

---

[6] Defendants will prevail if any disclosure was compliant with the FCRA. *See, e.g., Reardon v. ClosetMaid Corp.*, No. 2:08-cv-01730, 2013 WL 6231606, at *6 (W.D. Pa. Dec. 2, 2013) ("[T]o the extent that at least one of the two forms provided applicants with a proper disclosure under section 1681b(b)(2)(A)(i), [plaintiff's and class members' claims of FCRA disclosure violations] must
*(Cont'd on next page)*

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' BRIEF ISO MOTION FOR FINAL APPROVAL

9.

CASE NO. 3:14-CV-05200 EMC

class analysis of an alleged violation of the pre-adverse action requirements of § 1681b(b)(3). Earlier this month, a district court in Virginia recognized as much, and denied a motion for class certification based on an alleged violation of § 1681b(b)(3). *See Branch v. Government Employees Ins. Co.*, No. 3:16-cv-1010, 2018 U.S. Dist. LEXIS 4790 (E.D. Va. Jan. 10, 2018).

In *Branch*, the plaintiff alleged that a GEICO employee advised the plaintiff that her conditional offer of employment had been rescinded prior to GEICO sending her the background report and FCRA summary of rights. *Id*. at **4-5. According to the plaintiff, GEICO assigned a "Fail" grade to her, and members of the putative class, before to issuing the pre-adverse action letter—thus allegedly violating § 1681b(b)(3) by taking an "adverse action" before the FCRA allows. *Id.* at *7. The plaintiff alleged that GEICO's assignment of a "Fail" grade was a uniform policy of the company and therefore her claim was "typical" of the class. *Id.* at **15, 18. But the court disagreed. It explained that GEICO's adjudication process was not "inherently flawed because it gives applicants a legitimate opportunity to cure their 'Fail' grades." *Id*. at *20. In the plaintiff's case, however, she alleged that her "Fail" grade was coupled with a GEICO employee deviating from the adjudication process by prematurely rescinding her conditional job offer. *Id.* "In other words, the FCRA violation in this case, if any, stemmed not from the Adjudication Process itself, but rather from the individualized application of the Adjudication Process to [the plaintiff]." *Id*. Thus, the court found the § 1681b(b)(3) claim necessarily required individualized determinations about class members' "interactions with GEICO" during the pre-adverse action process to assess whether the class members stated viable claims. *Id.* at * 21. But this of course could not satisfy the predominance or typicality requirements of Rule 23. *Id.* at **21, 27-28.

---

*(Cont'd from previous page)*

fail"); *Coleman*, 2015 U.S. Dist. LEXIS 135746, at *5-6 (dismissing § 1681b(b)(2) claim despite an employment application with a liability release because the plaintiff was also presented with a separate "Consent and Disclosure Form").

DEFENDANTS' BRIEF ISO MOTION FOR FINAL APPROVAL   10.   CASE NO. 3:14-CV-05200 EMC

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

The *Branch* court also determined that the plaintiff failed to satisfy the predominance requirement because her proposed class definition included putative class members who lacked Article III standing. *Id*. at *31. Relying on, among other authorities, the Ninth Circuit's opinion in *Mazza v. Am. Honda Motor Co*., 666 F. 3d 581, 594 (9th Cir. 2012), the *Branch* court held that the class definition must "be defined in a way that anyone within it would have standing." *Id*. (quotations and citations omitted). In denying class certification on this ground, the court explained:

> Branch's class definition, however, fails to meet this standard. That definition includes all applicants who received a 'Fail' grade because of their criminal histories. But, as discussed, applicants who received that grade and had a meaningful chance to correct it during the Adjudication Process' cure period did not suffer any adverse action. Some applicants might have, like Branch, effectively been denied that cure period, but those individuals cannot be identified without individualized inquiries about their communications with GEICO. Consequently, this Article III standing framework reiterates the prevalence of particularized factual issues that prevent Branch from satisfying the predominance requirement.

*Id*. at **31-32.

This recent opinion underscores the obstacles Plaintiffs here will face should they attempt to certify any class—as their FCRA claims necessarily entail individualized determinations not suitable for class treatment and the Article III standing issues, discussed above, will further preclude Plaintiffs from establishing Rule 23's predominance requirement.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' BRIEF ISO MOTION FOR FINAL APPROVAL     11.     CASE NO. 3:14-CV-05200 EMC

## III. CONCLUSION

In the short time since this Court granted preliminary approval of the Parties' proposed class settlement, numerous developments in the case law have corroborated and strengthened Defendants' defenses to Plaintiffs' underlying claims. These opinions, in turn, support this Court's prior determination that the Parties' class settlement is fair and reasonable—especially in light of the risks and obstacles Plaintiffs will encounter should litigation proceed. Defendants join Plaintiffs in respectfully requesting that the Court finally approval the Parties' class action settlement.

Dated: Janaury 25, 2018

LITTLER MENDELSON, P.C.

By: /s/ *Rod M. Fliegel*
ROD M. FLIEGEL

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and RASIER, LLC

Firmwide:152448119.4 073208.1047

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940