UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 16-2305 JGB (DTBx)** | Date | June 30, 2017 |
| Title | ***Marc Marchioli v. Pre-employ.com, Inc., Eisenhower Medical Center, et al.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| MAYNOR GALVEZ | Not Reported |
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **Order: (1) GRANTING Eisenhower Medical Center's ("EMC") Motion to Strike (Dkt. No. 67); (2) GRANTING EMC's Motion to Dismiss (Dkt. No. 66); (3) GRANTING Pre-employ.com, Inc.'s ("PE") Motion to Dismiss (Dkt. No. 68); (4) DISMISSING the SAC; and (5) VACATING the July 10, 2017 Hearing**

Before the Court are Defendants' motions to dismiss, (Dkt. Nos. 66, 68), EMC's motion to strike, (Dkt. No. 67), EMC's motion for attorney's fees (Dkt. No. 65), PE's request for judicial notice (Dkt. No. 84), and Plaintiff's motion for attorney's fees. (Dkt. No. 71.) The Court finds these matters appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering all papers timely filed in support of, and in opposition to the motions, the Court GRANTS EMC's motion to strike, GRANTS EMC's and PE's motions to dismiss, DISMISSES the SAC WITH LEAVE TO AMEND, and VACATES the July 10, 2017 Hearing.

**I. BACKGROUND**

**A. Procedural History**

Marc Marchioli ("Plaintiff") initially filed this putative class action against EMC and PE (collectively, "Defendants"), under the Fair Credit Reporting Act ("FCRA") and California's Unfair Competition Law ("UCL") in the District Court for the Eastern District of California on May 23, 2016. (Dkt. No. 1.) On July 26, 2017, EMC filed a motion to transfer venue, (Dkt. No. 7), and a motion to dismiss. (Dkt. No. 8.) On July 29, 2016, EMC filed an Anti-SLAPP motion. (Dkt. No. 11.) On August 16, 2016, PE filed a motion to dismiss. (Dkt. No. 16.) On October 21, 2016, Plaintiff filed an Ex Parte Application to compel Defendants to participate in limited Rule 26 discovery for the purpose of gathering evidence to oppose EMC's Anti-SLAPP Motion. (Dkt. No. 29.) On November 3, 2016, Judge England denied Plaintiff's Ex Parte Application, granted

the motion to transfer venue, and denied both motions to dismiss as well as the motion to strike without prejudice. (Dkt. No. 34.)

The case was transferred to this Court on November 4, 2016. (Dkt. No. 37.) On November 22, 2016, EMC refiled a motion to dismiss and a renewed anti-SLAPP Motion. (Dkt. Nos. 40-1, 41-1.) PE filed a motion to dismiss on November 23, 2016. (Dkt. No. 42-1.) On December 1, 2016, Plaintiff filed a First Amended Complaint ("FAC"). (Dkt. No. 43.) EMC filed a motion to strike the FAC. (Dkt. No. 44-1.) PE filed a motion to strike the FAC on December 15, 2016. (Dkt. No. 45-1.) On January 25, 2017, the Court granted EMC's and PE's motions to strike and motions to dismiss, dismissing the FAC with leave to amend. ("Order," Dkt. No. 58.) The Court held that EMC's conduct was protected activity under California Code of Civil Procedure section 425.16 ("Section 425.16") and Plaintiff failed to demonstrate a probability of prevailing on his UCL claim. (Order at 6-7.) With respect to Plaintiff's FCRA claims, the Court held that Plaintiff's claims contained insufficient allegations to plausibly infer how PE or EMC violated 15 U.S.C. § 1681a, et seq. (Id. at 10-13, 14-17.) Significantly, the Court also held that Plaintiff could not satisfy Spokeo's standing requirements under Article III for failure to allege more than a "bare procedural violation." (Order at 14-15.)

On February 23, 2017, Plaintiff filed his Second Amended Complaint against EMC, PE, and Does 1 through 20. ("SAC," Dkt. No. 59.) His SAC brings two causes of action: (1) violation of the FCRA, 15 U.S.C. § 1681a, et seq.; and (2) violation of the UCL. On March 16, 2017, EMC filed a motion for attorney's fees and costs under Section 425.16(c)(1). (Dkt. No. 65.)

On March 30, 2017, EMC filed its motion to dismiss or in the alternative, to stay the case pending the Ninth Circuit's Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016) ruling on remand. ("EMTD," Dkt. Nos. 66, 66-1.) EMC also filed a motion to strike the SAC under Section 425.16. ("EMTS," Dkt. Nos. 67, 67-1.) In support of its motion to strike, EMC filed the Declaration of David Kowalczyk (Kowalczyk Decl., Dkt. No. 67-2), which includes the following Exhibits:

- Exhibit A: first and last page of Plaintiff's EMC job application dated September 25, 2014 (Dkt. No. 67-5);
- Exhibit B: screenshot of FCRA Summary (Id.);
- Exhibit C: screenshot of FCRA Authorization (Id.);
- Exhibit D: signed copy of Plaintiff's contingent offer letter dated December 8, 2014 ("Offer Letter," Id.);
- Exhibit E: correspondence from Plaintiff dated April 17, 2015 (Id.);
- Exhibit F: letter from Plaintiff dated July 3, 2015 (Id.);
- Exhibit G: letter from Plaintiff's attorney Anna Rossi dated August 4, 2015 (Id.); and
- Exhibit H: letter from EMC's Deputy General Counsel James L. Reed to Plaintiff's attorney dated October 9, 2015 (Id.)

EMC also filed the the Declaration of Linda Riggs (Riggs Decl., Dkt. No. 67-3), in support of its motion to strike, which includes the following Exhibits:

- Exhibit I: EMC's Medical Staff Bylaws (Dkt. Nos. 67-5, 67-6 at Ex. I);
- Exhibit J: EMC's Peer Review Consent signed by Plaintiff (Dkt. No. 67-6); and
- Exhibits K through O: EMC's Confidential Practitioner Evaluations (Id.)

As further support for its motion to strike, EMC filed the Declaration of Erin Davis (Davis Decl., Dkt. No. 67-4), which includes the following Exhibits:

- Exhibit P: email from Linda Riggs, EMC's Credentials Coordinator, to Plaintiff containing information about the credentialing process dated December 15, 2014 (Dkt. No. 67-6);
- Exhibit Q: Plaintiff's Allied Health Professional ("AHP") Application to EMC's Medical Staff Office dated December 27, 2014 (Id.);
- Exhibit R: email from Linda Riggs to Plaintiff notifying him that his AHP application was incomplete and directing him to provide missing information dated January 12, 2015 (Id.); and
- Exhibit S: email from Linda Riggs to Plaintiff to request he provide contact information for his references, prior hospital affiliations, and prior employers to complete his AHP application dated January 26, 2015 (Dkt. No. 67-7.)

On March 30, 2017, PE filed its motion to dismiss. ("PMTD," Dkt. Nos. 68, 68-1.) Plaintiff filed a "cross-motion" for attorney's fees on April 27, 2017, (Dkt. Nos. 71, 71-1), attaching the Declaration of Duncan MacDonald in support. (MacDonald Decl., Dkt. No. 71-2.)

On May 22, 2017, Plaintiff opposed EMC's anti-SLAPP motion. ("Opp'n MTS," Dkt. No. 73.) Plaintiff also filed his own Declaration, (Marchioli Decl., Dkt. No. 73-1), which attaches the following Exhibits:

- Exhibit 1: Plaintiff's email correspondence with Carl Enzor, EMC's Chief Administrative Officer regarding his online application filed in September 2014 (Dkt. No. 73-3);
- Exhibit 2: Plaintiff's email correspondence with EMC representatives regarding Plaintiff's interviews (Id.);
- Exhibit 3: email correspondence between Plaintiff and EMC discussing certain aspects of EMC's offer dated November 20, 2014 (Id.);
- Exhibit 4: formal offer of employment from EMC received by Plaintiff on November 20, 2014 (Id.);
- Exhibit 5: EMC's documents completed by prospective employees as part of EMC's "onboarding process" (Id.);
- Exhibit 6: email correspondence between Plaintiff and Erin Davis chronicling Plaintiff's repeated provision of prior employer information to EMC (Id.);
- Exhibit 7: email from Ms. Davis informing Plaintiff on January 12, 2015 that he would not be permitted to work until EMC completed its credentialing process (Id.);
- Exhibit 8: email correspondence between Ms. Davis and Plaintiff and documents describing the credentialing process at EMC (Id.);

- Exhibit 9: email from EMC informing Plaintiff that it needed a separate background check conducted by PE dated March 20, 2015 (Id.);
- Exhibit 10: a copy of Pre-Employ's consumer report it provided to Plaintiff containing "erroneous statements" (Id.; Marchioli Decl. ¶ 14);
- Exhibit 11: email from Plaintiff to EMC asking why EMC decided not to proceed with Plaintiff's employment dated March 31, 2015 (Id.); and
- Exhibit 12: email correspondence between Plaintiff and David Kowalczyk at EMC regarding Plaintiff's unsuccessful request to receive his personnel file (Id.)

Plaintiff also filed Objections to the Declaration of Erin Davis, Linda Riggs, and David Kowalczyk, as well as an opposition to PE's motion to dismiss. (Dkt. Nos. 73-4, 73-5, 73-6; "Opp'n PMTD," Dkt. No. 75.) On May 23, 2017, Plaintiff filed oppositions to EMC's motion to dismiss and motion for attorney's fees. ("Opp'n EMTD," Dkt. No. 76; Dkt. No. 77.) EMC opposed Plaintiff's cross-motion for attorney's fees on May 30, 2017. (Dkt. No. 78.) On June 5, 2017, EMC filed its replies in support of its motion for attorney's fees, its motion to strike, and its motion to dismiss. (Dkt. Nos. 79, 80, 81.) EMC attached the Declaration of David Kowalcyzk in reply, and two accompanying Exhibits: (1) Plaintiff's signed FCRA Authorization, and (2) Plaintiff's signed Disclosure and Authorization Form. (Kowlczyk Reply Decl., Dkt. No. 80; Dkt. No. 80-1 at Exs. A, B.)

On June 5, 2017, Plaintiff filed a reply in support of his cross-motion for attorney's fees, (Dkt. No. 82), and PE filed its reply in support of its motion to dismiss as well as a request for judicial notice. ("PE Reply MTD," Dkt. No. 83; "PE RJN," Dkt. No. 84.)[1]

## B. Factual Allegations and Claims

The following facts are drawn from Plaintiff's SAC. Plaintiff, a resident of Pittsburgh, applied for employment with EMC, a not-for-profit corporation incorporated in California, with its principal place of business in Rancho Mirage, California. (SAC ¶ 3.) As part of the application process, Plaintiff was required to submit to a background check performed by PE, a corporation incorporated in California with its principal place of business in Redding, California.

---

[1] PE seeks judicial notice of the proceedings for Marchioli v. Pre-employ.com, et al., Case No. 2:17-cv-01566-JGB-DTB, and supports its request with the Declaration of Timothy J. Lepore. (Dkt. No. 84-1.) Pursuant to Federal Rule of Evidence 201, "[a] court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). An adjudicative fact may be judicially noticed if it is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Id. at subd. (b). PE requests judicial notice of related proceedings in this Court. The Court finds these to be judicially noticeable. See United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980) (holding that court may take judicial notice of its own records). The Court, therefore, GRANTS PE's request for judicial notice. (Dkt. No. 84.)

---

(Id.)  Plaintiff and Defendants dispute whether Plaintiff was actually offered employment with EMC.  (SAC ¶ 3; Dkt. No. 71-2 at 42.)  In any event, Plaintiff alleges that EMC, PE, and the Doe defendants violated the FCRA and UCL by improperly investigating, preparing, procuring, or causing the procurement of credit or consumer reports of Plaintiff and members of the putative class without providing proper notice, making the proper disclosures, or obtaining the proper authorizations or certifications.  (SAC ¶¶ 23-41.)

On those bases, Plaintiff brings two causes of action against EMC and PE: (1) violation of Federal Credit Reporting Act, 15 U.S.C. § 1681a, et seq. (id. at 5); and (2) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.  (Id. at ¶¶ 23-41, 42- 49.)  Plaintiff seeks statutory and punitive damages, restitution or disgorgement of profits, injunctive relief, as well as attorney's fees and costs.  (Id. at Prayer.)

## C. Parties' Contentions

### 1. EMC

EMC argues that the SAC "does not sufficiently articulate how the procedures followed by EMC violate the FCRA nor how the alleged FCRA violations caused him actual harm."  (EMTD at 9.)  In support, EMC points out that this Court already found "that it could not infer that Plaintiff suffered an injury sufficient for Article III standing where absent from the Original Complaint was any allegation that EMC actually failed to inform Plaintiff that it intended to perform a background check, or that Plaintiff was not aware that a background check would be conducted."  (Id. at 13-14.)  In addition, EMC argues that Plaintiff's Section 1681d claim must fail because the more stringent disclosure requirements of that section only apply to investigative consumer reports and the SAC does not contain any allegations that EMC procured such a report.  (EMTD at 12.)

### 2. PE

PE raises issues of standing and also argues that Plaintiff's failure to adequately allege statutory elements of his FCRA claims warrants dismissal of the SAC with prejudice.  PE argues that "Marchioli cannot allege a 'concrete harm' to satisfy Article III standing by merely alleging PE failed to notify a user (i.e., EMC) of its statutory obligations under the FCRA."  (PMTD at 15.)  PE asserts that this is exactly the statutory violation on which Marchioli's asserted informational injury seeks to rely since "Marchioli [specifically] disclaims he is alleging PE prepared an inaccurate report on him."  (Id.)  Relatedly, PE argues that Plaintiff cannot plausibly claim that PE's alleged failure to obtain certifications from EMC that EMC had complied with the FCRA's requirements resulted in an "invasion of privacy" or an "informational injury."  (Id. at 17.)

PE argues that Plaintiff's allegations cannot state a claim.  Specifically,  PE asserts that Plaintiff cannot state a claim based on the PE report's alleged omission of all of the "Consumer Rights Notices/Authorizations" required by the FCRA, Plaintiff's non-receipt of PE's

---

certifications from EMC, PE's alleged failure to provide EMC with requisite user notices, or PE's failure to provide Plaintiff with such notices.  (PMTD at 20.)  To this end, PE asserts that "the FCRA does not require PE to provide Marchioli copies of these user notifications and certifications in his consumer report (or even independently) . . . [because] Section 1681e(d) [] only requires PE to provide this notice to EMC."  (Id.)  In PE's view, this holds true for any alleged failure on its part to provide Plaintiff with a copy of this certification.  (Id. at 21.)  On that basis, PE maintains that "the fact that Marchioli never received a copy of this certification does not support his claim."  (Id.)

With respect to Plaintiff's Section 1681(e) claim, PE argues that Plaintiff cannot plausibly allege that PE failed to maintain reasonable procedures to ensure that the user will not use the information for an improper purpose without alleging that EMC used his consumer report for an improper purpose.  (Id. at 23.)  PE maintains that "this allegation is completely absent from Marchioli's complaint."  (Id.)  PE further argues that Plaintiff fails to adequately allege PE acted negligent or willfully.  (Id. at 24.)[2]

Furthermore, PE argues that Plaintiff's UCL claim fails because he does not allege a sufficient economic injury to establish UCL standing since "Marchioli does not have a prior ownership interest in the funds he seeks to disgorge from PE."  (Id. at 27.)  Lastly, PE argues that the UCL claim is insufficiently pled because Plaintiff fails to state a plausible claim under the FCRA.  (Id.)

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests") (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d

---

[2] As to PE's alleged negligence, PE points out that Section 1681o only permits recovery on a negligence theory if the consumer sustained "actual damages" from a person's failure to comply with the FCRA.  (Id. at 23-24.)  Similarly, PE maintains that the SAC fails to adequately allege PE's "willful" violation of the FCRA under Section 1681n because "Marchioli has not alleged *any factual allegations* that would allow this Court to infer PE's interpretation of its obligations under the FCRA was objectively unreasonable."  (Id. at 25.)

1058, 1062 (9th Cir. 2005); <u>ARC Ecology v. U.S. Dep't of Air Force</u>, 411 F.3d 1092, 1096 (9th Cir. 2005); <u>Moyo v. Gomez</u>, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." <u>Id.</u>

Surviving a motion to dismiss requires a plaintiff to allege "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570; <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 697 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." <u>Starr v. Baca</u>, 652 F.3d 1202, 1216 (9th Cir. 2011).

Although the scope of review on a Rule 12(b)(6) motion to dismiss is limited to the contents of the complaint, the Court may consider certain materials, such as documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice. <u>United States v. Ritchie</u>, 342 F.3d 903, 907-08 (9th Cir. 2003). Under the incorporation by reference doctrine, the Court may consider documents not attached to the pleading if: (1) those documents are referenced extensively in the complaint or form the basis of the plaintiff's claim; and (2) if no party questions their authenticity. <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1076 (9th Cir. 2005).

**B. Rule 12(b)(1)**

A party may seek dismissal of an action for lack of subject matter jurisdiction under Rule 12(b)(1) "either on the face of the pleadings or by presenting evidence." <u>Warren v. Fox Family Worldwide, Inc.</u>, 328 F.3d 1136, 1139 (9th Cir. 2003); <u>see also</u> <u>White v. Lee</u>, 227 F.3d 1217, 1242 (9th Cir. 2000). Where the party asserts a facial challenge, the court limits its inquiry to the allegations set forth in the complaint. <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004).

"In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." <u>Id.</u> The court "need not presume the truthfulness of the plaintiff's allegations," <u>Lee</u>, 227 F.3d at 1242, and may generally "resolve factual disputes concerning the existence of jurisdiction." <u>McCarthy v. United States</u>, 850 F.2d 558, 560 (9th Cir. 1988). "Where jurisdiction is

intertwined with the merits," the Court must "[a]ssume the truth of the allegations in a complaint. . . unless controverted by undisputed facts in the record." <u>Warren</u>, 328 F.3d 1136, 1139 (9th Cir. 2003).

## III. DISCUSSION

### A. Motions to Dismiss Plaintiff's FCRA Claim

Since the issue of standing looms large in determining whether Plaintiff can assert his FCRA claim, the Court addresses standing and the sufficiency of his allegations together. That said, the Court recognizes that different standards of review apply under Rule 12(b)(1) and under Rule 12(b)(6). As such, while the Court may consider extraneous evidence for purposes of standing, it will not consider evidence outside of the four corners of the SAC when determining whether Plaintiff's allegations plausibly state his claims.

#### 1. EMC

##### a. Sections 1681d(a)(1) and 1681d(a)(2)

Under Section 1681d, "[a] person may not procure or cause to be prepared an investigative consumer report on any consumer unless":

> (1) it is clearly and accurately disclosed to the consumer that an investigative consumer report including information as to his character, general reputation, personal characteristics, and mode of living, whichever are applicable, may be made, and such disclosure (A) is made in a writing mailed, or otherwise delivered, to the consumer, not later than three days after the date on which the report was first requested, and (B) includes a statement informing the consumer of his right to request the additional disclosures provided for under subsection (b) of this section and the written summary of the rights of the consumer prepared pursuant to section 1681g(c) of this title; and

> (2) the person certifies or has certified to the consumer reporting agency that—

>> (A) the person has made the disclosures to the consumer required by paragraph (1); and
>> (B) the person will comply with subsection (b).

15 U.S.C. § 1681d. This claim fails because the SAC neither sufficiently alleges that EMC procured or obtained an "investigative consumer report" nor alleges a concrete injury under Article III.

Plaintiff alleges that EMC failed to provide the disclosures required by Section 1681d(a)(1). (SAC ¶ 28.) Specifically, Plaintiff claims that no such disclosure was provided to him within three days of EMC procuring the Pre-Employ report. (<u>Id.</u>) Plaintiff asserts that "EMC's Rebuttal Evidence" does not establish its compliance with Section 1681d(a)(1) because it does

not meet the requirements for electronic notices and authorizations under 12 CFR 1024.3 and 15 U.S.C. § 7001(c). (Id.) Plaintiff further argues that even if the notices and authorizations complied with 12 CFR 1024.3 and 15 U.S.C. § 7001(c), they do not contain the specific disclosure for investigative consumer reports. (Id.) As a result of these alleged violations, Plaintiff claims that EMC illegally invaded his privacy and he suffered "informational injuries." (Id.)

These more stringent disclosure requirements only apply to "investigative consumer reports." 15 U.S.C. § 1681d; see Belshaw v. Credit Bureau of Prescott, 392 F. Supp. 1356, 1361 (D. Ariz. 1975)("Since no investigative consumer report was procured, § 1681d of the Act could not have been violated."). An "investigative consumer report" is defined as a report in which a consumer's "character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information . . ." 15 U.S.C. § 1681a. While Plaintiff alleges the phrase "investigatory consumer report" repeatedly, the Court cannot find this conclusory allegation plausible due to the lack of specific factual allegations. Indeed, Plaintiff's references to "investigative consumer report" are supported only by threadbare recitals of the elements of the cause of action, which the Court need not accept as true. Iqbal, 556 U.S. at 678. Plaintiff cites his opposition to EMC's first motion to strike to argue that "Pre-employ actually conducted interviews with Marchioli's former non-medical employer 'associates' to obtain information on [his] work history, including dates of employment." (Opp'n EMTD at 19.) But Plaintiff does not include this allegation in his operative complaint. The Court finds the allegations in the SAC insufficient to infer EMC procured an investigative consumer report on him. As the Federal Trade Commission has stated:

> If a CRA simply checks facts stated on a job applicant's employment application, such as asking a prior or current employer whether an individual worked at the company during specific years, what the individual's job titles were during the employment period, and the individual's final salary, such fact-checking would not constitute an interview. A CRA that produced for a potential employer a report based on responses to these questions would be providing a consumer report, but not an investigative consumer report.

Staff Opinion Letter from Fed. Trade Comm'n (July 9, 1998).

Plaintiff has failed to adequately allege the procurement of an investigative report—a prerequisite for application of Section 1681d. Accordingly, the Court GRANTS EMC's motion to dismiss Plaintiff's FCRA claim under Section 1681d(a), subsections (1) and (2). The Court addresses EMC's standing argument below.

### b. Section 1681b(b)(2)(A)

EMC seeks to dismiss Plaintiff's Section 1681b(b)(2)(A) claim primarily on standing grounds. Section 1681b(b)(2)(A) of the FCRA provides:

---

**CIVIL MINUTES—GENERAL**     Initials of Deputy Clerk MG

(A) person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—

    (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

    (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A). Plaintiff alleges that EMC failed to provide "clear and conspicuous disclosure in writing" that a consumer report may be obtained for employment purposes as long as written authorization is obtained from the consumer before it procured a consumer report on him as required by Section 1681b(b)(2)(A). (SAC ¶ 31.) Plaintiff alleges that he never received such disclosure with the Pre-employ report. (Id.) Plaintiff asserts that he suffered an informational injury and his privacy was invaded without authorization as a result. (Id.) The Court finds, however, that the SAC fails to establish a plausible causal connection between the asserted statutory violation and his "informational injury," and therefore fails to satisfy Article III's standing requirements.

    To satisfy Article III standing, a plaintiff must show that: (1) she has suffered "an injury in fact" that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged actions of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Bernhardt v. Cnty. of Los Angeles, 279 F.3d 862, 868-69 (9th Cir. 2002)(citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180-81 (2000)). The plaintiff bears the burden of establishing these elements, and standing must be present at the time the action is brought. Lujan, 504 U.S. at 561, 570 n.5. The court need not presume the truthfulness of the plaintiff's allegations. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003).

    In Spokeo v. Robins, 136 S. Ct. 1540 (2016), the Supreme Court held that a mere technical violation of the FCRA without some connection to a concrete harm was insufficient to confer Article III standing. Id. The Court recognized that in some contexts, informational injuries may suffice, like when there is a statutory right to information and deprivation of that right risks a more serious injury. Id. Spokeo confirms that for an intangible harm to constitute a sufficiently "concrete" injury, the alleged intangible harm must have a "a close relationship" to a "harm that has traditionally been regarded as providing a basis for a lawsuit in English or American Courts. Id. at 1549. Hence, "[a] violation of a procedural right divorced from any concrete

harm does not satisfy Article III.  For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate.  In addition, not all inaccuracies cause harm or present any material risk of harm."  Id. at 1550

Plaintiff cites Syed v. M-I LLC, 853 F.3d 492 (9th Cir. 2017), and Thomas v. FTS, LLC, 2016 WL 3653878 (E.D. Va. June 30, 2016), to argue that "informational injuries" and invasions of privacy are sufficiently concrete to establish Article III standing.  (Opp'n EMTD at 15, 16-17.) The Court finds that these cases are factually distinguishable and do not stand for as broad of a proposition as Plaintiff espouses.  Under Syed v. M-I LLC, 853 F.3d 492 (2017) a violation of FCRA's disclosure procedures may inflict an "informational injury" sufficient to confer Article III standing.   That said, for a procedural violation to become a concrete "informational injury," the plaintiff must allege that because of the FCRA violation, he was "not aware" that he was signing an authorization to a credit check.  Id. at 499.   The plaintiff in Syed alleged that the defendant's inclusion of a liability waiver in its FCRA disclosure deprived him of the right to information because had he viewed the disclosure statement on its own, he would not have signed it.  Id.  Plaintiff does not allege with specificity how the disclosure was deficient.  Plaintiff fails to allege that EMC's technical violations of Section 1681b deprived him of the ability to understand his rights or meaningfully authorize the procurement of a credit report on him.  As such, Plaintiff fails to adequately allege a plausible nexus between EMC's alleged violation of its disclosure and authorization requirements and Plaintiff's asserted informational injury.

The Court also finds the SAC insufficient to plausibly infer that Plaintiff suffered an unlawful invasion of privacy under Thomas v. FTS USA, LLC, 193 F. Supp. 3d 623 (E.D. Va. 2016) because he fails to plausibly allege an impermissible use of his credit information.  The plaintiff in Thomas alleged that his former employer procured his consumer reports without first providing the required written disclosure or obtaining the consumers' written consent as required by Section 1681b(b)(2).  Id.  Here, Plaintiff's own Declaration and the Exhibits attached thereto show that there was no unauthorized "disclosure" as in Thomas.

In his declaration, Plaintiff states that as part of the credentialing process, "[he] signed the Confidential: Request for Verification form."  (Marchioli Decl. ¶ 13.)  He also declares that "[he] understood that [he] needed to obtain staff privileges before [he] could begin treating patients at EMC."  (Id. at ¶ 8.)  Plaintiff also declares that he understood that to receive staff privileges "EMC needed information about [his] prior credentialing and prior work in the medical field." (Id. at ¶ 8.)  In addition, Plaintiff states that "[a]t all times during this process [he] not only allowed, but directly facilitated EMC's contact with [his] former medical employers."  (Id. at ¶ 8.)  Plaintiff refers to several Exhibits attached to his declaration in support.

Exhibit 4 to Plaintiff's Declaration contains a letter from Ellie Koch dated November 26, 2014, which states: "This offer of employment is contingent upon successful completion of your fitness for duty exam, *background check*, orientation, and further evaluation and confirmation of your qualifications by your Director."  (Dkt. No. 73-3, 39)(emphasis added).  Plaintiff attaches

EMC's Medical Staff AHP application, which includes the "Statement of Applicant/Consent to Release Information." (Dkt. No. 73-3, 93.)

Further, EMC's human resources department sent an email to Plaintiff stating: "OUR first step in the onboarding process is to begin processing your background check" on March 20, 2015 (Id. at Ex. 9, 255.) On March 20, 2015, a verification specialist from PE emailed Plaintiff stating: "Pre-Employ.com is working on completing your background check for Eisenhower-Diana. We are in need of more information regarding your employment. Please also send the name used while attending. In order to release information to Pre-Employ.com, the verifying organization requires that we provide them with your signed release. We have attached the Signed Release form. Please print the form, fill out the information requested, sign the form, and return via fax. . . " (Id. at 265.) Plaintiff then attaches a signed Confidential Request for Verification form that was sent to him by PE, which states: "I, the undersigned, hereby authorize and request all persons, schools, businesses, corporations, credit bureaus, courts, law enforcement, armed forces, employment commissions, and all government agencies to release the below-requested information without restriction or qualification. I authorize the Photostat of this Request for Verification to be considered as effective and valid as the original." (Id. at 268.)

EMC submitted evidence in support of its motion to strike, which if uncontroverted, may be considered under Rule 12(b)(1). Savage, 343 F.3d at 1039 n. 2. (9th Cir.2003) ("In evaluating the Rule 12(b)(1) motion to dismiss, the district court considered affidavits furnished by both parties. This is proper because Rule 12(b)(1) attacks on jurisdiction can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint.").

Plaintiff objects to statements in the Declaration of David Kowalczyk, including, among others:

- "As part of the online job application, Plaintiff was provided a webpage titled, 'A Summary Of Your Rights Under the Fair Credit Reporting Act' (the 'FCRA Summary')." (Dkt. No. 73-5 at ¶ 5);
- "In order for Plaintiff to complete his job application he had to click the 'Submit' button at the bottom of the FCRA Summary. Attached hereto as Exhibit B to the COE is a true and correct copy of a screenshot of the FCRA Summary." (Id.);
- "After having an opportunity to review the FCRA Summary, the online job portal then sent Plaintiff to a separate webpage titled 'AUTHORIZATION,'" and "[i]n signing the Authorization, Plaintiff provide[d] EMC and Co-Defendant Pre-Employ.com, Inc. [] his authorization and consent for Pre-Employ to compile a consumer report on Plaintiff based on a variety of sources. ." contained in the Declaration of David Kowalczyk. (Id. at ¶ 6.)

Plaintiff objects to these statements on several grounds. First, he argues that the statements and attached document are hearsay and "[l]ack foundation as to whether Plaintiff actually 'submitted' this form." (Id. at ¶¶ 5, 6.) In his opposition to EMC's motion to dismiss, Plaintiff argues that this evidence is "extraneous" and that the "written authorization" was not fully

authenticated because it "was a computer screenshot that does not have an ink signature or even an electronic signature from Marchioli." (Opp'n EMTD at 11.) Lastly, the SAC states that "EMC's Screenshots do not comply with the requirements for electronic notices and authorizations under 12 CFR 1024.3 and 15 U.S.C. §7001(c)."[3] (SAC ¶ 31, subp. (e).) The Court finds these evidentiary objections unavailing. For one thing, if the EMC Screenshots are presented to show that Plaintiff signed the document, it is an opposing party statement, which is not considered hearsay. Fed. R. Evid. 801.

The rest of the content is admissible under the business records exception. Fed. R. Evid. 803(6). Rule 803(6) allows the admission of business records when "two foundational facts are proved: (1) the writing is made or transmitted by a person with knowledge at or near the time of the incident recorded, and (2) the record is kept in the course of regularly conducted business activity." Sea-Land Serv., Inc. v. Lozen Int'l, LLC., 285 F.3d 808, 819 (9th Cir. 2002)(citing United States v. Miller, 771 F.2d 1219, 1237 (9th Cir. 1985)). "[I]t is immaterial that the business record is maintained in a computer rather than in company books." United States v. Catabran, 836 F.2d 453, 457 (9th Cir. 1988) (citation and internal quotation marks omitted). In the Reply Declaration of David Kowalczyk, he represents that he oversees all of the processing of applications for employment at EMC as EMC's Director of Human Resources. (Kowalczyk Reply Decl. ¶ 2.) Kowalczyk further declares that Plaintiff submitted his employment application on September 25, 2014, and in order to submit the application, "Plaintiff had to complete and sign the FCRA Authorization page." (Id. at ¶ 3)(citing Id. at Ex. A.) The "writing"—Plaintiff's signed consent and authorization—was made by Plaintiff and transmitted by Plaintiff at or near September 25, 2014 since he declares "[he] applied online for a position as a Physician's Assistant at [EMC] in September 2014." (Marchioli Decl. ¶ 3.)

---

[3] "The disclosures required by this part may be provided in electronic form, subject to compliance with the consumer consent and other applicable provisions of the Electronic Signatures in Global and National Commerce Act (E–Sign Act)." 12 C.F.R. § 1024.3. The "E-Sign Act" states generally: "Notwithstanding any statute, regulation, or other rule of law (other than this subchapter and subchapter II), with respect to any transaction in or affecting interstate or foreign commerce—(1) a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form; and (2) a contract relating to such transaction may not be denied legal effect, validity, or enforceability solely because an electronic signature or electronic record was used in its formation." 15 U.S.C. § 7001. The E-Sign Act then goes on to list certain consumer disclosures that are required. These requirements, however, do not appear to affect the validity or enforceability of a consent or authorization effected by an electronic signature. Plaintiff also electronically signed beneath an authorization stating: "My typed name below shall have the same force and effect as my written signature." (Kowalczyk Decl. ¶ 6; Id. at Ex. A, B.) Plaintiff fails to otherwise explain in his evidentiary objections why the electronic notices and authorizations cannot reflect his legal consent.

Case 3:14-cv-05200-EMC   Document 266-1   Filed 01/25/18   Page 14 of 19

The Declaration of David Kowalczyk confirms that Plaintiff's employment application is kept in the course of regularly conducted business activity. Kowalczyk's statements do not lack foundation, and the Exhibits attacked therewith have been properly authenticated. They are therefore admissible under either the business records exception under Federal Rule of Evidence 803(6) or as an admission of a party opponent under Federal Rule of Evidence 801(d)(2). Similarly, Exhibits A and B to the Reply Declaration of David Kowalczyk are neither hearsay nor lack foundation. The signed consent and authorizations contained therein are authenticated by David Kowalczyk's Reply Declaration and Plaintiff's electronic signatures. See 15 U.S.C. § 7001(c). Accord In re Air Crash Disaster at Stapleton Int'l Airport, Denver, Colo., on Nov. 15, 1987, 720 F. Supp. 1493, 1499 (D. Colo. 1989)("Personnel files kept by American Airlines regarding co-pilot Lee Bruecher's application for employment at that airline were admitted as business records."); Osborne v. Pinsonneault, No. CIV A 407CV-002-JHM, 2009 WL 1046008, at *6 (W.D. Ky. Apr. 20, 2009) (holding that a "pre-employment offer questionnaire" and an "employment application" were "admissible under either Fed. R. Evid 801(d)(2) as an admission of a party opponent or under the business records exception pursuant to Fed. R. Evid. 803(6)."). The Court may thus consider this evidence when resolving EMC's factual challenge to the Court's subject matter jurisdiction under Rule 12(b)(1).

Kowalczyk declares that after signing the FCRA Authorization page, the online job portal sent Plaintiff to a separate page titled "Disclosure and Authorization Form," which advised Plaintiff that EMC would procure a background check from Pre-Employ and informed Plaintiff of the ways in which he could obtain a copy or summary of Pre-Employ's file regarding his background check. (Id. at ¶ 4.) By signing this form, Plaintiff "gave his explicit written authorization for EMC to procure and for Pre-Employ to prepare his background check for use in Plaintiff's application for employment with EMC." (Id.)(citing Id. at Ex. B.) Kowalczyk declares that part of EMC's online application requires Plaintiff to read a webpage titled "A Summary of Your Rights Under the Fair Credit Reporting Act" and prior to submitting his application, he had to sign an authorization attesting that he had read, understood, and agreed to "each of the disclosures, authorizations, directions and indemnifications." (Kowalczyk Decl. ¶¶ 5, 6.)

Plaintiff therefore agreed to release his private information, which renders implausible his argument that EMC's alleged technical violation deprived him of his privacy interest in information he authorized be disclosed as part of the credentialing process. Because he provided consent, Plaintiff cannot rely on Thomas. Further, the cases he cites to claim his alleged injuries suffice refute the notion that "there is no such thing as a harmless invasion of privacy." (Opp'n EMTD at 15.) Indeed, when one consents to, authorizes, or "directly facilitate[es]" the release of one's private information, there is no harm done. Spokeo, 136 S. Ct. at 1550 (stating that a violation of one of the FCRA's procedural requirements could have resulted in no harm). In sum, the Court finds that Plaintiff's asserted concrete injuries—invasion of privacy and informational injuries—are controverted by facts in the record. Warren, 328 F.3d 1136, 1139 (9th Cir. 2003).

Case 3:14-cv-05200-EMC Document 266-1 Filed 01/25/18 Page 15 of 19

### c. Section 1681b(f)(2)

Plaintiff alleges that EMC failed to certify the purpose for which the consumer report on him was sought and failed to certify that it would only be used for a permissible purpose in violation of Section 1681b(f).[4] (SAC ¶ 32.) Plaintiff fails to allege any facts on which to infer that the consumer report was procured for an impermissible purpose. Procuring consumer reports for purposes of considering a job applicant for employment is an explicitly enumerated permissible purpose under Section 1681b. 15 U.S.C. § 1681b. There is nothing in the allegations that suggest EMC procured the report for any other purpose. As to the certification requirement, for the reasons stated above, Plaintiff fails to plausibly allege how EMC's failure to certify that the consumer report would only be used for this purpose caused Plaintiff informational or privacy injury. Plaintiff fails to adequately allege any plausible connection between EMC's alleged failure to certify the report and the "informational harm" he claims to have suffered. Without more specific allegations, the Court cannot infer a "concrete injury" reasonably ensuing from EMC's alleged failure to certify to providers of credit information or PE that the information would be used for a proper purpose. On that basis, the Court GRANTS EMC's motion to dismiss, and DISMISSES Plaintiff's claim under 15 U.S.C. § 1681b(f)(2).

### 2. PE

#### a. Section 1681d(d)(1)

Plaintiff alleges that PE violated 15 U.S.C. § 1681d(d)(1), which requires CRAs to obtain certification from users of credit information that the user has complied with Section 1681d(a)(1) and 1681d(a)(2). (SAC ¶ 34.) Again, this provision only applies when a user of credit information procures or obtains an "investigative consumer report." The Court has already concluded that the SAC fails to adequately allege that PE's report qualifies as such. Accordingly, the Court GRANTS PE's motion to dismiss Plaintiff's claim under Section 1681d.

#### b. Section 1681b(b)(1)(A)(i)

Plaintiff alleges that PE violated 15 U.S.C. § 1681b(b)(1)(A)(i) by failing to obtain a certification from EMC that EMC had provided disclosures to Plaintiff as specified in 1681b(b)(2)(A) prior to furnishing EMC with any consumer report. (Id. at ¶ 35.)

---

[4] "A person shall not use or obtain a consumer report for any purpose unless--

> (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
> (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification."

15 U.S.C. § 1681b.

---

Case 3:14-cv-05200-EMC Document 266-1 Filed 01/25/18 Page 16 of 19

Section 1681b(b)(1) requires certification from a user of a consumer report, in this case EMC, to certify to the CRA, here PE, that the user has made the required disclosures to the consumer that a consumer report may be obtained for employment purposes and that the user has obtained prior written authorization from the consumer to procure the report. 15 U.S.C. § 1681b(b). As mentioned above, Section 1681b(b)(2) requires the user to give the consumer a written disclosure and obtain written authorization from the consumer prior to procuring a consumer report. Id. Section 1681b(b)(3) requires that the user provides the consumer with a copy of the report and a description in writing of the rights of the consumer under the FCRA before taking any adverse action based in whole or in part on the report. Id.

As to the failure to certify compliance with Section 1681b(b)(2), the Court finds that Plaintiff fails to plausibly allege how he suffered either an "informational injury" or an "invasion of privacy" as a result of PE's failure to obtain EMC's certification that the report would only be used for the purpose of reviewing Plaintiff's candidacy for employment. The violation of Section 1681b(b)(3) gets closer to plausibly alleging an "informational injury," except that Plaintiff admits in his declaration that he received PE's report. (Marchioli Decl. ¶ 14.) Thus, there is no basis on which to reasonably infer that Plaintiff suffered an "informational injury" as a result of PE's alleged conduct. Further, the record shows that Plaintiff was informed of this right when he submitted his employment application. (See Kowalczyk Reply Decl. at Exs. A, B.) EMC's decision to terminate Plaintiff's employment is a concrete injury. However, Plaintiff does not allege a causal relationship between PE's failure to certify that EMC complied with Section 1681b's requirements and EMC's decision to decline Plaintiff his staff privileges.

If Plaintiff wishes to allege that the adverse employment action was due to PE's violation of the FCRA, he must allege that EMC terminated his employment based on inaccuracies contained in PE's report, and that PE failed to maintain reasonable procedures to ensure the accuracy of its reports. These FCRA provisions, however, do not apply to this theory of liability. Put simply, Plaintiff's pleadings do not provide a coherent theory of his entitlement to relief.

### c. Sections 1681e(a) and 1681e(d)

Plaintiff alleges that PE violated 15 U.S.C. § 1681e(a) by failing to maintain reasonable procedures that "require prospective users identify themselves, certify the purposes for which the information is sought, and certify that the information will not be used for any unauthorized purpose." (SAC ¶ 36.) Plaintiff further alleges that PE failed to obtain the certifications from EMC as required by Section 1681e(a). (Id.) Plaintiff also alleges that PE violated 15 U.S.C. §1681e(d) by failing to ensure that it provided EMC with a notice of EMC's responsibilities under the FCRA. (Id. at ¶ 37.)

Case 3:14-cv-05200-EMC Document 266-1 Filed 01/25/18 Page 17 of 19

Section 1681e(a) requires every CRA to "maintain reasonable procedures designed to avoid violations of section 1681c[5] of this title and to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title. These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. . ." 15 U.S.C. § 1681e. Section 1681e(d) requires CRAs to provide notice to users of credit information, like EMC, of their responsibilities under the FCRA. 15 U.S.C. § 1681e.

The Court concludes that Plaintiff lacks standing to pursue relief under Section 1681e, either under subsection (a) or subsection (d). Plaintiff's own Declaration and the Exhibits attached thereto establish that PE obtained Plaintiff's consent to conduct a background report. (See Marchioli Decl. at Ex. 4);(Id. at ¶ 13)("As part of that process, I signed the Confidential: Request for Verification form that Pre-Employ[] asked [him] to sign.") Further, there is nothing in the SAC from which the Court may infer that the report was procured for an impermissible purpose, which if adequately alleged, may operate to rescind the consent previously given. (See Kowalczyk Reply Decl. at Exs. A, B.) On those bases, Plaintiff cannot plausibly maintain that he suffered an invasion of his privacy. As to his asserted informational injury, there is nothing in this section that imposes a duty on CRAs to provide consumers with certifications or notices provided to users. On these allegations, the Court cannot discern what information was in PE's possession that Plaintiff did not receive, yet claims he was entitled to. Plaintiff fails to explain why PE's alleged failure to provide EMC with notice of its responsibilities under the FCRA caused the deprivation of his privacy or any statutory right to information. Plaintiff's asserted injuries, therefore, cannot be fairly traced to PE's alleged violation of its certification or notice requirements. Allen v. Wright, 468 U.S. 737, 738 (1984). Thus, this claim fails. Accordingly, the Court GRANTS PE's motion to dismiss Plaintiff's FCRA claim brought under Section 1681e subsections (e) and (d).

## B. EMC's Motion to Strike and PE's Motion to Dismiss Plaintiff's UCL Claim

### 1. Section 425.16

California Civil Procedure Code section 425.16 ("Section 425.16") permits a defendant to bring an anti-SLAPP motion to dismiss certain state law claims. Cal. Civ. Proc. Code § 425.16. Section 425.16(g) "provides that the filing of an anti-SLAPP motion automatically stays all further discovery until the court rules on the motion." Id. at 846. It mandates that courts consider first "whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity," and "[i]f the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." Equilon Enterprises v. Consumer Cause, Inc., 29 Cal. 4th 53, 67 (2002). With respect to

---

[5] Section 1681c lists the requirements relating to information contained in consumer reports. 15 U.S.C. § 1681c. Subsection (a) lists the information that must be excluded from consumer reports, none of which are applicable here. The following subsections refer to a consumer's creditworthiness, which is similarly inapt for purposes of these motions.

Case 3:14-cv-05200-EMC Document 266-1 Filed 01/25/18 Page 18 of 19

the second inquiry under Section 425.16, the Ninth Circuit has held that in order to establish the probability of prevailing, "the plaintiff must show that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." Kearney v. Foley & Lardner, LLP, 590 F.3d 638, 648 (9th Cir. 2009). The Court previously held that EMC's hospital peer review process constitutes an "official proceeding" under Section 425.16 so it need not repeat that analysis here. (Order at 6.) The Court discusses Plaintiff's probability of prevailing on his UCL claim below.

### 2. UCL

Plaintiff alleges that "Defendants committed unlawful, unfair, deceptive, or fraudulent business practices in the form of FCRA violations." (SAC ¶ 44.) The California Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "Violation of almost any federal, state or local law may serve as the basis for a UCL claim." Clerkin v. MyLife.com, Inc., No. C 11- 00527 CW, 2011 WL 3607496, at *6 (N.D. Cal. Aug. 16, 2011). Since Plaintiff's UCL claim is predicated on the insufficiently pled FCRA violations, this claim must also fail. Plaintiff faces a higher evidentiary burden under Section 425.16 than he does under Rule 12(b)(6). Flatley v. Mauro, 39 Cal. 4th 299, 335 (2006) (stating that if the evidence attached in support of EMC's Motion defeats an element of Plaintiff's claim then the Anti-SLAPP Motion will be granted). Thus, the Court concludes that Plaintiff fails to demonstrate a probability of prevailing on his state law claim to defeat EMC's anti-SLAPP motion. Accordingly, as to Plaintiff's second cause of action under the UCL, the Court GRANTS EMC's motion to strike and PE's motions to dismiss, and DENIES EMC's motion to dismiss this claim as MOOT.

## C. Leave to Amend

Defendants seek dismissal of Plaintiff's SAC with prejudice. (See, e.g., PMTD at 9.) The Court declines to dismiss with prejudice and will afford Plaintiff one more opportunity to amend his SAC. The Court's decision to dismiss the SAC with leave to amend is motivated by several factors. First, while curiously omitted from the SAC, Plaintiff's Declaration alleges that EMC decided to terminate his employment "four days after Pre-employ's erroneous statements about [his] supposed non-authorization to contact [his] former employers." (Marchioli Decl. ¶ 15.) Plaintiff declares that he believes the adverse decision was based on the inaccuracies in PE's credit report, yet he "never received any notice" of the adverse decision in time to correct the alleged inaccuracies. (Id. at ¶¶ 17, 18.)

Section 1681b(b)(3)'s operative language provides that "in using a consumer report for employment purposes," a person intending to take adverse action must issue notice. 15 U.S.C. § 1681b(b)(3)(A). These allegations could have been a violation of the FCRA, which requires that an employer wait "a sufficient amount of time before ... tak[ing] adverse action so that the consumer may rectify any inaccuracies in the report." Williams v. Telespectrum, Inc., No. 3:05CV853, 2006 WL 7067107, at *5 (E.D. Va. Nov. 7, 2006). These allegations may also confer

---

Article III standing by connecting the alleged technical violation of the FCRA with a sufficiently concrete informational injury. The Court could reasonably infer that had EMC provided Plaintiff with proper notice, he would have had the opportunity to rectify the alleged inaccuracies in PE's report, thereby potentially preserving his chances of receiving staff privileges at EMC.

As to PE, Plaintiff alleges that PE failed to maintain reasonable procedures to ensure compliance with the FCRA, which could reasonably encompass proper safeguards against inaccuracies that are likely to affect a consumer adversely. Indeed, FCRA section 1681e(b) requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Ramirez v. Trans Union, LLC, 301 F.R.D. 408, 418 (N.D. Cal. 2014). Plaintiff allegedly expended substantial time and energy in reliance on his offer of employment that appears to have been reasonable in light of EMC's alleged repeated assurances that his job position was secure. But for PE's alleged inaccuracy in the report it provided to EMC, it is plausible that the credentialing process would not have been cut short. Inaccurate information on a credit report may give rise to a cognizable claim against a CRA if the information is "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009).

The Court, therefore, concludes that amendment may not be entirely futile, and will allow Plaintiff one more opportunity to amend. Contra Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990). The Court cautions Plaintiff that his claims will be dismissed with prejudice if his amended complaint continues to lack sufficient factual allegations. Plaintiff's amended complaint will certainly be dismissed with prejudice if it mimics his prior pleading practice of merely copying the statutory language of the FCRA without connecting each statutory privilege to a coherent theory of liability or concrete injury.

## IV. CONCLUSION

Based on the foregoing, the Court GRANTS EMC's and PE's motions to dismiss, and DISMISSES Plaintiff's FCRA claim, GRANTS EMC's motion to strike and PE's motion to dismiss Plaintiff's UCL claim, and DENIES EMC's motion to dismiss Plaintiff's UCL claim as MOOT. Plaintiff shall file an amended complaint, if any, no later than July 14, 2017.

**IT IS SO ORDERED.**