IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 0:16-cv-62723-KMM

GERARD STEPHENS,

    Plaintiff,

v.

WALMART STORES, INC.,

    Defendant.
_____/

## ORDER GRANTING MOTION TO DISMISS
## FOR LACK OF SUBJECT MATTER JURISDICTION

THIS CAUSE is before the Court on Defendant Walmart Stores, Inc.'s Motion to Dismiss the Complaint for Lack of Subject Matter Jurisdiction (ECF No. 39), and Plaintiff Gerard Stephens's Motion for Class Certification (ECF No. 37). The Parties have filed their respective responses and replies. (ECF Nos. 46, 47, 49, 50, 54). These motions are now ripe for review.

UPON CONSIDERATION of the Motions, the Responses, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court concludes that it is without subject matter jurisdiction because Plaintiff lacks standing. Consequently, Defendant's Motion to Dismiss is GRANTED and Plaintiff's Motion for Class Certification is DENIED.

**I.    BACKGROUND**

On August 5, 2016, Plaintiff applied to work at Defendant's Miami Gardens store. (ECF Nos. 38 at ¶ 1; 45 at ¶ 3). Defendant interviewed Plaintiff and extended a conditional offer of employment, continent on a successful background check. (ECF No. 45 at ¶ 3). Around August 29, 2016, Defendant sent Plaintiff's job application to Sterling Infosystems, a credit reporting

agency that prepares consumer reports for Defendant. (ECF Nos. 38 at ¶ 11; 45 at ¶¶ 3, 31). Generally, once Sterling prepares an applicant's consumer report, which includes a criminal history, Sterling uses Defendant's hiring criteria to score an applicant as either "competitive" or "pending/not competitive." (ECF Nos. 38 at ¶ 12; 45 at ¶ 31). If an applicant is scored "pending/not competitive," Sterling automatically mails the applicant a pre-adverse-action letter, which informs the applicant of an unfavorable consumer report and instructs the applicant to contact Sterling if the report is inaccurate. (ECF No. 45 at ¶ 33). If the applicant does not dispute the accuracy of the consumer report within a certain number of days, Sterling automatically mails the applicant an adverse-action letter that informs the applicant of his or her ineligibility for employment. (ECF Nos. 45 at ¶ 34; 37-3).

Based on the contents of Plaintiff's consumer report—which revealed two felony convictions from 1996 and 1999—Sterling scored Plaintiff's application as "pending/not competitive." (ECF Nos. 38 at ¶ 12; 45 at ¶ 17). Sterling then sent Plaintiff a letter dated September 1, 2016 (the "First Letter"). (ECF Nos. 38 at ¶¶ 13–14; 45 at ¶ 13). This letter advised Plaintiff that the consumer report would likely have an adverse impact on Plaintiff's ability to obtain employment with Defendant, included a copy of the consumer report, instructed Plaintiff to contact Sterling if the report was inaccurate, and provided Plaintiff a summary of consumer rights. (ECF Nos. 38 at ¶¶ 13–16; 45 at ¶¶ 13–16; 37-2). Plaintiff never contacted Sterling because the consumer report was accurate. (ECF No. 38-1 at 91:18–24; 176:11–15). Instead, Plaintiff—who believed that a consumer report should reveal only criminal convictions from the past seven years—called Defendant's Miami Gardens store to ask why the consumer report would render him ineligible for employment when his convictions were so far in the past. (ECF Nos. 45 at ¶ 19; 38-1 at 90:17–23). A couple of weeks after receiving the First Letter,

2

Plaintiff received an adverse-action letter from Defendant dated September 9, 2016 (the "Second Letter"). (ECF Nos. 45 at ¶ 25; 37-3). Plaintiff then commenced this lawsuit.

Plaintiff argues that Defendant violated the Fair Credit Reporting Act ("FCRA") by failing to provide Plaintiff (1) pre-adverse-action notice of his unfavorable consumer report, and (2) a meaningful opportunity to challenge the accuracy of that report. (ECF Nos. 1, 46). Defendant moves to dismiss for lack of subject matter jurisdiction, arguing that Plaintiff cannot establish standing because he has not established a concrete injury.[1] (ECF No. 39 at 13–15).

## II. LEGAL STANDARD

The Supreme Court has made clear that a federal court may not assume "hypothetical jurisdiction" by deciding a case on the merits before determining that the court has jurisdiction. *Steel Co v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). Consequently, a court must consider jurisdiction on its own initiative, and a party can move to dismiss for lack of subject matter jurisdiction at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). A court may lack subject matter jurisdiction for various reasons, including when a plaintiff fails to bear the burden of establishing the "irreducible constitutional minimum" of standing. *See Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (clarifying the contours of constitutional standing); *Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1271 (11th Cir. 2015) (the constitutional standing doctrine "implicates [a court's] subject matter jurisdiction, and accordingly must be addressed as a threshold matter . . .").

---

[1] Defendant also moves, in the alternative, for summary judgment. (ECF No. 39). In light of the Court's conclusion that Plaintiff lacks standing, Defendant's motion for summary judgment is moot as the Court is without jurisdiction to reach the merits of Plaintiff's claim. *See Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1279 (11th Cir. 2017).

3

Article III of the Constitution of the United States "restricts the jurisdiction of federal courts to litigants who have standing to sue." *Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998, 1001 (11th Cir. 2016). To establish constitutional standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547. "Each element of standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of litigation." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005) (internal alterations and citation omitted). So when standing is challenged on a facial basis—generally at an early stage of litigation—a court must take the allegations in the complaint as true to determine whether the plaintiff has sufficiently alleged a basis for subject matter jurisdiction. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335-36 (11th Cir. 2013). But when standing is challenged on a factual basis at a later stage of litigation, "the plaintiff can no longer rest on mere allegations." *Bochese*, 405 F.3d at 975-76. Where a defendant, like the Defendant here, mounts a factual attack to standing after the close of discovery, a court can "consider extrinsic evidence such as deposition testimony and affidavits," and is not "constrained to view [the facts] in the light most favorable to the plaintiff." *Houston*, 733 F.3d at 1335-36 (internal quotation marks and citation omitted).

## III. DISCUSSION

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendant argues that Plaintiff lacks standing, contending that Plaintiff failed to establish an injury in fact. (ECF No. 39 at 13–15). To establish an injury in fact—the first element of constitutional standing—"a plaintiff must show that he or she suffered 'an invasion of a legally

4

protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). In *Spokeo*, the Supreme Court emphasized that intangible injuries, including statutory violations, must be concrete. *See id*. at 1547-50 (remanding for further consideration of whether website operator's alleged violations of the FCRA caused concrete injury required for constitutional standing). To be concrete, an injury must "actually exist"; however, an intangible injury, like the deprivation of free speech or the deprivation of information, can be concrete. *Id*. at 1548-49; *see e.g. Havens v. Realty Corp. v. Coleman*, 455 U.S. 363, 373–74 (1982) (deprivation of information in violation of the Fair Housing Act was a sufficiently concrete injury); *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1340 (11th Cir. 2017) (wrongful disclosure of private viewing history in violation of the Video Privacy Protection Act was a sufficiently concrete injury). To determine whether an intangible injury is concrete, a court must consider "both history and the judgment of Congress." *Spokeo*, 136 S. Ct. at 1549. But Congress cannot obscure the requirements of constitutional standing; therefore, a plaintiff does not automatically satisfy the injury-in-fact requirement by alleging a statutory violation. *Id*. To satisfy the injury-in-fact requirement, a plaintiff must establish more than a "bare procedural violation, divorced from any concrete harm." *Id*. But a plaintiff "need not allege any *additional* harm beyond the one Congress has identified." *Id*. Consequently, to assess whether a plaintiff has satisfied the injury-in-fact requirement, a court must determine whether the statutory violation alleged "entail[s] a degree of risk sufficient to meet the concreteness requirement." *Id*. at 1550.

Here, Plaintiff has failed to allege a sufficient degree of risk to satisfy the concreteness requirement. Plaintiff complains that Defendant violated § 1681b(b)(3)(A) of the FCRA. (ECF

5

Nos. 1; 46). Congress enacted the FCRA to ensure fair and accurate consumer reporting. *Spokeo*, S. Ct. 136 at 1545. To this end, the FCRA regulates the use of consumer reports in various circumstances, including employment. *See* 15 U.S.C. §§ 1681a(d)(1)(A)–(C). Section 1681b(b)(3)(A) mandates that, before taking adverse employment action based on the contents of a consumer report, a company must provide the consumer a copy of the report and a description of consumer rights, which include a right to dispute the accuracy of a consumer report. 15 U.S.C. § 1681b(b)(3)(A). Thus § 1681b(b)(3)(A) requires that a company provide the consumer both notice of an unfavorable consumer report and an opportunity to dispute the accuracy of that report. *See Williams v. First Advantage LNS Screening Sols. Inc.*, 155 F. Supp. 3d 1233, 1246 n.13 (N.D. Fla. 2015).

Plaintiff identifies two procedural violations of the FCRA. First, that Defendant failed to provide Plaintiff notice because the adverse action—which Plaintiff identifies as Sterling conferring the score of "pending/not competitive"—preceded the First Letter that notified Plaintiff of the unfavorable consumer report. (ECF Nos. 1; 46). Second, that Defendant failed to provide Plaintiff a meaningful opportunity to challenge the consumer report because the score of "pending/not competitive" constituted a final adverse decision. *Id*. Essentially, Plaintiff argues that Defendant owed Plaintiff notice and an opportunity to challenge *before* Sterling scored Plaintiff's application "pending/not competitive." (ECF Nos. 1; 46).

Although Plaintiff's argument is tenuous and has been rejected by other courts,[2] the Court will assume that the score of "pending/not competitive" was the relevant adverse action. To determine whether the alleged statutory violations led to a sufficiently concrete injury in fact,

---

[2] For example, courts have rejected Plaintiff's argument that a score of ineligible constitutes an adverse action under the FCRA. *See Obabueki v. Int'l Bus. Machs. Corp.,* 145 F. Supp. 2d 371, 392 (S.D.N.Y. 2001); *Williams*, 155 F. Supp. 3d 1233, 1246 (N.D. Fla. 2015).

6

the Court turns to the Eleventh Circuit's recent decision in *Nicklaw*. 839 F.3d at 1002–03. In *Nicklaw*, the Eleventh Circuit concluded that although defendant CitiMortgage had failed to fulfill its statutory obligation to timely record plaintiff Nicklaw's certificate of discharge, Nicklaw's injuries were not sufficiently concrete because he neither suffered harm nor identified a material risk of harm that the district court could remedy. *Id.* In other words, the statutory violation was "a bare procedural violation, divorced from any concrete harm." *Spokeo*, 136 S. Ct. at 1549. Likewise, Plaintiff identifies only bare procedural violations of the FCRA—delayed notice and opportunity to challenge—that carry no material risk of harm because Plaintiff ultimately received both notice of the unfavorable consumer report and an opportunity to challenge that report. *See id.* Consequently, the alleged procedural violations pose no threat to the FCRA's purpose—to ensure fair and accurate consumer reporting. *See id.*

Indeed, Plaintiff agrees that the First Letter provided notice of the unfavorable consumer report; that he declined to contact Sterling because the consumer report was accurate; that he instead contacted Defendant to challenge the hiring criteria; and that a couple of weeks after the First Letter, he received the Second Letter that communicated his ineligibility for employment. (ECF Nos. 37-2; 37-3; 38 ¶ 13–16; 38-1 at 90:17–23, 91: 18–24, 176:11–15; 45 ¶¶ 13, 19, 25). Plaintiff cannot now manufacture a meaningful violation of the FCRA by claiming that he was entitled to notice before Sterling scored Plaintiff "pending/not competitive." *See Nicklaw*, 839 F.3d at 1002–03. Regardless of whether the FCRA entitled Plaintiff to notice before the First Letter, any risk of harm stemming from the alleged procedural deprivation was eliminated when Plaintiff received the First Letter. *See id.* Similarly, any risk of harm concerning Plaintiff's opportunity to challenge was eliminated when, before receiving the Second Letter, Plaintiff declined to dispute the consumer report and instead contacted Defendant to challenge its hiring

7

criteria.³  See *id*.  Thus even assuming that Defendant did not comply with the FCRA's requirements, Plaintiff has failed to establish any concrete harm stemming from the bare procedural deprivation of notice and opportunity, which were quickly rendered harmless. *See id*.

### B. Motion for Class Certification

"For a district court to certify a class action, the named plaintiffs must have standing." *Vega v. T-Mobile USA, INC*., 564 F.3d 1256, 1265 (11th Cir. 2009).  Because Stephens is the only named plaintiff, the Court's conclusion that Stephens lacks standing is fatal to his Motion for Class Certification.

### IV. CONCLUSION

For the foregoing reasons, it is ORDERED AND ADJUDGED that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is GRANTED.  It is further ORDERED that Plaintiff's Motion for Class Certification is DENIED.  Plaintiff's Complaint is hereby DISMISSED WITHOUT PREJUDICE.

DONE AND ORDERED in Chambers at Miami, Florida, this 23rd day of October, 2017.

_____
K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

c:      All counsel of record

---

³ Plaintiff testified that he commenced this lawsuit because he was "fed up" and "tired of being told no for something that happened 20 years ago" when "new laws" prohibit background checks that go back more than seven years. (ECF No. 38-1 at 50: 1–15). To be sure, § 1681b(b)(3)(A) of the FCRA does not regulate the criteria an employer uses to determine an applicant's eligibility for employment. *Williams*, 155 F. Supp. 3d at 1247 n. 15 ("The FCRA requires an employer to pause and allow a reasonable opportunity for a consumer to dispute the contents of a consumer report, but does not mandate that the employer act decently with respect to the results of any such dispute."). Consequently, Plaintiff's suggestion that Defendant somehow erred in rejecting Plaintiff's application is misplaced.