# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

JOHN RILEY,

    Plaintiff,

v.                                            Case No: 6:17-cv-00254-PGB-DCI

UNITED PARCEL SERVICE OF
AMERICA, INC.

    Defendant.

## ORDER

This cause comes before the Court on Defendant United Parcel Service of America, Inc.'s Motion to Dismiss First Amended Complaint (Doc. 30), filed April 14, 2017; Plaintiff's Opposition to Defendant's Motion (Doc. 38), filed May 3, 2017; and Defendant's Reply (Doc. 42), filed May 11, 2017. Upon consideration, Defendant's motion is due to be granted.

## I. BACKGROUND

In November 2016, Plaintiff, John Riley ("Riley"), applied for a position as a customer service representative with the Defendant, United Parcel Service of America, Inc. ("UPS"). (Doc. 24, p. 8). Riley was subsequently interviewed and offered a customer service position with UPS, contingent upon a successful background check. (*Id.*). On November 9, 2016, First Advantage Background Services Corp. ("First Advantage") sent Riley a notice, pursuant to 15 U.S.C. § 1681k of the Federal Credit Reporting Act ("FCRA"), advising him it was furnishing public record information concerning him to

1

UPS.[1] (Doc. 24 ¶ 32; Doc. 30-1, p. 4). Thereafter, on or about November 14, 2016, UPS informed Riley that it was rescinding its conditional job offer based on the results of his background check. (Doc. 24, ¶ 33).

Riley alleges that UPS failed to send him the pre-adverse notice required under section 1681b(b)(3)(A) of the FCRA[2] before revoking its offer to hire him. Specifically, Riley alleges that UPS failed to provide him with a copy his consumer report and a written description of his rights under the FCRA. (*Id.* ¶¶ 44, 45). Consequently, Riley has initiated suit against UPS, seeking damages for its alleged violation of section 1681b(b)(3)(A) of the FCRA. UPS now moves to dismiss Riley's claim for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1). (Doc. 30).

## II.    STANDARDS OF REVIEW

The standing doctrine serves to ensure the authority of the federal courts extends only to "cases" and "controversies," as mandated by Article III of the United States Constitution. U.S. Const. art. III, § 2. "Standing is jurisdictional," therefore, it functions as a threshold question any party invoking federal jurisdiction must satisfy before the court may hear the case. *Warth v. Seldin*, 422 U.S. 490, 499 (1975). To demonstrate Article III standing, the plaintiff must make three showings:

---

[1] Section 1681k requires that a credit reporting agency furnishing information that is a matter of public record and which is likely to have an adverse impact on the applicant, must either (1) notify the applicant of the fact that public record information is being reported along with the name and address of the person who requested the report, or (2) maintain "strict procedures" designed to ensure that any such reported information is "complete and up to date." 15 U.S.C. § 1681k.

[2] Section 1681b(b)(3)(A) requires that, "in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on that report, the person intending to take such adverse action shall provide to the consumer to whom the report relates (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this subchapter." 15 U.S.C. § 1681b(b)(3)(A)

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 980 (11th Cir. 2005) (citations omitted).

"[A] dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)." *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). Jurisdiction may be attacked facially or factually. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). Whereas "[f]actual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings." *Dunbar*, 919 F.2d at 1529. "In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits." *Id.*

"Where the defendant's attack on subject matter jurisdiction . . . implicate[s] an element of the plaintiff's underlying claim, the [c]ourt is not permitted to weigh facts for itself and must resolve disputed factual issues in favor of the plaintiff, as non-movant." *Simmons v. United States*, No. 3:00-cv-1316-J99MMH, 2005 WL 1243760, n.13 (M.D. Fla. May 25, 2005) (citation omitted). "The proper course of action for the district court is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Dunbar*, 919 F.2d at 1529.

3

Here, UPS mounts facial and factual challenges to Riley's standing. For its facial attack, UPS argues that Riley did not suffer a concrete injury because he has not alleged that anything in his consumer report was inaccurate. (Doc. 30, p. 14). For its factual attack, UPS contends that Riley did not suffer a concrete injury because First Advantage provided him with all the information he was required to receive from UPS, prior to the revocation of Riley's conditional job offer. (*Id.* at 21).

Riley contends that UPS's assertions implicate the merits of his case because UPS claims it complied with section 1681b(b)(3)(A). (Doc. 38, p. 7). However, Riley misapprehends UPS's position. At this stage in the case, UPS has made it very clear that it only seeks to challenge Riley's Article III standing, not the merits of his case. (*See* Doc. 30, pp. 2–4). Furthermore, upon review of UPS's motion, the Court finds that the facts and circumstances it must consider in resolving the instant motion differ from those it must consider when evaluating the underlying elements of Riley's claim—namely, whether UPS failed to provide him with a copy his consumer report and a written description of his rights in violation of section 1681b(b)(3)(A). As such, the Court may examine UPS's challenge to Riley's Article III standing.

### III. DISCUSSION

As noted above, Defendant contends that the facts alleged in the Amended Complaint do not make out a concrete injury sufficient to confer Riley standing to sue. (Doc. 30, p. 14). In light of the issue presented, the Court begins its analysis by setting forth what is required to establish an injury-in-fact, specifically, a concrete injury for purposes of Article III standing. The Court will then determine whether Riley has met those requirements.

## A. Concrete Injury for Purposes of Article III Standing

In *Spokeo Inc. v. Robin*, 136 S. Ct. 1540 (2016), the Supreme Court reiterated that to adequately allege an injury-in-fact, a plaintiff must establish that he or she suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. 555, 560 (1992)). A "concrete injury" is one that "actually exist[s,]" meaning that it is "real, and not abstract," but not necessarily "tangible.'" *Id.* at 1548–49. "[I]ntangible injuries can . . . be concrete." *Id.* at 1549.

"In determining whether an intangible harm constitutes an injury in fact, both history and the judgment of Congress play important roles." *Id.* "[I]t is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* The judgment of Congress is important and instructive, as "Congress may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (quoting *Lujan*, 504 U.S. at 578).

However, the mere fact that "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right" does not automatically result in standing. *Id.* The plaintiff must still show a concrete injury when alleging a statutory violation. *Id.* A plaintiff cannot, for example, "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.*

There are some circumstances where the injury-in-fact requirement can be satisfied by a bare procedural violation of a statutory right, as long as that violation is still

5

tied to real and concrete harm. *See id.* at 1549–50. In such cases, "a plaintiff . . . need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549. To illustrate, *Spokeo* cites two cases—*FEC v. Akins*, 524 U.S. 11 (1998), and *Public Citizen v. United States Department of Justice*, 491 U.S. 440 (1989)—where the Supreme Court recognized that an "informational injury" can be sufficiently concrete to support Article III standing.

At issue in *Akins* was whether a group of voters suffered injuries-in-fact when they were unable to obtain information about the defendant that was statutorily subject to public disclosure under the Federal Election Campaign Act ("FECA"). 524 U.S. at 13–14. The Supreme Court noted the purpose of FECA is "to remedy any actual or perceived corruption of the political process" by, among other means, "impos[ing] extensive recordkeeping and disclosure requirements upon groups that fall within the Act's definition of a 'political committee.'" *Id.* at 14. Given the purpose of FECA, the Court held that the plaintiff voters' injury was sufficiently concrete because they suffered the kind of harm FECA seeks to protect against, i.e., the inability to procure particular information about campaign-related activities." *Id.* at 21–22.

In *Public Citizen*, two plaintiff organizations challenged the United States Department of Justice's use of confidential reports prepared by the American Bar Association's Standing Committee on Federal Judiciary ("ABA Committee") to evaluate nominees for judgeships. 491 U.S. at 443. The plaintiffs asserted that the ABA Committee was an "advisory committee" under the Federal Advisory Committee Act ("FACA") and therefore was required to make its minutes, records, and reports public. *Id.* at 447–48. The Court found that the plaintiffs had standing under Article III because they sought

6

"access to the ABA Committee's meetings and records in order to monitor its workings and participate more effectively in the judicial selection process" and had been denied that information. *Id.* at 449. The Court held that "[a]s when an agency denies requests for information under the Freedom of Information Act, refusal to permit appellants to scrutinize the ABA Committee's activities to the extent FACA allows constitutes a sufficiently distinct injury to provide standing to sue." *Id.*

Post-*Spokeo*, the Eleventh Circuit considered the reach of an "informational injury" in *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 991 (11th Cir. 2016). In that case, the defendant allegedly sent the plaintiff, Mahala Church, a letter advising her that she owed debt, but failed to provide proper disclosures under the Fair Debt Collection Practices Act ("FDCPA"). *Id.* at 991. Church did not claim that she suffered actual damages as a result of the defendant's failure to include the required disclosures. *Id.* She alleged only that she "was very angry" and "cried a lot" when she received the letter. *Id.* Nevertheless, the court concluded that Church had alleged facts sufficient to constitute a concrete injury. *Id.* at 995.

In reaching this conclusion, the Court emphasized that an injury must be concrete, in that it is "real, and not abstract.'" *Id.* at 993 (citing *Spokeo*, 136 S. Ct. at 1548). In some circumstances, a risk of real harm could be "'the violation of a procedural right granted by statute . . . and "[i]n such circumstances, 'a plaintiff . . . need not allege any additional harm beyond the one Congress has identified.'" *Id.* (citing *Spokeo*, 136 S. Ct. at 1549). The court then likened the facts of *Church* to those in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982).

7

In *Havens*, the Supreme Court found that a black "tester" who was given false information about the availability of housing based on her race had standing to assert a claim under section 804(d) of the Fair Housing Act, reasoning as follows:

> [The Fair Housing Act] establishes an enforceable right to truthful information concerning the availability of housing, is such an enactment. A tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions.

*Havens Realty Corp.*, 455 U.S. at 373–74.

Relying on this language, the Eleventh Circuit concluded that Church, like the plaintiff in *Havens*, had "alleged injury to her statutorily created right to information pursuant to the FDCPA." 2016 WL 3611543, at *3. "[T]hrough the FDCPA, Congress created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures." *Id.* at 994. "Church did not receive information to which she allege[d] she was entitled." *Id.* at 995. Accordingly, "Church . . . sufficiently alleged that she suffered a concrete injury, and thus, satisfie[d] the injury-in-fact requirement."[3] *Id.*

In a recent case—*Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1339–40 (11th Cir. 2017)—the Eleventh Circuit again relied on the principles espoused in *Spokeo* to find that a plaintiff had established Article III standing, this time for a "privacy injury." In

---

[3] In applying the principles in espoused in *Church*, some district courts within the Eleventh Circuit have found section 1681b(b)(2)—not section 1681b(b)(3))—is sufficient to confer standing where a plaintiff alleges an informational injury or an invasion of privacy, although there is no further harm or risk of harm. *See, e.g.*, *Hargrett v. Amazon.com DEDC LLC*, No. 15-cv-2456, 2017 WL 416427, at *6–7 (M.D. Fla. Jan. 30, 2017); *Graham v. Pyramid Healthcare Sols., Inc.*, No. 16-cv-1324, 2016 WL 6248309, at *1 (M.D. Fla. Oct. 26, 2016); *Moody v. Ascenda USA Inc.*, No. 16-cv-60364, 2016 WL 5900216, at *3 (S.D. Fla. Oct. 5, 2016).

*Perry*, the plaintiff, Ryan Perry, brought suit against the defendant for violations of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. Specifically, Perry alleged that the defendant violated the VPPA by collecting his viewing activity through a proprietary application and then disclosing it to a third-party, without Perry's consent. *Id.* at 1339. The defendant filed, and the district court granted, a motion to dismiss Perry's complaint for failure to state a claim, without leave to amend. *Id.*

On appeal, the defendant argued, *inter alia*, that Perry lacked standing to sue because he failed to allege a legally cognizable injury. *Id.* Unpersuaded by the defendants' argument, the Eleventh Circuit held Perry had established a sufficiently concrete injury by alleging that the defendant had wrongfully disclosed his private and personal information. The court noted that the structure and purpose of the VPPA—which "prohibits wrongful disclosure" and seeks "to preserve personal privacy"—supported its conclusion. *Id.* at 1340–41.

### B. Riley's Allegations of a Concrete Injury

Here, Riley claims that he "suffered a concrete informational injury because UPS failed to provide [him] with information to which he was entitled to by statute, namely a pre-adverse action notice, before" taking adverse action against him. Riley therefore claims that his inability to obtain a pre-adverse action notice is a sufficient injury-in-fact to satisfy Article III. (Doc. 24, ¶¶ 38–39). Separate from his alleged informational injury, Riley asserts that he has standing because UPS's failure to provide him with timely notice deprived him of the opportunity to learn of the charges against him and prevented him from telling UPS his side of the story. (*Id.* ¶¶ 40–41). As support, Riley relies primarily on

9

*Church* and *Perry*.[4] Riley claims that "the import of these decisions . . . is that the deprivation of the Section 1681b(b)(3) notice is the harm to which Article III attaches." (Doc. 38, p. 13).

Riley's reliance on *Church* and *Perry* is misplaced. In those cases, the Eleventh Circuit did not find that the plaintiffs had established a concrete injury simply because of a statutory violation. Indeed, the Eleventh Circuit, like the Supreme Court, has acknowledged that a statutory "violation, on its own, may not cause any harm or present a material risk of harm." *Perry*, 854 F.3d at 1340 (citing *Spokeo*, 136 S. Ct. at 1550). What the Eleventh Circuit did decide, however, was that the plaintiffs in *Perry* and *Church* had established concrete injuries because they suffered the type of harm Congress sought to curb in enacting the statutes at issue. Therefore, to establish a concrete injury sufficient to confer Article III standing, the Court concludes that Riley also must allege a harm or a material risk of harm that Congress identified or intended to curb when it passed the FCRA.

The Court's conclusion is consistent with the language in *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1000 (11th Cir. 2016), where the Eleventh Circuit addressed the issue of whether the plaintiff, Roger Nicklaw, suffered a concrete injury-in-fact for purposes of Article III standing. *Id.* According to the facts of that case, Nicklaw satisfied a mortgage owned by the defendant in 2012. *Id.* New York law required the defendant to file within thirty days a certificate of discharge with the county clerk to record that Nicklaw had satisfied his mortgage, but the defendant did not timely record the certificate. *Id.* at 1000.

---

[4] Riley also relies heavily on *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 638 (E.D. Va. 2016). However, like *Church* and *Perry*, *Thomas* is inopposite to the facts in this case.

When Nicklaw discovered that the certificate had been recorded late, he filed suit against the defendant. *Id.*

Relying on *Church* and several other cases, Nicklaw argued that the untimely recording of his the discharged mortgage constituted a concrete injury for two reasons. "First, the New York legislature intended to create a substantive right to have the certificate of discharge timely recorded. Second, the right to have a satisfaction of mortgage timely recorded has deep roots in American common law." *See id.* at 1001; *see also* Appellant Resp. Br. at 11, 13–18 (July 25, 2016). The court rejected Nicklaw's argument, emphasizing that standing is not met simply because a statute creates a legal obligation and allows a private right of action for failing to fulfill this obligation. "Not all statutory violations 'cause harm or present any material risk of harm.'" *Id.* at 1003 (citing *Spokeo*, 136 S. Ct. at 1550. The relevant question, the Eleventh Circuit explained, "is whether [the plaintiff] was harmed when [his] statutory right was violated." *Id.* (citation omitted).

Nicklaw did not allege "that he lost money because CitiMortgage failed to file the certificate." *Id.* at 1003. He did "not allege that his credit suffered." *Id.* Nor did he "allege that he or anyone else was aware that the certificate of discharge had not been recorded during the relevant time period." *Id.* Thus, the Court concluded that Nicklaw alleged neither harm nor a risk of harm amounting to a concrete injury-in-fact.

The facts of this case are more akin to *Nicklaw* that *Church* or *Perry*, in that Plaintiff has failed to allege a harm that Congress identified or intended to protect against in passing the FCRA. To be sure, "Congress enacted FCRA . . . to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). Section 1681b(b)(3) of the FCRA, under which Riley brings his claim:

> [P]rovides a consumer with a right to certain information (the consumer report and a description of rights conferred by the FCRA) before an employer takes adverse action based on that report. By requiring that the consumer receive the foregoing information before adverse action is taken, the statute provides the consumer with a right to review the report and discuss it with his putative or current employer before adverse action is taken against him.

*Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 632 (E.D. Va. 2016) (citing H.R. Rep. No. 10-486, 103d Cong., 2d Sess. 30–31 (1994)); *Wright v. Lincoln Prop. Co.*, No. CV 15-3483, 2017 WL 386602, at *3 (E.D. Pa. Jan. 27, 2017).

Here, the record shows, and Riley does not deny, that he received a copy of the report and a dissertation of his rights from First Advantage before UPS revoked his conditional offer of employment. (Doc. 30-1, pp. 4–9). Riley does not allege that the consumer report and the dissertation of his rights he received from Fair Advantage was incorrect. Nor does he allege that the information he received was incomplete. Instead, Riley argues that the information Fair Advantage provided to him pursuant to Section 1681k(a)(1) cannot take the place of the notice UPS was required to provide under Section 1681b(b)(3). However, Riley misses the point. At this stage in the case, the Court need not decide whether UPS has complied with Section 1681b(b)(3)(A). The issue is whether Riley has standing to sue—specifically, whether Riley suffered a concrete injury when UPS allegedly failed to provide him with a copy of his consumer report and a description of his rights although he was already in possession of that information.

The Court does not find that Riley suffered an informational injury because he obtained all of the information to which his were entitled, albeit not from UPS. *See, e.g.,*

12

*Campaign Legal Ctr v. Fed. Election Comm'n*, No. 16–752, 2017 WL 1185187, *4 (D.D.C. May 29, 2017) (finding that "[p]laintiffs lack[ed] standing to seek . . . 'duplicative reporting' of 'the same information from a different source'") (citation omitted); *All. for Democracy v. FEC*, 362 F. Supp. 2d 138, 144 (D.D.C. 2005) ("conclud[ing] that the plaintiffs lack standing because they already ha[d] the information they [were] seeking and therefore [did] not suffered an informational injury"). Moreover, there is no support for Riley's conclusory assertion that he had no opportunity to learn of the charges against him or that he was prevented from discussing the contents of his consumer report with UPS before it revoked its conditional job offer.

For these reasons, the Court finds that Plaintiff lacks Article III standing, and his Amended Complaint is due to be dismissed.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant United Parcel Service of America, Inc.'s Motion to Dismiss First Amended Complaint (Doc. 30), is **GRANTED**. Plaintiff's Complaint (Doc. 24) is **DISMISSED**. The Clerk of Court is **DIRECTED** to close the file.

**DONE AND ORDERED** in Orlando, Florida, on October 2, 2017.

_____
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE