JOHN C. FISH, JR., SBN 160620
jfish@littler.com
ROD M. FLIEGEL, SBN 168289
rfliegel@littler.com
ANDREW M. SPURCHISE, SBN 245998
aspurchise@littler.com
LITTLER MENDELSON, P.C.
333 Bush Street, 34th Floor
San Francisco, California  94104
Telephone:    415.433.1940
Facsimile:  415.399.8490

THEODORE J. BOUTROUS JR., SBN 132099
   tboutrous@gibsondunn.com
THEANE EVANGELIS, SBN 243570
   tevangelis@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA, SBN 254433
   dmanthripragada@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

JOSHUA S. LIPSHUTZ, SBN 242557
   jlipshutz@gibsondunn.com
KEVIN RING-DOWELL, SBN 278289
   kringdowell@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:    415.393.8200
Facsimile:    415.393.8306

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and RASIER, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE UBER FCRA LITIGATION | Case No. 3:14-cv-05200 EMC<br><br>**DEFENDANTS' BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE IN OPPOSITION TO OBJECTIONS TO CLASS SETTLEMENT** |

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' BRIEF ISO RESPONSE TO OBJECTIONS – CASE NO. 3:14-CV-05200 EMC

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ......................................................................................................... 1
II. STATEMENT OF FACTS ............................................................................................ 2
    A. The Settlement Agreement And Class Notice ................................................... 2
    B. Audet's "Mass" Opt Out And Subsequent Objection ........................................ 3
III. ARGUMENT ................................................................................................................. 5
    A. The Class Notice Violated No Ethical Restrictions ........................................... 5
    B. "Mass" Opt-Out Prohibitions Present No Due Process Concerns ..................... 6
    C. Class Members' Arbitration Agreements Do Not Impede Settlement Approval ........ 8
    D. Audet's Remaining Objections Lack Merit ..................................................... 11
IV. CONCLUSION ............................................................................................................ 11

Defendants Uber Technologies, Inc. and Rasier, LLC ("Defendants") respectfully submit this brief in support of Plaintiffs Ronald Gillette, Abdul Kadir Mohamed, Shannon Wise, Brandon Farmer, and Meghan Christenson (collectively, "Plaintiffs," and together with Defendants the "Parties") "Response in Opposition to Objections to Class Action Settlement." Defendants' brief addresses only the "Objection to Settlement" filed by Audet & Partners, LLP (Dkt. 263), which has no merit, should be overruled, and should not prevent or delay final approval of the settlement.[1]

## I. INTRODUCTION

The Parties' class settlement agreement (Dkt. 221-6) followed years of hard-fought litigation and was the result of extensive arm's length negotiations between veteran attorneys with significant class action experience. On June 29, 2017, this Court determined that the settlement was "fundamentally fair, adequate and reasonable" and granted preliminary settlement approval. (Dkt. 242.) Accordingly, notice of the settlement was sent to class members and the response has been overwhelmingly positive. In particular, a total of 135,209 claims have been submitted—against only 216 valid exclusions and just five objections.

Audet & Partners, LLP ("Audet") filed one of those five objections. (Dkt 263.) In its objection, Audet claims to represent 548 "Uber drivers" with regard to "employment claims against Uber," including those with claims pending in arbitration. On November 22, 2017, Audet sent a notice of "mass" opt-out to the settlement administrator, purporting to opt-out all of its 548 clients from the Parties' settlement agreement. On December 11, 2017, the settlement administrator properly rejected Audet's opt-out letter because the settlement agreement expressly prohibits purported "mass" or "class" opt-outs.

Audet responded by filing an objection, on the ground that the settlement agreement's "mass" opt-out prohibition supposedly violates due process. But Audet is wrong. As demonstrated below, requiring individually-signed opt-out forms helps protect class members' due process rights, because the signature serves to confirm the individual's intentions. Courts have emphasized the

---

[1] To avoid duplication, Defendants join in Plaintiffs' response to the four other objections.

1   importance of such confirmation where, as here, there is a "real risk" that the attorney-signed opt-out
2   form does not accurately reflect the wishes of class members.  Here, that risk is *real*, not merely
3   hypothetical.  ***Indeed, more than 18% of purported Audet clients affirmatively submitted timely***
4   ***and valid claim forms***.  It is therefore both appropriate and necessary that this Court overrule
5   Audet's meritless and unsupported objection.

6   Furthermore, experienced class action lawyers like those at Audet should know that
7   individually-signed opt-outs are appropriate – and in fact desirable – facets of class settlements.
8   And, because Audet knew of the settlement by mid-July 2017 – months before the December 14,
9   2017 opt-out deadline – Audet had more than ample time to communicate with its clients regarding
10  whether they desired to opt-out of the class settlement or instead remain in the class, and to collect
11  the requisite opt-out signatures for those of its clients who desired to opt-out.  That Audet did not
12  take the time or expend the effort to do so hardly justifies denying final settlement approval now.

13  As will be explained, Audet's two remaining arguments are likewise without merit.  Audet's
14  argument that the Parties engaged in unethical contact by contacting Audet's purported clients is
15  unsupported.  The only communication that was sent was the Court-approved notice mailed by the
16  claims administrator.  Audet's jurisdictional challenge fares no better.  As demonstrated below, it is
17  settled law that class members who do not opt out of a class settlement are bound by the class-wide
18  release of claims notwithstanding a prior agreement to arbitrate such claims.  Here, the Parties'
19  settlement agreement operates to amend the contours of the prior arbitration agreements with respect
20  to the released claims.  Any wage and hour claims are unaffected.

21  Because Audet offers no valid objection to the settlement, the Court should overrule the
22  objection and grant final approval.

23  **II.     STATEMENT OF FACTS**

24  A.      The Settlement Agreement And Class Notice

25  The Parties' settlement agreement resolves several consolidated class action lawsuits alleging
26  that Defendants violated the Fair Credit Reporting Act ("FCRA") and California and Massachusetts
27  state law in connection with its background check procedures.  The release provision in the
28  settlement agreement is specific to such claims.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' BRIEF ISO RESPONSE TO OBJECTIONS     2.     CASE NO. 3:14-CV-05200 EMC

1    Following this Court's preliminary approval of the settlement, the settlement administrator
2    issued the Court-approved class notice. Specifically, the settlement administrator first sent e-mail
3    notice to all potential class members at the e-mail addresses that were on file with Defendants. If,
4    within 14 days of the e-mail notice, the settlement administrator did not receive an "open
5    confirmation" (confirming e-mail receipt of the class notice), the settlement administrator followed
6    up with a postcard notice to the potential class member's last known mailing address. Finally, and in
7    order to ensure that as many class members as possible received notice, the settlement administrator
8    *re-sent* class notice to all potential class members via e-mail, with an email subject line that read:
9    "Reminder: Uber Class Action Settlement."

10   The settlement administrator received an "open confirmation" for 120,314 of the potential
11   class members. (Notice Declaration of Charles E. Ferrara ("Ferrara Decl.") ¶ 6.) For those potential
12   class members whose e-mail accounts did not respond with an "open notice," the settlement
13   administrator sent the postcard notice. (*Id*. ¶ 7.) There were 843,696 potential class members who
14   were sent the postcard notice. (*Id*.) Of these postcard notices, 215,369 were returned to the
15   settlement administrator as undeliverable and without forwarding addresses. (*Id*. ¶ 9.) Of these, the
16   settlement administrator was able to locate valid mailing addresses for 149,422 potential class
17   members, who were re-mailed the class notice. (*Id*. ¶ 10.)

18   The claims, exclusion and objection deadlines have all passed. (Dkt. 252.) The settlement
19   administrator reports that a total of 135,209 claims have been submitted. (Ferrara Decl. ¶ 16.) Only
20   292 class members have requested exclusion. (*Id*. ¶ 18.) Only five objections have been filed.

21   **B.    Audet's "Mass" Opt Out And Subsequent Objection**

22   Audet represents various individuals with pending wage and hour and background check
23   claims against Defendants. (*See* Dkt. 263, Objection at pp. 1:24-2:2.) Certain of Audet's individual
24   clients have agreed to arbitration of their claims with Defendants. (*Id*.) While not counsel of record
25   in this case, Audet has been well aware of this action, including the class-wide settlement. On July
26   11, 2017 (less than two weeks after the Court's initial order on preliminary approval, but well before
27   class notice went out) Audet attorneys had a discussion with Defendants' attorneys concerning the
28   settlement. (Declaration of Sophia Behnia in Support of Defendants' Brief in Support of Plaintiffs'

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' BRIEF ISO RESPONSE TO OBJECTIONS    3.    CASE NO. 3:14-CV-05200 EMC

Response in Opposition to Objections to Class Settlement ("Behnia Decl.") ¶ 3).) Audet attorneys expressed a need to potentially "opt-out" of this settlement on behalf of their clients during this meeting. (*Id.*)

On November 22, 2017, Audet mailed the settlement administrator a letter which stated that Audet represents "Uber past and current drivers indicated on Exhibit A in individual lawsuits." (Dkt. 263-1, Ex. B.) "Exhibit A" is a spreadsheet listing the names of 548 individuals. (*Id.*) Audet's November 22 letter stated: "With this letter, please exclude the [sic] these persons indicated on attached Exhibit A, who want to be excluded from the Settlement Class, do not want to be a Settlement Class Member, and want to be excluded from any judgment entered pursuant to the Settlement (In re Uber FCRA Litigation, 3:14-cv-05200-EMC)." (*Id.*) The November 22 letter was signed only by Audet attorney Mark E. Burton, Jr.[2] (*Id.*)

On December 11, 2017, the settlement administrator sent Audet a letter acknowledging receipt of the purported opt-out notice, but rejecting the notice for failure to comply with the opt-out procedures specified in the settlement agreement. (Dkt. 263-1, Ex. A.) The settlement administrator directed Audet to the paragraph of the settlement agreement (paragraph 108) that prohibits "mass" or "class" opt-outs. (*Id.*) The settlement administrator also advised Audet that, pursuant to paragraph 110 of the settlement agreement, any class member who submitted both a claim form and a request for exclusion would be deemed to be a member of the settlement class. (*Id.*)

A significant percentage of individuals purportedly represented by Audet submitted claim forms and are thus deemed to be settlement class members, despite the attempted "mass" opt-out. Indeed, a comparison of Audet's "Exhibit A" against information compiled by the claims administrator reveals that 99 (or 18%) of Audet's 548 alleged clients submitted valid claim forms. (Ferrara Decl. ¶ 22.) A further comparison reveals that 38 (or nearly 7%) of Audet's alleged 548 clients timely submitted valid individual exclusion requests pursuant to paragraph 107 of the

---

[2] Defendants cannot confirm whether Audet actually represents all of the 548 individuals identified on "Exhibit A." Some of those individuals may be included within the certified class in *O'Connor, et al. v. Uber Tech., Inc.*, No. CV-13-03826-EMC, and therefore may be represented by class counsel in that action.

DEFENDANTS' BRIEF ISO RESPONSE TO OBJECTIONS   4.   CASE NO. 3:14-CV-05200 EMC

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

1  settlement agreement.  (*Id*. ¶ 23.)  Some 21 individuals submitted both a claim form and an
2  individual exclusion. (*Id*. ¶ 24.)

3  Three days after the settlement administrator rejected its "mass" opt-out request, Audet filed
4  its objections to the settlement—purportedly on behalf of the same 548 individual clients.  (Dkt.
5  263.)  Tellingly, Audet submitted no attorney declaration attesting to its efforts (or lack thereof) to
6  attempt to collect individual opt-out signatures, much less its inability to do so.  The logical
7  inference is that, for whatever reason, no such attempt was made.

### III. ARGUMENT

#### A. The Class Notice Violated No Ethical Restrictions

Audet's first ground for objection is frivolous.  Audet seems to assert, without citing any authority, that the class notice constituted unethical contact with represented individuals by Defendants.  Audet claims:  "Despite clear ethical prohibitions on contacting represented parties directly and Uber's awareness that hundreds of class members are represented by counsel concerning background check claims in individual cases, no notice of this proposed settlement was sent to counsel for the represented objectors." (*See* Dkt. 263, Objection at p. 2:15-21.)  But, of course, Defendants never contacted any class members.  The *settlement administrator* sent the Court-approved class notice to class members in accordance with this Court's order granting preliminary approval.  Audet's argument that such a Court-supervised notice raises ethical concerns akin to when an attorney has *ex parte* contact with an opposing party is utterly specious.

Audet also should not be heard to complain that it supposedly lacked access to the settlement agreement, the proposed form of notice, or any other pleadings.  All relevant documentation was filed with the Court on its public docket, and thereafter widely reported on as early as September 2017 in popular class action websites.[3]  And again, Audet was aware of the settlement by no later than mid-July 2017, when Audet discussed the settlement with Defendants' attorneys.  (Behnia Decl.

---

[3] *See* https://topclassactions.com/lawsuit-settlements/closed-settlements/819118-uber-background-check-class-action-settlement/.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' BRIEF ISO RESPONSE TO OBJECTIONS    5.    CASE NO. 3:14-CV-05200 EMC

¶ 3.) For all these reasons, this Court should reject Audet's unsupported argument that the Court-supervised notice procedure constituted unethical conduct.

### B. "Mass" Opt-Out Prohibitions Present No Due Process Concerns

Next, Audet asserts that "[t]he prohibition on counsel filing opt outs on behalf of clients is a violation of due process." (Dkt. 263, Objection at p. 2:22-28.) This argument, too, is unsupported by any authority. The lone case cited by Audet in its objection, *Lindsay v. Gov't Employees Ins. Co.*, 448 F.3d 416 (D.C. Cir. 2006), does not address "mass" or "class" opt-outs at all. Instead, that case stands for the unremarkable proposition that due process requires notice to class members and an opportunity to opt-out. No party disputes that proposition, which simply has no bearing on Audet's objection.

In addition to having no legal authority to back up its argument, the logic underpinning Audet's objections is entirely backwards: the practice of requiring individually-signed opt-out forms helps *protect* class members' due process rights because the signature serves to confirm and validate each individual's intentions. Indeed, courts have emphasized the importance of individual-signature confirmation where, as here, there is a real risk that an attorney-signed opt-out does not accurately reflect the wishes of settlement class members.

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344 (6th Cir. 2009) is instructive. There, an attorney (Hadden), purporting to represent class members, unsuccessfully objected to the class-wide settlement. On appeal, Hadden argued that the district court was required to accept his attorney-signed "mass" opt-out form. *Id*. at 354. The Sixth Circuit rejected that argument as unsupported by authority and incompatible with the discretion vested in trial courts to manage class actions by "governing the conduct of counsel and the parties." *Id*. (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)). The court further reasoned that requiring individually-signed opt-out forms was appropriate to protect the interests of the class members. After the class was certified, but before the class notice was sent, Hadden had mailed a letter to class members advising them that opt-outs typically would recover more than participating class members, and that he would opt-out class members who did not affirmatively return a form to him stating a desire to *remain* in the class. *Id*. at 347. As a result, the court explained, it was unclear which of the attorney's purported clients

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' BRIEF ISO RESPONSE TO OBJECTIONS     6.     CASE NO. 3:14-CV-05200 EMC

actually wanted to opt out. The court reasoned: "Given the real risk that the attorney-signed opt-out forms did not reflect the wishes of class members, the district court appropriately exercised its power by requiring individually signed opt-out forms (and rejecting the attorney-signed forms)."[4] *Id.*; *see also Good v. Am. Water Works Co., Inc.*, No. CV 2:14-01374, 2016 WL 5746347, at *3 n.3 (S.D. W. Va. Sept. 30, 2016) ("[R]equiring individual signatures is standard practice in many class actions and in fact serves to protect the due process rights of absent class members"); *Hallie v. Wells Fargo Bank,* No. 2:12-CV-00235-PPS, 2015 WL 1914864, at *4 (N.D. Ind. Apr. 27, 2015) ("Requiring a personally signed, individual request for exclusion from class settlement heightens the likelihood that each class plaintiff will make an informed, individualized decision whether to opt out, and courts want to encourage this careful decisionmaking process.").

On the evidentiary record before this Court, the risk is not merely hypothetical: Audet's attorney-signed "mass" opt-out *in fact* does not accurately reflect the wishes of all of the class members that Audet purports to represent. Some 99 purported Audet clients submitted valid claim forms to the settlement administrator, indicating their clear preference to participate in the settlement class. (Ferrara Decl. ¶ 22.) The supposed necessity of the "mass" opt-out is further undercut by the fact that some 38 purported Audet clients submitted valid individual exclusion forms, demonstrating that individual class members are capable of opting out on their own, when they so desire. (*Id.* ¶ 23.) Thus, this Court should disregard Audet's purported "mass" opt-out and overrule Audet's objection.

Furthermore, that Audet apparently did not take the time to confer with its clients on an individual basis and seek individual opt-out signatures, where appropriate, hardly justifies denying settlement approval now. The district court addressed a similar circumstance in *Hallie v. Wells Fargo Bank, supra*. In that case, the plaintiff filed a class action in Indiana. During the litigation, the defendant settled a similar class action in Florida. Relying on that settlement, the defendant

---

[4] The court's conclusion was hardly novel. *See Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 412 (2d Cir. 1975) (stating in the context of overlapping proceedings that, for sake of efficiently managing class actions, "opting out of a class action, like the decision to participate in it, must be an individual decision").

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' BRIEF ISO RESPONSE TO OBJECTIONS — 7. — CASE NO. 3:14-CV-05200 EMC

1  moved to dismiss the *Hallie* plaintiff's lawsuit on *res judicata* principles, which the district court
2  granted.  In relevant part, the district court agreed with the defendant that the plaintiff's opt-out in
3  the Florida action was ineffective because it was only signed by her attorney.  The court explained:

> The requirement that a class member must personally sign her opt-out is admittedly technical.  But it is enforceable here.  It was a clear requirement, and plaintiff's counsel had five months to meet it, yet didn't get around to jotting an eight-line note opting out and mailing it until the day before the deadline.  Any deadline-based reason for Hallie not signing herself is a problem of her or her counsel's own making.  The personal signature requirement also seems to be a standard requirement in class actions, and it's not onerous.

*Id*. at *4.  The court continued:

> Hallie's counsel should have well understood this requirement.  They are experienced class action consumer lawyers who— according to their Web site—purport to "focus [their] practice exclusively on consumer protection and class action law," but missed this very simple requirement.

*Id*.

Like the counsel in *Hallie*, Audet cannot complain of lack of notice or insufficient time to obtain valid exclusions.  Audet knew of the settlement by mid-July 2017, months before the opt-out deadline.  Audet has not submitted a declaration attesting to its efforts to attempt to collect opt-out signatures, let alone its inability to do so.  On this record, the logical inference is that no such attempt was made.  Thus, Audet's objection should be overruled.[5]

**C.   Class Members' Arbitration Agreements Do Not Impede Settlement Approval**

Without citing any authority, Audet also argues that this Court "lacks jurisdiction to impose the settlement on class members that have agreed to arbitration." (Dkt. 263, Objections at p. 3:8-15.) Audet is wrong: except for class members that submitted valid exclusions, the class settlement

---

[5] Of course, upholding the bargained-for "mass" opt-out prohibition benefits Defendants as well—as Audet will likely argue at the hearing. "The purpose of requiring the class member to actually sign the opt out—as opposed to allowing a lawyer to sign it for her—is to give assurance to the defendants that the class member does not wish to be bound by the settlement." *Hallie,* 2015 WL 1914864, at *4.  But it also promotes judicial efficiency. "Class actions and class settlements would lose their effectiveness if internal struggles among different plaintiffs' lawyers and factions of plaintiffs were paired with an easy way to fragment the class." *Id*.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' BRIEF ISO RESPONSE TO OBJECTIONS    8.    CASE NO. 3:14-CV-05200 EMC

1   agreement impliedly revokes the parties' consent to arbitrate *as to the specific claims covered by the class settlement* (i.e., claims relating to background checks).  (Dkt. 222, Stipulation of Settlement, Section II ¶ 41, Section VII ¶¶ 79-81.)

*In re American Express Financial Advisors Securities Litigation*, 672 F.3d 113 (2d Cir. 2011) is instructive on this point.  There, a married couple initiated arbitration against Ameriprise, alleging that Ameriprise "steered" the couple's investments for self-serving purposes.  Ameriprise filed a motion to enjoin the arbitration, arguing that—although the parties were subject to an arbitration agreement—the arbitration was barred by a prior class settlement that the couple did not opt out of.  *Id*. at 125.  The court enjoined the arbitration and the couple appealed.  On appeal, the Second Circuit held that the arbitration agreement between the couple and Ameritrade did *not* entitle the couple to arbitrate their claims, reasoning that the class settlement agreement—which the couple accepted by not opting out—superseded and amended the terms of the arbitration agreement with respect to the specific claims at issue in the class settlement.  The court explained that, "where a party initially consents … to arbitrate certain types of claims, but later enters into a settlement agreement that releases claims that had been subject to the initial consent to arbitrate, the claims that have been released by such a settlement are no longer subject to arbitration."  *Id*. at 132–33.  The court concluded that "the Class Settlement 'supersede[d] all prior understandings communications, and agreements with respect to the subject of [the] Settlement,' … including the parties' implicit agreement that the [couple] had a right to arbitrate certain claims against Ameriprise…."  *Id*. at 133.

Other courts across the country have reached the same conclusion under similar circumstances.  *See, e.g., In re Citigroup Inc. Secs. Litig*., No. 09-Md-2070, 2014 WL 3610988, at *8 (S.D.N.Y. July 21, 2014) ("It is settled law that class membership can release all claims, including arbitration claims, notwithstanding a class member's earlier arbitration agreement."); *In re Oppenheimer Champion Fund Secs. Fraud Class Actions*, No. 09-cv-386, 2012 WL 13005663, at *2 (D. Colo. Mar. 15, 2012) ("[I]t is clear that the Champion Fund Settlement Agreement 'amended the contours of the parties' agreement to arbitrate all disputes between them before FINRA arbitrators.'"); *Benacquisto v. Am. Express Fin. Corp*., No. CIV 00-1980(DSD/JMM), 2006 WL 453135, at *2 (D. Minn. Feb. 23, 2006) (holding the release of claims as set forth in the class action

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' BRIEF ISO RESPONSE TO OBJECTIONS     9.     CASE NO. 3:14-CV-05200 EMC

settlement precluded plaintiff from pursuing his arbitration claims); *and cf. Riley v. Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 784 (10th Cir. 1998) (finding that a merger clause in a settlement "revoked [a] prior right of the parties to demand arbitration on the[] specific topics" that the court concluded were within the bounds of the settlement agreement).

Here, the Parties' settlement agreement contains a superseding clause similar to the one at issue in *American Express*. It states:

> Any and all previous agreements and understandings between or among the Parties regarding the subject matter of this Stipulation of Settlement, whether written or oral, are superseded and hereby revoked by this Stipulation of Settlement. The Parties expressly agree that the terms and conditions of this Stipulation of Settlement will control over any other written or oral agreements.

(Dkt. 222, Stipulation of Settlement, Section XV ¶ 130.) Thus, for class members who decided to remain in the settlement class, the settlement agreement—which class members accepted by not opting out—amends all prior agreements concerning "the subject matter of [the] Stipulation of Settlement," including their existing arbitration agreements  *Id.*[6]

Furthermore, even if the Court did not have "jurisdiction" over the claims that are being resolved through this settlement agreement, as Audet contends, this Court *still* would have authority to grant final settlement approval for those claims. For example, in *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992), the Ninth Circuit affirmed a district court order granting approval of a class action settlement arising from a bond default. An objector group appealed that settlement approval order, arguing that it was invalid because the settlement extinguished claims that were pending and certified in a state court class action, including claims that could not have even been alleged in the Class Plaintiffs complaint. *Id*. at 1286–87. The Ninth Circuit rejected these arguments. The court explained that "a federal court may release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and *might not have been*

---

[6] Settlement class members' arbitration agreements remain operable and have not been amended in any other respect. In other words, class members' arbitration agreements have only been amended with respect to the *specific claims* that are being settled in *this* case.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANTS' BRIEF ISO RESPONSE TO OBJECTIONS    10.    CASE NO. 3:14-CV-05200 EMC

*presented in the class action.*'" *Id*. at 1287–88 (emphasis in original). Indeed, the court held that "it was not necessary for the district court to actually exercise subject matter jurisdiction over the claims to approve their release." *Id*. at 1288; *see also Galeener v. Source Refrigeration & HVAC, Inc.*, No. 3:13-cv-04960-VC, 2015 WL 12976106, at *1 (N.D. Cal. Aug. 20, 2015) ("This Court [] has jurisdiction to approve the Settlement's release of claims by Class Members over which the Court has jurisdiction, even if the Court would not independently have jurisdiction over those released claims.").

For either or both of these reasons, the Court should overrule Audet's objection based on class members' arbitration agreements.

### D. Audet's Remaining Objections Lack Merit

Audet further argues that the settlement amount "provides ridiculously low compensation for the class." (Dkt. 263, Objections at p. 3:1-7.) This will be addressed more fully in Plaintiffs' Response. Defendants, however, note that the settlement amount (or the estimated pay out per class member) is right in line with payouts in similar class actions. (*See* Dkt. 223, Plaintiffs' Motion for Preliminary Approval off Class Action Settlement, at pp. 26:16-27:8.)

Finally, the Audet objectors nevertheless ask to be excluded from the settlement on account of their "mass" opt-out. (*See* Dkt. 263 Objection at p. 3:17-20.) Audet does not provide any valid justification or authority for this request, and it should be denied.

### IV. CONCLUSION

Audet's objections are unsupported and unpersuasive. Defendants thus join Plaintiffs in requesting that the Court overrule the objections and grant final approval of the Parties' class settlement.

Dated: Janaury 25, 2018

LITTLER MENDELSON, P.C.

By: /s/ *Rod M. Fliegel*
      ROD M. FLIEGEL

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and RASIER, LLC

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' BRIEF ISO RESPONSE TO OBJECTIONS    11.    CASE NO. 3:14-CV-05200 EMC