UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE UBER FCRA LITIGATION

Case No. 14-cv-05200-EMC

**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT; GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SERVICE AWARDS; AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES**

Docket Nos. 257, 258, 264

## I. INTRODUCTION

Plaintiffs brought putative class actions alleging they were denied employment or were terminated on the basis of information contained in background checks that Uber procured in violation of the Fair Credit Reporting Act ("FCRA") and related state laws. *See* Docket No. 171 ("Amend. MAC") ¶¶ 1–2, 56–62. Now pending before this Court are Plaintiffs' motion for final approval of class settlement, *see* Docket No. 264, motion for service awards, *see* Docket No. 257, and motion for attorney's fees. *See* Docket No. 258. Having reviewed the parties' submissions, the Court hereby **GRANTS** Plaintiffs' motion for final approval of class settlement, and **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motions for service awards and attorney's fees.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On June 29, 2017, this Court granted Plaintiffs' motion for preliminary approval of class action, and described the procedural history, history of negotiations, and discovery that preceded that motion, which will not be repeated here. *See* Docket No. 242 ("Prelim. App. Order") at 1–5.

Following entry of the Preliminary Approval Order, Class Counsel worked closely with the Court-appointed Settlement Administrator, the Angeion Group, LLC, and with counsel for Uber to implement the notice program approved by this Court. See Docket No. 264 ("Mtn. for Final App.") at 14; *see also* Docket No. 264-1 ("Wolfson Decl.") ¶ 5.

Notice of the settlement was given to the class via email, mail or online (through the Settlement Website). *See* Mtn. for Final App. at 20. With respect to the email notice, the claim administrator sent 1,024,270 emails to potential members included on the class list, of which 111,920 email were returned as undeliverable, 120,314 emails were confirms opened, and 793,197 emails were delivered but there was no confirmation whether they were opened, as of September 25, 2017. *See* Docket No. 264-3 ("Ferrara Decl.") ¶ 6. On December 6, 2017, in accordance with the Stipulation of Settlement, the claim administrator sent 977,313 reminder email notices to class members included in the list who did not submit a claim form to reminder of the claims submission deadline. *Id*. at ¶ 11.

Taking into consideration the number of emails that were returned undeliverable, the number of emails that were unopened, duplicative records, and records without a mailing address, the claim administrator identified 843,696 class members whom a mailed notice would be (and was) sent. *Id.* at ¶ 7–10. As of January 23, 2018, the claim administrator had received 135,209 claim form submissions, of which 99,243 appear to be valid. *Id.* at *¶* 16. The total number of 99,243 valid claim forms represent approximately 10% of all Class Members. *See* Wolfson Decl. ¶ 17. The deadline for requests for exclusion and objections to the settlement was December 14, 2017. As of January 23, 2018, there have been 216 opt outs.[1] *See* Docket Nos. 259–263; *see* also Ferrara Decl. 26.

Plaintiffs moved for final approval of class settlement on January 25, 2018. On February 8, 2018, the Court held a hearing on Plaintiffs' motion for final approval of class action settlement, Plaintiffs' motion for service awards, and Plaintiffs' motion for attorney fees and expenses. *See*

---

[1] Class Counsel shall provide the finalized list and number of opt outs along with the modified proposed Final Order Approving Class Action Settlement and proposed Final Judgment. *See* Docket Nos. 222-1, 222-2.

Docket Nos. 264, 257, 258. The Court expressed concerns regarding: (1) the wording of the release included in the settlement; and (2) an objection based on a single request for exclusion filed by Audet & Partners LLP ("Audet") on behalf of Thomas Abeyta and 548 individuals ("Abeyta Objection I"). *See* Docket No. 277; *see also* Docket Nos. 263, 270 ("Abeyta Obj. I"). The Court issued a minute order the same day requiring the parties to meet and confer regarding the first issue and, with respect to the second issue, requiring that additional notice be provided certain Class Members on whose behalf Audet filed an objection and request for exclusion. *See* Docket No. 275 ("Feb. 8 Order"). With regards to the scope of the release, the Court found that the settlement's release should be clarified without requiring additional notice to Class members. *See* Docket No. 277 at 7; *see also* Feb 8 Order at 1. The parties have filed and revised a stipulation and proposed order, and the Court entered that revised order on April 19, 2018.[2] *See* Docket No. 284.

With regards to the second issue, Audet claimed to represent each of the 548 individuals individually and argued that the prohibition on counsel filing opt outs on behalf of clients is a violation of due process. *Id*. at 2. However, only 245 of the 548 individuals are actually Class Members. *See* Ferrara Decl. ¶ 20. As some of the 245 Class Members have already (a) submitted claim, (b) requested for an exclusion, (c) submitted a claim and submitted a request for exclusion, or (d) did not respond, the Court ordered the parties to re-issue a class notice to only 108 Class Members, who have either (i) submitted a claim and an individual request for exclusion, or (ii) did not submit a claim and did not submit an individual request for exclusion. *See* Feb. 8 Order; *see also* Docket No. 264-3 ¶ 19, 20, 24, 25. The 108 Class Members were given a period of 45 days to respond and the deadline to respond was April 14, 2018. *See* Docket No. 285 ("Ferrara Decl. II"). Of the 108 Class Members, 25 submitted claims and 17 submitted requests for exclusion. *Id.* at ¶ 6.

---

[2] As such, the Court **OVERRULES** the objections raised by Ms. Mora, *see* Docket No. 261 ("Mora Obj."), which primarily include concerns about the nature of the release. The settlement does not release Ms. Mora's wage and hour claims, and the settlement does not bar Ms. Mora from bringing other claims under the Private Attorneys General Act ("PAGA").

3

### III. DISCUSSION

A. Plaintiffs' Motion for Final Approval of Class Settlement

1. Legal Standard

Public policy "strong[ly] ... favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008). In weighing final approval of a class settlement, the Court's role is to determine whether the settlement, taken as a whole, is fair, reasonable, and adequate. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). As noted in the Court's Preliminary Approval Order, the Ninth Circuit has established a list of factors to consider when assessing whether a proposed settlement is fair, reasonable and adequate: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the benefits offered in the settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Hanlon*, 150 F.3d at 1026.

2. The Settlement

The settlement class consists of all persons who were subject to a background check and/or consumer report requested by Uber before January 3, 2015. *See* Docket No. 222 ("Stip. Of Sett.") at ¶ 37. The Class is divided into two subgroups: those who are subject to an arbitration provision that was the subject of the Ninth Circuit enforceability ruling ("the ADR Group"), and those who are not subject to such a provision ("the Court Group"). There are 424,125 members of the ADR Group, and 601,829 members of the Court Group. *See* Docket No. 221-6, ¶ 70(a)(ii)-(iii). Under the Settlement, the gross settlement fund for the class is $7.5 million. *See* Stip. Of Sett. ¶ 42. There will be deductions (which include service awards, attorneys' fees and expenses, and Private Attorneys General Act ("PAGA") Payment to the California Labor and Workforce Development Agency ("LWDA")) from the gross settlement fund before there is distribution to the class. *See generally* Stip. of Sett. ¶ 20, 43; *see also* Docket No. 222-5 ("Settlement Agreement"), Exh. E

("Settlement Notice) § 20. The net settlement funds will be distributed to the class under a "Settlement Share Calculation." *See* Stip. of Sett. at 64. Class members will have to submit a claim form by January 15, 2018 to get money. Based on the formula stated in the Settlement Share Calculation, class members who are not subject to the arbitration agreements (the "Court Group") will receive approximately twice the amount paid to those who are subject to the arbitration agreements (the "ADR Group"). *Id*. ¶ 62-63. Class Counsel submits that class members in the Court Group will receive a Settlement Share of approximately $73.99, while the class members in the ADR Group will receive a Settlement Share of approximately $32.15.[3] *See* Wolfson Decl. at ¶ 16.

In exchange for the consideration provided in the settlement, class members agree to release all claims actually brought in this suit, as well as "all background check claims that could have been asserted based on the allegations included in the Amended Master Complaint." *See* Docket No. 264 at 19. Specifically, class members release all claims:

> arising out of or relating to any allegations made in the Action, any legal theories that could have been raised based on the allegations in the Action, and all claims of any kind relating in any way to, or arising out of, background checks and/or consumer reports of any kind presented in the Action based on the facts alleged in the Complaint, including but not limited to claims under the Fair Credit Reporting Act ("FCRA"), California Consumer Reporting Agencies Act, California Investigative Consumer Reporting Agencies Act, California Private Attorney General Act claims pursuant to Cal. Labor Code § 2699, based on alleged violations of California Labor Code §1024.5, California Business and Professions Code section 17200, and Massachusetts CORI related claims. "Settlement Class Members' Released Claims" includes claims for actual, statutory, liquidated, punitive or any other form of damages, as well as for attorneys' fees and costs. "Settlement Class Members' Released Claims" shall be construed as broadly as possible to affect complete finality over this Action. Provided, however, that no PAGA claims or any other labor law claims are released except those asserted in the Eleventh Cause of Action in the Amended Master Consolidated Complaint, i.e. claims based on the impermissible use of consumer credit reports for employment purposes, in violation of Labor Code § 1024.5. *See In re Uber FCRA Litig.*, Docket No. 171 at 28-29.

*See* Docket No. 284 at 2.

---

[3] This amount is subject to change, especially since the Court will be granting a smaller amount of Attorneys' Fees and Service Awards.

5

Separate and apart from the Settlement Fund, Uber will pay all settlement administration expenses. *See* Stip. of Sett. ¶ 53(a). These costs do not come out of the Settlement Fund, unless there are Residual Funds (*i.e.*, un-deposited checks) remaining after payment of Settlement Shares to Class Members. *Id.* ¶ 64. Settlement Administration Expenses currently amount to $546,260.86, and are expected to rise by another $190,000.[4] *See* Docket No. 264-3 ("Ferrara Decl.") at ¶ 27.

### 3. Predominance under Rule 23(b)(3) – Abeyta Objection II

In opposing final approval, the class settlement objectors Thomas Abeyta, et. al., subsequently filed an untimely objection,[5] invoking the Ninth Circuit's opinion in *In re Hyundai & Kia Fuel Economy Litig.*, 881 F.3d 696 (9th Cir. 2018). *See* Docket No. 287 ("Abeyta Obj. II"). Abeyta argues that this Court has not considered the impact of variations of state laws, and that predominance under Rule 23(b)(3) is not satisfied and thus the Settlement cannot be approved. *See* Abeyta Obj. II at 4. While the Ninth Circuit in *In re Hyundai* reiterated the importance of finding predominance under Rule 23(b)(3), particularly where numerous variation in applicable state law are extended, it cautioned that "[v]ariations in state law do not necessarily preclude a 23(b)(3) action." *In re Kyundai Kia Fuel Economy Litig.*, 881 F.3d 696, 691 (9th Cir. 2018)(citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)). "Even when some class members 'possess slightly differing remedies based on state statute or common law', there may still be 'sufficient common issues to warrant a class action.'" *Id.* (citing *Hanlon*, at 1022–23). Here, Plaintiffs have alleged that Uber has violated the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.; the California Investigative Consumer Reporting Agencies Act ("ICRAA"), California Civil Code § 1786 et seq.; California Consumer Credit Reporting

---

[4] At the hearing for this motion on April 26, 2018, Class Counsel has submitted that these expenses have risen even further due to the re-issuance of class notice to the 108 individuals.

[5] The Court has previously ordered that the deadline for Class Members to submit objections to the proposed settlement or request exclusion was December 14, 2017. *See* Docket No. 252. Further, notwithstanding the fact that Abeyta ignored the scope of the Court's Order re Supplemental Briefing, which stated that supplemental briefs to be limited to the "status and results of the re-issuance of the class notice 108 Class Members", Abeyta also ignored the deadline, which called for the filing of supplemental briefs by "5:00 p.m. on April 20, 2018", and filed his objection on April 24, 2018 instead. *See* Docket No. 282.

6

Agencies Act ("CCRAA"), California Civil Code § 1785.1 et seq.; the Private Attorneys General Act of 2004 ("PAGA"); the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.; the Massachusetts Credit Reporting Act ("MCRA") M.G.L c. 93 §§ 50 et seq.; and the Criminal Offender Record Information ("CORI") requirements, M.G.L. c. 6 §§ 171A et seq. *See* Amend. MAC ¶¶ 1–2, 56–62. Abeyta points to no variation in state laws which would defeat a finding of predominance under Rule 23(b)(3). While the remedies under FCRA, California and Massachusetts Law might differ slightly, the statutes are substantially similar in all material respects, and there are common questions of fact and law which exist to all class members; these include whether Uber failed to (i) provide "clear and conspicuous" notice in a written document that consist solely of the disclosure that consumer background reports may be procured, (ii) obtain written authorization from consumers prior to obtaining consumer background reports, (iii) provide a summary of rights under applicable law prior to taking adverse actions against consumers, and (iv) provide copies of the consumer background reports prior to taking adverse actions against consumers. *Id.* As the Court previously explained in its Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Prelim. App. Order"), *see* Docket No. 242 at 6–7, predominance is satisfied because all of Plaintiffs' claims arise from allegations of Uber's systemic practices and policies regarding consumer reports, and that liability may be determined on a class-wide basis. The Court thus finds that the complaint arises from a common nucleus of fact and law, and various state law such as ICRAA, MCRA and Massachusetts CORI are not materially different to defeat predominance under Rule 23(b)(3). *See In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 691 (9th Cir. 2018) (citing *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996)).[6]

Therefore, the Court **OVERRULES** Abeyta's objection. *See* Abeyta Obj. II.

4. <u>Fair, Reasonable and Adequate Settlement</u>

The Court has already assessed the relevant factors in determining the settlement appeared

---

[6] Contrary to Abeyta's argument, predominance does not concern which law is most important to the case, but whether the common issues predominate over individualized issues so as to render class-based adjudication inefficient.

7

to be fair, reasonable and adequate, given the risks involved in continued litigation. *See* Docket No. 242 ("Prelim. App. Order") at 9–11.

Nothing has been presented to the Court which would alter that assessment. The only new material fact is the response of the class to the settlement. While the response rate is only around 10% of all Class Members, *see* Wolfson Decl. ¶ 17, the response has been positive. Only 235 Class Members (or so) have opted out in comparison with more than 99,243 who submitted valid claims. *See* Ferrara Decl. ¶ 16. Furthermore, of Abeyta's putative clients who purportedly opted out via a simple collective notice by Abeyta, the majority who responded to the second notice submitted claims rather than opting out. If anything, this underscores the adequacy of the settlement. *See* Ferrara Decl. II ¶ 6.

Abeyta also contests the settlement on the ground that the scope of releases is overbroad, encompassing claims not asserted in this case, such as individual claims under ICRAA which permits a statutory recovery of up to $10,000 if not part of a class. Courts can approve the release of claims that are beyond their jurisdiction. *See*, *e.g.*, *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 369 (1996) (holding that release included in class settlement approved by state court precluded federal litigation, although claims at issue were "within the exclusive jurisdiction of the federal courts."); *see also Williams v. Boeing Co.*, 517 F.3d 1120, 1133-34 (9th Cir. 2008) ("'It is well-settled that in order to achieve a comprehensive settlement . . . a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action.'").

To be sure, the adequacy of a settlement must take into account not only the potential verdict value of the claims brought in the suit, but the potential value of claims released. *Cf. O'Connor v. Uber Techs., Inc.*, No. 13-cv-3826-EMC, 201 F. Supp. 3d 1110 (N.D. Cal. 2016). Here, the Court already considered the verdict value of the FCRA claims, concluding the settlement amount here could be less than 1% of the $100 million to $1 billion verdict value in view of the substantial risks, including the risk that Plaintiffs would not be able to establish any

8

violations were willful. *See* Prelim. App. Order at 9, 11.[7] The added value of ICRAA and other claims released does not materially change the calculus. A claim under ICRAA under Cal. Civ. Code § 1786.50(a)(1) is not recoverable through class actions. A Class Member who wishes to recover the $10,000 statutory penalty under § 1786.50(a)(1) may opt out and pursue that claim on an individual basis and must bring his or her own individual action. Apart from the low likelihood of a significant number of individuals actually asserting such claim, any such claim faces substantial risks, risks described in this Court's earlier order. *See* Prelim. App. Order at 9–12. Moreover, those who want to preserve their individual ICRAA claim may opt out of this class settlement.

Accordingly, the Court reaffirms its finding that the settlement is fair, reasonable, and adequate.[8] *See Churchill Village*, 361 F.3d 566, 575. Thus, the Court **GRANTS** Plaintiffs' Motion for Final Approval of Class Action Settlement.[9]

B.  Motion for Service Awards

Plaintiffs Wise, Farmer, and Christenson seek to be granted $5,000 as incentive awards each. *See* Docket No. 257 at 7. Plaintiffs Gillette and Mohamed, who have participated in the litigation since its initiation in November 2014, and have both agreed to give up valuable wage and hour claims against Uber, seek awards of $7,500. *Id.* However, the amount of time spent is disproportionate to the incentive awards — the three lead Plaintiffs Wise, Farmer and Christenson who seek $5,000, spent 29 hours, 19 hours, and 15.5 hours, respectively, in assisting their

---

[7] The California Supreme Court's decision in *Dynamex Operations West, Inc. v. Superior Court* (Cal. S. Ct. No. S222732, Apr. 30, 2018) does not change the risk of, *e.g.,* Plaintiffs' inability to establish willfulness and, enforceable arbitration provisions.

[8] The Court also authorizes the PAGA payment in the amount of $7,500, of which 75% or $5,625.00, will be paid to the California Labor and Workforce Development Agency ("LWDA") as civil penalties, and 25% or $1,875.00 will be distributed to the settlement class members. *See* Stip. of Sett. ¶ 20.

[9] The Court also **OVERRULES** the following objections as they are either groundless or meritless: (1) Objection to Class Action Settlement by Christine Gussoin ("Gussoin Obj."), *see* Docket No. 262; (2) Thomas Abeyta, et al.'s Objection to Class Action Settlement filed by Audet & Partners, LLP ("Abeyta Obj."), *see* Docket Nos. 263, 270; (3) Letter dated 12/9/17 from Olga Ortmann re settlement rejection ("Ortmann Obj."), *see* Docket No. 260; (4) Letter dated 11/13/2017 from Korie Schmidt re settlement objection ("Schmidt Obj."), *see* Docket No. 259, (6) the email dated 12/13/2017 from Scott Kahler re settlement objection, attached as Exhibit F to the Declaration of Charles Ferrara ("Ferrara Decl.").

attorneys. *See* Docket No. 257 at 14–18. Thus, the Court finds reasonable the Service awards for Plaintiffs Wise, Farmer and Christenson in the amounts of $4,500, $3,200 and $3000 respectively. With regards to the lead Plaintiffs Gillette and Mohamed who seek $7,500, Gillette delayed his bankruptcy filing indefinitely in order to safeguard his ability to serve as a Class Representative. *See* Docket 257-1 ("Gillette Decl.") at ¶ 21. Plaintiffs Gillette and Mohamed only spent 34 and 18 hours assisting their attorneys respectively. The Court finds reasonable the Service Awards for Plaintiff Gillette and Mohamed in the amount of $7,500 and $5,000 respectively. *See* Docket No. 257 at 14–18. As aforementioned, Plaintiffs' motion for service awards are **GRANTED IN PART** and **DENIED IN PART**.

C. <u>Motion for Attorney's Fees</u>

Class counsel is asking for an award of $2,500,000 in attorneys' fees (which amounts to one-third of the $7,500,000 Settlement Fund or 30.86% of the Settlement's total of approximately $8,102,000[10] common fund), plus expenses of $47,512.18. *See* Docket No. 258 at 15. Class counsel submits that the lodestar has amounted to $3,166,410, on the basis of 4,757.6 hours. *Id*. at 9. Class counsel thus contends that its fee request represents a negative multiplier of 0.7895. *Id.* at 29. While $2.5 million renders a negative multiplier, it is an upward departure from the Ninth Circuit's benchmark of 25% of the settlement fund. The Court must take into account results obtained. *See Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1304 (W.D. Wash. 2001), aff'd, 290 F.3d 1043 (9th Cir. 2002); *see also Hensley v. Eckerhart*, 461 U.S. 424 (1983).

Here, the settlement produced a very modest result. Recovery was less than 1% of the potential verdict value; even less when the broad scope of the waiver is considered. While the settlement also provided for non-monetary relief in the form of policy change, that agreement remained in effect for only one year. While the Court recognizes the risk inherent in this litigation and the caliber of counsel, factors which might otherwise warrant enhanced compensation, exceeding the 25% benchmark in this case in view of the very modest results obtained is not justified. Taking the settlement's total of $8,102,000, 25% fee award, consistent with the

---

[10] Class Counsel submits during the April 26, 2018 hearing that this amount is closer to $8.2-3 million due to the increased administrative expenses.

10

benchmark, amounts to $2,025,500 in fees. The Court finds reasonable an award of $2,025,000 in attorneys' fees.

Plaintiffs' motion for attorney's fees is thus **GRANTED IN PART** and **DENIED IN PART**.

This order disposes of Docket Nos. 257, 258, and 264.

**IT IS SO ORDERED**.

Dated: May 2, 2018

_____
EDWARD M. CHEN
United States District Judge